Scan Only

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

Case No.   SACV05-1070-DOC(MLGx)                    Date   August 13, 2007

Title   TERRI N. WHITE, ET.AL., -V- EXPERIAN INFORMATION SOLUTIONS INC.

Present: The Honorable   David O. Carter, U.S. District Judge

| Kristee Hopkins | Debbie Gale | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Charles Juntikka | Michael G. Morgan |
| Cynthia Chapman | Daniel McLoon |
| Daniel Wolf | Stephen Newman |
| Leonard Bennett | Craig Bertschi |
| Michael Caddell | |
| Lee Sherman | |
| George Nino | |
| Allison Elgart | |

Proceedings:   MOTION BY DEFENDANT EXPERIAN FOR PARTIAL SUMMARY
               JUDGMENT


Tentative ruling issued to counsel, a copy of which is attached hereto.

The matter is called.  Counsel state their appearances.  Argument by counsel.

Motion hearing continued to August 14, 2007 at 8:00 a.m.


Initials of Preparer    kh                    1    :    25

DOCKETED ON CM

AUG 21 2007

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| TERRI N. WHITE, et al., | ) ) | CASE NO. SA CV 05-1070 DOC (MLGx) |
| Plaintiff(s), | ) ) | |
| v. | ) ) | [TENTATIVE] O R D E R GRANTING IN PART AND DENYING IN PART |
| EXPERIAN INFORMATION SOLUTIONS, INC., | ) ) ) | DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT |
| Defendant(s). | ) ) ) ) ) ) ) ) ) | |

Before the Court is Defendant Experian Information Solutions, Inc.'s ("Experian") Motion for Partial Summary Judgment. After reviewing the moving, opposing, and reply papers, and for the reasons set forth below, the Court GRANTS IN PART and DENIES IN PART the Motion.

## I.    BACKGROUND

This case involves claims against a consumer credit reporting agency based on the procedures by which that agency produces credit reports for individuals with debts discharged through Chapter 7 bankruptcy proceedings. Defendant Experian is one of the nation's three major repositories for consumer credit information. Under the Fair Credit Reporting Act ("FCRA"), 15

1  U.S.C. § 1681a(f), it is classified as a "consumer credit reporting agency," meaning that it engages

2  in the business of assembling, evaluating, and disbursing credit information on consumers for the

3  purpose of furnishing consumer credit reports, as defined in 15 U.S.C. § 1681a(d), to third parties.

4  The FCRA governs the conduct of consumer credit reporting agencies in an effort to preserve the

5  integrity of the consumer banking system and to protect the rights of consumers to fairness and

6  accuracy in the reporting of their credit information.  Among the obligations the FCRA imposes

7  on a credit reporting agency is the requirement, for each report it prepares, to follow "reasonable

8  procedures to assure maximum possible accuracy of the information concerning the individual

9  about whom the report relates." 15 U.S.C. § 1681e(b).

10       Plaintiffs are individuals who had debts discharged through a Chapter 7 bankruptcy.  Each of

11  them sought a "fresh start" after their respective bankruptcy discharges, but regarding each,

12  Experian prepared credit reports inaccurately describing discharged debts as "charged off" or with

13  some other derogatory notation.  When preparing credit reports for individuals who have been the

14  beneficiaries of Chapter 7 discharge orders, Experian relies solely on a debtor's creditors to

15  affirmatively update the status of the accounts they maintain.  While these creditors do have an

16  obligation to correct and update information they report, unlike credit reporting agencies there is

17  no private cause of action against them should they fail to fulfill that duty.  15 U.S.C. § 1681s-

18  2(a)(2), (c).  Plaintiffs brought this suit challenging Experian's reliance on creditors to voluntarily

19  update the status of discharged debts, charging that this practice constitutes a negligent and a

20  willful failure to employ reasonable procedures to ensure the maximum possible accuracy of

21  credit reports, in violation of the FCRA, 15 U.S.C. § 1681e(b).  They also contend that Experian

22  has negligently and willfully failed to conduct reasonable reinvestigations of disputed credit

23  information, as the FCRA requires in 15 U.S.C. § 1681i(a).  These causes of action include

24  allegations that Experian has committed violations of California's Consumer Credit Reporting

25  Agencies Act ("CCRAA"), Cal. Civ. Code §§ 1785.14(b), 1785.16, a California state analog to the

26  FCRA, and California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et*

27  *seq.*, based on these same practices.

