Michael W. Sobol (State Bar No. 194857)
(msobol@lchb.com)
Allison Elgart (State Bar No. 241901)
(aelgart@lchb.com)
LIEFF, CABRASER, HEIMANN &
BERNSTEIN, LLP
275 Battery Street, 30th Floor
San Francisco, CA 94111-3339
Telephone:  (415) 956-1000
Facsimile:  (415) 956-1008

Michael A. Caddell (State Bar No. 249469)
(mac@caddellchapman.com)
Cynthia B. Chapman (State Bar No. 164471)
(cbc@caddellchapman.com)
George Y. Niño (State Bar No. 146623)
(gyn@caddellchapman.com)
CADDELL & CHAPMAN
1331 Lamar, Suite 1070
Houston, TX 77010
Telephone: (713) 751-0400
Facsimile: (713) 751-0906

ATTORNEYS FOR PLAINTIFFS

Additional counsel and parties listed on
signature pages

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA SOUTHERN DIVISION

| | |
|---|---|
| TERRI N. WHITE, et al.,<br><br>          Plaintiffs,<br><br>     v.<br><br>EXPERIAN INFORMATION SOLUTIONS, INC.,<br><br>          Defendant.<br><br>and RELATED CASES | Case No. 05-cv-1070 DOC (MLGx) (Lead Case)<br><br>AND RELATED CASES<br>05-cv-1073, 05-cv-7821, 06-cv-3924, 05-cv-1172, 06-cv-5060<br><br>**SETTLEMENT AGREEMENT AND RELEASE**<br><br>JUDGE:  DAVID O. CARTER |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release ("Agreement") is made and entered into by and between (1) Plaintiffs Jose Hernandez, Chester Carter, Robert Radcliffe, Arnold E. Lovell, Jr., Maria Falcon, Clifton C. Seale, III, Robert Randall, Bertram Robison, and Kathryn Pike, individually and as representatives of the "23(b)(2) Settlement Class," as defined below; (2) Equifax Information Services LLC ("Equifax") and each of its parents, predecessors, subsidiaries, affiliates, officers, directors, partners, employees, agents, servants, assignees, counsel, successors, and/or other transferees or representatives; (3) Experian Information Solutions, Inc. ("Experian") and each of its parents, predecessors, subsidiaries, affiliates, officers, directors, partners, employees, agents, servants, assignees, counsel, successors, and/or other transferees or representatives; and (4) TransUnion LLC ("TransUnion") and each of its parents, predecessors, subsidiaries, affiliates, officers, directors, partners, employees, agents, servants, assignees, counsel, successors, and/or other transferees or representatives.  Equifax, Experian, and TransUnion are collectively referred to herein as "Defendants."  The Class Representatives and Defendants are collectively referred to herein as the "Parties."

RECITALS

This Agreement is made for the following purpose and with reference to the following facts:

A.      WHEREAS, on or about October 3, 2005, plaintiff Jose Hernandez filed an action against Defendants in the United States District Court for the Northern District of California, in which he asserted claims on behalf of a putative nationwide class of consumers relating to each of Defendants' procedures for reporting pre-bankruptcy debts of consumers who have obtained discharges through Chapter 7 bankruptcy proceedings (the "Hernandez case");

SETTLEMENT AGREEMENT AND
RELEASE

B.     WHEREAS, on or about November 2, 2005, plaintiff Terri N. White[1] filed separate actions against each of the Defendants in this District, in which she asserted claims on behalf of a putative nationwide class of consumers relating to each of Defendants' procedures for reporting and reinvestigating pre-bankruptcy debts of consumers who have obtained discharges through Chapter 7 bankruptcy proceedings;

C.     WHEREAS, on or about August 11, 2006, plaintiff Jose Hernandez and the White plaintiffs filed three separate Second Amended Consolidated Class Action Complaints, one against each Defendant ("Second Amended Complaints");[2]

D.     WHEREAS, in these actions, the Plaintiffs allege that each Defendant willfully and/or negligently violated and continues to violate the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*, by allegedly failing to maintain reasonable procedures to assure the accurate reporting of debts that have been discharged in bankruptcy.  Plaintiffs contend that each Defendant's current procedures, under which Defendants rely primarily on creditors and public record vendors to report the discharged status of debts and judgments, are unreasonable procedures under the FCRA.   They further allege that Defendants fail to employ reasonable reinvestigation procedures pursuant to the FCRA.  Plaintiffs assert claims for (i) willful and/or negligent violation of Section 1681e(b) of the FCRA and its California counterpart, Cal. Civ. Code Section 1785.14(b), for failure to maintain reasonable procedures to assure maximum possible accuracy; (ii) willful and/or negligent violation of Section 1681i of the FCRA and its California

---

[1] The original named plaintiffs in the action against Equifax were Terri N. White, Robert Radcliffe, Chester Carter, and Milagros Gabrillo.  The original named plaintiffs in the action against Experian were Terri N. White, Robert Radcliffe, Chester Carter, and Arnold E. Lovell, Jr.  The original named plaintiffs in the action against TransUnion were Terri N. White, Robert Radcliffe, Chester Carter, and Maria Falcon.  Collectively, these plaintiffs are referenced herein as the "White plaintiffs."

[2] The Second Amended Complaints added two new plaintiffs: Clifton C. Seale, III, and Alex K. Gidi.  On October 19, 2007, plaintiffs Terri N. White, Alex K. Gidi, and Milagros Gabrillo were dismissed by court order.

- 2 -                          SETTLEMENT AGREEMENT AND
                                        RELEASE

counterpart, Cal. Civ. Code Section 1785.16, for failure to reasonably investigate Consumer disputes regarding the status of the discharged accounts; and (iii) violation of California's Unfair Competition law, Bus. & Prof. Code section 17200, *et seq.*;

E.      WHEREAS, in or around September 2006, Defendants answered the various Second Amended Complaints, denying the allegations therein, denying that the actions are suitable for certification pursuant to Federal Rule of Civil Procedure 23, asserting numerous affirmative defenses that Defendants contend are meritorious notwithstanding their willingness to enter into this Agreement;

F.      WHEREAS, Defendants contend that their current procedures for reporting and reinvestigating the discharged status of debts are both reasonable and comply fully with the requirements of the FCRA and equivalent states laws;

G.      WHEREAS, plaintiff Jose L. Acosta, Jr., filed an action against TransUnion in California Superior Court on or around May 12, 2003, and later filed a new action against TransUnion in federal court on August 14, 2006 joined by plaintiffs Robert Randall and Bertram Robison,[3] and plaintiff Kathryn Pike filed an action in California Superior Court against Equifax on or around October 14, 2005, in which they also assert claims on behalf of a putative California class of Consumers relating to TransUnion's or Equifax's procedures for reporting pre-bankruptcy debts of consumers who have obtained discharges through Chapter 7 bankruptcy proceedings;

H.      WHEREAS, each of these cases have been either filed, transferred, or removed such that they are before the Honorable Judge David O. Carter in the Central District of California under the following case numbers: *Terri N. White, et al. v. Experian Information Solutions, Inc.*, Case No. cv 05-01070 (Lead Case number); *Terri N. White, et al. v. Equifax Information Services LLC*, Case No. cv

---

[3]  Plaintiff Acosta has since been dismissed from the federal court action and also dismissed his California Superior Court action.

