1   Michael W. Sobol (State Bar No. 194857)
    (msobol@lchb.com)
2   Allison S. Elgart (State Bar No. 241901)
    (aelgart@lchb.com)
3   LIEFF, CABRASER, HEIMANN &
    BERNSTEIN, LLP
4   275 Battery Street, 30th Floor
    San Francisco, CA 94111-3339
5   Telephone:  (415) 956-1000
    Facsimile:  (415) 956-1008
6
7   Michael A. Caddell (State Bar No. 249469)
    (mac@caddellchapman.com)
    Cynthia B. Chapman (State Bar No. 164471)
8   (cbc@caddellchapman.com)
    George Y. Niño (State Bar No. 146623)
9   (gyn@caddellchapman.com)
    CADDELL & CHAPMAN
10  1331 Lamar St., Suite 1070
    Houston, TX 77010
11  Telephone:  (713) 751-0400
    Facsimile:  (713) 751-0906
12
13  *Attorneys for Plaintiffs*

    [Additional Counsel listed on signature page]
14

15                  UNITED STATES DISTRICT COURT

16                  CENTRAL DISTRICT OF CALIFORNIA

17                       (SOUTHERN DIVISION)

18  TERRI N. WHITE, et al.,          Case No. 05-CV-1070 DOC (MLGx)
                                     (Lead Case)
19                    Plaintiffs,
                                     **PLAINTIFFS' MEMORANDUM OF**
20  v.                               **POINTS AND AUTHORITIES IN**
                                     **SUPPORT OF MOTION FOR**
21  EXPERIAN INFORMATION             **CERTIFICATION OF**
    SOLUTIONS, INC.,                 **SETTLEMENT CLASS AND FINAL**
22                                   **APPROVAL OF PROPOSED**
                                     **INJUNCTIVE RELIEF CLASS**
23                    Defendant.     **SETTLEMENT**

24  _____      Date:  August 4, 2008
    and Related Cases:               Time: 4:00 p.m.
25                                   The Honorable David O. Carter
    05-CV-01073-DOC (MLGx)
26  05-CV-7821-DOC (MLGx)
    06-CV-0392-DOC (MLGx)
27  05-cv-1172-DOC(MLGx)
    06-cv-5060-DOC (MLGx)
28

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION .......................................................................... 1

II.   BACKGROUND ........................................................................... 2

III.  THE CLASS ACTION SETTLEMENT AGREEMENT ..................... 4

    A.   Settlement Class ................................................................. 5

    B.   The Benefits Of The Injunctive Relief Settlement ..................... 5

        1.   Identifying 23(b)(2) Class Members. ............................... 6

        2.   Identifying Subject Debts in General. .............................. 6

        3.   Treatment of Identified Debt in the Retroactive Scrub. ........................................................................ 8

            a.   Civil Judgments Under The Retroactive Scrub. .......................................................... 8

            b.   Installment Debt Under The Retroactive Scrub. .......................................................... 9

            c.   Revolving Debt Under The Retroactive Scrub. .......................................................... 9

            d.   Collection Accounts Under The Retroactive Scrub. ........................................................ 11

        4.   Treatment of Identified Debt Under Prospective Relief. ........................................................................ 11

            a.   Civil Judgments Under The Prospective Relief. ........................................................ 12

            b.   Installment Debt Under The Prospective Relief. ........................................................ 12

            c.   Revolving Debt Under The Prospective Relief. ........................................................ 13

            d.   Collection Accounts Under The Prospective Relief. ........................................................ 13

        5.   Reservation of Reinvestigation Rights. .......................... 13

        6.   Timetable to Implement Injunctive Relief. ..................... 14

    C.   Certification Of 23(b)(2) Settlement Class, Entry Of Judgment For Injunctive Relief and Declaratory Relief, And Dismissal And Release Of Claims .................................. 14

IV.   THE COURT SHOULD GRANT FINAL APPROVAL OF THE SETTLEMENT ..................................................................... 15

    A.   The Terms Of The Settlement Are Fair, Adequate, And Reasonable ....................................................................... 17

    B.   The Settlement Is The Product Of Serious, Arm's Length Negotiations After The Parties Conducted Extensive Investigation And Analysis. ................................................. 18

1

**TABLE OF CONTENTS**

2

**(continued)**

| | | Page |
|---|---|---|

3      1.   The Parties Actively Litigated Disputed Issues and Engaged in Substantial Discovery. ................................ 18

4      2.   The Parties Participated in Arms-Length Negotiations Before an Experienced Neutral Mediator. ........................................................................... 19

5

6   C.   The Recommendations Of Experienced Counsel Favor Approval Of The Settlement. .......................................................... 19

7   D.   The Class Representatives Support The Settlement. ................ 20

8   E.   Defendants Represent That They Have Complied With Applicable Notice Provisions. ................................................... 20

9   F.   The Court Itself Has Urged The Parties To Reach Agreement Concerning Alternative Procedures. ....................... 21

10

11   V.   CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE. ....................................................................... 22

12   A.   Plaintiffs' Claims Satisfy The Threshold Requirements For Class Certification. ................................................................. 23

13      1.   The Class Is So Numerous That Joinder Is Impracticable. .................................................................. 23

14      2.   There are Questions of Law or Fact Common to the Class. ......................................................................... 23

15

16      3.   The Claims of the Named Plaintiffs are Typical of Those of All Other Class Members. ................................ 24

17      4.   The Named Plaintiffs Adequately Represent the Class. ........................................................................... 25

18   B.   Plaintiffs' Injunctive Relief Claims Satisfy The Requirements For Class Certification Under Rule 23(b)(2). ...................................................................................... 27

19

20   VI.   CONCLUSION. ................................................................................ 28

21

22

23

24

25

26

27

28

1

# TABLE OF AUTHORITIES

2

**Page**

3

## CASES

4

*Acosta v. Trans Union*, LLC,
5
   240 F.R.D. 564 (C.D. Cal. 2007) ...............................................................passim

6

*Amchem Prods. v. Windsor*
   521 U.S. 591 (1997) ..................................................................................23

7

*Barnes v. American Tobacco Co.*
8
   161 F.3d 127 (3d Cir. 1998)........................................................................25

9

*Blackie v. Barrack*
   524 F.2d 891 (9th Cir. 1975)......................................................................22

10

*Boyd v. Bechtel Corp.*
11
   485 F. Supp. 610 (N.D. Cal. 1979) .....................................................16, 19

12

*Cavin v. Home Loan Ctr., Inc.*
   236 F.R.D. 387 (N.D. Ill. 2006)................................................................23

13

*Class Plaintiffs v. City of Seattle*
14
   955 F.2d 1268 (9th Cir. 1992).............................................................15, 16

15

*Cummings v. Connell*
   316 F.3d 886 (9th Cir. 2003)......................................................................22

16

*Dukes v. Wal-Mart*
17
   2007 U.S. App. LEXIS 28558 (9th Cir. Dec. 11, 2007)......................................24

18

*Eisen v. Carlisle & Jacquelin*
   417 U.S. 156 (1974)..................................................................................22

19

*Ellis v. Naval Air Rework Facility*
20
   87 F.R.D. 15 (N.D. Cal. 1980)...........................................................16, 19

21

*Hanlon v. Chrysler Corp.*
   150 F.3d 1011 (9th Cir. 1998).................................................................passim

22

*Hanon v. Dataproducts Corp.*
23
   976 F.2d 497 (9th Cir. 1992)......................................................................24

24

*In re Belanger*
   962 F.2d 345 (4th Cir. 1992)........................................................................9

25

*In re Boodrow*
26
   126 F.3d 43 (2nd Cir. 1997)........................................................................9

27

*In re Dumont*
   383 B.R. 481 (Feb. 2008)...........................................................................12

28

774172.1

- iii -

PLAINTIFFS' MEMORANDUM  IN SUPPORT OF
MOTION FOR SETTLEMENT CLASS CERTIFICATION
CASE NO. 05-CV-1070 DOC (MLGx) (LEAD CASE)

1

2

# TABLE OF AUTHORITIES
## (continued)

Page

3

*In re Napster Copyright Litig.*
  2005 U.S. Dist. LEXIS 11498 (N.D. Cal. May 31, 2005) ..............................22, 24

4

*In re NASDAQ Market-Makers Antitrust Litig.*

5

  169 F.R.D. 493 (S.D.N.Y. 1996) ....................................................................27

6

*In re Parker*

7

  139 F.3d 668 (9th Cir. 1998)............................................................................9

8

*In re Prudential Sec. Inc. Ltd. Partnerships Litig.*
  163 F.R.D. 200 (S.D.N.Y. 1995) ...................................................................15

