1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| TERRI N. WHITE, et al.,<br><br>               Plaintiffs,<br><br>     v.<br><br>EXPERIAN INFORMATION SOLUTIONS, INC.,<br><br>               Defendant.<br><br>AND RELATED CASES. | Case No. SA CV 05-1070 DOC (MLGx) (Lead Case)<br><br>AND RELATED CASES<br>05-cv-1073, 05-cv-7821, 06-cv-3924, 05-cv-1172, 06-cv-5060<br><br>**APPROVAL ORDER REGARDING SETTLEMENT AGREEMENT AND RELEASE** |

1

WHEREAS, on or about October 3, 2005, plaintiff Jose Hernandez filed an action against Defendants in the United States District Court for the Northern District of California, in which he asserted claims on behalf of a putative nationwide class of consumers relating to each of Defendants' procedures for reporting pre-bankruptcy debts of consumers who have obtained discharges through Chapter 7 bankruptcy proceedings (the "Hernandez case");

WHEREAS, on or about November 2, 2005, plaintiff Terri N. White[1] filed separate actions against each of the Defendants in this District, in which she asserted claims on behalf of a putative nationwide class of consumers relating to each of Defendants' procedures for reporting and reinvestigating pre-bankruptcy debts of consumers who have obtained discharges through Chapter 7 bankruptcy proceedings;

WHEREAS, on or about August 11, 2006, plaintiff Jose Hernandez and the White plaintiffs filed three separate Second Amended Consolidated Class Action Complaints, one against each Defendant ("Second Amended Complaints");[2]

WHEREAS, in these actions, the Plaintiffs allege that each Defendant willfully and/or negligently violated and continues to violate the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*, by allegedly failing to maintain reasonable procedures to assure the accurate reporting of debts that have been discharged in bankruptcy. Plaintiffs contend that each Defendant's current procedures, under which Defendants rely primarily on creditors and public record vendors to report the discharged status of debts and judgments, are unreasonable procedures under the FCRA. They further allege that Defendants fail to employ reasonable reinvestigation procedures

---

[1] The original named plaintiffs in the action against Equifax were Terri N. White, Robert Radcliffe, Chester Carter, and Milagros Gabrillo. The original named plaintiffs in the action against Experian were Terri N. White, Robert Radcliffe, Chester Carter, and Arnold E. Lovell, Jr. The original named plaintiffs in the action against TransUnion were Terri N. White, Robert Radcliffe, Chester Carter, and Maria Falcon. Collectively, these plaintiffs are referenced herein as the "White plaintiffs."

[2] The Second Amended Complaints added two new plaintiffs: Clifton C. Seale, III, and Alex K. Gidi. On October 19, 2007, plaintiffs Terri N. White, Alex K. Gidi, and Milagros Gabrillo were dismissed by court order.

pursuant to the FCRA. Plaintiffs assert claims for (i) willful and/or negligent violation of Section 1681e(b) of the FCRA and its California counterpart, Cal. Civ. Code Section 1785.14(b), for failure to maintain reasonable procedures to assure maximum possible accuracy; (ii) willful and/or negligent violation of Section 1681i of the FCRA and its California counterpart, Cal. Civ. Code Section 1785.16, for failure to reasonably investigate Consumer disputes regarding the status of the discharged accounts; and (iii) violation of California's Unfair Competition law, Bus. & Prof. Code Section 17200, *et seq*.;

WHEREAS, in or around September 2006, Defendants answered the various Second Amended Complaints, denying the allegations therein, denying that the actions are suitable for certification pursuant to Federal Rule of Civil Procedure 23, and asserting numerous affirmative defenses that Defendants contend are meritorious notwithstanding their willingness to enter into a settlement;

WHEREAS, Defendants contend that their current procedures for reporting and reinvestigating the discharged status of debts are both reasonable and comply fully with the requirements of the FCRA and equivalent states laws;

WHEREAS, plaintiff Jose L. Acosta, Jr., filed an action against TransUnion in California Superior Court on or around May 12, 2003, and later filed a new action against TransUnion in federal court on August 14, 2006 joined by plaintiffs Robert Randall and Bertram Robison,[3] and plaintiff Kathryn Pike filed an action in California Superior Court against Equifax on or around October 14, 2005, in which they also asserted claims on behalf of a putative California class of Consumers relating to TransUnion's or Equifax's procedures for reporting pre-bankruptcy debts of consumers who have obtained discharges through Chapter 7 bankruptcy proceedings;

WHEREAS, each of these cases has been either filed, transferred, or removed such that they are before this Court under the following case numbers: *Terri N. White, et al. v.*

_____

[3] Plaintiff Acosta has since been dismissed from the federal court action and also dismissed his California Superior Court action.

3

*Experian Information Solutions, Inc.*, Case No. SA CV 05-1070 (Lead Case number); *Terri N. White, et al. v. Equifax Information Services LLC*, Case No. CV 05-7821; *Terri N. White, et al. v. Trans Union LLC*, Case No. CV 05-1073; *Jose Hernandez v. Equifax Information Services, LLC, et al.*, Case No. CV 06-3924; *Jose L. Acosta et al., v. Trans Union LLC, et al.*, Case No. CV 06-5060; and *Kathryn L. Pike v. Equifax Information Services, LLC*, Case No. CV 05-1172 (collectively, the "Litigation");

WHEREAS, Plaintiffs in the various cases have undertaken substantial investigation and formal discovery in the Litigation (including review of tens of thousands of pages of documents, retention and consultation of numerous experts in the fields of credit reporting and consumer bankruptcies, interviews with numerous Consumers, review of thousands of Consumer credit reports, and numerous depositions), in support of the prosecution of the Litigation and settlement negotiations relating thereto;

WHEREAS, on or about August 15, 2007, this Court urged the Parties to proceed to mediation and, since then, the Parties have conducted arms-length and contentious negotiations during the course of a lengthy and complicated mediation that has included six in-person sessions with the Hon. Lourdes Baird (Ret.) and several additional sessions involving counsel for the Parties;

WHEREAS, in this Court's prior rulings and comments to counsel, the Court has urged the Parties to reach agreement concerning alternative procedures for Defendants to report pre-bankruptcy tradelines and has expressed its general approval of procedures involving the use of assumptions regarding the likely discharge status of pre-bankruptcy tradelines, commenting that such procedures "promise to significantly reduce the number of inaccuracies inhering in the credit reports that [Defendants] prepare in the future" (Order Denying Approval of Stip. Pltf. Class, dated Mar. 6, 2007 in CV 06-5060 DOC (MLGx), at 29:11-13) and observing that the prior settlement attempt in *Pike/Acosta* "was pretty close" (Mot. for Sum. Jud. Hrg Tr., Aug. 15, 2007, Vol. II 23:25-24:2);

