Michael W. Sobol (State Bar No. 194857)
(msobol@lchb.com)
Allison S. Elgart (State Bar No. 241901)
(aelgart@lchb.com)
LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
275 Battery Street, 30th Floor
San Francisco, CA 94111-3339
Telephone:  (415) 956-1000
Facsimile:  (415) 956-1008

Michael A. Caddell (State Bar No. 249469)
(mac@caddellchapman.com)
Cynthia B. Chapman (State Bar No. 164471)
(cbc@caddellchapman.com)
George Y. Niño (State Bar No. 146623)
(gyn@caddellchapman.com)
CADDELL & CHAPMAN
1331 Lamar St., Suite 1070
Houston, TX 77010
Telephone:  (713) 751-0400
Facsimile:  (713) 751-0906

*Attorneys for Plaintiffs*

[Additional Counsel listed on signature page]

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## (SOUTHERN DIVISION)

| | |
|---|---|
| TERRI N. WHITE, et al., <br><br> Plaintiffs, <br><br> v. <br><br> EXPERIAN INFORMATION SOLUTIONS, INC., <br><br> Defendant. | Case No. 05-CV-1070 DOC (MLGx) (Lead Case) <br><br> **MEMORANDUM IN SUPPORT OF MOTION FOR ORDER (1) GRANTING PRELIMINARY APPROVAL TO PROPOSED CLASS ACTION SETTLEMENT; (2) CONDITIONALLY CERTIFYING SETTLEMENT CLASS; (3) APPROVING CLASS NOTICE; (4) APPOINTING CLASS COUNSEL; AND (5) SCHEDULING FINAL APPROVAL HEARING DATE AND RELATED DATES** |
| <u>and Related Cases:</u> <br><br> 05-cv-01073-DOC (MLGx) <br> 05-cv-7821-DOC (MLGx) <br> 06-cv-0392-DOC (MLGx) <br> 05-cv-1172-DOC(MLGx) <br> 06-cv-5060-DOC (MLGx) | Date:  May 11, 2009 <br> Time: 8:30 a.m. <br> The Honorable David O. Carter |

809113.4

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ........................................................................ 1

II.     BACKGROUND ......................................................................... 2

III.    THE PROPOSED SETTLEMENT ........................................... 6

    A.     Settlement Class ............................................................. 6

    B.     The Benefits Of The Monetary Relief Settlement ...................... 8

IV.     THE COURT SHOULD GRANT PRELIMINARY
        APPROVAL OF THE SETTLEMENT ............................................ 15

    A.     Settlement and Class Action Approval Process ...................... 15

    B.     The Criteria for Settlement Approval Are Satisfied ................ 17

    C.     The Court Itself Has Urged The Parties To Reach A
           Settlement. ................................................................... 24

V.      CERTIFICATION OF THE SETTLEMENT CLASS IS
        APPROPRIATE ........................................................................ 25

    A.     Plaintiffs' Claims Satisfy The Threshold Requirements
           For Class Certification. ................................................... 26

    B.     Plaintiffs' Monetary Relief Claims Satisfy The
           Requirements For Class Certification Under Rule
           23(b)(3). ...................................................................... 31

    C.     The Proposed Notice Program is Constitutionally Sound. ........ 33

    D.     Scheduling Final Approval Hearings Is Appropriate .............. 34

VI.     CONCLUSION ......................................................................... 35

# TABLE OF AUTHORITIES

**Page**

## CASES

*Acosta v. TransUnion, LLC*
  240 F.R.D. 564 (C.D. Cal. 2007) ...................................................................passim

*Amchem Prods. v. Windsor*
  521 U.S. 591 (1997) ...........................................................................................25, 31

*Barnes v. American Tobacco Co.*
  161 F.3d 127 (3d Cir. 1998)......................................................................................28

*Blackie v. Barrack*
  524 F.2d 891 (9th Cir. 1975).....................................................................................25

*Boyd v. Bechtel Corp.*
  485 F. Supp. 610 (N.D. Cal. 1979) ...........................................................................22

*Brown v. Title Ticor Ins. Co.*,
  982 F.2d 386 (9th Cir. 1992).....................................................................................32

*Cavin v. Home Loan Ctr., Inc.*
  236 F.R.D. 387 (N.D. Ill. 2006).................................................................................25

*Class Plaintiffs v. City of Seattle*
  955 F.2d 1268 (9th Cir. 1992)........................................................................15, 16, 17

*Eisen v. Carlisle & Jacquelin*
  417 U.S. 156 (1974) ...........................................................................................25, 33

*Ellis v. Naval Air Rework Facility*
  87 F.R.D. 15 (N.D. Cal. 1980)..................................................................................22

*Espinoza v. Domino's Pizza, LLC*,
  2009 U.S. Dist. LEXIS 31093 (C.D. Cal. Feb. 18, 2009)..............................27, 28

*Fleury v. Richemont NorthAmerica, Inc.*,
  2008 U.S. Dist. LEXIS 64521 (N.D. Cal. July 3, 2008 .......................................23

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998)..............................................................................passim

*Hanon v. Dataproducts Corp.*
  976 F.2d 497 (9th Cir. 1992).....................................................................................28

*In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
  55 F.3d 768 (3d Cir. 1995)........................................................................................23

*In re McKesson HBOC, Inc. Secs. Litig.*,
  126 F. Supp. 2d 1239 (N.D. Cal. 2000) ...................................................................23

- ii -

1

## TABLE OF AUTHORITIES
### (continued)

2

Page

3

*In re Mego Financial Corp. Securities Litig.*,
   213 F.3d 454 (9th Cir. 2000)...................................................................13

4

*In re Napster Copyright Litig.*
   2005 U.S. Dist. LEXIS 11498 (N.D. Cal. May 31, 2005) ...........................25, 26

5

*In re NASDAQ Market-Makers Antitrust Litig.*
   169 F.R.D. 493 (S.D.N.Y. 1996) ...............................................................31

6

7

*In re Prudential Sec. Inc. Ltd. Partnerships Litig.*
   163 F.R.D. 200 (S.D.N.Y. 1995) ...............................................................15

8

*In re Quintus Secs. Litig.*
   148 F. Supp. 2d 967 (N.D. Cal. 2001) .......................................................30

9

10

*Johns v. Rozet*
   141 F.R.D. 211 (D.D.C. 1992) ..................................................................29

11

*Kincade v. General Tire and Rubber Co.*,
   635 F.2d 501 (5th Cir. 1981).....................................................................30

12

13

*Lewis v. Curtis*
   671 F.2d 779 (3d Cir. 1982) .....................................................................29

14

*Linney v. Cellular Alaska P'ship*
   1997 WL 450064 *5 (N.D. Cal. 1997) ......................................................22

15

16

*Local Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*,
   244 F.3d 1152 (9th Cir. 2001)...................................................................32

17

18

*M. Berenson Co. v. Faneuil Hall Marketplace, Inc.*
   671 F. Supp. 819 (D. Mass 1987) ..............................................................22

19

*Maywalt v. Parker & Parsley Petroleum Co.*
   864 F. Supp. 1422 (S.D.N.Y. 1994)
   *aff'd*, 67 F.3d 1072 (2d Cir. 1995) ...........................................................30

20

21

*Maywalt v. Parker*,
   67 F.3d 1072 (2nd Cir. 1995).....................................................................23

22

23

*Mullen v. Treasure Chest Casino, LLC*
   186 F.3d 620 (5th Cir. 1999).....................................................................28

24

*Officers for Justice v. Civil Serv. Comm'n*
   688 F.2d 615 (9th Cir. 1982)...............................................................passim

25

26

*Ortiz v. Fibreboard Corp.*
   527 U.S. 815 (1999) ..................................................................................32

27

*Parker v. Anderson*,
   667 F.2d 1204 (5th Cir. 1982).....................................................................29

28

# TABLE OF AUTHORITIES
## (continued)

Page

*Phillips Petroleum Co. v. Shutts*,
  472 U.S. 797, 70 S. Ct. 652, 94 L. Ed. 865 (1985) ................................. 33

*Rodriguez v. West Publishing Corp.*,
  2007 U.S. Dist. LEXIS 74849 *51 (C.D. Cal. Sept. 10, 2007) ..................... 23, 30

*Rural Telecomm. Coop. v. DIRECTV, Inc.*,
  221 F.R.D. 523 (C.D. Cal. 2004) ...................................................... 18

*Staton v. Boeing Co.*
  327 F.3d 938 (9th Cir. 2003) ....................................................... 13, 29

*Stevens v. Safeway, Inc.*,
  2008 U.S. Dist. LEXIS 17119 (C.D. Cal. 2008) .................................... 13

*Trautz v. Weisman*
  846 F. Supp. 1160 (S.D.N.Y. 1994) ................................................. 29

*Utility Reform Project v. Bonneville Power Admin.*
  869 F.2d 437 (9th Cir. 1989) ....................................................... 15

*White v. Imperial Adjustment Corp.*
  2002 U.S. Dist. LEXIS 26610 (E.D. La. 2002) .................................... 25, 28

## STATUTES

Bus. & Prof. Code
  Section 17200, *et seq.* ............................................................ 4

Cal. Civ. Code
  Section 1785.14(b) ................................................................. 3
  Section 1785.16 .................................................................... 3

Fair Credit Reporting Act
  15 U.S.C.
  § 1681 *et seq.* ................................................................... 3

## RULES

Fed. R. Civ. P.
  23 ................................................................................ 25
  23(a) ......................................................................... 26, 28
  23(a)(2) .......................................................................... 26
  23(b)(3) ...................................................................... passim
  23(e) ....................................................................... 2, 16, 34
  23(e)(1)(B) ....................................................................... 33
  23(e)(1)(C) Advisory Committee Notes to 2003 Amendments ........................... 16

PLAINTIFFS' MEMO IN SUPPORT OF MOTION FOR
PRELIMINARY APPROVAL OF SETTLEMENT
CASE NO. 05-CV-1070 DOC (MLGx) (LEAD CASE)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES
## (continued)

**Page**

### TREATISES

*4 Newberg on Class Actions*
  § 11.25 ..............................................................................................16, 17
  § 11.27 ....................................................................................................25
  § 11.41 ..............................................................................................15, 24

*Manual for Complex Litig.*, (4th ed. 2004)
  § 13.14 ....................................................................................................16
  § 21.311 ..................................................................................................33
  § 21.312 ..................................................................................................33
  § 21.62 ....................................................................................................13
  § 21.63 ....................................................................................................15
  § 21.632 ............................................................................................16, 25
  § 21.633 ..................................................................................................25

*Manual for Complex Litigation, Second*
  § 30.41 ....................................................................................................24

## I.       __INTRODUCTION__

Plaintiffs Jose Hernandez, Kathryn Pike, Robert Randall, and Bertram Robison (collectively, "Plaintiffs") hereby respectfully submit for the Court's preliminary approval a proposed nationwide class action settlement ("Settlement"), with the consent of all Defendants.[1]  In August 2008, this Court approved the historic settlement of the injunctive relief claims raised in these *White v. Experian* related cases. [2]  Now these Plaintiffs seek approval of the proposed Settlement that resolves all monetary damages claims in the Litigation.

