NOTE: CHANGES MADE BY THE COURT

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

(SOUTHERN DIVISION)

| | |
|---|---|
| TERRI N. WHITE, et al., | Case No. SACV05-1070 DOC (MLGx) (Lead Case) |
| Plaintiffs, | |
| | **ORDER (1) GRANTING PRELIMINARY APPROVAL TO PROPOSED CLASS ACTION SETTLEMENT; (2) CONDITIONALLY CERTIFYING SETTLEMENT CLASS; (3) APPROVING CLASS NOTICE; (4) APPOINTING CLASS COUNSEL; AND (5) SCHEDULING FINAL APPROVAL HEARING DATE AND <u>RELATED DATES</u>** |
| v. | |
| EXPERIAN INFORMATION SOLUTIONS, INC., | |
| Defendant. | |
| <u>and Related Cases:</u> | |
| 05-cv-01073-DOC (MLGx) 05-cv-7821-DOC (MLGx) 06-cv-0392-DOC (MLGx) 05-cv-1172-DOC(MLGx) 06-cv-5060-DOC (MLGx) | NOTE: CHANGES MADE BY THE COURT |

## I.    **INTRODUCTION**

Plaintiffs Jose Hernandez, Robert Randall, Bertram Robison, and Kathryn Pike (collectively, "Plaintiffs") have submitted for the Court's preliminary approval a proposed nationwide class action settlement of the claims for monetary relief, against all Defendants ("Settlement").[1]  Previously, in August 2008, this Court approved the settlement of the injunctive relief claims raised in these *White v. Experian* related cases.[2]  Now the Plaintiffs seek approval of the proposed Settlement that resolves all monetary damages claims in the Litigation.

Having reviewed the Settlement Agreement and Release (a copy of which is attached hereto as Exhibit 1, herein "Settlement Agreement"), Plaintiffs' Memorandum In Support of Motion for Preliminary Approval of Settlement, Defendants' joinder thereto, and based on its extensive familiarity with this Litigation, the Court now FINDS, CONCLUDES, and ORDERS as follows:

The proposed Settlement satisfies and exceeds the preliminary approval criteria that a settlement be "fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e).  Accordingly, as set forth herein, the Court:  (a) grants preliminary approval of the Settlement; (b) provisionally certifies the proposed 23(b)(3) Settlement Class; (c) appoints 23(b)(3) Settlement Class Representatives and Class Counsel; (d) approves the proposed Notice Plan and forms of Notice; and (e) sets the final fairness hearing for 8:30 a.m. on November 9, 2009.  **Any and all objections to the substantive merits of the settlement will be heard at the final**

---

[1] Defendants are:  Experian Information Solutions, Inc. ("Experian"), Equifax Information Services, LLC ("Equifax"), and TransUnion LLC ("TransUnion") (together, "Defendants").
[2] *Terri N. White, et al. v. Experian Information Solutions, Inc.*, Case No. 05-cv-1070 (Lead Case number); *Terri N. White, et al. v. Equifax Information Services LLC*, Case No. 05-cv-7821; *Terri N. White, et al. v. TransUnion LLC*, 05-cv-1073; *Jose Hernandez v. Equifax Information Services, LLC, et al.*, Case No. 06-cv-3924; *Jose L. Acosta et al., v. TransUnion LLC, et al.*, Case No. 06-cv-5060; and *Kathryn L. Pike v. Equifax Information Services, LLC*, Case No. 05-cv-1172.  These cases are collectively referred to herein as the "Litigation."

**fairness hearing at which time the Court will make a renewed determination as to the fairness, reasonableness, and adequacy of the settlement.**

## II.   BACKGROUND

The Litigation has been pending before this Court since the Fall of 2005.  On or about November 2, 2005, plaintiffs in *White* filed separate actions in this District against each of the Defendants.  Prior to the filing of *White*, on October 3, 2005, Jose Hernandez filed a similar action against Defendants in the Northern District of California.  *Hernandez* was then transferred to this Court, and, on August 11, 2006, was consolidated with *White* via three separate Second Amended Consolidated Class Action Complaints, one against each Defendant (herein, "*White/Hernandez*").[3]

Subsequently, *White/Hernandez* was related to two other actions, *Acosta* and *Pike*.  Jose L. Acosta, Jr., had previously filed an action in California Superior Court against TransUnion on May 12, 2003, and on August 14, 2006, he filed again in this District.[4]  On October 14, 2005, Kathryn Pike had filed an action in California Superior Court against Equifax, which was later removed to this District and transferred to this Court as related to *White/Hernandez*.

As a result, each of these cases has been either filed, transferred, or removed such that they are in the Central District before this Court.

Plaintiffs allege that each Defendant recklessly or negligently violated and, until enjoined by this Court, continued to violate the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681 *et seq.*, by failing to maintain reasonable procedures to assure the accurate reporting of debts that have been discharged in bankruptcy.  Plaintiffs contend that Defendants' procedures, by which Defendants relied

---

[3] The remaining named plaintiffs under the *White/Hernandez* Second Amended Complaints are Robert Radcliffe, Chester Carter, Maria Falcon, Clifton C. Seale, III, and Jose Hernandez.  Plaintiffs Terri N. White, Alex K. Gidi, and Milagros Gabrillo were dismissed by court order on October 19, 2007.
[4] The remaining named plaintiffs in *Acosta* are Robert Randall and Bertram Robison.  Plaintiff Acosta was dismissed from the federal court action and has dismissed his state court action.

1   primarily on creditors and public record vendors to report the discharged status of

2   debts and judgments, were unreasonable procedures under the FCRA.  They further

3   allege that Defendants failed to employ reasonable reinvestigation procedures

4   pursuant to the FCRA.  Plaintiffs assert claims for (i) willful and/or negligent

5   violation of Section 1681e(b) of the FCRA and its California counterpart, Cal. Civ.

6   Code Section 1785.14(b), for failure to maintain reasonable procedures to assure

7   maximum possible accuracy; (ii) willful and/or negligent violation of Section 1681i

8   of the FCRA and its California counterpart, Cal. Civ. Code Section 1785.16, for

9   failure to reasonably investigate consumer disputes regarding the status of the

10  discharged accounts; and (iii) violation of California's Unfair Competition law,

11  Bus. & Prof. Code section 17200, *et seq.*

12          In or around September 2006, Defendants answered the various

13  Second Amended Complaints, denying the allegations therein, denying that the

14  actions are suitable for certification pursuant to Federal Rule of Civil Procedure 23,

15  and asserting numerous affirmative defenses that Defendants contend are

16  meritorious.

17          Plaintiffs in the Litigation have undertaken substantial investigation,

18  fact-gathering, and formal discovery.  Discovery efforts included review of tens of

19  thousands of pages of documents, retention and consultation of numerous experts in

20  the fields of credit reporting and consumer bankruptcies, interviews with numerous

21  consumers, and review of thousands of consumer credit reports.  Plaintiffs have

22  taken or defended forty depositions, produced over 50,000 pages of documents, and

23  reviewed over 40,000 pages of documents produced by the Defendants.  They have

24  retained several experts who have filed numerous declarations with the Court.

25  Moreover, the parties have engaged in extensive motion practice before reaching

26  the Settlement Agreement.  They have attended several status conferences and

27  hearings on class certification, settlement approval, and summary judgment.  This

28  Court has presided over the hearings and executed no fewer than thirty-seven

minute entries, entered at least fifty signed orders, and authored four published opinions.

