BOIES, SCHILLER & FLEXNER LLP
David Boies
333 Main Street
Armonk, NY 10504
Telephone:   914.749.8200
Facsimile:   914.749.8300
Email:       dboies@bsfllp.com
(pending *pro hac vice* admission)

George F. Carpinello
Adam R. Shaw
10 North Pearl Street
Albany, NY 12207
Telephone:  518.434.0600
Facsimile:  518.434.0665
Email:       gcarpinello@bsfllp.com
             ashaw@bsfllp.com
(admitted *pro hac vice*)

BROWNE WOODS GEORGE LLP
David L. Zifkin (SBN 232845)
2121 Avenue of the Stars, 24th Floor
Los Angeles, CA  90067
Telephone:  310.274.7100
Facsimile:  310.275.5697
Email:       dzifkin@bwgfirm.com

CHARLES JUNTIKKA &
ASSOCIATES LLP
Charles Juntikka (admitted *pro hac vice*)
1250 Broadway, 24th Floor
New York, NY 10001
Telephone:  212.315.3755
Facsimile:  212.315.9032
Email:       charles@cjalaw.com

DANIEL WOLF LAW OFFICES
Daniel Wolf (admitted *pro hac vice*)
1220 N Street, NW, Suite PH 2
Washington, DC 20005
Telephone:  202.842.2170
Email:       dan@danielwolflaw.com

Attorneys for Plaintiffs Robert Radcliffe, Chester Carter, Maria Falcon, Clifton C. Seale, III, Arnold E. Lovell, and all others similarly situated.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

(Southern Division)

| | |
|---|---|
| TERRI N. WHITE, et al.,<br><br>                    Plaintiffs,<br><br>          v.<br><br>EXPERIAN INFORMATION SOLUTIONS, INC., et al.,<br><br>                    Defendants.<br><br>And Related Actions. | CASE NO. SA 05-CV-1070 DOC (MLGx) (Lead Case)<br>Assigned to the Hon. David O. Carter<br><br>NOTICE OF MOTION AND MOTION FOR RECONSIDERATION AND TO VACATE ORDERS APPOINTING CLASS COUNSEL AND CONDITIONALLY CERTIFYING SETTLEMENT CLASS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT HEREOF<br><br>_____<br><br>Date:     June 15, 2009<br>Time:     8:30 a.m.<br>Place:    9D<br>Judge:    Hon. David O. Carter |

TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that Plaintiffs Robert Radcliffe, Chester Carter, Maria Falcon, Clifton C. Seale, III and Arnold E. Lovell (the "*White* Plaintiffs") will and hereby do move for reconsideration and to vacate the Court's orders appointing class counsel and conditionally certifying settlement class.

This motion is brought pursuant to Federal Rules of Civil Procedures, 23(c) and (d), Local Rule 7.18 and the Court's inherent power. It is based on this Notice of Motion and Motion, the following Memorandum of Points and Authorities, the declarations filed concurrently in support of this Motion, all documents and records on file in this action, and such additional evidence or argument as may be presented at the Hearing.

The Motion is made following the conference of counsel pursuant to L.R. 7-3. The *White* Plaintiffs' counsel and the Settling Parties' counsel originally scheduled the meet and confer more than five days prior to the filing of this motion for reconsideration, which must be timely filed in order to preserve appellate rights under the Federal Rules. At the request of the Settling Parties' counsel, the meet and confer was postponed until May 18, 2009.

DATED: May 21, 2009

BOIES, SCHILLER & FLEXNER LLP
David Boies
George F. Carpinello
Adam R. Shaw

CHARLES JUNTIKKA & ASSOCIATES LLP
Charles Juntikka

DANIEL WOLF LAW OFFICES
Daniel Wolf

BROWNE WOODS GEORGE LLP
David L. Zifkin (SBN 232845)

By /s/ David L. Zifkin
David L. Zifkin

Attorneys for Plaintiffs Robert Radcliffe, Chester Carter, Maria Falcon, Clifton C. Seale, III, Arnold E. Lovell, and all others similarly situated.

MOTION FOR RECONSIDERATION

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

INTRODUCTION ..................................................................................................... 1

ARGUMENT ........................................................................................................... 3

I.   Reconsideration Is Warranted By Considerations Of
     Fundamental Fairness ................................................................................. 3

II.  The Orders Appointing Class Counsel and Certifying A
     Settlement Class Should Be Vacated Because The
     Conduct of Class Counsel Shows They Cannot
     Adequately Represent The Putative Classes ................................................ 7

     A.   The Lieff/Caddell Team's Breaches Of The Duty of
          Undivided Loyalty Disqualify Them From Further
          Involvement In This Matter .................................................................. 8

     B.   Counsel For The Settling Plaintiffs' Unethical Conduct In
          Regard To Named Plaintiff Incentive Awards Disqualifies
          Them From Representing The Class ..................................................... 13

     C.   Counsel For The Settling Plaintiffs' Support For Grossly
          Inadequate Settlement Terms In Which They Have
          Subordinated The Interests Of The Class To Their Own
          Financial Interests Establishes Their Inadequacy To Serve
          As Class Counsel .............................................................................. 18

III. The Order Conditionally Certifying A Settlement Class
     Should Be Vacated Because The Conduct Of The Settling
     Plaintiffs Shows They Are Not Adequate Class Representatives .............. 19

     A.   The *Pike* Plaintiffs Support For The Woefully Inadequate
          *Acosta/Pike* Settlement Demonstrates Their Inadequacy ................... 19

     B.   The *Pike/Hernandez* Plaintiffs' Decision To Abandon Large
          Segments Of The Putative Classes Whose Interests Do Not
          Align With Their Own Demonstrates Their Inadequacy ................... 20

     C.   The Settlement's Incentive Awards Provision Creates A
          Disabling Conflict of Interest Between The *Pike/Hernandez*
          Plaintiffs And The Remainder Of The Class ....................................... 22

CONCLUSION .................................................................................................... 23

MOTION FOR RECONSIDERATION

# <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

FEDERAL CASES

*Ace Heating & Plumbing Co. v. Crane Co.*, 453 F.2d 30 (3d Cir. 1971) .............. 14

*Acosta v. Trans Union LLC*, 243 F.R.D. 377 (C.D. Cal. 2007) ................... 3, 18, 20

*Alberto v. GMRI, Inc.*, 252 F.R.D. 652 (E.D. Cal. 2008) .................................... 3, 23

*Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997) ............................ 3, 20, 21

*Ballard v. Equifax Check Serv., Inc.*, 186 F.R.D. 589 (E.D. Cal. 1999) .................. 4

*Camp v. Progressive Corp.*, 2004 U.S. Dist. LEXIS 19172 (E.D. La., Sept. 23, 2004) ........................................................................................................... 17

*In re Calif. Canners and Growers*, 74 B.R. 336 (Bankr. N.D. Cal. 1987) ................................................................................................................. 10

*In re California Microdevices Sec. Litig.*, 168 F.R.D. 257 (N.D. Cal. 1996) ................................................................................................................. 17

*Castillo v. General Motors Corp.*, 2008 U.S. Dist. LEXIS 82337 (E.D. Cal. Sept. 8, 2008) ............................................................................................... 23

*In re Chiron Corp. Secs. Litig.*, 2007 U.S. Dist. LEXIS 91140 (N.D. Cal. Nov. 30, 2007) ............................................................................................... 18

*City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882 (9th Cir. 2001) ............................................................................... 4

*In re Community Bank of Northern Virginia*, 418 F.3d 277 (3d Cir. 2005) ............................................................................................................... 3

*In re Corrugated Container Antitrust Litig.*, 643 F.2d 195 (5th Cir. 1981) ......................................................................................................... 18, 19

*In re County of Los Angeles*, 223 F.3d 990 (9th Cir. 2000) ..................................... 8

*Day v. NLO, Inc.*, 1995 U.S. Dist. LEXIS 22316 (S.D. Ohio, May 19, 1995) ................................................................................................................. 17

*Deadwyler v. Volkswagen of America, Inc.*, 134 F.R.D. 128 (W.D.N.C. 1991), *aff'd.* 1992 U.S. App. LEXIS 14891 (4th Cir. 1992) .......................... 7, 17

MOTION FOR RECONSIDERATION

1

## <u>TABLE OF AUTHORITIES</u>
### (continued)

**Page**

*Elliot v. Sperry Rand Corp.*, 680 F.2d 1225 (8th Cir. 1982) ................................... 14

*Fund of Funds, Ltd. v. Arthur Andersen & Co.*, 567 F.2d 225 (2d Cir. 1977) ......................................................................................................... 10

