O

UNITED  STATES  DISTRICT  COURT

FOR  THE  CENTRAL  DISTRICT  OF  CALIFORNIA

| | | |
|---|---|---|
| TERRI N. WHITE, et al. | ) | CASE NO. SACV 05-1070 DOC (MLGx) |
| Plaintiffs, | ) | **AMENDED O R D E R DENYING SETTLING PLAINTIFFS' MOTION FOR A PROTECTIVE ORDER; DENYING WHITE PLAINTIFFS' MOTION TO PRODUCE PAPERS AND PROPERTY; GRANTING IN PART AND DENYING IN PART WHITE PLAINTIFFS' MOTION TO CONTACT CLASS MEMBERS** |
| v. | ) | |
| EXPERIAN INFORMATION SOLUTIONS, INC., et al., | ) | |
| Defendants. | ) | |

_____

Before the Court are Settling Plaintiffs' Motion for a Protective Order Regarding Objecting Plaintiffs' Deposition of Jose Hernandez ("Motion for Protective Order"); the *White* Plaintiffs' Motion for Former Counsel to Produce Clients' Paper and Property ("Rule 3-700 Motion"); and Charles Juntikka and *White* Plaintiffs' Motion to Allow Counsel to Contact Members of the Proposed Class ("Motion to Contact Class Members"). After considering the moving, opposing and replying papers, as well as the parties' oral argument, and for the reasons that follow, the Court hereby DENIES Objecting Plaintiffs' Motion for a Protective Order; DENIES the *White* Plaintiffs' Rule 3-700 Motion; and GRANTS in part and DENIES in part the

1    *White* Plaintiffs' Motion to Contact Class Members.

2    **I.    BACKGROUND**

3          These actions involve claims against consumer credit reporting agencies based on the

4    procedures by which those agencies produce credit reports for individuals with debts discharged

5    through Chapter 7 bankruptcy proceedings.  Defendants Experian, Trans Union, and Equifax

6    ("Defendants") are the nation's three major repositories for consumer credit information.  Under

7    the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681a(f), they are classified as "consumer

8    credit reporting agenc[ies]," meaning that they engage in the business of assembling, evaluating,

9    and disbursing credit information on consumers for the purpose of furnishing consumer credit

10   reports, as defined in 15 U.S.C. § 1681a(d), to third parties.  The FCRA governs the conduct of

11   consumer credit reporting agencies in an effort to preserve the integrity of the consumer banking

12   system and to protect the rights of consumers to fairness and accuracy in the reporting of their

13   credit information.  Among the obligations the FCRA imposes on credit reporting agencies is the

14   requirement, for each report they prepare, to follow "reasonable procedures to assure maximum

15   possible accuracy of the information concerning the individual about whom the report relates."

16   15 U.S.C. § 1681e(b).

17         Plaintiffs are individuals who had debts discharged through a Chapter 7 bankruptcy.

18   Each of them sought a "fresh start" after their respective bankruptcy discharges, but regarding

19   each, Experian, Trans Union, or Equifax prepared credit reports inaccurately describing

20   discharged debts as "charged off" or with some other derogatory notation.  When preparing

21   credit reports for individuals who have been the beneficiaries of Chapter 7 discharge orders,

22   Defendants rely solely on a debtor's creditors to affirmatively update the status of the accounts

23   they maintain. Plaintiffs brought these actions challenging Defendants' reliance on creditors to

24   voluntarily update the status of discharged debts, charging that this practice constitutes a

25   negligent and a willful failure to employ reasonable procedures to ensure the maximum possible

26   accuracy of credit reports, in violation of the FCRA, 15 U.S.C. § 1681e(b).  They also contend

27   that Defendants have negligently and willfully failed to conduct reasonable reinvestigations of

28   disputed credit information, as the FCRA requires in 15 U.S.C. § 1681i(a).  These causes of

1   action include allegations that Defendants have committed violations of California's Consumer

