BOIES, SCHILLER & FLEXNER LLP
David L. Zifkin (SBN 232845)
225 Santa Monica Blvd., 11th Floor
Santa Monica, CA 90401
Telephone: 310-395-5800
Facsimile: 510-874-1460
Email: dzifkin@bsfllp.com

CHARLES JUNTIKKA & ASSOCIATES LLP
Charles Juntikka (admitted *pro hac vice*)
1250 Broadway, 24th Floor
New York, NY 10001
Telephone: 212.315.3755
Facsimile: 212.315.9032
Email: charles@cjalaw.com

DANIEL WOLF LAW OFFICES
Daniel Wolf (admitted *pro hac vice*)
1220 N Street, NW, Suite PH 2
Washington, DC 20005
Telephone: 202.842.2170
Email: dan@danielwolflaw.com

Attorneys for Plaintiffs Robert Radcliffe, Chester Carter, Maria Falcon, Clifton C. Seale, III, Arnold E. Lovell, and all others similarly situated.

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
## (Southern Division)

| | |
|---|---|
| TERRI N. WHITE, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>EXPERIAN INFORMATION SOLUTIONS, INC., et al.,<br><br>Defendants.<br><br>and Related actions. | **CASE NO. 05-CV-1070 DOC (MLGx) (Lead Case)**<br><br>**STATEMENT OF DANIEL WOLF AND CHARLES JUNTIKKA REGARDING RIGHTS TO ATTORNEYS' FEES IN CONNECTION WITH INJUNCTIVE RELIEF SETTLEMENT [REDACTED]** |

1

## TABLE OF CONTENTS

Table of Authorities ................................................................................................ ii

Preliminary Statement ............................................................................................ 1

Argument in Support of Fee Application............................................................... 3

    1. Wolf's Work in Connection With Injunctive Relief Settlement................ 4

    2. Juntikka's Contribution to the Injunctive Relief Settlement..................... 8

    3. Calculation of Reasonable Attorneys' Fees .............................................. 10

Conclusion............................................................................................................. 11

# TABLE OF AUTHORITIES

## FEDERAL CASES

Acosta v. Trans Union, LLC, 243 F.R.D. 377 (C.D. Cal. 2007)..............................9

Chalmers v. Los Angeles, 796 F.2d 1205 (9th Cir. 1986).........................................4

Holden v. Burlington Northern, Inc., 665 F. Supp. 1398
    (D. Minn. 1987) ................................................................................................ 2

Mangold v. California Public Utilities Comm'n, 67 F.3d 1470
    (9th Cir. 1995) ..........................................................................................*passim*

National Federation for the Blind v. Target Corp., 2009 U.S. Dist. LEXIS 67139
    (N.D. Cal. Aug. 3, 2009) ................................................................................. 4

Paulsen v. City of San Diego, 2007 U.S. Dist. LEXIS 43587
    (S.D. Ca. June 15, 2007)................................................................................ 10

Welch v. Metro. Life Ins. Co., 480 F.3d 942 (9th Cir. 2007).....................................4

## STATE CASES

Graham v. DaimlerChrysler, 34 Cal. 4th 553 (2004) ..............................................4

Ketchum v. Moses, 24 Cal. 4th 1122 (2001) ............................................................4

Lealao v. Beneficial California, Inc., 82 Cal. App. 4th 19 (2000) ...................... 3, 4

Serrano v. Priest, 20 Cal.3d 25 (1977)....................................................................4

Wershba v. Apple Computer, Inc., 91 Cal. App. 4th 224, 254 (2001).................. 3, 4

## FEDERAL STATUTES

15 U.S.C. § 1681o(a)(2).........................................................................................2

## STATE STATUTES

Cal. Civ. Code § 1785.31(a)(1)...............................................................................2

Attorneys for the *White* Plaintiffs, Charles Juntikka and Daniel Wolf, submit this Statement regarding their rights to attorneys' fees in connection with the Injunctive Relief Settlement.

## PRELIMINARY STATEMENT

In its order dated September 21, 2009, this Court instructed that any counsel wishing to seek attorneys' fees in connection with the Injunctive Relief Settlement must submit their application for such fees by no later than December 21, 2009. Wolf and Juntikka were both appointed class counsel for the Injunctive Relief Class and are plainly entitled to fees for their services in connection with that settlement. However, neither they nor the *White* Plaintiffs are parties to the Injunctive Relief *Fee* Settlement and they have never agreed to the terms of that settlement. Although counsel for the Settling Plaintiffs invited them to join the Injunctive Relief Fee Settlement, Wolf and Juntikka declined that invitation in order to avoid a conflict of interest between themselves and the *White* Plaintiffs.

