Michael W. Sobol (State Bar No. 194857)
(msobol@lchb.com)
Allison S. Elgart (State Bar No. 241901)
(aelgart@lchb.com)
LIEFF, CABRASER, HEIMANN &
BERNSTEIN, LLP
275 Battery Street, 30th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

Michael A. Caddell (State Bar No. 249469)
(mac@caddellchapman.com)
Cynthia B. Chapman (State Bar No. 164471)
(cbc@caddellchapman.com)
George Y. Niño (State Bar No. 146623)
(gyn@caddellchapman.com)
CADDELL & CHAPMAN
1331 Lamar St., Suite 1070
Houston, TX 77010
Telephone: (713) 751-0400
Facsimile: (713) 751-0906

*Attorneys for Plaintiffs*

[Additional Counsel listed on signature page]

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

(SOUTHERN DIVISION)

| | |
|---|---|
| TERRI N. WHITE, et al., <br><br> Plaintiffs, <br><br> v. <br><br> EXPERIAN INFORMATION SOLUTIONS, INC., <br><br> Defendant. <br><br> and Related Cases: <br><br> 05-CV-01073-DOC (MLGx) <br> 05-CV-7821-DOC (MLGx) <br> 06-CV-0392-DOC (MLGx) <br> 05-cv-1172-DOC(MLGx) <br> 06-cv-5060-DOC (MLGx) | Case No. 05-CV-1070 DOC (MLGx) <br> (Lead Case) <br><br> **PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ORDER GRANTING PLAINTIFFS' APPLICATION FOR ATTORNEYS' FEES FOR INJUNCTIVE RELIEF SETTLEMENT** <br><br> Date: January 11, 2010 <br> Time: 8:30 a.m. <br> The Honorable David O. Carter |

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ................................................................................. 1

II.  BACKGROUND ................................................................................. 3

III.  ARGUMENT ...................................................................................... 6

    A.  The Requested Fee Is The Result Of Arm's Length Negotiations By Experienced Counsel ....................................... 6

    B.  The Requested Fee Is Reasonable Under The Lodestar Method ...................................................................................... 8

        1.  Class Counsel's Hourly Rates are Reasonable ............... 9

        2.  The Number of Hours Class Counsel Worked is Reasonable ................................................................... 11

    C.  Class Counsel Has Achieved Significant Relief For The Class ............................................................................ 14

        1.  Class Counsel are Entitled to Recover Fees and Costs as a "Successful" Party Under the FCRA. ........... 16

        2.  Class Counsel Are Entitled to Recover Fees and Costs Under the CCRAA ............................................. 18

        3.  Class Counsel are Entitled to Recover Fees Under Code of Civil Procedure §1021.5 .................................. 20

    D.  A Service Award To The Named Plaintiffs Is Appropriate ..... 21

IV.  CONCLUSION .................................................................................. 23

# TABLE OF AUTHORITIES

**Page**

## CASES

*Ballen v. City of Redmond,*
466 F.3d 736 (9th Cir. 2006).................................................................9

*Barrios v. California Interscholastic Fed'n,*
277 F.3d 1128 (9th Cir. 2002)........................................................17, 19

*Blum v. Stenson,*
465 U.S. 886 (1984) ...................................................................9, 10

*Bogosian v. Gulf Oil Corp.,*
621 F. Supp. 27 (E.D. Pa. 1985) ..........................................................23

*Buckhannon Bd. & Care Home Inc. v. West Virginia Dept. of Health & Human Res.,*
532 U.S. 598 (2001) ................................................................passim

*Camacho v. Bridgeport Financial, Inc.,*
523 F.3d 973 (9th Cir. 2008).............................................................10

*Carbonnel v. INS,*
429 F.3d 894 (9th Cir. 2005).............................................................16

*Carroll v. Blue Cross & Blue Shield of Mass.,*
157 F.R.D. 142 (D. Mass. 1994),
*aff'd* 34 F.3d 1065 (1st Cir. 1994) ......................................................23

*Caudle v. Bristow Optical Co., Inc.,*
224 F.3d 1014 (9th Cir. 2000).............................................................9

*Cook v. Niedert,*
142 F.3d 1004 (7th Cir. 1998).............................................................21

*Crabill v. Trans Union, L.L.C.,*
259 F.3d 662 (7th Cir. 2001)........................................................16, 17, 18

*Cunningham v. County of Los Angeles,*
879 F.2d 481 (9th Cir. 1988).............................................................9

*Donald v. Café Royale, Inc.,*
218 Cal.App.3d 168 (1990).............................................................19

*Fischer v. SJB-P.D. Inc.,*
214 F.3d 1115 (9th Cir. 2000)........................................................11, 17, 18

*Graham v. DaimlerChrsyler Corp.,*
34 Cal.4th 553 (2004).................................................................20, 21

*Hanlon v. Chrysler Corp.,*
150 F.3d 1011 (9th Cir. 1998).............................................................8

## TABLE OF AUTHORITIES
### (continued)

**Page**

*Hensley v. Eckerhart*,
  461 U.S. 424 (1983) ...................................................................................6, 11

*Hughes  v. Microsoft Corp.*,
  F. Supp. 2d, 2001 WL 34089697, 2001 U.S. Dist. LEXIS 5976..........................22

*In re Apple Computer, Inc. Derivative Litig.*,
  2008 U.S. Dist. LEXIS 108195 (N.D. Cal. November 5, 2008) ............................7

*In re Mego Financial Corp. Sec. Litig.*,
  213 F.3d 454 (9th Cir. 2000)...................................................................22, 23

*Ingram v. Coca-Cola Co.*,
  200 F.R.D. 685 (N.D. Ga. 2001) ........................................................................7

*Kerr v. Screen Extras Guild, Inc.*,
  526 F.2d 67 (9th Cir. 1975).................................................................................9

*Labotest, Inc. v. Bonta*,
  297 F.3d 892 (9th Cir. 2002)..............................................................................17

*Levine v. City of Alameda*,
  2006 WL 1867532 (N.D. Cal. 2006) ..................................................................18

*Lyons v. Chinese Hosp. Ass'n*,
  136 Cal.App.4th 1331 (2006)..............................................................................20

*Mangold v. Cal. Pub. Util. Comm'n*,
  67 F.3d 1470 (9th Cir. 1995)..............................................................................19

*Nagle v. Experian Info. Solutions, Inc.*,
  297 F.3d 1305 (11th Cir. 2002)..............................................................16, 17, 18

*Parrott v. Mooring Townhomes Ass'n, Inc.*,
  112 Cal.App.4th 873 (2003)................................................................................19

*Paul, Johnson, Alston & Hunt v. Graulty*,
  886 F.2d 268 (9th Cir. 1989)................................................................................8

*Razilov v. Nationwide Mut. Ins. Co.*,
  No. 01-CV-1466-BR., 2006 WL 3312024 (D. Or. Nov. 13, 2006).....................23

*Richard S. v. Dept. of Developmental Servs.*,
  317 F.3d 1080 (9th Cir. 2003).............................................................................17

*Skaff v. Meridien North America, Beverly Hills, LLC*,
  506 F.3d 832 (9th Cir. 2007)...............................................................................20

*Staton v. Boeing Co.*,
  327 F.3d 938 (9th Cir. 2003)..................................................................8, 21, 22

**TABLE OF AUTHORITIES**
**(continued)**

Page

*Stevens v. Safeway, Inc.*,
  2008 U.S. Dist. LEXIS 17119 (C.D. Cal. 2008).....................................22

*United Steelworkers of Am. v. Phelps Dodge Corp.*,
  896 F.2d 403 (9th Cir. 1990).................................................10

*Vizcaino v. Microsoft Corp.*,
  290 F.3d 1043 (9th Cir. 2002)................................................8

*Zuehlsdorf v. Simi Valley Unified School Dist.*,
  148 Cal.App.4th 249 (2007)..................................................19

**STATUTES**

15 U.S.C. § 1681.........................................................16

Cal Civ. Code
  § 1785.31(d) ..........................................................18

