Michael W. Sobol (State Bar No. 194857)
(msobol@lchb.com)
Allison S. Elgart (State Bar No. 241901)
(aelgart@lchb.com)
LIEFF, CABRASER, HEIMANN &
BERNSTEIN, LLP
275 Battery Street, 30th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

Michael A. Caddell (State Bar No. 249469)
(mac@caddellchapman.com)
Cynthia B. Chapman (State Bar No. 164471)
(cbc@caddellchapman.com)
George Y. Niño (State Bar No. 146623)
(gyn@caddellchapman.com)
CADDELL & CHAPMAN
1331 Lamar St., Suite 1070
Houston, TX 77010
Telephone: (713) 751-0400
Facsimile: (713) 751-0906

*Attorneys for Plaintiffs*

[Additional Counsel listed on signature page]

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

(SOUTHERN DIVISION)

| | |
|---|---|
| TERRI N. WHITE, et al.,<br><br>　　　　　Plaintiffs,<br><br>v.<br><br>EXPERIAN INFORMATION SOLUTIONS, INC.,<br><br>　　　　　Defendant.<br><br>and Related Cases:<br><br>05-CV-01073-DOC (MLGx)<br>05-CV-7821-DOC (MLGx)<br>06-CV-0392-DOC (MLGx)<br>05-cv-1172-DOC(MLGx)<br>06-cv-5060-DOC (MLGx) | Case No. 05-CV-1070 DOC (MLGx)<br>(Lead Case)<br><br>**DECLARATION OF LEONARD A. BENNETT IN SUPPORT OF PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR ORDER GRANTING PLAINTIFFS' APPLICATION FOR ATTORNEYS' FEES FOR MONETARY RELIEF SETTLEMENT** |

1  I, Leonard A. Bennett, declare as follows:

2  I am a member in good standing of the Virginia State Bar, admitted *pro hac vice* in this case. The Court has provisionally appointed me class counsel for the 23(b)(3) Settlement Class. I also serve as class counsel for the 23(b)(2) Settlement Class. I have personal knowledge of the matters set forth herein, and could and would testify competently thereto if called upon to do so. I submit this Declaration in support of Plaintiffs' Motion for Order Granting Plaintiffs' Application for Attorneys' Fees for Monetary Relief Settlement.

2. I am one of the attorneys working on behalf of the Plaintiffs in the above-styled litigation, and I am an attorney and a principal of Consumer Litigation Associates, P.C., a law firm with offices in Hampton Roads, and Fairfax, Virginia. My primary office is at 12515 Warwick Boulevard, Suite 100, Newport News, Virginia 23606.

3. Since 1994, I have been and presently am a member in good standing of the Bar of the highest court of the State of Virginia, where I regularly practice law. Since 1995, I have been and presently am a member in good standing of the Bar of the highest court of the State of North Carolina. I have also been admitted to practice before and am presently a member in good standing of the Bars of the following courts:

**Court:**                                                                                                      **Date Admitted:**

| Court | Year |
|---|---|
| United States Supreme Court | 2005 |
| United States Court of Appeals for the Fourth Circuit | 2002 |
| United States District Court for the Eastern District of Virginia | 1994 |
| United States District Court for the Eastern District of North Carolina | 2005 |
| United States District Court for the District of Wisconsin | 2006 |
| United States District Court for the Eastern District of Michigan | 2003 |
| United States District Court for the Northern District of Illinois | 2003 |

4. I have been admitted *pro hac vice* in jurisdictions across the country including by example only: California, Florida, Rhode Island, New Hampshire, Connecticut, Ohio, South Carolina, Pennsylvania, Arizona, Washington and Maryland. I have never been denied admission *pro hac vice*.

5. For over a decade, my practice has been limited to consumer protection litigation. While my experience representing consumers has come within several areas, my most developed area of expertise is in plaintiff's litigation under the Federal Fair Credit Reporting Act. At least two-thirds of my practice is in this area. Most of my professional accomplishments have come in this field.

6. In 2003, I was invited to and did present the Congressional Testimony

of the National Association of Consumer Advocates before the House Committee on Financial Services, Fair Credit Reporting Act: How it Functions for Consumers and the Economy, June 4, 2003, Proposed Amendments to the Federal Fair Credit Reporting Act, http://financialservices.house.gov/media/pdf/060403lb.pdf. I was again invited to present testimony before the House Financial Services Committee and did so in June 2007

http://www.house.gov/apps/list/hearing/financialsvcs_dem/osbennett061907.pdf.

7. Since 2001, I have been asked to and did speak at numerous seminars and events in the area of Fair Credit Reporting and Identity Theft, or in the broader area of Consumer Protection litigation, usually about 8 sessions per year, on average. These CLE programs have been before the American Bar Association, the National Association of Consumer Advocates Conference, the National Consumer Law Center Conference, at ARMY or NAVY Judge Advocate General training programs or state Bar CLE programs. I have been the primary CLE speaker nationally regarding the fact patterns and violations alleged in this case. I am also a contributing author to the nationally recognized *Fair Credit Reporting* treatise and wrote the chapter regarding Accuracy claims against the national Consumer Reporting Agencies.

