Daniel J. McLoon (State Bar No. 109598)
djmcloon@jonesday.com
Michael G. Morgan (State Bar No. 170611)
mgmorgan@jonesday.com
JONES DAY
555 South Flower Street
Fiftieth Floor
Los Angeles, CA  90071-2300
Telephone:  (213) 489-3939
Facsimile:  (213) 243-2539

Attorneys for Defendant
EXPERIAN INFORMATION SOLUTIONS, INC.

Additional Counsel Listed on Signature Page

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TERRI N. WHITE, et al.,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>EXPERIAN INFORMATION SOLUTIONS, INC.,<br><br>　　　　Defendant.<br><br>AND RELATED CASES | Case No. 05-cv-1070-DOC (MLGx) LEAD CASE<br><br>Assigned for all purposes to Honorable Judge David O. Carter<br><br>**DEFENDANTS' JOINT RESPONSE TO *WHITE* PLAINTIFFS' NOTICE OF SUBSEQUENTLY DECIDED AUTHORITY** |

LAI-3109991v3

Contrary to *White* Plaintiffs' contentions, the Ninth Circuit's recent decision in *Bateman v. American Multi-Cinema, Inc.*, 2010 U.S. App. LEXIS 19934 (9th Cir. Sept. 27, 2010), has no bearing on this Court's assessment of the fairness, reasonableness or adequacy of the proposed $45 million monetary relief settlement ("Settlement"). To the contrary, the *Bateman* decision is a post-settlement legal development that may not be considered as part of this Court's consideration of the Settlement and, in any event, the issue decided in *Bateman* had no effect whatsoever on the Settlement's terms.

**I.      The *Bateman* Decision May Not Be Considered During The Settlement Approval Process.**

A court may not consider post-settlement legal developments in deciding whether to approve a class action settlement reached prior to those developments. *See In re Syncor ERISA Litigation*, 516 F.3d 1095, 1100 (9th Cir. 2008); *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 595 (3d Cir. 2010). Several cases have rejected the contention that a post-settlement change in the law may affect the validity of a class action settlement or allow a court to change a settlement. *See e.g., Ehrheart*, 609 F.3d at 595-96 ("It is essential that the parties to class action settlements have complete assurance that a settlement agreement is binding once it is reached.") (citing *In re Syncor*, 516 F.3d at 1100). These cases also support the proposition that a court's role in the Rule 23 settlement approval process is extremely narrow — limited to acting as a fiduciary for absent class members, and that it is improper for a court to re-weigh the parties' reasoned assessment of the future uncertainties of litigation with the benefit of hindsight not available to the parties when the class action settlement was reached. *Ehrheart*, 609 F.3d at 593 ("there is a restricted, tightly focused role that Rule 23 prescribes for district courts, requiring them to act as fiduciaries for the absent class members, but that does not vest them with broad powers to intrude upon the parties' bargain."); *In re Syncor*, 516 F.3d at 1100 ("Judicial approval of a [class action settlement] is clearly a condition

LAI-3109991v3

1  subsequent, and should not affect the legality of the formation of the proposed
2  [settlement] as between the negotiating parties.") (quoting *Collins v. Thompson*,
3  679 F.2d 168, 172 (9th Cir. 1982)).

4        Class action settlements necessarily take into account the future uncertainties
5  on both sides of a case because "[t]he choice to settle implicitly acknowledges
6  calculated risks and, in the end, reflects the deliberate decision by the parties to opt
7  for certainty in lieu of further litigation." *Ehrheart*, 609 F.3d at 595 (citing
8  *Ackermann v. United States*, 340 U.S. 193, 198 (1950)). Indeed, there is a strong
9  public policy favoring the settlement of litigation, especially class actions and other
10 complex cases where substantial judicial resources can be conserved by avoiding
11 formal litigation. *Ehrheart*, 609 F.3d at 593 ("a strong public policy exists, which
12 is particularly muscular in class action suits, favoring settlement of disputes"); *see*
13 *Officers for Justice v. Civil Service Comm'n of the City and County of San*
14 *Francisco*, 688 F.2d 615, 625 (9th Cir. 1982). Refusing to approve a settlement
15 based upon a legal development occurring after the parties' agreement would
16 severely undercut that policy.

17       Here, at the time when the Settlement was reached, both sides faced the
18 possibility of future changes to the law, both favorable and unfavorable. Those
19 possibilities included both risks and potential benefits that were crystallized into the
20 binding Settlement, rather than being left to chance in risky, costly, and
21 burdensome litigation. *See* Robert H. Mnookin & Lewis Kornhausert, *Bargaining*
22 *in the Shadow of the Law: The Case of Divorce*, 88 YALE L.J. 950, 976 n.89 (1979)
23 ("In real cases, the parties do not know the probability distribution of the various
24 outcomes a court might impose."). The fairness, reasonableness, and adequacy of
25 that Settlement must be judged based on litigation risks and opportunities existing
26 when the Settlement was negotiated, and without regard to post-Settlement legal
27 developments favorable to one side or the other.

