**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Case No. SACV 05-1070 DOC (MLGx)                        Date: October 20, 2010

Title: TERRI N. WHITE et. al. v. EXPERIAN INFORMATION SOLUTIONS, INC. et.al.

PRESENT:

THE HONORABLE DAVID O. CARTER, JUDGE

| Kathy Peterson | Not Present |
|---|---|
| Courtroom Clerk | Court Reporter |

ATTORNEYS PRESENT FOR PLAINTIFFS: ATTORNEYS PRESENT FOR DEFENDANTS:

| NONE PRESENT | NONE PRESENT |
|---|---|

PROCEEDING (IN CHAMBERS): ORDERING SUPPLEMENTAL BRIEFING

       On July 8, 2010, Settling Plaintiffs filed a Submission Complying with the Court's Order Conditionally Granting Request for Second Notice and Alternative Notice Proposal ("July 8 Submission") (Docket 704). The contents of Settling Plaintiffs' July 8 Submission caused the Court to treat the July 8 Submission as a motion for reconsideration. Accordingly, the Court set a briefing schedule on the matter, allowing White Plaintiffs to file an opposition and Settling Plaintiffs to file a Reply. *See* Order Setting Briefing Schedule, Aug. 6, 2010 (Docket 713). In their moving, opposing and replying papers, the parties put forth conflicting factual accounts regarding the data used to generate the initial class notice list as well as the number, and description, of consumers who actually received notice. In order to resolve this factual dispute, the Court hereby ORDERS the parties to submit supplemental briefing on this issue.

       In their Motion for Reconsideration, Settling Plaintiffs aver that the group of consumers who received the original class notice was overinclusive, exceeding the number of legitimate class members by "perhaps millions." Settl. Pl.'s Subm at 8. In support of this claim, Settling Plaintiffs assert that "notice was sent to any consumer with an archived credit file reflecting a questionable tradeline, followed by a credit inquiry, even if the next archived 'snapshot' showed that the questionable tradeline had been corrected or dropped." *Id.* Settling Plaintiffs explain that "[i]n many of those cases, of course, the tradeline in question may have been corrected or dropped prior to the credit inquiry response." *Id.* However, Settling Plaintiffs contend that, in the interests of caution, class notice was sent to consumers who showed a corrected tradeline subsequent to the issuance of a credit report,

because there was no way to ensure whether the tradeline had been corrected prior to the credit inquiry or not.

In their Opposition, White Plaintiffs contest Settling Plaintiffs' factual account of the data used to generate the class notice list. According to White Plaintiffs, "the problem with [Settling Plaintiffs' above-described] hypothetical is that it could never happen." White Pl.'s Opp. at 10 n.2. Rather, White Plaintiffs assert that "[u]nder the terms of the Settlement, the Class List is generated by looking at an archive snapshot, which shows both a 'questionable tradeline' and a credit report having been issued during the year *preceding* the snapshot." Id. (emphasis in original). Relying on the factual contention that class notice was sent only to people whose archived snapshots indicated a questionable tradeline subsequent to the issuance of a credit report, White Plaintiffs argue that, in the case of every person who received the initial class notice, the questionable tradeline could not possibly have been corrected before their credit report was issued.

In Reply, Settling Plaintiffs appear to concede that notice was sent only to consumers who showed "an errant tradeline *at the end*" of the archive period during which a credit report was published. Settl. Pl's Rep. at 7 (emphasis added). However, Settling Plaintiffs proffer a dynamic view of credit tradelines in their Reply, arguing that tradelines can vacillate from non-questionable to questionable during the span of one archive period. They submit that "a consumer who shows an errant tradeline at the end of an archive period may have had a credit report published only at an earlier time when the tradeline was not in questionable status." Id.

As the above paragraphs demonstrate, the parties have presented the Court with conflicting factual accounts, both concerning the nature of credit reporting and the number, and description, of people who received the original class notice. Notably, however, none of the factual assertions put forth in the parties' submissions are supported by evidence. The present record, therefore, does not allow the Court to resolve this factual dispute.

Accordingly, the Court ORDERS the parties to submit supplemental briefing on this factual issue. The parties' arguments shall be supported by affidavits signed under the penalty of perjury, as well as any other evidence that the parties deem appropriate. The supplemental briefs shall be limited to fifteen pages, not including exhibits. The parties shall submit this supplemental briefing no later than November 4, 2010.

If, after reviewing the parties' supplemental briefs, the Court determines that an evidentiary hearing on this matter is necessary, the Court will schedule a hearing in a subsequent Order.

The Clerk shall serve this minute order on all parties to the action.