Daniel J. McLoon (Cal. Bar No. 109598)
djmcloon@jonesday.com
Michael G. Morgan (Cal. Bar No. 170611)
mgmorgan@jonesday.com
JONES DAY
555 South Flower Street
Fiftieth Floor
Los Angeles, CA  90071-2300
Telephone:   (213) 489-3939
Facsimile:    (213) 243-2539

Attorneys for Defendant
EXPERIAN INFORMATION SOLUTIONS, INC.

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# SOUTHERN DIVISION

| | |
|---|---|
| TERRI N. WHITE, et al.,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>EXPERIAN INFORMATION SOLUTIONS, INC.,<br><br>　　　　Defendant.<br><br>AND RELATED CASES. | **Case No.  05-cv-1070 DOC (MLGx) (Lead Case)**<br><br>Assigned for all purposes to the Honorable Judge David O. Carter<br><br>**DECLARATION OF ANGELA GRANGER IN SUPPORT OF DEFENDANTS' JOINT SUPPLEMENTAL BRIEF REGARDING GENERATION OF THE INITIAL NOTICE LIST**<br><br>[Filed concurrently with the Declaration of Nancy Everett; Declaration of Lisa Komanski; Declaration of William Stockdale; Declaration of Michael G. Morgan; and Defendants' Joint Supplemental Brief] |

LAI-3112906v1

DECLARATION OF ANGELA GRANGER

1  I, Angela Granger, declare:

2  1. I am Vice President of Analytics and Research and Development for Experian Information Solutions, Inc. ("Experian"). Except where otherwise stated, the facts stated in this declaration are true of my own personal knowledge, including knowledge acquired in the course and scope of my job responsibilities and through the review of pertinent documents maintained as business records by Experian in the course and scope of Experian's business. If called upon to do so, I could and would testify competently to the facts stated below.

2. I make this declaration in support of Defendants' Joint Supplemental Brief Regarding Generation of the Initial Notice List. This declaration incorporates my three previous declarations dated July 3, 2007 (Dkt. 120, 49-67), December 28, 2007 (Dkt. 207), and July 31, 2008 (Dkt. 310).

### Experian's Archive Files

3. Experian creates a monthly archive of the information appearing in its File One database by taking a "snapshot" of its database as of the moment when the archive is created. For example, a July 2007 archive file would contain information about how tradelines appeared in Experian's database at the particular moment on June 30, 2007 when the archive was created. The archive file also would identify the dates within the two-year period preceding the archive (e.g., July 1, 2005-June 30, 2007) on which an Experian credit report was issued and the names of the recipients of those reports.

4. However, the archive files do not reliably capture the information contained in actual credit reports issued during the archival period for four reasons. First, the archive files do not contain copies of any issued credit reports, nor do they reflect how a tradeline would have been reported during the archival period unless the tradeline had remained linked to the consumer and unchanged between the time when the credit report was issued and the archive was created.

5. Second, Experian will sometimes suppress the reporting of a furnisher's tradelines while working to resolve data integrity issues relating to that furnisher. While the suppression is in effect, the furnisher's tradelines will not appear on any credit reports. However, the suppression of the furnisher's data is not apparent from the archive data, which includes the suppressed tradeline without any record that it had been suppressed or for how long.

6. Third, between the time a credit report is issued and the next archive is generated, Experian's customer service representatives may change data at the request of consumers. The archives will contain the changed data, but it will not reflect when the change was made or the data as it appeared prior to the change. Thus, the data in the archives may differ from what appeared on the credit report.

7. Fourth, an archived credit file sometimes results from the combination of two previously separate files. This often results from what is known as a "PIN merge." PINs are numbers Experian assigns to credit files and are intended to identify all credit data relating to a given consumer. Sometimes, however, consumers may have more than one PIN assigned to them. Over time, Experian may obtain information that allows it to combine, or "merge," these PINs and to bring together the credit data associated with them into a single credit file. The newly-merged file will not identify which data came from which PIN. For example, prior to merging two files, one PIN may have included a tradeline that would qualify the consumer to receive notice of the Monetary Settlement ("Notice List") even though the other PIN was used to generate a credit report earlier in the archive period. The credit report would not list the qualifying tradeline because, at the time the credit report was issued, the tradeline was on a different file. The archive that was prepared after the PINs were merged would wrongly suggest that the qualifying tradeline had been listed on the credit report.

<u>Generation of Notice List</u>

8. In connection with the Monetary Settlement, I supervised Experian's preparation of a list of consumers who, based on the information appearing in selected Experian archive files, qualified for the Notice List.

9. Experian searched its archives created in June of each year from 2002 through 2008 as well as an archive created on July 26, 2008. I understand that Equifax and TransUnion reviewed their October and February archives. Staggering the searches of annual archives would tend to reduce the risk that a consumer might be excluded from the Notice List as a result of changes to tradelines during the archival period (e.g., due to pre-archive data reporting, data suppression, file mergers, etc.).

10. Within each archive file, Experian ran a custom program to locate any consumer whose file reflected: (1) a Chapter 7 discharge in the public records section, (2) a qualifying tradeline, collection account or civil judgment, and (3) a post-bankruptcy hard inquiry within one year prior to the date of the archive file or a post-bankruptcy employment inquiry between May 2007 and April 2009.

11. A "qualifying tradeline" means an installment or mortgage loan or revolving account that (1) had a date opened that predated or was the same as the date the consumer filed for bankruptcy as reflected in Experian's records, (2) was reporting as delinquent or with a derogatory notation (other than "included in bankruptcy"), and (3) did not contain sufficient information to establish that it was excluded from the bankruptcy discharge or was a type of loan or account typically excluded from the bankruptcy discharge.

12. A "qualifying collection account" means an account identified in Experian's records as reflecting the collection activity of a third party collection agency or debt buyer that (1) had a date opened that predated or was the same as the date the consumer filed for bankruptcy as reflected in Experian's records, (2) was

1  reporting as still in collection, and (3) did not contain sufficient information to
2  establish that it was excluded from the bankruptcy discharge.

3      13.    A "qualifying civil judgment" means a judgment reporting in
4  Experian's records that (1) had a date filed (or date of judgment) that predated or
5  was the same as the date the consumer filed for bankruptcy as reflected in
6  Experian's records, (2) was reporting as outstanding, and (3) did not contain
7  sufficient information to establish that it was excluded from the bankruptcy
8  discharge.

9      14.    A "post-bankruptcy hard inquiry" means a notation in Experian's
10 records of the issuance of a consumer's credit report post-bankruptcy to a lender or
11 other prospective creditor for the purpose of evaluating a loan or other credit
12 application that was initiated by the consumer.

13     15.    A "post-bankruptcy employment inquiry" means a notation in
14 Experian's records of the issuance of a consumer's credit report to an Experian
15 subscriber who has certified that the credit report will be used for an employment
16 eligibility purpose.

17     16.    After searching the archive files, Experian merged the results from
18 each of the searches and eliminated any duplicate names. Experian also updated
19 the address information for the consumers to based on the information appearing in
20 Experian's current database.

21     17.    Experian completed its searches and timely delivered its list of
22 identified consumers to the Settlement Administrator prior to the July 31, 2009
23 deadline agreed to in the Settlement Agreement. For each identified consumer on
24 the list, Experian provided identifying information, including name and address, the

25
26
27
28

LAI-3112906v1

- 4 -

DECLARATION OF ANGELA GRANGER

date of the consumer's Chapter 7 discharge order, and information concerning the archival periods for which the consumer qualified for the Notice List.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 3rd day of November 2010, at Costa Mesa, California.

By: *Angela Granger* (signature)
Angela Granger