28

Plaintiffs Terri N. White, Robert Radcliffe, Chester Carter, Arnold Lovell, Jr., Clifton C. Seale, III, and Alex Gidi brought this suit in federal court on November 2, 2005 on behalf of themselves and all other individuals for whom Experian prepared a consumer report, on or after March 15, 2002, in which it did not report one or more tradeline accounts or debts as discharged despite the fact that such accounts or debts had been discharged through a Chapter 7 bankruptcy proceeding. The current version of Plaintiffs' Complaint is the Second Amended Complaint ("SAC"), which Plaintiffs filed pursuant to stipulation of the parties on August 11, 2006. Through the SAC, Plaintiffs seek statutory and punitive damages pursuant to 15 U.S.C. § 1681n(a), punitive damages pursuant to Cal. Civ. Code § 1785.31(a), actual damages, declaratory relief, and an injunction ordering Trans Union to establish and maintain reasonable procedures in its credit reporting practices so as to comply with the FCRA, the CCRAA, and the UCL. In addition to the case at issue in this Motion, there are now before the Court five other related cases that raise identical claims on behalf of the same putative class members against Experian and the remaining two major repositories for consumer credit information, Trans Union, LLC and Equifax Information Services, LLC: *White, et al. v. TransUnion, LLC*, Case No. CV 05-1073 DOC (MLGx); *White, et al. v. Equifax Info. Servs., LLC*, Case No. CV 05-7821 DOC (MLGx); *Pike v. Equifax Info. Servs., LLC*, Case No. CV 05-1172 DOC (MLGx); *Hernandez v. Equifax Info. Servs., LLC, Experian Info. Solutions, Inc., and TransUnion, LLC*, Case No. CV 06-3924 DOC (MLGx); and *Acosta, et al. v. TransUnion, LLC*, Case No. CV 06-5060 DOC (MLGx).

Experian now moves the Court for a summary adjudication in its favor as to Plaintiffs' claims that it "willfully" violated federal and state credit reporting statutes. Experian also seeks summary judgment on Plaintiffs' requests for injunctive and declaratory relief.

## II.   LEGAL STANDARD

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

1    The Court must view the facts and draw inferences in the manner most favorable to the non-

2    moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S. Ct. 993 (1962); *Chevron*

3    *Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1161 (9th Cir. 1992). The moving party bears the initial

4    burden of demonstrating the absence of a genuine issue of material fact for trial, but it need not

5    disprove the other party's case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S. Ct.

6    2505 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25, 106 S. Ct. 2548 (1986). When the

7    non-moving party bears the burden of proving the claim or defense, the moving party can meet its

8    burden by pointing out that the non-moving party has failed to present any genuine issue of

9    material fact. *Musick v. Burke*, 913 F.2d 1390, 1394 (9th Cir. 1990).

10   Once the moving party meets its burden, the "adverse party may not rest upon the mere

11   allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits

12   or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine

13   issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be

14   entered against the adverse party." Fed. R. Civ. P. 56(e); *see also Anderson,* 477 U.S. at 248-49.

15   Furthermore, a party cannot create a genuine issue of material fact simply by making assertions in

16   its legal papers. There must be specific, admissible evidence identifying the basis for the dispute.

17   *S.A. Empresa de Viacao Aerea Rio Grandense v. Walter Kidde & Co., Inc.*, 690 F.2d 1235, 1238

18   (9th Cir. 1980). The Supreme Court has held that "[t]he mere existence of a scintilla of evidence .

19   . . will be insufficient; there must be evidence on which the jury could reasonably find for [the

20   opposing party]." *Anderson*, 477 U.S. at 252.

21   **III.    DISCUSSION**

22   As a preliminary matter, the Court notes that on May 15, 2007, approximately seven weeks

23   before Experian filed the instant Motion, Plaintiffs filed and noticed for hearing on September 10,

24   2007 their Motion for Class Certification ("Class Certification Motion"). "It is reasonable to

25   consider a Rule 56 [summary judgment] motion [before a class certification motion] when early

26   resolution of a motion for summary judgment seems likely to protect both the parties and the

27   court from needless and costly further litigation." *Wright v. Schock*, 742 F.2d 541, 544 (9th Cir.

28

4

1984).  To this effect, the Ninth Circuit has expressly provided that "where the defendant assumes the risk that summary judgment in his favor will have only *stare decisis* effect on the members of the putative class, it is within the discretion of the district court to rule on the summary judgment motion first."  *Kim v. Commandant*, 772 F.2d 521, 524 (9th Cir. 1985) (quoting *Wright*, 742 F.2d at 544).

Such is the case here, where Experian has requested summary adjudication in advance of a ruling on Plaintiffs' Class Certification Motion.  *See also Curtin v. United Airlines*, 275 F.3d 88, 92 (D.C. Cir. 2001) (summary judgment properly granted before ruling on pending class certification motion); *Marx v. Centran*, 747 F.2d 1536, 1552 (6th Cir. 1994) ("class allegation in [the plaintiff's] complaint presented no impediment to the district court's grant of summary judgment").  Plaintiffs have not objected to this procedure and, accordingly, the Court proceeds to assess seriatim each of Experian's requests for summary adjudication.

### A.   Triable Issues of Fact Preclude Summary Judgment as to Plaintiffs' Claims that Experian Willfully Did Not Employ Reasonable Procedures to Ensure Maximum Possible Accuracy

Experian raises two arguments as to why it is entitled to summary adjudication that it did not willfully fail to maintain reasonable reporting procedures as required under the FCRA and CCRAA.  Both of these arguments fail.

#### 1.   The *Safeco* Decision Does Not Require Plaintiffs to Demonstrate that Prior Law Clearly Required Adoption of their Proposed Procedures

Where a plaintiff challenges a consumer credit reporting agency's reporting procedures, that plaintiff makes out a *prima facie* violation by "present[ing] evidence tending to show that a credit reporting agency prepared a report containing inaccurate information."  *Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995).  Thereafter, an agency has the opportunity to escape liability by establishing it generated this inaccurate report despite having followed reasonable procedures.  *Id.*  Whether a credit report agency's reporting procedures were indeed reasonably designed to ensure maximum possible accuracy, as 15 U.S.C. § 1681e(b)

5

1  requires, is generally an issue for the trier of fact. *Id.* ("The reasonableness of the procedures and

2  whether the agency followed them will be jury questions in the overwhelming majority of cases.")