SETTLEMENT AGREEMENT AND
RELEASE

- 3 -

05-7821; *Terri N. White, et al. v. Trans Union LLC*, cv 05-1073; *Jose Hernandez v. Equifax Information Services, LLC, et al.*, Case No. cv 06-3924; *Jose L. Acosta et al., v. Trans Union LLC*, *et al.*, Case No. cv 06-5060; and *Kathryn L. Pike v. Equifax Information Services, LLC*, Case No. cv 05-1172 (collectively, the "Litigation");

I.       WHEREAS, Plaintiffs in the various cases have undertaken substantial investigation and formal discovery in the Litigation (including review of tens of thousands of pages of documents, retention and consultation of numerous experts in the fields of credit reporting and consumer bankruptcies, interviews with numerous Consumers, review of thousands of Consumer credit reports, and numerous depositions), in support of the prosecution of the Litigation and settlement negotiations relating thereto;

J.       WHEREAS, on or about August 15, 2007, the Court urged the Parties to proceed to mediation and, since then, the Parties have conducted arms-length and contentious negotiations during the course of a lengthy and complicated mediation that has included six in-person sessions with the Hon. Lourdes Baird (Ret.) and several additional sessions involving counsel for the Parties;

K.       WHEREAS, in the Court's prior rulings and comments to counsel, the Court has urged the Parties to reach agreement concerning alternative procedures for Defendants to report pre-bankruptcy tradelines and has expressed its general approval of procedures involving the use of assumptions regarding the likely discharge status of pre-bankruptcy tradelines, commenting that such procedures "promise to significantly reduce the number of inaccuracies inhering in the credit reports that [Defendants] prepare in the future" (Order Denying Approval of Stip. Pltf. Class, dated Mar. 6, 2007 in C.V.06-5060 DOC (MLGx), at 29:11-13) and observing that the prior settlement attempt in *Pike/Acosta* "was pretty close" (Mot. for Sum. Jud. Hrg Tr., Aug. 15, 2007, Vol. II 23:25-24:2.);

SETTLEMENT AGREEMENT AND RELEASE

L.      WHEREAS, Defendants have objected to the use of assumptions in reporting the discharged status of pre-bankruptcy debts, contending that it would inevitably introduce certain inaccuracies onto the credit Files of consumers and that changing to new procedures based on assumptions poses a risk of harming consumers' credit scores and their ability to obtain credit;

M.      WHEREAS, Plaintiffs believe that the procedures set forth in this Agreement will, on balance, make credit reports more accurate than previously and that the negative impact, if any, on individual consumers' creditworthiness will be outweighed by the benefit to such consumers and collaterally to the public of having more accurate reports;

N.      WHEREAS, in an attempt to improve the overall accuracy of Defendants' post-bankruptcy reporting of pre-bankruptcy debts, the Parties have now agreed to new procedures that make use of reasonable assumptions regarding the likely discharged status of certain pre-bankruptcy tradelines and civil judgments as identified herein, and these procedures and assumptions are crafted so as to reduce the potential harm to consumers from their adoption;

O.      WHEREAS, the Parties are willing to enter into this Agreement because of, among other reasons,  (1) the attendant expense, risks, difficulties, delays, and uncertainties of continued litigation; (2) the Court's stated preference in favor of the adoption of alternative procedures that are the product of negotiation (and that reflect the benefit of the industry's expertise in working with consumer data); (3) the Court's favorable reaction to certain aspects of the alternative procedures contemplated in the rejected *Acosta/Pike* settlement; and (4) the recommendations of the Mediator;

P.      WHEREAS, Plaintiffs and Proposed 23(b)(2) Settlement Class Counsel believe that this Agreement provides fair, reasonable, and adequate relief to the 23(b)(2) Settlement Class, and is in the best interests of the 23(b)(2)

SETTLEMENT AGREEMENT AND
RELEASE

Settlement Class as a whole because they believe that it will increase the accuracy of credit reports that Defendants will issue in the future regarding all or nearly all 23(b)(2) Settlement Class members;

Q.     WHEREAS, Defendants deny all claims asserted against them in the Litigation, deny that class certification would be appropriate if the cases are litigated rather than settled, deny all allegations of wrongdoing and liability, deny that anyone was harmed by the conduct alleged, and deny that the Court has authority to issue an injunction or declaratory relief, but nevertheless desire to settle Plaintiffs' injunctive and declaratory relief claims on the terms and conditions set forth in this Agreement solely for the purpose of avoiding the burden, expense, risk and uncertainty of continuing the proceedings on those issues in the Litigation, and for the purpose of putting to rest the controversies engendered;

**NOW THEREFORE**, IT IS AGREED, by and among the Parties, to settle all claims by Plaintiffs for injunctive relief and declaratory relief in the Litigation on the terms set forth below, subject to the approval of the Court, and, without this Court adjudicating any issue of fact or law except as provided in Part I (Jurisdiction and Venue) and Part VI (Protection Against Future Claims Based on Errors Arising from Updates).

**I.     JURISDICTION AND VENUE**

1.1     The parties agree that this Court has federal question jurisdiction pursuant to 28 U.S.C. Section 1331, as a civil action arising under the laws of the United States, and pursuant to 15 U.S.C. Section 1681(p), as a civil action to enforce liability under the FCRA. Supplemental jurisdiction is conferred on this Court pursuant to 28 U.S.C. Section 1367 over all claims based on State law pleaded in the Litigation on the ground that they are so related to claims within its original

SETTLEMENT AGREEMENT AND RELEASE

jurisdiction that they form part of the same case or controversy under Article III of the U.S. Constitution.

1.2     Defendants do not contest venue.

## II.     APPLICABILITY AND BINDING EFFECT

2.1     Except as set forth elsewhere in this Agreement, the obligations agreed to herein apply to and are binding upon the Parties and any successors or assigns.

## III.     DEFINITIONS

3.1     As used in this Agreement, the terms defined below shall have the meanings assigned to them when capitalized in the same fashion as in this Part III, and any other terms that relate to the credit reporting industry shall have the customary meaning accorded to those terms in the credit reporting industry.

3.2     "Agreed Bankruptcy Coding"

a.     For civil judgments, "Agreed Bankruptcy Coding" means the Defendant shall change the status of the judgment to indicate that the judgment was discharged in bankruptcy and that no amount remains owing on the judgment.  This may be accomplished by status code, public record type, narrative code, or other reporting so long as the updated record is adequately described as discharged, dismissed, satisfied, paid, included in bankruptcy or vacated.  The Defendant may use, *inter alia* and without limitation, the terminology "civil judgment included in bankruptcy" or "included in bankruptcy", or -- to accommodate field restrictions or other technological constraints -- a reasonable abbreviation of this phrase, such as "CVL JGMT IN BKCY."  Each may employ reasonable definitional language for

SETTLEMENT AGREEMENT AND RELEASE

this terminology, in its communications with furnishers, consistent with the terms of this Agreement.  The Defendant will also set the amount of the judgment equal to zero or, in their sole discretion, they may blank out that field, so as to indicate that no debt is due or owing after the discharge date.  Alternatively, the Defendant may delete or suppress the judgment from the File.

b.  For tradelines or Collection Accounts, "Agreed Bankruptcy Coding" means the Defendant shall code the tradeline or Collection Account with a Consumer Information Indicator (CII Code; Base segment field 38) of E (or such other Defendant-specific or Metro 1 coding equivalent) to indicate that the account is discharged in the Consumer's Chapter 7 bankruptcy (e.g., by use of the terminology "included in bankruptcy") and shall update the tradeline or Collection Account to reflect a zero-dollar or blank account balance and past due balance as to the Consumer who received the bankruptcy discharge, so as to indicate that no debt is due or owing by the Consumer after the discharge date.  Nothing in this Agreement shall prevent or sanction the Defendant from deleting or suppressing tradelines or Collection Accounts from the File.  Defendants will also implement reasonable procedures designed to prevent the subsequent reporting of a new status, rating, account balance, past due balance, Major or Minor Derogatory payment history, or narrative for tradelines or Collection Accounts as to such tradelines or Collection Accounts that have been updated

SETTLEMENT AGREEMENT AND RELEASE

pursuant hereto (except where such reporting is permitted by other provisions of this Agreement).

3.3 "Agreement" means this Settlement Agreement and Release.

3.4 "Approval Date" means the date the Court enters the Approval Order.

3.5 "Approval Hearing" means the hearing at which the Court will consider and finally decide whether to approve this Settlement, enter the Judgment and make such other rulings as are contemplated by this Settlement. The Approval Hearing shall not be scheduled for a date less than 90 days following CAFA Notice.

3.6 "Approval Order" means a final judgment and order of dismissal with prejudice with respect to Plaintiffs' claims for declaratory and injunctive relief to be entered by the Court in the Litigation and in substantially the same form as Exhibit A, attached hereto. The Judgment shall declare (1) pursuant to Federal Rule of Civil Procedure 54(b), the Court has determined there is no just reason to delay final judgment with respect to declaratory and injunctive relief claims; and (2) that the procedures set forth herein are reasonably calculated to ensure maximum possible accuracy and that such procedures shall be conclusively deemed to comply with the Fair Credit Reporting Act, 15 U.S.C. Section 1681 *et seq.*, including, but not limited to, Section 1681e(b), Section 1681(i), and analogous standards under FCRA State Equivalents.

3.7 "Bankruptcy Date" means the month during which—according to the applicable Defendant's computer systems—a Consumer filed a bankruptcy petition that later led to a public record in the Consumer's File of the entry of a discharge order pursuant to Chapter 7 of the United States Bankruptcy Code. The "Bankruptcy Date" may be

reflected as the "date filed" in the public records section of a Consumer's File.