9

*In re Quintus Secs. Litig.*

10

  148 F. Supp. 2d 967 (N.D. Cal. 2001) ...................................................26

11

*In re Rice*
  2007 Bankr. LEXIS 945 (Bankr. E.D. Pa. March 12, 2007) ................................9

12

*Johns v. Rozet*

13

  141 F.R.D. 211 (D.D.C. 1992) ........................................................................25

14

*Lewis v. Curtis*
  671 F.2d 779 (3d Cir. 1982) ............................................................................25

15

*Lowry Fed. Credit Union v. West*

16

  882 F.2d 1543 (10th Cir. 1989)........................................................................9

17

*M. Berenson Co. v. Faneuil Hall Marketplace, Inc.*
  671 F. Supp. 819 (D. Mass 1987) ..............................................................16, 19

18

*Mullen v. Treasure Chest Casino, LLC*

19

  186 F.3d 620 (5th Cir. 1999)............................................................................25

20

*Officers for Justice v. Civil Serv. Comm'n*
  688 F.2d 615 (9th Cir. 1982)......................................................................15, 16

21

*Staton v. Boeing Co.*

22

  327 F.3d 938 (9th Cir. 2003)............................................................................25

23

*Trautz v. Weisman*
  846 F. Supp. 1160 (S.D.N.Y. 1994).................................................................25

24

*Utility Reform Project v. Bonneville Power Admin.*

25

  869 F.2d 437 (9th Cir. 1989)............................................................................15

26

*White v. Imperial Adjustment Corp.*
  2002 U.S. Dist. LEXIS 26610 (E.D. La. 2002)
  *aff'd*

27

  2003 U.S. App. LEXIS 20162 (5th Cir. Oct. 2, 2003)..........................22, 23, 25

28

# TABLE OF AUTHORITIES
## (continued)

**Page**

### STATUTES

11 U.S.C.
§ 362(h) ...................................................................................................12

28 U.S.C.
§ 1715 .......................................................................................................20

Bus. & Prof. Code
§ 17200, *et seq.* ..........................................................................................3

Cal. Civ. Code
§ 1785.14(b) ...............................................................................................3
§ 1785.16 ....................................................................................................3

Fair Credit Reporting Act
15 U.S.C.
§ 1681 *et seq.* .............................................................................................3

Fed. R. Civ. P.
23(a) ....................................................................................................23, 25
23(b)(2) .....................................................................................................27
23(e) ...................................................................................1, 15, 16, 17
54(b) .........................................................................................................14
54(d)(2)(A) and (B) ...................................................................................15

### TREATISES

*4 Newberg on Class Actions*
§ 11.41 ................................................................................................15, 21

Manual for Complex Litigation, Second
§ 30.41 .....................................................................................................21

## I.  **INTRODUCTION**

Plaintiffs in these related cases[1] move under Fed. R. Civ. P. 23, with the consent of all Defendants[2], for the Court to certify for purposes of settlement all claims for injunctive relief on behalf of a nationwide class of consumers and approve the settlement of all such injunctive and declaratory relief claims pursuant to the proposed Settlement Agreement and Release (filed as Docket No. 286, "Injunctive Relief Settlement").

To approve the Injunctive Relief Settlement, the Court must determine whether it is "fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e).  Here, the Injunctive Relief Settlement goes far beyond mere reasonableness or adequacy because it achieves virtually *everything* that Plaintiffs could have achieved had they prevailed on the merits of their claims for injunctive relief.  Plaintiffs allege that Defendants have erroneously reported debts discharged in Chapter 7 bankruptcy proceedings as due and owing.  The proposed Injunctive Relief Settlement provides reasonable procedures for the Defendants to identify those debts and then report them in a manner consistent with them having been discharged in bankruptcy, *i.e.*, with a zero balance and an indication that it was included in bankruptcy.  These procedures are to be employed with respect to Defendants' current credit files and in the future.  Plaintiffs contend that had they established at trial that Defendants' present procedures for reporting this type of debt failed to meet the requirements of the Fair Credit Reporting Act ("FCRA") or its California counterpart, then all they could have expected to obtain on their injunctive relief claims is an order requiring

---

[1] *Terri N. White, et al. v. Experian Information Solutions, Inc.*, Case No. cv 05-01070 (Lead Case number); *Terri N. White, et al. v. Equifax Information Services LLC*, Case No. cv 05-7821; *Terri N. White, et al. v. Trans Union LLC*, cv 05-1073; *Jose Hernandez v. Equifax Information Services, LLC, et al.*, Case No. cv 06-3924; *Jose L. Acosta et al., v. Trans Union LLC, et al.*, Case No. cv 06-5060; and *Kathryn L. Pike v. Equifax Information Services, LLC*, Case No. cv 05-1172.  These cases are collectively referred to herein as the "Litigation."

[2] Defendants are:  Experian Information Solutions, Inc. ("Experian"), Equifax Information Services, LLC ("Equifax"), and Trans Union LLC ("Trans Union") (together, "Defendants").

Defendants to adopt some alternative reasonable procedures.[3]  Not only does the Injunctive Relief Settlement do that, it actually specifies the alternative procedures. Accordingly, the Injunctive Relief Settlement represents complete and total victory on Plaintiffs' injunctive relief claims.  As such, the Injunctive Relief Settlement exceeds the minimal threshold requirements for approval of "fair, reasonable, and adequate."

Therefore, the Court should certify the injunctive relief class and approve the Injunctive Relief Settlement.

## II.    BACKGROUND

These cases having been pending before this Court since the Fall of 2005.  On or about November 2, 2005, plaintiffs in *White* filed in this District separate actions against each of the Defendants, alleging that Defendants had violated the FCRA by recklessly failing to follow reasonable procedures in the reporting, and reinvestigation of reporting, of debts discharged in Chapter 7 bankruptcy proceedings.  Plaintiffs alleged that Defendants continued to report such debts as due and owing when in fact they had been discharged in bankruptcy.

Prior to the filing of *White*, on October 3, 2005, Jose Hernandez filed a similar action against Defendants in the Northern District of California.  *Hernandez* was then transferred to this Court, and, on August 11, 2006, was consolidated with *White* via three separate Second Amended Consolidated Class Action Complaints, one against each Defendant (herein, "*White/Hernandez*").[4]

---

[3] Plaintiffs recognize that this Court has ruled in other cases, and tentatively on a motion in this case, that injunctive relief may not be available under the FCRA.  If that held true for this litigation, then the injunctive relief resulting from this litigation would be extended to California residents under California's counterpart to the FCRA.  However, the Settlement nonetheless provides injunctive relief to all consumers throughout the United States.  Therefore, the Injunctive Relief Settlement eliminates all risk that some consumers may not be entitled to an equitable injunctive remedy, and in this manner as well, may exceed what could have reasonably been expected to have been achieved via litigation.

[4] The remaining named plaintiffs under the *White/Hernandez* Second Amended Complaints are Robert Radcliffe, Chester Carter, Maria Falcon, Clifton C. Seale, III, and Jose Hernandez.

1    Subsequently, *White/Hernandez* was related to two other actions,

2 *Acosta* and *Pike*.  On May 12, 2003, Jose L. Acosta, Jr., had filed an action in

3 California Superior Court against Trans Union, and on August 14, 2006, he filed

4 again in this District.[5]  On October 14, 2005, Kathryn Pike had filed an action in

5 California Superior Court against Equifax, which was later removed to this District

6 and transferred to this Court as related to *White/Hernandez*.

7    Therefore, each of these cases either has been either filed, transferred,

8 or removed such that they are in the Central District before the Honorable Judge

9 David O. Carter.

10    In this Litigation, Plaintiffs allege that each Defendant recklessly or

11 negligently violated and continue to violate the Fair Credit Reporting Act, 15

12 U.S.C. § 1681 *et seq.*, by failing to maintain reasonable procedures to assure the

13 accurate reporting of debts that have been discharged in bankruptcy.  Plaintiffs

14 contend that each Defendant's current procedures, under which Defendants rely

15 primarily on creditors and public record vendors to report the discharged status of

16 debts and judgments, are unreasonable procedures under the FCRA.  They further

17 allege that Defendants fail to employ reasonable reinvestigation procedures

18 pursuant to the FCRA.  Plaintiffs assert claims for (i) willful and/or negligent

19 violation of Section 1681e(b) of the FCRA and its California counterpart, Cal. Civ.