WHEREAS, Defendants have objected to the use of assumptions in reporting the discharged status of pre-bankruptcy debts, contending that it would inevitably introduce certain inaccuracies onto the credit Files of consumers and that changing to new procedures based on assumptions poses a risk of harming consumers' credit scores and their ability to obtain credit;

WHEREAS, Plaintiffs believe that procedures using certain assumptions regarding the discharged status of pre-bankruptcy debts will, on balance, make credit reports more accurate than previously and that the negative impact, if any, on individual consumers' creditworthiness will be outweighed by the benefit to such consumers and collaterally to the public of having more accurate reports;

WHEREAS, the Parties have now agreed to a Settlement Agreement incorporating new procedures that make use of assumptions regarding the likely discharged status of certain pre-bankruptcy tradelines and civil judgments, and these procedures and assumptions are crafted so as to reduce the potential harm to consumers from their adoption;

WHEREAS, Plaintiffs and the proposed 23(b)(2) Settlement Class Counsel believe that the Settlement Agreement provides fair, reasonable, and adequate relief to the 23(b)(2) Settlement Class, and is in the best interests of the 23(b)(2) Settlement Class as a whole because they believe that it will increase the accuracy of credit reports that Defendants will issue in the future regarding all or nearly all 23(b)(2) Settlement Class members;

WHEREAS, Defendants deny all claims asserted against them in the Litigation, deny that class certification would be appropriate if the cases are litigated rather than settled, deny all allegations of wrongdoing and liability, deny that anyone was harmed by the conduct alleged, and deny that this Court has authority to issue an injunction or declaratory relief, but nevertheless have agreed to the terms and conditions set forth in the Settlement Agreement to avoid the burden, expense, risk and uncertainty of continuing the

proceedings on those issues in the Litigation, and to put to rest the controversies engendered;

WHEREAS, the parties have filed a Joint Motion and Stipulation for an Approval Order that would direct Defendants to use the new credit reporting procedures set forth in the Settlement Agreement and that would fully and finally settle Plaintiffs' claims for injunctive and declaratory relief;

WHEREAS, the Court has reviewed and considered the Settlement Agreement and having found that there exists substantial and sufficient grounds for entering this Approval Order ("Order"):

## I.   JURISDICTION AND VENUE

1.1   This Court has federal question jurisdiction pursuant to 28 U.S.C. Section 1331, as a civil action arising under the laws of the United States, and pursuant to 15 U.S.C. Section 1681(p), as a civil action to enforce liability under the FCRA.  Supplemental jurisdiction is conferred on this Court pursuant to 28 U.S.C. Section 1367 over all claims based on State law pleaded in the Litigation on the ground that they are so related to claims within its original jurisdiction that they form part of the same case or controversy under Article III of the U.S. Constitution.

1.2   The Defendants do not contest venue.

## II.   DEFINITIONS

2.1   As used in this Order, the terms defined below shall have the meanings assigned to them when capitalized in the same fashion as in this Part II, and any other terms that relate to the credit reporting industry shall have the customary meaning accorded to those terms in the credit reporting industry.

2.2   "Agreed Bankruptcy Coding"

a.   For civil judgments, "Agreed Bankruptcy Coding" means the Defendant shall change the status of the judgment to indicate that the

judgment was discharged in bankruptcy and that no amount remains owing on the judgment.  This may be accomplished by status code, public record type, narrative code, or other reporting so long as the updated record is adequately described as discharged, dismissed, satisfied, paid, included in bankruptcy or vacated.  The Defendant may use, *inter alia* and without limitation, the terminology "civil judgment included in bankruptcy" or "included in bankruptcy", or -- to accommodate field restrictions or other technological constraints -- a reasonable abbreviation of this phrase, such as "CVL JGMT IN BKCY."  Each may employ reasonable definitional language for this terminology, in its communications with furnishers, consistent with the terms of this Order.  The Defendant will also set the amount of the judgment equal to zero or, in their sole discretion, they may blank out that field, so as to indicate that no debt is due or owing after the discharge date.  Alternatively, the Defendant may delete or suppress the judgment from the File.

b.   For tradelines or Collection Accounts, "Agreed Bankruptcy Coding" means the Defendant shall code the tradeline or Collection Account with a Consumer Information Indicator (CII Code; Base segment field 38) of E (or such other Defendant-specific or Metro 1 coding equivalent) to indicate that the account is discharged in the Consumer's Chapter 7 bankruptcy (e.g., by use of the terminology "included in bankruptcy") and shall update the tradeline or Collection Account to reflect a zero-dollar or blank account balance and past due balance as to the Consumer who received the bankruptcy discharge, so as to indicate that no debt is due or owing by the Consumer after the discharge date.  Nothing in this Order shall

prevent or sanction the Defendant from deleting or suppressing tradelines or Collection Accounts from the File.  Defendants will also implement reasonable procedures designed to prevent the subsequent reporting of a new status, rating, account balance, past due balance, Major or Minor Derogatory payment history, or narrative for tradelines or Collection Accounts as to such tradelines or Collection Accounts that have been updated pursuant hereto (except where such reporting is permitted by other provisions of this Order).

2.3    "Agreement" or "Settlement Agreement" means the Settlement Agreement and Release submitted by the Parties.

2.4    "Approval Date" means the date the Court enters this Order.

2.5    "Bankruptcy Date" means the month during which—according to the applicable Defendant's computer systems—a  Consumer filed a bankruptcy petition that later led to a public record in the Consumer's File of the entry of a discharge order pursuant to Chapter 7 of the United States Bankruptcy Code.  The "Bankruptcy Date" may be reflected as the "date filed" in the public records section of a Consumer's File.

2.6    "Closed Account" means that an account is reporting with a zero balance and has a narrative or other code indicating any of the following: (a) that the account has been closed by a consumer or creditor; (b) that the account has a Current Status; (c) that the account has been transferred, sold, lost or stolen; (d) or that the account is an installment loan that has been paid in full.

2.7    "Collection Account" means an account identified by a Defendant as reflecting the collection activity of a third party collection agency or debt buyer on behalf of the original creditor.

2.8    A "Consumer" is an individual, residing in the United States of America or its territories, whose File in a Defendant's systems includes a public record

entry reporting an order of discharge pursuant to Chapter 7 of the United States Bankruptcy Code.

2.9     "Court" means this United States District Court for the Central District of California.

2.10    "Current Status" means an account status or rating indicating that, as of the date of last reporting, there is no outstanding, overdue, and delinquent balance currently due.

2.11    "Date of Initial Delinquency" or "DID" means the first month during which a Major or Minor Derogatory event is reported for a tradeline, as shown in the applicable Defendant's records.  Based upon differences in reporting methods, each Defendant may, at its option, use such dates as the Purge Date, Date of First Delinquency or Date of Last Activity to determine the DID for purposes of compliance with this Order.