Plaintiffs brought this Litigation in 2005 on behalf of themselves and all others similarly situated nationwide, alleging that Defendants have erroneously reported debts discharged in Chapter 7 bankruptcy proceedings as due and owing. Since then, as the Court is aware, the parties have engaged in extensive and contested litigation.  While zealously litigating their claims, Plaintiffs have also engaged in extended settlement discussions and no less than twelve (12) formal mediation sessions with experienced, well-respected mediators, the Hon. Lourdes Baird (Ret.) and Randall Wulff.

As detailed below, the Settlement establishes a $45 million fund to provide damage award payments to Class members who submit claims to confirm their eligibility.  The fund will also be used to pay costs of notice, administrative costs, and attorneys' fees.  As discussed herein, not all named plaintiffs in the Litigation have agreed to the terms of the Settlement of the monetary claims. Nonetheless, in the event the Court eventually grants final approval of the

---

[1] Defendants are:  Experian Information Solutions, Inc. ("Experian"), Equifax Information Services, LLC ("Equifax"), and Trans Union LLC ("Trans Union") (together, "Defendants").
[2] *Terri N. White, et al. v. Experian Information Solutions, Inc.*, Case No. 05-cv-1070 (Lead Case number); *Terri N. White, et al. v. Equifax Information Services LLC*, Case No. 05-cv-7821; *Terri N. White, et al. v. Trans Union LLC*, 05-cv-1073; *Jose Hernandez v. Equifax Information Services, LLC, et al.*, Case No. 06-cv-3924; *Jose L. Acosta et al., v. Trans Union LLC, et al.*, Case No. 06-cv-5060; and *Kathryn L. Pike v. Equifax Information Services, LLC*, Case No. 05-cv-1172.  These cases are collectively referred to herein as the "Litigation."

1   Settlement, all claims in all the related cases comprising the Litigation will be fully

2   resolved.

3        The proposed Settlement satisfies and exceeds the preliminary

4   approval criteria that a settlement be "fair, reasonable, and adequate."  Fed. R. Civ.

5   P. 23(e).  Accordingly, Plaintiffs seek preliminary approval of the Settlement, and

6   provisional certification of a nationwide class for purposes of providing the Class

7   with notice of the Settlement and an opportunity to opt-out, object, or otherwise be

8   heard.  Therefore, Plaintiffs move the Court to take the initial steps in the settlement

9   approval process by: (1) granting preliminary approval to the proposed Settlement;

10  (2) provisionally certifying the proposed settlement Class; (3) appointing as Class

11  counsel Lieff Cabraser Heimann & Bernstein, LLP, Caddell & Chapman, National

12  Consumer Law Center, Consumer Litigation Associates, P.C., Weller Green, Toups

13  & Terrell, L.L.P., and Callahan McCune and Willis; (4) approving the proposed

14  Notice Plan and forms of Notice; and (5) scheduling the final fairness hearing and

15  related dates as ordered by the Court on November 9, 2009 at 8:30 a.m.

16  **II.   BACKGROUND**

17       These cases having been pending before this Court since the Fall of

18  2005.  On or about November 2, 2005, plaintiffs in *White* filed separate actions in

19  this District against each of the Defendants, alleging that Defendants had violated

20  the Fair Credit Reporting Act ("FCRA") by recklessly failing to follow reasonable

21  procedures in the reporting, and reinvestigation of reporting, of debts discharged in

22  Chapter 7 bankruptcy proceedings.  Plaintiffs alleged that Defendants continued to

23  report such debts as due and owing when in fact they had been discharged in

24  bankruptcy.

25       Prior to the filing of *White*, on October 3, 2005, Jose Hernandez filed a

26  similar action against Defendants in the Northern District of California.  *Hernandez*

27  was then transferred to this Court, and, on August 11, 2006, was consolidated with

28

1   *White* via three separate Second Amended Consolidated Class Action Complaints,

2   one against each Defendant (herein, "*White/Hernandez*").[3]

3         Subsequently, *White/Hernandez* was related to two other actions,

4   *Acosta* and *Pike*.  Jose L. Acosta, Jr. had previously filed an action in California

5   Superior Court against Trans Union on May 12, 2003, and on August 14, 2006, he

6   filed again in this District.[4]  On October 14, 2005, Kathryn Pike filed an action in

7   California Superior Court against Equifax, which was later removed to this District

8   and transferred to this Court as related to *White/Hernandez*.  Therefore, each of

9   these cases has been either filed, transferred, or removed such that they are in the

10  Central District before the Honorable Judge David O. Carter.

11        In this Litigation, Plaintiffs allege that each Defendant recklessly or

12  negligently violated, and until enjoined by this court, continued to violate the Fair

13  Credit Reporting Act, 15 U.S.C. § 1681 *et seq.*, by failing to maintain reasonable

14  procedures to assure the accurate reporting of debts that have been discharged in

15  bankruptcy.  Plaintiffs contend that Defendants' procedures, by which Defendants

16  relied primarily on creditors and public record vendors to report the discharged

17  status of debts and judgments, were unreasonable procedures under the FCRA.

18  They further allege that Defendants failed to employ reasonable reinvestigation

19  procedures pursuant to the FCRA.  Plaintiffs assert claims for (i) willful and/or

20  negligent violation of Section 1681e(b) of the FCRA and its California counterpart,

21  Cal. Civ. Code Section 1785.14(b), for failure to maintain reasonable procedures to

22  assure maximum possible accuracy; (ii) willful and/or negligent violation of

23  Section 1681i of the FCRA and its California counterpart, Cal. Civ. Code Section

24  1785.16, for failure to reasonably investigate consumer disputes regarding the

25  ───────────────
[3] The remaining named plaintiffs under the *White/Hernandez* Second Amended Complaints are Robert Radcliffe, Chester Carter, Maria Falcon, Clifton C. Seale,

26  III, and Jose Hernandez.  Plaintiffs Terri N. White, Alex K. Gidi, and Milagros Gabrillo were dismissed by court order on October 19, 2007.

[4] The remaining named plaintiffs in *Acosta* are Robert Randall and Bertram

27  Robison.  Plaintiff Acosta was dismissed from the federal court action and has

28  dismissed his state court action.

- 3 -

1   status of the discharged accounts; and (iii) violation of California's Unfair

2   Competition law, Bus. & Prof. Code section 17200, *et seq.*

3          At this Court's suggestion, all parties to the *White/Hernandez* and

4   *Acosta* actions went to mediation before the Hon. John K. Trotter (Ret.) to attempt a

5   global resolution.  The parties attended a mediation session on September 14, 2006,

6   but no resolution with the *White/Hernandez* Plaintiffs was reached.  In or around

7   September 2006, Defendants also answered the various Second Amended

8   Complaints, denying the allegations therein, denying that the actions are suitable for

9   certification pursuant to Federal Rule of Civil Procedure 23, and asserting

10  numerous affirmative defenses that Defendants contend are meritorious.

11         The parties then agreed to a briefing and hearing schedule for the

12  preliminary approval of the proposed *Acosta* and *Pike* settlements.  The

13  *White/Hernandez* Plaintiffs objected to the approval of the proposed class action

14  settlements.  On March 6, 2007, the Court rejected the settlement in a 39-page

15  published decision.  *See Acosta v. TransUnion, LLC*, 240 F.R.D. 564 (C.D. Cal.

16  2007).

17         Thereafter, the parties pursued discovery in anticipation of a motion

18  for class certification by the *White/Hernandez* plaintiffs, eventually scheduled for a

19  hearing in August 2007.  In the midst of class certification briefing, Defendant

20  Experian moved for summary judgment, noticing the motion to be heard together

21  with class certification.  On August 13, 2007, the Court issued a tentative ruling

22  denying in part the summary judgment motion, and the Court commenced the

23  hearing on the motion, which continued over the course of the following three days.

24  On the third day of the hearing, the Court encouraged Experian to withdraw its

25  motion and pursue, with the other Defendants, a global settlement with the

26  Plaintiffs.

27         In the Court's rulings and comments to counsel, the Court has urged

28  the parties to proceed to mediation.  Since August 15, 2007, the parties have

1    conducted arms-length, contentious, lengthy, and complicated negotiations (with

2    the participation of Defendants' insurance carriers), including seven in-person

3    sessions with a JAMS mediator, the Hon. Lourdes Baird (Ret.), and five in-person

4    mediation sessions with mediator Randall Wulff, as well as several additional in-

5    person or telephonic sessions involving counsel for the parties.