From on or about August 15, 2007, to February 5, 2009, the Parties conducted arms-length, contentious, lengthy, and complicated negotiations (with the participation of Defendants' insurance carriers). These efforts included seven formal mediation sessions with a JAMS mediator, the Hon. Lourdes Baird (Ret.), regarding injunctive and monetary relief, and five formal mediation sessions with mediator Randall Wulff regarding monetary relief (including a mandatory settlement conference at the Court on February 5, 2009), as well as several additional in-person or telephonic sessions with both mediators.

On or about April 3, 2008, the parties entered into the Injunctive Relief Settlement Agreement, in which Defendants agreed to retroactively update the credit files of 23(b)(2) Settlement Class members to reflect the discharge of certain categories of pre-bankruptcy civil judgments and tradelines. Defendants also agreed to adopt new procedures for the update of certain pre-bankruptcy civil judgments and tradelines when a public record entry of the bankruptcy has been added to a consumer's file. On August 19, 2008, the Court approved these new procedures, found them to be reasonable under the FCRA, and entered an Approval Order Regarding Settlement and Release for the Injunctive Relief Settlement Agreement (Dkt. 290).

On January 26, 2009, the Parties appeared for a hearing on Plaintiffs' Motion for Class Certification and, prior to the scheduled hearing, the Court issued a tentative ruling denying Plaintiffs' Motion for Class Certification pursuant to Fed. R. Civ. P. 23(b)(3).

The Parties and Defendants' insurance carriers then participated in a mandatory settlement conference at the Court on February 5, 2009. At that conference, Plaintiffs, Equifax, and Experian reached agreement as to the principal terms of a settlement of all of Plaintiffs' claims in the Litigation for monetary

- 4 -

damages, including statutory and punitive damages, as reflected in the Settlement Agreement.  TransUnion agreed to the settlement terms on February 18, 2009.

## III.   THE SETTLEMENT BENEFITS

The Settlement establishes a $45 million Settlement Fund that will be used to pay benefits to eligible Class members who have submitted qualifying claims, as well as pay notice costs and attorneys' fees and costs.  The Settlement is directed at providing benefits to those Class members who can confirm they believe they suffered harm from errors in their credit reports regarding debt discharged in bankruptcy, though it still provides some benefit for those Class members who cannot confirm actual harm but who are relinquishing their rights to statutory damages when they cannot make a showing of harm.

The Settlement Agreement and Release ("Settlement Agreement") will resolve all of the claims of the Plaintiffs and all members of the Settlement Class. Set forth below is a summary which paraphrases the key terms of the Settlement Agreement.[5]

### A.   Settlement Class

The "23(b)(3) Settlement Class" includes all Consumers who have received an order of discharge pursuant to Chapter 7 of the United States Bankruptcy Code and who, any time between and including March 15, 2002, and May 11, 2009 (or, for California residents in the case of TransUnion, any time between and including May 12, 2001 and May 11, 2009), have been the subject of a Post-bankruptcy Credit Report issued by a Defendant that contained possible errors regarding debts discharged in bankruptcy.

### 1.   Identifying 23(b)(3) Class Members

Defendants have agreed to provide the Settlement Administrator with a list of identified 23(b)(3) Settlement Class members by using commercially

---

[5] References to Settlement terms and definitions follow those in the Settlement Agreement, attached as Exhibit 1.

reasonable procedures to search a selection of their archived files to identify each consumer who: (i) was the subject of a credit report issued by the Defendant after their Chapter 7 bankruptcy discharge and on or after March 15, 2002 (or, for California residents in the case of TransUnion, after May 12, 2001); and (ii) has at least one tradeline that fits into one of the four different categories of qualifying tradelines corresponding to the manner in which Defendants report on them:  civil judgments, installment loans, credit card loans (revolving credit), and collection accounts.  Settlement Agreement § 4.1(a).

The first category from which a consumer can have a qualifying tradeline is pre-bankruptcy civil judgments that do not reflect a Chapter 7 bankruptcy account status and that do not indicate they were paid, satisfied, vacated, or included in bankruptcy, or were non-dischargeable (*e.g.*, judgments obtained by governmental taxing authorities or relating to domestic support obligations) or tax liens.  *Id.* § 4.1(a)(ii)(A).

The second category is pre-bankruptcy installment or mortgage loans that do not reflect a Chapter 7 bankruptcy account status and that do not have an indication that the account is closed, voluntarily surrendered, subject to a deed in lieu of foreclosure, or an indication of a specific reporting code type from the standardized reporting protocol known as the Metro 2 format that would make them non-dischargeable (such as, for example, student loan debts, family support obligations, and governmental fines).  *Id.* § 4.1(a)(ii)(B).

The third category of a qualifying tradeline is a pre-bankruptcy revolving, open, or line of credit account that does not reflect a Chapter 7 bankruptcy account status and that does not have an indication that the account is closed, a code indicating that the consumer was an "authorized user," or an indication of a specific Metro 2 code type that would make it non-dischargeable.  *Id.* § 4.1(a)(ii)(C).

1    The fourth category of a qualifying tradeline is a pre-bankruptcy

2 collection account that does not reflect a Chapter 7 bankruptcy account status and

3 that does not have an indication that the account is closed or an indication of a

4 specific Metro 2 code type that would make it non-dischargeable. *Id.*

5 § 4.1(a)(ii)(D).

6    On or before July 31, 2009, each Defendant will forward their list of

7 identified consumers to the Settlement Administrator, excluding any consumers

8 who have released any claims against that Defendant as a result of prior litigation or

9 otherwise and using commercially reasonable measures to avoid duplication within

10 its respective list. *Id.* § 4.1(d).  The list will include information on the tradeline(s)

11 in one of the four qualifying tradeline categories (pre-bankruptcy civil judgment,

12 installment or mortgage loan, revolving account, or collection account), as well as

13 information as to whether or not a "Post-bankruptcy Hard Inquiry"[6] or post-

14 bankruptcy employment inquiry appears on the consumer's file and the date of such

15 an inquiry. *Id.* § 4.1(d)(iii-v).  The Settlement Administrator will merge

16 Defendants' lists into a single, combined list of identified 23(b)(3) Settlement Class

17 Members (the "Class List") and will use commercially reasonable measures to

18 remove any duplication and resolve any conflicts relating to Consumers' addresses.

19 *Id.* § 4.2.

20        **2.    <u>Opt Out Procedure</u>**

21    A proposed 23(b)(3) Settlement Class Member may request to be

22 excluded from the 23(b)(3) Settlement Class by sending a written request for

23 exclusion to the Settlement Administrator no later than October 15, 2009.  The opt-

24 out request must contain the Class Member's original signature, current postal

25 address, and telephone number, the last four digits of the Class Member's Social

26 _____

27 [6] A "Post-bankruptcy Hard Inquiry" is an entry in a consumer's file that contains a record of a Defendant's publication of the consumer's Post-bankruptcy Credit Report to a lender or other prospective creditor for purposes of evaluating a loan or

28 other credit application that was initiated by the consumer. *Id.* § 1.30.

1   Security number, and a specific statement that the Class Member wants to be

2   excluded from the 23(b)(3) Class.  *Id.* § 5.2(a).