*In re General Motors Corp. Engine Interchange Litig.*, 594 F.2d 1106 (7th Cir. 1979) .......................................................................................... 9

*In re General Motors Corp. Pick-Up Truck Fuel Tank Products Liab. Litig.*, 55 F.3d 768 (3d Cir. 1995) ...................................................................... 7

*Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003) ........................................... 15

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998) ........................... 20

*Heit v. Van Ochten*, 126 F. Supp. 2d 487 (W.D. Mich. 2001) ........................ 11, 12

*Hughes v. Microsoft Corp.*, 2001 U.S. Dist. LEXIS 5976 (W.D. Wash. Mar. 26, 2001) ........................................................................................................ 17

*Huston v. Imperial Credit Commercial Mortgage Invest. Corp.*, 179 F. Supp. 2d 1157 (C.D. Cal. 2001) ............................................................... 7

*Image Tech. Serv., Inc. v. Eastman Kodak Co.*, 136 F.3d 1354 (9th Cir. 1998) ...................................................................................................... 9, 10

*Karvaly v. eBay, Inc.* 245 F.R.D. 71 (E.D.N.Y. 2007) ............................................ 4

*Kayes v. Pacific Lumber Co.*, 51 F.3d 1449 (9th Cir.1995) .................................. 7, 8

*Kessler v. American Resorts Int'l Holiday Network, Ltd.*, 2007 U.S. Dist. LEXIS 84450 (N.D. Ill., Nov. 14, 2007) ................................................................... 3, 4

*Lazy Oil Co. v. Witco Corp.*, 166 F.3d 581 (3d Cir. 1999) ............................... 9, 12

*Lazy Oil Co. v. Witco Corp.*, 95 F. Supp. 2d 290 (W.D. Pa. 1997) ...................... 14

*Martin v. Foster Wheeler Energy Corp.*, 2008 U.S. Dist. LEXIS 25712 (M.D. Pa. Mar. 31, 2008) ................................................................................................. 14

*Milton H. Greene Archives, Inc. v. CMG Worldwide, Inc.*, 568 F. Supp. 2d 1152 (C.D. Cal. 2008) ........................................................................ 6

*Mirfasihi v. Fleet Mortgage Corp.*, 450 F.3d 745 (7th Cir. 2006) ........................... 7

MOTION FOR RECONSIDERATION

1

## TABLE OF AUTHORITIES
### (continued)

2

**Page**

3

4

*Molski v. Gleich*, 318 F.3d 937 (9th Cir. Cal.  2003) ............................................... 18

5

*Moreno v. Autozone, Inc.*, 2007 U.S. Dist. LEXIS 98250 (N.D. Cal.
 Dec. 5, 2007) .................................................................................................... passim

6

*Murray v. GMAC Mortgage Corp.*, 434 F.3d 948 (7th Cir. 2006) ......................... 23

7

8

*Neilson v. Union Bank Cal., N.A.,* 290 F.Supp.2d 1101 (C.D. Cal. 2007) .............. 4

9

*Nilsen v. York County*, 382 F. Supp.2d 206 (D. Me. 2005) ..................................... 17

10

*In re Ocean Bank,* 2007 U.S. Dist. LEXIS 29443 (N.D. Ill.
 Apr. 9, 2007) ......................................................................................................... 18

11

*Olden v. Gardner,* 2008 U.S. App. LEXIS 20092 (6th Cir.
 Sept. 18, 2008 ....................................................................................................... 17

12

*Perfect 10, Inc. v. CWIE, LLC*, 2005 U.S. Dist. LEXIS 45935 (C.D. Cal.
 Feb. 10, 2005), *aff'd. in part, rev'd in part*, 481 F.3d 751 (9th Cir. 2007) ....... 4, 5

13

*Rodriguez v. West Publ'g Corp.*, 2009 U.S. App. LEXIS 8680 (9th Cir.
 Apr. 23, 2009 ..................................................................................................... passim

14

15

*Romero v. Producers Dairy Foods, Inc.*, 2007 U.S. Dist. LEXIS 86270 (E.D. Cal.
 Nov. 13, 2007) ...................................................................................................... 17

16

*Sanchez & Daniels v. Koresko & Associates*, 2006 U.S. Dist. LEXIS 84232
 (N.D. Ill. sept. 14, 2006) .............................................................................. 6, 11, 12

17

18

*School Dist. No. 1J Multnomah County, Or. v. ACandS, Inc.*, 5 F.3d
 1255 (9th Cir. 1993) ............................................................................................ 4

19

*Sheppard v. Consolidated Edison Co.*, 2000 U.S. Dist. LEXIS 20629
 (E.D.N.Y. Sept. 11, 2000) ................................................................................... 14

20

21

*Slaven v. BP America, Inc.*, 190 F.R.D. 649 (C.D. Cal. 2000) ............................. 3, 4

22

*Staton v. Boeing, Co.*, 327 F.3d 938 (9th Cir. 2003) .............................. 3, 14, 22, 23

23

24

*Susman v. Lincoln American Corp.*, 561 F.2d 86 (7th Cir. 1977) ........................... 7

25

*In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d 1029 (S.D. Ohio
 2001) ...................................................................................................................... 17

26

27

*True v. American Honda Motor Co., Inc.*, 2009 U.S. Dist. LEXIS
 29814 (C.D. Cal. Mar. 25, 2009) ......................................................................... 4

28

MOTION FOR RECONSIDERATION

1

## <u>TABLE OF AUTHORITIES</u>
### (continued)

2

<u>Page</u>

3

4

*Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227 (9th Cir. 1996) ............................ 3

5

*Ybarrondo v. NCO Fin. Sys., Inc.,* 2008 U.S. Dist. LEXIS 4353 (S.D. Cal.
Jan. 18, 2008)................................................................................................. 23

6

7

### STATE CASES

8

*Alberts v. Franklin*, 2004 Cal. LEXIS 8309 (Cal. App. 4th Dist. Sept. 1,
2004) ..................................................................................................... 10, 11

9

10

*Apple Computer, Inc. v. Superior Court*, 126 Cal.App.4th 1253, 24
Cal.Rptr.3d 818 (Cal.App.2nd Dist. 2005) ........................................................ 18

11

*Campbell v. Fireside Thrift Co.*, 2004 Cal.App. Unpub. LEXIS 216 (2004) ......... 22

12

*Flatt v. Superior Court*, 9 Cal. 4th 275, 36 Cal.Rptr.2d 537 (1994) ........... 7, 8, 9, 13

13

14

*7- Eleven Owners for Fair Franchising v. Southland Corp.*, 85 Cal.
App. 4th 1135, 102 Cal.Rptr.2d 777 (Cal.App.1st Dist. 2000)......................... 10

15

16

### OTHER AUTHORITIES

17

Fed. R. Civ. Proc. 23(c)(1) ........................................................................... 4

18

Fed. R. Civ. Proc. 23(2)(2) ........................................................................... 4

19

Central Dist. of Cal. Local Rule 7-18...................................................................... 4

20

Central Dist. of Cal. Local Rule 83-3.1.2................................................................ 8

21

Rules of Prof. Conduct of the State Bar of Cal. 1-120........................................... 10

22

Rules of Prof. Conduct of the State Bar of Cal. 3-310(c)(3)..................... 8, 9, 10, 13

23

Rules of Prof. Conduct of the State Bar of Cal. 3-700............................................ 13

24

25

26

27

28

Plaintiffs Robert Radcliffe, Chester Carter, Maria Falcon, Clifton C. Seale, III, and Arnold E. Lovell (the "*White* Plaintiffs") respectfully submit this memorandum of points and authorities in support of their motion for reconsideration and to vacate this Court's May 7, 2009 Order appointing class counsel and conditionally certifying settlement class (the "May 7 Order").

## INTRODUCTION

Reconsideration and vacatur of this Court's May 7 Order is necessary because counsel for the Settling Plaintiffs -- Lieff Cabraser Heimann & Bernstein, LLP, ("Lieff") and the National Consumer Law Center ("NCLC"), together with their co-counsel, Caddell & Chapman, P.C., Mitchell Toups and Leonard Bennett ("the Caddell team") -- have engaged in conduct that automatically disqualifies them from representing the class.  The misconduct includes the following eight independent acts:

1. Lieff and NCLC, both attorneys of record for the *White* Plaintiffs, disregarded the *White* Plaintiffs' five written instructions to stop negotiating and supporting the settlement or to withdraw.  May 21, 2009 Declaration of Charles Juntikka, ("Juntikka Decl."), ¶ 32 and Exh. J thereto;

2. The Settling Plaintiffs' counsel advised the *White* Plaintiffs that the settlement was incomplete and was still being negotiated and instructed them not to oppose it until all the Settling Plaintiffs' counsel had consulted with them, *Id.* ¶¶ 25-27, and Exh. F thereto;

3. The Settling Plaintiffs' counsel then failed to consult with any of the *White* Plaintiffs until April 16—one week before the settlement was filed and over two months after the February 5 mediation—and *never* consulted with the three of them, *Id.* ¶¶ 34-40 and Exh. J thereto.