2   Credit Reporting Agencies Act ("CCRAA"), Cal. Civ. Code §§ 1785.14(b), 1785.16, a

3   California state analog to the FCRA, and California's Unfair Competition Law ("UCL"), Cal.

4   Bus. & Prof. Code §§ 17200, *et seq.*, based on these same practices.

5       The lead case was filed in federal court on November 2, 2005 on behalf of the plaintiffs in

6   that action and all other individuals for whom Experian prepared a consumer report, on or after

7   March 15, 2002, in which it did not report one or more tradeline accounts or debts as discharged

8   despite the fact that such accounts or debts had been discharged through a Chapter 7 bankruptcy

9   proceeding.  The current version of the plaintiffs' Complaint is the Second Amended Complaint

10  ("SAC"), which the plaintiffs filed pursuant to stipulation of the parties on August 11, 2006.

11      The related and consolidated cases raise identical claims on behalf of the same putative

12  class members against Experian, Trans Union, and Equifax.  The White/Hernandez plaintiffs

13  consist of Robert Radcliffe, Chester Carter, Maria Falcon, Arnold Lovell, Jr., Clifton C. Seale,

14  III, and Jose Hernandez.  The Acosta plaintiffs consist of Robert Randall and Bertram Robison.

15  Finally, Kathryn L. Pike is the representative Pike plaintiff.

16      On August 19, 2008, a settlement agreement between the parties as to Plaintiffs' claims

17  for injunctive relief was approved by the Court.  Plaintiffs' claims for damages remained to be

18  adjudicated.  On January 26, 2009, the Court held oral argument regarding class certification.

19  While the Court issued a tentative denying certification, it deferred ruling on the motion to

20  certify the class pending the completion of a settlement conference, and the motion was later

21  vacated.  The parties reached a preliminary settlement regarding monetary relief in February

22  2009.  At that point, Counsel Juntikka and Wolf announced that they planned to object to the

23  monetary relief settlement on behalf of the *White* Plaintiffs (Robert Radcliffe, Chester Carter,

24  Maria Falcon, Clifton C.Seale III, and Arnold Lovell).

25      On April 24, 2009, the parties presented to the Court a motion for preliminary approval of

26  a settlement of monetary relief.  On May 7, 2009, the Court granted that motion for preliminary

27  approval and conditionally certified the class.  On May 21, 2009, the *White* Plaintiffs moved for

28  reconsideration of the Court's grant on the basis that Settling Plaintiffs' counsel had engaged in

1  misconduct, but the Court denied that motion.  The final approval for the settlement is scheduled

2  for January 11, 2010.

3      The parties have now filed three motions that pertain to the *White* Plaintiffs' pursuit of

4  evidence for their objection to the settlement at the Final Fairness Hearing: the Motion for

5  Protective Order, Rule 3-700 Motion; and Motion to Contact Class Members.

6  **II.    DISCUSSION**

7      **A.    Request for Protective Order for Deposition of Jose Hernandez**

8      This is a discovery dispute at the settlement approval stage between the Settling Plaintiffs

9  and the *White* Plaintiffs.  The *White* Plaintiffs seek to depose class representative Hernandez

10  regarding: (1) his personal knowledge of and reasons for supporting the settlement; and (2) his

11  understanding of the incentive award and his entitlement thereto.  W. Pl.'s Opp. at 6.  The *White*

12  Plaintiffs state that discovery is necessary because the representative has "abandoned segments

13  of the class" and Plaintiffs must investigate Mr. Hernandez's continuing adequacy as class

14  representative.  *Id.*  They say that they will not ask about the negotiation of the settlement and

15  will not seek any information about earlier events or privileged information.  *Id.* at 7.

16      Settling Plaintiffs contend that Counsel Wolf and Juntikka had a formal attorney-client

17  relationship with Mr. Hernandez because counsel in the *White* and *Hernandez* matters entered

18  into a Joint Prosecution Agreement and have been conducting the litigation as co-counsel

19  representing all of the *White/Hernandez* Plaintiffs.  S. Pl.'s Reply at 2.  They are concerned that

20  any questions asked by Counsel Wolf or Juntikka could be formulated using information learned

21  through the attorney-client relationship.  However, Settling Plaintiffs have not convinced the

22  Court that it should be concerned that Counsel Juntikka or Wolf would use privileged

23  information in the course of their questioning.