The reason for this conflict arises out of the decision of the Settling Parties to tie the Injunctive Relief Fee Settlement to the approval of the Monetary Relief Settlement. On behalf of the *White* Plaintiffs, both Wolf and Juntikka oppose the Monetary Relief Settlement on the grounds, among others, that the amount of that settlement is patently inadequate and that it is structurally flawed in that it sacrifices the claims of the vast majority of class members in order to enrich a small minority. For Wolf and Juntikka to endorse the Injunctive Relief Settlement or to seek fees under the terms of that settlement would be to give them a financial interest in the approval of the Monetary Relief Settlement, which their clients oppose. Wolf and Juntikka strongly believe that their ethical duty to avoid conflicts of interest between themselves and their clients prevents them from taking this course of action.

On the other hand, Wolf and Juntikka each contributed well over a thousand

1

hours of their time toward the Injunctive Relief Settlement and were instrumental in bringing that settlement about. Under both the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681o(a)(2), and the California Consumer Credit Reporting Agencies Act ("CCRAA), Cal. Civ. Code § 1785.31(a)(1), (d) & (f), Wolf and Juntikka are entitled to reimbursement of their costs and their attorney's fees for the amount of time they have devoted to this matter. Obviously, the Settling Parties were not at liberty to negotiate away Juntikka's and Wolf's statutory rights to attorneys' fees without their consent, which they have never provided. *See Holden v. Burlington Northern, Inc.,* 665 F. Supp. 1398, 1431 (D. Minn. 1987) (noting that "proposed fee agreements of [settling plaintiffs'] counsel . . . cannot dispose of the . . . fee claims" of their former co-counsel, who ended up objecting to a class action settlement).

Accordingly, if this Court issues an order approving the Monetary Relief Settlement and the Injunctive Relief Fee Settlement, it should make clear that: (1) nothing in that order is intended to resolve the independent claims of Wolf and Juntikka for their costs and attorneys' fees incurred in connection with the Injunctive Relief Fee Settlement; and (2) Wolf and Juntikka shall be free to pursue those claims at the conclusion of the appellate process, either before this Court or in some other forum.[1]

Wolf and Juntikka are, however, mindful of this Court's order stating that "any counsel who wish to apply for an award of fees and costs for efforts made in connection with the Injunctive Relief Settlement must do so on or before December 21, 2009." Minute Order, Sept. 21, 2009. While Wolf and Juntikka believe that their ethical duties to their clients preclude them from making an application for attorneys fees **under the Injunctive Relief Fee Settlement**, they are not willing to

---

[1] This Court should be aware that the issue of how fees should be distributed amongst Plaintiffs' counsel is addressed in their Joint Prosecution Agreement, which provides that any disputes relating to that agreement, including any disputes regarding the allocation of fees, should be resolved by binding arbitration.

2

forego their right to reimbursement for the costs they incurred and the hours they billed in connection with the **Injunctive Relief Settlement** itself. Accordingly, they are hereby submitting their application for a reasonable award of attorneys' fees without regard to the Injunctive Relief Fee Settlement. In this connection, Wolf and Juntikka wish to emphasize that they are *not* seeking an award of fees under the Injunctive Relief Fee Settlement itself. Rather, Wolf and Juntikka are simply submitting their costs and time in order to preserve their rights to a fee award in light of this Court's September 21. 2009 order. In so doing, Wolf and Juntikka fully understand that this Court may view this application as premature and, in the event that it does, they ask that this Court provide them an opportunity to resubmit their application following any order it might issue rejecting the Monetary Relief Settlement or, should this Court issue an order approving that settlement, following the conclusion of the appellate process.

## ARGUMENT IN SUPPORT OF FEE APPLICATION

As set forth above, Wolf and Juntikka are statutorily entitled to an award of their attorneys' fees and costs under both the FCRA and the CCRAA. Under Ninth Circuit precedent, when a plaintiff prevails on both federal and statutory grounds, the calculation of what is an appropriate fee award should be determined in accordance with state law. *Mangold v. California Public Utilities, Comm'n*, 67 F.3d 1470, 1478 (9th Cir. 1995). Here, application of California law is particularly appropriate, given this Court's tentative order ruling that injunctive relief is available to Plaintiffs under the CCRAA, but not under the FRCA.