Cal. Code Civ. Pro.
  § 1021.5.......................................................16, 19, 20, 21

**RULES**

Federal Rules of Civil Procedure
  Rule 23(e)............................................................8

**TREATISES**

*Manual for Complex Litig.*, (4th ed. 2004)
  § 21.62..............................................................22

## I.     **INTRODUCTION**

The 23(b)(2) Settlement Class Counsel[1] have obtained an agreement for injunctive relief, achieving what the Court and commentators have deemed "groundbreaking" results.  The nationwide class of consumers allege that Defendants Equifax Information Services LCC ("Equifax"), Experian Information Solutions, Inc. ("Experian"), and TransUnion LLC ("TransUnion) (collectively, "Defendants") erroneously reported debts discharged in Chapter 7 bankruptcy proceedings as due and owing.  On or about April 3, 2008, the parties entered into the Injunctive Relief Settlement Agreement which addresses these allegations.  Defendants agreed to retroactively update the credit files of 23(b)(2) Settlement Class members to reflect the discharge of certain categories of pre-bankruptcy civil judgments and tradelines.  Defendants also agreed to adopt new procedures for the update of certain pre-bankruptcy civil judgments and tradelines when a public record entry of the bankruptcy has been added to the consumer's file.  The Court approved this Settlement and certified a 23(b)(2) Settlement Class for injunctive relief on August 19, 2008 (Dkt. 338).

These impressive results warrant the award of attorneys' fees and costs requested by 23(b)(2) Settlement Class Counsel.  Defendants have recognized this in entering into a Settlement Agreement Re: Injunctive Relief Fees ("Fee Agreement") (Dkt. 413-2).  This Agreement is the result of extensive, arm's-length

---

[1] This application is made on behalf of all 23(b)(2) Settlement Class Counsel except for Charles Juntikka and Daniel Wolf, who have so far declined the other 23(b)(2) Settlement Class Counsel's invitation to join in this application.  *See* Declaration of Michael W. Sobol In Support of Motion for Order Granting Plaintiffs' Application for Attorneys' Fees For Injunctive Relief Settlement ("Sobol Inj. Fee Decl.") ¶ 13. Pursuant to the Approval Order Regarding Settlement Agreement and Release, the Court appointed the following attorneys as "23(b)(2) Settlement Class Counsel": Daniel Wolf, Esq., Law Offices Of Daniel Wolf; Leonard A. Bennett, Esq., Consumer Litigation Associates, P.C.; Mitchell A. Toups, Esq., Weller, Green, Toups & Terrell, L.L.P.; Michael Caddell, Esq., Caddell & Chapman; Michael W. Sobol, Esq., Lieff Cabraser Heimann & Bernstein; Charles W. Juntikka, Esq., Charles Juntikka & Associates; Charles Delbaum and Stuart T. Rossman, National Consumer Law Center; and Lee A. Sherman, Esq., Callahan, McCune & Willis, APLC.  Dkt. 338.

negotiations.  The negotiated amount for fees and costs totals six million dollars ($2,000,000 from each Defendant), less the service awards to the class representatives totaling $22,500 ($2,500 to each named plaintiff) for the services they have rendered to the Class prior to the Injunctive Relief Settlement.[2]  The 23(b)(2) Settlement Class Counsel's requested amount of $6 million is inclusive of both attorneys' fees and expenses, and will be paid, subject to the Court's approval, by Defendants.  After deducting $22,500 for the incentive fee awards and after reimbursement of $305,721.32 in costs, the remainder for fees is $5,671,778.68.  The lodestar of 23(b)(2) Settlement Class Counsel, generated through 10,192.60 hours of work on this case from its inception through the date the injunctive relief settlement was entered (plus additional hours incurred in connection with the injunctive relief settlement approval hearing), is $4,762,018.25.  Thus, the requested injunctive relief fee – for work commenced in 2005 and essentially completed more than one-and-a-half years ago – results in a modest 1.19 multiplier, *i.e.*, the ratio of requested fees ($5,671,778.68) to lodestar ($4,762,018.25).

The 23(b)(2) Settlement Class Counsel's request for attorneys' fees and costs is squarely supported by the lodestar method of calculating attorneys' fees recognized under Ninth Circuit law.  Counsel's fee request is eminently reasonable given the important result the 23(b)(2) Settlement Class Counsel achieved for the Class: greatly improving the accuracy of the credit reports on which class members rely upon to, among other things, apply for jobs, qualify for loans, obtain mortgages to buy homes, and apply for credit cards.  Counsel's request for a service award to the named Plaintiffs for their service to the Class is also supported by Ninth Circuit

---

[2] The 23(b)(2) class representatives currently represented by Messrs. Juntikka and Wolf (Clifton Seale III, Robert Radcliffe, Mara Falcon, Arnold Lovell, and Chester Carter) are entitled to an incentive award under the parties' agreement.  However, in making this application, the moving 23(b)(2) Settlement Class Counsel in no way purport to currently represent those particular plaintiffs or to be taking any actions on their behalf.  Nonetheless, 23(b)(2) Settlement Class Counsel respectfully submit that the full incentive award amounts should be allocated, in the event these plaintiffs seek to apply for their respective awards.

1   precedent and the facts of this case.

2   **II.   <u>BACKGROUND</u>**

3   These cases having been pending before this Court since Fall 2005.

4   On or about November 2, 2005, plaintiffs in *White* filed in this District separate

5   actions against each of the Defendants, alleging that Defendants had violated the

6   FCRA by recklessly failing to follow reasonable procedures in the reporting, and

7   reinvestigation of reporting, of debts discharged in Chapter 7 bankruptcy

8   proceedings.  Plaintiffs alleged that Defendants continued to report such debts as

9   due and owing when in fact they had been discharged in bankruptcy.

10   Prior to the filing of *White*, on October 3, 2005, Jose Hernandez filed a

11   similar action against Defendants in the Northern District of California.  *Hernandez*

12   was then transferred to this Court, and, on August 11, 2006, was consolidated with

13   *White* via three separate Second Amended Consolidated Class Action Complaints,

14   one against each Defendant (herein, "*White/Hernandez*").[3]

15   Subsequently, *White/Hernandez* was related to two other actions,

16   *Acosta* and *Pike*.  On May 12, 2003, Jose L. Acosta, Jr., had filed an action in

17   California Superior Court against Trans Union, and on August 14, 2006, he filed

18   again in this District.[4]  On October 14, 2005, Kathryn Pike had filed an action in

19   California Superior Court against Equifax, which was later removed to this District

20   and transferred to this Court as related to *White/Hernandez*.

21   Therefore, each of these cases was either filed, transferred, or removed

22   such that they are in the Central District before the Honorable Judge David O.

23   Carter.

24

25

26   [3] The remaining named plaintiffs under the *White/Hernandez* Second Amended Complaints are Robert Radcliffe, Chester Carter, Maria Falcon, Clifton C. Seale, III, and Jose Hernandez.

27   [4] The remaining named plaintiffs in *Acosta* are Robert Randall and Bertram Robison.

28

PLTFS' MPA IN SUPPORT OF MOTION FOR ORDER
GRANTING APPLICATION FOR ATTORNEYS' FEES
CASE NO. 05-CV-1070 DOC

1    In this litigation, Plaintiffs alleged that each Defendant failed to

2    maintain reasonable procedures to assure the accurate reporting of debts that have

3    been discharged in bankruptcy.  Plaintiffs contended that each Defendant's then-

4    existing procedures, under which Defendants relied primarily on creditors and

5    public record vendors to report the discharged status of debts and judgments, were

6    unreasonable procedures under the FCRA.  They further alleged that Defendants

7    failed to employ reasonable reinvestigation procedures pursuant to the FCRA.