8. I have litigated in excess of 350 federal cases under the Fair Credit Reporting Act, and in excess of 450 federal cases overall. As of the date of this Declaration, I have lost only four federal cases to a dispositive motion. I have also

850560.3 - 3 - DECLARATION ISO MOTION FOR ORDER GRANTING APPLICATION FOR ATTORNEYS' FEES CASE NO. 05-CV-1070 DOC

been appointed class counsel in approximately a dozen Federal cases prosecuted under the FCRA or a related Consumer Credit Protection Act statute. I have also been Lead Class Counsel (or co-Lead) in three of the largest five FCRA class action settlements to date. I have tried six FCRA cases to a jury and successfully defended all of our verdicts on appeal.

9. Matthew J. Erausquin, a partner in my law firm, is and has been, active in litigating this case. He is admitted to practice before this Court, as well as before the Supreme Courts of California and Virginia, in addition to numerous federal courts around the country. Mr. Erausquin litigates exclusively in federal courts and in cases involving violations of consumer protection statutes.

10. Ian Lyngklip, of counsel to my law firm, has also performed significant work in this case. Mr. Lyngklip is also on the Board of Directors of NACA, and is a former Board of Director's Co-Chair of the Organization. Mr. Lyngklip also teaches approximately 10 sessions per year at various CLE's and other seminars regarding updates and developments involving FCRA practice. He is also a contributing author to the *Fair Credit Reporting* treatise.

11. My work in this case, as well as that of Mr. Erausquin and Mr. Lyngklip, was most significant with regard to facts, legal questions and challenges unique to Fair Credit Reporting Act (FCRA) litigation. For example, I was the primary drafter of the Plaintiffs' opposition to the Rule 12(b)(6) Motion prosecuted by Defendant Trans Union. We were almost solely responsible for construction and

drafting of Plaintiff's Statement of Facts and related evidence for Plaintiffs' opposition to Defendant Experian's Motion for Summary Judgment.

12. Further, Mr. Lyngklip, Mr. Erausquin and myself were point attorneys for construction of the injunctive relief procedures ultimately implemented by the Defendants.

13. Our firm was also required to perform significant work reviewing, interpreting and categorizing the boxes of consumer credit reports gathered pre-filing by former co-counsel Charles Juntikka and Daniel Wolf. When we received these credit reports, we discovered that data earlier proffered to the Court by Mr. Juntikka had been based on largely incorrect interpretations of these reports. Many tradelines or public records that were inaccurate had been misunderstood and or missed in the earlier Juntikka/Wolf review. Many claimed inaccuracies were in fact correctly reported. As a result, our team – including Juntikka/Wolfe – required my firm to re-audit all of these pre-filing credit reports, one by one. This task was labor-intensive, time consuming and essentially shut down our Hampton Roads office for nearly two weeks and we assisted Mr. Juntikka in his effort to understand the meanings of various fields contained in these consumer disclosures.

14. It was also necessary for our law firm to assist Mr. Juntikka's clients in responding to Defendant's formal written discovery. We learned that these clients had almost no understanding of the case or of the facts underlying their claims. Further, because neither Juntikka nor Wolfe had any meaningful litigation

experience, we handled the formal written responses for all Plaintiffs in the case, including the White Plaintiffs and shared the lead in the defense of their depositions over an week-long period in New York City.

15. These tasks were typical of the role that my firm played in this litigation, given that our firm has substantial and specialized experienced litigating almost exclusively under the FCRA, particularly in individual accuracy cases.

16. I was also one of the five attorneys on the Executive Committee of Plaintiffs' counsel.

17. I have personally conducted discovery, taken fact and expert depositions, reviewed documents, appeared at conferences and motion hearings before the Court, and actively participated in the mediation sessions concerning the Litigation.

18. I and the attorneys and paralegals in my law firm have spent time on this litigation that could have been spent on other matters. At various times during the litigation, the active prosecution of the claims has consumed a substantial percentage of my billable time that could otherwise have been spent on other fee-generating work.

19. The time my firm has spent on this case has been completely contingent on the outcome of the action. We have not been paid for any of the time spent on the action.

20. In connection with the Litigation, our attorney and staff timekeepers

have billed a combined total of 4,023.25 hours from inception to December 10, 2009. However, this time was incurred prosecuting and resolving both the injunctive relief claims resulting in the 23(b)(2) Settlement and the monetary relief claims resulting in the 23(b)(3) Settlement. Our time is obtained from documented hourly billing as supplemented by a more recent cross-check against telephone records, communication logs and our calendars. The hourly time stated herein represents my best estimate of the actual time incurred in this matter.

21. Accordingly, one-half of the time incurred from inception through the time of the filing of the 23(b)(2) Settlement (April 3, 2008) is allocated to the 23(b)(2) Settlement and the other one-half is allocated to the 23(b)(3) Settlement. Our attorney and staff timekeepers have billed a total of 3,363 hours from the inception of the Litigation to April 3, 2008, for a total lodestar of $1,451,495. Half of those hours amounts to 1,681.50 hours and one-half that lodestar is $725,747.50.