28

LAI-3109991v3

- 2 -

## II. The *Bateman* Issue Was Not A Material Factor In The Settlement.

Furthermore, even if *Bateman* had been decided before the Settlement was reached, it would not have altered the Settlement in the slightest. *Bateman* resolves a single, discrete issue: whether the proportionality of a defendant's class-wide exposure to the actual harm sustained by the putative class may be considered as part of the Rule 23(b)(3) superiority analysis. In fact, however, Plaintiffs face a myriad of challenges, risks, and delays standing between them and any ultimate recovery in litigation — all of which are entirely unrelated to the *Bateman* issue. These include the following:

**Inability to Prove Inaccuracy Risk:** *Bateman* does nothing to reduce the litigation risk arising from the need for each class members to prove the inaccuracy of his or her credit report. As this Court has noted, for many class members, Defendants' reporting was entirely accurate. (Tentative Denying Class Cert. at 7:24-8:6, Dkt. 396.) In fact, there are several scenarios in which it is accurate after a bankruptcy to report a pre-bankruptcy debt without a discharge indicator, and yet it is impossible to identify any of these scenarios reliably based on coded or other information contained in Defendants' credit files.[1] Without any practical way to identify or carve out those consumers for whom it was accurate to report their pre-bankruptcy accounts without discharge indicators, there is a huge risk that class certification would be denied on manageability grounds. Also, even if a class were certified, many class members would lose at trial because of their inability to prove the inaccuracy of their credit report.

---

[1] These include: (1) where the debtor continued to pay a secured debt on its original terms, even though the debt would be subject to discharge, (2) where the creditor brought a successful adversary proceeding; (3) where a pre-bankruptcy revolving account was kept open after the bankruptcy filing and the debtor continued to incur charges post-bankruptcy; (4) where a statutorily nondischargeable debt (e.g., student loan) was reported with an accurate, generic account-type code; (5) where the debtor and creditor entered into a reaffirmation agreement but failed to notify Defendants of the agreement; and (6) where pre-bankruptcy civil judgment was entered on a nondischargeable debt. (Defendants' Joint Response to Objections to Monetary Relief Settlement at 9:18-10:28, Dkt. 594.)

LAI-3109991v3

- 3 -

1       **Inability to Prove Willfulness Risk:** *Bateman* does not reduce the risk that
2 Plaintiffs would lose because they cannot prove a willful violation of the FCRA.
3 *See* 15 U.S.C. § 1681n. As case law following *Safeco Ins. Co. of Am. v. Burr,* 551
4 U.S. 47 (2007) confirms, a claim for a willful violation requires proof of an
5 objectively erroneous interpretation of the law or the duties under the law. *See,*
6 *e.g., Levine v. World Fin. Network Nat. Bank*, 554 F.3d 1314 (11th Cir. 2009);
7 *Harper v. Trans Union, LLC*, 2009 WL 415940 (E.D. Pa. 2009). Plaintiffs have
8 little hope of meeting that burden here because it was not obvious that Defendants
9 should have abandoned their historical procedures in favor of an unprecedented
10 presumption, especially where that presumption inevitably introduces new,
11 potentially harmful inaccuracies onto credit files and requires Defendants to ignore
12 contrary information received from creditors. (*See* Defendants' Joint Response to
13 Objections to Monetary Relief Settlement at 21:5-23:6, Dkt. 594.) Nor was it
14 obvious that the FCRA required Defendants to do so. To the contrary, there was <u>no</u>
15 legislative, judicial or regulatory action requiring the use of any presumption, and
16 the prior judicial and FTC authority expressly endorsed Defendants' historical
17 practice of relying on information received from trusted subscribers. *See Safeco,*
18 551 U.S. at 70 (defendant's reading of the FCRA was not objectively unreasonable
19 given the dearth of any contrary authoritative guidance from the courts of appeals
20 and FTC).
21       **Other Litigation Risks and Delays:** *Bateman* also leaves intact a host of
22 other significant litigation risks and delays for Plaintiffs, including:
23     • the risk arising from the failure of many class members to
24       schedule their debts properly in their bankruptcies, which
25       directly caused inaccuracies on their credit reports;
26     • the risk that Defendants' historical reporting procedures —
27       which resulted in a high rate of accuracy and improved the
28       credit scores of millions of class members — would be found to

LAI-3109991v3

- 4 -

be reasonable and compliant with the FCRA;

- the risk that any large verdict would need to be reduced under *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408 (2003), an issue that *Bateman* expressly reserved for a later case; and

- the cost and delays arising from the significant obstacles remaining in litigation, including class certification, further discovery, motions for summary judgment, trial, post-trial motions, and the inevitable appeals, all of which would delay any litigation recovery for many years.

The Settlement allows the class to receive cash payments from a huge Settlement fund and avoid the significant uncertainty, delay, and cost of litigation.

Dated:  October 12, 2010

JONES DAY

By: /s/ Michael G. Morgan
     Michael G. Morgan

Attorneys for Defendant
EXPERIAN INFORMATION SOLUTIONS, INC.

Dated:  October 12, 2010

STROOCK & STROOCK & LAVAN LLP

By: /s/ Stephen J. Newman    by permission
     Stephen J. Newman

Attorneys for Defendant
TRANSUNION LLC

Dated:  October 12, 2010

KILPATRICK & STROCKTON LLLP
                                    by permission

By: /s/ Cindy D. Hanson
     Cindy D. Hanson

Attorneys for Defendant
EQUIFAX INFORMATION SERVICES LLC

LAI-3109991v3