3  (citing *Cahlin v. Gen. Motors Acceptance Corp.*, 936 F.2d 1151, 1156 (11th Cir. 1991)); *see*

4  *also Crabill v. Trans Union, L.L.C.*, 259 F.3d 662, 664 (7th Cir. 2001) ("The determination of

5  the 'reasonableness' of the defendant's procedures . . . is treated as a factual question even when

6  the underlying facts are undisputed."); *Cushman v. Trans Union Corp.*, 115 F.3d 220, 227 (3d

7  Cir. 1997) (question of willfulness is one for jury). Whether a credit reporting agency's

8  procedures were reasonable "therefore cannot be resolved on summary judgment unless the

9  reasonableness or unreasonableness of the procedures is beyond question . . . ." *Crabill*, 259 F.3d

10  at 664. The Ninth Circuit has likewise warned that "[w]hen willfulness is an issue, summary

11  judgment should be granted with caution, since questions such as intent or motive are presented."

12  *Simpson v. United States*, 652 F.2d 831, 834 (9th Cir. 1981).

13        Experian maintains that the Supreme Court's recent decision in *Safeco Ins. Co. v. Burr*

14  altered these well-established rules governing the propriety of summary judgment in willfulness

15  disputes. 127 S. Ct. 2201 (2007). At issue in *Safeco* was a provision of the FCRA that required

16  notice to a consumer who became subject to an "adverse action," which the statute defined as "a

17  denial or cancellation of, an *increase* in any charge for, or a reduction or other adverse or

18  unfavorable change in the terms of coverage or amount of, any insurance, existing or applied for."

19  15 U.S.C. §§ 1681a(k)(1)(B)(i), 1681m(a) (emphasis added). The plaintiffs in that case sued

20  Safeco Insurance Company ("Safeco") for punitive and statutory damages, alleging that by failing

21  to send them adverse action notices after offering higher insurance rates than the best rates

22  possible, Safeco willfully violated the FCRA. *Safeco*, 127 S. Ct. at 2207. Safeco defended on the

23  basis that although these consumers would have received lower insurance rates had the information

24  in their consumer reports been more favorable, they were not subject to an adverse action because

25  offering a single, initial rate for insurance could not constitute an increase within the meaning of

26  the statute. *Id.* at 2207-08. Whether or not Safeco willfully breached its duty thus hinged at least

27  preliminarily on the construction of the term "increase" within the context of the FCRA.

28

1    The Supreme Court ultimately held that the "increase" required for an "adverse action"

2  reached initial rates for new applications and thus included the imposition of disadvantageous rates

3  even where there had been no prior dealing between the parties. *Id.* at 2212-13. Having found that

4  Safeco's failure to provide adverse action notice violated the FCRA, the Supreme Court proceeded

5  under its interpretation that for a violation to have been willful, it must have been committed in

6  "reckless disregard" of a statutory obligation. *Id.* at 2208-09. Under this standard, it concluded

7  that Safeco's conduct, although in violation of the statute, was not a willful violation:

8              [A] company subject to FCRA does not act in reckless disregard of it

9              unless the action is not only a violation under a reasonable reading of

10             the statute's terms, but shows that the company ran a risk of violating

11             the law substantially greater than the risk associated with a reading that

12             was merely careless. . . . Safeco's reading of the statute, albeit

13             erroneous, was not objectively unreasonable. As we said,

14             § 1681a(k)(1)(B)(i) is silent on the point from which to measure

15             "increase." On the rationale that "increase" presupposes prior dealing,

16             Safeco took the definition as excluding initial rate offers for new

17             insurance, and so sent no adverse action notices to [the plaintiffs].

18             While we disagree with Safeco's analysis, we recognize that its

19             reading has a foundation in the statutory text . . . and a sufficiently

20             convincing justification to have persuaded the District Court to adopt

21             it and rule in Safeco's favor.

22  *Id.* at 2215-16. Because Safeco's reading of the statute was not objectively unreasonable and

23  hence did not raise an "unjustifiably high risk" of violating the statute, the Supreme Court ruled

24  that Safeco was entitled to summary judgment on the plaintiffs' claim of willfulness. *Id.* at 2216.

25         Experian now contends that it too is entitled to summary judgment that it did not willfully

26  violate the FCRA because its conduct was consistent with a reading of the statute that was not

27  objectively unreasonable so as to raise an unjustifiably high risk of violating the statute. Mot.

28

1    10:13-16. In *Safeco*, the Supreme Court based its conclusion that Safeco's interpretation of the

2    word "increase" was not objectively unreasonable in light of the fact that Safeco rendered its

3    interpretation without the benefit of guidance from the Federal Trade Commission ("FTC") or a

4    federal appeals court that "might have warned it away from the view it took." *Id.* ("Given this

5    dearth of guidance and the less-than-pellucid statutory text, Safeco's reading was not objectively

6    unreasonable, and so falls well short of raising the 'unjustifiably high risk' of violating the statute

7    necessary for reckless liability."). Based on this reasoning, Experian argues that it cannot have

8    willfully violated the FCRA because neither the FTC nor a federal court of appeals have expressly

9    announced that its procedures are not "reasonable" within the context of the statute. Essentially,

10   Experian posits that *Safeco* has altered the traditional maxim that a dispute as to willfulness

11   presents an issue of fact inappropriate for summary judgment such that now a finding of

12   willfulness will always be precluded "in a case of first impression." Mot. 11:21; *see also* Mot.