3.8   "Closed Account" means that an account is reporting with a zero balance and has a narrative or other code indicating any of the following: (a) that the account has been closed by a consumer or creditor; (b) that the account has a Current Status; (c) that the account has been transferred, sold, lost or stolen; (d) or that the account is an installment loan that has been paid in full.

3.9   "Collection Account" means an account identified by a Defendant as reflecting the collection activity of a third party collection agency or debt buyer on behalf of the original creditor.

3.10   A "Consumer" is an individual, residing in the United States of America or its territories, whose File in a Defendant's systems includes a public record entry reporting an order of discharge pursuant to Chapter 7 of the United States Bankruptcy Code.

3.11   "Court" means the United States District Court for the Central District of California.

3.12   "Current Status" means an account status or rating indicating that, as of the date of last reporting, there is no outstanding, overdue, and delinquent balance currently due.

3.13   "Date of Initial Delinquency" or "DID" means the first month during which a Major or Minor Derogatory event is reported for a tradeline, as shown in the applicable Defendant's records.  Based upon differences in reporting methods, each Defendant may, at its option, use such dates as the Purge Date, Date of First Delinquency or Date of Last Activity to determine the DID for purposes of compliance with this Agreement.

SETTLEMENT AGREEMENT AND RELEASE

3.14   "<u>Defendants</u>" mean Equifax Information Services LLC, Experian Information Solutions, Inc, and TransUnion LLC.

3.15   "<u>Discharge Date</u>" means the month shown by a Defendant in the public records section of a Consumer's File as reflecting a discharge pursuant to Chapter 7 of the United States Bankruptcy Code.  The "Discharge Date" may be reflected as the "date paid" in the public records section of a Consumer's File.

3.16   "<u>Equifax</u>" means Equifax Information Services LLC.

3.17   "<u>Equifax's Counsel</u>" means Kilpatrick Stockton, LLP.

3.18   "<u>Experian</u>" means Experian Information Solutions, Inc.

3.19   "<u>Experian's Counsel</u>" means Jones Day.

3.20   "<u>FCRA</u>" means the federal Fair Credit Reporting Act, 15 U.S.C. Section 1681 *et seq*.

3.21   "<u>FCRA State Equivalents</u>" means any statute or regulation of any state, U.S. territory, the District of Columbia, or Puerto Rico, that has the purpose or effect of regulating the collection or reporting of consumer credit information subject to the FCRA (including, without limitation, the California Consumer Credit Reporting Agencies Act ("CCRAA"), Cal. Civ. Code Section  1785.1 *et seq*.).

3.22   "<u>File</u>" means a "file," as defined in 15 U.S.C. Section 1681a(g), in a Defendant's computer system that contains a public record of a Consumer having received a discharge pursuant to Chapter 7 of the United States Bankruptcy Code.

3.23   "<u>Final</u>" refers to this Court's entry of the Approval Order with respect to Plaintiffs' claims for declaratory and injunctive relief that has become final because either (i) no appeal of the Judgment has been filed and the time within which an appeal may be filed has lapsed, or

SETTLEMENT AGREEMENT AND RELEASE

(ii) if a timely appeal has been filed, the appeal is finally resolved, with no possibility of further appellate review, resulting in final judicial approval of this Settlement.  For purposes of this paragraph, the term "appeal" includes writ proceedings.

3.24   "Last Reported Status" means the account rating or status of a tradeline (e.g., current, past due 30 days, charge-off) as of the date the respective creditor last reported information relating to that tradeline to a Defendant.

3.25   The "Litigated Issues" means: (1) Defendants' post-discharge reporting of Consumer credit information relating to pre-bankruptcy debts or civil judgments; (2) Defendants' reinvestigations of Consumer disputes asserting that certain debts or civil judgments had been discharged in bankruptcy but were not being reported as such in Defendants' credit files; and (3) all other issues actually pleaded in the complaints on file in the Litigation or reasonably related thereto.

3.26   "Litigation" means *Terri N. White, et al. v. Experian Information Solutions, Inc.*, Case No. cv 05-01070 (Lead Case number); *Terri N. White, et al. v. Equifax Information Services LLC*, Case No. cv 05-7821; *Terri N. White, et al. v. Trans Union LLC*, cv 05-1073; *Jose Hernandez v. Equifax Information Services*, LLC, et al., Case No. cv 06-3924; *Jose L. Acosta et al., v. Trans Union LLC, et al*., Case No. cv 06-5060; and *Kathryn L. Pike v. Equifax Information Services, LLC*, Case No. cv 05-1172, all of which are pending before the Court.

3.27   "Minor Derogatory" means an account rating or status of late by 30 to 119 days.  If a Defendant does not, in its discretion, include "deed in lieu," "voluntary repossession" or "voluntarily surrendered" as a Major

SETTLEMENT AGREEMENT AND
RELEASE

Derogatory status for purposes of this Agreement, it shall so include them as a Minor Derogatory status.

3.28   "Major Derogatory" means an account rating or status of charge off, in collections, repossession, foreclosure, foreclosure proceedings started, skip cannot locate, paid by dealer, or any account rating or status of late by 120 days or more.  Defendants may, at their discretion, also include an account rating or status of "deed in lieu," "voluntary repossession" or "voluntarily surrendered" as a "Major Derogatory" status.  "Major Derogatory" does not include Collection Accounts.

3.29   "Parties" means Plaintiffs, Equifax, Experian, and TransUnion.

3.30   "Plaintiffs" means Jose Hernandez, Chester Carter, Robert Radcliffe, Arnold E. Lovell, Jr., Maria Falcon, Clifton C. Seale, III, Robert Randall, Bertram Robison, and Kathryn Pike.

3.31   "Proposed 23(b)(2) Settlement Class Counsel" means Daniel Wolf, Esq., Law Offices Of Daniel Wolf; Leonard A. Bennett, Esq., Consumer Litigation Associates, P.C.; Mitchell A. Toups, Esq., Weller, Green, Toups & Terrell, L.L.P.; Michael Caddell, Esq, Caddell & Chapman; Michael W. Sobol, Esq., Lieff Cabraser Heimann & Bernstein; Charles W. Juntikka, Esq., Charles Juntikka & Associates; Charles Delbaum and Stuart T. Rossman, National Consumer Law Center; and Lee A. Sherman, Esq., Callahan, McCune & Willis, APLC.

3.32   "Released Claims" means all past, present, and future claims for injunctive relief and declaratory relief that arise out of the Litigated Issues under any federal or state statute or common law or other theory that was alleged or could have been alleged, including but not limited to any and all claims under the FCRA, FCRA State Equivalents, credit

SETTLEMENT AGREEMENT AND RELEASE

reporting statutes, deceptive or unfair practices statutes, or any other statute, regulation or judicial interpretation.  "Released Claims" for injunctive relief and declaratory relief include any and all claims, actions, demands, causes of action, suits, obligations, rights or liabilities, of any nature and description whatsoever—known or unknown, present or future, concealed or hidden, fixed or contingent, anticipated or unanticipated—for injunctive relief and declaratory relief whether based in tort, contract, law, equity or otherwise that arise out of the Litigated Issues and that have been or could have been asserted by Plaintiffs or the 23(b)(2) Settlement Class members or any of their respective heirs, spouses, executors, administrators, partners, attorneys, predecessors, successors, assigns, agents and/or representatives, and/or anyone acting or purporting to act on their behalf.  "Released Claims" shall not include any claims permitted under Section VIII (Dispute Resolution Process) of this Agreement.

3.33 "Released Parties" means and refers to:  (a) TransUnion LLC and its present, former and future officers, directors, partners, employees, agents, attorneys, servants, heirs, administrators, executors, members, member entities, shareholders, predecessors, successors, affiliates, subsidiaries, parents, representatives, trustees, principals, insurers, vendors and assigns, jointly and severally; (b) Equifax Information Services LLC and its present, former and future officers, directors, partners, employees, agents, attorneys, servants, heirs, administrators, executors, members, member entities, shareholders, predecessors, successors, affiliates (including, without limitation, CSC Credit Services, Inc.), subsidiaries, parents, representatives, trustees, principals, insurers, vendors and assigns, jointly and severally; and (c)

SETTLEMENT AGREEMENT AND RELEASE

Experian Information Solutions, Inc. and its present, former and future officers, directors, partners, employees, agents, attorneys, servants, heirs, administrators, executors, members, member entities, shareholders, predecessors, successors, affiliates, subsidiaries, parents, representatives, trustees, principals, insurers, vendors and assigns, jointly and severally.  With the exception of CSC Credit Services, Inc., this release is not intended to govern or apply to any affiliate or reseller of Defendants' consumer reports unless such affiliate or reseller shares common ownership.