20 Code Section 1785.14(b), for failure to maintain reasonable procedures to assure

21 maximum possible accuracy; (ii) willful and/or negligent violation of Section 1681i

22 of the FCRA and its California counterpart, Cal. Civ. Code Section 1785.16, for

23 failure to reasonably investigate Consumer disputes regarding the status of the

24 discharged accounts; and (iii) violation of California's Unfair Competition law,

25 Bus. & Prof. Code section 17200, *et seq.*

26

27

28

---

[5] The remaining named plaintiffs in *Acosta* are Robert Randall and Bertram Robison.

1    In or around September 2006, Defendants answered the various

2  Second Amended Complaints, denying the allegations therein, denying that the

3  actions are suitable for certification pursuant to Federal Rule of Civil Procedure 23,

4  and asserting numerous affirmative defenses that Defendants contend are

5  meritorious.  Defendants have contended and continue to contend that their

6  procedures at issue in the Litigation for reporting and reinvestigating the discharged

7  status of debts are reasonable and comply fully with the requirements of the FCRA

8  and equivalent states laws.

9    In the Court's prior rulings and comments to counsel, the Court has

10  urged the Parties to reach agreement concerning alternative procedures for

11  Defendants to report pre-bankruptcy debts.  The parties proceeded to mediation and

12  conducted arms-length and contentious negotiations over the course of 10 months,

13  including seven in-person sessions with a JAMS mediator, the Hon. Lourdes Baird

14  (Ret.), as well as several additional in-person or telephonic sessions with her.

15    The Parties have subsequently entered into the Injunctive Relief

16  Settlement Agreement which provides for new, alternative procedures for the

17  reporting of debts subject to Chapter 7 discharge orders.  Defendants continue to

18  claim that their prior procedures for reporting this type of debt satisfied the

19  requirements of the FCRA.  However, given that they continue to have a duty to

20  follow reasonable procedures to assure maximum possible accuracy, in agreeing to

21  the Injunctive Relief Settlement, Defendants cannot claim to have opted for

22  procedures which in the aggregate yields less accurate results.  Indeed, Plaintiffs

23  submit that the new procedures embodied by the Injunctive Relief Settlement are a

24  vast improvement over Defendants' prior procedures and will improve the accuracy

25  of Defendants' credit reports.

26  **III.    THE CLASS ACTION SETTLEMENT AGREEMENT**

27    Subject to this Court's approval, the Injunctive Relief Settlement will

28  resolve all injunctive and declaratory relief claims of the Plaintiffs and all members

1  of the Settlement Class.  Set forth below is a summary which paraphrases the key

2  terms of the Injunctive Relief Settlement Agreement ("Agreement").  A copy of the

3  Agreement is attached as Exhibit "A" to the Declaration of Michael W. Sobol In

4  Support of Motion To Approve Class Action Injunctive Relief Settlement ("Sobol

5  Decl.").

6      **A.    Settlement Class**

7          The Agreement defines the "23(b)(2) Settlement Class" as all

8  individual consumers residing in the United States whose credit files show a public

9  record entry of a Chapter 7 discharge order with a discharge date prior to the month

10  of the approval date of the Injunctive Relief Settlement.  Agreement at §§ 3.10 and

11  3.35.

12      **B.    The Benefits Of The Injunctive Relief Settlement**

13          The Agreement requires Defendants to employ new procedures for the

14  reporting of debts subject to Chapter 7 discharge orders.  In general, the Agreement

15  requires Defendants to employ new reasonable procedures to identify consumers

16  having a public record Chapter 7 discharge order and the debts of those consumers

17  that are subject to the Chapter 7 discharge order, and once those debts are

18  identified, to apply an "Agreed Bankruptcy Coding" to them.  The Agreed

19  Bankruptcy Coding generally sets the balance owed on the subject debt to zero and

20  codes it as having been discharged.  Consistent with this goal, Defendants must

21  both retroactively "scrub" the data existing on their current credit files and

22  prospectively employ procedures that ensure debts subject to future discharge

23  orders will be similarly treated.  *See* Agreement at § 4.1 ("Retroactive Scrub") and

24  § 4.2 ("Prospective Relief Reporting Changes").  In order to achieve these goals,

25  the Agreement uses "reasonable assumptions regarding the likely discharged status

26  of certain pre-bankruptcy tradelines and civil judgments."  Agreement at Whereas

27  Clause "N," p. 5.[6]

28  _____
[6] There is no set of procedures that could ever guarantee the identification of one-

*Footnote continued on next page*

1    The following provides a conceptual overview of how the injunctive

2  relief will achieve these goals.

3    **1.    Identifying 23(b)(2) Class Members.**

4    Defendants have agreed to identify from their records all persons in the

5  United States whose consumer credit files show a public record entry of a Chapter 7

6  discharge order.  Agreement at §§ 3.10 and 3.35.

7    **2.    Identifying Subject Debts in General.**

8    For all identified class members, Defendants must determine which

9  debts in those consumers' credit files may be subject to the Chapter 7 discharge

10  order they obtained.  Here, the Agreement differentiates between two categories of

11  debt which correspond to the manner in which the Defendants report them:  civil

12  judgments and tradelines.

13    With respect to judgments, Defendants must identify each public

14  record civil judgment in a consumer's credit file that predates the date that

15  consumer filed for Chapter 7 bankruptcy.  Agreement at §§ 3.7, 4.1(a)(i), and

16  4.2(a)(i).  From those judgments predating the bankruptcy filing, Defendants must

17  exclude those that have been reported as paid or satisfied, and those for which there

18  is a reliable indication that they are non-dischargeable judgments (*e.g.*, judgments

19  obtained by governmental taxing authorities or relating to domestic support

20  obligations).  Agreement at §§ 4.1(a)(ii) and (iv) and 4.2(a)(ii) and (iv).

21    With respect to tradelines, the Agreement differentiates three

22  categories which correspond to the manner in which the Defendants report them:

23  installment loans, credit card loans (revolving credit), and collection accounts.

24  These types of debts are identifiable from the required manner in which creditor-

25  *Footnote continued from previous page*
   hundred percent of all subject consumers or tradelines, or the elimination of one-

26  hundred percent of all errors.  Nor is that the standard.  But the implementation of
   the Agreement will result in the identification of the debts of consumers that are

27  overwhelmingly likely to be subject to a Chapter 7 discharge order, and to then
   report them accordingly. and the parties agree that the new procedures prescribed

28  by the Agreement will improve overall accuracy.

1    furnishers report information concerning them to the Defendants.  In general,

2    creditor-furnishers must comply with standardized reporting protocols known as the

3    Metro 2 format.  The Agreement makes use of these codes to identify installment

4    debts (a Metro 2 portfolio type I for installment or M for mortgage) and credit card

5    debts (portfolio types R for revolving, C for line of credit, or O for an open

6    account).  Agreement at §§ 4.1(b)(i) and (c)(i), and 4.2(b)(i) and (c)(i).  Similarly,

7    collection accounts are identified by certain Metro 2 format coding, such as account

8    type, subscriber, or industry codes.  Agreement at §§ 4.1(d)(i) and 4.2(d)(i).

9            The Agreement then requires Defendants to discern which of these

10   tradeline debts are subject to the applicable Chapter 7 discharge order.  First, of

11   course, the debt had to exist at the time the consumer filed for bankruptcy.

12   Accordingly, the Agreement requires Defendants to determine which tradeline

13   accounts have an opening date pre-dating, and are not closed or current as of, the

14   filing date of bankruptcy.  Agreement at §§ 4.1(b)(i), (c)(i), (d)(i) and 4.2(b)(i),

15   (c)(i), (d)(i).  Second, the debt must not have been reported as the type of debt that

16   is nondischargeable by nature, as indicated by the required Metro 2 format codes

17   used by the creditor-furnisher.  The Metro 2 codes for non-dischargeable debts

18   identify, for example, student loan debts, family support obligations, and

19   governmental fines.  Agreement at §§ 4.1(b)(ii), (c)(ii), (d)(ii) and 4.2(b)(ii), (c)(ii),

20   (d)(ii).  Third, even debts that are dischargeable by nature, but which are

21   nonetheless reported to Defendants as having been excluded from the discharge

22   pursuant to a bankruptcy court order, must not receive the Agreed Bankruptcy

23   Coding.  Accordingly, the Agreement requires Defendants to discern which debts

24   are reported to have been so excluded, such as debt reaffirmed in bankruptcy

25   (Metro 2 indicator of R) or debt reflecting a debtor's assumption of a lease

26   (indicator 2A) or where property has been surrendered or redeemed (typically

27   indicated in Metro 2 narrative codes).