2.12    "Defendants" mean Equifax Information Services LLC, Experian Information Solutions, Inc, and TransUnion LLC.

2.13    "Discharge Date" means the month shown by a Defendant in the public records section of a Consumer's File as reflecting a discharge pursuant to Chapter 7 of the United States Bankruptcy Code.  The "Discharge Date" may be reflected as the "date paid" in the public records section of a Consumer's File.

2.14    "Equifax" means Equifax Information Services LLC.

2.15    "Equifax's Counsel" means Kilpatrick Stockton, LLP.

2.16    "Experian" means Experian Information Solutions, Inc.

2.17    "Experian's Counsel" means Jones Day.

2.18    "FCRA" means the federal Fair Credit Reporting Act, 15 U.S.C. Section 1681 *et seq*.

2.19   "FCRA State Equivalents" means any statute or regulation of any state, U.S. territory, the District of Columbia, or Puerto Rico, that has the purpose or effect of regulating the collection or reporting of consumer credit information subject to the FCRA (including, without limitation, the California Consumer Credit Reporting Agencies Act ("CCRAA"), Cal. Civ. Code Section 1785.1 *et seq.*).

2.20   "File" means a "file," as defined in 15 U.S.C. Section 1681a(g), in a Defendant's computer system that contains a public record of a Consumer having received a discharge pursuant to Chapter 7 of the United States Bankruptcy Code.

2.21   "Final" refers to this Court's entry of this Approval Order with respect to Plaintiffs' claims for declaratory and injunctive relief becoming final because either (i) no appeal of the Order has been filed and the time within which an appeal may be filed has lapsed, or (ii) if a timely appeal has been filed, the appeal is finally resolved, with no possibility of further appellate review, resulting in final judicial approval of the Settlement Agreement. For purposes of this paragraph, the term "appeal" includes writ proceedings.

2.22   "Last Reported Status" means the account rating or status of a tradeline (e.g., current, past due 30 days, charge-off) as of the date the respective creditor last reported information relating to that tradeline to a Defendant.

2.23   The "Litigated Issues" means: (1) Defendants' post-discharge reporting of Consumer credit information relating to pre-bankruptcy debts or civil judgments; (2) Defendants' reinvestigations of Consumer disputes asserting that certain debts or civil judgments had been discharged in bankruptcy but were not being reported as such in Defendants' credit files; and (3) all other issues actually pleaded in the complaints on file in the Litigation or reasonably related thereto.

2.24   "Litigation" means *Terri N. White, et al. v. Experian Information Solutions, Inc.*, Case No. SA CV 05-1070 (Lead Case number); *Terri N. White, et al. v. Equifax Information Services LLC*, Case No. CV 05-7821; *Terri N. White, et al. v. Trans Union LLC*, Case No. CV 05-1073; *Jose Hernandez v. Equifax Information Services*, LLC, et al., Case No. CV 06-3924; *Jose L. Acosta et al., v. Trans Union LLC, et al.*, Case No. CV 06-5060; and *Kathryn L. Pike v. Equifax Information Services, LLC*, Case No. CV 05-1172, all of which are pending before this Court.

2.25   "Minor Derogatory" means an account rating or status of late by 30 to 119 days.  If a Defendant does not, in its discretion, include "deed in lieu," "voluntary repossession" or "voluntarily surrendered" as a Major Derogatory status for purposes of this Order, it shall so include them as a Minor Derogatory status.

2.26   "Major Derogatory" means an account rating or status of charge off, in collections, repossession, foreclosure, foreclosure proceedings started, skip cannot locate, paid by dealer, or any account rating or status of late by 120 days or more.  Defendants may, at their discretion, also include an account rating or status of "deed in lieu," "voluntary repossession" or "voluntarily surrendered" as a "Major Derogatory" status. "Major Derogatory" does not include Collection Accounts.

2.27   "Parties" means Plaintiffs, Equifax, Experian, and TransUnion.

2.28   "Plaintiffs" means Jose Hernandez, Chester Carter, Robert Radcliffe, Arnold E. Lovell, Jr., Maria Falcon, Clifton C. Seale, III, Robert Randall, Bertram Robison, and Kathryn Pike.

2.29   "Released Claims" means all past, present, and future claims for injunctive relief and declaratory relief that arise out of the Litigated Issues under any federal or state statute or common law or other theory that was alleged or

could have been alleged, including but not limited to any and all claims under the FCRA, FCRA State Equivalents, credit reporting statutes, deceptive or unfair practices statutes, or any other statute, regulation or judicial interpretation.  "Released Claims" for injunctive relief and declaratory relief include any and all claims, actions, demands, causes of action, suits, obligations, rights or liabilities, of any nature and description whatsoever—known or unknown, present or future, concealed or hidden, fixed or contingent, anticipated or unanticipated—for injunctive relief and declaratory relief whether based in tort, contract, law, equity or otherwise that arise out of the Litigated Issues and that have been or could have been asserted by Plaintiffs or the 23(b)(2) Settlement Class members or any of their respective heirs, spouses, executors, administrators, partners, attorneys, predecessors, successors, assigns, agents and/or representatives, and/or anyone acting or purporting to act on their behalf.  "Released Claims" shall not include any claims permitted under Section VI (Dispute Resolution Process) of this Order.

2.30    "Released Parties" means and refers to:  (a) TransUnion LLC and its present, former and future officers, directors, partners, employees, agents, attorneys, servants, heirs, administrators, executors, members, member entities, shareholders, predecessors, successors, affiliates, subsidiaries, parents, representatives, trustees, principals, insurers, vendors and assigns, jointly and severally; (b) Equifax Information Services LLC and its present, former and future officers, directors, partners, employees, agents, attorneys, servants, heirs, administrators, executors, members, member entities, shareholders, predecessors, successors, affiliates (including, without limitation, CSC Credit Services, Inc.), subsidiaries, parents, representatives, trustees, principals, insurers, vendors and assigns, jointly and severally; and

(c) Experian Information Solutions, Inc. and its present, former and future officers, directors, partners, employees, agents, attorneys, servants, heirs, administrators, executors, members, member entities, shareholders, predecessors, successors, affiliates, subsidiaries, parents, representatives, trustees, principals, insurers, vendors and assigns, jointly and severally. With the exception of CSC Credit Services, Inc., this release is not intended to govern or apply to any affiliate or reseller of Defendants' consumer reports unless such affiliate or reseller shares common ownership.

2.31   "Settlement" means the Agreement between Plaintiffs, on behalf of themselves and as proposed representatives of the 23(b)(2) Settlement Class, and Equifax, Experian, and TransUnion to settle and compromise all of Plaintiffs' claims in the Litigation for declaratory and injunctive relief (and all issues relating thereto) fully, finally and forever, as memorialized in the Agreement and the accompanying documents attached thereto.