6              On or about April 3, 2008, the parties entered into the Injunctive Relief

7    Settlement Agreement, in which Defendants agreed to retroactively update the

8    credit files of 23(b)(2) Settlement Class members to reflect the discharge of certain

9    categories of pre-bankruptcy civil judgments and tradelines.  Defendants also

10   agreed to adopt new procedures for the update of certain pre-bankruptcy civil

11   judgments and tradelines when a public record entry of the bankruptcy has been

12   added to the consumer's file.  All of the *White/Hernandez* and *Acosta/Pike*

13   Plaintiffs submitted declarations supporting and recommending the Injunctive

14   Relief Settlement, expressing to the Court that the changes to Defendants'

15   procedures were very important and were what they expected to achieve when

16   agreeing to participate in the lawsuit.  Dkt. 301, Exh. G-O to Declaration of

17   Michael Sobol in Support of Plaintiffs' Motion for Class Certification.  On August

18   19, 2008, the Court approved these new procedures, found them to be reasonable

19   under the FCRA, and entered an Approval Order Regarding Settlement and Release

20   for the Injunctive Relief Settlement Agreement (Dkt. 290).  Settlement Class

21   Counsel will, prior to the approval of this Settlement, be seeking approval of an

22   award of fees and expenses for their efforts in connection with obtaining this

23   Injunctive Relief Settlement.  In a separate, independently negotiated agreement,

24   Defendants have agreed to pay up to six million dollars to for the injunctive relief

25   fees and expenses.

26              The parties' efforts to resolve the monetary relief portion of the

27   Litigation then resumed with several mediation sessions, but without success.  On

28   January 26, 2009, the parties appeared for a hearing on Plaintiffs' Motion for Class

1   Certification of a 23(b)(3) damages class.  Prior to the scheduled hearing, the Court
2   issued a tentative ruling denying Plaintiffs' Motion for Class Certification pursuant
3   to Fed. R. Civ. P. 23(b)(3), decided not to hear the Motion at that time, and directed
4   the parties to make a final attempt to settle the Litigation.  The parties and
5   Defendants' insurance carriers participated in an additional mediation session
6   before mediator Wulff three days later but did not reach an agreement.  The parties
7   and Defendants' insurance carriers then participated in a mandatory settlement
8   conference at the Court on February 5, 2009.  At that conference, Plaintiffs,
9   Equifax, and Experian reached agreement as to the principal terms of a settlement
10  of all of Plaintiffs' claims in the Litigation for monetary damages, including
11  statutory and punitive damages, as reflected in the Settlement Agreement described
12  below.  TransUnion agreed to the settlement terms on February 18, 2009.

13  **III.    THE PROPOSED SETTLEMENT**

14          Subject to this Court's approval, the Settlement Agreement and
15  Release ("Settlement Agreement") will resolve all of the claims of the Plaintiffs and
16  all members of the Settlement Class.  Set forth below is a summary which
17  paraphrases the key terms of the Settlement Agreement.  A copy of the Settlement
18  Agreement is attached as Exhibit 1 to the Declaration of Michael W. Sobol In
19  Support of Motion for Preliminary Approval of the Settlement ("Sobol Decl.").

20          **A.    Settlement Class**

21          The "23(b)(3) Settlement Class" includes all Consumers[5] who have
22  received an order of discharge pursuant to Chapter 7 of the United States
23  Bankruptcy Code and who, any time between and including March 15, 2002, and
24  the present (or, for California residents in the case of TransUnion, any time between
25  and including May 12, 2001 and the present), have been the subject of a Post-
26
27
_____
28  [5] References to Settlement terms and definitions follow those in the Settlement
    Agreement, attached as Sobol Decl., Exhibit 1.

bankruptcy Credit Report issued by a Defendant in which one or more of the following appeared:

    a.    A Pre-bankruptcy Civil Judgment that was reported as outstanding (i.e., it was not reported as vacated, satisfied, paid, settled or discharged in bankruptcy) and without information sufficient to establish that it was, in fact, excluded from the bankruptcy discharge;

    b.    A Pre-bankruptcy Installment or Mortgage Loan that was reported as delinquent or with a derogatory notation (other than "discharged in bankruptcy," "included in bankruptcy" or similar description) and without information sufficient to establish that it was, in fact, excluded from the bankruptcy discharge;

    c.    A Pre-bankruptcy Revolving Account that was reported as delinquent or with a derogatory notation (other than "discharged in bankruptcy," "included in bankruptcy" or similar description) and without information sufficient to establish that it was, in fact, excluded from the bankruptcy discharge; and/or

    d.    A Pre-bankruptcy Collection Account that remained in collection after the Bankruptcy Date.

Settlement Agreement at § 1.48.  Excluded from the Class are:  (i) all persons who timely and validly request exclusion from the Class; (ii) all Consumers who would qualify for membership in the "23(b)(3) Settlement Class" based solely on a Post-bankruptcy Credit Report for which the Consumer has released all claims as to the issuing Defendant; (iii) Defendants' officers, directors, and employees; (iv) Defendants' attorneys; (v) Plaintiffs' attorneys; and (vi) Judge David O. Carter and the members of his immediate family.

### B.     The Benefits Of The Monetary Relief Settlement

The Settlement Agreement requires Defendants to pay $15 million each into a Settlement Fund that will award monetary damages to the 23(b)(3) Settlement Class.  The following provides a summary of how the Settlement will be structured and carried out.

### 1.     Identifying 23(b)(3) Class Members.

Defendants have agreed to provide the Settlement Administrator with a list of identified 23(b)(3) Settlement Class members by using commercially reasonable procedures to search a selection of their archived files to identify each Consumer who: (i) was the subject of a credit report issued by the Defendant after their Chapter 7 bankruptcy discharge and on or after March 15, 2002 (or, for California residents in the case of TransUnion, after May 12, 2001); and (ii) has at least one tradeline that fits into one of the four different categories of qualifying tradelines corresponding to the manner in which Defendants report on them:  civil judgments, installment loans, credit card loans (revolving credit), and collection accounts.  Settlement Agreement § 4.1(a).

The first category from which a Consumer can have a qualifying tradeline is pre-bankruptcy civil judgments that do not reflect a Chapter 7 bankruptcy account status and that do not indicate they were paid, satisfied, vacated, or included in bankruptcy, or were non-dischargeable (*e.g.*, judgments obtained by governmental taxing authorities or relating to domestic support obligations) or tax liens.  *Id.* § 4.1(a)(ii)(A).

The second category is pre-bankruptcy installment or mortgage loans that do not reflect a Chapter 7 bankruptcy account status and that do not have an indication that the account is closed, voluntarily surrendered, subject to a deed in lieu of foreclosure, or an indication of a specific reporting code type from the standardized reporting protocol known as the Metro 2 format that would make them

non-dischargeable (such as, for example, student loan debts, family support obligations, and governmental fines).  *Id.* § 4.1(a)(ii)(B).

The third category of a qualifying tradeline is a pre-bankruptcy revolving, open, or line of credit account that does not reflect a Chapter 7 bankruptcy account status and that does not have an indication that the account is closed, a code indicating that the Consumer was an "authorized user," or an indication of a specific Metro 2 code type that would make it non-dischargeable. *Id.* § 4.1(a)(ii)(C).

The fourth category of a qualifying tradeline is a pre-bankruptcy collection account that does not reflect a Chapter 7 bankruptcy account status and that does not have an indication that the account is closed or an indication of a specific Metro 2 code type that would make it non-dischargeable. *Id.* § 4.1(a)(ii)(D).

On or before July 31, 2009, each Defendant will forward their list of identified Consumers to the Settlement Administrator, excluding any Consumers who have released any claims against that Defendant as a result of prior litigation or otherwise and using commercially reasonable measures to avoid duplication within its respective list. *Id.* § 4.1(d).  The lists will include information on the tradeline(s) in one of the four qualifying tradeline categories (pre-bankruptcy civil judgment, installment or mortgage loan, revolving account, or collection account), as well as information as to whether or not a post-bankruptcy "hard inquiry"[6] or post-bankruptcy employment inquiry appears on the Consumer's File and the date of such an inquiry.  Settlement Agreement § 4.1(d)(iii-v).  The Settlement Administrator will merge Defendants' lists into a single, combined list of identified 23(b)(3) Settlement Class Members (the "Class List") and will use commercially

---

[6] A "Post-bankruptcy Hard Inquiry" is an entry in a Consumer's File that contains a record of a Defendant's publication of the Consumer's Post-bankruptcy Credit Report to a lender or other prospective creditor for purposes of evaluating a loan or other credit application that was initiated by the Consumer.  Settlement Agreement § 1.30.

1   reasonable measures to remove any duplication and resolve any conflicts relating to

2   Consumers' addresses.  *Id.* § 4.2.

3          **2.      Opt Out Procedure.**

4          A proposed 23(b)(3) Settlement Class Member may request to be

5   excluded from the 23(b)(3) Settlement Class by sending a written request for

6   exclusion to the Settlement Administrator no later than October 15, 2009.  The opt-

7   out request must contain the Class Member's original signature, current postal

8   address, and telephone number, the last four digits of the Class Member's Social

9   Security number, and a specific statement that the Class Member wants to be

10  excluded from the 23(b)(3) Class.  *Id.* § 5.2(a).