3       **B.    Payments To The Class Members**

4       The Settlement provides relief for all Class members who have had a

5   credit report issued by a Defendant that contained alleged errors regarding debts

6   discharged in bankruptcy, as described in detail in the Settlement Agreement at §

7   7.7.  Those Class members who believe that there have been one or more errors in

8   their credit reports regarding debts discharged in bankruptcy can apply for a fixed

9   or "Convenience" damage award, which will be an equal *pro rata* share of the

10   available Convenience Award Fund.  *Id.* § 7.7(b).  The amount will depend on the

11   number of claimants for the Convenience Awards and the number of claimants and

12   amount of the projected Actual Damage Awards, though the Convenience Award

13   Fund will be at least $10 Million.  *Id.* § 7.7(b)(i).

14       Those Class members who can certify that they have been damaged by

15   an error in their credit reports regarding debt discharged in bankruptcy, with respect

16   to a denial of employment, a mortgage loan or housing rental, and/or a credit card,

17   auto loan, other credit they applied for, or payment of a discharged debt to obtain

18   credit, can apply for an "Actual Damage Award."  *Id.* § 7.7(c).  If Defendants'

19   records confirm a post-bankruptcy employment inquiry within two years of the date

20   indicated by the claimant on their Claim Form, or if there is otherwise no contrary

21   indication that an employment inquiry was made, the damage award to the

22   consumer will be $750.00.  *Id.* § 7.7 (c)(iii)(1).  If Defendants' records confirm a

23   hard inquiry consistent with a mortgage loan or other housing inquiry within six

24   months of the date on the Claim Form, the consumer will receive an award of

25   $500.00.  *Id.* § 7.7(c)(iii)(2).  If Defendants' records confirm a post-bankruptcy

26   hard inquiry within six months of the date indicated on the Claim Form, and the

27   consumer does not apply for an employment or mortgage/housing award, then the

28   consumer will receive an award of $150.00.  *Id.* § 7.7(c)(iii)(3).  The Settlement

1  Claims Administrator will pay the Actual Damage Awards at the highest award

2  level for which the claimant is eligible.  *Id.* § 7.7(c)(iv).  The applicable award for

3  each category will be increased or decreased, *pro rata*, to reflect the number of

4  valid claims in each category and the funds available for distribution to the Actual

5  Damage Award claimants, including the addition of any unclaimed or uncashed

6  Convenience Awards.  *Id.*; *see infra* III.C.

7          **C.**     **Claims Administration**

8        The 23(b)(3) Settlement Class Members may submit claims by

9  October 15, 2009 by either registering for a claim on the Settlement Website or

10  returning the Claim Form via U.S. mail, provided they do not opt out (*see supra*

11  III.A.2).  Settlement Agreement § 5.1(a).  The Settlement Administrator will

12  subtract from the Settlement Fund the sum of all administrative and notice costs

13  and amounts paid pursuant to the award of attorneys' fees and costs.  *Id.* § 7.7(b)(i).

14  The Settlement Administrator will then calculate the estimated amounts to be paid

15  for Actual Damage Awards by identifying the highest award to which each Actual

16  Damage Award Claimant may be entitled, multiplying the total number of such

17  claims in each of the three categories, and totaling the results for all categories.  *Id.*

18  The remaining amount will be available for the Convenience Award Fund, which

19  will be at minimum $10 million.  *Id.*  The Settlement Administrator will then pay

20  each Convenience Award Claimant an equal *pro rata* share of the Convenience

21  Award Fund, determined by the number of claimants for the Convenience Award.

22  *Id.* § 7.7(b)(ii).  The Convenience Awards will be distributed within ninety (90)

23  days of the Effective Date of the Settlement.  *Id.* § 7.7(b)(iii).  Any unclaimed or

24  uncashed awards will expire after ninety (90) days and the amounts added to the

25  amounts available for payment of the Actual Damage Awards.  *Id.*

26

27

28

**D.**   <u>**Timetable To Disburse Awards From Monetary Relief Settlement Fund**</u>

Following this Order, the parties shall jointly petition the Court to pay the Settlement Administrator for the costs of notice and other administrative expenses related to effecting the Notice Plan.  *Id.* § 7.6(a).  Within ninety (90) days following the Effective Date of the Final Approval Order, all money remaining in the Settlement Fund after the payment to 23(b)(3) Settlement Class Counsel for Monetary Relief Fees will be paid to Claimants.  *Id.* § 7.6(d).

**E.**   <u>**Class Representative Stipend**</u>

The Settlement Agreement provides for $5,000 incentive awards for the Named Plaintiffs as Class Representatives in recognition of their service to and efforts on behalf of the Class.  *Id.* § 7.5.  These incentive awards are in addition to the relief the class representatives will be entitled to under the terms of the Settlement. Throughout the Litigation, these Class Representatives have participated in discovery, including extensive and probing depositions and responding to interrogatories and requests for production of documents.  They all were kept informed of the Litigation as it developed and all were kept abreast of, and signed off on, the proposed Settlement.

Enhancement awards like the ones requested here are appropriate. Unlike unnamed Class members, who will enjoy the benefits of the Representatives' efforts without taking any personal action, the named Class Representatives made themselves available as witnesses at deposition and subjected themselves to all the obligations of named parties, including participating in discovery and following the Litigation.  Small incentive awards, which serve as premiums in addition to any claims-based recovery from the settlement, promote the public policy of encouraging individuals to undertake the responsibility of representative lawsuits.  *See*, *e.g.*, *In re Mego Financial Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000); *Staton v. Boeing*, 237 F.3d 938, 977 (9th Cir. 2003);

1   *Stevens v. Safeway, Inc.*, 2008 U.S. Dist. LEXIS 17119 (C.D. Cal. 2008); *see also*

2   *Manual for Complex Litig.*, § 21.62 n. 971 (4th ed. 2004) (incentive awards may be

3   "merited for time spent meeting with class members, monitoring cases, or

4   responding to discovery").

5          **F.**    **Attorneys' Fees And Costs**

6            The Settlement Agreement provides that on or before October 19,

7   2009, 23(b)(3) Settlement Class Counsel will file an application or applications to

8   the Court, noticed to be heard at the Final Fairness Hearing, for approval of

9   attorneys' fees and costs associated with this monetary relief Settlement.

10  Settlement Agreement § 7.3(a).  23(b)(3) Settlement Class Counsel will seek

11  approval of attorneys' fees of an amount not to exceed 25% of the Settlement Fund

12  and for reimbursement of their costs and expenses.  The enforceability of the

13  Settlement Agreement will not be contingent on the amount of attorneys' fees or

14  costs awarded.

15         **G.**    **Settlement Administration And Notice**

16           As set forth in the Settlement Agreement, all costs of notice and claims

17  administration will be invoiced by the Settlement Administrator and paid from the

18  Settlement Fund.  *Id.* § 4.4(a).  The parties will disclose the identity of the

19  Settlement Administrator and Notice Provider to the Court by June 30, 2009.  The

20  Settlement Administrator and Notice Provider will administer the claims resolution

21  process, subject to review by Settlement Counsel.  Their duties will include the

22  following: (1) issuing Class notice and claim forms; (2) calculating and issuing

23  settlement payments; and (3) responding to Class member inquiries regarding the

24  claims administration process.  *Id.* §§ 4.3, 5.1.  The parties have agreed to cooperate

25  with the Settlement Administrator and Notice Provider to ensure that they have all

26  of the information it needs to perform these tasks.