4. When they finally consulted with two of the *White* Plaintiffs, the Caddell team improperly instructed one of them that he would be eligible for $5000 incentive payments only if he supported the settlement; and, in fact, the settlement makes incentive payments to the named plaintiffs contingent on their "support" for it, *Id.* ¶ 41 and Settlement Agreement, (Exh. 1 to Apr. 24, 2009 Declaration of Michael Sobol, at ¶ 7.5(a) (Docket # 384);

MOTION FOR RECONSIDERATION

5. After failing to persuade any of the *White* Plaintiffs to change their decisions, Lieff and NCLC filed the settlement with the Court in direct defiance of their clients' instructions and ***before*** even attempting to withdraw, Juntikka Decl. ¶ 14;

6. When the *White* Plaintiffs sought an extension of time to file objections, Lieff affirmatively opposed ***their own clients'*** request and continued to refuse to turn over certain documents their clients had requested ***before*** even attempting to withdraw, *Id.* ¶¶ 43-46;

7. Lieff and NCLC have failed to properly withdraw and continue to oppose their own clients to this day, *Id.* ¶ 47; and

8. At all times, the Caddell team, attorneys of record for Jose Hernandez, supported and participated in Lieff and NCLC's aforementioned misconduct, *Id..* ¶¶ 25-33.

Lieff's and NCLC's conduct violates the ethical rules prohibiting simultaneous representation of two or more clients with adverse interests. If Lieff and NCLC had promptly withdrawn upon learning of the *White* Plaintiffs' opposition to the proposed settlement or suspended their support for that settlement whilst trying to change their minds, Lieff and NCLC would have been freed from their ethical obligation to not oppose their current client. Under California law, their failure to do so compels this Court to vacate its order appointing Lieff and NCLC as class counsel.

The Settling Plaintiffs' counsel defend their conduct by claiming that their duties to the uncertified class trump their duties to the *White* Plaintiffs. This defense would be cognizable only ***if*** Lieff and NCLC had withdrawn from their representation of the *White* Plaintiffs ***before*** taking action adverse to their interests.

Because the Caddell team knew of the conduct underlying Lieff's and NCLC's breaches of their loyalty duties and directly participated in those breaches, they have also violated the ethical rules and must be disqualified.

Finally, all the Settling Plaintiffs' counsel denied the *White* Plaintiffs their opportunity to obtain an incentive award. Mitchell Toups of the Caddell team went

MOTION FOR RECONSIDERATION

1  so far as to threaten White Plaintiff Arnold Lovell that he would "jeopardize" his

2  $5,000 incentive payment if he did not approve the settlement.  Declaration of

3  Arnold Lovell, ("Lovell Decl."), sworn to on May 8, 2009, ¶ 14.  The very next day,

4  counsel for all the Settling Plaintiffs filed the settlement denying payments to all of

5  the *White* Plaintiffs.  Such conduct disqualifies both the Settling Plaintiffs and their

6  counsel from further representing the classes.

7  **ARGUMENT**

8  **I.   RECONSIDERATION IS WARRANTED BY CONSIDERATIONS OF FUNDAMENTAL FAIRNESS.**

9  In deciding whether to certify a settlement class, the district courts have

10  solemn responsibilities.  The courts cannot "blindly rely on the fact that the parties

11  have stipulated that a class exists for purposes of settlement."  *Alberto v. GMRI,*

12  *Inc.*, 252 F.R.D. 652, 658 (E.D. Cal. 2008).  Rather, they "must pay undiluted, even

13  heightened, attention to class certification requirements" and give "special attention"

14  to the fairness of the settlement.  *Staton v. Boeing, Co.*, 327 F.3d 938, 952 (9th Cir.

15  2003); *see also Acosta v. Trans Union LLC*, 243 F.R.D. 377, 383 (C.D. Cal. 2007).

16  That is because certification of a settlement class operates to deprive the courts of

17  "the opportunity, present when a case is litigated, to adjust the class, informed by the

18  proceedings as they unfold."  *Staton*, 327 F.3d at 953 (quoting *Amchem Prods. Inc.*

19  *v. Windsor*, 521 U.S. 591, 620 (1997)).

20  In carrying out its responsibilities, this Court is obligated to undertake its own

21  "rigorous analysis," which includes conducting its own review of the record and

22  setting forth its own independent reasons for its certification decision. [1]  This

23  obligation to "pay careful attention" to the Rule 23 criteria exists at "every phase of

24  class actions," including the preliminary approval phase.  *Kessler v. American*

25

26  ─────────────

27  [1]  *See Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1233-34 (9th Cir. 1996); *In re Community Bank of Northern Virginia*, 418 F.3d 277, 301 (3d Cir. 2005); *Slaven v. BP America, Inc.*, 190 F.R.D. 649, 651 (C.D. Cal. 2000) ("Rigorous analysis

28  requires a court to do more than offer brief and conclusory statements establishing the Rule 23 prerequisites.").

MOTION FOR RECONSIDERATION

*Resorts Int'l Holiday Network, Ltd.,* 2007 U.S. Dist. LEXIS 84450, at *23 (N.D. Ill., Nov. 14, 2007); *see also True v. American Honda Motor Co., Inc.*, 2009 U.S. Dist. LEXIS 29814, at *9 (C.D. Cal. Mar. 25, 2009); *Karvaly v. eBay, Inc.*, 245 F.R.D. 71, 78 (E.D.N.Y. 2007).

Consequently, "this Court's usual reluctance to entertain motions for reconsideration simply does not apply in the class certification context." *Slaven*, 190 F.R.D. at 651. Indeed, even when the moving party "*ha[s]* committed a facial violation of . . . Local Rule [7-18], their motion should be considered because of the special procedural role played by a district court in supervising the maintenance of a class action." *Id.* at 652 (emphasis in original). Under that "gatekeeper" role, which is defined in Fed. R. Civ. Proc. 23(c)(1) and (d)(2), this Court has the power to alter or amend its class certification orders and, hence, a motion to reconsider "should not be denied on the ground that it impermissibly recounts old facts and law under . . . Local Rule [7-18]." *Id.*; *see also Ballard v. Equifax Check Serv., Inc.*, 186 F.R.D. 589, 593 n.6 (E.D. Cal. 1999); *Kessler,* 2007 U.S. Dist. LEXIS 84450, at *23.

In any event, even under the usual standards, reconsideration would be appropriate here. Under Local Rule 7-18(a), a party may seek reconsideration when the facts or law are materially different from those that had been presented to the Court and could not "in the exercise of reasonable diligence . . . have been known" to the moving party at the time of the Court's decision. Under Local Rule 7-18(c), reconsideration is proper upon "a manifest showing of a failure to consider material facts presented to the Court before such decision." In addition, "[r]econsideration is appropriate if the district court . . . committed clear error or the initial decision was manifestly unjust." *Neilson v. Union Bank of Cal., N.A.,* 290 F.Supp.2d 1101, 1123 (C.D.Cal. 2007*),* quoting *School Dist. No. 1J Multnomah County, Or. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993). Even if the strict requirements are not met, this Court may reconsider its own prior rulings *sua sponte* and revise them "at any time before the entry of judgment." *City of Los Angeles, Harbor Div. v. Santa*

MOTION FOR RECONSIDERATION

*Monica Baykeeper*, 254 F.3d 882, 888 (9th Cir. 2001).[2]

In these cases, reconsideration is warranted because Lieff and NCLC, at a time when they were ***still representing*** the *White* Plaintiffs, actively endeavored to deny their clients any opportunity to be heard on their motions for preliminary approval of their Settlement and conditional class certification.

***First***, without consulting the *White* Plaintiffs and despite their knowledge that two of their co-counsel were advising them to oppose their proposed Settlement, Lieff and NCLC, together with the Caddell team, proposed a schedule for preliminary approval that made no provision for the filing of opposition papers and that set the hearing date just ten days after the filing date.  Juntikka Decl. ¶ 21.

***Second***, the Lieff/Caddell team insisted that the *White* Plaintiffs and their counsel take no action and form no final opinion on the proposed settlement until (a) all the final terms had been agreed upon and communicated to the *White* Plaintiffs, which did not occur until April 16; and (b) the Lieff/Caddell team had been afforded an opportunity to speak to all the *White* Plaintiffs about those terms. *Id.* ¶¶ 12-13.