24      The *White* Plaintiffs' stated purpose for the deposition is to challenge the continuing

25  adequacy of Mr. Hernandez as lead plaintiff.  The adequacy of a class representative's

26  representation is at issue at all states of a class action.  *Christman v. Bruavin Realty Advisors,*

27  *Inc.*, 191 F.R.D. 142, 146 (N.D. Ill. 1999) (quoting *Susman v. Lincoln American Corp.*, 561 F.2d

28  86, 89-90 (7th Cir.1977).  In this case, the *White* Plaintiffs have indicated that they believe Mr.

1  Hernandez's representation is no longer adequate due to a breakdown during settlement
2  negotiations.  The Court finds it appropriate for the *White* Plaintiffs to conduct a deposition that
3  is constrained to the two issues set forth by the *White* Plaintiffs: (1) his personal knowledge of
4  and reasons for supporting the settlement; and (2) his understanding of the incentive award and
5  his entitlement thereto.

6  **B.  White Plaintiffs' Motion for Former Counsel to Produce Clients' Paper and**
7  **Property**

8  The *White* Plaintiffs are requesting that the Settling Plaintiffs' attorneys ("Settlement
9  Class Counsel") produce all the internal email exchanged between Settlement Class Counsel
10  during settlement negotiations pursuant to Rule 3-700(D) of the California Rules of Professional
11  Conduct ("Rule 3-700(D)").  Specifically, there are requesting all email or other correspondence
12  between February 1, 2009 and April 29, 2009 to or from each other or any of the other counsel
13  with whom they have been jointly prosecuting the action.[1]  The Court ordered withdrawal of
14  counsel effective April 29, 2009.  The *White* Plaintiffs state that internal emails are "relevant to
15  the *White* Plaintiffs' argument that their Former Counsel were not protecting their clients'
16  interests and in fact were acting adversely to them" and any documents relating to scheduling of
17  the preliminary approval hearing "are reasonably necessary because they are relevant to the
18  *White* Plaintiffs' contention that their former counsel were working to deny their own clients an
19  opportunity to present objections to the settlement at the preliminary approval stage by providing
20  virtually no time for the filing of objections."  Mot. at 8-9.

21  Rule 3-700(D) sets forth the ethical contours of attorneys' responsibilities to hand over
22  papers to former clients.  Rule 3-700(D) provides:

23  A member whose employment has terminated shall: (1)
24  Subject to any protective order or non-disclosure agreement,

_____

26  [1]     At oral argument, the *White* Plaintiffs stated that they recently learned they
27  are also missing some documents exchanged between the Settling Plaintiffs and
Defendants.  Settling Plaintiffs represented that they had produced all such emails. As this
28  claim was not briefed nor the subject of a motion, it will not be addressed here.

promptly release to the client, at the request of the client, all the
client papers and property.  "Client papers and property" includes
correspondence, pleadings, deposition transcripts, exhibits, physical
evidence, expert's reports, and other items reasonably necessary to
the client's representation, whether the client has paid for them or
not.

The *White* Plaintiffs argue that the internal emails are "correspondence" under Rule 3-700(D) and, because Rule 3-700 does not include any exceptions for work product on its face, these emails must be handed over to the *White* Plaintiffs as client papers.  Email is certainly correspondence.  While Settlement Class Counsel argues that the internal emails are not correspondence, this really amounts to an argument that correspondence that is work product containing counsel's impressions, opinions, and theories regarding the settlement proceedings falls into a separate excepted category.  S. Pl.'s Opp. at 8.

Neither parties have presented the Court with authority applying Rule 3-700(D) in a class action context where class representatives decide to object and are no longer represented by settlement class counsel, nor have they presented authority interpreting Rule 3-700(D) as it applies to representation by California attorneys in federal question cases.  Therefore, authority addressing Rule 3-700 obligations as applied to work product generally provide the only direction.  The California state courts that have interpreted the scope of Rule 3-700(D) and whether it contains an exception for work product have looked for guidance from the state statute governing work product, Cal. Code Civ. Proc. §§ 2018.010-.030.