To establish the reasonable attorneys' fees to which a prevailing party is entitled under a fee-shifting statute like the CCRAA, California employs the lodestar method, under which such fees are determined by "multiplying the number of hours reasonably expended by counsel by a reasonable hourly rate." *Lealao v. Beneficial California, Inc.*, 82 Cal. App. 4th 19, 26 (2000); *see also Wershba v. Apple Computer, Inc.*, 91 Cal. App. 4th 224, 254 (2001). In determining what is a

3

reasonable hourly rate, the courts look to the rates that are ordinarily obtained in the community for "similar work performed by attorneys of comparable skill, experience, and reputation." *Chalmers v. Los Angeles*, 796 F.2d 1205, 1210-11 (9th Cir. 1986). In other words, billing rates "should be established by reference to the fees that private attorneys of an ability and reputation comparable to that of prevailing counsel charge their paying clients for legal work of similar complexity." *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 946 (9th Cir. 2007).

Under California law, a court may increase the amount of the lodestar by applying a multiplier. *See, e.g., Wershba*, 91 Cal. App. 4th at 254; *Lealao*, 82 Cal. App. 4th at 26. In determining the exact quantum of the multiplier, California courts evaluate several factors, including "(1) the novelty and difficulty of the questions involved, (2) the skill displayed in presenting them, (3) the extent to which the nature of the litigation precluded other employment by the attorneys, [and] (4) the contingent nature of the fee award." *Ketchum v. Moses*, 24 Cal. 4th 1122, 1132 (2001); *see also Graham v. DaimlerChrysler*, 34 Cal. 4th 553, 579 (2004); *Serrano v. Priest*, 20 Cal.3d 25, 48-49 (1977). "Multipliers can range from 2 to 4 or even higher." *Wershba v. Apple Computer, Inc.*, 91 Cal.App.4th 224, 255 (2001); *see also Mangold*, 67 F.3d at 1478 (multiplier of two). "Exceptional results in the face of vigorous opposition and in the absence of supporting precedent militate in favor of higher multiplier values." *National Federation for the Blind v. Target Corp.*, 2009 U.S. Dist. LEXIS 67139, at *17-18 (N.D. Cal. Aug. 3, 2009).

The results embodied in the injunctive relief settlement, the vital roles Wolf and Juntikka played in achieving them, and the skills they displayed in doing so, all speak for themselves.

*1. Wolf's Contribution To The Injunctive Relief Settlement.* As set forth in his declaration, Wolf has 23 years of experience in the litigation of complex commercial, multi-plaintiff and class action lawsuits on both the defense and the plaintiff side. (Declaration of Daniel Wolf, sworn to Dec. 21, 2009 ("Wolf Decl."),

4

¶¶ 3-8.) He is able to command rates equivalent to those charged by top flight litigators at the nation's most prestigious firms. (*Id.* ¶ 32.)

The amount of time Wolf billed to these cases that can be fairly attributed to Plaintiffs' injunctive relief claims comes to approximately 1,276.75 hours. (*Id.* ¶ 31.)[2] Further, as set forth above and as detailed in his declaration, this time accounted for the great bulk of the "heavy-lifting" on the Plaintiffs' side in this matter. (*Id.* ¶¶ 10-22.)

Wolf was the architect of Plaintiffs' legal arguments in these cases and, despite the fact that he was not technically lead counsel, he played the most important role in bringing about the Injunctive Relief Settlement by far. (*Id.* ¶¶ 10-29.) Wolf was the original drafter of the *White* Plaintiffs' complaints and the author of *all* of Plaintiffs' substantive briefs on contested motions up to the granting of the Injunctive Relief Settlement – none of which received extensive editing from any member of the *White/Hernandez* legal team. (*Id.* ¶¶ 12, 21.) In preparing each of these briefs, Wolf did all or virtually all of the legal research. (*Id.* ¶¶ 13, 21.) Further, Wolf argued the only two major substantive motions that were heard by this Court prior to the Injunctive Relief Settlement – namely, the motion for preliminary approval of the *Acosta/Pike* Settlement and Experian's motion for partial summary judgment. (*Id.* ¶¶ 12, 19, 21.)