8    Plaintiffs asserted claims for (i) willful and/or negligent violation of

9    Section 1681e(b) of the FCRA and its California counterpart, Cal. Civ. Code

10   Section 1785.14(b), for failure to maintain reasonable procedures to assure

11   maximum possible accuracy; (ii) willful and/or negligent violation of Section 1681i

12   of the FCRA and its California counterpart, Cal. Civ. Code Section 1785.16, for

13   failure to reasonably investigate Consumer disputes regarding the status of the

14   discharged accounts; and (iii) violation of California's Unfair Competition law,

15   Bus. & Prof. Code section 17200, *et seq.*

16   In or around September 2006, Defendants answered the various

17   Second Amended Complaints, denying the allegations therein, denying that the

18   actions were suitable for certification pursuant to Federal Rule of Civil

19   Procedure 23, and asserting numerous affirmative defenses that Defendants contend

20   are meritorious.  Defendants contended that their procedures at issue in the

21   Litigation for reporting and reinvestigating the discharged status of debts were

22   reasonable and complied fully with the requirements of the FCRA and equivalent

23   states laws.

24   In the Court's rulings and comments to counsel, the Court urged the

25   Parties to reach agreement concerning alternative procedures for Defendants to

26   report pre-bankruptcy debts.  The parties proceeded to mediation and conducted

27   arms-length and contentious negotiations over the course of 10 months, including

28   seven in-person sessions with a JAMS mediator, the Hon. Lourdes Baird (Ret.), as

1   well as several additional telephonic sessions with her.  These negotiations were

2   informed by extensive discovery conducted by 23(b)(2) Settlement Class Counsel.[5]

3          The Parties subsequently entered into the Injunctive Relief Settlement

4   Agreement, which provides for new, alternative procedures for the reporting of

5   debts subject to Chapter 7 discharge orders.  As this Court has noted, the new

6   procedures embodied by the Injunctive Relief Settlement are a "substantial benefit

7   to the public,"[6] presumptively recognizing that they are a vast improvement over

8   Defendants' prior procedures because they will dramatically improve the accuracy

9   of Defendants' credit reports.

10         This Court approved the Injunctive Relief Settlement on August 19,

11  2008 (Dkt. 338), specifically finding that the new credit reporting procedures and

12  the Settlement as a whole "are fair, reasonable and adequate and are in the best

13  interests of the 23(b)(2) Settlement Class."  Order at 32.

14         The Injunctive Relief Settlement Agreement, to which all parties and

15  all counsel agreed, expressly provides that the Court would retain jurisdiction to

16  address the issue of any award to counsel for their fees and costs.  In its Order

17  approving the Injunctive Relief Settlement, the Court ruled that it would not

18  address any such fee request until after the remaining causes of action had been

19  resolved.  (A proposed alternative order, which the Court declined, would have

20  permitted counsel to apply for fees immediately upon the approval of the

21  agreement.)  Subsequent mediation sessions ensued with Mediator Randall Wulff,

22  resulting in the resolution of remaining causes of action seeking monetary relief,

23  *i.e.*, the proposed 23(b)(3) Settlement.  Independently and separately during

24  ────────────

[5] *See infra* at 11 for detailed description of discovery conducted, including

25  reviewing more than 30,000 pages of documents produced by Defendants, producing more than 10,000 pages of documents, and taking and defending more

26  than 30 depositions.  *See also* Sobol Inj. Fee Decl. ¶ 6, Declaration of Michael A. Caddell in Support of Plaintiffs' Motion for Order Granting Plaintiffs' Application

27  for Attorneys' Fees For Injunctive Relief Settlement ("Caddell Inj. Fee Decl.") ¶ 19.

[6] Tr. of Oct. 27, 2008 Hearing at 14.

28

mediation sessions with Mr. Wulff, Defendants also agreed that 23(b)(2) Settlement Class Counsel could apply for an award of fees relating to the Injunctive Relief Settlement which they would agree to pay up to the amount of $6 million.  Seeking "complete peace," and consistent with the Court's direction that the issue of fees be addressed only after resolution of all claims, Defendants agreement to pay such fees was made contingent on resolution of all claims.  This agreement was later memorialized in the Injunctive Relief Fee Agreement.[7]

## III.   ARGUMENT

### A.   The Requested Fee Is The Result Of Arm's Length Negotiations By Experienced Counsel

The requested fee amount is based on extensive post-settlement arm's-length negotiations between experienced and highly skilled lawyers for Plaintiffs and Defendants.  As the Supreme Court explains: "A request for attorney's fees should not result in a second major litigation.  Ideally, of course, litigants will settle the amount of a fee." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).  "A court should refrain from substituting its own value for a properly bargained-for agreement." *In re Apple Computer, Inc. Derivative Litig.*, 2008 U.S. Dist. LEXIS 108195, at *12 (N.D. Cal. November 5, 2008).  Thus, where there is no evidence of collusion and no detriment to the parties, courts "should give substantial weight to a negotiated fee amount, assuming that it represents the parties' 'best efforts to

---

[7] Although Messrs. Juntikka and Wolf were parties to the Injunctive Relief Agreement, they refused to execute the Injunctive Relief Fee Agreement.  They stated that given their objection to the monetary relief settlement, "as the award of attorneys fees under the proposed Injunctive Relief Fee Agreement is contingent upon the approval of a Monetary Relief Agreement our clients oppose, we do not think it would be appropriate for us to commit ourselves to the Injunctive Relief Fee Agreement in any manner."  Sobol Inj. Fee Decl. ¶ 13.  Mr. Juntikka and Mr. Wolf went on to say, "That is not to say that we challenge the propriety of a separate fee award in connection with our mutual success in obtaining injunctive relief for the classes or that we necessarily have any disagreement with the allocation formulas you are proposing." *Id.*

1  understandingly, sympathetically, and professionally arrive at a settlement as to

2  attorney's fees.'" *Ingram v. Coca-Cola Co.*, 200 F.R.D. 685, 695 (N.D. Ga. 2001).

3  "[T]he involvement of multiple counsel from different firms suggests a lack of

4  collusion." *In re Apple Computer, Inc. Derivative Litig.*, 2008 U.S. Dist. LEXIS

5  108195, at *12.

6          Here, the 23(b)(2) Settlement Class Counsel negotiated with

7  Defendants to reach a fee they regarded as reasonable based on half of their lodestar

8  up to the point of the Injunctive Relief Fee Agreement.  The fee was properly

9  bargained for without collusion or detriment to the parties, and after the Injunctive

10 Relief Agreement had been negotiated and approved by this Court.

11         The negotiated fee amount is also justified by 23(b)(2) Settlement

12 Class Counsel's extensive experience and skill in consumer class actions and other

13 complex litigation.  Sobol Inj. Fee Decl. ¶¶ 2, 5; Caddell Inj. Fee Decl. ¶¶ 3-14, 18;

14 Declaration of Leonard A. Bennett In Support of Plaintiffs' Notice of Motion and

15 Motion for Order Granting Plaintiffs' Application for Attorneys' Fees for Monetary

16 Relief Settlement ("Bennett Decl.") ¶¶ 5-10, 15; Declaration of Lee A. Sherman in

17 Support of Plaintiffs' Motion for Order Granting Plaintiffs' Application for

18 Attorneys' Fees For Injunctive Relief Settlement ("Sherman Inj. Fee Decl.")  ¶¶ 3-

19 4, 7; Declaration of Mitchell A. Toups In Support of Plaintiffs' Motion for Order

20 Granting Plaintiffs' Application for Attorneys' Fees For Injunctive Relief

21 Settlement ("Toups Inj. Fee Decl.") ¶¶ 2, 5; Declaration of Stuart T. Rossman In

22 Support of Plaintiffs' Motion for Order Granting Plaintiffs' Application for

23 Attorneys' Fees For Injunctive Relief Settlement ("Rossman Inj. Fee Decl.") ¶ 2;

24 Declaration of Charles Delbaum In Support of Plaintiffs' Motion for Order

25 Granting Plaintiffs' Application for Attorneys' Fees For Injunctive Relief

26 Settlement ("Delbaum Inj. Fee Decl.") ¶ 2.  The 23(b)(2) Settlement Class Counsel

27 worked solely on a contingent fee basis, while vigorously pursuing the claims on

28 behalf of the entire 23(b)(2) Settlement Class.  Sobol Inj. Fee Decl. ¶ 17; Caddell

1   Inj. Fee Decl. ¶ 25; Bennett Decl. ¶ 19; Sherman Inj. Fee Decl. ¶ 14; Toups Inj. Fee

2   Decl. ¶ 12; Rossman Inj. Fee Decl. ¶ 6; Delbaum Inj. Fee Decl. ¶ 6.  Counsel has

3   engaged in meaningful discovery, extensive motion practice, and settlement

4   negotiations.