22. From April 4, 2008 through December 10, 2009 (less any time incurred with respect to the injunctive relief approval hearing), our attorney and staff timekeepers have billed a total of 660.25 hours, for a total lodestar of $ 295.542.50, which includes a deduction for time incurred subsequent to April 4, 2008 in connection with the hearing on the approval of the injunctive relief settlement. All of this time is allocated to the 23(b)(3) Settlement because it was incurred after the approval of the 23(b)(2) Settlement.

23. Therefore, adding one-half of the lodestar incurred before the

injunctive relief settlement to the total lodestar incurred post-injunctive relief towards the monetary settlement, our attorney and staff timekeepers have billed a total of 2,341.75 hours for a total lodestar of $ 1,023,290.00 for the monetary relief Settlement. All these hours were incurred in connection with the Litigation and are reasonably connected to the prosecution of the monetary relief claims and procuring the 23(b)(3) Settlement.

24.  Attached hereto as Exhibit A is a summary listing for each lawyer and paralegal for which my law firm is seeking compensation for legal services in connection with the 23(b)(3) Settlement, the hours each individual expended, and the hourly rate at which compensation is sought for each individual.

25.  Based upon my experience with other class action matters, I believe that the time expended by my law firm in connection with this litigation, when compared to the result achieved for the Class, is reasonable in amount and was necessary to ensure the successful monetary relief obtained on behalf of the Class.

26.  Our hourly rates, which were used for purposes of calculating lodestar here, are based on prevailing fees in this District and other Courts in this Circuit. These rates are consistent with the rates we have requested and received in other FCRA class action cases.

27.  Our law firm has expended a total of $18,500.00 in un-reimbursed expenses that were necessarily incurred in connection with the prosecution of the litigation. From inception through April 3, 2008 (i.e., the date of the filing of the

23(b)(2) Settlement Agreement), Consumer Litigation Associates expended a total of at least $ 8,395.84 in un-reimbursed expenses, one-half of which is attributable to the monetary relief Settlement for a total of $4,197.92. From April 4, 2008 through December 10, 2009, we expended a total of $10,104.18 in un-reimbursed expenses. Therefore, the total amount of such expenses that can be allocated to the 23(b)(3) Settlement is $ 14,302.10.

28.  The foregoing expenses were incurred solely in connection with this litigation and are reflected on my law firm's books and records as maintained in the ordinary course of business. These books and records are prepared from invoices, receipts, expense vouchers, check records and other records, and are an accurate record of the expenses incurred in this case.

I declare under penalty of perjury that the foregoing is true and correct and that this Declaration was signed in Newport News, Virginia, on December 17, 2009.

_____
Leonard A. Bennett

White v. Experian
Consumer Litigation Associates
Inception – 4.3.08

| Attorney/Paralegal | Hours | Rate | Total |
|---|---|---|---|

### INJUNCTIVE RELIEF

| Attorney/Paralegal | Hours | Rate | Total |
|---|---|---|---|
| Leonard Bennett | 1031.00 | 500.00 | 515,500.00 |
| Matthew Erausquin | 151.75 | 400.00 | 60,700.00 |
| Gary Abbott | 41.50 | 300.00 | 12,450.00 |
| Donna Winters | 154.00 | 190.00 | 29,260.00 |
| Vicki Ward | 98.00 | 190.00 | 18,620.00 |
| Dawn Chaffer | 43.25 | 190.00 | 8,217.50 |
| Ian Lyngklip | 162.00 | 500.00 | 81,000.00 |
| | | | |
| TOTALS | 1681.50 | | $725,747.50 |

### MONETARY RELIEF

| Attorney/Paralegal | Hours | Rate | Total |
|---|---|---|---|
| Leonard Bennett | 1031.00 | 500.00 | 515,500.00 |
| Matthew Erausquin | 151.75 | 400.00 | 60,700.00 |
| Gary Abbott | 41.50 | 300.00 | 12,450.00 |
| Donna Winters | 154.00 | 190.00 | 29,260.00 |
| Vicki Ward | 98.00 | 190.00 | 18,620.00 |
| Dawn Chaffer | 43.25 | 190.00 | 8,217.50 |
| Ian Lyngklip | 162.00 | 500.00 | 81,000.00 |
| | | | |
| TOTALS | 1681.50 | | $725,747.50 |

850969.1


EXHIBIT "A"

White v. Experian
Consumer Litigation Associates
4.4.08 - present

| Attorney/Paralegal | Hours | Rate | Total |
|---|---|---|---|

### MONETARY RELIEF

| Attorney/Paralegal | Hours | Rate | Total |
|---|---|---|---|
| Leonard Bennett | 391.25 | 500.00 | 195,625.00 |
| Matthew Erausquin | 157.50 | 400.00 | 63,000.00 |
| Donna Winters | 54.75 | 190.00 | 10,402.50 |
| Vicki Ward | 6.00 | 190.00 | 1,140.00 |
| Ian Lyngklip | 50.75 | 500.00 | 25,375.00 |
|  |  |  |  |
| TOTALS | 660.25 |  | $295,542.50 |

850974.1