13   18:26-28 ("Experian respectfully suggests that *Safeco* has now recognized that [the question of

14   willfulness] may be answered as a matter of law.").

15           *Safeco* did no such thing. The Supreme Court in *Safeco* first recognized that the statutory

16   term "increase" could reasonably be interpreted to refer to imposition of a disadvantageous rate

17   even with or only in the absence of prior dealing. *Safeco*, 127 S. Ct. at 2210-12  It then held that

18   the defendant could not have willfully violated the statute when it embraced and conformed its

19   conduct to one of these reasonable interpretations, even where that interpretation ultimately

20   proved to be incorrect. *Id.* at 2216 n.20 ("Where, as here, the statutory text and relevant court and

21   agency guidance allow for more than one reasonable interpretation, it would defy history and

22   current thinking to treat a defendant who merely adopts one such interpretation as a knowing or

23   reckless violator."). In other words, Safeco could not have willfully violated the FCRA by not

24   issuing an adverse action notice where, under a reasonable reading of the word "increase," no such

25   notice was required. Nowhere in its opinion did the Supreme Court imply that a defendant accused

26   of willful violation was entitled to violate its statutory duty under the FCRA without facing

27   liability absent an unambiguous directive, contained within either the statutory text, federal

28

8

1  appellate case law, or FTC commentary, that its procedures were unreasonable.

2      Case law predating the *Safeco* decision also does not support Experian's position.  Experian

3  is correct in noting, as the Court has observed, that "the requisite intent or willfulness required to

4  consciously disregard another's rights cannot be present if no right or duty has been recognized."

5  *In re First Alliance Mortgage Co.*, 2003 U.S. Dist. LEXIS 25925 at *36-37 (C.D. Cal. June 16,

6  2003) (citing *Waits v. Frito-Lay, Inc.*, 978 F.2d 1093, 1104 (9th Cir. 1992) ("Where an issue is

7  one of first impression or where a right has not been clearly established, punitive damages are

8  generally unavailable.")).  That rule is inapposite here, where Experian indubitably was under a

9  statutory duty to maintain "reasonable procedures to assure maximum possible accuracy."  15

10  U.S.C. § 1681e(b).  To the extent that this is a case of first impression, it is a case of first

11  impression as to whether the specific procedures Experian followed in preparing credit reports

12  relating to post-bankruptcy debts comported with this statutory duty and, if not, whether this

13  failure to comport was willful.  For such a case to be ripe for summary judgment would be

14  effectively to allow all credit reporting agencies to intentionally produce inaccurate reports,

15  facing only the threat of actual damages, until Congress, a federal appellate court, or the FTC

16  unambiguously declared that the precise procedure in operation was not "reasonable" within the

17  context of the FCRA.  In essence, it would be to eviscerate the civil liability for willful

18  noncompliance provision of the FCRA.  15 U.S.C. § 1681n.

19      Plaintiffs have produced evidence that Experian has inaccurately listed discharged debts as

20  still due and owing in approximately 75% of its reports for the more than 8 million consumers

21  who have obtained Chapter 7 discharge orders.  Affidavit of George F. Niño ¶ 37.  Despite the fact

22  that fewer than 5% of the 200 million consumers about whom it issues reports have obtained a

23  Chapter 7 discharge order, Plaintiffs' evidence indicates that Experian receives over 150,000

24  complaints each year regarding inaccurate bankruptcy information, making it the eighth most

25  common consumer dispute the company receives.  Decl. of Leonard A. Bennett, Ex. 25-26, GAO

26  Report, FTC Report.  Since 2005, at least sixty-seven consumers have filed suit against Experian

27  challenging its procedures as inaccurately reporting pre-bankruptcy debts, further alerting

28

1   Experian of its purported statutory violations.  Viewing this evidence in the light most favorable to

2   Plaintiffs, as it must, the Court simply cannot declare that Experian adopted "reasonable

3   procedures to assure maximum possible accuracy" or that it did not, as a matter of law, fail to do

4   so willfully.  15 U.S.C. § 1681e(b).

5          Experian also misses the point in characterizing Plaintiffs' claim as being merely a

6   challenge to the credit reporting agency's longstanding policy of relying on credit information

7   furnishers it deems reliable to provide updated credit information.  Nowhere in the SAC or

8   elsewhere in their pleadings do Plaintiffs limit their challenge to merely this reliance, but rather

9   they consistently reference the overall *procedure* through which Experian produces its reports.

10  Another component of this procedure, for example, is Experian's policy of updating the reporting

11  of pre-bankruptcy debts as discharged only upon the receipt of an affirmative indication to this

12  effect from a credit information furnisher despite the fact that the number of pre-bankruptcy debts

13  that are discharged in Chapter 7 no-asset cases vastly exceeds the number that are not discharged.

14  In their opposition, Plaintiffs posit that Experian could reasonably and immediately reduce the rate

15  of error in its reporting simply by reversing this presumption.