3.34    "Settlement" means the Agreement between Plaintiffs, on behalf of themselves and as proposed representatives of the 23(b)(2) Settlement Class, and Equifax, Experian, and TransUnion to settle and compromise all of Plaintiffs' claims in the Litigation for declaratory and injunctive relief (and all issues relating thereto) fully, finally and forever, as memorialized in this Agreement and the accompanying documents attached hereto.

3.35    "23(b)(2) Settlement Class" means all Consumers whose credit Files include a Discharge Date prior to the month of the Approval Date.

3.36    "Status Quo Ante" means the restoration of the Parties to their respective positions in the Litigation as of January 30, 2008.

3.37    "TransUnion" means TransUnion LLC.

3.38    "TransUnion's Counsel" means Stroock & Stroock & Lavan LLP.

## IV.   IMPLEMENTATION OF REPORTING CHANGES

4.1    Retroactive Scrub: Defendants will make the changes identified in this section to all active Files, including, for Equifax, Files owned by CSC Credit Services, Inc., in the computer systems that they use to generate credit reports for commercial distribution; provided, however,

- 15 -

Defendants may but are not obligated to update archived Files, except to the extent archived Files are accessed to generate current credit reports.  Defendants will update each pre-bankruptcy judgment, tradeline, or Collection Account in such Files, or ensure that credit reports generated from such Files display, in accord with the procedures set forth below.  In determining which set of procedures to apply to an entry, Defendants may make reasonable assumptions based upon other information within the File or provided by the Consumer.

a.      Pre-bankruptcy civil judgments shall be treated as follows:

   (i)  The Defendant shall identify each public record judgment in the File that is reported with either a month filed or a month of judgment (or both) that predates or is equal to the Bankruptcy Date.

   (ii)  From these judgments, the Defendant shall exclude any judgment that is reported as vacated, satisfied, paid, settled or included in bankruptcy.

   (iii)  For judgments not so excluded, the Defendant shall apply the Agreed Bankruptcy Coding.

   (iv)  Notwithstanding the above, nothing herein shall require the Defendant to apply the Agreed Bankruptcy Coding to any item it reasonably assumes or believes to be statutorily non-dischargeable, including without limitation: (i) judgments obtained by governmental child support agencies, taxing authorities, or arising out of governmental fines or penalties; (ii) tax liens, whether or not reduced to judgment; (iii) judgments obtained by Sallie Mae or otherwise arising out of non-dischargeable

- 16 -

SETTLEMENT AGREEMENT AND RELEASE

student loan obligations; (iv) judgments relating to alimony or other domestic support or property settlement obligations; or (v) judgments that were the subject of a successful objection to discharge.  The Defendant may thereafter continue to report the judgment as owing and will not be required to change the record, absent clear evidence that the debt has, in fact, been discharged.

b.   Pre-bankruptcy tradelines with a Metro 2 Portfolio Type of I (Installment) or M (Mortgage) (or equivalent) shall be treated as follows:

(i)   The Defendant shall identify each tradeline with a Metro 2 Portfolio Type of I or M (or such other Defendant-specific or Metro 1 coding equivalent) that is reported in the File with a date opened month that predates or is equal to the month of the Bankruptcy Date and is not a Closed Account as of the Bankruptcy Date or, at the Defendant's option, the date the scrubbing is accomplished.

(ii)   From these tradelines, the Defendant shall undertake to exclude any tradeline that:

(A)   is reported with a Metro 2 account code type (or such other Defendant-specific or Metro 1 coding equivalent) of 12 (Education), 50 (Family Support), 65, 66, 67, 68, 69, 70, 71 (Government Fine), 72, 73, 74, 75, 93 (Child Support), 94 (Spouse Support per Metro 1) or 95 (Attorney Fees);

(B)   is reported with an account status reflecting a Chapter 7 bankruptcy;

SETTLEMENT AGREEMENT AND
RELEASE

- 17 -

(C)     is reported with a Metro 2 Consumer Information Indicator of R (Reaffirmation of Debt) or 2A (Lease Assumption) or such other Defendant-specific or Metro 1 coding equivalent; and/or

(D)     is reported with an indication that property was redeemed, voluntarily surrendered, or was subject to a deed in lieu of foreclosure.

(iii)     For tradelines not so excluded, where the Last Reported Status of the tradeline in the File is a Major Derogatory status, the Defendant shall apply the Agreed Bankruptcy Coding.

c.     Pre-bankruptcy tradelines with a Metro 2 Portfolio Type of "R" (Revolving), "C" (Line of Credit) or "O" (Open Account) (or equivalent, or indeterminable) shall be treated as follows:

(i)     The Defendant shall identify each tradeline in a File with a Metro 2 Portfolio Type of R, C or O (or such other Defendant-specific or Metro 1 coding equivalent) that is reported with a "date opened" month that predates or is equal to the Bankruptcy Date and is not a Closed Account as of the Bankruptcy Date or, at the Defendant's option, the date the scrubbing is accomplished.

(ii)     From these tradelines, the Defendant shall undertake to exclude any tradeline that:

(A)     is reported with a Metro 2 account code type (or such other Defendant-specific or Metro 1 coding equivalent) of 12 (Education), 50 (Family Support), 65, 66, 67, 68, 69, 70, 71 (Government Fine), 72, 73, 74, 75,

SETTLEMENT AGREEMENT AND RELEASE

93 (Child Support), 94 (Spouse Support per Metro 1) or 95 (Attorney Fees);

(B)     is reported with an account status reflecting a Chapter 7 bankruptcy;

(C)     is reported with a Metro 2 Consumer Information Indicator of R (Reaffirmation of Debt) or 2A (Lease Assumption) or such other Defendant-specific or Metro 1 coding equivalent; and/or

(D)     is reported with an indication that property was redeemed, voluntarily surrendered, or was subject to a deed in lieu of foreclosure.

(iii)     For each tradeline not so excluded, the Defendant will change the tradeline according to the following rules:

(A)     If the tradeline contains a DID that predates or is equal to the Bankruptcy Date and the Last Reported Status in the File is a Major Derogatory status, then the Defendant shall apply the Agreed Bankruptcy Coding;

(B)     If the tradeline contains a DID that postdates the Bankruptcy Date and the Bankruptcy Date is on or any date up to six months preceding the date of the file output used to determine and accomplish the changes ordered herein and the Last Reported Status of the tradeline in the File is a Major or Minor Derogatory account status, the Defendant shall apply the Agreed Bankruptcy Coding; and

(C)     If the tradeline contains a DID that postdates the Bankruptcy Date and the Bankruptcy Date is earlier than

SETTLEMENT AGREEMENT AND RELEASE

six months before the date of the file output used to determine and accomplish the changes ordered herein and the Last Reported Status of the tradeline in the File is a Major Derogatory status, the Defendant shall apply the Agreed Bankruptcy Coding.

(iv) The provisions of this Section 4.1(c) are not intended to apply to tradelines coded as Authorized User.

d.   Pre-bankruptcy Collection Accounts shall be treated as follows:

(i) The Defendant will identify each tradeline identifiable as a Collection Account (by means readily available, to include, by example only, account type, subscriber code, industry code, account status or account narrative), that is not reported in the File as a Closed Account, reaffirmed or as a "lease assumption" as of the Bankruptcy Date or, at the Defendant's option, the date the scrubbing is accomplished with any of the following conditions:  a DID that predates or is equal to the Bankruptcy Date, a date opened month that predates or is equal to the Bankruptcy Date, or a date referred to collections month that predates or is equal to the Bankruptcy Date.

(ii) From these accounts, the Defendant shall undertake to exclude any Collection Account that is reported

(A)   with a Metro 2 account code type (or such other Defendant-specific or Metro 1 coding equivalent) of 12 (Education), 50 (Family Support), 65, 66, 67, 68, 69, 70, 71 (Government Fine), 72, 73, 74, 75, 93 (Child Support), 94 (Spouse Support per Metro 1) or 95 (Attorney Fees),

- 20 -

SETTLEMENT AGREEMENT AND RELEASE

or that it can reasonably determine relates to a debt
qualifying for one of these code types; and/or

(B)     is reported with an account status reflecting a
Chapter 7 bankruptcy.

(iii)     For each such Collection Account not so excluded, the
Defendant shall apply the Agreed Bankruptcy Coding.

e.     Nothing shall preclude a Defendant from applying the Agreed
Bankruptcy Coding to a tradeline or Collection Account that
would have qualified for inclusion in the Retroactive Scrub but
for the fact that no information was available regarding when
that tradeline or Collection Account was opened.