28

1        Taking these steps – that is, identifying consumer credit files showing

2  a Chapter 7 discharge order and the debts existing therein at the time of the

3  bankruptcy filing which are dischargeable by nature and have not been excluded

4  from bankruptcy – will result in the identification of all debts that may be subject to

5  the Agreed Bankruptcy Coding.  Indeed, both Plaintiffs' and Defendants'

6  bankruptcy experts generally agree that whether or not bankruptcy debtors list a

7  debt in the bankruptcy petition, if it is dischargeable by nature it will be discharged

8  by virtue of a Chapter 7 no-asset discharge order unless the bankruptcy court orders

9  otherwise.  Declaration of Jay Westbrook ¶ 8; Deposition Transcript of Lisa H.

10  Fenning, 90:16-92:11 (attached as Exhibits B and C, respectively, to the Sobol

11  Decl.).  Therefore, absent any indication to the contrary within a consumer's credit

12  file as maintained by Defendants, these identified debts are eligible under the

13  Agreement for the Agreed Bankruptcy Coding.

14        Depending upon the status of these identified debts, they may be

15  treated somewhat differently under the Retroactive Scrub and Prospective Relief

16  procedures contained in the Agreement.

17       **3.**    **Treatment of Identified Debt in the Retroactive Scrub.**

18        The Retroactive Scrub is designed to effect changes in Defendants'

19  *current* consumer credit files that show a Chapter 7 discharge order, *i.e.*, to scrub

20  information in the files that Defendants currently use for reporting consumers'

21  credit histories.  Defendants maintain archived files, but the Agreement only

22  requires Defendants to scrub their archive files to the extent they use them to

23  generate current credit reports.  Agreement at § 4.1.

24       **a.**    **Civil Judgments Under The Retroactive Scrub.**

25        With respect to civil judgments, the Agreement requires Defendants to

26  apply the Agreed Bankruptcy Coding to all civil judgments identified as subject to

27  the Chapter 7 discharge, per the procedures described above.  Agreement at

28  § 4.1(a)(iii).

### b.      Installment Debt Under The Retroactive Scrub.

With respect to tradelines reflecting an installment or mortgage debt subject to a Chapter 7 discharge order, all such debt shall receive the Agreed Bankruptcy Coding, provided that the most recent reporting from the creditor-furnisher shows a status of a "Major Derogatory," *i.e.*, at least 120 days past due or possibly reported as charged-off, in-collection, or the like.  Agreement at §§ 4.1(b)(iii) and 3.28.  This limitation is based upon the reasonable assumption that such debt reported with a status other than a Major Derogatory is likely being voluntarily paid by the consumer, and that until the 2005 amendments to the Bankruptcy Code, there was some recognition that consumers may pay these debts and retain the collateral without the Bankruptcy Court's explicit sanction of a reaffirmation, redemption, or similar agreement.  *See*, *e.g.*, *In re Parker*, 139 F.3d 668, 672-73 (9th Cir. 1998), citing *In re Boodrow*, 126 F.3d 43, 53 (2nd Cir. 1997); *In re Belanger*, 962 F.2d 345, 347 (4th Cir. 1992); *Lowry Fed. Credit Union v. West*, 882 F.2d 1543, 1547 (10th Cir. 1989); *see also In re Rice*, 2007 Bankr. LEXIS 945 at *5 (Bankr. E.D. Pa. March 12, 2007) (citing same).  Acknowledging these past voluntary payments for secured debts, despite no formal reaffirmation, is equitable because the payments likely represent consumers' desires to retain the collateral by honoring the original indebtedness.  (There is no such limitation on the Agreed Bankruptcy Coding in the Prospective Relief relating to installment or mortgage debt.)

### c.      Revolving Debt Under The Retroactive Scrub.

The Agreement limits the application of the Agreed Bankruptcy Coding with respect to the revolving, credit card debt subject to a Chapter 7 discharge order, depending upon a debt's last reported status, the date of that last reporting, and the debt's historical "date of initial delinquency."  Agreement at § 4.1(c)(iii).  Here, it is important to discern when revolving debt was incurred because revolving debt obligations are by nature incurred on an ongoing basis,

1   unlike installment loans where the debt is contractually set at inception of the

2   obligation.  Often credit card issuers will suspend consumers' charging privileges

3   upon receiving notice of the filing of a bankruptcy petition.  However, charging

4   privileges may not have been suspended because the credit card issuers either did

5   not receive notice or because the account is in an acceptable status.  Thus,

6   consumers may be using their credit card for purchases subsequent to the

7   bankruptcy filing, in which case that debt would not be subject to the bankruptcy

8   discharge.  Because credit card balances are reported to Defendants month-to-

9   month without indication as to when certain portions of the debt reflected in such

10  balances were incurred, the Agreement makes reasonable assumptions based upon

11  the apparent character of that debt and the manner in which creditor-furnishers

12  report it.

13          In general, all revolving, credit card accounts showing a current Major

14  Derogatory status are to be scrubbed.  All accounts showing only a current Minor

15  Derogatory status will not be scrubbed, unless the initial date of delinquency post-

16  dates the bankruptcy filing and the bankruptcy filing is less than six months old.  To

17  effectuate these rules, revolving, credit card debt identified as subject to a Chapter 7

18  discharge order are divided into one of three groups, each of which receives the

19  Agreed Bankruptcy Coding:

20          Group (A):  *Debt most recently reported with a Major Derogatory and*

21  *with a date of initial delinquency predating the bankruptcy filing date*.  Agreement

22  at § 4.1(c)(iii)(A).  Here, not only is the debt delinquent at the time of the

23  bankruptcy filing, it is presently in a state of a Major Derogatory.  It is unlikely that

24  an account at least four months overdue, or even charged-off or in-collection, which

25  has a delinquency going back to before the time of the filing of the bankruptcy, will

26  have been in use after the bankruptcy filing.  Thus, these criteria are strong

27  indicators that the delinquent balance predates, and therefore is subject to, the

28  bankruptcy.

- 10 -

Group (B):  *Debt most recently reported with a Minor or Major Derogatory, the initial delinquency post-dates the bankruptcy, and the bankruptcy filing date is effectively six months old or less*.  Agreement at § 4.1(c)(iii)(B).  It is of course entirely possible that an initial delinquency can show up on a credit card account after the bankruptcy filing, even though the debt itself was before the bankruptcy filing.  Thus, the Agreement makes the reasonable assumption that if any kind of derogatory notation shows up essentially within six months after the bankruptcy filing, then the failure to pay an existing debt likely occurred before the bankruptcy filing, given the lag time between credit card use and reporting of it to Defendants.

Group (C):  *Debt most recently reported with a Major Derogatory, the date of initial delinquency post-dates the bankruptcy filing, and the bankruptcy filing is effectively more than six months old*.  Agreement at § 4.1(c)(iii)(C).  If an account is only showing a *Minor* Derogatory status (*i.e.*, no more delinquent than 30 to 119 days overdue) after more than six months, or 180 days, after the bankruptcy filing, and the initial date of delinquency post-dates the bankruptcy filing, then by definition there is a very strong appearance of post-bankruptcy activity on the account.  Thus, by limiting the Retroactive Scrub on accounts where the bankruptcy filing is greater than six months old to accounts currently showing a Major Derogatory status, the Agreement reasonably tailors its reach to pre-bankruptcy debt.

### d.   Collection Accounts Under The Retroactive Scrub.

With respect to collection accounts, the Agreement requires Defendants to apply the Agreed Bankruptcy Coding to all collection accounts identified as subject to the Chapter 7 discharge.  Agreement at § 4.1(d)(iii).

### 4.   Treatment of Identified Debt Under Prospective Relief.

After Defendants effectuate the required Retroactive Scrub, the Agreement requires Defendants to change their future reporting of consumer files

containing public entry Chapter 7 discharge orders.  In general, in all instances when a Chapter 7 discharge order is added to a consumer file after the completion of the Retroactive Scrub, Defendants must, within 60 days of adding the public entry bankruptcy discharge, update all civil judgments and tradelines in such consumer files which are identified pursuant to the Agreement as subject to the Chapter 7 discharge.  Agreement at § 4.2.

### a.  Civil Judgments Under The Prospective Relief.

With respect to civil judgments identified as subject to the Chapter 7 discharge, the Agreement requires Defendants to ensure that future credit reports display information in accord with the Agreed Bankruptcy Coding.  Agreement at § 4.2(a)(iii).