2.32   "23(b)(2) Settlement Class" means all Consumers whose credit Files include a Discharge Date prior to the month of the Approval Date.

2.33   "23(b)(2) Settlement Class Counsel" means Daniel Wolf, Esq., Law Offices Of Daniel Wolf; Leonard A. Bennett, Esq., Consumer Litigation Associates, P.C.; Mitchell A. Toups, Esq., Weller, Green, Toups & Terrell, L.L.P.; Michael Caddell, Esq, Caddell & Chapman; Michael W. Sobol, Esq., Lieff Cabraser Heimann & Bernstein; Charles W. Juntikka, Esq., Charles Juntikka & Associates; Charles Delbaum and Stuart T. Rossman, National Consumer Law Center; and Lee A. Sherman, Esq., Callahan, McCune & Willis, APLC.

2.34   "Status Quo Ante" means the restoration of the Parties to their respective positions in the Litigation as of January 30, 2008.

2.35   "TransUnion" means TransUnion LLC.

2.36   "TransUnion's Counsel" means Stroock & Stroock & Lavan LLP.

**III.    IMPLEMENTATION OF REPORTING CHANGES**

3.1     <u>Retroactive Scrub</u>: Defendants will make the changes identified in this section to all active Files, including, for Equifax, Files owned by CSC Credit Services, Inc., in the computer systems that they use to generate credit reports for commercial distribution; provided, however, Defendants may but are not obligated to update archived Files, except to the extent archived Files are accessed to generate current credit reports.  Defendants will update each pre-bankruptcy judgment, tradeline, or Collection Account in such Files, or ensure that credit reports generated from such Files display, in accord with the procedures set forth below.  In determining which set of procedures to apply to an entry, Defendants may make reasonable assumptions based upon other information within the File or provided by the Consumer.

a.      Pre-bankruptcy civil judgments shall be treated as follows:

(i)      The Defendant shall identify each public record judgment in the File that is reported with either a month filed or a month of judgment (or both) that predates or is equal to the Bankruptcy Date.

(ii)     From these judgments, the Defendant shall exclude any judgment that is reported as vacated, satisfied, paid, settled or included in bankruptcy.

(iii)    For judgments not so excluded, the Defendant shall apply the Agreed Bankruptcy Coding.

(iv)     Notwithstanding the above, nothing herein shall require the Defendant to apply the Agreed Bankruptcy Coding to any item it reasonably assumes or believes to be statutorily non-dischargeable, including without limitation: (i) judgments

14

obtained by governmental child support agencies, taxing authorities, or arising out of governmental fines or penalties; (ii) tax liens, whether or not reduced to judgment; (iii) judgments obtained by Sallie Mae or otherwise arising out of non-dischargeable student loan obligations; (iv) judgments relating to alimony or other domestic support or property settlement obligations; or (v) judgments that were the subject of a successful objection to discharge.  The Defendant may thereafter continue to report the judgment as owing and will not be required to change the record, absent clear evidence that the debt has, in fact, been discharged.

b.      Pre-bankruptcy tradelines with a Metro 2 Portfolio Type of I (Installment) or M (Mortgage) (or equivalent) shall be treated as follows:

(i)      The Defendant shall identify each tradeline with a Metro 2 Portfolio Type of I or M (or such other Defendant-specific or Metro 1 coding equivalent) that is reported in the File with a date opened month that predates or is equal to the month of the Bankruptcy Date and is not a Closed Account as of the Bankruptcy Date or, at the Defendant's option, the date the scrubbing is accomplished.

(ii)     From these tradelines, the Defendant shall undertake to exclude any tradeline that:

(A)     is reported with a Metro 2 account code type (or such other Defendant-specific or Metro 1 coding equivalent) of 12 (Education), 50 (Family Support), 65, 66, 67, 68, 69, 70, 71

(Government Fine), 72, 73, 74, 75, 93 (Child Support), 94 (Spouse Support per Metro 1) or 95 (Attorney Fees);

(B)      is reported with an account status reflecting a Chapter 7 bankruptcy;

(C)      is reported with a Metro 2 Consumer Information Indicator of R (Reaffirmation of Debt) or 2A (Lease Assumption) or such other Defendant-specific or Metro 1 coding equivalent; and/or

(D)      is reported with an indication that property was redeemed, voluntarily surrendered, or was subject to a deed in lieu of foreclosure.

(iii)    For tradelines not so excluded, where the Last Reported Status of the tradeline in the File is a Major Derogatory status, the Defendant shall apply the Agreed Bankruptcy Coding.

c.    Pre-bankruptcy tradelines with a Metro 2 Portfolio Type of "R" (Revolving), "C" (Line of Credit) or "O" (Open Account) (or equivalent, or indeterminable) shall be treated as follows:

(i)    The Defendant shall identify each tradeline in a File with a Metro 2 Portfolio Type of R, C or O (or such other Defendant-specific or Metro 1 coding equivalent) that is reported with a "date opened" month that predates or is equal to the Bankruptcy Date and is not a Closed Account as of the Bankruptcy Date or, at the Defendant's option, the date the scrubbing is accomplished.

(ii)    From these tradelines, the Defendant shall undertake to exclude any tradeline that:

(A)     is reported with a Metro 2 account code type (or such other Defendant-specific or Metro 1 coding equivalent) of 12 (Education), 50 (Family Support), 65, 66, 67, 68, 69, 70, 71 (Government Fine), 72, 73, 74, 75, 93 (Child Support), 94 (Spouse Support per Metro 1) or 95 (Attorney Fees);

(B)     is reported with an account status reflecting a Chapter 7 bankruptcy;

(C)      is reported with a Metro 2 Consumer Information Indicator of R (Reaffirmation of Debt) or 2A (Lease Assumption) or such other Defendant-specific or Metro 1 coding equivalent; and/or

(D)     is reported with an indication that property was redeemed, voluntarily surrendered, or was subject to a deed in lieu of foreclosure.

(iii)     For each tradeline not so excluded, the Defendant will change the tradeline according to the following rules:

(A)     If the tradeline contains a DID that predates or is equal to the Bankruptcy Date and the Last Reported Status in the File is a Major Derogatory status, then the Defendant shall apply the Agreed Bankruptcy Coding;

(B)     If the tradeline contains a DID that postdates the Bankruptcy Date and the Bankruptcy Date is on or any date up to six months preceding the date of the file output used to determine and accomplish the changes ordered herein and the Last Reported Status of the tradeline in the File is a Major or Minor Derogatory account status, the Defendant shall apply the Agreed Bankruptcy Coding; and

(C)     If the tradeline contains a DID that postdates the Bankruptcy Date and the Bankruptcy Date is earlier than six months before the date of the file output used to determine and accomplish the changes ordered herein and the Last Reported Status of the tradeline in the File is a Major Derogatory status, the Defendant shall apply the Agreed Bankruptcy Coding.