11         **3.      Payments to the Class Members.**

12         The Settlement provides relief for all Class members who have had a

13  credit report issued by a Defendant that contained alleged errors regarding debts

14  discharged in bankruptcy, as described in detail in the Settlement Agreement at

15  § 7.7.  Those Class members who believe that there have been one or more errors in

16  their credit reports regarding debt discharged in bankruptcy can apply for a fixed or

17  "Convenience" damage award, which will be an equal *pro rata* share of the

18  available Convenience Award Fund.  *Id.* § 7.7(b).  The amount will depend on the

19  number of claimants for the Convenience Awards and the number of claimants and

20  amount of the projected Actual Damage Awards, though the Convenience Award

21  Fund will be at least $10 Million.  *Id.* § 7.7(b)(i).

22         Those Class members who can certify that they have been damaged by

23  an alleged error in their credit reports regarding debts discharged in bankruptcy,

24  with respect to a denial of employment, a mortgage loan or housing rental, and/or a

25  credit card, auto loan, other credit they applied for, or payment of a discharged debt

26  to obtain credit, can apply for an "Actual Damage Award."  *Id.* § 7.7(c).  If

27  Defendants' records confirm a post-bankruptcy employment inquiry within two

28  years of the date indicated by the claimant on their Claim Form, or if there is

1   otherwise no contrary indication that an employment inquiry was made, the damage

2   award to the Consumer will be $750.00.  *Id.* § 7.7(c)(iii)(1).  If Defendants' records

3   confirm a hard inquiry consistent with a mortgage loan or other housing inquiry

4   within six months of the date on the Claim Form, the Consumer will receive an

5   award of $500.00.  *Id.* § 7.7(c)(iii)(2).  If Defendants' records confirm a post-

6   bankruptcy hard inquiry within six months of the date indicated on the Claim Form,

7   and the Consumer does not apply for an employment or mortgage/housing award,

8   then the Consumer will receive an award of $150.00.  *Id.* § 7.7(c)(iii)(3).  The

9   Settlement Administrator will pay the Actual Damage Awards at the highest award

10  level for which the claimant is eligible.  *Id.* § 7.7(c)(iv).  The applicable award for

11  each category will be increased or decreased, *pro rata*, to reflect the number of

12  valid claims in each category and the funds available for distribution to the Actual

13  Damage Award claimants, including the addition of any unclaimed or uncashed

14  Convenience Damage Awards.  *Id.*; *see infra* III.B.4.

15                    **4.    Claims Administration.**

16            The 23(b)(3) Settlement Class Members may submit claims by

17  October 15, 2009 by either registering for a claim on the Settlement Website or

18  returning the Claim Form via U.S. mail, provided they do not opt out (*see supra*

19  III.B.2).  Settlement Agreement § 5.1(a).  The Settlement Administrator will

20  subtract from the Settlement Fund the sum of all administrative and notice costs

21  and amounts paid pursuant to the award of attorneys' fees and costs.  *Id.* § 7.7(b)(i).

22  The Settlement Administrator will then calculate the estimated amounts to be paid

23  for Actual Damage Awards by identifying the highest award to which each Actual

24  Damage Award Claimant may be entitled, multiplying the total number of such

25  claims in each of the three categories, and totaling the results for all categories.  *Id.*

26  The remaining amount will be available for the Convenience Damage Award Fund,

27  which will be at minimum $10 million.  *Id.*  The Settlement Administrator will then

28  pay each Convenience Award Claimant an equal *pro rata* share of the Convenience

1   Damage Award Fund, determined by the number of claimants for the Convenience

2   Damage Award.  *Id.* § 7.7(b)(ii).  The Convenience Damage Awards will be

3   distributed within ninety (90) days of the Effective Date of the Settlement.  *Id.*

4   § 7.7(b)(iii).  Any unclaimed or uncashed awards will expire after ninety (90) days

5   and the amounts added to the amounts available for payment of the Actual Damage

6   Awards.  *Id.*

7           **5.**      **<u>Timetable to Disburse Awards from Monetary Relief</u>**

8                 **<u>Settlement Fund.</u>**

9         Upon Preliminary Approval, the parties shall jointly petition the Court

10  to pay the Settlement Administrator for the costs of notice and other administrative

11  expenses related to effecting the Notice Plan.  *Id.* § 7.6(a).  Within ninety (90) days

12  following the Effective Date of the Final Approval Order, all money remaining in

13  the Settlement Fund after the payment to 23(b)(3) Settlement Class Counsel for

14  Monetary Relief Fees will be paid to Claimants.  *Id.* § 7.6(d).

15          **6.**      **<u>Class Representative Stipend.</u>**

16        The Settlement Agreement provides for $5,000 incentive awards for

17  the Class Representatives in recognition of their service to and efforts on behalf of

18  the Class.  *Id.* § 7.5.  These incentive awards are in addition to the relief the class

19  representatives will be entitled to under the terms of the Settlement. Throughout the

20  Litigation, these Class Representatives have participated in discovery, including

21  extensive and probing depositions and responding to interrogatories and requests

22  for production of documents, and in the preparation of the pleadings.  They all were

23  kept informed of the Litigation as it developed and all were kept abreast of, and

24  signed off on, the proposed Settlement.

25        Enhancement awards like the ones requested here are appropriate.

26  Unlike unnamed Class members, who will enjoy the benefits of the

27  Representatives' efforts without taking any personal action, the named Class

28  Representatives made themselves available as witnesses at deposition and subjected

1  themselves to all the obligations of named parties, including participating in

2  discovery and following the Litigation.  Small incentive awards, which serve as

3  premiums in addition to any claims-based recovery from the settlement, promote

4  the public policy of encouraging individuals to undertake the responsibility of

5  representative lawsuits.  *See*, *e.g.*, *In re Mego Financial Corp. Sec. Litig.*, 213 F.3d

6  454, 463 (9th Cir. 2000); *Staton v. Boeing*, 237 F.3d 938, 977 (9th Cir. 2003);

7  *Stevens v. Safeway, Inc.*, 2008 U.S. Dist. LEXIS 17119 (C.D. Cal. 2008); *see also*

8  *Manual for Complex Litig.*, § 21.62 n. 971 (4th ed. 2004) (incentive awards may be

9  "merited for time spent meeting with class members, monitoring cases, or

10  responding to discovery").

11  ### 7.    Attorneys' Fees and Costs.

12    The Settlement Agreement provides that on or before October 19,

13  2009, 23(b)(3) Settlement Class Counsel will file an application or applications to

14  the Court, noticed to be heard at the Final Fairness Hearing, for approval of

15  attorneys' fees and costs associated with this monetary relief Settlement.

16  Settlement Agreement § 7.3(a).  23(b)(3) Settlement Class Counsel will seek

17  approval of attorneys' fees of an amount not to exceed 25% of the Settlement Fund

18  and for reimbursement of their costs and expenses.  The enforceability of the

19  Settlement Agreement will not be contingent on the amount of attorneys' fees or

20  costs awarded.  *Id.* § 7.3(b).

21  ### 8.    Settlement Administration and Notice.

22    As set forth in the Settlement Agreement, all costs of notice and claims

23  administration will be invoiced by the Settlement Administrator and paid from the

24  Settlement Fund.  *Id.* § 4.4(a).  The parties have agreed that the 23(b)(3) Settlement

25  Counsel will identify a Settlement Administrator three business days before the

26  hearing on Preliminary Approval of this Settlement.  *Id.* § 3.2.  The parties will

27  disclose the identity of the Settlement Administrator and Notice Provider to the

28  Court by June 30, 2009.  The Settlement Administrator and Notice Provider will

1    administer the claims resolution process, subject to review by Settlement Counsel.

2    Their duties will include the following:  (1) issuing Class notice and claim forms;

3    (2) calculating and issuing settlement payments; and (3) responding to Class

4    member inquiries regarding the claims administration process.  *Id.* §§ 4.3, 5.1.  The

5    parties have agreed to cooperate with the Settlement Administrator and Notice

6    Provider to ensure that they have all of the information they need to perform these

7    tasks.

8                    Within ten days following this Preliminary Approval Order, the parties

9    shall jointly petition the Court for approval to deposit the Settlement Fund with the

10   Registry of the Court.  *Id.* § 7.1(a).  Within seven days after such approval, but in

11   no event before June 15, 2009, each Defendant shall cause to be deposited into the

12   Registry of the Court an amount equal to fifteen million dollars ($15,000,000.00).

13   *Id.*  On or before August 31, 2009, the Settlement Administrator and Notice

14   Provider shall cause the Mail Notice and a Claim Form (submitted herewith as

15   Exhibit A to the Settlement Agreement) to be sent via U.S. mail to each Settlement

16   Class Member identified on the Class List.  *Id.* §§ 4.3(b), (d).  Additionally, the

17   Settlement Administrator and Notice Provider shall issue the Publication Notice

18   (Exhibit B to the Settlement Agreement) through a nationally distributed newspaper

19   or magazine and the Internet Notice (Exhibit C) through the Settlement Website.

20   *Id.* §§ 4.3(c), (e).  The parties may also issue a joint press release.  Settlement

21   Agreement § 10.1.  The Settlement Website shall provide generalized information,

22   including the full text of the Settlement Agreement, a Long-Form Notice, the Claim

23   Form, the Preliminary Approval Order, and the contact information for 23(b)(3)

24   Settlement Class Counsel and the Settlement Administrator.  *Id.* § 4.3(c).

25

26

27

28

## IV.   THE COURT SHOULD GRANT PRELIMINARY APPROVAL OF THE SETTLEMENT

### A.   Settlement and Class Action Approval Process

"[V]oluntary conciliation and settlement are the preferred means of dispute resolution," especially in complex class actions. *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982); *see also*, *e.g.*, *Utility Reform Project v. Bonneville Power Admin.*, 869 F.2d 437, 443 (9th Cir. 1989). Class action lawsuits readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length, costs, and risks of the litigation. As a result, courts should exercise their discretion to approve settlements "in recognition of the policy encouraging settlement of disputed claims." *In re Prudential Sec. Inc. Ltd. Partnerships Litig.*, 163 F.R.D. 200, 209 (S.D.N.Y. 1995); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) ("[S]trong judicial policy . . . favors settlements, particularly where complex class action litigation is concerned."); *4 Newberg on Class Actions* ["*Newberg*"] § 11.41 (4th ed. 2002) (citing cases). The traditional means for handling claims like those at issue here – individual litigation – would unduly tax the court system, receive a massive expenditure of public and private resources, and given the relatively small value of the claims of the individual Class members, would be impracticable. The proposed Settlement is therefore the best vehicle for Class members to receive the relief to which they are entitled in a prompt and efficient manner.

The *Manual for Complex Litigation* describes a three-step procedure for approval of class action settlements:

(1)   Preliminary approval of the proposed settlement at an informal hearing;

(2)   Dissemination of notice of the settlement to all affected class members;

(3)     A formal "fairness hearing" or final settlement approval hearing, at which class members may be heard regarding the settlement, and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.