27           Within ten days following this Preliminary Approval Order, the parties

28  shall jointly petition the Court for approval to deposit the Settlement Fund with the

1   Registry of the Court.  Within seven days after such approval, but in no event

2   before June 15, 2009, each Defendant shall cause to be deposited into the Registry

3   of the Court an amount equal to fifteen million dollars ($15,000,000.00).  *Id.* §

4   7.1(a).  On or before August 31, 2009, the Settlement Administrator and Notice

5   Provider shall cause the Mail Notice and a Claim Form (submitted herewith as

6   Exhibit A to the Settlement Agreement) to be sent via U.S. mail to each Settlement

7   Class Member identified on the Class List.  *Id.* §§ 4.3(b), (d).  Additionally, the

8   Settlement Administrator and Notice Provider shall issue the Publication Notice

9   (Exhibit B to the Settlement Agreement) through a nationally distributed newspaper

10  or magazine and the Internet Notice (Exhibit C) through the Settlement Website.

11  *Id.* §§ 4.3(c), (e).  The parties may also issue a joint press release.  *Id.* § 10.1.  The

12  Settlement Website shall provide generalized information, including the full text of

13  the Settlement Agreement, a Long-Form Notice, the Claim Form, the Preliminary

14  Approval Order, and the contact information for 23(b)(3) Settlement Class Counsel

15  and the Settlement Administrator.  *Id.* § 4.3(c).

16  **IV.   PROVISIONAL CERTIFICATION OF 23(b)(3) CLASS**

17          The Court finds that the proposed 23(b)(3) Settlement Class meets the

18  criteria for class certification pursuant to Fed. R. Civ. P. 23(a) and (b)(3).

19      **A.   Plaintiffs' Claims Satisfy The Threshold Requirements For Class
             Certification.**

20

21          The threshold prerequisites of Fed. R. Civ. P. 23(a) for maintaining a

22  class action have been met.

23          **1.   The Class Is So Numerous That Joinder Is Impracticable.**

24          The Class consists of any consumer who: (i) was the subject of a credit

25  report issued by the Defendant after their Chapter 7 bankruptcy discharge and on or

26  after March 15, 2002 (or, for California residents in the case of TransUnion, after

27  May 12, 2001); and (ii) has at least one tradeline that fits into one of the four

28  different categories of qualifying tradelines corresponding to the manner in which

Defendants report on them:  civil judgments, installment loans, credit card loans (revolving credit), and collection accounts.  Settlement Agreement § 4.1(a).  According to Defendants' records, there are millions of consumers who meet that definition.  As it is impracticable to join all those individuals in a single action, "the numerosity requirement is certainly met in this case." *Acosta v. TransUnion, LLC*, 240 F.R.D. 564, 571 (C.D. Cal. 2007).

### 2. There Are Questions Of Law Or Fact Common To The Class.

Rule 23(a) (2) requires the party seeking certification to show that there are questions of law or fact common to the class.  This rule "has been construed permissively." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).  It "does not mandate that each member of the class be identically situated." *In re Napster*, 2005 U.S. Dist. LEXIS 11498, at *13; *see also Hanlon*, 150 F.3d at 1019.  "The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Hanlon*, 150 F.3d at 1019; *see also Espinoza v. Domino's Pizza, LLC*, 2009 U.S. Dist. LEXIS 31093, at *16 (C.D. Cal. Feb. 18, 2009).

In this case, the claims of all Class members arise out of the same common core of facts because, as this Court noted in *Acosta*, "[t]he same alleged conduct of Defendants forms the basis of each of the plaintiffs' claims, particularly that [Defendants] created standardized practices and procedures for reporting accounts discharged in Chapter 7 bankruptcy." *Acosta*, 240 F.R.D. at 571.  Likewise, Plaintiffs' claims all raise the same legal issues, namely whether Defendants "maintain reasonable procedures to assure maximum possible accuracy in reporting discharged accounts" in accordance with the standard set forth in section 1681e(b) of the FCRA.  *Id.*

1    Furthermore, the Settlement addresses this Court's concern, expressed

2  in my Tentative Order Denying Plaintiffs' Motion for Class Certification, that some

3  Class members may not have been harmed by Defendants' credit reporting

4  procedures.  While Class members "would not be required to prove causation or

5  actual damages in order" to obtain statutory damages under the FCRA, as this Court

6  held in *Acosta*, 240 F.R.D. at 579, the Settlement's claims process allows for Class

7  members who believe they have been harmed by alleged errors in their credit

8  reports to certify the type and approximate date of the harm they suffered.

9  Settlement Agreement § 7.7(c).  Those Class members who believe they had errors

10  that are presumptively harmful but cannot certify the type of harm will still get a

11  fixed damage award from the Settlement.  *Id.* § 7.7(b).

12      ### 3.      The Claims Of The Named Plaintiffs Are Typical Of Those Of All Other Class Members.

13

14    "Under the rule's permissive standards, representative claims are

15  'typical' if they are reasonably co-extensive with those of absent class members."

16  *Hanlon*, 150 F.3d at 1020.  This standard is satisfied when "other members have the

17  same or similar injury," when "the action is based on conduct which is not unique

18  to the named plaintiffs," and when "other class members have been injured by the

19  same course of conduct."  *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th

20  Cir. 1992); *see also Espinoza*, 2009 U.S. Dist. LEXIS 31093 at *24 (typicality

21  achieved when each member's claim arises from same course of events and each

22  class member makes similar legal arguments to prove defendant's liability)

23  (internal quotations and citations omitted).  If the claims arise from a similar course

24  of conduct and share the same legal theory, factual differences, including

25  differences in the amount of damages, will not defeat typicality.  *Mullen v.*

26  *Treasure Chest Casino, LLC*, 186 F.3d 620, 625 (5th Cir. 1999); *accord Barnes v.*

27  *American Tobacco Co.*, 161 F.3d 127, 141 (3d Cir. 1998).

28

1     Here, the named Plaintiffs and the Class members they seek to

2  represent have suffered substantially the same injury – violation of their statutory

3  right to accuracy in the reporting of information about their financial affairs.

4  Further, far from being unique to the named Plaintiffs, the conduct precipitating

5  their injuries derives from the same course of conduct that has given rise to the

6  injuries suffered by all other Class members – namely, Defendants' deficient

7  procedures for reporting the status of pre-bankruptcy debt.  Finally, the claims of

8  the named Plaintiffs and those of other Class members are based on the exact same

9  legal theories.  Accordingly, the claims of the named Plaintiffs meet the typicality

10  prerequisite set forth in Fed. R. Civ. P. 23(a).  *Acosta*, 240 F.R.D. at 571 ("The

11  named plaintiffs' claims are . . . typical of those of the remainder of the class in

12  regards to the central legal issue, namely whether TransUnion and Equifax maintain

13  reasonable procedures to assure maximum possible accuracy in reporting

14  discharged accounts."); *see also White*, 2002 U.S. Dist. LEXIS 26610, at *41.