***Third***, Lieff and NCLC, acting as their counsel, admonished the *White* Plaintiffs that if they failed to heed the aforementioned instruction, it would call into question their ability to serve as class representatives.  *Id.* ¶ 25.

***Fourth***, the Lieff/Caddell team then waited until April 16 -- just one week before the filing date -- to speak with two of the *White* Plaintiffs about the settlement and never discussed its terms with the other three.  *Id.* ¶¶ 34-40.

***Fifth***, having demanded that the *White* Plaintiffs take no action until the end of the April and whilst Lieff and NCLC still ***represented*** the *White* Plaintiffs as

---

[2]  *See also Perfect 10, Inc. v. CWIE, LLC*, 2005 U.S. Dist. LEXIS 45935, at *4 (C.D. Cal. Feb. 10, 2005) (finding that, even though motion did not fit criteria set forth in Local Rule 7-18, reconsideration was appropriate in order to enable district court to "fully address" an issue which it had failed to address and which "was important to [its] earlier decision"), *aff'd in part and rev'd in part on other grounds*, 481 F.3d 751 (9th Cir. 2007).

MOTION FOR RECONSIDERATION

counsel of record,[3] the Lieff/Caddell team expressly *opposed* the *White* Plaintiffs' request for additional time to present their opposition to the proposed settlement -- falsely advising the Court that the *White* Plaintiffs had known the key terms since February 5. *Id.* ¶ 2.[4]

Despite being hampered by lack of time, the *White* Plaintiffs were on the verge of filing their objections to the Settlement, when this Court pre-termitted the hearing process by issuing its May 7 Order granting all of the Settling Plaintiffs' motions. *Id.* ¶ 49. In these circumstances, the *White* Plaintiffs did not, "in the exercise of reasonable diligence," have an opportunity to present facts and law to this Court that were materially different from those it considered in issuing its May 7 Order. *See, e.g.*, *Milton H. Greene Archives, Inc. v. CMG Worldwide, Inc.*, 568 F. Supp. 2d 1152, 1163 (C.D. Cal. 2008) (granting reconsideration where "Defendants were not given an opportunity to supplement the record before th[e original] decision was made").[5] As a result and for the reasons set forth below, the May 7 Order is clearly erroneous, manifestly unjust and should be reconsidered.

---

[3] NCLC, which has entered an appearance on behalf of the *White* Plaintiffs and which has never sought leave to withdraw from representing them, presently represents both them and plaintiff *Hernandez*. Likewise, Lieff, which filed a notice of withdrawal on April 20, 2009 (Docket #394), but no motion for leave to withdraw in accordance with Local Rule 83-2.9.2.1., remains counsel of record to the *White* Plaintiffs and, hence, is, as of this moment, continuing to violate its ethical obligations. *See Sanchez & Daniels v. Koresko & Associates*, 2006 U.S. Dist. LEXIS 84232, at *73 (N.D. Ill. Sept. 14, 2006), and Point II.A *infra*.

[4] Notably, until April 16, 2009, the parties had **not** agreed to: (1) the criteria for making a claim; (2) the formula for distributing payments; (3) the treatment of the subclasses; (4) the scope of the release (*e.g.*, whether it would encompass actual damage claims); (5) the criteria of any incentive awards; (6) the elements of the notice; and (7) the mechanism for opting out. Juntikka Decl. ¶ 2. Indeed, the Lieff/Caddell team cannot credibly contend that the *White* Plaintiffs were aware of the settlement terms when on March 23 Lieff chastised counsel for the *White* Plaintiffs for discussing it with them when terms such as "the distribution of the settlement funds" remained "a completely open subject." *Id.*

[5] Indeed, as set forth in the Declaration of Daniel Wolf, sworn to on May 21, 2009, ¶¶9-10, the notion that the *White* Plaintiffs would have been able to prepare a complete set of opposition papers in the limited period between the April 24 filing date and the May 11 hearing date is entirely unrealistic.

MOTION FOR RECONSIDERATION

## II. THE ORDERS APPOINTING CLASS COUNSEL AND CERTIFYING A SETTLEMENT CLASS SHOULD BE VACATED BECAUSE THE CONDUCT OF CLASS COUNSEL SHOWS THEY CANNOT ADEQUATELY REPRESENT THE PUTATIVE CLASSES.

As representatives of fiduciaries for absent class members, class counsel are, in a very literal sense, a "fiduciary's fiduciary" who "assume[] a particularly heavy responsibility even beyond that owed by a lawyer to an individual client." *Deadwyler v. Volkswagen of America, Inc.,* 134 F.R.D. 128, 139 (W.D.N.C. 1991), *aff'd,* 1992 U.S. App. LEXIS 14891 (4th Cir. 1992). Likewise, this Court has a corresponding responsibility "to undertake a stringent and continuing examination of the adequacy" of class counsel's representation at "all stages of the litigation." *Susman v. Lincoln American Corp.,* 561 F.2d 86, 89-90 (7th Cir. 1977).

Such a probing examination is all the more important given the temptation class actions present for counsel to subordinate the interests of class members, who often stand to gain very little on an individual basis, to their own interest in maximizing or securing what just as often stands to be a very substantial fee. *Mirfasihi v. Fleet Mortgage Corp.*, 450 F.3d 745, 748 (7th Cir. 2006) ("class actions are rife with potential conflicts of interest between class counsel and class members"). Cases involving settlement classes in particular "create especially lucrative opportunities for putative class attorneys to generate fees for themselves." *In re General Motors Corp. Pick-Up Truck Fuel Tank Products Liab. Litig.* 55 F.3d 768, 788 (3d Cir. 1995).

Given this combination of heightened risk and responsibility, the California courts, in particular, have adopted a "stringent approach to conflicts involving representation of absent class members," *Moreno v. Autozone, Inc.*, 2007 U.S. Dist. LEXIS 98250, at *20 (N.D. Cal. Dec. 5, 2007), and, hence, are "more likely" to disqualify counsel in class action settings when their conduct runs afoul of the ethical rules. *Id.* at *21; *see also Huston v. Imperial Credit Commercial Mortgage Invest. Corp.*, 179 F. Supp. 2d 1157, 1167 (C.D. Cal. 2001). Indeed, under California law, disqualification is proper when class counsel's conduct creates "even

MOTION FOR RECONSIDERATION

the appearance of divided loyalties." *Kayes v. Pacific Lumber Co.*, 51 F.3d 1449, 1465 (9th Cir.1995).  Applying these standards, the Lieff/Caddell attorneys have plainly disqualified themselves from representing the classes in this matter.

### A. The Lieff/Caddell Team's Breaches Of The Duty Of Undivided Loyalty Disqualify Them From Further Involvement In This Matter.

Under the ethical rules that govern the Lieff/Caddell team's conduct in this case, "[a] member shall not, without the informed written consent of each client . . . [r]epresent a client in a matter and at the same time in a separate matter accept as a client a person . . . whose interest in the first matter is adverse to the client in the first matter."  Rules of Professional Conduct of the State Bar of California ("Conduct Rule") Rule 3-310(C)(3).[6]  "The paradigmatic instance of such prohibited dual representation . . . occurs where the attorney represents clients whose interests are *directly* adverse *in the same litigation*."  *Flatt v. Superior Court,* 9 Cal. 4th 275, 285 n.3, 36 Cal.Rptr.2d 537 (1994) (emphasis in original).  Yet, that is precisely the violation that has occurred here.

On five separate occasions between March 9 and April 8, the *White* Plaintiffs -- first through their present counsel and then directly -- wrote Lieff and NCLC, informing them of their unanimous opposition to the settlement and instructing them to suspend their support for it or withdraw.  Juntikka Decl. ¶¶ 32-33 and Exh. J thereto.  Yet, despite being advised of their ethical obligations, Lieff and NCLC refused to withdraw and, instead, continued to take measures to advance the settlement -- culminating with their filing of it in this Court on April 24 and their subsequent resistance to their own clients' request for a reasonable period of time in which to file their opposition papers.  *Id.* ¶¶ 43-46.[7]

---

[6]  In determining whether counsel have committed ethical violations that would disqualify them from representing an individual or a class, the rules of this Court require it to apply California's ethical standards.  *Rodriguez v. West Publ'g Corp.*, 2009 U.S. App. LEXIS 8680, at *42 (9th Cir. Apr. 23, 2009); *see also In re County of Los Angeles*, 223 F.3d 990, 995 (9th Cir. 2000) ("Because we apply state law in determining matters of disqualification, we must follow the reasoned view of the state supreme court when it has spoken on the issue."); Local Rule 83-3.1.2.