The *White* Plaintiffs also encourage this Court to look to federal common law in determining the scope of the work product protection.  Generally the scope of work product protection is governed by federal common law in federal question cases.  Fed. R. Evid. 501.  However, here the White Plaintiffs invoke a California state bar rule of professional conduct as the basis for turning over the requested emails, not the federal rules of evidence.

If federal courts were to consider the federal common law definition of work product in interpreting Rule 3-700(D), while state courts considered the state law definition of work

product in interpreting the rule, this would lead to the undesirable result of creating two different ethical obligations for California lawyers depending on whether a particular representation of a client pertained to state or federal matters.  The ramifications of this approach would be even more complicated in a situation where an attorney was representing a client in both federal and state matters.

The confusion over applicable law seems to have arisen because of the conflation of two requests by the *White* Plaintiffs: a request for documents of former counsel under Rule 3-700 and a request for documents through discovery as an objecting party to the settlement.  If the *White* Plaintiffs had requested these documents as a part of discovery, then the Court would interpret their right to discovery of that work product under federal common law.  Additionally, if the *White* Plaintiffs asked to admit work product from their former counsel into evidence at the final fairness hearing, the Court would decide the admissibility through federal common law.  In other words, while federal common law would apply in determining discovery or admissibility of work product in this case, looking to the state law regarding work product is relevant to the State Bar's intention regarding the meaning and scope of Rule 3-700(D).  The text of Rule 3-700(D) does not indicate any intention to create a split system of obligations for California lawyers to their clients.  Therefore, California state court and state bar advisory decisions are instructive in interpreting an attorney's duty to turn over work product to its former clients.

At the outset, Settling Plaintiffs argue that Rule 3-700(D)'s requirement that all client papers be turned over is absolute, but there are obviously some exceptions implicitly written into that requirement that do not appear in the actual language of the Rule.  *See State Bar of California, Standing Committee on Professional Responsibility and Conduct, Formal Opinion No. 1994-134* (recognizing that the client file "does not include documents or information which the attorney is prohibited by statute or court order from sharing with the client," such as crime victim's address).

Whether Rule 3-700(D) includes an implicit exception for work product is an issue which has been discussed but not resolved by California courts.  In *Metro-Goldwyn-Mayer, Inc. v. Superior Court*, the California Court of Appeal noted that "the absolute right of a client to his

7

attorney's work product, and the absolute right of an attorney to protect his or her impressions, conclusions, opinions, and legal research or theories from disclosure" could be in conflict under California law. 25 Cal. App. 4th 242, 244 (Cal. Ct. App. 1994). In *Eddy v. Fields*, the Court of Appeal again observed, "[t]he statutory work product privilege and the client's right to his or her file pose an apparent conflict, one that has not been definitively resolved by the courts." 121 Cal. App. 4th 1543, 1549 (Cal. Ct. App. 2004).

The statutory work product privilege, set forth in California Code of Civil Procedure § 1018.030, states: "A writing that reflects an attorney's impressions, conclusions, opinions, or legal research or theories is not discoverable under any circumstances." The *White* Plaintiffs argue that, regardless of any tension between the meaning of Rule 3-700 and Section 1018.030, work product protections do not apply in situations where a client is adverse to its former counsel. In support of this position, they cite California Code of Civil Procedure § 1018.080, which states, "In an action between an attorney and a client or a former client of the attorney, no work product privilege under this chapter exists if the work product is relevant to an issue of breach by the attorney of a duty to the client arising out of the attorney-client relationship." This is not an action between the *White* Plaintiffs and their former counsel, such as a malpractice action. Their former counsel are not named parties. Therefore, this section is inapplicable.[2]

In *MGM,* the Court of Appeal stated that it had aligned itself with the line of authority that "holds that the attorney is the exclusive holder of the privilege for purposes of adversarial discovery conducted in the course of litigation" prior to the passage of Rule 3-700, and that following its passage, it found that California work product laws evinced "clear . . . legislative intent to protect absolute work product from disclosure except in rare circumstances." 25 Cal. App. 4th at 247-48. While the Court of Appeal hinted that an adversarial proceeding in which a former client was suing counsel might qualify as such a

---

[2]     The other cases cited by the *White* Plaintiffs in support of this proposition, *Metro-Goldwyn-Mayer*, 25 Cal. App. 4 at 249, and *Eddy*, 121 Cal. App. 4th 1543, both involved waiver, which is not applicable here.