Apart from his core responsibilities with regard to all contested motions, Wolf prepared numerous analytic and research memoranda relating to the legal issues in these cases, including several that related specifically to injunctive relief – one of which set forth Plaintiffs' original proposal for how to structure an injunctive relief settlement. (*Id.* ¶¶ 14, 21.) In addition, Wolf authored the *White* Plaintiffs' mediation statement and was an active participant in all of the mediation sessions that took place subsequent to the *Acosta/Pike* settlement. (*Id.* ¶ 16.) Together with

---

[2] In addition to this time, Wolf spent approximately 33.50 hours preparing this fee application. (Wolf Decl. ¶ 31.)

Len Bennett of the Caddell team, he was given primary responsibility to negotiate the terms of the Injunctive Relief Settlement and was involved in virtually all of the major discussions relating to that negotiation. (*Id.* ¶¶ 17.)[3]

While the quantity and nature of the hours Wolf has devoted to this matter are telling, those hours leave much of the story of his contribution to the Injunctive Relief Settlement untold. (*Id.* ¶ 23.) Specifically, they do not explain how, at various stages in this litigation, he and Mr. Juntikka found themselves at odds with other members of their legal team and had to persuade them to adopt positions, which history has proven were the correct positions to take and without which the Injunctive Relief Settlement would never have happened. (*Id.* ¶¶ 23-29.)

For instance [Redacted - Filed Under Seal]

---

[3] The only aspect of this litigation in which Wolf did not play a major role was formal discovery of factual information from Defendants, which was, at any rate, very limited to begin with. (*See* Declaration of Adam Shaw, sworn to Dec. 14, 2009, ¶¶ 6-9.) Wolf was, however, significantly involved in other aspects of discovery, including the defense of the *White* Plaintiffs' depositions, preparation for the depositions of key defense experts, and the identification of and provision of assistance to Plaintiffs' experts, including, in particular, John Ulzheimer, their principal expert regarding Defendants' credit reporting and scoring. Wolf Decl. ¶¶ 15, 18.) Finally, Mr. Wolf's research of publicly available records uncovered evidence of Defendants' liability, the importance of which equaled or exceeded anything his colleagues on the Lieff/Caddell team were able to uncover through formal discovery. (*Id.* ¶ 18.)

6

| | |
|---|---|
| 1 | order holding that that injunctive relief was available under the CCRAA, despite the |
| 2 | existence of several federal district court decisions that had reached a contrary |
| 3 | conclusion. (Tentative Order Granting In Part and Denying In Part Defendant's |
| 4 | Motion for Partial Summary Judgment at 10, Aug. 13, 2007, Dkt. # 169.) |
| 5 | Second, [Redacted - Filed Under Seal] |
| 6-21 | [Redacted - Filed Under Seal] |
| 22 | Third, following the announcement of the *Acosta* settlement, |
| 23-28 | [Redacted - Filed Under Seal] |

7

STATEMENT OF DANIEL WOLF AND CHARLES JUNTIKKA REGARDING RIGHTS

Redacted - Filed Under Seal

Then, Wolf authored the brief in opposition to preliminary approval and presented the argument that persuaded the Court to reject a settlement that would have left inaccuracies in the credit reports of about 90% of the class and would have given Trans Union and Equifax an unrestrained license to continue reporting those inaccuracies in violation of their statutory obligations. (*Id.*)

   2. ***Juntikka's Contribution to the Injunctive Relief Settlement.*** In February of 2004, Charles Juntikka, Esq., whose law firm has long been the largest filer of Chapter 7 personal bankruptcies in New York City, became concerned that his clients credit reports were inaccurately stating that their post-discharge bankruptcy debts were still due and owing. After a brief review of the first reports showed a very high error rate, his firm, Charles Juntikka & Associates, conducted an investigation into the about 3000 credit reports issued by the defendants – after his clients debts had been discharged in bankruptcy. He also directed that his staff assist his clients in disputing each inaccurate entry with the defendants.

   For over a year, six attorneys met with over two thousand clients to assist them in reviewing and, if necessary, obtaining, their credit reports and disputing these errors. Five paralegals and two managers supervised the project that: (1) initiated nearly 3,000 requests for consumer reports (incurring the cost of the reports plus the cost of certified mail); (2) reviewed of the reports for accuracy on each of the nearly 3,000 reports submitted to my firm by the clients; (3) created a database identifying each client whose report contained errors, the number of such errors, and the identification of the errors; (4) prepared approximately 800 requests

for reinvestigation on behalf of those clients whose credit reports contained such errors; (5) reviewed their new reports for errors following such re-investigation; and (6) created a database identifying each client whose re-investigated report still contained errors, the number of such errors, and the identification of the errors.