5       **B.    <u>The Requested Fee Is Reasonable Under The Lodestar Method</u>**

6           "Attorneys' fees provisions included in proposed class action

7   settlement agreements are, like every other aspect of such agreements, subject to

8   the determination whether the settlement is 'fundamentally fair, adequate, and

9   reasonable.'"  *Staton v. Boeing Co.*, 327 F.3d 938, 963 (9th Cir. 2003) (quoting

10  Fed. R. Civ. P. 23(e)).  The court has the discretion to use the lodestar method to

11  determine the reasonableness of the requested fees.  *See Hanlon v. Chrysler Corp.*,

12  150 F.3d 1011, 1029 (9th Cir. 1998) (citing *Paul, Johnson, Alston & Hunt v.*

13  *Graulty*, 886 F.2d 268, 272 (9th Cir. 1989)); *see also Vizcaino v. Microsoft Corp.*,

14  290 F.3d 1043, 1048-1049 (9th Cir. 2002) ("Selection of the benchmark or any

15  other rate must be supported by findings that take into account all of the

16  circumstances of the case," including the results achieved for the class, both

17  monetary and non-monetary, and the risk faced by class counsel in prosecuting the

18  case.)

19          The attorneys' fees are expressly provided for in the Settlement

20  Agreement Re:  Injunctive Relief Fees, filed on May 1, 2009 (Dkt. 413-2), and

21  Defendants do not contest the amount of the award requested by Class Counsel.

22  Sobol Inj. Fee Decl. ¶ 27; Caddell Inj. Fee Decl. ¶ 36; Sherman Inj. Fee Decl. ¶ 24;

23  Rossman Inj. Fee Decl. ¶ 14; Delbaum Inj. Fee Decl. ¶ 13.  In addition, the fact that

24  these fees would be requested was disclosed to Class Members in the Notice

25  regarding the monetary relief settlement.[8]  Sobol Inj. Fee Decl. ¶ 28; Caddell

26  ───────────────
    [8] Although the 23(b)(2) Settlement did not require notice, and beneficiaries of the
27  injunctive relief provided by the Settlement are not co-extensive with the monetary
    relief settlement class (for example, roughly one-half of the monetary relief
28  settlement class members no longer have any bankruptcy-related reporting on their
    credit reports, because of aging requirements, and the injunctive relief settlement

1   Inj. Fee Decl. ¶ 37; Sherman Inj. Fee Decl. ¶ 25; Rossman Inj. Fee Decl. ¶ 15;

2   Delbaum Inj. Fee Decl. ¶ 14.

3          The starting point for computing the lodestar amount is to multiply the

4   number of hours the prevailing party reasonably expended on the litigation by a

5   reasonable hourly rate.  *See Caudle v. Bristow Optical Co., Inc.*, 224 F.3d 1014,

6   1028 (9th Cir. 2000); *see also Hensley v. Eckerhart*, 461 U.S. 424 (1983).  The

7   hourly rates used must be "in line with those prevailing in the community for

8   services by lawyers of reasonably comparable skill, experience and reputation."

9   *Blum v. Stenson*, 465 U.S. 886, 895 (1984).

10          Once this "raw" lodestar figure has been determined, the court may

11   take into consideration additional factors to enhance the lodestar, including: the

12   time and labor required; the novelty and difficulty of the questions involved; the

13   skill requisite to perform the legal service properly; whether the fee is fixed or

14   contingent; the amount involved and the results obtained; the experience,

15   reputation, and ability of the attorneys; and awards in similar cases.  *See Ballen v.*

16   *City of Redmond*, 466 F.3d 736, 746 (9th Cir. 2006) (citing *Cunningham v. County*

17   *of Los Angeles,* 879 F.2d 481, 252 n.4 (9th Cir. 1988) and *Kerr v. Screen Extras*

18   *Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975)).

19        **1.**    <u>**Class Counsel's Hourly Rates are Reasonable**</u>

20          The hourly rates that 23(b)(2) Settlement Class Counsel seek for their

21   counsel are reasonable.  In assessing the reasonableness of an attorney's hourly

22   rate, courts should consider the prevailing market rate in the community for similar

23   services by lawyers of reasonably comparable skill, experience, and reputation.

24   *Blum v. Stenson*, 465 U.S. 886, 895-96 & n.11 (1984).  Courts look to the forum in

25   which the District is located to determine the hourly rates that should apply.

26

27   will arguably provide the greatest benefits to the millions of consumers who will

28   file for bankruptcy *in the future*), this amount was nonetheless disclosed in the monetary relief settlement notice.

848681.7

1    *Camacho v. Bridgeport Financial, Inc.*, 523 F.3d 973, 979 (9th Cir. 2008)

2    ("[a]ffidavits of the plaintiffs' attorney[s] and other attorneys regarding prevailing

3    fees in the community, and rate determinations in other cases[, particularly those

4    setting a rate for the plaintiff's' attorney,] are satisfactory evidence of the prevailing

5    market rate" (quoting *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d

6    403, 407 (9th Cir. 1990)).

7           The 23(b)(2) Settlement Class Counsel's collective lodestar to date is

8    $4,762,018.25 for 10,192.60 total hours worked on the Injunctive Relief Settlement

9    from the inception of the Litigation to April 3, 2008, plus time incurred subsequent

10   to April 3, 2008 in connection with the approval hearing for the injunctive relief

11   settlement.  Sobol Inj. Fee Decl. ¶¶ 19-20; Caddell Inj. Fee Decl. ¶¶ 27-28;

12   Delbaum Inj. Fee Decl. ¶ 8; Rossman Inj. Fee Decl. ¶ 8; Bennett Decl. ¶ 21;

13   Sherman Inj. Fee Decl. ¶ 16; Toups Inj. Fee Decl. ¶ 14.[9]  One-half of the time

14   incurred from inception through the time of the filing of the 23(b)(2) Settlement

15   (April 3, 2008) is allocated to the 23(b)(2) Settlement (plus time incurred

16   subsequent to April 3, 2008 in connection with the hearing on the approval of that

17   settlement) and the other one-half is allocated to the 23(b)(3) Settlement.[10]

18          In this case, 23(b)(2) Settlement Class Counsel have extensive

19   experience in the area of consumer class actions, other complex class actions, and

20   FCRA litigation.  Sobol Inj. Fee Decl. ¶¶ 2, 5; Caddell Inj. Fee Decl. ¶¶ 3-14, 18;

21   Delbaum Inj. Fee Decl. ¶ 2; Rossman Inj. Fee Decl. ¶ 2; Bennett Decl. ¶¶ 5-10, 15;

---

22   [9] These totals are exclusive of time incurred by Mr. Juntikka's and Mr. Wolf's

23   offices.  The fee requested herein by the other 23(b)(2) Settlement Class Counsel is fully justified based solely upon the results achieved and their lodestar as set forth herein.

24   [10] From April 4, 2008 through December 10, 2009 (less any time incurred with

25   respect to the injunctive relief approval hearing), the attorney and staff timekeepers of 23(b)(3) Settlement Class Counsel have billed a total of 17,232.15 hours, for a

26   total lodestar of $8,307,421.75.  *See* Plaintiffs' Mem. of Points and Authorities in Support of Motion for Order Granting Application for Attorneys' Fees for

27   Monetary Relief Settlement at 9 and accompanying citations.  All of this time is allocated to the 23(b)(3) Settlement because it was incurred after the approval of the

28   23(b)(2) Settlement.