16         To the extent Experian even acknowledges this challenge, it does so by repeatedly

17  dismissing Plaintiffs' proposed alternative as a "statistical guess" based on the probability that a

18  pre-bankruptcy debt was discharged through a Chapter 7 bankruptcy proceeding.  This

19  characterization is completely unavailing, given that Experian's own procedure is based on nothing

20  more than an opposite statistical guess of its own.  While it is premature for the Court to consider

21  at this stage what alternative procedures Experian might have employed, it remains for the trier of

22  fact to ultimately resolve whether Experian's "statistical guess" ran an unjustifiably high risk of

23  violating the FCRA.  *See also, e.g., Guimond*, 45 F.3d at 1333 (credit reporting agency bears

24  burden of demonstrating reasonableness of reporting procedures); *Apodaca v. Discover Fin.*

25  *Servs.*, 417 F. Supp. 2d 1220, 1230-34 (D.N.M. 2006) (question whether punitive damages were

26  warranted for credit reporting agency's allegedly reckless decision "not to make available any

27  additional steps which would have overridden or supplemented the standard procedures to which it

28

1  initially defaulted" was one "for the jury to answer"); *O'Brien v. Equifax Info. Servs., LLC*, 382 F.

2  Supp. 2d 733, 737-38 (E.D. Pa. 2005) (it was question for the trier of fact whether a credit

3  reporting agency's failure to adopt "automated procedure that cross-references reports that a

4  consumer has an account that is included in bankruptcy with the public records section of the

5  consumer's credit file" violated the reporting requirements of the FCRA); *Graham v. CSC Credit*

6  *Servs.*, 306 F. Supp. 2d 873, 881 (D. Minn. 2004) (credit reporting agency's "decision to design

7  [an allegedly flawed] system may constitute an intentional act that [the defendant] knew was in

8  violation of the FCRA . . . [and] raised a question of material fact regarding whether [the plaintiff]

9  is entitled to punitive damages").

### 2.   Experian's Contention that the Information it Fails to Report is Harmful to Consumer Does Not Entitle it to Summary Judgment

12        Experian additionally argues that it is entitled to summary judgment on Plaintiffs' claims

13  that it willfully fail to maintain reasonable reporting procedures because the information its

14  purported report errors did not cause Plaintiffs harm.  In so doing, Experian points to the language

15  of *Safeco* that to have been willful, a defendant's conduct must have entailed "an unjustifiably high

16  risk of harm that is either known or so obvious that it should be known." *Safeco*, 127 S. Ct. at

17  2215.  Because the bankruptcy discharge tradelines that it allegedly fails to report are considered a

18  derogatory status and because Plaintiffs have not produced an evidence that their credit scores

19  decreased as a result of its reporting procedures, Experian contends that Plaintiffs cannot prove

20  that they have actually suffered any harm.

21        It is unsurprising that Plaintiffs have not yet produced evidence of the specific impact that

22  Experian's reporting procedures had on their credit scores because they have not yet had the

23  opportunity to discover this information.  Experian filed its Motion on July 5, 2007 in the midst of

24  the briefing for the Class Certification Motion and before a discovery cut-off date has even been

25  set in this case.  Plaintiffs represent that, despite their diligent efforts, Experian has to date denied

26  them the opportunity to effectuate discovery. *See generally* Niño Affidavit (describing in detail

27  Plaintiffs' efforts to obtain discovery and Experian's responses to those efforts).  Rule 56(f) of

28

1   the Federal Rules of Civil Procedure requires the Court to refrain from granting summary

2   judgment so as to allow additional discovery "where the nonmoving party has not had the

3   opportunity to discovery information that is essential to its opposition." *Metabolife Int'l, Inc. v.*

4   *Wornick*, 264 F.3d 832, 846 (9th Cir. 2001) (quoting *Anderson*, 477 U.S. at 250 n.5). This rule

5   alone requires that the Court deny Experian's request for summary judgment.

6        Even if Experian's request were not premature, however, its contention that it is entitled to

7   summary judgment because the information it fails to report is harmful to consumers would fail.

8   Experian hinges this argument on a narrow definition of the word "harm" that is restricted so as to

9   consider only decreases in a consumer's personal credit score. This definition ignores the severe

10   non-scoring related consequences that inaccurate credit reporting can inflict on post-bankruptcy

11   consumers. For example, reports of unresolved debts by themselves often disqualify consumers

12   from obtaining mortgages, prohibit them from securing other forms of credit, and result in the

13   denial of leasing and employment opportunities. Decl. of John Ulzheimer ¶ 17; *see also In re*

14   *Helmes*, 336 B.R. 105, 108 (Bankr. E.D. Va. 2005) (describing several negative consequences

15   consumer suffered when credit reporting agency failed to change "past due" notation on debt to

16   "discharged in bankruptcy"). In light of these hazards, a diminished credit score is hardly the only

17   risk of harm to which Experian's reporting has subjected Plaintiffs.