4.2     Prospective Relief Reporting Changes: Defendants agree to make the
changes identified in this section to Files of Consumers for whom
Defendants receive notice of a Chapter 7 discharge after the retroactive
scrub procedures described in Paragraph 4.1 have been fully
implemented.  Within 60 days of adding a public record entry
reflecting a Chapter 7 discharge to a Consumer's credit File,
Defendants will update each pre-bankruptcy judgment, tradeline, or
Collection Account in that File, or ensure that credit reports generated
from such Files display, in accord with the procedures set forth below.
In determining which set of procedures to apply to an entry,
Defendants may make reasonable assumptions based upon information
within the File or provided by the Consumer.

a.     Pre-bankruptcy civil judgments shall be treated as follows:

(i)     The Defendant shall identify each public record judgment
in the File that is reported with either a month filed or a

SETTLEMENT AGREEMENT AND
RELEASE

month of judgment (or both) that predates or is equal to the Bankruptcy Date.

(ii)   From these judgments, the Defendant shall exclude any judgment that is reported as vacated, satisfied, paid, settled or included in bankruptcy.

(iii)   For judgments not so excluded, the Defendant shall apply the Agreed Bankruptcy Coding.

(iv)   Notwithstanding the above, nothing herein shall require the Defendant to apply the Agreed Bankruptcy Coding to any item it reasonably assumes or believes to be statutorily non dischargeable, including without limitation:  (i) judgments obtained by governmental child support agencies, taxing authorities, or arising out of governmental fines or penalties; (ii) tax liens, whether or not reduced to judgment; (iii) judgments obtained by Sallie Mae or arising out of non-dischargeable student loan obligations; (iv) judgments relating to alimony or other domestic support or property settlement obligations; or (v) judgments that were the subject of a successful objection to discharge.  The Defendant may thereafter continue to report the judgment as owing and will not be required to change the record.

b.   Pre-bankruptcy tradelines with a Metro 2 Portfolio Type of I (Installment) or M (Mortgage) (or equivalent) shall be treated as follows:

(i)   The Defendant shall identify each tradeline with a Metro 2 Portfolio Type of I or M (or such other Defendant-

- 22 -

SETTLEMENT AGREEMENT AND RELEASE

specific or Metro 1 coding equivalent) that is reported in the File with a date opened that predates or is equal either to the month of or to the month prior to the Bankruptcy Date and is not reported in the File as a Closed Account.

(ii)     From these tradelines, the Defendant shall undertake to exclude any tradeline that, as of the Bankruptcy Date or, at the Defendant's option, at the time the scrubbing is accomplished:

(A)     is reported with a Metro 2 account code type (or such other Defendant-specific or Metro 1 coding equivalent) of 12 (Education), 50 (Family Support), 65, 66, 67, 68, 69, 70, 71 (Government Fine), 72, 73, 74, 75, 93 (Child Support), 94 (Spouse Support per Metro 1) or 95 (Attorney Fees);

(B)     is reported with an account status reflecting a Chapter 7 bankruptcy;

(C)     is reported with a Metro 2 Consumer Information Indicator of R (Reaffirmation of Debt) or 2A (Lease Assumption) or such other Defendant-specific or Metro 1 coding equivalent;

(D)     is reported with an indication that property was redeemed, voluntarily surrendered, or was subject to a deed in lieu of foreclosure; or

(E)     is reporting either (a) in a Current Status or (b) with a $0 balance and in a status other than Major Derogatory.

(iii)     For tradelines not so excluded, the Defendant shall apply the Agreed Bankruptcy Coding.

SETTLEMENT AGREEMENT AND RELEASE

- 23 -

c. Pre-bankruptcy tradelines with a Metro 2 Portfolio Type of "R" (Revolving), "C" (Line of Credit) or "O" (Open Account) (or equivalent, or indeterminable) shall be treated as follows:

 (i) The Defendant shall identify each tradeline with a Metro 2 Portfolio Type of R, C or O (or such other Defendant-specific or Metro 1 coding equivalent) that is reported with a date opened that predates or is equal either to the month of or to the month prior to the Bankruptcy Date and is not reported in the File as a Closed Account.

 (ii) From these tradelines, the Defendant shall undertake to exclude any tradeline that, as of the Bankruptcy Date or, at the Defendant's option, at the time the scrubbing is accomplished:

  (A) is reported with a Metro 2 account code type (or such other Defendant-specific or Metro 1 coding equivalent) of 12 (Education), 50 (Family Support), 65, 66, 67, 68, 69, 70, 71 (Government Fine), 72, 73, 74, 75, or 93 (Child Support), 94 (Spouse Support per Metro 1) or 95 (Attorney Fees);

  (B) is reported with an account status reflecting a Chapter 7 bankruptcy;

  (C) is reported with a Metro 2 Consumer Information Indicator of R (Reaffirmation of Debt) or 2A (Lease Assumption) or such other Defendant-specific or Metro 1 coding equivalent;

SETTLEMENT AGREEMENT AND
RELEASE

(D)  is reported with an indication that property was redeemed, voluntarily surrendered, or was subject to a deed in lieu of foreclosure; or

(E)  is reporting either (a) in a Current Status or (b) with a $0 balance and in a status other than Major Derogatory.

(iii)  For tradelines not so excluded, the Defendant shall apply the Agreed Bankruptcy Coding.

(iv)  The provisions of this Section 4.2(c) are not intended to apply to tradelines coded as Authorized User.

d.  Pre-bankruptcy Collection Accounts shall be treated as follows:

(i)  The Defendant will identify each tradeline identifiable as a collection item (by means readily available, to include, by example only, account type, subscriber code, industry code, account status or account narrative), that is not reported in the File as a Closed Account, reaffirmed or as a "lease assumption" as of the Bankruptcy Date or, at the Defendant's option, the date the scrubbing is accomplished with any of the following conditions:  a DID that predates or is equal to the Bankruptcy Date, a date opened that predates or is equal either to the month of or to the month prior to the Bankruptcy Date, or a date referred to collection that predates or is equal either to the month of or to the month prior to the Bankruptcy Date.

(ii)  From these accounts, the Defendant may exclude any Collection Account that is reported:

(A)  with a Metro 2 account code type (or such other Defendant-specific or Metro 1 coding equivalent) of 12

SETTLEMENT AGREEMENT AND RELEASE

(Education), 50 (Family Support), 65, 66, 67, 68, 69, 70, 71 (Government Fine), 72, 73, 74, 75, 93 (Child Support), 94 (Spouse Support per Metro 1) or 95 (Attorney Fees), or that it can reasonably determine relates to a debt qualifying for one of these code types; or

(B)     is reported with an account status reflecting a Chapter 7 bankruptcy.

(iii)   For each such Collection Account not so excluded, the Defendant shall apply the Agreed Bankruptcy Coding.

(iv)   If, after the update in the previous paragraph is completed, a furnisher reports a Collection Account that had not previously been reported on the credit File, which has a DID that predates or is equal to the Bankruptcy Date, a date opened that predates or is equal either to the month of or to the month prior to the Bankruptcy Date, or a date referred to collection that predates or is equal either to the month of or to the month prior to the Bankruptcy Date, the Defendant shall update the account in accordance with the previous paragraph.  In the alternative, the Defendant can choose not to add the new Collection Account to the Consumer's File.

e.     Nothing shall preclude a Defendant from applying the Agreed Bankruptcy Coding to a tradeline or Collection Account that would have qualified for application of the changes identified in this section 4.2 but for the fact that no information was available regarding when that tradeline or Collection Account was opened.

SETTLEMENT AGREEMENT AND RELEASE

4.3     Bankruptcy Status Dates:  Defendants will implement reasonable procedures designed to prevent updating the date of last update (Date Reported, Balance Date, Date Verified or, for Experian, date of status, last reported, and balance date) to a date that is more than one month after the Discharge Date in connection with an update of any tradeline, judgment or Collection Account pursuant to the procedures in Paragraphs 4.1 or 4.2; provided, however, that this provision shall not prohibit Defendants from reporting a later date of last update to reflect that information has been received from a furnisher on a date that is more than one month after the Discharge Date, whether or not such furnisher update is accepted or rejected pursuant to the procedures set forth in Sections 4.1, 4.2 and 4.4 of this Agreement; provided further, however, that any such reporting of a later date of last update shall not change either the "Included in Bankruptcy" date or the "Purge Date."