### b.  Installment Debt Under The Prospective Relief.

With respect to tradelines reflecting an installment or mortgage debt identified as subject to a Chapter 7 discharge order, the Agreement requires Defendants to ensure that future credit reports display information concerning those debts in accord with the Agreed Bankruptcy Coding.  Agreement at § 4.2(b)(iii). Here, unlike the Retroactive Scrub for installment debt, there is no limitation that the debt show a status of a "Major Derogatory," because in the years since the 2005 amendments to the Bankruptcy Code, courts have made clear to consumers that retention of a right to collateral via voluntary payments of debt without formal Bankruptcy Court approval will no longer be enforced.[7]  Of course, a creditor-

---

[7] Bankruptcy courts have concluded that the "ride-through" option without formal reaffirmation or redemption in the Bankruptcy Courts was eliminated by the 2005 amendments to the Bankruptcy Code.  The amended language now forces a debtor to "either" surrender or retain collateral property, and if retaining, to "either" redeem or reaffirm in the bankruptcy proceeding.  11 U.S.C. § 362(h).  Thus, the old judicial rule which permitted debtors to "ride-through," that is, retain collateral by merely making payments on the debt, "was effectively overruled."  *In re Dumont*, 383 B.R. 481, 483, 485-489, 489 n.16 (Feb. 2008) ("the ride-through" option was eliminated by these amendments") (citing more than 15 cases of other bankruptcy courts).

1   furnisher may update the tradeline consistent with its legal obligations if indeed the

2   debt has been reaffirmed in bankruptcy (but not so previously reported).

3              **c.    Revolving Debt Under The Prospective Relief.**

4              With respect to tradelines reflecting revolving, credit card debt

5   identified as subject to a Chapter 7 discharge order, the Agreement requires

6   Defendants to ensure that future credit reports display information concerning those

7   debts in accord with the Agreed Bankruptcy Coding.  Agreement at § 4.2(c)(iii).

8   Given the forward-looking nature of this relief, Defendants are able to view in their

9   current files the status of accounts at the time the Chapter 7 discharge order is

10  added to the public record.  Thus, Defendants are required to determine whether as

11  of the date of the bankruptcy filing the account is current or has a zero balance, and

12  exclude such accounts from the Agreed Bankruptcy Coding.  Agreement at

13  § 4.2(c)(ii)(E).  This way debt that was incurred pre-bankruptcy can be readily

14  identified with a high degree of certainty.

15             **d.    Collection Accounts Under The Prospective Relief.**

16             With respect to collection accounts identified as subject to the

17  Chapter 7 discharge, the Agreement requires Defendants to ensure that future credit

18  reports display information concerning those debts in accord with the Agreed

19  Bankruptcy Coding.  Agreement at § 4.2(d)(iii).  In addition, after the updating of a

20  consumer's credit file within the 60 days after the public record discharge order has

21  been entered, any time a creditor-furnisher reports a previously non-reported

22  collection account which in essence pre-dates the bankruptcy discharge, Defendants

23  must also apply the Agreed Bankruptcy Coding to it.  Agreement at § 4.2(d)(iv).

24             **5.    Reservation of Reinvestigation Rights.**

25             The new procedures required herein are expected virtually to eliminate

26  errors in the initial reporting of tradelines and judgments discharged in a Chapter 7

27  bankruptcy.  As a result, Plaintiffs contend that consumers rarely should need to

28  request reinvestigation of the reporting of such tradelines and judgments.

1  Therefore, the Agreement addresses Plaintiffs' concern that inadequate resources

2  were devoted towards reinvestigations by drastically reducing their volume.

3  Further, the Agreement explicitly provides that Defendants must still adhere to their

4  statutory obligation to conduct a reasonable reinvestigation when properly initiated

5  by a consumer.  Agreement at § 4.7.  Moreover, because the retroactive scrub

6  requires that all subject credit files receive the Agreed Bankruptcy Coding,

7  regardless of whether a consumer has requested a reinvestigation, the

8  implementation of the Agreement should eliminate the effect of most of the alleged

9  past inadequate reinvestigations concerning discharged debt.

10          **6.     Timetable to Implement Injunctive Relief.**

11          Defendants must make a good faith effort to implement changes in the

12  reporting procedures as mandated by the Agreement prior to September 1, 2008.  In

13  the event Defendants do not meet that deadline, Defendants may have a reasonable

14  extension, but the changes in the reporting procedures mandated by the Agreement

15  must in any event be fully implemented no later than March 31, 2009.  Agreement

16  at § 5.1.

17      **C.    Certification Of 23(b)(2) Settlement Class, Entry Of Judgment For Injunctive Relief and Declaratory Relief, And Dismissal And**
18          **Release Of Claims**

19          Pursuant to the Agreement, the parties have submitted for the Court's

20  consideration an agreed-upon, proposed Approval Order Regarding Settlement

21  Agreement and Release ("Approval Order").  Agreement at § 10.1 and Exh. A

22  thereto.  The Approval Order provides for certification of the 23(b)(2) Settlement

23  Class, designation of class representatives, and appointment of class counsel.

24  Approval Order at §§ 8.1-8.4.  The Approval Order also provides for entry of

25  judgment pursuant to Fed. R. Civ. P. 54(b) with respect to Plaintiffs' injunctive and

26  declaratory relief claims.[8]  Approval Order at § 9.3.

27  _____
[8] Plaintiffs advise the Court that pursuant to Fed. R. Civ. P. 54(d), a motion for "attorneys' fees and related non-taxable expenses shall be made by motion . . . no
28  later than 14 days after entry of judgment," unless otherwise ordered by the Court.
*Footnote continued on next page*

PLAINTIFFS' MEMORANDUM  IN SUPPORT OF
MOTION FOR SETTLEMENT CLASS CERTIFICATION
CASE NO. 05-CV-1070 DOC (MLGx) (LEAD CASE)

Upon the Court's approval of the Settlement Agreement, Plaintiffs, for themselves and on behalf of each 23(b)(2) Settlement Class member, shall be deemed to have fully, finally and forever released, relinquished and discharged the Defendants from and against any and all of the Released Claims.  Agreement at §§ 3.32, 3.33, 10.2.  No member of the 23(b)(2) Settlement Class may opt out of any claim for injunctive or declaratory relief.  Agreement at § 10.3.  Finally, upon entry of judgment and the Approval Order, the injunctive and declaratory relief claims of the 23(b)(2) Settlement Class members will be dismissed with prejudice.  Approval Order at §§ 9.3.

## IV.    THE COURT SHOULD GRANT FINAL APPROVAL OF THE SETTLEMENT

"[V]oluntary conciliation and settlement are the preferred means of dispute resolution," especially in complex class actions.  *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982); *see also*, *e.g.*, *Utility Reform Project v. Bonneville Power Admin.*, 869 F.2d 437, 443 (9th Cir. 1989).  Class action lawsuits readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation.  As a result, courts should exercise their discretion to approve settlements "in recognition of the policy encouraging settlement of disputed claims."  *In re Prudential Sec. Inc. Ltd. Partnerships Litig.*, 163 F.R.D. 200, 209 (S.D.N.Y. 1995); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) ("[S]trong judicial policy . . . favors settlements, particularly where complex class action litigation is concerned."); *4 Newberg on Class Actions* ["*Newberg*"] § 11.41 (citing cases).

A class action may not be compromised or settled without the Court's approval.  Fed. R. Civ. P. 23(e).  In passing on a class action settlement, the Court has broad discretion to determine whether it is fair, adequate, and reasonable under

_____

*Footnote continued from previous page*
Fed. R. Civ. P. 54(d)(2)(A) and (B).

1  the circumstances. *Class Plaintiffs*, 955 F.2d at 1276. The Ninth Circuit has

2  "repeatedly stated that the decision to approve or reject a settlement is committed to

3  the sound discretion of the trial judge because he is exposed to the litigants and

4  their strategies, positions, and proof." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011,

5  1026 (9th Cir. 1998); *see also* Rule 23(e)(1)(C) Advisory Committee Notes to 2003

6  Amendments ("Subdivision (e)(1)(C) states the standard for approving a proposed

7  settlement that would bind class members. The settlement must be fair, reasonable,

8  and adequate.").