(iv)     The provisions of this Section 3.1(c) are not intended to apply to tradelines coded as Authorized User.

d.     Pre-bankruptcy Collection Accounts shall be treated as follows:

(i)     The Defendant will identify each tradeline identifiable as a Collection Account (by means readily available, to include, by example only, account type, subscriber code, industry code, account status or account narrative), that is not reported in the File as a Closed Account, reaffirmed or as a "lease assumption" as of the Bankruptcy Date or, at the Defendant's option, the date the scrubbing is accomplished with any of the following conditions:  a DID that predates or is equal to the Bankruptcy Date, a date opened month that predates or is equal to the Bankruptcy Date, or a date referred to collections month that predates or is equal to the Bankruptcy Date.

(ii)     From these accounts, the Defendant shall undertake to exclude any Collection Account that is reported

(A)     with a Metro 2 account code type (or such other Defendant-specific or Metro 1 coding equivalent) of 12 (Education), 50 (Family Support), 65, 66, 67, 68, 69, 70, 71 (Government Fine), 72, 73, 74, 75, 93 (Child Support), 94 (Spouse Support per Metro 1) or 95 (Attorney Fees), or that it

can reasonably determine relates to a debt qualifying for one of these code types; and/or

(B)     is reported with an account status reflecting a Chapter 7 bankruptcy.

(iii)    For each such Collection Account not so excluded, the Defendant shall apply the Agreed Bankruptcy Coding.

e.     Nothing shall preclude a Defendant from applying the Agreed Bankruptcy Coding to a tradeline or Collection Account that would have qualified for inclusion in the Retroactive Scrub but for the fact that no information was available regarding when that tradeline or Collection Account was opened.

3.2    <u>Prospective Relief Reporting Changes</u>: Defendants will make the changes identified in this section to Files of Consumers for whom Defendants receive notice of a Chapter 7 discharge after the retroactive scrub procedures described in Paragraph 3.1 have been fully implemented.  Within 60 days of adding a public record entry reflecting a Chapter 7 discharge to a Consumer's credit File, Defendants will update each pre-bankruptcy judgment, tradeline, or Collection Account in that File, or ensure that credit reports generated from such Files display, in accord with the procedures set forth below.  In determining which set of procedures to apply to an entry, Defendants may make reasonable assumptions based upon information within the File or provided by the Consumer.

a.     Pre-bankruptcy civil judgments shall be treated as follows:

(i)    The Defendant shall identify each public record judgment in the File that is reported with either a month filed or a month of judgment (or both) that predates or is equal to the Bankruptcy Date.

(ii)     From these judgments, the Defendant shall exclude any
judgment that is reported as vacated, satisfied, paid, settled or
included in bankruptcy.

(iii)    For judgments not so excluded, the Defendant shall apply the
Agreed Bankruptcy Coding.

(iv)     Notwithstanding the above, nothing herein shall require the
Defendant to apply the Agreed Bankruptcy Coding to any item
it reasonably assumes or believes to be statutorily non
dischargeable, including without limitation:  (i) judgments
obtained by governmental child support agencies, taxing
authorities, or arising out of governmental fines or penalties;
(ii) tax liens, whether or not reduced to judgment; (iii)
judgments obtained by Sallie Mae or arising out of non-
dischargeable student loan obligations; (iv) judgments relating
to alimony or other domestic support or property settlement
obligations; or (v) judgments that were the subject of a
successful objection to discharge.  The Defendant may
thereafter continue to report the judgment as owing and will
not be required to change the record.

b.     Pre-bankruptcy tradelines with a Metro 2 Portfolio Type of I
(Installment) or M (Mortgage) (or equivalent) shall be treated as
follows:

(i)     The Defendant shall identify each tradeline with a Metro 2
Portfolio Type of I or M (or such other Defendant-specific or
Metro 1 coding equivalent) that is reported in the File with a
date opened that predates or is equal either to the month of or

to the month prior to the Bankruptcy Date and is not reported in the File as a Closed Account.

    (ii)    From these tradelines, the Defendant shall undertake to exclude any tradeline that, as of the Bankruptcy Date or, at the Defendant's option, at the time the scrubbing is accomplished:

    (A)    is reported with a Metro 2 account code type (or such other Defendant-specific or Metro 1 coding equivalent) of 12 (Education), 50 (Family Support), 65, 66, 67, 68, 69, 70, 71 (Government Fine), 72, 73, 74, 75, 93 (Child Support), 94 (Spouse Support per Metro 1) or 95 (Attorney Fees);

    (B)    is reported with an account status reflecting a Chapter 7 bankruptcy;

    (C)    is reported with a Metro 2 Consumer Information Indicator of R (Reaffirmation of Debt) or 2A (Lease Assumption) or such other Defendant-specific or Metro 1 coding equivalent;

    (D)    is reported with an indication that property was redeemed, voluntarily surrendered, or was subject to a deed in lieu of foreclosure; or

    (E)    is reporting either (a) in a Current Status or (b) with a $0 balance and in a status other than Major Derogatory.

    (iii)    For tradelines not so excluded, the Defendant shall apply the Agreed Bankruptcy Coding.

    c.    Pre-bankruptcy tradelines with a Metro 2 Portfolio Type of "R" (Revolving), "C" (Line of Credit) or "O" (Open Account) (or equivalent, or indeterminable) shall be treated as follows:

(i)     The Defendant shall identify each tradeline with a Metro 2 Portfolio Type of R, C or O (or such other Defendant-specific or Metro 1 coding equivalent) that is reported with a date opened that predates or is equal either to the month of or to the month prior to the Bankruptcy Date and is not reported in the File as a Closed Account.

(ii)    From these tradelines, the Defendant shall undertake to exclude any tradeline that, as of the Bankruptcy Date or, at the Defendant's option, at the time the scrubbing is accomplished:

(A)     is reported with a Metro 2 account code type (or such other Defendant-specific or Metro 1 coding equivalent) of 12 (Education), 50 (Family Support), 65, 66, 67, 68, 69, 70, 71 (Government Fine), 72, 73, 74, 75, or 93 (Child Support), 94 (Spouse Support per Metro 1) or 95 (Attorney Fees);

(B)     is reported with an account status reflecting a Chapter 7 bankruptcy;

(C)     is reported with a Metro 2 Consumer Information Indicator of R (Reaffirmation of Debt) or 2A (Lease Assumption) or such other Defendant-specific or Metro 1 coding equivalent;

(D)     is reported with an indication that property was redeemed, voluntarily surrendered, or was subject to a deed in lieu of foreclosure; or

(E)     is reporting either (a) in a Current Status or (b) with a $0 balance and in a status other than Major Derogatory.

(iii)   For tradelines not so excluded, the Defendant shall apply the Agreed Bankruptcy Coding.