*Manual for Complex Litig.*, § 21.63 (4th ed. 2004).  This procedure, used by courts in this Circuit and endorsed by class action commentator Herbert Newberg, safeguards class members' due process rights and enables the court to fulfill its role as the guardian of class interests.  4 *Newberg* § 11.25.

With this motion, Plaintiffs request that the Court take the first step in the settlement approval process by granting preliminary approval of the proposed Settlement.  A class action may not be compromised or settled without the Court's approval.  Fed. R. Civ. P. 23(e).  The purpose of preliminary evaluation of proposed class action settlements is to allow the judge to make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and therefore whether notice of the certification, proposed settlement, and date of the final fairness hearing is worthwhile.  *Manual for Complex Litig.*, § 21.632 (4th ed. 2004).  The decision to approve or reject a proposed settlement is committed to the Court's sound discretion.  *Class Plaintiffs*, 955 F.2d at 1276; *see also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) (Ninth Circuit has "repeatedly stated that the decision to approve or reject a settlement is committed to the sound discretion of the trial judge because he is exposed to the litigants and their strategies, positions, and proof"); Rule 23(e)(1)(C) Advisory Committee Notes to 2003 Amendments ("Subdivision (e)(1)(C) states the standard for approving a proposed settlement that would bind class members.  The settlement must be fair, reasonable, and adequate.").

The Court's grant of preliminary approval will allow all Class members to receive notice of the proposed Settlement's terms and the date and time of the formal fairness hearing, at which Class members may be heard regarding the

Settlement, and at which further evidence and argument concerning the fairness,

adequacy, and reasonableness of the Settlement may be presented.  *See Manual for*

*Complex Litig.*, at §§ 13.14, 21.632.

**B.**     <u>**The Criteria for Settlement Approval Are Satisfied**</u>

As long as "preliminary evaluation of the proposed settlement does not

disclose grounds to doubt its fairness or other obvious deficiencies, such as unduly

preferential treatment of class representatives or of segments of the class, or

excessive compensation for attorneys, and appears to fall within the range of

possible approval," the Court should preliminarily approve the settlement.

*Newberg* § 11.25 (quoting *Manual for Complex Litig., Third* (FJC 1995)).

A proposed Settlement may be finally approved by the trial court if it

is determined to be "fundamentally fair, adequate, and reasonable."  *Class*

*Plaintiffs,* 955. F.2d at 1276.  While consideration of the requirements for *final*

approval is unnecessary at this stage, all of the relevant factors weigh in favor of the

Settlement proposed here.[7]  In affirming the settlement approved by the trial court

in *Class Plaintiffs*, the Ninth Circuit noted that it "need not reach any ultimate

conclusions on the contested issues of fact and law which underlie the merits of the

dispute, for it is the very uncertainty of outcome in litigation and avoidance of

wasteful and expensive litigation that induce consensual settlements."  *Id.* at 1291

(internal quotation and citation omitted).  The Court's ultimate determination

should balance:

> the strength of plaintiffs' case; the risk, expense,
> complexity, and likely duration of further litigation; the
> risk of maintaining class action status throughout the trial;
> the amount offered in settlement; the extent of discovery

---

[7] Plaintiffs will address in detail each of the factors required for final settlement
approval in their Motion for Final Approval of the Settlement, to be submitted at
the close of the Notice period.

1    completed, and the state of the proceedings; the

2    experience and views of counsel . . . and the reaction of

3    the class to the proposed settlement.

4    *Id.* (citing *Officers for Justice*., 688 F.2d at 625).  The relative degree of importance

5    to be attached to any particular factor will depend upon and be dictated by the

6    nature of the claims advanced, the types of relief sought, and the unique facts and

7    circumstances of each case.  *Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*,

8    221 F.R.D. 523, 526 (C.D. Cal. 2004) (citing *Officers for Justice*, 688 F.2d at 625).

9    1.    **The Settlement Is The Product Of Serious, Informed, and Arm's Length Negotiations After The Parties Conducted Extensive Investigation And Analysis.**

10

11    a.    **The Parties Actively Litigated Disputed Issues and Engaged in Substantial Discovery.**

12

13    Plaintiffs in the various cases have undertaken substantial

14    investigation, fact-gathering, and formal discovery (including review of tens of

15    thousands of pages of documents, retention and consultation of numerous experts in

16    the fields of credit reporting and consumer bankruptcies, interviews with numerous

17    consumers, review of thousands of consumer credit reports, and numerous

18    depositions) in support of the Litigation.  Plaintiffs have taken or defended forty

19    depositions, produced over 50,000 pages of documents, and reviewed over 40,000

20    pages of documents produced by the Defendants.  Sobol Decl. ¶ 4.  They have

21    retained several experts who have filed numerous declarations with the Court.  *Id.*

22    Moreover, the parties have engaged in extensive motion practice before reaching

23    the Settlement Agreement.  They have attended several status conferences and

24    multiple-day hearings on settlement approval and summary judgment.  *Id.* ¶ 3.  This

25    Court has presided over the hearings and executed no fewer than thirty-seven

26    minute entries, entered at least fifty signed orders, and authored four published

27    opinions.  *Id.*

28

**b.**   **The Parties Participated in Arms-Length Negotiations Before an Experienced Neutral Mediator.**

On or about August 15, 2007, the Court urged the parties to proceed to mediation.  Since then, the parties have conducted extensive arms-length and contentious negotiations during the course of a lengthy and complicated mediation with the Hon. Lourdes Baird (Ret.) and with Randall Wulff.  *Id*. ¶ 5.  They did so with attorneys on both sides who are very experienced in the prosecution, defense, trial and settlement of class action litigation, including as it relates to FCRA and other consumer cases, and who are well-versed in the legal and factual issues implicated in this action.  *Id*.  Moreover, the parties had the benefit of the Court's guidance from its denial of settlement approval in the *Acosta* settlement, its tentative ruling denying Experian's summary judgment motion, and for the most recent mediation sessions, the Court's tentative ruling denying the *White/Hernandez* Plaintiffs' Motion for Class Certification.

The parties participated in seven full days of mediation with the participation of Judge Baird, as well as numerous telephonic conferences with Judge Baird.  *Id*. ¶ 7.  The mediation sessions with Judge Baird led to the Injunctive Relief Settlement approved by the Court on August 19, 2008.  *Id.* ¶ 8.

The parties also participated in five in-person mediation sessions with mediator Randall Wulff, including a mandatory settlement conference at the Court on February 5, 2009.  *Id.* ¶¶ 9-11.  Plaintiffs also engaged in separate settlement discussions with each of the Defendants.  At the February 5, 2009 settlement conference, Plaintiffs, Equifax, and Experian reached agreement as to the principal terms of the Settlement and were given authority to settle on those terms by their insurance carriers.  *Id.* ¶ 11.  TransUnion agreed to those terms on February 18, 2009.  *Id.*

- 19 -

2.     **The Settlement Provides Substantial Relief for Class Members**

The Settlement provides relief for all Class members who have had a credit report issued by a Defendant that contained alleged errors regarding debts discharged in bankruptcy, as described in detail in III.B.1., *supra*, and in the Settlement Agreement at § 7.7.  Those Class members who believe that there have been one or more errors in their credit reports regarding debt discharged in bankruptcy can apply for a fixed damage award, or "Convenience Damage Award," which will be an equal *pro rata* share of the Available Convenience Damage Award Funds.  Settlement Agreement § 7.7(b).

Those Class members who can certify that they have been damaged by an error in their credit reports regarding debt discharged in bankruptcy, with respect to a denial of employment, a mortgage loan or housing rental, and/or a credit card, auto loan, other credit they applied for, or payment of a discharged debt to obtain credit, can apply for an "Actual Damage Award."  *Id.* § 7.7(c).  If Defendants' records confirm a post-bankruptcy employment inquiry within two years of the date indicated by the claimant on their Claim Form, or if there is otherwise no contrary indication that an employment inquiry was made, the damage award to the Consumer will be $750.00.  *Id.* § 7.7(c)(iii)(1).  If Defendants' records confirm a hard inquiry consistent with a mortgage loan or other housing inquiry, the Consumer will receive an award of $500.00.  *Id.* § 7.7(c)(iii)(2).  If Defendants' records confirm a post-bankruptcy hard inquiry, and the Consumer does not apply for an employment or mortgage/housing award, then the Consumer will receive an award of $150.00.  *Id.* § 7.7(c)(iii)(3).  The Settlement Administrator will pay the Actual Damage Awards at the highest award level for which the claimant is eligible.  *Id.* § 7.7(c)(iv).

Class members may submit a simple claim form to request the relief available under the Settlement.  Those Class members requesting Actual Damage

1   Awards must provide an approximate date (month and year) of the relevant

2   transaction(s) so that their claims can be verified.  *Id.* § 4.3(d).

3   **3.   The Risks of Continued Litigation and Trial Favor Settlement**

4

5   The Settlement provides Class members with benefits they would not

6   enjoy if the case were to proceed to trial.  First, the Settlement provides Class

7   members with prompt and efficient relief.  Proceeding to trial would add years to

8   the resolution of this case and could be further delayed by appeals.  Moreover,

9   because the individual actions would be cost prohibitive relative to the amount in

10   controversy presented by any individual claim, the Class members receive the

11   benefit of being part of a class action.

12   Second, the Settlement enables Class members to avoid the risks of

13   going to trial.  The factual and legal issues in this action are complex, and the trial

14   of Plaintiffs' claims under the FCRA and related state laws would require

15   substantial preparation and ultimately involve the presentation of dozens of

16   witnesses and numerous experts.  Although Plaintiffs and the Class believe their

17   claims have merit, they also recognize that they would face significant legal,

18   factual, and procedural obstacles to recovering damages on their claims.  Where, as

19   here, the Court issued a tentative ruling on January 26, 2009 denying Plaintiffs'

20   Motion for Class Certification pursuant to Fed. R. Civ. P. 23(b)(3) and directed the

21   parties to make a final attempt to settle the Litigation, certifying a class could

22   present some difficulties.  Moreover, the outcome of a trial is uncertain.  The

23   Defendants deny that they willfully or negligently violated FCRA or related state

24   laws, and they would challenge Plaintiffs' claims at every stage of the Litigation.