15           **4.     The Plaintiffs Adequately Represent The Class.**

16     The final threshold prerequisite for class certification is that the named

17  plaintiffs be able fairly and adequately to protect the interests of the class.  This

18  determination turns on just two questions:  "(1) [d]o the representative plaintiffs

19  and their counsel have any conflicts of interest with other class members, and

20  (2) will the representative plaintiffs and their counsel prosecute the action

21  vigorously on behalf of the class?"  *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th

22  Cir. 2003); *see also Hanlon*, 150 F.3d at 1020.  "The burden is on the defendant[] to

23  demonstrate that the representation will be inadequate."  *Johns v. Rozet*, 141 F.R.D.

24  211, 217 (D.D.C. 1992); *see also Lewis v. Curtis*, 671 F.2d 779, 788 (3d Cir. 1982);

25  *Trautz v. Weisman*, 846 F. Supp. 1160, 1167 (S.D.N.Y. 1994).

26     Both components of the "adequacy" test are met here.  First, Plaintiffs

27  do not have any interests antagonistic to those of the proposed Class and are

28  prepared to pursue this Litigation vigorously to redress the wrongs Defendants have

1  perpetrated.  The proposed Plaintiffs and the proposed Class members share an

2  identical interest in establishing Defendants' liability for failing to employ

3  reasonable reporting procedures to assure maximum possible accuracy in their

4  reporting of pre-bankruptcy debts.  To establish liability, all members of the

5  proposed Class seek the same findings on the common questions of law and fact.

6  Like the members of the Class they seek to represent, the named Plaintiffs have

7  been adversely affected by Defendants' alleged unlawful reporting procedures and

8  have every incentive to vigorously pursue their claims.

9          Second, Plaintiffs are represented by counsel who are "'qualified,

10  experienced and able to vigorously conduct the proposed litigation' on behalf of the

11  class.'"  *In re Quintus Secs. Litig.*, 148 F. Supp. 2d 967, 972 (N.D. Cal. 2001).

12  Plaintiffs' counsel have formed an Executive Committee to manage this Litigation,

13  which is led by co-lead counsel Michael W. Sobol of Lieff Cabraser and

14  Michael A. Caddell of Caddell & Chapman.  *See* Declaration of Michael W. Sobol

15  in Support of Plaintiffs' Motion to Certify Class, dated December 21, 2007 (Docket

16  No. 195), and Declaration of Michael A. Caddell in Support of Plaintiffs' Motion

17  for Class Certification, dated February 14, 2007 (Docket No. 66).  Similarly, lead

18  counsel for the *Acosta/Pike* plaintiffs, Lee A. Sherman of the law firm of Callahan,

19  McCune & Willis, has participated in the negotiations and mediation leading up to

20  the Settlement, and is one of the 23(b)(3) Settlement Class Counsel moving for the

21  Court's approval of the Settlement.

22          The 23(b)(3) Settlement Class Counsel have drawn on their

23  considerable experience and human resources to zealously represent the proposed

24  Class in this Litigation.  Likewise, the 23(b)(3) Settlement Class Counsel are

25  committed to devoting the financial resources necessary to litigate the case to a

26  successful resolution.  Indeed, the 23(b)(3) Settlement Class Counsel have already

27  expended considerable time and effort in researching the legal and factual issues

28  relevant to this Litigation, evaluating potential claims and defenses, drafting

1   pleadings, conducting discovery, successfully opposing the adequacy and fairness

2   of a prior settlement, successfully concluding the settlement for comprehensive and

3   complete injunctive relief, and successfully concluding the present settlement for

4   monetary relief.  Where, as here, proposed class counsel "include some of the most

5   experienced lawyers in the United States in the prosecution of . . . class actions"

6   and have demonstrated that they are "ready, willing and able to commit the

7   resources necessary to litigate the case vigorously," the adequate representation

8   requirement is more than satisfied.  *In re NASDAQ Market-Makers Antitrust Litig.*,

9   169 F.R.D. 493, 515 (S.D.N.Y. 1996).

10   **B.   Plaintiffs' Monetary Relief Claims Satisfy The Requirements For
        Class Certification For Purposes of Settlement Under
11       Rule 23(b)(3).**

12          This action is well-suited for certification under Rule 23(b)(3) because,

13   particularly in the context of this Settlement, questions common to the Class

14   members predominate over questions affecting only individual Class members, and

15   the class action device provides the best method for the fair and efficient resolution

16   of the Class's claims.  Indeed, Defendants do not oppose provisional class

17   certification for the purpose of effectuating the proposed Settlement.  When

18   addressing the propriety of class certification, the Court should take into account

19   the fact that, in light of the settlement, trial will now be unnecessary, and that the

20   manageability of the Class for trial purposes is not relevant to the Court's inquiry.

21   *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997); *Hanlon*, 150 F.3d at

22   1021-23.

23          A class action is appropriate under 23(b)(3) if "questions of law or fact

24   common to the members of the class predominate over any questions affecting only

25   individual members . . . ."  Fed. R. Civ. P. 23(b)(3).  "When common questions

26   present a significant aspect of the case and they can be resolved for all members of

27   the class in a single adjudication," there is clear justification for class treatment.

28   *Local Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands,*

1    *Inc.*, 244 F.3d 1152, 1162 (9th Cir. 2001).  Here, as the Settlement is structured,

2    common questions of law and fact overwhelm individual issues.  Thus, the

3    predominance requirement is satisfied.

4            Certification under Rule 23(b)(3) will allow class members to opt out

5    of the Settlement and preserve their right to seek damages independently.  *See*

6    *Brown v. Title Ticor Ins. Co.*, 982 F.2d 386, 392 (9th Cir. 1992).  This approach

7    protects putative class members' due process rights, and is consistent with the

8    Supreme Court's decision in *Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999), and

9    the Ninth Circuit's decision in *Brown*, which explain that due process requires an

10   opportunity to opt out of significant monetary relief.  *Ortiz*, 527 U.S. at 846-48;

11   *Brown*, 982 F.2d at 392.

12           The Court should certify the Class if it finds that a "class action is

13   superior to other available methods for fair and efficient adjudication of the

14   controversy."  Fed. R. Civ. P. 23(b)(3).  If alternate procedures "reveal[] no other

15   realistic possibilities, this [superiority] portion of Rule 23(b)(3) has been satisfied."

16   *Local Joint Executive Bd.*, 244 F.3d at 1163 (internal quotes and cites omitted).

17   Class treatment here will facilitate the favorable resolution of all Class members'

18   claims.  Given the large numbers of Class members and the multitude of common

19   issues present, the class device is also the most efficient and fair means of

20   adjudicating these claims.  Class treatment in the settlement context is superior to

21   multiple individual suits or piecemeal litigation because it greatly conserves judicial

22   resources and promotes consistency and efficiency of adjudication.  *See Hanlon*,

23   150 F.3d at 1023.  For these reasons, the superiority requirement is satisfied.