[7]  In this connection, it is worth noting that between March 9, when the *White*

MOTION FOR RECONSIDERATION

By this conduct, each of the attorneys who comprise the Lieff/Caddell team has either directly violated, or knowingly participated in the violation of, the duty of undivided loyalty codified in Conduct Rule 3-310(C)(3).  For purposes of that rule, "[a] conflict of interest exists when a lawyer's duty on behalf of one client obligates the lawyer to take action prejudicial to the interests of another client, *i.e.*, 'when in behalf of one client, it is his duty to contend for that which duty to another client requires him to oppose.'"  *Moreno*, 2007 U.S. Dist. LEXIS 98250, at *12 (quoting *Flatt,* 9 Cal. 4th at 282).  Applying that standard to the present circumstances, the interests of the *White* Plaintiffs, all of whom disapprove of the settlement, are plainly adverse to those of the other named plaintiffs and any of their counsel who are supporting it.  *See, e.g.*, *Lazy Oil Co. v. Witco Corp.,* 166 F.3d 581, 589 (3d Cir. 1999) (stating that objectors "become adverse parties to the remaining class representatives"); *In re General Motors Corp. Engine Interchange Litig.,* 594 F.2d 1106, 1125 n.28 (7th Cir. 1979) (stating that an objector is "in an adversary relationship with both plaintiffs and defendants"); *Moreno*, 2007 U.S. Dist. LEXIS 98250, at *12-13.[8]

Where, as here, an attorney **simultaneously** represents clients who oppose and support a class settlement without having obtained their "informed written consent," the result under the controlling California case law is "'*per se* or automatic'

---

Plaintiffs informed them of their opposition to the settlement, and mid-April, the Lieff/Caddell team said nothing to counsel for Defendants about that opposition -- implicitly representing that they were acting with the *White* Plaintiffs' authority and consent.  Juntikka Decl. ¶¶ 21-41, 47.  Given the absence of any other plausible explanation, the inference is virtually inescapable that the reason for the Lieff/Caddell team's silence was their calculation that the negotiations might be derailed if defense counsel found out about the *White* Plaintiffs' opposition before the settlement terms were all locked in.  In other words, it appears that the Lieff/Caddel team leveraged the *White* Plaintiffs supposed support for an agreement they all opposed as a means of securing that deal.

[8]  The *White* Plaintiffs do not know when Lieff, which has never entered an appearance on behalf of Plaintiff Hernandez, purports to have become his counsel. To the extent, however, that it was not his counsel during any of the period since March 9, Lieff's conduct has been all the more egregious and deserving of disqualification because it could only have been representing itself.  *See* cases cited in note 9 *infra*.

MOTION FOR RECONSIDERATION

disqualification." *Moreno*, 2007 U.S. Dist. LEXIS 98250, at *15-16 (quoting *Flatt*, 9 Cal. 4th at 284); *see also Image Tech. Serv., Inc. v. Eastman Kodak Co.*, 136 F.3d 1354, 1358 (9th Cir. 1998). Furthermore, under the California ethical rules, an attorney who "substantially and knowingly participates" in another attorney's breach of his duty of undivided loyalty has committed no less serious a transgression and is subject to precisely the same sanction.[9]

The district court's decision in *Moreno* is squarely on point. 2007 U.S. Dist. LEXIS 98250. In that case, a law firm -- Bailey Pinney -- represented certain clients who opposed a class action settlement in one matter and, at the same time, agreed to represent other clients who approved that settlement in both that matter and another. *Id.* at *8-9. Noting that the interests of these two sets of clients were adverse to each other, the court held that "Rule 3-310(C)(3) required Bailey Pinney to obtain informed written consent to proceed with such ***concurrent representation***" and that their failure to obtain such consent automatically disqualified them from further involvement in the matter. *Id.* at *14-15 (emphasis added).

The *Moreno* decision is consistent with the opinions of every other court that has had occasion to consider the ethical responsibilities of counsel who simultaneously represent clients whose views regarding a proposed class settlement are in conflict with those of their other clients or their own. In *7-Eleven Owners for Fair Franchising v. Southland Corp.*, 85 Cal. App. 4th 1135, 102 Cal.Rptr.2d 777 (Cal.App.1st Dist. 2000), for example, the California Court of Appeal announced that, in the event of such a conflict, the "governing rule" is that withdrawal from representing those clients with whom counsel disagrees is "the appropriate course for counsel to take." *Id.* at 1159.

---

[9] *In re Calif. Canners and Growers*, 74 B.R. 336, 348 (Bankr. N.D. Cal. 1987) (finding that law firm that "participated substantially and knowingly in" another's breach of duty of loyalty "must be disqualified as a result"); *see also Fund of Funds, Ltd. v. Arthur Andersen & Co.*, 567 F.2d 225, 233 (2d Cir. 1977) (disqualifying law firm for having "aided and abetted [another firm's] breach of its duty of undivided loyalty"); Conduct Rule 1-120 ("[a] member shall not knowingly assist in, solicit, or induce any violation of these rules").

MOTION FOR RECONSIDERATION

In *Alberts v. Franklin*, 2004 Cal. LEXIS 8309 (Cal.App.4[th] Dist. Sept. 1, 2004), the California Court of Appeal addressed a situation in which counsel, who represented a named plaintiff in both a class action and in an individual lawsuit, failed to follow this governing rule.  In that case, Franklin argued that, as class counsel, he had a duty to file papers challenging as inadequate and collusive a class settlement that his client had supported over his objection.  *Id.* at *65.  While agreeing that, "as a general rule," such a duty exists, the Court of Appeal nonetheless ruled that Franklin could not fulfill it "at the expense" of one of his current clients, reasoning that:

> because he ***simultaneously represented*** both the class and the [named plaintiff] individually and owed equal duties to both, he could not properly oppose the proposed settlement in [the class action] by taking an adversarial position to [his individual client].

*Id.* at *65-66 (emphasis added).

Similarly, in *Sanchez & Daniels v. Koresko & Associates*, 2006 U.S. Dist. LEXIS 84232 (N.D. Ill. Sept. 14, 2006), counsel took the position that a settlement that his client had negotiated on its own initiative "was at odds with the interests of the uncertified class" and "attempt[ed] to justify his actions by arguing that an attorney who represents both named plaintiffs and a class may labor under an inherent conflict of interest, particularly when the named plaintiff desires to settle his own claim."  *Id. at *72.  While acknowledging that this may be so, the court nonetheless held that counsel:

> could not, consistent with his duty of loyalty, champion the class at [his client's] expense ***so long as he represented both of them***, which he did at all relevant times. To do that, counsel would have had to withdraw from one representation or the other, which required leave of Court. . . . Because he was still counsel of record, [the named plaintiff's attorney] was not relieved of his obligation to represent [his client] loyally and faithfully.

MOTION FOR RECONSIDERATION

1   *Id.* at *73 (emphasis added).[10]

2       The cases cited in the Settling Plaintiffs' memorandum in support of the

3   settlement (at p. 23-24 and n. 10) recognizing the right of class counsel to support a

4   settlement over the objections of one or more of the representative plaintiffs are

5   entirely beside the point.  Those "out-of-circuit cases" -- which "involved counsel

6   that had first represented the class, and then had sought to represent only a portion of

7   the class once various class members newly took adverse positions"—are easily

8   distinguishable from the circumstances presented here.  *Moreno*, 2007 U.S. Dist.

9   LEXIS 98250, at *20  Here, Lieff and NCLC have "***simultaneously represent[ed]***

10  ***two different sets of clients that actively have adverse interests*** . . .  The cases cited

11  . . . do not intimate, let alone hold, that such ***concurrent representation of adverse***

12  ***interests*** could be appropriate."  *Id.* at *19-20. (emphasis added).[11]

13      In short, by advancing a settlement that is contrary to the express wishes of

14  the *White* Plaintiffs at a time when they were still representing them as counsel of

15  record in this matter, Lieff and NCLC have acted in a manner "inconsistent with

16  [their] obligation of loyalty and faithfulness to [those] client[s]" and, hence, have

17  "committed egregious misconduct."  *Sanchez*, 2006 U.S. Dist. LEXIS 84232, at *78.

18  The behavior of the Caddell team, who have all along known of the *White* Plaintiffs'

19  opposition to the settlement and acted in concert with Lieff and NCLC, is equally

20  egregious.  *See* cases cited at note 8, *supra*.

21      These violations of the ethical rules leave this Court with no choice.  Under

22  the controlling California law, "the Court is required to disqualify [the Lieff/Caddell

---

23  [10]  *See also Lazy Oil,* 166 F.3d at 590 (noting that once certain class representatives

24  object to a settlement negotiated on their behalf, "class counsel may continue to
    represent *the remaining class representatives* and the class") (emphasis added); *Heit*

25  *v. Van Ochten*, 126 F. Supp. 2d 487, 494 (W.D. Mich. 2001) ("Recognizing Plaintiff
    counsel's duty to the class, it appears she cannot represent [the named plaintiff]

26  because he objects to the Proposed Settlement, which Plaintiff's counsel argues is in
    the class's interest.").