1    rare circumstance, as noted above, this is not such an instance.  In addition, it noted that it

2    read Rule 3-700 to allow limited protection under the work-product rule for the

3    enumerated categories of documents, meaning that attorneys could still withhold work

4    product unless it would "unfairly prejudice the party seeking discovery in preparing that

5    party's case or will result in an injustice."  *Id.* at 249 n.8.

6         State bar advisory ethics opinions have also discussed whether the scope of the

7    client's file includes work product.  In the State Bar of California Standing Committee on

8    Professional Responsibility and Conduct's ("Standing Committee") Formal Opinion No.

9    1994-134[3] n.1 (1994), the Standing Committee did not directly consider the scope of Rule

10   3-700, but noted, "For a discussion of whether the attorney's 'work product' is part of the

11   'file,' please see Code of Civil Procedure section 2018(f) [now 1019.080], Bar Association

12   of San Francisco Formal Opinion Number 1990-1, and Los Angeles County Bar Formal

13   Opinion Numbers 330, 362 and 405."[4]

14        Taking this direction, the Court looks to the sources cited by the Standing

15   Committee.  In the Bar Association of San Francisco Formal Opinion 1990-1 (1990), the

16   Ethics Committee determined when evaluating the scope of Rule 3-700(D), "It is the

17   opinion of the Committee that there is no ethical obligation upon an attorney to disclose

18   his or her uncommunicated or absolute work product, unless the failure to do so would

19   _____

20        [3]     While these opinions are provided by the Standing Committee in an
21   advisory capacity only, they are useful in giving guidance to the meaning of Rule 3-700.

22        [4]     The *White* Plaintiffs also cite State Bar of California Standing Committee
23   on Professional Responsibility and Conduct's Formal Opinion Nos. 1992-17 and 2007-
     174.  While Opinion No. 1992-17 does discuss the meaning of Rule 3-700(D), the
24   Standing Committee clearly specified that the discussion was limited to the context of a
     criminal defense appeal.  Opinion No. 2007-174 states that "Rule 3-700(D)'s purposes
25   include respecting the client's ownership interest in his or her papers and property and
     preventing 'reasonably foreseeable prejudice' to the client's interests generally."  Beyond
26   that point, Opinion No. 2007-174 fails to aid the Court because it explicitly acknowledges
     that the opinion did not address the work product doctrine and refrained from
27   commenting on whether the doctrine could serve as a limit to Rule 3-700(D) obligations.

28

1  result in reasonably foreseeable prejudice to the client's rights."  Unlike the San Francisco

2  Bar ethics opinion, which stated a prejudice standard be met prior to disclosure of work

3  product, the Los Angeles Bar ethics opinion has not set forth any such requirement prior to

4  disclosure.  In Los Angeles County Bar ("LACB") Formal Opinion Number 330 (1972),

5  the Ethics Committee stated, "[i]n the Committee's opinion, 'work product' for which the

6  client may be billed, belongs to the client."  *See also* LACB Formal Opinion No. 362

7  (1976) (affirming finding of Opinion 362).  The Ethics Committee also stated, "this

8  Committee believes that, in most cases, virtually everything in a client's file is the

9  property of the client, because it either has been copied at client expense, or the time

10  utilized to create it has been at client expense.  LACB Formal Opinion No. 405 (1982).[5]

11      Weighing the arguments provided by these authorities, the Court finds that Rule 3-

12  700(D) is indeed modified by the protection afforded to absolute work product.[6]  The

13  authority is conflicted as to whether this ability to exclude work product from the client

14  file is limited to cases in which the exclusion will not result in reasonably foreseeable

15  prejudice to the client's rights or the work product is reasonably necessary to the client's

16  representation.  The Court declines to decide this issue, as the work product should be

17  _____

18      [5]  While these three opinions from the Los Angeles County bar pre-date the

19  passage of Rule 3-700 in 1988, the State Bar's citation to them in 1990 indicate that it still found them instructive regarding the issue.