After this over one year long investigation, it was discovered that the error rates for Trans Union, Equifax and Experian were 64%, 66% and 76% respectively according to the "Juntikka" study. (Juntikka Decl. ¶ 18.) Mr. Juntikka then, with Mr. Wolf and co-counsel, initiated these three related class actions on behalf of the White Plaintiffs.

On January 22, 2007, Trans Union and Equifax asked this Court for the preliminary approval of a settlement that would release the claims of the White/Hernandez Plaintiffs for an extremely inadequate injunctive relief that according to the Juntikka database would have eliminated only 5% of the errors. (Juntikka Decl., Dkt. # 61). *Acosta v. Trans Union, LLC*, 243 F.R.D. 377 (C.D. Cal. 2007). On March 6, 2007, this Court denied preliminary approval of the Acosta settlement. And the Court itself cited the law office of Charles Juntikka & Associates pre-filing investigation of the practices of the defendants as a key reason for the denial. After pointing out that the "Juntikka" study was the "only" data any of the parties had introduced, *id.*, the Court stated:

> (Acosta) Plaintiffs are now unable…to apprise the extent to which the "scrubbing" included in the Settlement's injunctive procedures would eliminate current inaccuracies in Plaintiffs' credit histories…Although Trans Union and Equifax possess the data upon which all these determinations depend, they have declined to produce this information as well. As a result, the only concrete estimates now before the Court are those of the Objectors, and all of these estimates advise against approving the Settlement. (*Id.* at 34.)

As the only bankruptcy lawyer on the legal team, Mr. Juntikka's bankruptcy and related post-discharge credit report knowledge was invaluable to the achievement of injunctive relief. Perhaps his most important contribution in this

9

STATEMENT OF DANIEL WOLF AND CHARLES JUNTIKKA REGARDING RIGHTS

area went to the heart of the theory of the case and the possibility of complete injunctive relief. [Redacted - Filed Under Seal]

3. ***Calculation Of Reasonable Attorneys' Fees.*** Daniel Wolf expended a total of 2,591 hours to these matters, of which he is assigning 1,276.5 to the injunctive settlement; Charles Juntikka expended a total of 1,068 hours on this matter, of which he is assigning 534 hours; Mr. Juntikka's associate attorney expended a total of approximately 738 hours, of which they are allocating 369 hours; and his paralegals expended approximately 2,328 hours, of which they are allocating 1,164. As one court has properly remarked, "[a]n experienced trial judge is in the best position to assess the value of services rendered in his or her court." *Paulsen v. City of San Diego*, 2007 U.S. Dist. LEXIS 43587, at *12 (S.D. Ca. June 15, 2007). Accordingly, for purposes of this application, Juntikka and Wolf ask this Court to award them a reasonable attorneys' fee by: (1) multiplying the hours their firms have billed to these matters by a reasonable hourly rate based on this Court's own assessment of what is the prevailing rate in this District for attorneys of comparable skill and experience; and (2) determining whether, and to what extent, it may be appropriate to apply a multiplier to their lodestar, taking into account such

factors as the importance of the results that were achieved, the skills Wolf and Juntikka displayed in bringing them about and the risks they took in doing so.[4]

## CONCLUSION

For the reasons set forth above, this Court should issue an order awarding Wolf and Juntikka their costs and a reasonable attorneys' fee based on the hours they have devoted to this matter, their reasonable hourly rates as measured by the prevailing rates in this district for counsel of comparable experience and ability, and any multiplier it determines may be appropriate based on governing California law.

DATED: December 21, 2009

By   /s/ Daniel Wolf

DANIEL WOLF LAW OFFICES
Daniel Wolf

CHARLES JUNTIKKA & ASSOCIATES LLP
Charles Juntikka

Attorneys for Plaintiffs Robert Radcliffe, Chester Carter, Maria Falcon, Clifton C. Seale, III, Arnold E. Lovell, and all others similarly situated

---

[4] In addition to seeking a reasonable fee for their time, Wolf and Juntikka are also seeking reimbursement for $16,840 and $44,807.17 that they respectively incurred in expenses in connection with Plaintiffs' injunctive relief claims. (Wolf Decl. ¶ 34; Juntikka Decl. ¶ 46.)

11