Sherman Inj. Fee Decl. ¶¶ 3-4, 7; Toups Inj. Fee Decl. ¶¶ 2, 5.  Class Counsels'
customary rates, which were used for purposes of calculating lodestar here, are
based on prevailing fees in this District and have been approved in the Central
District of California and other Courts.  Sobol Inj. Fee Decl. ¶ 23; Caddell Inj. Fee
Decl. ¶ 31; Delbaum Inj. Fee Decl. ¶ 10; Rossman Inj. Fee Decl. ¶ 11; Bennett
Decl. ¶ 26; Sherman Inj. Fee Decl. ¶ 19; Toups Inj. Fee Decl. ¶ 18.  That these rates
are reasonable is further confirmed by the fact that LCHB and Caddell & Chapman
also represent plaintiffs on an hourly basis and are paid according to their current
hourly rates, the same rates used to calculate its lodestar in this matter.  Sobol Inj.
Fee Decl. ¶ 24; Caddell Inj. Fee Decl. ¶ 32.

### 2.    The Number of Hours Class Counsel Worked is Reasonable

The number of hours that Plaintiffs are claiming—10,192.60 hours—is
reasonable.[11]  Each firm made every effort to prevent the duplication of work or
inefficiencies that might have resulted from having multiple firms working on the
case.  The 23(b)(2) Settlement Class Counsel divided into three discovery teams,
one for each Defendant.  Counsel carefully coordinated discovery efforts to ensure
that they were doing identical discovery of each Defendant and held numerous
meetings and conference calls to discuss documents and depositions and keep all
teams informed of what information they were learning and what discovery was
still needed.  Sobol Inj. Fee Decl. ¶ 6; Caddell Inj. Fee Decl. ¶ 19; Toups Inj. Fee
Decl. ¶ 6.

The work 23(b)(2) Settlement Class Counsel did was meaningful.
Since 2005, Counsel undertook substantial investigation, fact-gathering, and formal
discovery (including review of tens of thousands of pages of documents, retention

---

[11] It is well established that Plaintiff's counsel is "not required to record in great
detail how each minute of his time was expended."  *Hensley*, 461 U.S. at 437 n.12.
Instead, counsel need only "identify the general subject matter of his time
expenditures."  *Id.* (citations omitted); *see also Fischer v. SJB-P.D. Inc.*, 214 F.3d
1115, 1121 (9th Cir. 2000) (concluding that "a summary of the time spent on a
broad category of tasks such as pleadings and pretrial motions" met "basic
requirement" of documentation).

- 11 -

and consultation of numerous experts in the fields of credit reporting and consumer bankruptcies, interviews with numerous consumers, review of thousands of consumer credit reports, and numerous depositions) in support of the litigation. Before the Injunctive Relief Settlement, Counsel took and defended more than 30 depositions, produced over 10,000 pages of documents, and reviewed over 30,000 pages of documents produced by the Defendants. *Id.* The 22 depositions taken by 23(b)(2) Settlement Counsel included depositions of each of Defendants' experts, as well as testimony from Directors, Vice Presidents, other senior officers, and analysts and consultants from Defendants' departments handling, among other subjects, data services, consumer affairs, technical, software, and modeling, compliance, decision analytics and predictive sciences services. Sobol Inj. Fee Decl. ¶ 6; Caddell Inj. Fee Decl. ¶ 19; Toups Inj. Fee Decl. ¶ 6.

The 23(b)(2) Settlement Class Counsel also retained several experts who have filed numerous declarations with the Court. *Id.* Moreover, the parties have engaged in extensive motion practice before reaching the Settlement Agreement. They have attended several status conferences and multiple-day hearings on settlement approval and summary judgment. *Id.* This Court has presided over the hearings and, through the date the injunctive relief settlement agreement was filed, executed no fewer than twenty-eight minute entries, entered at least thirty-eight signed orders, and authored four published opinions. Sobol Inj. Fee Decl. ¶ 4; Caddell Inj. Fee Decl. ¶ 17; Toups Inj. Fee Decl. ¶ 4; Sherman Inj. Fee Decl. ¶ 6.

Counsel participated in seven full days of mediation with the participation of Judge Baird. Sobol Inj. Fee Decl. ¶ 7; Caddell Inj. Fee Decl. ¶ 20; Toups Inj. Fee Decl. ¶ 7; Sherman Inj. Fee Decl. ¶ 9. All of the parties also conducted numerous telephonic conferences with Judge Baird, both singly and as a group. *Id.* Counsel for the parties exchanged numerous written drafts of settlement proposals between the mediation sessions. *Id.* In addition, with the knowledge and

agreement of Judge Baird, 23(b)(2) Settlement Class Counsel engaged in separate settlement discussions with each of the Defendants, including an in-person meeting with one of the Defendants. *Id.* Finally, Class Counsel negotiated and successfully moved for final approval of the Injunctive Relief Settlement. Sobol Inj. Fee Decl. ¶¶ 8-10; Caddell Inj. Fee Decl. ¶¶ 21-22; Toups Inj. Fee Decl. ¶¶ 8-9; Sherman Inj. Fee Decl. ¶¶ 10-11. Counsel performed this work entirely on a contingent basis and have not been compensated for their time. Sobol Inj. Fee Decl. ¶ 17; Caddell Inj. Fee Decl. ¶ 25; Bennett Decl. ¶ 19; Sherman Inj. Fee Decl. ¶ 14; Toups Inj. Fee Decl. ¶ 12; Rossman Inj. Fee Decl. ¶ 6; Delbaum Inj. Fee Decl. ¶ 6.

Not only were the hours that 23(b)(2) Settlement Class Counsel put into this case reasonable, but Class Counsel has served the public good by achieving substantial injunctive relief that has changed the way the Defendants report debts discharged in bankruptcy. Thus, 23(b)(2) Settlement Class Counsel respectfully submit that this Court may and should find that all of the hours Counsel spent in this action were reasonably incurred.

Based on all of their hours and rates, 23(b)(2) Settlement Class Counsel's lodestar is $4,762,018.25. The Settlement Agreement provides that Counsel may seek an award for $6 million in attorneys' fees and costs, which – after deducting service awards to the class representatives and counsel's expenses – represents a modest 1.19 multiplier of the lodestar in this Litigation allocated to obtaining the Injunctive Relief Settlement.[12]

---

[12] The 23(b)(2) Settlement Class Counsel making this application have allocated one-half of their total lodestar incurred in the Litigation up to the date the parties filed the Injunctive Relief Settlement Agreement (*i.e.*, April 3, 2008), plus a small amount of time incurred thereafter, to their efforts in obtaining approval of the Injunctive Relief Settlement. As this Court has noted, "[t]hese fees and costs are so intertwined with the injunctive relief portion of the lawsuit, and this Court would spend an inordinate amount of time in disagreements about what portion of plaintiffs' counsel's hours were billed to strictly injunctive relief and what the carryover is to class cert and the remaining claims." August 19, 2008 Hearing Tr. at 19. Therefore, the parties settled on half the lodestar amount as a fair division of 23(b)(2) and 23(b)(3) Settlement Class Counsel's time and hours in pursuing and achieving both Settlements on behalf of the Class.

- 13 -

C.     **Class Counsel Has Achieved Significant Relief For The Class**

The Injunctive Relief Settlement went beyond mere reasonableness or adequacy because it achieved virtually *everything* that Plaintiffs could have achieved had they prevailed on the merits of their claims for injunctive relief. Plaintiffs alleged that Defendants have erroneously reported debts discharged in Chapter 7 bankruptcy proceedings as due and owing.  The Injunctive Relief Settlement provided reasonable procedures for the Defendants to identify those debts and then report them in a manner consistent with them having been discharged in bankruptcy, *i.e.*, with a zero balance and an indication that it was included in bankruptcy.  These procedures are to be employed with respect to Defendants' current credit files and in the future, thus benefiting millions of consumers who will be forced to file bankruptcy in the years to come.  Had Plaintiffs established at trial that Defendants' present procedures for reporting this type of debt failed to meet the requirements of the FCRA or its California counterpart, then all they could have expected to obtain on their injunctive relief claims is an order requiring Defendants to adopt some alternative reasonable procedures.[13]  Not only does the Injunctive Relief Settlement do that, it actually specifies the alternative procedures.  Accordingly, the Injunctive Relief Settlement represents complete and total victory on Plaintiffs' injunctive relief claims.