18        Experian's theory is further flawed because, by requiring Plaintiffs to produce evidence of

19   actual harm to proceed on a willfulness claim, it would read the word "risk" out of the phrase "an

20   unjustifiably high *risk* of harm." *Safeco*, 127 S. Ct. at 2215; *see also Henson v. CSC Credit*

21   *Servs.*, 29 F.3d 280, 287 (7th Cir. 1994) (credit reporting agency's duty depends on "the cost of

22   verifying the accuracy of the source versus the *possible harm* inaccurately reported information

23   may cause the consumer"). Plaintiffs certainly can have been exposed to a risk of harm without

24   being required to prove that they actually suffered such harm. The text of the FCRA itself supports

25   this obvious conclusion, in that it expressly requires a plaintiff bringing an action for negligent

26   noncompliance to recover only actual damages while permitting a plaintiff alleging willful or

27   knowing noncompliance to recover punitive or statutory damages even in the absence of actual

28

1  damages.  *Compare* 15 U.S.C. § 1681o (allowing plaintiff to recover only "actual damages

2  sustained by the consumer as a result of the [violation]" in action for negligent noncompliance),

3  *with* 15 U.S.C. § 1681n (allowing plaintiff to recover punitive or statutory damages, not contingent

4  upon recovery of actual damages, in actions for willful or knowing noncompliance).

5        This is additionally consistent with the reasoning in *Akselrod v. Chex Systems Inc.*, in

6  which the district court granted summary judgment for the defendant bank in the face of a

7  consumer's lawsuit based on the bank's reporting of his closed checking account.  2005 WL

8  1492390 (C.D. Cal. June 6, 2005).  There the bank reported that the consumer plaintiff's checking

9  account had been closed because of "transactions involving items or checks returned as

10  uncollectible," but the plaintiff, who acknowledged that such transactions occurred, took the

11  position that the bank "should be liable for having failed to also report that [the bank] suspected

12  that he was engaged in fraud."  *Id.* at *2-4.  In rejecting the plaintiff's argument, the district court

13  explained, "The *only manner* in which a recipient of Plaintiff's credit report could have been

14  misled under such circumstances would be to Plaintiff's benefit, i.e., presuming that he was not

15  suspected of fraud."  *Id.* at *4 (emphasis added).  The facts of *Akselrod*, in which a plaintiff

16  objected to an exclusion of information that could only have worked to his benefit, are thus not

17  analogous to the instant case, in which, as the Court has already recognized, the failure to properly

18  report discharged debts subjected Plaintiffs to a variety of harms.  *Cf.* Decl. of Angela Granger

19  (declaration of Experian Senior Director of Analytics and Research and Development indicating

20  that the FICO credit scores of 24% of post-bankruptcy consumers would improve if Experian's

21  discharge presumption were reversed).

22  **B.      The Court Cannot Now Determine that There is No Triable Issue as to**

23  **          Whether Experian Willfully Failed to Conduct Reasonable Reinvestigations**

24        Experian next seeks summary judgment on Plaintiffs' claims that it willfully failed to

25  conduct reasonable reinvestigations to determine whether information they had reported was

26  inaccurate and to take corrective action within thirty days.  15 U.S.C. § 1681i(a)(1); Cal. Civ. Code

27  § 1785.16.  Experian notes that this challenge relates to proposed class representatives Lovell and

28

Seale, each of whom disputed information contained in credit reports that Experian prepared about them.  Regarding Lovell's dispute, Experian notes that after it was unable to locate any record of his bankruptcy filing, it contacted Lovell by mail requesting that he provide additional information regarding his bankruptcy.  Decl. of Kimberly Hughes ¶ 13.  Lovell did not respond to this request.  Depo. of Arnold Lovell, Jr. 129:22-131:1.  Regarding Seale's dispute, Experian has presented testimony of one of its Consumer Affairs Special Services Specialists to the effect that its failure to update one of the referenced accounts was inadvertent.  Hughes Decl. ¶ 14.

Notwithstanding the evidence that Experian has produced, because Plaintiffs have not had the opportunity to conduct sufficient discovery, the Court declines to grant summary judgment as to these claims at this junction.  Fed. R. Civ. P. 56(f); *see also Anderson*, 477 U.S. at 250 n.5.

**C.**   **Plaintiffs' Requests for Injunctive and Declaratory Relief Fail as a Matter of Law**

Experian finally moves for summary judgment as to Plaintiffs' requests for injunctive and declaratory relief.

**1.**   **Injunctive Relief is Not Available Under the FCRA**

In arguing that they should be permitted to proceed with their requests for injunctive relief, Plaintiffs acknowledge that most courts that have addressed the issue, including this one, have concluded that the FCRA does not authorize private plaintiffs to seek such relief.  They nonetheless maintain that these courts are in error.  Opp'n 20:1-2.  The Court addressed and resolved this issue fewer than eighteen months ago in *Parthiban v. GMAC Mortgage Corp.*:

> It is axiomatic that "[a]bsent the clearest command to the contrary from Congress, federal courts retain their equitable power to issue injunctions in suits over which they have jurisdiction." *Califano v. Yamasaki*, 442 U.S. 682, 705, 99 S. Ct. 2545 (1979).  The question that is presented to the Court, therefore, is whether Congress has clearly indicated its desire to restrict the court's traditional equitable powers.  Congress can tell the court of its intent to limit the court's

power to provide equitable remedies through the literal text of a statute "or by a necessary and inescapable inference." *Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531, 542, 107 S. Ct. 1396 (1987) (internal quotation marks omitted).

. . .