4.4     Override of Update Procedures:

a.     If, either before or after a tradeline or Collection Account is updated pursuant to the procedures in Paragraphs 4.1 or 4.2, (a) a furnisher reports to the Defendant that a tradeline or Collection Account for that furnisher should not be reported with a status of included or discharged in bankruptcy through the use of a special Consumer Information Indicator (such as CII Code Q or a Metro I equivalent) or (b) the Defendant determines that a debt in the tradeline or Collection Account was non-dischargeable, the Defendant may report such tradeline or Collection Account in a non-bankruptcy status, provided that the Defendant has not previously received truthful, objectively verifiable information directly from the Consumer in connection with a non-

SETTLEMENT AGREEMENT AND
RELEASE

frivolous/non-irrelevant request for reinvestigation indicating the debt was in fact discharged.

b.      If a Consumer submits a non-frivolous/non-irrelevant request for reinvestigation that claims a judgment, tradeline, or Collection Account updated by a Defendant to reflect a discharge pursuant to the procedures in Paragraphs 4.1 or 4.2 should not have been so updated because the judgment, tradeline, or Collection Account had not been discharged in bankruptcy, the Defendant may issue a Consumer Dispute Verification form ("CDV") or Automated Consumer Dispute Verification ("ACDV") to the relevant furnisher and, upon receiving the furnisher's response to the CDV or ACDV, it may thereafter report information consistent with the information the furnisher provided.

4.5     Notice of New Procedures:  Defendants agree to notify furnishers of the new procedures set forth herein as well as of their responsibility to report accurate information about accounts discharged in bankruptcy. Such notification may be given in any reasonable manner as the Defendant may choose as part of or in connection with Defendant's notification to furnishers, pursuant to 15 U.S.C. § 1681e(d)(1), of furnishers' responsibilities under the Fair Credit Reporting Act, and addition of such notification to (or transmission with) the form described in 16 C.F.R. Part 698, Appendix G, shall not cause any Defendant to lose the legal benefit of the safe harbor provisions set forth in 15 U.S.C. § 1681e(d)(2) and 16 C.F.R. § 698.2, or of any analogous safe harbor provision of state law.  Nothing in this Agreement shall require a Defendant to notify a furnisher when it applies the Agreed Bankruptcy Coding to alter its reporting of the civil

- 28 -

SETTLEMENT AGREEMENT AND RELEASE

judgments, tradelines, and/or Collection Accounts in a specific Consumer's File or when it otherwise alters a File pursuant to the provisions of this Agreement.

4.6     <u>Implementation Grace Period</u>:  Defendants shall not be in violation of this Agreement based upon any failure to comply that is a result of inadvertent programming errors or due to a failure to predict the consequences of applying the procedures herein to data reported in the Metro 1 format.  Defendants shall correct any such non-compliance promptly after it is brought to their attention and shall take reasonable steps to confirm the effectiveness of any programming changes.

4.7     <u>Preservation of Reinvestigation Rights</u>:  Nothing in this Agreement shall waive any Consumer's right to request a reinvestigation pursuant to 15 U.S.C. § 1681i or excuse any Defendant from its going-forward obligations under 15 U.S.C. § 1681i, except as otherwise provided herein.

4.8     Nothing in this Agreement shall preclude Defendants from correcting erroneous reporting that a consumer has or has not filed for bankruptcy or has or has not received a bankruptcy discharge or to correct any reporting resulting from a furnisher's coding error.

4.9     This Agreement does not require any changes to a tradeline, judgment, Collection Account, or any portion of a File, except as provided for herein.

**V.     TIMETABLE FOR IMPLEMENTATION OF REPORTING CHANGES**

5.1     Defendants shall make reasonable and good faith efforts to implement the reporting changes contemplated herein prior to September 1, 2008. Notwithstanding this Agreement, if a Defendant is unable to comply

SETTLEMENT AGREEMENT AND RELEASE

with this deadline for good cause, the Defendant shall receive a reasonable extension of time sufficient to permit implementation to be completed.  Defendants shall work together in good faith to reasonably coordinate the timing of implementation.  Notwithstanding these provisions, Defendants shall complete implementation of these changes on or before March 31, 2009.

5.2     Notwithstanding the foregoing, if a credit file exists for purposes of holding information that could not be matched to a specific Consumer's File, such file need not be updated as set forth in this Agreement until the month following the date on which such file is matched to a specific Consumer's File.

## VI.     PROTECTION AGAINST FUTURE CLAIMS BASED ON ERRORS ARISING FROM UPDATES

6.1     The Parties jointly request that the Court make an express finding, as set forth in the Approval Order attached hereto as Exhibit A, that the new procedures adopted herein are "reasonable procedures to assure maximum possible accuracy" as required of the Defendants under Section 1681e(b) and Section 1681i of the Fair Credit Reporting Act and under the comparable standards of FCRA State Equivalents.

6.2     The new procedures, as described in Part IV above, require Defendants to assume that certain categories of pre-bankruptcy consumer debts have been discharged in Chapter 7 bankruptcies based on the statistical likelihood of discharge of these categories of debt, and without either the affected creditors or Consumers reporting the debt to Defendants as having been discharged.  Plaintiffs contend that adoption of the procedures herein will improve the overall accuracy of the reporting of

SETTLEMENT AGREEMENT AND RELEASE

pre-bankruptcy debts for such Consumers and that they have offered substantial evidence to support such contention.

6.3   Defendants believe that the new procedures will introduce some inaccurate, potentially harmful information onto the credit Files of certain 23(b)(2) Settlement Class members as well as those of certain Consumers who would be subject to the new procedures on a prospective basis.  Defendants contend that this information may impair those Consumers' creditworthiness, including their ability to use pre-bankruptcy accounts that they may have intended to exclude from the bankruptcy discharge and their ability to obtain new post-bankruptcy credit.

6.4   The Parties have negotiated at length to craft procedures that attempt to provide benefits to many Consumers while attempting to manage any harm to the creditworthiness of other affected Consumers.  For this reason, Plaintiffs and Defendants believe that, despite the Defendants' assertion of potential harm to certain Consumers' creditworthiness and the reasonableness of their existing procedures, the new procedures are a reasonable procedure to assure the maximum possible accuracy of the information appearing in Defendants' Files for Consumers receiving Chapter 7 discharges.

6.5   The Parties intend this Agreement to preclude all future litigation under the FCRA or FCRA State Equivalents of the following issue: the reasonableness of Defendants' employment of the procedures set forth in this Agreement for handling the Litigated Issues.  This includes, without limitation, a specific intent to prevent the 23(b)(2) Settlement Class from contending, absent a fundamental change in circumstance, that the procedures set forth in this Agreement are not reasonably

SETTLEMENT AGREEMENT AND
RELEASE

designed to assure maximum possible accuracy under §1681e(b) of the FCRA and under the analogous standards of FCRA State Equivalents.

6.6    The statement of intention regarding preclusive effect identified in Paragraph 6.5 is a material part of the consideration provided by Plaintiffs to Defendants in entering this Agreement.  After substantial discovery and extensive negotiations, Proposed 23(b)(2) Settlement Class Counsel make this statement of intention regarding preclusive effect on behalf of all members of the 23(b)(2) Settlement Class to reasonably assure the maximum possible accuracy of their credit reports.

## VII.  COURT APPROVAL OF THE AGREEMENT

7.1    <u>Motion for Approval</u>:  Upon execution of this Agreement, the Parties and their counsel shall, bearing their own costs of doing so, expeditiously seek approval of this Agreement from the Court, beginning with Proposed 23(b)(2) Settlement Class Counsel filing a Motion for Approval of the Settlement, which would attach the Approval Order substantially similar in form to Exhibit A, attached hereto.  The Parties shall cooperate in presenting such papers to the Court as may be necessary to effectuate the intent and purposes of this Agreement.

7.2    <u>Approval Order</u>: The Parties and their counsel shall, bearing their own costs of doing so, expeditiously seek entry of an Approval Order pursuant to Federal Rule of Civil Procedure 54(b) substantially similar in form to Exhibit A, attached hereto and shall expressly stipulate that there is no just reason to delay entry of this Approval Order until a final resolution of the Litigation is reached.

SETTLEMENT AGREEMENT AND RELEASE

7.3 <u>Notice Pursuant to Class Action Fairness Act</u>:  It is Defendants' responsibility to comply with the notice provisions of 28 U.S.C. § 1715 at their own cost.  If at any point, any Plaintiff, any member of the 23(b)(2) Settlement Class, the Court, any state or federal officer, or any third party challenges the appropriateness of Defendants' notice pursuant to the Class Action Fairness Act of 2005, Defendants shall have the opportunity to cure any defects before the Approval Hearing may proceed.  The Parties will cooperate in good faith to re-schedule the Approval Hearing in the event such curative notice is required of any Defendant.