9       When determining whether to grant final approval, "the court's

10  intrusion upon what is otherwise a private consensual agreement negotiated

11  between the parties to a lawsuit must be limited to the extent necessary to reach a

12  reasoned judgment that the agreement is not the product of fraud or overreaching

13  by, or collusion between, the negotiating parties, and that the settlement, taken as a

14  whole, is fair, reasonable and adequate to all concerned." *Officers for Justice*,

15  688 F.2d at 625. The Court should balance "the strength of plaintiffs' case; the

16  risk, expense, complexity, and likely duration of further litigation; the risk of

17  maintaining class action status throughout the trial; the amount offered in

18  settlement; the extent of discovery completed, and the state of the proceedings; the

19  experience and views of counsel . . . and the reaction of the class to the proposed

20  settlement." *Id.*, 688 F.2d at 625. "The recommendations of plaintiffs' counsel

21  should be given a presumption of reasonableness." *Boyd v. Bechtel Corp.*, 485 F.

22  Supp. 610, 622 (N.D. Cal. 1979); *M. Berenson Co. v. Faneuil Hall Marketplace,*

23  *Inc.*, 671 F. Supp. 819, 822 (D. Mass 1987); *Ellis v. Naval Air Rework Facility*,

24  87 F.R.D. 15, 18 (N.D. Cal. 1980) ("[T]he fact that experienced counsel involved in

25  the case approved the settlement after hard-fought negotiations is entitled to

26  considerable weight.").

27

28

A.    **The Terms Of The Settlement Are Fair, Adequate, And Reasonable**

To approve the Injunctive Relief Settlement, the Court must determine whether it is "fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e).  A review of the terms of the Agreement demonstrates that it confers substantial benefits on the 23(b)(2) Settlement Class.

Prior to implementing changes of the type mandated by the Agreement, Plaintiffs allege that credit reports issued by Defendants contained internally inconsistent information; that is, Chapter 7 discharge orders reported in the public record section of credit files contradicted information in the tradelines sections.  Specifically, tradeline debts which on their face are subject to a Chapter 7 discharge, and which lacked any indication to the contrary in the credit file, were nonetheless frequently reported with a positive balance or in a derogatory status other than as included in bankruptcy.  Plaintiffs submit that by operation of the Injunctive Relief Settlement, Defendants will for the first time reconcile and make consistent the prior internally contradictory reporting.  Therefore, the proposed injunctive relief will effect comprehensive changes which completely alter the nature of the reporting of debt subject to Chapter 7 bankruptcy discharges.

Moreover, the Injunctive Relief Settlement provides for procedures that fully and completely cure the defects Plaintiffs have alleged exist in Defendants' credit reporting.  As such, it achieves *everything* that Plaintiffs could have achieved had they prevailed on the merits of their claims for injunctive relief.  The proposed Injunctive Relief Settlement provides reasonable procedures for the Defendants to identify discharged debt and then report it in a manner consistent with the bankruptcy discharge, *i.e.*, with a zero balance and an indication of included in bankruptcy, with respect to Defendants' current credit files and with all future credit files where a Chapter 7 discharge is added to the public record.

1          Had Plaintiffs established at trial that Defendants' present procedures

2    for reporting this type of debt failed to meet the requirements of the FCRA or its

3    California counterpart, then all they could have expected to obtain on their

4    injunctive relief claims is an order requiring Defendants to adopt some alternative

5    reasonable procedures.  Not only does the Injunctive Relief Settlement do that, it

6    actually specifies the alternative procedures in a way that unequivocally provides

7    the remediation Plaintiffs sought.  Accordingly, the Injunctive Relief Settlement

8    represents complete and total victory on Plaintiffs' injunctive relief claims.  As

9    such, the Injunctive Relief Settlement exceeds the minimal threshold requirements

10    for approval of "fair, reasonable, and adequate."

11        **B.**    **The Settlement Is The Product Of Serious, Arm's Length**

12                **Negotiations After The Parties Conducted Extensive Investigation And Analysis.**

13              **1.**    **The Parties Actively Litigated Disputed Issues and Engaged**

14                          **in Substantial Discovery.**

15          Plaintiffs in the various cases have undertaken substantial

16    investigation, fact-gathering, and formal discovery (including review of tens of

17    thousands of pages of documents, retention and consultation of numerous experts in

18    the fields of credit reporting and consumer bankruptcies, interviews with numerous

19    consumers, review of thousands of consumer credit reports, and numerous

20    depositions) in support of the litigation.  Plaintiffs have taken and defended 28

21    depositions, produced over 10,000 pages of documents, and reviewed over 30,000

22    pages of documents produced by the Defendants.  Sobol Decl. ¶ 5.  They have

23    retained several experts who have filed numerous declarations with the Court.  *Id.*

24    Moreover, the parties have engaged in extensive motion practice before reaching

25    the Settlement Agreement.  They have attended several status conferences and

26    multiple-day hearings on settlement approval and summary judgment.  *Id.* ¶ 3.  This

27    Court has presided over the hearings and executed no fewer than twenty-eight

28

PLAINTIFFS' MEMORANDUM  IN SUPPORT OF
MOTION FOR SETTLEMENT CLASS CERTIFICATION
CASE NO. 05-CV-1070 DOC (MLGx) (LEAD CASE)

minute entries, entered at least thirty-eight signed orders, and authored four published opinions. *Id.*

### 2. The Parties Participated in Arms-Length Negotiations Before an Experienced Neutral Mediator.

On or about August 15, 2007, the Court urged the Parties to proceed to mediation. Since then, the parties have conducted extensive arms-length and contentious negotiations during the course of a lengthy and complicated mediation with the Hon. Lourdes Baird (Ret.). *Id.* ¶ 6. They did so with attorneys on both sides who are very experienced in the prosecution, defense, trial and settlement of class action litigation, including as it relates to FCRA and other consumer cases, and who are well-versed in the legal and factual issues implicated in this action. *Id.*

The parties have participated in seven full days of mediation with the participation of Judge Baird. *Id.* ¶ 8. All of the parties have also conducted numerous telephonic conferences with Judge Baird, both singly and as a group. *Id.* ¶¶ 7-8. Counsel for the parties have exchanged numerous written drafts of settlement proposals between the mediation sessions. *Id.* ¶ 7. In addition, with the knowledge and agreement of Judge Baird, Plaintiffs have engaged in separate settlement discussions with each of the Defendants since a March 12, 2008, status conference before the Court, including an in-person meeting with one of the Defendants. *Id.* ¶ 8.

### C. The Recommendations Of Experienced Counsel Favor Approval Of The Settlement.

The judgment of experienced counsel regarding the settlement is entitled to great weight. *Boyd*, 485 F. Supp. at 622; *Hanlon*, 150 F.3d at 1026; *M. Berenson Co.*, 671 F. Supp. at 822; *Ellis*, 87 F.R.D. at 18. Here, counsel for both parties endorse the settlement as fair, adequate, and reasonable.

In addition, the recommendation of class counsel should be given a presumption of reasonableness. *See, e.g., Boyd*, 485 F. Supp. at 622. Settlement

1    Counsel have extensive experience in prosecuting and litigating consumer class

2    action cases and FCRA and bankruptcy actions.  Sobol Decl. ¶ 6.  Settlement

3    Counsel have conducted extensive investigation of and discovery in this case.  *Id.*

4    ¶ 5.  The fact that qualified and well-informed counsel endorse the settlement as

5    being fair, reasonable, and adequate weighs heavily in favor of this Court's

6    approval of the settlement.

7            **D.     The Class Representatives Support The Settlement.**

8            The named plaintiffs and proposed class representatives have actively

9    participated in this litigation by staying apprised of developments, producing

10   documents, responding to discovery and providing sworn declaration and

11   deposition testimony.  Moreover, they have been kept informed about the progress

12   of settlement negotiations and mediation and the proposed Injunctive Relief

13   Settlement.  The proposed class representatives have been informed of the nature of

14   the Injunctive Relief Settlement and believe that the Court's approval of it would

15   serve the best interests of the class.  *See* Declarations of Jose Hernandez, Clifton

16   Seale III, Robert Radcliffe, Maria Falcon, Chester Carter, Arnold Lovell, Bertram

17   Robison, Robert Randall, and Kathryn Pike In Support of Plaintiffs' Motion for

18   Settlement Class Certification and Final Approval of Proposed Injunctive Relief

19   Class Settlement, attached as Exhibits F-N to the Sobol Decl.

20           **E.     Defendants Represent That They Have Complied With Applicable
             Notice Provisions.**
21

22           On May 7, 2008, Defendants filed a declaration stating that they had

23   all complied with the requirements to provide timely notice of the proposed

24   Injunctive Relief Settlement to all appropriate federal and state officials as

25   mandated by the Class Action Fairness Act, 28 U.S.C. § 1715.  See Proof of

26   Service Re Mailing of Notice in Accordance With Class Action Fairness Act

27   (Docket No. 291).  As of July 24, 2008, Defendants reported to Plaintiffs' counsel