(iv)   The provisions of this Section 3.2(c) are not intended to apply to tradelines coded as Authorized User.

d.   Pre-bankruptcy Collection Accounts shall be treated as follows:

(i)   The Defendant will identify each tradeline identifiable as a collection item (by means readily available, to include, by example only, account type, subscriber code, industry code, account status or account narrative), that is not reported in the File as a Closed Account, reaffirmed or as a "lease assumption" as of the Bankruptcy Date or, at the Defendant's option, the date the scrubbing is accomplished with any of the following conditions:  a DID that predates or is equal to the Bankruptcy Date, a date opened that predates or is equal either to the month of or to the month prior to the Bankruptcy Date, or a date referred to collection that predates or is equal either to the month of or to the month prior to the Bankruptcy Date.

(ii)   From these accounts, the Defendant may exclude any Collection Account that is reported:

(A)   with a Metro 2 account code type (or such other Defendant-specific or Metro 1 coding equivalent) of 12 (Education), 50 (Family Support), 65, 66, 67, 68, 69, 70, 71 (Government Fine), 72, 73, 74, 75, 93 (Child Support), 94 (Spouse Support per Metro 1) or 95 (Attorney Fees), or that it can reasonably determine relates to a debt qualifying for one of these code types; or

(B)   is reported with an account status reflecting a Chapter 7 bankruptcy.

          (iii)    For each such Collection Account not so excluded, the Defendant shall apply the Agreed Bankruptcy Coding.

          (iv)    If, after the update in the previous paragraph is completed, a furnisher reports a Collection Account that had not previously been reported on the credit File, which has a DID that predates or is equal to the Bankruptcy Date, a date opened that predates or is equal either to the month of or to the month prior to the Bankruptcy Date, or a date referred to collection that predates or is equal either to the month of or to the month prior to the Bankruptcy Date, the Defendant shall update the account in accordance with the previous paragraph.  In the alternative, the Defendant can choose not to add the new Collection Account to the Consumer's File.

     e.    Nothing shall preclude a Defendant from applying the Agreed Bankruptcy Coding to a tradeline or Collection Account that would have qualified for application of the changes identified in this section 3.2 but for the fact that no information was available regarding when that tradeline or Collection Account was opened.

3.3    <u>Bankruptcy Status Dates</u>:  Defendants will implement reasonable procedures designed to prevent updating the date of last update (Date Reported, Balance Date, Date Verified or, for Experian, date of status, last reported, and balance date) to a date that is more than one month after the Discharge Date in connection with an update of any tradeline, judgment or Collection Account pursuant to the procedures in Paragraphs 3.1 or 3.2; provided, however, that this provision shall not prohibit Defendants from reporting a later date of last update to reflect that information has been received from a furnisher on a date that is more than one month after the Discharge Date,

whether or not such furnisher update is accepted or rejected pursuant to the procedures set forth in Sections 3.1, 3.2 and 3.4 of this Order; provided further, however, that any such reporting of a later date of last update shall not change either the "Included in Bankruptcy" date or the "Purge Date."

3.4     Override of Update Procedures:

     a.     If, either before or after a tradeline or Collection Account is updated pursuant to the procedures in Paragraphs 3.1 or 3.2, (a) a furnisher reports to the Defendant that a tradeline or Collection Account for that furnisher should not be reported with a status of included or discharged in bankruptcy through the use of a special Consumer Information Indicator (such as CII Code Q or a Metro I equivalent) or (b) the Defendant determines that a debt in the tradeline or Collection Account was non-dischargeable, the Defendant may report such tradeline or Collection Account in a non-bankruptcy status, provided that the Defendant has not previously received truthful, objectively verifiable information directly from the Consumer in connection with a non-frivolous/non-irrelevant request for reinvestigation indicating the debt was in fact discharged.

     b.     If a Consumer submits a non-frivolous/non-irrelevant request for reinvestigation that claims a judgment, tradeline, or Collection Account updated by a Defendant to reflect a discharge pursuant to the procedures in Paragraphs 3.1 or 3.2 should not have been so updated because the judgment, tradeline, or Collection Account had not been discharged in bankruptcy, the Defendant may issue a Consumer Dispute Verification form ("CDV") or Automated Consumer Dispute Verification ("ACDV") to the relevant furnisher and, upon receiving the furnisher's response to the CDV or ACDV, it may thereafter

report information consistent with the information the furnisher
provided.

3.5   Notice of New Procedures:  Defendants shall notify furnishers of the new
procedures set forth herein as well as of their responsibility to report
accurate information about accounts discharged in bankruptcy.  Such
notification may be given in any reasonable manner as the Defendant may
choose as part of or in connection with Defendant's notification to
furnishers, pursuant to 15 U.S.C. § 1681e(d)(1), of furnishers'
responsibilities under the Fair Credit Reporting Act, and addition of such
notification to (or transmission with) the form described in 16 C.F.R. Part
698, Appendix G, shall not cause any Defendant to lose the legal benefit of
the safe harbor provisions set forth in 15 U.S.C. § 1681e(d)(2) and 16
C.F.R. § 698.2, or of any analogous safe harbor provision of state law.
Nothing in this Order shall require a Defendant to notify a furnisher when it
applies the Agreed Bankruptcy Coding to alter its reporting of the civil
judgments, tradelines, and/or Collection Accounts in a specific Consumer's
File or when it otherwise alters a File pursuant to the provisions of this
Order.

3.6   Implementation Grace Period:  Defendants shall not be in violation of this
Order based upon any failure to comply that is a result of inadvertent
programming errors or due to a failure to predict the consequences of
applying the procedures herein to data reported in the Metro 1 format.
Defendants shall correct any such non-compliance promptly after it is
brought to their attention and shall take reasonable steps to confirm the
effectiveness of any programming changes.

3.7   Preservation of Reinvestigation Rights:  Nothing in this Order shall waive
any Consumer's right to request a reinvestigation pursuant to 15 U.S.C. §

1681i or excuse any Defendant from its going-forward obligations under 15 U.S.C. § 1681i, except as otherwise provided herein.

3.8     Nothing in this Order shall preclude Defendants from correcting erroneous reporting that a consumer has or has not filed for bankruptcy or has or has not received a bankruptcy discharge or to correct any reporting resulting from a furnisher's coding error.

3.9     This Order does not require any changes to a tradeline, judgment, Collection Account, or any portion of a File, except as provided for herein.

## IV.     TIMETABLE FOR IMPLEMENTATION OF REPORTING CHANGES

4.1     Defendants shall make reasonable and good faith efforts to implement the reporting changes contemplated herein prior to September 1, 2008.  If a Defendant is unable to comply with this deadline for good cause, the Defendant shall receive a reasonable extension of time sufficient to permit implementation to be completed.  Defendants shall work together in good faith to reasonably coordinate the timing of implementation. Notwithstanding these provisions, Defendants shall complete implementation of these changes on or before March 31, 2009.