25   Among other things, as evidence of their good faith, they would point to the fact

26   that they have completely revised the challenged procedures independently of any

27   monetary settlement.  The Settlement ensures that Class members will be granted

28   relief if they submit timely qualified claims.

Third, the Settlement negates the extraordinary time and expense that would be incurred if this case were to proceed to trial.  The Settlement commits Defendants to each pay $15 million into a Settlement Fund to be distributed among the Class according to their claims.  Even if the Class were successful in winning at trial, it would not see any relief until after many potential appeals and many years. The results of a Settlement will benefit the parties and the court system.

### 4.  The Recommendations Of Experienced Counsel Favor Approval Of The Settlement.

The judgment of experienced counsel regarding the Settlement is entitled to great weight.  *M. Berenson Co. v. Faneuil Hall Marketplace, Inc.*, 671 F. Supp. 819, 822 (D. Mass 1987); *Linney v. Cellular Alaska P'ship*, 1997 WL 450064, at *5 (N.D. Cal. 1997); *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980).  "The recommendations of plaintiffs' counsel should be given a presumption of reasonableness."  *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979).  Here, counsel for both parties endorse the Settlement as fair, adequate, and reasonable.[8]

Settlement Counsel have extensive experience in prosecuting and litigating consumer class action cases and FCRA and bankruptcy actions.  Sobol Decl. ¶ 3.  Settlement Counsel have conducted extensive investigation of and discovery in this case.  *Id*. ¶ 4.  The fact that qualified and well-informed counsel endorse the Settlement as being fair, reasonable, and adequate weighs heavily in favor of this Court's approval of the Settlement.

---

[8] The Executive Committee, comprised of Michael Sobol of Lieff Cabraser, Michael Caddell of Caddell & Chapman, Stuart Rossman and Charles Delbaum of National Consumer Law Center, Len Bennett of Consumer Litigation Associates, and Dan Wolf of The Law Offices of Dan Wolf, voted 4-1 in favor of the Settlement.  Dan Wolf was the lone vote against the Settlement.

### 5.      The Court Should Approve The Settlement If It Determines It Is In The Best Interests of The Class.

The Plaintiffs have actively participated in this Litigation by staying apprised of developments, producing documents, responding to discovery and providing sworn declaration and deposition testimony.  Moreover, they have been kept informed about the progress of settlement negotiations and mediation and the proposed Settlement.  The proposed Plaintiffs have been informed of the nature of the Settlement and believe that the Court's approval of it would serve the best interests of the class.  *See* Declarations of Jose Hernandez, Kathryn Pike, Bertram Robison, and Robert Randall In Support of Plaintiffs' Motion for Preliminary Approval of Settlement.

The Plaintiffs represent the interests of the Class in asking the Court to approve this Settlement.  The claims of all of the original *White* plaintiffs were consolidated with the claims of Jose Hernandez via the *White/Hernandez* Second Amended Consolidated Class Action Complaints against each Defendant, and the claims of the Acosta plaintiffs were related to *White/Hernandez*.  *See supra* at pp. 2-3.  Therefore, even if the *White* plaintiffs do not agree with the Settlement[9], Jose Hernandez, Robert Randall, and Bertram Robison seek to resolve all of the claims in the complaints against Defendants on behalf of the Class.  If the Settlement is approved by the Court, the Settlement will resolve and release all claims of the Plaintiffs and 23(b)(3) Settlement Class Members as they relate to the reporting of debts discharged in bankruptcy.  Settlement Agreement § 1.38.

The Ninth Circuit does not require that all named plaintiffs agree with a settlement in order for it to be approved.  *Officers for Justice v. Civil Serv. Com.*, 688 F.2d 615, 631 (9th Cir. 1982).  Therefore, the Court should approve the

---

[9] Proposed 23(b)(3) Settlement Class Counsel have only been able to confirm support for the Settlement from Jose Hernandez, Robert Randall, and Bertram Robison.  Though Settlement Class Counsel have not had an opportunity to meet with all of the *White* Plaintiffs, they have been advised that they oppose the Settlement.

1  Settlement if it determines it is in the best interests of the class.  *Maywalt v. Parker*,

2  67 F.3d 1072, 1078 (2nd Cir. 1995) ("[t]he ultimate responsibility to ensure that the

3  interests of class members are not subordinated to the interests of either the class

4  representatives or class counsel rests with the district court").[10]  Moreover, the

5  Court is not required to give any special deference to Objecting Plaintiffs.

6  *Rodriguez v. West Publishing Corp.*, 2007 U.S. Dist. LEXIS 74849, at *51 (C.D.

7  Cal. Sept. 10, 2007).

8        **C.    The Court Itself Has Urged The Parties To Reach A Settlement.**

9              In the Court's prior rulings and comments to counsel, the Court has

10  urged the parties to reach a settlement.  The Court first urged the parties to proceed

11  to mediation on or about August 15, 2007.  After the parties entered into an

12  Injunctive Relief Settlement Agreement on or about April 3, 2008, which was

13  approved by the Court on August 19, 2008, the Court continued to encourage the

14  parties to try to settle the case.  On January 26, 2009, when the parties appeared for

15  a hearing on Plaintiffs' Motion for Class Certification, the Court issued a tentative

16  ruling denying the motion and directed the parties to make a final attempt to settle

17  the Litigation.  When the parties did not reach an agreement after an additional

18  mediation session with mediator Randall Wulff, the Court ordered a mandatory

19  settlement conference on February 5, 2009, whereby a settlement was reached with

20  two defendants (which the third defendant joined two weeks later).  Thus, on

21  numerous occasions, the Court strongly urged the parties to reach a settlement

22  agreement.

23

24  _____

[10] The 23(b)(3) Settlement Counsel also have a duty to do what they believe is in
25  the best interests of the class, even if the named plaintiffs do not agree.  *See, e.g.,*
*Fleury v. Richemont NorthAmerica, Inc.*, 2008 U.S. Dist. LEXIS 64521, at *44
26  (N.D. Cal. July 3, 2008 (J. Chen)) (citing *In re GMC Pick-Up Truck Fuel Tank*
*Prods. Liab. Litig.*, 55 F.3d 768, 801 (3d Cir. 1995) (stating that, "[b]eyond their
27  ethical obligations to their clients, class attorneys, purporting to represent a class,
also owe the entire class a fiduciary duty once the class complaint is filed"); *In re*
28  *McKesson HBOC, Inc. Secs. Litig.*, 126 F. Supp. 2d 1239, 1245 (N.D. Cal. 2000)
(noting that "lead counsel owes a generalized duty to unnamed class members")).

1    Where, as here, a proposed class settlement has been reached after

2    meaningful discovery and arm's length bargaining, conducted by capable counsel,

3    and the proponents of the settlement are counsel experienced in similar litigation,

4    the settlement should be entitled to a presumption of fairness. *Newberg* § 11.41;

5    *Manual for Complex Litig., Second*, § 30.41 at 237. These factors, and the terms of

6    the Settlement offering damage awards to all Class members, demonstrate that the

7    Settlement is fair, adequate, and reasonable.

8    ## V.   CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE

9

10    Finally, Plaintiffs request that the Court provisionally certify a

11    nationwide class for settlement purposes. Provisional certification permits notice of

12    the proposed Settlement to the Class to inform Class members of the existence and

13    terms of the proposed Settlement, of their right to be heard on its fairness, of their

14    right to opt out or object, and of the date, time, and place of the formal fairness

15    hearing. *See Manual for Complex Litig.*, §§ 21.632, 21.633 .

16    The decision whether to certify these actions as class actions is

17    committed to the sound discretion of this Court within the guidelines set forth in

18    Fed. R. Civ. P. 23. *See, e.g.,* 4 *Newberg* § 11.27; *Hanlon*, 150 F.3d at 1026; *Acosta*

19    *v. Trans Union*, LLC, 240 F.R.D. 564, 571 (C.D. Cal. 2007). In exercising its

20    discretion, however, this Court is obliged to "accept[] the allegations in the

21    plaintiffs' complaint as true so long those allegations are sufficiently specific to

22    permit an informed assessment as to whether the requirements of Rule 23 have been

23    satisfied." *In re Napster Copyright Litig.*, 2005 U.S. Dist. LEXIS 11498, at *11

24    (N.D. Cal. May 31, 2005); *see also Blackie v. Barrack*, 524 F.2d 891, 901 n.17 (9th

25    Cir. 1975). "The merits of the class members' substantive claims are generally

26    irrelevant to this inquiry." *In re Napster*, 2005 U.S. Dist. LEXIS 11498, at *11. As

27    the Supreme Court stated in *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974),

28    "nothing in either the language or history of Rule 23 . . . gives a court any authority

1   to conduct a preliminary inquiry into the merits of a suit in order to determine

2   whether it may be maintained as a class action."  *Id.* at 177-78; *see also White v.*

3   *Imperial Adjustment Corp.*, 2002 U.S. Dist. LEXIS 26610, at *13 (E.D. La. 2002)

4   ("The issue is not whether the plaintiffs have stated a cause of action or will prevail

5   on the merits, but rather whether the requirements of Rule 23 are met."), *aff'd*, 2003

6   U.S. App. LEXIS 20162, at *3-4 (5th Cir. Oct. 2, 2003).

7        The courts have long regarded "consumer claims" as "particularly

8   appropriate for class resolution."  *White*, 2002 U.S. Dist. LEXIS 26610, at *52; *see*

9   *also Amchem Prods. v. Windsor*, 521 U.S. 591, 625 (1997); *Cavin v. Home Loan*

10  *Ctr., Inc.*, 236 F.R.D. 387, 395-96 (N.D. Ill. 2006) ("[c]onsumer claims are among

11  the most commonly certified for class treatment").  As set forth below, there is no

12  basis for regarding these consumer claims any differently.