24       **C.**    **The 23(b)(3) Settlement Class**

25           Accordingly, the Court hereby provisionally certifies for settlement

26   purposes only the following class pursuant to Fed. R. Civ. P. 23:

27           All Consumers (as defined by the Settlement Agreement) who have

28   received an order of discharge pursuant to Chapter 7 of the United States

Bankruptcy Code and who, any time between and including March 15, 2002, and the present (or, for California residents in the case of TransUnion, any time between and including May 12, 2001 and the present), have been the subject of a Post-bankruptcy Credit Report issued by a Defendant in which one or more of the following appeared:

    a.    A Pre-bankruptcy Civil Judgment that was reported as outstanding (i.e., it was not reported as vacated, satisfied, paid, settled or discharged in bankruptcy) and without information sufficient to establish that it was, in fact, excluded from the bankruptcy discharge;

    b.    A Pre-bankruptcy Installment or Mortgage Loan that was reported as delinquent or with a derogatory notation (other than "discharged in bankruptcy," "included in bankruptcy" or similar description) and without information sufficient to establish that it was, in fact, excluded from the bankruptcy discharge;

    c.    A Pre-bankruptcy Revolving or Open Account that was reported as delinquent or with a derogatory notation (other than "discharged in bankruptcy," "included in bankruptcy" or similar description) and without information sufficient to establish that it was, in fact, excluded from the bankruptcy discharge; and/or

    d.    A Pre-bankruptcy Collection Account that remained in collection after the Bankruptcy Date.

Settlement Agreement at § 1.48. Excluded from the Class are: (i) all persons who timely and validly request exclusion from the Class; (ii) all Consumers who would qualify for membership in the "23(b)(3) Settlement Class" based solely on a Post-bankruptcy Credit Report for which the Consumer has released all claims as to the issuing Defendant; (iii) Defendants' officers, directors, and employees; (iv) Defendants' attorneys; (v) Plaintiffs' attorneys; and (vi) myself and the members of

1    my immediate family.

2    ## V.    THE CRITERIA FOR PRELIMINARY SETTLEMENT APPROVAL
3    ## ARE MET.

4           As long as the "preliminary evaluation of the proposed settlement does

5    not disclose grounds to doubt its fairness or other obvious deficiencies, such as

6    unduly preferential treatment of class representatives or of segments of the class, or

7    excessive compensation for attorneys, and appears to fall within the range of

8    possible approval," the Court should preliminarily approve the settlement.

9    *Newberg* § 11.25 (quoting *Manual for Complex Litig., Third* (FJC 1995)).

10          A proposed settlement may be finally approved by the trial court if it is

11   determined to be "fundamentally fair, adequate, and reasonable."  *Class Plaintiffs,*

12   955. F.2d at 1276.  While consideration of the requirements for *final* approval is

13   unnecessary at this stage, all of the relevant factors weigh in favor of the Settlement

14   proposed here.  In affirming the settlement approved by the trial court in *Class*

15   *Plaintiffs*, the Ninth Circuit noted that it "need not reach any ultimate conclusions

16   on the contested issues of fact and law which underlie the merits of the dispute, for

17   it is the very uncertainty of outcome in litigation and avoidance of wasteful and

18   expensive litigation that induce consensual settlements."  *Id.* at 1291 (internal

19   quotation and citation omitted).  The Court's ultimate determination should balance

20   "the strength of plaintiffs' case; the risk, expense, complexity, and likely duration

21   of further litigation; the risk of maintaining class action status throughout the trial;

22   the amount offered in settlement; the extent of discovery completed, and the state of

23   the proceedings; the experience and views of counsel . . . and the reaction of the

24   class to the proposed settlement."  *Id.* (citing *Officers for Justice*, 688 F.2d at 625).

25   The relative degree of importance to be attached to any particular factor will depend

26   upon and be dictated by the nature of the claims advanced, the types of relief

27   sought, and the unique facts and circumstances of each case.  *Nat'l Rural*

28

*Telecomm. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) (citing *Officers for Justice*, 688 F.2d at 625).

## 1.   The Settlement Provides Substantial Relief for Class Members.

The Settlement provides relief for all Class members who have had a credit report issued by a Defendant that contained errors regarding debts discharged in bankruptcy, as described in detail in III., *supra*, and in the Settlement Agreement at § 7.7.  Those Class members who believe that there have been one or more errors in their credit reports regarding debt discharged in bankruptcy can apply for a fixed or "Convenience" damage award, which will be an equal *pro rata* share of the Available Convenience Award Fund.  Settlement Agreement § 7.7(b).

Those Class members who can certify that they have been damaged by an error in their credit reports regarding debt discharged in bankruptcy, with respect to a denial of employment, a mortgage loan or housing rental, and/or a credit card, auto loan, other credit they applied for, or payment of a discharged debt to obtain credit, can apply for an "Actual Damage Award." *Id.* § 7.7(c).   If Defendants' records confirm a post-bankruptcy employment inquiry within two years of the date indicated by the claimant on their Claim Form, or if there is otherwise no contrary indication that an employment inquiry was made, the damage award to the consumer will be $750.00.  *Id.* § 7.7 (c)(iii)(1).  If Defendants' records confirm a hard inquiry consistent with a mortgage loan or other housing inquiry, the consumer will receive an award of $500.00.  *Id.* § 7.7(c)(iii)(2).  If Defendants' records confirm a post-bankruptcy hard inquiry, and the consumer does not apply for an employment or mortgage/housing award, then the consumer will receive an award of $150.00.  *Id.* § 7.7(c)(iii)(3).  The Settlement Claims Administrator will pay the Actual Damage Awards at the highest award level for which the claimant is eligible.  *Id.* § 7.7(c)(iv).

Class members may submit a simple claim form to request the relief

available under the Settlement.  Those Class members requesting Actual Damage Awards must provide an approximate date (month and year) of the relevant transaction(s) so that their claims can be verified.  *Id.* § 4.3(d).

## 2. The Risks Of Continued Litigation And Trial Favor Settlement.

The Settlement provides Class members with benefits they would not enjoy if the case were to proceed to trial.  First, the Settlement provides Class members with prompt and efficient relief.  Proceeding to trial would add years to the resolution of this case and could be further delayed by appeals.

Second, the Settlement enables Class members to avoid the risks of going to trial.  The factual and legal issues in this action are complex, and the trial of Plaintiffs' claims under the FCRA and related state laws would require substantial preparation and ultimately involve the presentation of dozens of witnesses and numerous experts.  Although Plaintiffs and the Class believe their claims have merit, they also recognize that they would face significant legal, factual, and procedural obstacles to recovering damages on their claims.  Where, as here, the Court issued a tentative ruling on January 26, 2009 denying Plaintiffs' Motion for Class Certification pursuant to Fed. R. Civ. P. 23(b)(3) and directed the parties to make a final attempt to settle the Litigation, class certification could pose some difficulties.  The Defendants deny that they willfully or negligently violated FCRA or related state laws, and they would challenge Plaintiffs' claims at every stage of the Litigation.  Among other things, as evidence of their good faith, they would point to the fact that they have completely revised the challenged procedures independently of any monetary settlement.  The outcome of a trial is uncertain.  The Settlement ensures that Class members will be granted relief if they submit timely qualified claims.

Third, the Settlement negates the extraordinary time and expense that would be incurred if this case were to proceed to trial.  The Settlement commits

- 22 -

1   Defendants to each pay $15 million into a Settlement Fund to be distributed among

2   the Class according to their claims.  Even if the Class were successful in winning at

3   trial, it would not see any relief until after many potential appeals and many years.

4   The results of a Settlement will benefit the parties and the court system.

5           **3.    The Recommendations Of Experienced Counsel Favor Approval Of The Settlement.**

6

7           The judgment of experienced counsel regarding the settlement is

8   entitled to great weight.  *M. Berenson Co. v. Faneuil Hall Marketplace, Inc.*, 671 F.