27  [11]  The cases cited in the Settling Plaintiffs' memorandum are also inapposite
    because in each of those cases, counsel had been specifically appointed to represent

28  a *certified class*, whereas here, Lieff and NCLC were purporting to represent a
    *proposed class*.

- 12 -                    MOTION FOR RECONSIDERATION

team] from further representation in this matter." *Moreno*, 2007 U.S. Dist. LEXIS 98250, at *17; *see also Flatt*, 9 Cal. 4th at 286.[12]

### B. Counsel For The Settling Plaintiffs' Unethical Conduct In Regard To Named Plaintiff Incentive Awards Disqualifies Them From Representing The Class.

Under the Settlement, counsel for the Settling Plaintiffs are obligated to seek incentive awards of up to $5,000 for "each of the Named Plaintiffs serving as class representatives *in support of* the Settlement." *See* Settlement Agreement, ¶ 7.5 at p. 34-35, Exhibit 1 to Declaration of Michael Sobol (Docket No. 384). The Settlement, however, makes no provision for the payment of incentive awards for the named Plaintiffs who *do not support* the Settlement. The creation of this arbitrary distinction is a predictable manifestation of Lieff's and NCLC's conflicting loyalties. In addition, it is a separate and distinct ethical violation that compromises the independence of all the class representatives who supported the Settlement and compels the disqualification of the entire Settling legal team.

Under the law of this Circuit, a court may award incentive fees to named plaintiffs in order "to compensate [them] for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez*, 2009 U.S. App. LEXIS 8680, at *14-15. As no one took any financial or reputational risk in bringing this action, any incentive award to the named Plaintiffs in these matters must be tethered to compensation for work they have done and, perhaps, their willingness to act as private attorneys general.

---

[12] Independent of their violations of Conduct Rule 3-310(C)(3), Lieff and NCLC, again aided and abetted by the Caddell team, have violated at least two other ethical rules. First, they have ignored the *White* Plaintiffs' demand that that they turn over all terms sheets and draft settlement papers (Juntikka Decl. ¶ 45) in violation of Conduct Rule 3-700(D)(1)'s command that withdrawing counsel "promptly release to the client, at the request of the client, all client papers." Second, in opposing the *White* Plaintiffs' application for a postponement of the hearing date on their preliminary approval motion, they have violated Conduct Rule 3-700(A)(2), which requires class counsel "to take reasonable steps to avoid reasonably foreseeable prejudice to the rights of the client," including "allowing time for employment of other counsel."

In these two respects, the *White* Plaintiffs are no less deserving of incentive payments than are the Settling Plaintiffs.  Yet, with their judgment clouded by their conflicting loyalties, Lieff and NCLC, in concert with the Caddell team, made support for the Settlement an indispensable condition to the receipt of such payments, thereby, denying any opportunity for compensation to their own clients.  This position, which is devoid of any support in logic or law,[13] is directly contrary to the interests of the *White* Plaintiffs -- interests that their counsel are duty-bound to protect.

In denying incentive awards to any of their named plaintiff clients who refused to support their proposed settlement, Lieff and NCLC have, however, done much worse than violate their fiduciary responsibilities to those clients; they, along with the other counsel for the Settling Plaintiffs, have created a disabling conflict of interest between the Settling Plaintiffs and themselves, on the one hand, and the newly certified classes on the other.

Even under ordinary circumstances, incentive awards carry with them an inherent potential for putting "the class representative[s] in a conflict with the class," *Rodriguez*, 2009 U.S. App. LEXIS 8680, at \*19, for when they "are provided with special 'incentives' in the settlement agreement, they may be more concerned with maximizing those incentives than with judging the adequacy of the settlement as it applies to class members at large."  *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003); *see also Sheppard v. Consolidated Edison Co.*, 2000 U.S. Dist. LEXIS

---

[13] The case law makes clear that named plaintiffs and their counsel who end up objecting to a class settlement are no less entitled to fees for their efforts than their counterparts who support it.  *See, e.g., Elliot v. Sperry Rand Corp.*, 680 F.2d 1225, 1227 (8th Cir. 1982) (holding that named plaintiffs who became dissenters were entitled to "an appropriate award of attorneys' fees . . . for services in proceedings leading to approval of the settlement"); *Ace Heating & Plumbing Co. v. Crane Co.*, 453 F.2d 30, 35 (3d Cir. 1971) (noting that "[i]t would chill challenges to the fairness" of class settlements if bringing such challenges were to "result[] in forfeiture of the right to be reimbursed for compensable legal services"); *Lazy Oil Co. v. Witco Corp.*, 95 F. Supp. 2d 290, 324-25 (W.D. Pa. 1997) (granting incentive awards to class representatives who ended up objecting to settlement for their pre-objection efforts on behalf of the class); *Martin v. Foster Wheeler Energy Corp.*, 2008 U.S. Dist. LEXIS 25712, at \*23-24 (M.D. Pa. Mar. 31, 2008) (same).

20629, at *19 (E.D.N.Y. Sept. 11, 2000) ("class representatives are naturally more inclined to accept a settlement that is not in the best interests of the absent class members they represent if the named plaintiffs are permitted to receive an award in addition to their share of the recovery").  As a result, "applications for incentive awards are scrutinized carefully by courts that sensibly fear that incentive awards may lead named plaintiffs . . . to compromise the interest of the class for personal gain."  *Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003).

In tethering the incentive fees in these cases to a named Plaintiffs' willingness to back their settlement position, counsel for the Settling Plaintiffs have gratuitously maximized the prospects for such a compromising of interest here.  Indeed, exploiting that conflict, one of the Lieff/Caddell attorneys called Plaintiff Lovell the day before the Settlement was filed, saying that he hoped Lovell would change his mind because he did not want Lovell to "jeopardize" his last chance to get that award.  Lovell Decl. ¶ 14.  Such threats by class counsel "to not request incentive payments" for named plaintiffs "if they did not agree to [a] Settlement" have been properly characterized by this Court as "an actual manifestation of conflicting interest."  *Rodriguez v. West Publishing Corp.*, 2007 U.S. Dist. LEXIS 74767, at *79 (C.D. Cal. Sept. 10, 2007).  As unseemly and improper as they would be in any context, class counsels' threats are particularly dangerous in this one where the proposed incentive awards are being dangled in front of named Plaintiffs of limited financial means and are hundreds of times higher than the amounts they would have been entitled to had they been treated like other class members.  *See* Point III.B *infra*.

As the Ninth Circuit's recent opinion in *Rodriguez* makes clear, any attorney who would participate in such an improper incentive fee arrangement is unfit to serve as class counsel.  In that case, named plaintiffs entered into retainer agreements in which their counsel promised to seek incentive awards that would tie their "compensation -- in advance -- to a sliding scale based on the amount

recovered" until that compensation capped out at $75,000. *Rodriguez*, 2009 U.S. App. LEXIS 8680, at *17 (9th Cir. Apr. 23, 2009). In so doing, "the incentive agreements disjoined the contingency financial interests of the contracting representatives from the class" since, once the threshold for the cap was reached, the named plaintiffs would have had no incentive to take the case to trial. *Id.* at *17-18. Thus, the incentive agreements created unacceptable "conflicts among the [named plaintiffs] (later certified as class representatives), their counsel (later certified as class counsel), and the rest of the class," which, according to the Ninth Circuit, implicated both the ethical rules prohibiting "'[s]imultaneous representation of clients with conflicting interests'" and class counsel's request for an award of attorney's fees. *Id.* at *42-45.[14]

Like the incentive agreements in *Rodriguez*, the conditioning of incentive awards on the named Plaintiffs' endorsement of the proposed settlement in this case "created an unacceptable disconnect between the interests of the [endorsing] representatives and class counsel, on the one hand, and members of the class on the other." 2009 U.S. App. LEXIS 8680, at *20. And, as in the case of the *Rodriguez* incentive agreements, "the conflict of interest inhering" in the conditioning of incentive awards on the named Plaintiffs' support for the settlement was neither one that "just happened" nor one "that developed beyond the control or perception of class counsel." *Id.* at *43. To the contrary, it was a direct byproduct of their own self-serving decision to turn an incentive award that is supposed to compensate named plaintiffs for their time into an ***incentive*** to ***rubber-stamp*** their decisions regarding settlement.[15]

---

[14] These improprieties did not, however, "require the district court to reject the settlement . . . because two non-conflicted class representatives with non-conflicted counsel participated" in the negotiations. 2009 U.S. App. LEXIS 8680, at *44-45.