20      [6]  Rule 3-700(D) also contains a limitation on disclosure, stating that it must

21  be "[s]ubject to any protective order or non-disclosure agreement."  The non-disclosure agreements signed in this case present an alternative basis for restricting the production of

22  emails with other Plaintiffs' counsel.  In May 2006, all Plaintiffs' counsel signed a Joint

23  Prosecution Agreement that provides "no Party may share or disseminate such work product without the express agreement of all the Parties to this Agreement." *Id.* at 16.

24  The *White* Plaintiffs also signed an "Attorney Representation Agreement" which

25  specified, "Under this agreement, client understands that attorneys may represent and consents to attorneys representing multiple Plaintiffs.  By entering into this agreement,

26  client waives any right client may have to require that attorneys disclose to client any confidences attorneys have obtained from any other Plaintiff in connection with the

27  subject matter of this agreement." *Id.*  This provides an alternative basis for non-

28  disclosure, as obviously the Settling Plaintiffs do not consent

excluded from the client file under either reading because the *White* Plaintiffs have failed to show foreseeable prejudice or that the work product is reasonably necessary. Therefore, work product has been rightly withheld from the client file by Settlement Class Counsel.

However, Settlement Class Counsel is only protected as to communications that are actually work product. Settlement Class Counsel may not claim the privilege in a blanket fashion as it appears it has done. *See Green v. Baca*, 226 F.R.D. 624, 652 (C.D. Cal. 2005). They must produce a privilege log to the *White* Plaintiffs and redact and produce any emails which contain some non-work product. Should the *White* Plaintiffs not be satisfied, they may again petition the Court for production of selected documents. The *White* Plaintiffs Rule 3-700 Motion is DENIED.

### C. Motion of Charles Juntikka and the *White* Plaintiffs for an Order Allowing Counsel to Contact Proposed Class Members

*White* Plaintiffs' Counsel Charles Juntikka has requested court approval of a proposed letter he wishes to send to 2,500 of the members of the proposed class with whom he has a current attorney-client relationship and another 20,000 members of the proposed class with whom he has a former attorney-client relationship. The letter, presented by Juntikka in the reply, states, "I am *against* this "monetary relief" settlement because I believe the amount of the awards is woefully inadequate and the conditions for obtaining those awards are terribly unfair." Reply Exh. A. It also states, "If a sufficient number of people opt out, I am contemplating commencing a new lawsuit on their behalf. However, I cannot guarantee at this time that there will be such an opt-out option, although I believe it is likely." *Id.*

The class action settlement notice has already been mailed to the class in this action. The purpose of a class action settlement notice is "to present information about a proposed settlement neutrally, simply, and understandably." *Rodriguez v. West Publi'g Corp.*, 563 F.3d 948, 963 (9th Cir. 2009). The class members' decision whether or not to opt out is "a matter of extreme importance, committed to the discretion of the court, not

the 'whim of litigants'" and therefore, a neutral notice is sent to the parties.  *Hernandez v. Vitamin Shoppe Indus.*, 174 Cal. App. 4 th 1441, 1455 (Cal. Ct. App. 2009) (internal quotations omitted).  A party sending out "its own competing and argumentative notice and invitation to the class members to opt out" defeats the purpose of the Court ensuring that class members receive a neutral notice.  *Id.*  At the same time, class members have the right to enter an appearance through an attorney if the member so desires.  Fed. R. Civ. Proc. 23(c)(2)(B)(iv).  The corollary of this right is that class members may consult outside attorneys in deciding how they should elect to act in response to the settlement.  Any limitation by the Court on "communications between parties and potential class members should be based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties."  *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 101 (1981).

The Court recognizes that some persons with whom Counsel Juntikka has an existing attorney-client relationship are part of the proposed class.  Prohibiting him from advising them regarding the settlement would be invasive to the attorney-client relationship and would create too great an interference.  Both the Settling Plaintiffs and Defendants acknowledged in oral argument that Juntikka should be able to advise his current clients as he wishes.[7]  Therefore, Juntikka's request for Court approval of his unfettered communication with his clients is GRANTED.