Moreover, the nature of the relief obtained is a dramatic—indeed termed "ground breaking" and a "sea-change" by commentators—in that, for the first time, the credit reporting agencies will not simply repeat the information

---

[13] Plaintiffs recognize that this Court has ruled in other cases, and tentatively on a motion in this case, that injunctive relief may not be available under the FCRA.  If that held true for this litigation, then the injunctive relief resulting from this litigation would be extended only to California residents under California's counterpart to the FCRA.  However, the Settlement nonetheless provides injunctive relief to all consumers throughout the United States.  Therefore, the Injunctive Relief Settlement eliminates all risk that some consumers may not be entitled to an equitable injunctive remedy, and in this manner as well, may exceed what could have reasonably been expected to have been achieved via litigation.

1   provided to them by credit furnishers, but will instead cross-check that information

2   against the public records section of the report and make adjustments if a

3   bankruptcy discharge is reflected.  As one long-time and frequently-consulted

4   participant in and expert on the credit industry has characterized it, "I have never

5   seen such a significant policy and procedural change in my time in the industry."

6   Declaration of John Ulzheimer ¶ 6.

7           The Court itself acknowledged the achievement of 23(b)(2) Settlement

8   Class Counsel in obtaining the Injunctive Relief Settlement, stating: "I think an

9   incredible accomplishment was accomplished by both sides in terms of the

10   injunctive relief. . . .  I don't think, at least, this Court had the capability of doing

11   what each of you were able to do after reading your settlement agreement. . . .  And

12   in a free market economy with those dynamics, both sides have nothing [but] the

13   Court's praise for what I think turns out to be a substantial benefit for the public."

14   *See* Tr. of October 27, 2008 Hearing at 14.

15           Given 23(b)(2) Settlement Class Counsel's success in achieving

16   significant changes to Defendants' reporting procedures, the Court has at least three

17   bases for awarding 23(b)(2) Settlement Class Counsel reasonable attorneys' fees

18   and costs at this time, each of which is sufficient on its own to support Counsel's

19   request.  First, having materially altered the legal relationship between the parties to

20   the class members' benefit, 23(b)(2) Settlement Class Counsel are entitled to

21   recover fees and costs under the fee-shifting provision of the FCRA.  Second,

22   having achieved a primary litigation objective in these cases – significant changes

23   to Defendants' procedures – through the settlement, 23(b)(2) Settlement Class

24   Counsel are entitled to recover fees and costs under the fee-shifting provision of the

25   CCRAA.  Finally, having successfully enforced an important right affecting the

26   public interest – the right of consumers to have their credit information reported

27   accurately – 23(b)(2) Settlement Class Counsel are entitled to recover fees and

28   costs under California's "private attorney general" statute, Cal. Code Civ. Pro.

§ 1021.5.  These bases are addressed in turn below.

### 1.    Class Counsel are Entitled to Recover Fees and Costs as a "Successful" Party Under the FCRA.

Attorneys' fees and costs may be recovered "in the case of any successful action to enforce any liability under" the FCRA.  15 U.S.C. §§ 1681n (a) (3), 1681o(a)(3).  Though the statute does not define more precisely what it means for a party to be "successful," courts applying this provision have relied on the two-part test established by the Supreme Court in *Buckhannon* for determining whether a party is entitled to fees as a "prevailing" party.  *See Nagle v. Experian Info. Solutions, Inc.*, 297 F.3d 1305, 1307 (11th Cir. 2002); *Crabill v. Trans Union, L.L.C.*, 259 F.3d 662, 666-67 (7th Cir. 2001).  Under this standard, a plaintiff may recover fees where:  (1) she achieves a material alteration of the legal relationship between the parties that benefits her; and (2) such alteration is "judicially sanctioned."  *Buckhannon Bd. & Care Home Inc. v. West Virginia Dept. of Health & Human Res.*, 532 U.S. 598, 604-05 (2001); *Nagle*, 297 F.3d at 1307.

Though some "judicial imprimatur" is required to recover fees under the *Buckhannon* standard, a final judgment on the merits is not required.  *See Carbonnel v. INS*, 429 F.3d 894, 898-99 (9th Cir. 2005).  Indeed, the Ninth Circuit has repeatedly found plaintiffs to be entitled to fees under *Buckhannon* where, as here, the parties enter into a judicially-enforceable settlement agreement.  *See, e.g., Richard S. v. Dept. of Developmental Servs.*, 317 F.3d 1080, 1087 (9th Cir. 2003) (noting the judicial imprimatur on a settlement that "materially altered the legal relationship between the parties, because the defendants were required to do something directly benefiting the plaintiffs that they would not otherwise have had to do").; *Barrios v. Cal. Interscholastic Fed'n*, 277 F.3d 1128, 1134 (9th Cir. 2002); *Labotest, Inc. v. Bonta*, 297 F.3d 892, 895 (9th Cir. 2002); *Fischer*, 214 F.3d at 1118 (finding it "clear" in a case without any monetary relief that plaintiff was a "prevailing party" under *Buckhannon*, since he obtained "an enforceable settlement

1   that requires the [defendant] to do something it otherwise would not be required to

2   do").

3          Like the plaintiffs in *Richard S.* and *Fischer*, Plaintiffs here qualify as

4   "prevailing" or "successful" under *Buckhannon* as a result of the settlement

5   agreement.  The first prong of the *Buckhannon* test is easily satisfied since Plaintiffs

6   have secured an injunction enforcing the agreement which requires Defendants to

7   take significant steps that they would not otherwise have been required to take.  *See*

8   *Richard S.*, 317 F.3d at 1087.  Pursuant to the Court's Order implementing the

9   settlement, Defendants have been required to completely revamp their credit

10  reporting procedures.  Thus, the "judicial imprimatur" required by the second prong

11  of the *Buckhannon* test is present as well.  Moreover, under the terms of the

12  settlement and the Court's order approving it, the Court retained jurisdiction to

13  resolve disputes arising out of the agreement (i.e. the settlement is a judicially-

14  enforceable agreement), and the Court retains jurisdiction to resolve both Plaintiffs'

15  remaining claims and issues related to attorneys' fees.  *See id.* at 1088; *Fischer*,

16  214 F.3d at 1118; *see also Labotest*, 297 F.3d at 895 (finding sufficient judicial

17  imprimatur where Court incorporated stipulation into order).[14]  The Defendants

18  effectively recognized this when they entered into the Settlement Agreement Re:

19  [14] This case is distinguishable from *Nagle* and *Crabill*, where plaintiffs obtained
    absolutely no relief, equitable or monetary.  *See Nagle*, 297 F.3d at 1306 ("to be
20  'successful' the plaintiff must receive some relief beyond the mere entry of
    judgment"); *Crabill*, 259 F.3d at 666 (denying fees where the plaintiff was left
21  "emptyhanded") (citation omitted).  Here, Plaintiffs achieved considerable relief in
    the form of defendants' judicially-enforceable obligation to change their
22  procedures.  While the court in *Nagle* concluded that monetary recovery is
    necessary to be a "successful" party under the FCRA, the plaintiff in that case did
23  not seek equitable relief, and the court's conclusion is wholly-based on its finding
    that damages are the only form of relief available under the FCRA to a private
24  plaintiff.  *See Nagle*, 297 F.3d at 1306.  There is a circuit split on the question of
    whether equitable relief is available under the FCRA.  *Compare, e.g., id. with*
25  *Crabill*, 259 F.3d at 664 (implying that injunctive relief is available under the
    FCRA, and that plaintiff could have recovered fees if he had obtained injunctive
26  relief).  The Ninth Circuit has not addressed this issue.  In any event, this Court
    need not decide the question of whether, in theory, equitable relief would have been
27  available here had the cases gone to trial, since there is no question that Plaintiffs in
    fact achieved sufficient equitable relief to qualify as "successful" or "prevailing"
28  parties under the Ninth Circuit's interpretation of *Buckhannon*.