The Ninth Circuit has never addressed the question of whether the FCRA limits private plaintiffs' equitable relief. However, the vast majority of the courts which have considered the question, including the only circuit court to deal with the issue in any depth, have reached the conclusion that Congress clearly intended to limit equitable relief for private plaintiffs. [citations]  Congress knew how to expressly provide for equitable relief when it wanted to.  "[T]he absence of any express provision for injunctive relief in Sections 1681n and 1681o, coupled with the express authorization of such relief on behalf of federal and state agencies, leads to the unmistakable conclusion that Congress intended to limit injunctive relief to those instances in which it expressly authorized it." *White*, 378 F. Supp. 2d at 424; *see also Washington*, 199 F.3d at 268 (holding that "the affirmative grant of power to the FTC to pursue injunctive relief, coupled with the absence of a similar grant to private litigants" clearly demonstrates Congress's intent to limit equitable relief for private plaintiffs).

. . .

In deciding the scope of the abrogation of the federal government's sovereign immunity, Congress could have elected to permit consumers to sue for a full array of remedies or a narrower range.  In other words, Congress could simply have stopped after providing for monetary damages and attorney's fees in section

1      1681u(i).  Instead, Congress added an additional subsection, *see* 15

2      U.S.C. § 1681u(m), that expressly authorized injunctive relief in

3      addition to the remedies at law permitted in subsection (i).  By

4      contrast, Congress did not include any provision providing for

5      equitable relief in either section 1681o or 1681n.  The only way to

6      give meaning to Congress's different treatment of these sections is to

7      conclude that Congress intended to limit injunctive relief to state and

8      federal agencies except where otherwise expressly provided.

9 2006 U.S. Dist. LEXIS 38433, at *19-25 (C.D. Cal. Mar. 1, 2006).  The Court has not changed its

10 position on this issue within the last eighteen months, nor has the Ninth Circuit taken a contrary

11 position since this ruling.

12     **2.**   **The FCRA Does Not Preempt the CCRAA's Injunctive Relief Provision**

13    Section 1785.31(b) of the California Civil Code expressly authorizes private litigants to

14 seek injunctive relief for violations of the CCRAA.  Cal. Civ. Code § 1785.31(b) ("Injunctive

15 relief shall be available to any consumer aggrieved by a violation or a threshold violation of [the

16 CCRAA] whether or not the consumer seeks any other remedy under this section.").  While

17 recognizing that the CCRAA thus provides an injunctive remedy, Experian nonetheless argues that

18 Plaintiffs may not pursue such relief because the FCRA's restrictions on private injunctive relief

19 preempt this provision.  On this point Experian is mistaken.

20    It is black letter law that "[w]hen Congress legislates in a field traditionally occupied by the

21 States, [a court must] start with the assumption that the historic police powers of the States were

22 not to be superseded by [a] Federal Act unless that was the clear and manifest purpose of

23 Congress." *California v. ARC America Corp.*, 490 U.S. 93, 101, 109 S. Ct. 1661 (1989)

24 (quotation marks omitted) (quoting *Hillsborough County v. Automated Medical Laboratories,*

25 *Inc.*, 471 U.S. 707, 716, 105 S. Ct. 2371 (1985)).  Regulation of the credit industry is such an area

26 that was, prior to promulgation of the FCRA, traditionally subject to state regulation. *See, e.g.*,

27 *Chamberlan v. Ford Motor Co.*, 314 F. Supp. 2d 952, 959 (N.D. Cal. 2004).  For the FCRA's

28

1  implied proscription on private injunctive relief to oust California's express provision of such

2  relief, there must therefore be "an unambiguous congressional mandate to that effect." *Florida*

3  *Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 146-47, 83 S. Ct. 1210 (1963).

4        Aside from there being no such an unambiguous mandate, there is contrary evidence that

5  Congress specifically did not intend to preempt such a state remedy. Section 1681t of the FCRA

6  expressly explains that Congress intended to preserve state laws regulating the credit industry,

7  "except to the extent that those laws are inconsistent with [the FCRA]," and delineates specific

8  areas in which Congress intended to prohibit state regulation. 15 U.S.C. § 1681. Where, as here,

9  "Congress has considered the issue of preemption and has included in the enacted legislation a

10 provision explicitly addressing that issue . . . there is no need to infer congressional intent to

11 preempt state laws from the substantive provisions of the legislation." *Ishikawa v. Delta Airlines,*

12 *Inc.*, 343 F.3d 1129, 1133 (9th Cir. 2003) (quoting *Cipollone*, 505 U.S. 504, 517, 112 S. Ct.

13 2608 (1992)). The fact that Congress explicitly preempted some state laws that it found to be

14 inconsistent with its purpose is sufficient, at the least, to "imply that Congress intentionally did

15 not preempt state law generally." *Kearns v. Tempe Technical Inst.*, 39 F.3d 222, 225 (9th Cir.

16 1994).