7.4 <u>Time to Cure Any Defect of Notice Under Class Action Fairness Act</u>: Following the Hearing and upon approval by the Court of the Settlement, the Court shall enter the Approval Order on a date not earlier than the date set forth in 28 U.S.C. § 1715(d).  In the event that any objection arises, following entry of the Approval Order, as to notice under 28 U.S.C. § 1715(d), the Parties agree to seek relief pursuant to Federal Rule of Civil Procedure 60(b) by jointly moving the Court to vacate the Approval Order so that Equifax, Experian, and/or TransUnion can cure any alleged defect in the notice required under 28 U.S.C. § 1715.  Once the defect is cured, the Parties agree to jointly move the Court to re-enter the Approval Order consistent with the requirements of 28 U.S.C. § 1715.

7.5 <u>Non-Approval of Settlement</u>:  If the Settlement is not approved by the Court, or if for any reason the Court does not enter the Approval Order or does not determine, pursuant to Federal Rule of Civil Procedure 23, that this Settlement is fair, adequate and reasonable, or if the Court enters the Approval Order and appellate review is sought and, on such

SETTLEMENT AGREEMENT AND RELEASE

review, such Approval Order is modified or reversed, then the Agreement shall become null and void and of no further force and effect and all orders certifying or preliminary certifying any claim or subclaim will be vacated and the parties shall be restored to the Status Quo Ante, and the terms and provisions of this Order shall have no further force or effect and shall not be utilized in the Litigation or any other proceeding for any purpose, including, without limitation, in support of a motion for class certification, except as expressly set forth herein.

## VIII.  DISPUTE RESOLUTION PROCESS

8.1 Prior to the filing of any motion to enforce this Agreement, the aggrieved party shall provide notice of the alleged violation to the allegedly violating party, shall meet and confer in good faith with that party regarding the alleged violation, and shall allow that party a reasonable opportunity to cure the alleged violation.

## IX.    NOTICES AND SUBMISSIONS

9.1 Unless otherwise specified herein, whenever notifications, submissions or communications are required by this Agreement, they shall be in writing and shall be given (i) by hand delivery; or (ii) by registered or certified mail, return receipt requested, postage pre-paid; or (iii) by Federal Express or similar overnight courier to counsel for the Party to whom notice is directed at the following addresses:
Equifax:

Mara McRae, Esq.
Kali Wilson Beyah, Esq.
KILPATRICK STOCKTON LLP
1100 Peachtree Street, Suite 2800
Atlanta, GA  30309-4530

Experian:
Daniel J. McLoon, Esq.
JONES DAY

- 34 -

SETTLEMENT AGREEMENT AND
RELEASE

555 South Flower Street
Fiftieth Floor
Los Angeles, CA  90071-2300

TransUnion:
Julia B. Strickland, Esq.
STROOCK & STROOCK & LAVAN LLP
2029 Century Park East, Suite 1800
Los Angeles, CA  90067

White/Hernandez Plaintiffs:
Michael W. Sobol, Esq.
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 30th Fl.
San Francisco, California  94111

Pike/Acosta Plaintiffs:
Lee A. Sherman, Esq.
CALLAHAN, MCCUNE & WILLIS, APLC
111 Fashion Lane
Tustin, California 92780-3397

9.2    Any Party may, by written notice to all the other Parties, change its designated recipient or notice address provided above.  Notices submitted pursuant to this Section shall be deemed submitted upon mailing, unless otherwise provided in this Agreement.

**X.    FINAL JUDGMENT APPROVING SETTLEMENT AND DISMISSING CLAIMS FOR INJUNCTIVE RELIEF AND DECLARATORY RELIEF OF 23(B)(2) SETTLEMENT CLASS MEMBERS WITH PREJUDICE AND RELEASE OF CLAIMS BY SETTLEMENT CLASS MEMBERS**

10.1    <u>Entry of Final Judgment</u>:  Upon the Court's approval of this Agreement and the settlement set forth herein, the Approval Order dismissing the injunctive relief and declaratory relief claims of the 23(b)(2) Settlement Class Members with prejudice, substantially in the form attached hereto as Exhibit A, shall be submitted to the Court for entry.  The Court shall retain jurisdiction to resolve the Plaintiffs' remaining claims, to resolve any future disputes arising out of the

SETTLEMENT AGREEMENT AND
RELEASE

terms and conditions of this Settlement, and to effectuate the Settlement.  The Court shall likewise retain jurisdiction to address any issue of attorneys' fees and costs that may be unresolved by the Parties; provided, however, that nothing herein is intended to or shall be construed as an admission by Defendants that Plaintiffs are entitled to an award of attorneys' fees or costs or as a waiver of any ground on which Defendants may oppose, or Plaintiffs may support, an award of attorneys' fees or costs.

10.2   Release:  Upon the Approval Order becoming final, Plaintiffs and each member of the 23(b)(2) Settlement Class, their respective spouses, heirs, executors, administrators, representatives, agents, attorneys, partners, successors, predecessors and assigns and all those acting or purporting to act on their behalf with respect to their TransUnion and/or Equifax and/or Experian credit report(s), shall conclusively be deemed to have fully, finally and forever released, relinquished and discharged the Released Parties from and against any and all of the Released Claims.

10.3   No Opt-Out Of 23(b)(2) Claims:  As to the 23(b)(2) Settlement Class, the Settlement shall be approved pursuant to Federal Rule of Civil Procedure 23(b)(2) for purposes of the relief set forth in Section IV, and no member of the 23(b)(2) Settlement Class, therefore, may opt-out of any claim for injunctive or declaratory relief.  Thus, the Releases provided for in this Section 10 shall apply to the entire 23(b)(2) Settlement Class or to such claims regardless of whether members of the 23(b)(2) Settlement Class have purported to opt-out of such claims.

SETTLEMENT AGREEMENT AND RELEASE

## XI.   NO ADMISSION OF LIABILITY

11.1   <u>Denial Of Wrongdoing Or Liability</u>.  Defendants have denied, and continue to deny, each and all of the claims and allegations in the Litigation.  Defendants have asserted and continue to assert many defenses thereto and have expressly denied and continue to deny any fault, wrongdoing or liability whatsoever arising out of the conduct alleged in the Litigation.  Neither this Agreement nor any document referred to herein, nor any action taken to carry out this Agreement and/or the Settlement, or their willingness to enter into this Agreement, nor any or all negotiations, communications, and discussions associated with them are, or may be construed as, or may be used in any proceeding as, an admission by or against any or all Defendants of any fault, wrongdoing or liability whatsoever, or any infirmity of any defenses asserted by any or all Defendants, including, without limitation, arguments in opposition to any motion for class certification.  Defendants expressly deny any fault, wrongdoing or liability whatsoever, as well as the validity of each of the claims and prayers for relief asserted in the Litigation.

11.2   <u>No Admission of Elements of Class Certification</u>.  Defendants deny that a class should be certified other than for purposes of this Settlement.  If the Settlement is not approved by the Court, or if for any reason the Court does not enter the Approval Order or does not determine, pursuant to Federal Rule of Civil Procedure 23, that this Settlement is fair, adequate and reasonable, or if the Court enters the Approval Order and appellate review is sought and, on such review, such Approval Order is modified or reversed, then the Agreement shall become null and void and of no further force and effect and all orders

SETTLEMENT AGREEMENT AND
RELEASE

certifying or preliminary certifying any claim or subclaim will be vacated and the parties shall be restored to the Status Quo Ante, and the terms and provisions of this Order shall have no further force or effect and shall not be utilized in the Litigation or any other proceeding for any purpose, including, without limitation, in support of a motion for class certification, except as expressly set forth herein.

## XII.   PUBLIC STATEMENTS

12.1   The Parties will negotiate and agree upon the language that may be used in press releases regarding this Settlement.  No Party shall issue any press release that contains language to which the Parties have not agreed pursuant to this Section.

12.2   The Parties and/or their counsel shall make no statements to any third party regarding the Settlement prior to entry by the Court of the Approval Order, without the consent of the other Party or his, her or its counsel, unless such statements are required by law, including, without limitation, any disclosure obligations imposed on Defendants by federal or state securities or tax laws.

12.3   Proposed 23(b)(2) Settlement Class Counsel agrees that all extra-judicial statements in regard to the Settlement will comport with Rule 5-120 of the California Rules of Professional Conduct.  Proposed 23(b)(2) Settlement Class Counsel may respond to direct communications from clients or potential clients.