28

PLAINTIFFS' MEMORANDUM  IN SUPPORT OF
MOTION FOR SETTLEMENT CLASS CERTIFICATION
CASE NO. 05-CV-1070 DOC (MLGx) (LEAD CASE)

that they have received no objections or comments in response from any

governmental authority.[9]

**F.      The Court Itself Has Urged The Parties To Reach Agreement Concerning Alternative Procedures.**

In the Court's prior rulings and comments to counsel, the Court has

urged the parties to reach agreement concerning alternative procedures for reporting

pre-bankruptcy tradelines.  Moreover, the Court has expressed its general approval

of procedures involving the use of assumptions regarding the likely discharge status

of pre-bankruptcy tradelines, commenting that such procedures "promise to

significantly reduce the number of inaccuracies inherent in the credit reports that

[Defendants] prepare in the future" (Order Denying Approval of Stip. Pltf. Class,

dated Mar. 6, 2007, in 06-cv-5060 DOC (MLGx), at 29:11-13).  The Court has also

observed that it "would probably have more faith in a stipulated than litigated

injunctive relief situation, because I think the industry in a free-market economy,

it's a dynamic industry."  (Hr. Tr., Jan. 30, 2008, at 37:25-38:3.)

Where, as here, a proposed class settlement has been reached after

meaningful discovery and arm's length bargaining, conducted by capable counsel,

and the proponents of the settlement are counsel experienced in similar litigation,

the settlement should be entitled to a presumption of fairness.  *Newberg* § 11.41;

Manual for Complex Litigation, Second, § 30.41 at 237.  These factors, and the

terms of the settlement offering comprehensive injunctive relief to all Settlement

Class members, demonstrate that the Settlement is fair, adequate, and reasonable.

---

[9] As set forth in the Agreement, the parties have stipulated that class-wide notice need not be issued with respect to the Injunctive Relief Settlement as notice is unnecessary where as here the proposed settlement is injunctive and thus must be mandatory.  Agreement at § 10.3.  This is particularly so where the Injunctive Relief Settlement provides full relief for the claims its releases.  Further, the parties seek to have the Injunctive Relief Settlement approved without the delay that would inevitably be caused by unnecessary notice of little or no value, so that the remedial measures can be implemented as soon as possible.  Agreement at § 5.1.

## V.    CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE

Plaintiffs seek certification of a 23(b)(2) Settlement Class defined as follows:  All Consumers whose credit files include a discharge date prior to the month of the Preliminary Approval Date.

As explained below, this Class definition satisfies the requirements of Rule 23, warranting certification of the proposed Settlement Class and approval of the proposed Settlement at this time.

The decision whether to certify these actions as class actions is committed to the sound discretion of this Court within the guidelines set forth in Fed. R. Civ. P. 23.  *See, e.g., Cummings v. Connell*, 316 F.3d 886, 895 (9th Cir. 2003); *Acosta v. Trans Union*, LLC, 240 F.R.D. 564, 571 (C.D. Cal. 2007).  In exercising its discretion, however, this Court is obliged to "accept[] the allegations in the plaintiffs' complaint as true so long those allegations are sufficiently specific to permit an informed assessment as to whether the requirements of Rule 23 have been satisfied."  *In re Napster Copyright Litig.*, 2005 U.S. Dist. LEXIS 11498, at *11 (N.D. Cal. May 31, 2005); *see also Blackie v. Barrack*, 524 F.2d 891, 901 n.17 (9th Cir. 1975).  "The merits of the class members' substantive claims are generally irrelevant to this inquiry."  *In re Napster*, 2005 U.S. Dist. LEXIS 11498, at *11.  As the Supreme Court stated in *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974), "nothing in either the language or history of Rule 23 . . . gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action."  *Id.* at 177-78; *see also White v. Imperial Adjustment Corp.*, 2002 U.S. Dist. LEXIS 26610, at *13 (E.D. La. 2002) ("The issue is not whether the plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met."), *aff'd*, 2003 U.S. App. LEXIS 20162, at *3-4 (5th Cir. Oct. 2, 2003).

The courts have long regarded "consumer claims" as "particularly appropriate for class resolution." *White*, 2002 U.S. Dist. LEXIS 26610, at *52; *see also Amchem Prods. v. Windsor*, 521 U.S. 591, 625 (1997); *Cavin v. Home Loan Ctr., Inc.*, 236 F.R.D. 387, 395-96 (N.D. Ill. 2006) ("[c]onsumer claims are among the most commonly certified for class treatment"). As set forth below, there is no basis for regarding these consumer claims any differently.

### A.    Plaintiffs' Claims Satisfy The Threshold Requirements For Class Certification.

The threshold prerequisites for maintaining an action as a class action are set forth in Fed. R. Civ. P. 23(a), which provides that:

One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Each of these four prerequisites exists here.

### 1.    The Class Is So Numerous That Joinder Is Impracticable.

The Class consists of all consumers whose credit files currently include a discharge order in a Chapter 7 bankruptcy proceeding. According to Defendants' records, there are millions of  consumers who meet that definition. As it is impracticable to join all those individuals in a single action, "the numerosity requirement is certainly met in this case." *Acosta*, 240 F.R.D. at 571.

### 2.    There are Questions of Law or Fact Common to the Class.

Rule 23(a)(2) requires the party seeking certification to show that there are questions of law or fact common to the class. This rule "has been construed permissively." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). It "does not mandate that each member of the class be identically situated." *In re*

1    *Napster*, 2005 U.S. Dist. LEXIS 11498, at *13; *see also Hanlon*, 150, F.3d at 1019.

2    Rather,  just "one significant issue common to the class may be sufficient" to

3    satisfy Rule 23(a)(2).  *Dukes v. Wal-Mart*, 2007 U.S. App. LEXIS 28558, at *10

4    (9th Cir. Dec. 11, 2007).  As the Ninth Circuit recently observed in *Dukes*,

5    "plaintiffs may demonstrate commonality by showing that class members have

6    shared legal issues by divergent facts or that they share a common core of facts but

7    base their claims for relief on different legal theories."  *Id.* at 11; *see also Hanlon*,

8    150 F.3d at 1019.

9         In this case, Plaintiffs can make both showings.  The claims of all

10   Class members arise out of the same common core of facts because, as this Court

11   noted in *Acosta*, "[t]he same alleged conduct of Defendants forms the basis of each

12   of the plaintiffs' claims, particularly that [Defendants] created standardized

13   practices and procedures for reporting accounts discharged in Chapter 7

14   bankruptcy."  *Acosta*, 240 F.R.D. at 571.  Likewise, Plaintiffs' claims all raise the

15   same legal issues, namely:  whether Defendants "maintain reasonable procedures to

16   assure maximum possible accuracy in reporting discharged accounts" in accordance

17   with the standard set forth in section 1681e(b) of the FCRA.  *Id.*

18        **3.    The Claims of the Named Plaintiffs are Typical of Those of
19        All Other Class Members.**

20        "Under the rule's permissive standards, representative claims are

21   'typical' if they are reasonably co-extensive with those of absent class members."

22   *Hanlon*, 150 F.3d at 1020.  This standard is satisfied when "other members have the

23   same or similar injury," when "the action is based on conduct which is not unique

24   to the named plaintiffs," and when "other class members have been injured by the

25   same course of conduct."  *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th

26   Cir. 1992); *accord Dukes*, 2007 App. LEXIS 28558, at *32-33.  "If the claims arise

27   from a similar course of conduct and share the same legal theory, factual

28   differences," including differences in the amount of damages, "will not defeat

typicality." *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 625 (5th Cir. 1999); *accord Barnes v. American Tobacco Co.*, 161 F.3d 127, 141 (3d Cir. 1998).

Here, the named Plaintiffs and the Class members they seek to represent have suffered substantially the same injury—violation of their statutory right to accuracy in the reporting of information about their financial affairs. Furthermore, far from being unique to the named Plaintiffs, the conduct precipitating their injuries derives from the same course of conduct that has given rise to the injuries suffered by all other Class members—namely, Defendants' deficient procedures for reporting the status of pre-bankruptcy debt.  Finally, the claims of the named Plaintiffs and those of other Class members are based on the exact same legal theories.  Accordingly, the claims of the named Plaintiffs meet the typicality prerequisite set forth in Fed. R. Civ. P. 23(a).  *Acosta*, 240 F.R.D. at 571 ("The named plaintiffs' claims are . . . typical of those of the remainder of the class in regards to the central legal issue, namely whether Trans Union and Equifax maintain reasonable procedures to assure maximum possible accuracy in reporting discharged accounts."); *see also White*, 2002 U.S. Dist. LEXIS 26610, at *41.