4.2     Notwithstanding the foregoing, if a credit file exists for purposes of holding information that could not be matched to a specific Consumer's File, such file need not be updated as set forth in this Order until the month following the date on which such file is matched to a specific Consumer's File.

## V.     REASONABLENESS OF NEW PROCEDURES AND PROTECTION AGAINST FUTURE CLAIMS BASED ON ERRORS ARISING FROM UPDATES

5.1     The new procedures, as described in Part III above, require Defendants to assume that certain categories of pre-bankruptcy consumer debts have been discharged in Chapter 7 bankruptcies based on the statistical likelihood of

discharge of these categories of debt, and without either the affected creditors or Consumers reporting the debt to Defendants as having been discharged.  Plaintiffs contend that adoption of these procedures will improve the overall accuracy of the reporting of pre-bankruptcy debts for such Consumers and that they have offered substantial evidence to support such contention.

5.2    Defendants believe that the new procedures will introduce some inaccurate, potentially harmful information onto the credit Files of certain 23(b)(2) Settlement Class members as well as those of certain Consumers who would be subject to the new procedures on a prospective basis.  Defendants contend that this information may impair those Consumers' creditworthiness, including their ability to use pre-bankruptcy accounts that they may have intended to exclude from the bankruptcy discharge and their ability to obtain new post-bankruptcy credit.

5.3    The Parties have negotiated at length to craft procedures that attempt to provide benefits to many Consumers while attempting to manage any harm to the creditworthiness of other affected Consumers.  For this reason, Plaintiffs and Defendants believe that, despite the Defendants' assertion of potential harm to certain Consumers' creditworthiness and the reasonableness of their existing procedures, the new procedures are a reasonable procedure to assure the maximum possible accuracy of the information appearing in Defendants' Files for Consumers receiving Chapter 7 discharges.

5.4    This Court finds that the procedures set forth in this Order in Section III are reasonable procedures to assure the maximum possible accuracy of Defendants' reporting of credit information regarding Consumers who have received a discharge pursuant to Chapter 7 of the United States Bankruptcy

Code.  These reporting procedures hereby are conclusively deemed to comply with the FCRA, including but not limited to Section 1681e(b) of that Act, as well as with all FCRA State Equivalents.

5.5     The procedures set forth in Section 3.4(b) of this Order are reasonable procedures for conducting reinvestigations of Consumer disputes asserting that any credit information in the disputing Consumer's File is inaccurate due to a discharge pursuant to Chapter 7 of the United States Bankruptcy Code received by the disputing Consumer before initiating the dispute. These reinvestigation procedures hereby are conclusively deemed to comply with the FCRA, including but not limited to Section 1681i of that Act, as well as with all FCRA State Equivalents.

5.6     This Order shall preclude all future litigation or attempted litigation under the FCRA or FCRA State Equivalents regarding the reasonableness of Defendants' post-discharge reporting of Consumer credit information relating to pre-bankruptcy debts or civil judgments, as well as the reasonableness of Defendants' procedures for reinvestigations of Consumer disputes regarding the same, brought by any and all Consumers receiving bankruptcy discharges after the date of this Order.  Consumers hereby are precluded from contending, absent a fundamental change in circumstance, that the procedures set forth in this Order are not reasonably designed to assure maximum possible accuracy under Section 1681e(b) and Section 1681i of the FCRA and/or under the analogous standards of FCRA State Equivalents.

## VI.     DISPUTE RESOLUTION PROCESS

6.1     Prior to the filing of any motion to enforce this Order, an aggrieved party shall provide notice of the alleged violation to the allegedly violating party, shall meet and confer in good faith with that party regarding the alleged

violation, and shall allow that party a reasonable opportunity to cure the

alleged violation.

6.2    Concurrent with the filing of any motion to enforce this Order, the moving

party shall file a declaration evidencing its compliance with Section 6.1 of

this Order.

## VII.   NOTICES AND SUBMISSIONS

7.1    Unless otherwise specified herein, whenever notifications, submissions

or communications are required by this Order, they shall be in writing

and shall be given (i) by hand delivery; or (ii) by registered or certified

mail, return receipt requested, postage pre-paid; or (iii) by Federal

Express or similar overnight courier to counsel for the Party to whom

notice is directed at the following addresses:


Equifax:
    Mara McRae, Esq.
    Kali Wilson Beyah, Esq.
    KILPATRICK STOCKTON LLP
    1100 Peachtree Street, Suite 2800
    Atlanta, GA  30309-4530

Experian:
    Daniel J. McLoon, Esq.
    JONES DAY
    555 South Flower Street
    Fiftieth Floor
    Los Angeles, CA  90071-2300

TransUnion:
    Julia B. Strickland, Esq.
    STROOCK & STROOCK & LAVAN LLP
    2029 Century Park East, Suite 1800
    Los Angeles, CA  90067

White/Hernandez Plaintiffs:
    Michael W. Sobol, Esq.
    LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
    275 Battery Street, 30th Fl.
    San Francisco, California  94111

Pike/Acosta Plaintiffs:

Lee A. Sherman, Esq.
CALLAHAN, MCCUNE & WILLIS, APLC
111 Fashion Lane
Tustin, California 92780-3397

7.2    Any Party may, by written notice to all the other Parties, change its designated recipient or notice address provided above.  Notices submitted pursuant to this Section shall be deemed submitted upon mailing, unless otherwise provided in this Order.

7.3    The Court finds that Defendants have complied with the notice provisions of 28 U.S.C. Section 1715.

## VIII.   CERTIFICATION OF SETTLEMENT CLASS

8.1    Pursuant to the Federal Rules of Civil Procedure, and solely for purposes of effectuating the Settlement of claims for injunctive and declaratory relief, this Court certifies a 23(b)(2) Settlement Class defined as all Consumers whose credit Files include a Discharge Date prior to the month of the Approval Date.

8.2    Certification of the Settlement Class shall be solely for settlement purposes and without prejudice to the Settling Parties in the event that the Settlement does not become Final or otherwise does not take effect, in which case certification of the Settlement Class shall be vacated and shall have no effect.  In addition, under such circumstances, the terms and provisions of this Order and of all orders certifying or preliminary certifying any claim or subclaim pursuant to the Settlement Agreement shall become null and void and of no further force and effect and shall not be utilized in the Litigation or any other proceeding for any purpose, and the parties shall be restored to the Status Quo Ante.

8.3    The Court designates Plaintiffs Jose Hernandez, Chester Carter, Robert Radcliffe, Arnold E. Lovell, Jr., Maria Falcon, Clifton C. Seale, III, Robert

Randall, Bertram Robison, and Kathryn Pike as representatives of the
23(b)(2) Settlement Class.