13  **A.**    **Plaintiffs' Claims Satisfy The Threshold Requirements For Class**
14  **Certification.**

15       The threshold prerequisites for maintaining an action as a class action

16  are set forth in Fed. R. Civ. P. 23(a), which provides that:

17       One or more members of a class may sue or be sued as representative

18  parties on behalf of all only if (1) the class is so numerous that joinder of all

19  members is impracticable, (2) there are questions of law or fact common to the

20  class, (3) the claims or defenses of the representative parties are typical of the

21  claims or defenses of the class, and (4) the representative parties will fairly and

22  adequately protect the interests of the class.

23       Each of these four prerequisites exists here.

24      **1.**    **The Class Is So Numerous That Joinder Is Impracticable.**

25       The Class consists of any Consumer who: (i) was the subject of a

26  credit report issued by the Defendant after their Chapter 7 bankruptcy discharge and

27  on or after March 15, 2002 (or, for California residents in the case of TransUnion,

28  after May 12, 2001); and (ii) has at least one tradeline that fits into one of the four

different categories of qualifying tradelines corresponding to the manner in which Defendants report on them: civil judgments, installment loans, credit card loans (revolving credit), and collection accounts.  Settlement Agreement § 4.1(a). According to Defendants' records, there are millions of Consumers who meet that definition.  As it is impracticable to join all those individuals in a single action, "the numerosity requirement is certainly met in this case."  *Acosta*, 240 F.R.D. at 571.

## 2.    <u>There are Questions of Law or Fact Common to the Class.</u>

Rule 23(a)(2) requires the party seeking certification to show that there are questions of law or fact common to the class.  This rule "has been construed permissively."  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).  It "does not mandate that each member of the class be identically situated."  *In re Napster*, 2005 U.S. Dist. LEXIS 11498, at \*13; *see also Hanlon*, 150 F.3d at 1019. "The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class."  *Hanlon*, 150 F.3d at 1019; *see also Espinoza v. Domino's Pizza, LLC*, 2009 U.S. Dist. LEXIS 31093, at \*16 (C.D. Cal. Feb. 18, 2009).

In this case, the claims of all Class members arise out of the same common core of facts because, as this Court noted in *Acosta*, "[t]he same alleged conduct of Defendants forms the basis of each of the plaintiffs' claims, particularly that [Defendants] created standardized practices and procedures for reporting accounts discharged in Chapter 7 bankruptcy."  *Acosta*, 240 F.R.D. at 571. Likewise, Plaintiffs' claims all raise the same legal issues, namely whether Defendants "maintain reasonable procedures to assure maximum possible accuracy in reporting discharged accounts" in accordance with the standard set forth in section 1681e(b) of the FCRA.  *Id.*

Furthermore, the Settlement addresses the Court's concern, expressed in its Tentative Order Denying Plaintiffs' Motion for Class Certification, that some Class members may not have been harmed by Defendants' credit reporting

1   procedures.  While Class members "would not be required to prove causation or

2   actual damages in order" to obtain statutory damages under the FCRA, as this Court

3   itself held in *Acosta*, 240 F.R.D. at 579, the Settlement's claims process allows for

4   Class members who believe they have been harmed by alleged errors in their credit

5   reports to certify the type and approximate date of the harm they suffered.

6   Settlement Agreement § 7.7(c).  Those Class members who believe they had errors

7   that are presumptively harmful but cannot certify the type of harm will still get a

8   fixed damage award from the Settlement.  *Id.* § 7.7(b).

9                **3.     The Claims of the Named Plaintiffs are Typical of Those of
                          All Other Class Members.**
10

11              "Under the rule's permissive standards, representative claims are

12   'typical' if they are reasonably co-extensive with those of absent class members."

13   *Hanlon*, 150 F.3d at 1020.  This standard is satisfied when "other members have the

14   same or similar injury," when "the action is based on conduct which is not unique

15   to the named plaintiffs," and when "other class members have been injured by the

16   same course of conduct."  *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th

17   Cir. 1992); *see also Espinoza*, 2009 U.S. Dist. LEXIS 31093 at *24 (typicality

18   achieved when each member's claim arises from same course of events and each

19   class member makes similar legal arguments to prove defendant's liability)

20   (internal quotations and citations omitted).  If the claims arise from a similar course

21   of conduct and share the same legal theory, factual differences, including

22   differences in the amount of damages, will not defeat typicality.  *Mullen v.*

23   *Treasure Chest Casino, LLC*, 186 F.3d 620, 625 (5th Cir. 1999); *accord Barnes v.*

24   *American Tobacco Co.*, 161 F.3d 127, 141 (3d Cir. 1998).

25              Here, the named Plaintiffs and the Class members they seek to

26   represent have suffered substantially the same injury – violation of their statutory

27   right to accuracy in the reporting of information about their financial affairs.

28   Furthermore, far from being unique to the named Plaintiffs, the conduct

1   precipitating their injuries derives from the same course of conduct that has given

2   rise to the injuries suffered by all other Class members – namely, Defendants'

3   deficient procedures for reporting the status of pre-bankruptcy debt.  Finally, the

4   claims of the named Plaintiffs and those of other Class members are based on the

5   exact same legal theories.  Accordingly, the claims of the named Plaintiffs meet the

6   typicality prerequisite set forth in Fed. R. Civ. P. 23(a).  *Acosta*, 240 F.R.D. at 571

7   ("The named plaintiffs' claims are . . . typical of those of the remainder of the class

8   in regards to the central legal issue, namely whether Trans Union and Equifax

9   maintain reasonable procedures to assure maximum possible accuracy in reporting

10   discharged accounts."); *see also White*, 2002 U.S. Dist. LEXIS 26610, at *41.

11   **4.   The Plaintiffs Adequately Represent the Class.**

12   The final threshold prerequisite for class certification is that the named

13   plaintiffs be able fairly and adequately to protect the interests of the class.  This

14   determination turns on just two questions:  "(1) [d]o the representative plaintiffs

15   and their counsel have any conflicts of interest with other class members, and

16   (2) will the representative plaintiffs and their counsel prosecute the action

17   vigorously on behalf of the class?"  *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th

18   Cir. 2003); *see also Hanlon*, 150 F.3d at 1020.  "The burden is on the defendant[] to

19   demonstrate that the representation will be inadequate."  *Johns v. Rozet*, 141 F.R.D.

20   211, 217 (D.D.C. 1992); *see also Lewis v. Curtis*, 671 F.2d 779, 788 (3d Cir. 1982);

21   *Trautz v. Weisman*, 846 F. Supp. 1160, 1167 (S.D.N.Y. 1994).

22   Both components of the "adequacy" test are met here.  First, Plaintiffs

23   do not have any interests antagonistic to those of the proposed Class and are

24   prepared to pursue this Litigation vigorously to redress the wrongs Defendants have

25   perpetrated.  The named Plaintiffs and the proposed Class members share an

26   identical interest in establishing Defendants' liability for failing to employ

27   reasonable reporting procedures to assure maximum possible accuracy in their

28   reporting of pre-bankruptcy debts.  To establish liability, all members of the

proposed Class seek the same findings on the common questions of law and fact. Like the members of the Class they seek to represent, the named Plaintiffs have been adversely affected by Defendants' alleged unlawful reporting procedures and have every incentive to vigorously pursue their claims.

While the *White* plaintiffs have not agreed to the Settlement, it can and should still be approved.  Numerous courts have held that class counsel has a duty to do what is in the best interests of the class, even if some class representatives disagree.  *See*, *e.g.*, *Officers for Justice v. Civil Serv. Com.*, 688 F.2d 615, 631 (9th Cir. 1982); *Parker v. Anderson*, 667 F.2d 1204, 1211 (5th Cir. 1982) (affirming approval of class settlement opposed by all but one of eleven named plaintiffs and recognizing "that the duty owed by Class Counsel is to the entire class and is not dependent on the special desires of the named plaintiffs"); *Kincade v. General Tire and Rubber Co.*, 635 F.2d 501, 508 (5th Cir. 1981) (affirming class settlement over opposition of five of the six named plaintiffs and finding that cases holding that an attorney cannot settle individual client's case without authorization of client are inapplicable to class actions "because of the unique nature of the attorney-client relationship in a class action"); *Maywalt v. Parker & Parsley Petroleum Co.*, 864 F. Supp. 1422, 1430 (S.D.N.Y. 1994), *aff'd*, 67 F.3d 1072 (2d Cir. 1995) (approving settlement opposed by four out of five class representatives because it does not serve best interests of Rule 23 "[t]o empower the Class Representatives with what would amount to an automatic veto over the Proposed Settlement"); *Rodriguez v. West Publishing Corp.*, 2007 U.S. Dist. LEXIS 74849, at *49-50 (C.D. Cal. Sept. 10, 2007) (citing above cases).