9   Supp. 819, 822 (D. Mass 1987); *Linney v. Cellular Alaska P'ship*, 1997 WL

10  450064, at *5 (N.D. Cal. 1997); *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15,

11  18 (N.D. Cal. 1980).  "The recommendations of plaintiffs' counsel should be given

12  a presumption of reasonableness."  *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622

13  (N.D. Cal. 1979).  Here, counsel for both parties endorse the settlement as fair,

14  adequate, and reasonable.

15          Settlement Counsel have extensive experience in prosecuting and

16  litigating consumer class action cases and FCRA and bankruptcy actions.

17  Settlement Counsel have conducted extensive investigation of and discovery in this

18  case.  The fact that qualified and well-informed counsel endorse the settlement as

19  being fair, reasonable, and adequate weighs heavily in favor of this Court's

20  approval of the settlement.

21          **4.    The Court Believes The Settlement Is In The Best Interests Of The Class.**

22

23          The Plaintiffs have actively participated in this Litigation by staying

24  apprised of developments, producing documents, responding to discovery and

25  providing sworn declaration and deposition testimony.  Moreover, they have been

26  kept informed about the progress of settlement negotiations and mediation and the

27  proposed Settlement.  The proposed Plaintiffs have been informed of the nature of

28

1  the Settlement and believe that this Court's approval of it would serve the best

2  interests of the class.

3         The Plaintiffs represent the interests of the entire Class in asking the

4  Court to approve this Settlement.  The claims of all of the original *White* plaintiffs

5  were consolidated with the claims of Jose Hernandez via the *White/Hernandez*

6  Second Amended Consolidated Class Action Complaints against each Defendant,

7  and the claims of the Acosta plaintiffs were related to *White/Hernandez*.  Therefore,

8  even if the *White* plaintiffs do not agree with the Settlement[7], Jose Hernandez,

9  Kathryn Pike, Robert Randall, and Bertram Robison seek to resolve all of the

10  claims in the complaints against Defendants on behalf of the Class.  The Settlement

11  will resolve and release all claims of the Plaintiffs and 23(b)(3) Settlement Class

12  Members as they relate to the reporting of debts discharged in bankruptcy.

13  Settlement Agreement § 1.38.

14         The Ninth Circuit does not require that all named plaintiffs agree with

15  a settlement in order for it to be approved.  *Officers for Justice v. Civil Serv.*

16  *Comm'n*, 688 F.2d 615, 631 (9th Cir. 1982).  Numerous courts have held that class

17  counsel has a duty to do what is in the best interests of the class, even if some class

18  representatives disagree.  *See, e.g.*, *Officers for Justice*, 688 F.2d at 631; *Parker v.*

19  *Anderson*, 667 F.2d 1204, 1211 (5th Cir. 1982) (affirming approval of class

20  settlement opposed by all but one of eleven named plaintiffs and recognizing "that

21  the duty owed by Class Counsel is to the entire class and is not dependent on the

22  special desires of the named plaintiffs"); *Kincade v. Gen. Tire and Rubber Co.*, 635

23  F.2d 501, 508 (5th Cir. 1981) (affirming class settlement over opposition of five of

24  the six named plaintiffs and finding that cases holding that an attorney cannot settle

25  individual client's case without authorization of client are inapplicable to class

26  ────────────

[7] The 23(b)(3) Settlement Class Counsel have informed the Court that they have

27  only been able to confirm support for the Settlement from Jose Hernandez, Robert Randall, and Bertram Robison.  Though Settlement Class Counsel have not had an opportunity to meet with all of the *White* Plaintiffs, they have been advised that

28  they oppose the Settlement.

actions "because of the unique nature of the attorney-client relationship in a class action"); *Maywalt v. Parker & Parsley Petroleum Co.*, 864 F. Supp. 1422, 1430 (S.D.N.Y. 1994), *aff'd*, 67 F.3d 1072 (2d Cir. 1995) (approving settlement opposed by four out of five class representatives because it does not serve best interests of Rule 23 "[t]o empower the Class Representatives with what would amount to an automatic veto over the Proposed Settlement"); *Rodriguez v. West Publishing Corp.*, 2007 U.S. Dist. LEXIS 74849, at *49-50 (C.D. Cal. Sept. 10, 2007) (citing above cases).

Therefore, it is this Court's duty to approve the Settlement if it determines it is in the best interests of the class. *Maywalt v. Parker*, 67 F.3d 1072, 1078 (2nd Cir. 1995) ("[t]he ultimate responsibility to ensure that the interests of class members are not subordinated to the interests of either the class representatives or class counsel rests with the district court").[8]  Moreover, the Court is not required to give any special deference to Objecting Plaintiffs. *Rodriguez*, 2007 U.S. Dist. LEXIS 74849, at *51 (C.D. Cal. Sept. 10, 2007).  Accordingly, this Court preliminary approves the Settlement as being in the best interests of the Class.

**B.   <u>The Court Itself Has Urged The Parties To Reach A Settlement.</u>**

In the Court's rulings and comments to counsel, this Court has urged the parties to reach a settlement.  The Court first urged the parties to proceed to mediation on or about August 15, 2007.  After the parties entered into an Injunctive Relief Settlement Agreement on or about April 3, 2008, which was approved by the Court on August 19, 2008, the Court continued to encourage the parties to try to

---

[8] The 23(b)(3) Settlement Counsel also have a duty to do what they believe is in the best interests of the class, even if the named plaintiffs do not agree. *See, e.g., Fleury v. Richemont NorthAmerica, Inc.*, 2008 U.S. Dist. LEXIS 64521, at *44 (N.D. Cal. July 3, 2008) (citing *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 801 (3d Cir. 1995) (stating that, "[b]eyond their ethical obligations to their clients, class attorneys, purporting to represent a class, also owe the entire class a fiduciary duty once the class complaint is filed"); *In re McKesson HBOC, Inc. Secs. Litig.*, 126 F. Supp. 2d 1239, 1245 (N.D. Cal. 2000) (noting that "lead counsel owes a generalized duty to unnamed class members")).

settle the case.  The parties' efforts to resolve the monetary relief portion of the Litigation then resumed with several mediation sessions, but without success.

On January 26, 2009, the parties appeared for a hearing on Plaintiffs' Motion for Class Certification of a 23(b)(3) damages class.  Prior to the scheduled hearing, the Court issued a tentative ruling denying the motion, decided not to hear the Motion at that time, and directed the parties to make a final attempt to settle the Litigation.  When the parties did not reach an agreement after an additional mediation session with mediator Randall Wulff, the Court ordered a mandatory settlement conference on February 5, 2009, whereby a settlement was reached with two defendants (which the third defendant joined two weeks later).  Thus, on numerous occasions, the Court strongly urged the parties to reach a settlement agreement.

Where, as here, a proposed class settlement has been reached after meaningful discovery and arm's length bargaining, conducted by capable counsel, and the proponents of the settlement are counsel experienced in similar litigation, the settlement should be entitled to a presumption of fairness.  *Newberg* § 11.41; Manual for Complex Litigation, Second, § 30.41 at 237.  These factors, and the terms of the settlement offering damage awards to all Class members, demonstrate that the Settlement is fair, adequate, and reasonable.