[15] During the meet and confer conference on this motion, counsel for the Settling Plaintiffs defended their decision to offer incentive payments only to those named plaintiffs who supported the Settlement on the ground that such payments are available only to those who are appointed class representatives. There are two fallacies in this argument. First, there was nothing to prevent counsel for the Settling Plaintiffs from asking this Court to make the *White* Plaintiffs class

MOTION FOR RECONSIDERATION

In this respect, the improprieties of counsel for the Settling Plaintiffs in regard
to named Plaintiff incentive awards are far more egregious than those that were at
issue in *Rodriguez*.  By holding their clients' entitlement to a $5,000 incentive award
hostage to their support for a settlement that would pay them up to $17.25 million in
legal fees, counsel for the Settling Plaintiffs have robbed the named Plaintiffs of the
independence they need to effectively monitor the conduct of class counsel when
such monitoring is needed most.[16]  As one district court has observed in the face of a
much less conspicuous effort on the part of class counsel to insulate a settlement
from the scrutiny of their clients, such behavior "lend[s] credence to the often heard
charge from critics of the class action device that the real parties in interest on the
plaintiffs' side are the lawyers rather than their prospective clients." *Deadwyler,*
134 F.R.D. at 140.  In short, by turning their clients into little more than hired help
whose pay is contingent on their willingness to serve as their "yes men" and who
can be discarded at their whim, counsel for the Settling Plaintiffs have "effectively
made [themselves] the class representative" and, thereby, rendered themselves unfit
to serve as class counsel.  *In re California Microdevices*, 168 F.R.D. at 274 (holding
that Lieff could not be appointed class counsel when it had "operat[ed] with little or

representatives.  Second, named plaintiffs are routinely awarded incentive payments
whether they are appointed class representatives or not.  *See, e.g., Romero v.
Producers Dairy Foods, Inc.*, 2007 U.S. Dist. LEXIS 86270, at *11 (E.D. Cal. Nov.
13, 2007) (awarding incentive payments to non-class representatives who sat for
depositions); *Nilsen v. York County*, 382 F. Supp.2d 206, 215 (D. Me. 2005)
(awarding incentive payments to each class member who was deposed); *Camp v.
Progressive Corp.*, 2004 U.S. Dist. LEXIS 19172 (E.D. La., Sept. 23, 2004) ("[t]he
Class Representatives and some other plaintiffs will receive incentive payments for
their participation in this litigation");  *Hughes v. Microsoft Corp.*, 2001 U.S. Dist.
LEXIS 5976, at*36-38 (W.D. Wash. Mar. 26, 2001) (granting incentive awards to
10 named plaintiffs in an uncertified class action that was subsumed in another class
action that settled); *In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d 1029, 1034-
37 (S.D. Ohio 2001) (ordering incentive awards for class representatives and other
named plaintiffs who "assisted in the prosecution of this litigation"); *Day v. NLO,
Inc.*, 1995 U.S. Dist. LEXIS 22316, at *9 (S.D. Ohio May 19, 1995) (same).

[16] *See, e.g., Olden v. Gardner*, 2008 U.S. App. LEXIS 20092, at *30-31 (6th Cir.
Sept. 18, 2008) ("[o]versight from the class representatives is particularly important
in the context of settlements"); *In re California Microdevices Sec. Litig.*, 168 F.R.D.
257, 268 (N.D. Cal. 1996) ("[f]air and adequate' representation requires that the
class representative be both willing and able to monitor closely the conduct of class
counsel during settlement negotiations").

1    no monitoring from the putative class representatives").[17]

2    **C.  Counsel For The Settling Plaintiffs' Support For Grossly Inadequate
       Settlement Terms In Which They Have Subordinated The Interests Of
3      The Class To Their Own Financial Interests Establishes Their
       Inadequacy To Serve As Class Counsel.**

4          Ethical issues aside, the ultimate barometer of the adequacy of class counsel

5    lies "in the settlement terms" themselves, for it is there that "the adequacy of their

6    representation is either vindicated or found wanting."  *In re Corrugated Container*

7    *Antitrust Litig.*, 643 F.2d 195, 212 (5th Cir. 1981).  Counsel for the *Pike* Plaintiffs

8    earlier negotiated settlement terms in the Equifax and Trans Union cases that this

9    Court found to contain "serious structural defects" and that "deliver[ed] grossly

10   insufficient relief" that "pales in comparison to Plaintiffs' potential recovery through

11   litigation."  *Acosta*, 243 F.R.D. at 400.  In addition, this Court found that those terms

12   were the outcome of discovery efforts that were "deficient" in "myriad areas" and a

13   process that was infected by counsel for the *Pike* Plaintiffs having improperly

14   negotiated their attorneys' fees simultaneously with class relief.  *Id.* at 397.   In other

15   words, the *Pike* Plaintiffs' counsel, who have filed no case against Experian, have

16   proven themselves unqualified to represent the interests of the putative classes in the

17   cases against Trans Union and Equifax.  *See, e.g.*, *Molski v. Gleich*, 318 F.3d 937,

18   956 (9th Cir. Cal.  2003) (ruling that district court abused its discretion in finding

19   that class counsel "fairly and adequately protect[ed] the interests of the class" where

20   they agreed to settlement that "waived practically all of the class members' claims

21   without compensation" and "allowed the defendants to escape with little penalty").

22         Likewise, in these cases, the Lieff/Caddell team has negotiated a settlement

23

24   ───────────────
     [17]  *See, e.g.*, *In re Chiron Corp. Secs. Litig.*, 2007 U.S. Dist. LEXIS 91140, at *46
25   (N.D. Cal. Nov. 30, 2007) ("When class counsel are not effectively monitored by the
     class representative, the result is indistinguishable from the situation in which an
     attorney serves as both class counsel and class representative."); *In re Ocean Bank*,
26   2007 U.S. Dist. LEXIS 29443, at *20 (N.D. Ill. Apr. 9, 2007) ("if the class
     representative requirement is to have any meaning at all . . . a class representative
27   may not completely cede all control over settlement to class counsel"); *Apple
     Computer, Inc. v. Superior Court*, 126 Cal.App.4th 1253, 1267, 24 Cal.Rptr.3d 818
28   (Cal. App.2nd Dist. 2005) (citing numerous cases for proposition that
     "disqualification is required where class counsel serves as the class representative").

- 18 -                                  MOTION FOR RECONSIDERATION

that would pay an average of a penny on each dollar of defendants' potential exposure in these cases.  *See White* Plaintiffs' Memorandum of Points and Authorities in Support of Their Motion for Reconsideration and To Vacate the Oder Granting Preliminary Approval to Proposed Class Action ("Recon. Of Class Action Memo") at 16.  Their agreement to such a settlement reflects an unwillingness to take risk, which, while it serves the interests of Defendants who will obtain a full and final release from liability and the interests of class counsel, who stand to receive $17.25 million in fees, does not serve the interests of the class members they are obligated to protect.  In other words, the Lieff/Caddell team has subordinated the interests of the putative classes to their own desire to lock in their fees -- conduct that violates their fiduciary responsibilities and renders them unfit to serve as class counsel.

## III.  THE ORDER CONDITIONALLY CERTIFYING A SETTLEMENT CLASS SHOULD BE VACATED BECAUSE THE CONDUCT OF THE SETTLING PLAINTIFFS SHOWS THEY ARE NOT ADEQUATE CLASS REPRESENTATIVES.

### A.  The *Pike* Plaintiffs' Support For The Woefully Inadequate *Acosta/Pike* Settlement Demonstrates Their Inadequacy.

Just as the critical yardstick for measuring class counsel's adequacy is found in the settlement terms themselves, that is also the case in evaluating the adequacy of class representatives.  *See, e.g.*, *In re Corrugated Container*, 643 F.2d at 212; *In re Calif. Microdevices*, 168 F.R.D. at 261 ("the terms of a settlement may be so defective that they themselves provide compelling evidence that the class representative did not 'fairly and adequately' protect the interests of the class").  Inasmuch as each of the *Pike* Plaintiffs have already supported a settlement that this Court had described as having "serious structural defects" and as "deliver[ing] grossly insufficient relief," they have demonstrated that they cannot be counted on to safeguard the interests of the classes.