The concerns weigh differently as to the 20,000 former clients that Juntikka wishes to contact.  The need for a limitation is great where, as here, a neutral, court-approved settlement notice has been sent to the class and the objecting plaintiffs' counsel seeks to encourage class members to opt out, presenting his alternative view of the settlement.  Juntikka states that he has already sent a newsletter to these 20,000 persons regarding the settlement, and if he is not allowed to send a letter to these persons telling them he does

---

[7]     Settling Plaintiffs have thereby withdrawn their assertion that all communications of Juntikka with any member of the class must go through Settlement Class Counsel.  S. Pl.'s Opp. at 6.

not support the settlement, they will assume from his previous communications that he does support it. By taking it upon himself to notify these 20,000 former clients of this lawsuit and settlement process which he formerly supported, Juntikka has boxed himself in. He now must rely upon the Court to approve a communication rectifying the confusion he created himself. Juntikka has provided the Court with the letter he proposes to send. The original letter, and even the amended letters proposed by Juntikka in the reply briefing on this matter and by counsel in oral argument, was certainly not written in a tone that would preserve the neutrality intended by the class notice process. The letter makes a blanket statement that each of the 20,000 former clients should opt out, saying the amount of the awards is "woefully inadequate and the conditions for obtaining those awards are terribly unfair." Reply at Exh. A. Moreover, it presents Juntikka's unopposed and naturally unbalanced viewpoint on the merits of the settlement.

The *White* Plaintiffs assert that the Court may only limit communications with the class if they can demonstrate that statements made in the potential communication are misleading. *Gulf Oil* does not support such a reading of courts' power to limit communications. Instead, *Gulf Oil* encourages courts to narrowly tailor restrictions such that limitations do not make it more difficult for the parties to vindicate their rights. 452 U.S. at 102. Here, Juntikka is not absolutely limited in contacting the 20,000 class members who were his former clients. However, the letter that Juntikka sends to the 20,000 former clients must be limited so that it does not function as a competing class notice. At oral argument, the Settling Plaintiffs and Defendants offered to stipulate to Juntikka contacting his former clients in a more neutral tone, alerting them that he now represents plaintiffs objecting to the settlement and giving them his contact information should they desire to contact him for advice on whether they should opt in or out of the settlement. The Court would have approved this communication. Allowing Juntikka to contact his former clients to make sure that they know they may contact him for advice on the merits of opting in or out of the settlement and even to tell them that he now represents people opposing the settlement, but not allowing him to present his views of the unfairness

of the settlement to former clients who have not actively solicited his advice on this matter, strikes a balance between the need to preserve the neutrality of the notice period and not unduly restricting communication.

However, the *White* Plaintiffs stated that they would not accept any letter other than the one they submitted.  They state that at a minimum they did not desire to send a letter that did not articulate the reasons why Juntikka opposed the settlement.  Juntikka has thus presented the Court with an all-or-nothing proposition, saying he prefers to send nothing rather than a more neutral notice.  Weighing the interests at play in the class notification stage, the *White* Plaintiffs Motion to Contact Class Members is GRANTED as to the request for Juntikka to contact his clients and DENIED as to the request to send the proposed letter to Juntikka's former clients.

## IV.  DISPOSITION

For the foregoing reasons,

1.     Settling Plaintiffs' Motion for a Protective Order Regarding Objecting Plaintiffs' Deposition of Jose Hernandez is DENIED;

2.     *White* Plaintiffs' Motion for Former Counsel to Produce Clients' Paper and Property is DENIED;

3.     Settlement Class Counsel shall produced a privilege log asserting work product claims to *White* Plaintiffs within fourteen (14) days; and

4.     Juntikka and *White* Plaintiffs' Motion to Allow Counsel to Contact Members of the Proposed Class is GRANTED in part and DENIED in part.

IT IS SO ORDERED.

DATED: November 23, 2009

_____
DAVID O. CARTER
United States District Judge

14