1    Injunctive Relief Fees mentioned above.

2          The fact that the settlement did not resolve Plaintiffs' claims for

3    damages, which are still pending, should not impact the Court's analysis.  It is clear

4    that "a plaintiff can be the prevailing party based exclusively on injunctive relief."

5    *Fischer*, 214 F.3d at 1118 (citation omitted).  Moreover, multiple courts have found

6    plaintiffs to be "prevailing," and thus entitled to fees, where they were successful in

7    obtaining injunctive relief, but tried and failed to recover damages.  *See id.*; *Levine*

8    *v. City of Alameda*, 2006 WL 1867532, * 2-3 (N.D. Cal. 2006).  That Plaintiffs here

9    may obtain additional relief for the class in this case does not change the fact they

10   have already achieved sufficient relief to be entitled to fees under the FCRA.  *See*

11   *Fischer*, 214 F.3d at 1118.

12         Moreover, as noted above, while the beneficiaries of the 23(b)(2)

13   Settlement will include many members of the proposed 23(b)(3) settlement class,

14   the two classes are not co-extensive, and the greatest benefit of the injunctive relief

15   provided by the 23(b)(2) Settlement may be to the as-yet unknown millions of

16   consumers who will be forced to file for bankruptcy in the future.

17        **2.**     **Class Counsel Are Entitled to Recover Fees and Costs Under**
               **the CCRAA**

18

19         Like the FCRA, the CCRAA contains a fee-shifting provision,

20   pursuant to which "prevailing plaintiffs in any action commenced under this section

21   shall be entitled to recover court costs and reasonable attorney's fees."  Cal Civ.

22   Code § 1785.31(d).  Also like the FCRA, the fee-shifting provision of the CCRAA

23   does not provide a precise definition of "prevailing."  Absent specific statutory

24   guidance, courts applying California law take a "practical" or "common sense"

25   approach to determining whether a party has "prevailed," an approach that is more

26   lenient than the two-part *Buckhannon* test applied to fee claims under federal

27   statutes.  *See Zuehlsdorf v. Simi Valley Unified Sch. Dist.*, 148 Cal. App. 4th 249,

28   257 (2007); *Parrott v. Mooring Townhomes Ass'n, Inc.*, 112 Cal. App. 4th 873, 879

n.6 (2003).[15]  Under this approach, a plaintiff is considered to have "prevailed" when either "'the lawsuit was the catalyst motivating the defendants to modify their behavior or the plaintiff achieved the primary relief sought.'"  *Barrios*, 277 F.3d at 1137 (quoting *Donald v. Café Royale, Inc.*, 218 Cal. App. 3d 168, 185 (1990)); *see also Zuehlsdorf*, 148 Cal. App. 4th at 257.  Both are true here.

First, the record is clear that Plaintiffs' lawsuits were the motivating factor behind the extensive changes to Defendants' procedures that are required by the settlement.  Defendants initially resisted the changes that Plaintiffs sought and achieved here, and continued to resist such changes as these lawsuits progressed. Sobol Inj. Fee Decl. ¶ 18; Caddell Inj. Fee Decl. ¶ 21.  Only after three years of litigation and seven full-day mediation sessions, as well as numerous other telephonic conferences and independent settlement discussions between Plaintiffs and Defendants and multiple exchanges of written drafts of settlement proposals, did Defendants finally agree to change their procedures.  *Id.*

Second, Plaintiffs have achieved a primary litigation objective in these cases.  In their Second Amended Complaint, Plaintiffs alleged that Defendants violated multiple provisions of the CCRAA by failing to maintain reasonable procedures to assure the accurate reporting of debts that have been discharged in bankruptcy, and sought injunctive relief requiring Defendants to modify their procedures to comply with the CCRAA.  Second Amended Consolidated Class Action Complaints for Damages and Injunctive Relief, Dkt. Nos. 49 (05-cv-1070), 38 (05-cv-7821), and  66 (05-cv-1073).  Plaintiffs achieved this objective through the settlement agreement, pursuant to which all three Defendants agreed to substantially modify their procedures as Plaintiffs sought.

Given the extensive procedural changes that Defendants agreed to

---

[15] It is appropriate for this Court to apply California state law, and to rely on the holdings of California state courts, in analyzing Plaintiffs' entitlement to fees under the CCRAA and Cal. C. Civ. Pro. § 1021.5.  *See Barrios*, 277 F.3d at 1137; *Mangold v. Cal. Pub. Util. Comm'n*, 67 F.3d 1470, 1478-79 (9th Cir. 1995).

1  implement, and the clear role that Plaintiffs' lawsuits played in motivating

2  Defendants to implement those changes, Plaintiffs have "prevailed" as a practical

3  matter in this case, and are entitled to fees under the CCRAA.

4          **3.**    **Class Counsel are Entitled to Recover Fees Under Code of**
**Civil Procedure §1021.5**

5

6          Alternatively, Plaintiffs are entitled to recover fees and costs under

7  California's "private attorney general" law, Cal. Code Civ. Pro. § 1021.5, which

8  "permits an award of attorneys' fees to a 'successful party' in an 'action which has

9  resulted in the enforcement of an important right affecting the public interest.'"

10  *Skaff v. Meridien N. Amer., Beverly Hills, LLC*, 506 F.3d 832, 843 (9th Cir. 2007).

11          Plaintiffs here have clearly been "successful," as they have obtained

12  considerable relief for the class in this case through a settlement which requires

13  Defendants to make significant changes to their procedures.  *See Skaff*, 506 F.3d at

14  843-44 (relief obtained through a settlement is sufficient to make a party

15  "successful" under § 1021.5) (citing *Lyons v. Chinese Hosp. Ass'n*, 136 Cal. App.

16  4th 1331, 1345 (2006)).[16]

17          Moreover, Plaintiffs' efforts in this case have clearly resulted in the

18  enforcement of important rights affecting the public interest.  In securing relief for

19  the class, Plaintiffs have not only protected the rights of countless consumers to

20  have the information reflected in their credit reports be accurate and up to date, they

21  have made the credit granting system more reliable and effective.  *See Graham*, 34

22  Cal. 4th at 578 n.9 (party entitled to fees under § 1021.5 where "the lawsuit itself

23  furthered the public interest by resulting in extensive consumer remedies, which

---

24  [16] Unlike the federal *Buckhannon* standard, which requires a judicially-stamped
modification of the legal relationship between the parties before fees may be

25  awarded, the California Supreme Court has held that a plaintiff may still recover
fees under § 1021.5 if her lawsuit acted as the "catalyst" motivating the defendant

26  to change its behavior, even absent a judicially-enforceable settlement or other
judicial imprimatur.  *See Graham v. DaimlerChrsyler Corp.*, 34 Cal. 4th 553, 594

27  (2004).  However, Plaintiffs here need not rely on the so-called "catalyst theory" to
recover fees under § 1021.5, since they have achieved a judicially-enforceable

28  settlement agreement.  *See Skaff*, 506 F.3d at 843.

          - 20 -

1  served as a deterrent to future [harmful] conduct").  Given that class members rely
2  on credit reports to, among other things, apply for jobs, qualify for loans, obtain
3  mortgages to buy homes, and apply for credit cards, and given the numerous related
4  harms suffered by class members and lenders when information concerning credit is
5  inaccurate, the rights enforced by Plaintiffs are nothing short of critical.