17       Even if it were silent on preemption, however, there would be not be an adequate basis to

18 find that Congress intended to preempt California's provision of an injunctive remedy because

19 such a remedy does not frustrate the purposes of the FCRA. It hardly bears explanation that

20 "federal regulation of a subject – even thoroughgoing federal regulation – does not prevent states

21 from adding remedies to the arsenal established by federal law." *Radici v. Associated Ins. Cos.*,

22 217 F.3d 737, 742 (9th Cir. 2000) (quoting *NAACP v. Am. Family Mut. Ins. Co.*, 978 F.2d 287,

23 296 (7th Cir. 1992)). A state law providing the availability of injunctive relief where federal law

24 does not is   The injunctive relief that California offers to private litigants here is precisely the

25 type of greater protection that states may choose to afford its citizens. *See Golden Door, Inc. v.*

26 *Odisho*, 646 F.2d 347, 351-52 (9th Cir. 1980) (rejecting argument that Lanham Act preempted

27 plaintiff's rights to injunctive relief under California law because such relief merely "extends to

28

1   federal registrants greater protection than is available under the [federal law]"); *Irwin v. Mascott*,

2   112 F. Supp. 2d 937, 964 (N.D. Cal. 2000) (injunctive relief of California statute is "exactly the

3   type of greater protection afforded to consumers which is not preempted by the [federal Fair Debt

4   Collection Practices Act which, like the FCRA, expressly authorizes the FTC but not private

5   parties to seek injunctive relief]").

6          The FTC Commentary on the FCRA accords with this construction of Congressional intent,

7   construing the statute to confine its preemptive effect only to those situation in which

8   "compliance with inconsistent State law would result in a violation of the FCRA."  16 C.F.R., pt.

9   600, app. § 622, P 1 (1995); *see also* 55 Fed. Reg. 18804, 18808 (explaining that FTC's

10  interpretation is based on an "unequivocal statement" contained in the principal report of the

11  FCRA's legislative history that "no State law would be preempted unless compliance would involve

12  a violation of Federal law") (quoting S. Rep., 91-517, 91st Cong., 1st Sess. 9 (1969)).  There can

13  be no argument that permitting a state plaintiff to obtain an injunction against a credit reporting

14  agency that has violated the reporting requirements of the FCRA would itself constitute a violation

15  of that statute.  There similarly can be no doubt that the FCRA does not impede states from

16  "enacting greater protections for consumers injured by the activities of reporting agencies [than

17  does the FCRA]."  *Cisneros v. U.D. Registry*, 39 Cal. App. 4th 548, 577 (1995); *Davenport v.*

18  *Farmers Ins. Group*, 378 F.3d 839, 842-43 (8th Cir. 2004) ("We decline to interpret Congress's

19  silence with regard to [a matter not addressed by the FCRA] to signify its intent to prohibit states

20  from enacting their own regulations on the issue."); *Credit Data of Arizona, Inc. v. Arizona*, 602

21  F.2d 195, 198 (9th Cir. 1979) (FCRA does not preempt state statute "since [FCRA] merely adds an

22  additional protection to the consumer for whose protection both statutes were enacted").

23  Experian has not identified any unambiguous statutory purpose that the allowance of injunctive

24  relief through state law would frustrate, and the Court accordingly concludes that the FCRA does

25  not preempt the CCRAA's injunctive relief provision.

26          **3.      Plaintiffs May Not Pursue their Request for Declaratory Relief as to**

27                  **the FCRA But May as to the CCRAA and the UCL**

28

1  Experian also challenges Plaintiffs' request for declaratory relief.  Plaintiffs are apt to note

2  that the inference supporting the conclusion that the FCRA does not allow for injunctive relief

3  does not necessarily preclude them from seeking declaratory relief.  *See, e.g.*, *Ulstein Maritime,*

4  *Ltd. v. United States*, 833 F.2d 1052, 1055 (1st Cir. 1987) (distinguishing declaratory relief as "a

5  milder remedy which is frequently available in situations where an injunction is unavailable or

6  inappropriate").  This observation is not helpful here, however, because the effect of the

7  declaratory relief they seek is indistinguishable from that of the injunction they request.

8  *American Ass'n of Cosmetology Sch. v. Riley*, 170 F.3d 1250, 1254 (9th Cir. 1999) (declaratory

9  relief action indistinguishable from injunction and therefore barred where both would set aside

10  same agency decisions).  Both seek a ruling that will force Experian to alter the procedures

11  through which it reports the status of pre-bankruptcy tradelines and debts.  Plaintiffs cannot escape

12  the FCRA's prohibition on private injunctive relief "by the simple expedient of labeling an action

13  that really seeks injunctive relief as an action for 'declaratory relief.'"  *Id.*

14  To the extent that Plaintiffs seek declaratory relief as to Experian's purported violations of

15  the CCRAA and the UCL, because the Court has ruled that Plaintiffs may pursue injunctive relief

16  to that effect, there is no bar to their also seeking declaratory relief as to these California state

17  statutes.

18  **IV.    DISPOSITION**

19  For the reasons set forth above, Experian's Motion is GRANTED IN PART and DENIED IN

20  PART.  Specifically, (1) Experian's request for summary judgment as to Plaintiffs' claims that it

21  willfully did not employ reasonable procedures to ensure maximum possible accuracy is DENIED

22  WITH PREJUDICE; (2) Experian's request for summary judgment as to Plaintiffs' claims that it

23  willfully failed to conduct reasonable reinvestigations is DENIED WITHOUT PREJUDICE; (3)

24  Experian's request for summary judgment as to Plaintiffs' claims for injunctive and declaratory

25  relief is GRANTED as to the FCRA and DENIED WITH PREJUDICE as to the CCRAA and the

26  UCL.

27

28

1   IT IS SO ORDERED.

2   DATED:  August 13, 2007

3

4
                                        _____
5                                           DAVID O. CARTER
                                          United States District Judge
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28