## XIII.  GENERAL PROVISIONS

13.1   Entire Agreement.  This instrument and the other instruments specifically referred to herein and executed herewith constitute and contain the entire agreement and understanding concerning the subject matter between the Parties and supersede and replace all prior

SETTLEMENT AGREEMENT AND RELEASE

negotiations and proposed agreements, whether written or oral.  The Parties, and each of them, represent and warrant that no other party or any agent or attorney of any other party has made any promise, representation or warranty whatsoever not contained in this Agreement and the other documents referred to in this Agreement to induce them to execute the same.  The Parties, and each of them, represent and warrant that they have not executed this instrument or the other documents in reliance on any promise, representation or warranty not contained in this Agreement and the other documents referred to in this Agreement.

13.2   Successors and Assigns.  The terms of this Agreement shall apply to and bind the Parties as well as their heirs, successors and assigns.

13.3   Competency.  The Parties, and each of them, acknowledge, warrant, represent and agree that in executing and delivering this Agreement, they do so freely, knowingly and voluntarily, that they had an opportunity to and did discuss its terms and their implications with legal counsel, that they are fully aware of the contents and effect of the Agreement and that such execution and delivery is not the result of any fraud, duress, mistake or undue influence whatsoever.  By signing below, Plaintiffs' counsel represent and warrant that they have been expressly and duly authorized, in writing, to execute this Agreement on behalf of their respective Plaintiffs.

13.4   Headings for Convenience Only. The headings in this Agreement are for the convenience of the reader only and shall not affect the meaning or interpretation of this Agreement.

13.5   Modifications.  This Agreement may not be modified except by a writing signed by each of the Parties, or their duly authorized

SETTLEMENT AGREEMENT AND RELEASE

representatives stating that the same is a modification of this Agreement.  To the extent that the Court makes immaterial changes to this Agreement or to any document described herein or appended hereto, the Parties shall nonetheless be bound to perform their obligations under the Agreement.  However, to the extent that the Court makes material changes, each of the Parties and Proposed 23(b)(2) Settlement Class Counsel has the right to withdraw from the Settlement in its entirety; if so, all parties will be returned to the Status Quo Ante as if this Agreement had never been made, and all parties will be relieved from any orders or stipulations made in connection with this Agreement, except as other provided for herein.  A Court refusal to expressly find that the procedures in Section IV are reasonable procedures designed to ensure maximum possible accuracy under §1681e(b) of the FCRA shall constitute a material modification of this Agreement and permit the Defendants to withdraw from the Settlement in its entirety under this paragraph.

13.6    Applicable Law.  This Agreement shall, in all respects, be interpreted, construed and governed by and under the laws of the United States of America.  To the extent state law applies for any reason, the laws of the State of California shall be applied.  All judicial proceedings regarding this Agreement shall be brought only in the Court.  Any notice period set forth in this Agreement shall be calculated pursuant to the Federal Rules of Civil Procedure and the Central District of California's Civil Local Rules.

13.7    Construction.  Each of the Parties has cooperated in the drafting and preparation of this Agreement.  Hence, in any construction to be made of this Agreement, the same shall not be construed against any of the

SETTLEMENT AGREEMENT AND RELEASE

Parties.  Before declaring any provision of this Agreement invalid, a court should first attempt to construe the provision valid to the fullest extent possible consistent with applicable precedent so as to find all provisions of this Agreement valid and enforceable.

13.8    Change in Law: The provisions of Sections IV and V shall terminate prospectively and Defendants shall have no further obligation or liability thereunder in the event of any change in federal law which either (a)  permits the reporting of information which in form or substance would otherwise be barred by this Agreement; or (b) prohibits anything required by this Agreement; and, in either such event, Defendants shall be entitled to report such information and conduct themselves in accordance with such federal law.  If a change by the United States Supreme Court, the Ninth Circuit or federal regulation is otherwise contended by the Defendants to be a permission as specified in (a) above or if any case law or regulations are otherwise changed in a manner that Defendants contend to be a prohibition as specified in (b) above, then Defendants may seek a ruling from the Court, upon such notice to Proposed 23(b)(2) Settlement Class Counsel, that Defendants are entitled to report in accordance with such change, and Defendants shall be entitled to report and conduct themselves in accordance with the Court's ruling thereon.  In the event of any change covered by this Paragraph, the remaining terms of this Agreement shall remain in force and effect.

13.9    Agreement Controls.  All of the exhibits attached hereto are hereby incorporated by reference as though fully set forth.  To the extent that there is any conflict between the terms of this Agreement and the exhibits attached hereto, this Agreement shall control.

SETTLEMENT AGREEMENT AND RELEASE

1

2   **13.10** <u>Counterparts</u>. This Agreement may be executed in one or more

3   counterparts and by facsimile. All executed counterparts and each of

4   them shall be deemed to be one and the same instrument. Counsel for

5   the Parties shall exchange among themselves signed counterparts and a

6   complete set of executed counterparts shall be filed with the Court.

7

8   Dated: April 3, 2008          LIEFF CABRASER HEIMANN & BERNSTEIN
                                    LLP

9                                  By: _____

10                                 Michael Sobol

11                                 Co-Lead Counsel for WHITE and HERNANDEZ
                                    Plaintiffs

12

13  Dated: April 3, 2008          CADDELL & CHAPMAN

14                                 By: _Michael Caddell_____

15                                 Michael Caddell

16                                 Co-Lead Counsel for WHITE and HERNANDEZ
                                    Plaintiffs

17

18  Dated: April 3, 2008          CALLAHAN, MCCUNE & WILLIS APLC

19                                 By: _Lee A. Sherman by MAC_____

20                                 Lee A. Sherman

21                                 Attorneys for PIKE and ACOSTA Plaintiffs

22  Dated: April  , 2008          EXPERIAN INFORMATION SOLUTIONS, INC.

23

24                                 By: _____
                                    Ann Sterling

25

26  Dated: April __, 2008         EQUIFAX INFORMATION SERVICES LLC

27

28                                 By: _____
                                    Kent E. Mast

                                                SETTLEMENT AGREEMENT AND
                                                        RELEASE
                        - 42 -

13.10 <u>Counterparts</u>.  This Agreement may be executed in one or more counterparts and by facsimile.  All executed counterparts and each of them shall be deemed to be one and the same instrument.  Counsel for the Parties shall exchange among themselves signed counterparts and a complete set of executed counterparts shall be filed with the Court.

Dated:  April ___, 2008                LIEFF CABRASER HEIMANN & BERNSTEIN LLP

                                       By: _____
                                             Michael Sobol

                                       Co-Lead Counsel for WHITE and HERNANDEZ Plaintiffs

Dated:  April ___, 2008                CADDELL & CHAPMAN

                                       By: _____
                                             Michael Caddell

                                       Co-Lead Counsel for WHITE and HERNANDEZ Plaintiffs

Dated:  April ___, 2008                CALLAHAN, MCCUNE & WILLIS APLC

                                       By: _____
                                             Lee A. Sherman

                                       Attorneys for PIKE and ACOSTA Plaintiffs

Dated:  April 2, 2008                  EXPERIAN INFORMATION SOLUTIONS, INC.

                                       By: _____
                                             Ann Sterling

Dated:  April ___, 2008                EQUIFAX INFORMATION SERVICES LLC

                                       By: _____
                                             Kent E. Mast

                                       SETTLEMENT AGREEMENT AND RELEASE

- 42 -

13.10 <u>Counterparts</u>.  This Agreement may be executed in one or more counterparts and by facsimile.  All executed counterparts and each of them shall be deemed to be one and the same instrument.  Counsel for the Parties shall exchange among themselves signed counterparts and a complete set of executed counterparts shall be filed with the Court.

Dated: April __, 2008

LIEFF CABRASER HEIMANN & BERNSTEIN LLP

By:_____
    Michael Sobol

Co-Lead Counsel for WHITE and HERNANDEZ Plaintiffs

Dated: April __, 2008

CADDELL & CHAPMAN

By:_____
    Michael Caddell

Co-Lead Counsel for WHITE and HERNANDEZ Plaintiffs

Dated: April __, 2008

CALLAHAN, MCCUNE & WILLIS APLC

By:_____
    Lee A. Sherman

Attorneys for PIKE and ACOSTA Plaintiffs

Dated: April , 2008

EXPERIAN INFORMATION SOLUTIONS, INC.

By:_____
    Ann Sterling

Dated: April __, 2008

EQUIFAX INFORMATION SERVICES LLC

By:_____
    Kent E. Mast

SETTLEMENT AGREEMENT AND RELEASE

- 42 -

1

2   Dated:  April 3 , 2008          TRANSUNION LLC

3                                   By: _____

4                                   John W. Blenke

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28