### 4.    The Named Plaintiffs Adequately Represent the Class.

The final threshold prerequisite for class certification is that the named plaintiffs be able fairly and adequately to protect the interests of the class.  This determination turns on just two questions:  "(1) [d]o the representative plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"  *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003); *see also Hanlon*, 150 F.3d at 1020.  "The burden is on the defendant[] to demonstrate that the representation will be inadequate."  *Johns v. Rozet*, 141 F.R.D. 211, 217 (D.D.C. 1992); *see also Lewis v. Curtis*, 671 F.2d 779, 788 (3d Cir. 1982); *Trautz v. Weisman*, 846 F. Supp. 1160, 1167 (S.D.N.Y. 1994).

1    Defendants cannot possibly satisfy that burden since both components

2    of the "adequacy'" test are plainly met here.  First, Plaintiffs do not have any

3    interests antagonistic to those of the proposed Class and are prepared to pursue this

4    litigation vigorously to redress the wrongs Defendants have perpetrated.  The

5    named Plaintiffs and the proposed Class members share an identical interest in

6    establishing Defendants' liability for failing to employ reasonable reporting

7    procedures to assure maximum possible accuracy in their reporting of pre-

8    bankruptcy debts.  To establish liability, all members of the proposed Class seek the

9    same findings on the common questions of law and fact.  Like the members of the

10   Class they seek to represent, the named Plaintiffs have been adversely affected by

11   Defendants' alleged unlawful reporting procedures and have every incentive to

12   vigorously pursue their claims.

13   Second, Plaintiffs are represented by counsel who are "'qualified,

14   experienced and able to vigorously conduct the proposed litigation' on behalf of the

15   class.'"  *In re Quintus Secs. Litig.*, 148 F. Supp. 2d 967, 972 (N.D. Cal. 2001).

16   Plaintiffs' counsel have formed an Executive Committee to manage this litigation,

17   which is led by co-lead counsel Michael W. Sobol of Lieff Cabraser and Michael

18   A. Caddell of Caddell & Chapman.  *See* Declaration of Michael W. Sobol in

19   Support of Plaintiffs' Motion to Certify Class, dated December 21, 2007 (Docket

20   No. 195), and Declaration of Michael A. Caddell in Support of Plaintiffs' Motion

21   for Class Certification, dated February 14, 2007 (Docket No. 66).  Similarly, lead

22   counsel for the *Acosta/Pike* plaintiffs, Lee A. Sherman of the law firm of Callahan

23   McCune and Willis, has participated in the negotiations and mediation leading up

24   to the settlement, and joins the Lieff/Caddell team in supporting the Court's

25   approval of the Injunctive Relief Settlement.

26   The Lieff/Caddell team will draw on its considerable experience and

27   human resources to zealously represent the proposed Class in this litigation.  *Id.*

28   Likewise the Lieff/Caddell team is committed to devoting the financial resources

- 26 -

1   necessary to litigate the case to a successful resolution. *Id.* Indeed, the

2   Lieff/Caddell team has already expended considerable time and effort in

3   researching the legal and factual issues relevant to this litigation, evaluating

4   potential claims and defenses, drafting pleadings, conducting discovery,

5   successfully opposing the adequacy and fairness of a prior settlement, and

6   successfully concluding the present settlement for comprehensive and complete

7   injunctive relief. *Id.* Where, as here, proposed class counsel "include some of the

8   most experienced lawyers in the United States in the prosecution of . . . class

9   actions" and have demonstrated that they are "ready, willing and able to commit the

10  resources necessary to litigate the case vigorously," the adequate representation

11  requirement is more than satisfied. *In re NASDAQ Market-Makers Antitrust Litig.*,

12  169 F.R.D. 493, 515 (S.D.N.Y. 1996).

13      **B.**    **<u>Plaintiffs' Injunctive Relief Claims Satisfy The Requirements For Class Certification Under Rule 23(b)(2).</u>**

14

15          Plaintiffs are entitled to class certification under Fed. R. Civ.

16  P. 23(b)(2) so long as they can show that "the party opposing the class has acted or

17  refused to act on grounds generally applicable to the class, thereby making

18  appropriate final injunctive relief or corresponding declaratory relief with respect to

19  the class as a whole." Plaintiffs' claims for injunctive relief satisfy that

20  requirement. Defendants' refusal to employ reasonable procedures to assure

21  maximum possible accuracy in their reporting of pre-bankruptcy debts applies

22  across-the-board and is applicable to the entirety of each Class. The injunctive

23  relief provisions in the proposed Settlement will remedy that problem for all Class

24  members by requiring that Defendants: (a) scrub the credit files of all Class

25  members to remove any inaccuracies that were generated as a result of the

26  inadequate procedures they employed in the past; and (b) implement revised

27  procedures that will ensure the maximum possible accuracy of their credit reports in

28  the future.

1

## VI.    **CONCLUSION**

2          For the reasons set forth above, Plaintiffs respectfully request that the

3    Court certify the injunctive relief class for settlement purposes and grant approval

4    of the proposed Settlement.

5

6    Dated:  July 25, 2008                  Respectfully submitted,

7                                           LIEFF, CABRASER, HEIMANN
                                              & BERNSTEIN, LLP
8

9
                                           By:_____
10                                                   Michael W. Sobol

11                                         Michael W. Sobol
                                           (msobol@lchb.com)
12                                         Allison S. Elgart
                                           (aelgart@lchb.com)
13                                         275 Battery Street, 30th Floor
                                           San Francisco, CA 94111-3339
14                                         Telephone:  (415) 956-1000

15                                         Daniel Wolf
                                           (dan@danielwolflaw.com)
16                                         LAW OFFICE OF DANIEL WOLF
                                           1220 N Street, N.W., Suite PH 2
17                                         Washington, D.C.  20005
                                           Telephone:  (202) 842-2170
18
                                           Charles W. Juntikka (cj4689)
19                                         (charles@cjalaw.com)
                                           CHARLES JUNTIKKA & ASSOCIATES
20                                         11 W. 42nd Street, 12th Floor
                                           New York, NY  10036
21                                         Telephone:  (212) 315-3755

22                                         Stuart Rossman
                                           (srossman@nclc.org)
23                                         Charles Delbaum
                                           (cdelbaum@nclc.org)
24                                         NATIONAL CONSUMER LAW CENTER
                                           77 Summer Street, 10th Floor
25                                         Boston, MA 02110
                                           Telephone:  (617) 542-8010
26                                         Facsimile:  (617) 542-8028

27

28

774172.1                          - 28 -

1    Michael A. Caddell (State Bar No. 249469)
     (mac@caddellchapman.com)
2    Cynthia B. Chapman (State Bar No. 164471)
     (cbc@caddellchapman.com)
3    George Y. Niño (State Bar No. 146623)
     (gyn@caddellchapman.com)
4    CADDELL & CHAPMAN
     1331 Lamar, Suite 1070
5    Houston, TX  77010
     Telephone:  (713) 751-0400
6    Facsimile:  (713) 751-0906

7    Leonard A. Bennett (VSB No. 37523)
     (lenbennett@cavtel.net)
8    Matthew Erausquin  (VSB No. 65434)
     (matt@clalegal.com)
9    CONSUMER LITIGATION ASSOCIATES, P.C.
     12515 Warwick Boulevard, Suite 201
10   Newport News, Virginia 23606
     Telephone:  (757) 930 3660
11   Facsimile:   (757) 930-3662

12   Mitchell A. Toups (TSB No. 20151600)
     (matoups@wgttlaw.com)
13   WELLER, GREEN, TOUPS & TERRELL, L.L.P.
     Bank of America Tower
14   2615 Calder St., Suite 400
     Beaumont Texas 77702
15   Telephone:  (409) 838-0101
     Facsimile:   (409) 832-8577

16
     *Attorneys for Plaintiffs*
17

18   For the *Acosta/Pike* Plaintiffs:
     Lee A. Sherman (State Bar No. 172198)
19   CALLAHAN MCCUNE & WILLIS
     111 Fashion Lane
20   Tustin CA 92780-3397
     Telephone: (714) 730-5700
21   Facsimile:  (714) 730-1642

22   *Attorneys for the Acosta/Pike Plaintiffs*

23

24

25

26

27

28