8.4    Pursuant to Federal Rule of Civil Procedure 23(g), and after consideration of
the factors described therein, the Court designates the following attorneys as
23(b)(2) Settlement Class Counsel: Daniel Wolf, Esq., Law Offices Of
Daniel Wolf; Leonard A. Bennett, Esq., Consumer Litigation Associates,
P.C.; Mitchell A. Toups, Esq., Weller, Green, Toups & Terrell, L.L.P.;
Michael Caddell, Esq, Caddell & Chapman; Michael W. Sobol, Esq., Lieff
Cabraser Heimann & Bernstein; Charles W. Juntikka, Esq., Charles Juntikka
& Associates; Charles Delbaum and Stuart T. Rossman, National Consumer
Law Center; and Lee A. Sherman, Esq., Callahan, McCune & Willis, APLC.

## IX.    FINAL JUDGMENT APPROVING SETTLEMENT AND DISMISSING CLAIMS FOR INJUNCTIVE RELIEF AND DECLARATORY RELIEF OF 23(B)(2) SETTLEMENT CLASS MEMBERS WITH PREJUDICE AND RELEASE OF CLAIMS BY SETTLEMENT CLASS MEMBERS

9.1    The Court finds that the new credit reporting procedures as described herein
and in the Settlement Agreement are fair, reasonable and adequate and are in
the best interests of the 23(b)(2) Settlement Class.  The Court further finds
that the Settlement, as a whole, is fair, reasonable and adequate and is in the
best interests of the 23(b)(2) Settlement Class.

9.2    The Settlement is hereby approved pursuant to Federal Rule of Civil
Procedure 23(b)(2).

9.3    Pursuant to Federal Rule of Civil Procedure 54(b), the Court determines
there is no just reason to delay entry of this Approval Order until a final
resolution of the Litigation is reached.  The Court further determines that
only the declaratory and injunctive relief claims of Plaintiffs are subject to

this Order and are dismissed with prejudice.  Plaintiffs may continue to prosecute their remaining claims against Defendants.

9.4    Upon this Approval Order becoming Final, Plaintiffs and each member of the 23(b)(2) Settlement Class, their respective spouses, heirs, executors, administrators, representatives, agents, attorneys, partners, successors, predecessors and assigns and all those acting or purporting to act on their behalf with respect to their TransUnion and/or Equifax and/or Experian credit report(s), shall conclusively be deemed to have fully, finally and forever released, relinquished and discharged the Released Parties from and against any and all of the Released Claims.  No 23(b)(2) Settlement Class member may exclude him or herself from the provisions of the Settlement governing the 23(b)(2) Settlement Class, including without limitation the release of past and future claims for injunctive or declaratory relief relating thereto.

9.5    The Court shall retain jurisdiction to resolve the Plaintiffs' remaining claims, to resolve any future disputes arising out of the terms and conditions of the Settlement, and to effectuate the Settlement.  The Court shall likewise retain jurisdiction to address any issue of attorneys' fees and costs that may be unresolved by the Parties, provided, however, that nothing herein is intended to or shall be construed as a finding that Plaintiffs are entitled to an award of attorneys' fees or costs, or as a waiver of any ground on which Defendants may oppose, or Plaintiffs may support, an award of attorneys' fees or costs.

9.6    This Approval Order shall be entered as to Plaintiffs, Defendants and all 23(b)(2) Settlement Class members.

## X.     NO ADMISSION OR FINDING OF LIABILITY

10.1    Defendants have denied, and continue to deny, each and all of the claims and allegations in the Litigation.  Defendants have asserted and continue to assert many defenses thereto and have expressly denied and continue to deny any fault, wrongdoing or liability whatsoever arising out of the conduct alleged in the Litigation.  Nothing in this Order is intended to be, or may be construed as, or may be used in any proceeding as, an admission by, or finding against, any or all Defendants of any fault, wrongdoing or liability whatsoever, or any infirmity of any defenses asserted by any or all Defendants, including, without limitation, arguments in opposition to any motion for class certification.  Defendants continue to expressly deny any fault, wrongdoing or liability whatsoever, as well as the validity of each of the claims and prayers for relief asserted in the Litigation.

10.2    Defendants deny that a class should be certified other than for purposes of this Settlement.  Nothing in this Order is intended to be, or may be construed as, or may be used in any proceeding as, an admission by, or a finding against, any or all Defendants that any or all of the elements for certifying a class under Rule 23(b)(2) or 23(b)(3) have been established.

## XI.    OTHER PROVISIONS

11.1    23(b)(2) Settlement Class Counsel shall comply with Rule 5-120 of the California Rules of Professional Conduct in making any extra-judicial statements regarding the Settlement.  23(b)(2) Settlement Class Counsel may respond to direct communications from clients or potential clients.

11.2    Headings for Convenience Only. The headings in this Order are for the convenience of the reader only and shall not affect the meaning or interpretation of this Order.

11.3    Change in Law: The provisions of Sections III and IV shall terminate prospectively and Defendants shall have no further obligation or liability thereunder in the event of any change in federal law which either (a) permits the reporting of information which in form or substance would otherwise be barred by this Order; or (b) prohibits anything required by this Order; and, in either such event, Defendants shall be entitled to report such information and conduct themselves in accordance with such federal law.  If a change by the United States Supreme Court, the Ninth Circuit or federal regulation is otherwise contended by the Defendants to be a permission as specified in (a) above or if any case law or regulations are otherwise changed in a manner that Defendants contend to be a prohibition as specified in (b) above, then Defendants may seek a ruling from this Court, upon such notice to 23(b)(2) Settlement Class Counsel, that Defendants are entitled to report in accordance with such change, and Defendants shall be entitled to report and conduct themselves in accordance with this Court's ruling thereon.  In the event of any change covered by this Paragraph, the remaining terms of this Order shall remain in force and effect.

## XII.    ATTORNEYS' FEES AND RELATED NONTAXABLE EXPENSES

12.1    Pursuant to Fed. R. Civ. P. 54(d)(2), a motion for "attorneys' fees and related nontaxable expenses shall be made by motion . . . no later than 14 days after the entry of judgment" unless otherwise ordered by the Court.  The Court hereby declares that it will resolve issues related to attorneys' fees and related nontaxable expenses after the remaining causes of action are resolved.  The attorneys' work related to the relief granted in this Order is inextricably intertwined with the attorneys' work related to the remaining causes of action.  The Court will be able

to better determine the appropriateness of attorneys' fees and nontaxable expenses at one time, at the conclusion of the action.

12.2   No claims for attorneys' fees or nontaxable expenses will be waived by the failure to file a motion for such within 14 days of the entry of this judgment.  Instead, the parties are directed to wait until the conclusion of the remaining causes of action to resolve these issues.


IT IS SO ORDERED.

DATED: August 19, 2008

_David O. Carter_
DAVID O. CARTER
United States District Judge