Second, Plaintiffs are represented by counsel who are "'qualified, experienced and able to vigorously conduct the proposed litigation' on behalf of the class.'"  *In re Quintus Secs. Litig.*, 148 F. Supp. 2d 967, 972 (N.D. Cal. 2001). Plaintiffs' counsel have formed an Executive Committee to manage this Litigation, which is led by co-lead counsel Michael W. Sobol of Lieff Cabraser and Michael

1  A. Caddell of Caddell & Chapman.  *See* Declaration of Michael W. Sobol in

2  Support of Plaintiffs' Motion to Certify Class, dated December 21, 2007 (Docket

3  No. 195), and Declaration of Michael A. Caddell in Support of Plaintiffs' Motion

4  for Class Certification, dated February 14, 2007 (Docket No. 66).  Similarly, lead

5  counsel for the *Acosta/Pike* plaintiffs, Lee A. Sherman of the law firm of Callahan,

6  McCune & Willis, has participated in the negotiations and mediation leading up to

7  the settlement, and is one of the 23(b)(3) Settlement Class Counsel moving for the

8  Court's approval of the Settlement.

9         The 23(b)(3) Settlement Class Counsel have drawn on their

10 considerable experience and human resources to zealously represent the proposed

11 Class in this Litigation.  Likewise, the 23(b)(3) Settlement Class Counsel are

12 committed to devoting the financial resources necessary to litigate the case to a

13 successful resolution.  *Id.*  Indeed, the 23(b)(3) Settlement Class Counsel have

14 already expended considerable time and effort in researching the legal and factual

15 issues relevant to this Litigation, evaluating potential claims and defenses, drafting

16 pleadings, conducting discovery, successfully opposing the adequacy and fairness

17 of a prior settlement, successfully concluding the settlement for comprehensive and

18 complete injunctive relief, and successfully concluding the present Settlement for

19 monetary relief.  *Id.*, Sobol Decl. ¶¶ 3-4.  Where, as here, proposed class counsel

20 "include some of the most experienced lawyers in the United States in the

21 prosecution of . . . class actions" and have demonstrated that they are "ready,

22 willing and able to commit the resources necessary to litigate the case vigorously,"

23 the adequate representation requirement is more than satisfied.  *In re NASDAQ*

24 *Market-Makers Antitrust Litig.*, 169 F.R.D. 493, 515 (S.D.N.Y. 1996).

25    **B.    Plaintiffs' Monetary Relief Claims Satisfy The Requirements For
              Class Certification Under Rule 23(b)(3).**

26

27         This action is well-suited for certification under Rule 23(b)(3) because,

28 particularly in the context of this Settlement, questions common to the Class

1   members predominate over questions affecting only individual Class members, and

2   the class action device provides the best method for the fair and efficient resolution

3   of the Class's claims.  Indeed, Defendants do not oppose provisional class

4   certification for the purpose of effectuating the proposed Settlement.  When

5   addressing the propriety of class certification, the Court should take into account

6   the fact that, in light of the settlement, trial will now be unnecessary, and that the

7   manageability of the Class for trial purposes is not relevant to the Court's inquiry.

8   *See Amchem Prods., Inc*, 521 U.S. 591; *Hanlon*, 150 F.3d at 1021-23.

9          A class action is appropriate under 23(b)(3) if "questions of law or fact

10  common to the members of the class predominate over any questions affecting only

11  individual members . . . ."  Fed. R. Civ. P. 23(b)(3).  "When common questions

12  present a significant aspect of the case and they can be resolved for all members of

13  the class in a single adjudication," there is clear justification for class treatment.

14  *Local Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands,*

15  *Inc.*, 244 F.3d 1152, 1162 (9th Cir. 2001).  Here, as the proposed settlement is

16  structured, common questions of law and fact overwhelm individual issues.  Thus,

17  the predominance requirement is satisfied.

18         Certification under Rule 23(b)(3) will allow class members to opt out

19  of the Settlement and preserve their right to seek damages independently.  *See*

20  *Brown v. Title Ticor Ins. Co.*, 982 F.2d 386, 392 (9th Cir. 1992).  This approach

21  protects putative class members' due process rights, and is consistent with the

22  Supreme Court's decision in *Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999), and

23  the Ninth Circuit's decision in *Brown*, which explain that due process requires an

24  opportunity to opt out of significant monetary relief.  *Ortiz*, 527 U.S. at 846-48;

25  *Brown*, 982 F.2d at 392.

26         The Court should certify the Class if it finds that a "class action is

27  superior to other available methods for fair and efficient adjudication of the

28  controversy."  Fed. R. Civ. P. 23(b)(3).  If alternate procedures "reveal[] no other

1    realistic possibilities, this [superiority] portion of Rule 23(b)(3) has been satisfied."

2    *Local Joint Executive Bd.*, 244 F.3d at 1163 (internal quotes and cites omitted).

3    Class treatment here will facilitate the favorable resolution of all Class members'

4    claims.  Given the large numbers of Class members and the multitude of common

5    issues present, the class device is also the most efficient and fair means of

6    adjudicating these claims.  Class treatment in the settlement context is superior to

7    multiple individual suits or piecemeal litigation because it greatly conserves judicial

8    resources and promotes consistency and efficiency of adjudication.  *See Hanlon*,

9    150 F.3d at 1023.  For these reasons, the superiority requirement is satisfied.

10   **C.    The Proposed Notice Program is Constitutionally Sound.**

11        "Rule 23(e)(1)(B) requires the court to 'direct notice in a reasonable

12   manner to all class members who would be bound by a proposed settlement,

13   voluntary dismissal, or compromise' regardless of whether the class was certified

14   under Rule 23(b)(1), (b)(2), or (b)(3)."  *Manual for Complex Litig.*, § 21.312.

15   Many of the same considerations govern both certification and settlement notices.

16   In order to protect the rights of absent class members, the Court must provide the

17   best notice practicable to class members.  *See Phillips Petroleum Co. v. Shutts*,

18   472 U.S. 797, 811-12 (1985); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 174-175

19   (1974).  "Rule 23 . . . requires that individual notice in 23(b)(3) actions be given to

20   class members who can be identified through reasonable effort.  Those who cannot

21   be readily identified must be given the 'best notice practicable under the

22   circumstances.'"  *Manual for Complex Litig.*, § 21.311.  According to the *Manual*,

23   the settlement notice should:

24        •    Define the class;

25        •    Describe clearly the options open to the class members and the
               deadlines for taking action;

26        •    Describe the essential terms of the proposed settlement;

27        •    Disclose any special benefits provided to the class representatives;

28        •    Provide information regarding attorneys' fees;

- •    Indicate the time and place of the hearing to consider approval of the settlement, and the method for objecting to or opting out of the settlement;
- •    Explain the procedures for allocating and distributing settlement funds, and, if the settlement provides different kinds of relief for different categories of class members, clearly set out those variations;
- •    Provide information that will enable class members to calculate or at least estimate their individual recoveries; and
- •    Prominently display the address and phone number of class counsel and the procedure for making inquiries.

§ 21.312.

      The proposed forms of Notice, attached as Exhibits A-C to the Settlement Agreement, satisfy all of criteria above. The Notice Plan provides for a large mailing to known Class members and a one-time publication in a nationally distributed newspaper or magazine. Settlement Agreement §§ 4.3(b), (e). A press release describing the Settlement may be issued by the parties. *Id.* § 10.1. The Notice and other documents will also be available online at a Settlement Website established by the Settlement Administrator. *Id.* § 4.3(c). The Settlement Website will be registered with Google to ensure that it is easy to find on the Internet. *Id.*

## D.    <u>Scheduling Final Approval Hearings Is Appropriate</u>

      The last step in the Settlement approval process is a final fairness hearing at which the Court may hear all evidence and argument necessary to make its Settlement evaluation. Proponents of the Settlement may explain the terms and conditions of the Settlement, and offer argument in support of final approval. In addition, Settlement Class members, or their counsel, may be heard in support of or in opposition to the Settlement Agreement. The Court will determine after the final approval hearing whether the Settlement should be approved, and whether to enter a final order and judgment under Rule 23(e). Plaintiffs request that that Court set the date of November 9, 2009, at 8:30 a.m., for a hearing on final approval.

- 34 -

## VI.   <u>CONCLUSION</u>

For all of the foregoing reasons, Plaintiffs respectfully request that the Court grant preliminary approval of the proposed Settlement; appoint as Class Counsel Lieff Cabraser Heimann & Bernstein, LLP, Caddell & Chapman, National Consumer Law Center, Consumer Litigation Associates, P.C., Weller Green, Toups & Terrell, L.L.P., and Callahan McCune and Willis; provisionally certify the Class for settlement purposes; approve and direct distribution to the Class of the Notice of Settlement and a Claim Form; and approve the schedule for final settlement approval.

Dated:  April 24, 2009

Respectfully submitted,

LIEFF, CABRASER, HEIMANN
   & BERNSTEIN, LLP


By:_____
        Michael W. Sobol

Michael W. Sobol
(msobol@lchb.com)
Allison S. Elgart
(aelgart@lchb.com)
275 Battery Street, 30th Floor
San Francisco, CA 94111-3339
Telephone:  (415) 956-1000

Stuart Rossman
(srossman@nclc.org)
Charles Delbaum
(cdelbaum@nclc.org)
NATIONAL CONSUMER LAW CENTER
77 Summer Street, 10th Floor
Boston, MA 02110
Telephone:  (617) 542-8010
Facsimile:   (617) 542-8028

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Michael A. Caddell (State Bar No. 249469)
(mac@caddellchapman.com)
Cynthia B. Chapman (State Bar No. 164471)
(cbc@caddellchapman.com)
George Y. Niño (State Bar No. 146623)
(gyn@caddellchapman.com)
CADDELL & CHAPMAN
1331 Lamar, Suite 1070
Houston, TX  77010
Telephone:  (713) 751-0400
Facsimile:  (713) 751-0906

Leonard A. Bennett (VSB No. 37523)
(lenbennett@cavtel.net)
Matthew Erausquin  (VSB No. 65434)
(matt@clalegal.com)
CONSUMER LITIGATION ASSOCIATES, P.C.
12515 Warwick Boulevard, Suite 201
Newport News, Virginia 23606
Telephone:  (757) 930 3660
Facsimile:   (757) 930-3662

Mitchell A. Toups (TSB No. 20151600)
(matoups@wgttlaw.com)
WELLER, GREEN, TOUPS & TERRELL, L.L.P.
Bank of America Tower
2615 Calder St., Suite 400
Beaumont Texas 77702
Telephone:  (409) 838-0101
Facsimile:   (409) 832-8577

*Attorneys for White/Hernandez Plaintiffs*

For the *Acosta/Pike* Plaintiffs:
Lee A. Sherman (State Bar No. 172198)
CALLAHAN MCCUNE & WILLIS
111 Fashion Lane
Tustin CA 92780-3397
Telephone: (714) 730-5700
Facsimile:  (714) 730-1642

*Attorneys for the Acosta/Pike Plaintiffs*

- 36 -