## C. <u>The Proposed Notice Program Is Constitutionally Sound.</u>

"Rule 23(e)(1)(B) requires the court to 'direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise' regardless of whether the class was certified under Rule 23(b)(1), (b)(2), or (b)(3)."  *Manual for Complex Litig.*, § 21.312. Many of the same considerations govern both certification and settlement notices. In order to protect the rights of absent class members, the Court must provide the best notice practicable to class members.  *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 174-175

(1974).  "Rule 23 . . . requires that individual notice in 23(b)(3) actions be given to class members who can be identified through reasonable effort.  Those who cannot be readily identified must be given the 'best notice practicable under the circumstances.'"  *Manual for Complex Litig.*, § 21.311.  According to the *Manual*, the settlement notice should:

- Define the class;
- Describe clearly the options open to the class members and the deadlines for taking action;
- Describe the essential terms of the proposed settlement;
- Disclose any special benefits provided to the class representatives;
- Provide information regarding attorneys' fees;
- Indicate the time and place of the hearing to consider approval of the settlement, and the method for objecting to or opting out of the settlement;
- Explain the procedures for allocating and distributing settlement funds, and, if the settlement provides different kinds of relief for different categories of class members, clearly set out those variations;
- Provide information that will enable class members to calculate or at least estimate their individual recoveries; and
- Prominently display the address and phone number of class counsel and the procedure for making inquiries.

§ 21.312.

The proposed forms of Notice, attached as Exhibits A-C to the Settlement Agreement, satisfy all of criteria above.  The Notice Plan provides for a large mailing to known Class members and a one-time publication in a nationally distributed newspaper or magazine.  Settlement Agreement §§ 4.3(b), (e).  A press release describing the Settlement may be issued by the parties.  *Id*. § 10.1.  The Notice and other documents will also be available online at a Settlement Website established by the Settlement Administrator.  *Id.* § 4.3(c).  The Settlement Website will be registered with Google to ensure that it is easy to find on the Internet.  *Id.*

## D.   <u>Scheduling Final Approval Hearings Is Appropriate.</u>

The last step in the Settlement approval process is a final fairness

hearing at which the Court may hear all evidence and argument necessary to make
its Settlement evaluation.  Proponents of the Settlement may explain the terms and
conditions of the Settlement, and offer argument in support of final approval.  In
addition, Settlement Class members, or their counsel, may be heard in support of or
in opposition to the Settlement Agreement.  The Court will determine after the final
approval hearing whether the Settlement should be approved, and whether to enter a
final order and judgment under Rule 23(e).  The Court sets the date of November 9,
2009, at 8:30 a.m., for a hearing on final approval.

## VI.   **CONCLUSION**

The Court concludes that Plaintiffs have satisfied all of the requirements for
Preliminary Approval of the proposed Class Action Settlement and conditional
certification of the Settlement Class.  Accordingly, it is hereby ORDERED as
follows:

1.    In the actions against Experian, Equifax and TransUnion, the
following "23(b)(3) Settlement Class" is conditionally certified for purposes of
settlement under Fed. R. Civ. P. 23(b)(3) as to (i) willful and/or negligent violation
of Section 1681e(b) of the FCRA and its California counterpart, Cal. Civ. Code
Section 1785.14(b), for failure to maintain reasonable procedures to assure
maximum possible accuracy; (ii) willful and/or negligent violation of Section 1681i
of the FCRA and its California counterpart, Cal. Civ. Code Section 1785.16, for
failure to reasonably investigate Consumer disputes regarding the status of the
discharged accounts; and (iii) violation of California's Unfair Competition law,
Bus. & Prof. Code section 17200, *et seq.*:

All consumers who have received an order of discharge pursuant
to Chapter 7 of the United States Bankruptcy Code and who, any
time between and including March 15, 2002, and the present (or,
for California residents in the case of TransUnion, any time
between and including May 12, 2001 and the present), have been

the subject of a Post-bankruptcy Credit Report issued by a

Defendant in which one or more of the following appeared:

      a.    A Pre-bankruptcy Civil Judgment that was reported

as outstanding (i.e., it was not reported as vacated,

satisfied, paid, settled or discharged in bankruptcy) and

without information sufficient to establish that it was, in

fact, excluded from the bankruptcy discharge;

      b.    A Pre-bankruptcy Installment or Mortgage Loan that

was reported as delinquent or with a derogatory notation

(other than "discharged in bankruptcy," "included in

bankruptcy" or similar description) and without

information sufficient to establish that it was, in fact,

excluded from the bankruptcy discharge;

      c.    A Pre-bankruptcy Revolving Account that was

reported as delinquent or with a derogatory notation (other

than "discharged in bankruptcy," "included in bankruptcy"

or similar description) and without information sufficient to

establish that it was, in fact, excluded from the bankruptcy

discharge; and/or

      d.    A Pre-bankruptcy Collection Account that remained

in collection after the Bankruptcy Date.

Excluded from the Class are:  (i) all persons who timely and validly request

exclusion from the Class; (ii) all Consumers who would qualify for membership in

the "23(b)(3) Settlement Class" based solely on a Post-bankruptcy Credit Report

for which the Consumer has released all claims as to the issuing Defendant; (iii)

Defendants' officers, directors, and employees; (iv) Defendants' attorneys;

(v) Plaintiffs' attorneys; and (vi) myself and the members of my immediate family.

2.      Plaintiffs Jose Hernandez, Robert Randall, Bertram Robison, and Kathryn Pike are designated and appointed as representatives for the Settlement Class.

3.      The law firms of Lieff Cabraser Heimann & Bernstein, LLP, Caddell & Chapman, National Consumer Law Center, Consumer Litigation Associates, P.C., Weller Green, Toups & Terrell, L.L.P., and Callahan McCune and Willis are appointed as 23(b)(3) Settlement Class Counsel.

4.      The Court grants Preliminary Approval to the Settlement Agreement, as set forth in Exhibit 1.

5.      The 23(b)(3) Settlement Class Counsel shall disclose the identify of the Settlement Administrator and Notice Provider to the Court by June 30, 2009.

6.      Each Defendant shall provide the Settlement Administrator with their respective lists of identified 23(b)(3) Settlement Class Members by July 31, 2009.

7.      The Court approves of the forms of Notice, attached to the Settlement Agreement as Exhibits A-C, and the notice distribution and publication program set forth in the Settlement Agreement.

8.      The Settlement Administrator shall cause the Mail Notice to be sent to each identified 23(b)(3) Settlement Class Member by August 31, 2009, and shall establish an Internet web site no later than five days prior to the mailing of the Mail Notice.  Between August 31, 2009 and September 30, 2009, the Settlement Administrator shall cause the Publication Notice to be published.

9.      The deadline for a class member to submit a claim, opt out, or object to the Settlement shall be October 15, 2009.

10.     All responses to objections shall be filed by October 30, 2009.

11.     Any counsel for plaintiffs who wish to apply for an award of fees and costs for efforts made in connection with the Injunctive Relief Settlement must do so on or before October 19, 2009.

12.     A Final Fairness Hearing shall be set for November 9, 2009 at 8:30 a.m.


IT IS SO ORDERED,


May 7, 2009                          *David O. Carter*
                                     _____
                                     HON. DAVID O. CARTER