MOTION FOR RECONSIDERATION

**B. The *Pike/Hernandez* Plaintiffs' Decision To Abandon Large Segments Of The Putative Classes Whose Interests Do Not Align With Their Own Demonstrates Their Inadequacy.**

In their role as putative class representatives, the Settling Plaintiffs are duty-bound to protect the interests of the classes as a whole—not just a particular segment of those classes.  The obligation to protect the entirety of the class in circumstances in which the interests of segments of that class may diverge was highlighted by the Supreme Court  in its landmark decision in *Amchem*, wherein it held that a district court may not approve a settlement unless one or more of the named plaintiffs belong to "each distinct subclass" and "understand that their role is to represent solely the members" of those subclasses.  521 U.S. at 627 (citations omitted).  Where, as here, a class settlement is tendered along with a motion for class certification, "*Amchem* instructs" that the district courts be especially alert to the possibility of intra-class conflicts and "give heightened scrutiny to cases in which class members may have claims of different strength."  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).

In these cases, the *Pike* Plaintiffs have already demonstrated their willingness to jettison the interests of the great bulk of the class whose interests do not align perfectly with their own.  They did that earlier in this case when they supported a settlement, which: (1) denied even the opportunity for economic relief to a huge subclass in which they did not belong; (2) insulated Trans Union and Equifax from liability for certain reporting errors that appeared on the credit reports of millions of their fellow class members, but not their own; and (3) memorialized their intention to abandon the claims of all class members other than those who, like themselves, resided in California in the event the settlement was not approved.  *Acosta*, 243 F.R.D. at 400.  If, as this Court has already ruled, such conduct prevented the *Pike* Plaintiffs from satisfying the adequacy of representation requirement when they sought approval of the *Acosta/Pike* settlement, so too must it prevent them from satisfying that requirement here.  *Id.*

MOTION FOR RECONSIDERATION

1   Like the *Pike* Plaintiffs before him, Plaintiff Hernandez has here demonstrated

2   that he also cannot be counted upon to represent large swaths of the putative classes

3   with whose interests he is not aligned.  This is most graphically illustrated by his

4   complete abandonment of the reinvestigation subclasses in which Hernandez does

5   not belong.  Under the Settlement, the members of this subclass are all required to

6   waive their separate reinvestigation claims in exchange for literally zero relief.

7   Plainly, Hernandez and, for that matter the *Pike* Plaintiffs, have proven themselves

8   to be inadequate representatives of that subclass.

9   The Settling Plaintiffs' interests are also not aligned with those class members

10  who do not know that Defendants issued credit reports about them that contained

11  inaccurate information regarding the status of their pre-bankruptcy debts.  As set

12  forth in the *White* Plaintiffs' Points and Authorities in Support of Their Motion For

13  Reconsideration and To Vacate the Order Granting Preliminary Approval, the large

14  majority of class members never saw those reports, are unaware of any errors within

15  them and have no ability to discover their existence.  Yet, under the Settlement, they

16  will receive no compensation because it requires them to attest that their credit

17  reports contain such errors.  These circumstances put these cases on all fours with

18  *Amchem* in which the Supreme Court held that neither the named plaintiffs, all of

19  whose asbestos-related injuries had already manifested themselves, nor their counsel

20  could adequately represent the interests of future claimants, who had been exposed

21  to asbestos, but had no way of knowing whether they had been injured as a result.

22  521 U.S. at 627.  Similarly, in these cases, the Settling Plaintiffs, all of whom are

23  aware of the errors in their credit reports, cannot properly represent the interests of

24  class members who have no such awareness -- something which is readily apparent

25  from the fact that the Settling Plaintiffs have structured their settlement in a manner

26  designed to ensure that those class members receive nothing.

27  Finally, Plaintiff Hernandez's interests are also not aligned with those class

28  members who, during the liability period, were issued credit reports that showed:

- 21 -                    MOTION FOR RECONSIDERATION

(a) one or more of their pre-bankruptcy judgments as still outstanding, or (b) one or more of their pre-bankruptcy debts as due and owing, which, following the submission of a consumer dispute, were subsequently reported as having been "included in bankruptcy."  As set forth in the *White* Plaintiffs' Recon. Of Class Action Memo, at 23-24, these subclasses present none of the supposed manageability problems that the Settling Plaintiffs cite as substantial justification for their decision to settle these actions for a penny on the dollar.  If such manageability problems really do exist, then by definition, the claims of these subclass members are worth considerably more than those of other class members.  Yet, as Plaintiff Hernandez is not one of them and as the *Pike* Plaintiffs have shown themselves unable or unwilling to protect anyone's interests other than their own, the members of these subclasses have had no one to champion their cause.  Thus, under *Amchem*, the proposed Settlement cannot stand.

### C. The Settlement's Incentive Awards Provision Creates A Disabling Conflict Of Interest Between The *Pike/Hernandez* Plaintiffs And The Remainder Of The Class.

For the same reasons that the provision in the Settlement conditioning incentive awards to the named Plaintiffs on their supporting that Settlement renders counsel for the Settling Plaintiffs unfit to represent the class, so too does that provision render the Settling Plaintiffs themselves inadequate to fill that role.  In this connection, it is worth noting that the incentive awards provided the Settling Plaintiffs with more than ample temptation "'to accept [a] sub-optimal settlement[] at the expense of the class members whose interests they are appointed to guard.'" *Staton*, 327 F.3d at 975.   The $5,000 award for which each of the Settling Plaintiffs is eligible under the monetary relief settlement is on top of an additional $2,500 incentive award that is payable to them under the injunctive relief settlement.[18]   The

---

[18]   In providing for payment of this $2,500 award out of their attorneys' fees in their injunctive relief fee agreement, counsel for the *Settling* Plaintiffs violated yet another California ethical rule—the ban on fee splitting codified in Conduct Rule 1-320. *Rodriguez*, 2007 U.S. Dist. LEXIS 74767, at *68; s*ee also Campbell v. Fireside Thrift Co*., 2004 Cal.App. Unpub. LEXIS 216, at *36-38 (2004).

aggregate amount is a staggering *375* times more than their counsel have estimated they would be eligible to receive if they submitted a claim seeking a "convenience" award and about *2,500* times the amount that the average class member would receive if they all submitted claims.

By itself, this disparity strongly suggests that the Settling Plaintiffs (and their counsel) cannot be "good champions" for the class. *Murray v. GMAC Mortgage Corp.*, 434 F.3d 948, 952 (7th Cir. 2006) (rejecting as "untenable" settlement in which "class members get relief worth about 1% of the minimum statutory award," while the named plaintiff "accept[s] 300% of the statutory maximum").[19]  When combined, however, with the fact that their counsel made their eligibility for this award contingent on their supporting the settlement, it looks too much like the Settling Plaintiffs were "more concerned with maximizing incentives" for themselves "than with judging the adequacy the settlement as it applies to class members at large." *Staton*, 327 F.3d at 977.  That is the antithesis of adequate representation.

## CONCLUSION

For the reasons set forth herein, the *White* Plaintiffs respectfully submit that the Court should reconsider and vacate its orders granting conditional certification of the settlement classes and appointing class counsel.

---

[19]  While some courts have approved incentive awards in the $5,000 range, such awards are generally justified only when they are proportionate to the awards given absent class members or "when the class representatives expend considerable time and effort on the case." *Castillo v. General Motors Corp.*, 2008 U.S. Dist. LEXIS 82337, at *39  (E.D. Cal. Sept. Sept. 8, 2008); *see also Alberto*, 252 F.R.D. at 669 (noting that [i]f every member of the class opted into the settlement, each claimant would receive an average of only $ 24.17 while the named plaintiff would receive more than $ 5,000" and expressing "reticence" to approve settlement "[g]iven this explicit disparity and the utter lack of evidence demonstrating the quality of plaintiff's representative service"); *Ybarrondo v. NCO Fin. Sys., Inc.,* 2008 U.S. Dist. LEXIS 4353 (S.D. Cal. Jan. 18, 2008) (refusing to approve class settlement until parties "address the issue of the named Plaintiff's proposed $2,000 cash award, which appears disproportionately large in comparison to the class members' $23 cash award" by showing "how the incentive payment was earned").

MOTION FOR RECONSIDERATION

1

2

3

DATED:  May 21, 2009

BOIES, SCHILLER & FLEXNER LLP
David Boies
George F. Carpinello
Adam R. Shaw

4

5

CHARLES JUNTIKKA & ASSOCIATES LLP
Charles Juntikka

6

DANIEL WOLF LAW OFFICES
Daniel Wolf

7

8

BROWNE WOODS GEORGE LLP
David L. Zifkin (SBN 232845)

9

10

By /s/ David L. Zifkin
_____
David L. Zifkin

11

12

Attorneys for Plaintiffs Robert Radcliffe, Chester Carter, Maria Falcon, Clifton C. Seale, III, Arnold E. Lovell, and all others similarly situated

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION FOR RECONSIDERATION