6     **D.     A Service Award To The Named Plaintiffs Is Appropriate**

7              In *Staton v. Boeing*, the Ninth Circuit recognized that "named
8  plaintiffs . . . are eligible for reasonable incentive payments."  *Staton v. Boeing Co.*,
9  327 F.3d 938, 977 (9th Cir. 2003).  Under *Staton*, such awards should be evaluated
10  using "'relevant factors, includ[ing] the actions the plaintiff has taken to protect the
11  interests of the class, the degree to which the class has benefited from those
12  actions, . . . the amount of time and effort the plaintiff expended in pursuing the
13  litigation . . . and reasonabl[e] fear[s] of workplace retaliation.'"  *Staton*, 327 F.3d
14  at 977 (citing *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998)) (ellipses in
15  original).

16             The Settlement Agreement Re: Injunctive Relief Fees provides for
17  $2,500 incentive awards for the Class Representatives in recognition of their
18  service to and efforts on behalf of the Class.  *See* Fee Agreement § 4.5 (Dkt. 413-
19  2).[17]  These incentive awards are in addition to the relief the class representatives
20  will be entitled to under the terms of the Settlement.  Throughout the litigation,
21  these Class Representatives have participated in discovery, including extensive and
22  probing depositions and responding to interrogatories and requests for production
23  of documents, and in the preparation of the pleadings.  They all were kept informed
24  of the litigation as it developed and all were kept abreast of, and signed off on, the
25  Injunctive Relief Settlement.

26             Enhancement awards like the ones requested here are appropriate.

27  _____
[17] *See* footnote 2, *supra*, regarding plaintiffs represented by Messrs. Juntikka and
28  Wolf.

PLTFS' MPA IN SUPPORT OF MOTION FOR ORDER
GRANTING APPLICATION FOR ATTORNEYS' FEES
CASE NO. 05-CV-1070 DOC

1    Unlike unnamed Class members, who will enjoy the benefits of the

2    Representatives' efforts without taking any personal action, the named Class

3    Representatives made themselves available as witnesses at deposition and subjected

4    themselves to all the obligations of named parties, including participating in

5    discovery and following the litigation.  Small incentive awards promote the public

6    policy of encouraging individuals to undertake the responsibility of representative

7    lawsuits.  *See*, *e.g.*, *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir.

8    2000); *Staton*, 327 F.3d at 977; *Stevens v. Safeway, Inc.*, 2008 U.S. Dist. LEXIS

9    17119 (C.D. Cal. 2008); *see also* Manual for Complex Litig., § 21.62 n.971 (4th ed.

10   2004) (incentive awards may be "merited for time spent meeting with class

11   members, monitoring cases, or responding to discovery").

12          Each of the class representatives participated actively in the litigation.

13   *See* Declarations of Jose Hernandez, Clifton Seale III, Robert Radcliffe, Maria

14   Falcon, Chester Carter, Arnold Lovell, Bertram Robison, Robert Randall, and

15   Kathryn Pike In Support of Plaintiffs' Motion for Settlement Class Certification

16   and Final Approval of Proposed Injunctive Relief Class Settlement, attached as

17   Exhibits F-N to the Declaration of Michael W. Sobol in Support of the Proposed

18   Injunctive Relief Class Settlement, Dkt. No. 301.  Such incentive payments are

19   therefore appropriate here.  *Staton*, 327 F.3d at 977; *In re Mego Fin. Corp.*

20   *Securities Litig.*, 213 F.3d 454, 463 (9th Cir. 2000).

21          Moreover, the $2,500 payments requested here are at the modest end

22   of the spectrum.  *See*, *e.g.*, *Hughes v. Microsoft Corp.*, F. Supp. 2d, 2001 WL

23   34089697, 2001 U.S. Dist. LEXIS 5976, at *36-38 (approving incentive awards of

24   $7,500, $25,000, and $40,000); *Carroll v. Blue Cross & Blue Shield of Mass.*, 157

25   F.R.D. 142, 143 (D. Mass. 1994), *aff'd* 34 F.3d 1065 (1st Cir. 1994) ("the class

26   representatives shall receive payments of $7,500 each as compensation for services

27   rendered to the class in initiating and prosecuting this action"); *Bogosian v. Gulf Oil*

28   *Corp.*, 621 F. Supp. 27, 32 (E.D. Pa. 1985) (stating "the propriety of allowing

modest compensation to class representatives seems obvious," and awarding $25,000 to two named class representatives).  *See also In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d at 457, 463 (approving service awards of $5,000 from a total settlement of $1,725,000); *Razilov v. Nationwide Mut. Ins. Co.*, No. 01-CV-1466-BR., 2006 WL 3312024, *3-*4 (D. Or. Nov. 13, 2006) (approving $10,000 award to each class representative).  In light of Plaintiffs' considerable effort and risk undertaken to obtain the outstanding result for the Class, 23(b)(2) Settlement Class Counsel request that the Court approve the payments of $2,500 to each of the named Plaintiffs.

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, 23(b)(2) Settlement Class Counsel respectfully request that this Court grant their Motion for an Order Granting their Application for Attorneys' Fees and costs for the Injunctive Relief Settlement in the negotiated amount totaling $6 million (two million dollars from each Defendant), less the service awards to the class representatives totaling $22,500 (two thousand five hundred dollars, or $2,500 to each named plaintiff), with $305,721.32 being allocated to costs incurred and the balance to fees.

Dated:  December 21, 2009          Respectfully submitted,

LIEFF, CABRASER, HEIMANN
  & BERNSTEIN, LLP

By:_____/s/ *Michael W. Sobol*_____
          Michael W. Sobol

Michael W. Sobol (State Bar No. 194857)
(msobol@lchb.com)
Allison S. Elgart (State Bar No. 241901)
(aelgart@lchb.com)
275 Battery Street, 30th Floor
San Francisco, CA 94111-3339
Telephone:  (415) 956-1000

848681.7

1   Stuart T. Rossman (BBO No. 430640)
    (srossman@nclc.org)
2   Charles M. Delbaum (BBO No. 543225)
    (cdelbaum@nclc.org)
3   NATIONAL CONSUMER LAW CENTER
    7 Winthrop Square, 4th Floor
4   Boston, MA 02110
    Telephone:  (617) 542-8010
5   Facsimile:   (617) 542-8028

6   Michael A. Caddell (State Bar No. 249469)
    (mac@caddellchapman.com)
7   Cynthia B. Chapman (State Bar No. 164471)
    (cbc@caddellchapman.com)
8   George Y. Niño (State Bar No. 146623)
    (gyn@caddellchapman.com)
9   CADDELL & CHAPMAN
    1331 Lamar, Suite 1070
10  Houston, TX  77010
    Telephone:  (713) 751-0400
11  Facsimile:  (713) 751-0906

12  Leonard A. Bennett (VSB No. 37523)
    (lenbennett@cavtel.net)
13  Matthew Erausquin  (VSB No. 65434)
    (matt@clalegal.com)
14  CONSUMER LITIGATION ASSOCIATES, PC
    12515 Warwick Boulevard, Suite 201
15  Newport News, Virginia 23606
    Telephone:  (757) 930 3660
16  Facsimile:   (757) 930-3662

17  Mitchell A. Toups (TSB No. 20151600)
    (matoups@wgttlaw.com)
18  WELLER, GREEN, TOUPS & TERRELL, LLP
    Bank of America Tower
19  2615 Calder St., Suite 400
    Beaumont, Texas 77702
20  Telephone:  (409) 838-0101
    Facsimile:   (409) 832-8577

21
    *Attorneys for Plaintiffs*
22
    For the Acosta/Pike Plaintiffs:
23  Lee A. Sherman (State Bar No. 172198)
    CALLAHAN, THOMPSON, SHERMAN &
24  CAUDILL
    111 Fashion Lane
25  Tustin, CA 92780
    Telephone: (714) 730-5700
26  Facsimile:  (714) 730-1642

27  *Attorneys for the Acosta/Pike Plaintiffs*

28

848681.7

PLTFS' MPA IN SUPPORT OF MOTION FOR ORDER
GRANTING APPLICATION FOR ATTORNEYS' FEES
CASE NO. 05-CV-1070 DOC