Michael W. Sobol (State Bar No. 194857)
(msobol@lchb.com)
Allison S. Elgart (State Bar No. 241901)
(aelgart@lchb.com)
LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

Michael A. Caddell (State Bar No. 249469)
(mac@caddellchapman.com)
Cynthia B. Chapman (State Bar No. 164471)
(cbc@caddellchapman.com)
CADDELL & CHAPMAN
1331 Lamar St., Suite 1070
Houston, TX 77010
Telephone: (713) 751-0400
Facsimile: (713) 751-0906

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

(SOUTHERN DIVISION)

TERRI N. WHITE, *et al.*,

Plaintiffs,

v.

EXPERIAN INFORMATION SOLUTIONS, INC.,

Defendant.

and Related Cases:

05-cv-01073-DOC (MLGx)
05-cv-7821-DOC (MLGx)
06-cv-0392-DOC (MLGx)
05-cv-1172-DOC(MLGx)
06-cv-5060-DOC (MLGx)

Case No. 05-CV-1070 DOC (MLGx) (Lead Case)

**SETTLING PLAINTIFFS' SUPPLEMENTAL BRIEF IN COMPLIANCE WITH THE COURT'S OCTOBER 20, 2010 ORDER**

The Honorable David O. Carter

# TABLE OF CONTENTS

Page

I. INTRODUCTION .......... 1

II. THE CLASS NOTICE LIST IS OVERINCLUSIVE .......... 1

A. The Class Notice List Is Unquestionably Broader Than the Settlement Class .......... 1

B. There Are Numerous Reasons A Pre-Bankruptcy Debt Would Be Accurately Reported As Due And Owing Post-Bankruptcy .......... 3

III. CONCLUSION .......... 6

Settling Plaintiffs Jose Hernandez, Bertram Robison, Kathryn Pike, and Robert Randall hereby submit this Supplemental Brief regarding the 23(b)(3) Settlement ("Settlement"), pursuant to the Court's October 20, 2010 Minute Order.

## I. INTRODUCTION

Based on the pleadings, discovery, and extensive settlement negotiations in this matter, the Settling Plaintiffs can attest to the facts set forth in their previous briefing concerning the over-inclusive nature of the Class notice list. However, the information necessary to formulate the Class notice list—which primarily relates to Defendants' archival and record-keeping procedures—is necessarily within Defendants' purview. The Settling Plaintiffs nonetheless file this Supplemental Brief to provide the Court with evidence setting forth Settling Plaintiffs' understanding of the data used to generate the class notice list as well as the description of those consumers who received the class notice.

## II. THE CLASS NOTICE LIST IS OVERINCLUSIVE

### A. The Class Notice List Is Unquestionably Broader Than the Settlement Class

Without question, and as Settling Plaintiffs have explained in the past, a review of the Settlement Agreement and Notice plan reveals that the universe of those who received notice of the Settlement was, by necessity, much larger than the universe of Class members. In particular, the Settlement Agreement defines the Settlement Class as those Chapter 7 discharge recipients who have questionable tradelines contained in a published credit report. (Settlement Agreement § 1.48.) Defendants, however, do not retain copies of published credit reports. (Sobol Decl. ¶ 3; Caddell Decl. ¶ 3.) In order to generate a Class Member list of those likely to have had a credit report published with a questionable tradeline, therefore, the Defendants searched archived records to determine if derogatory tradelines appeared with a "hard inquiry" (indicating the publication of a credit report) within the same archival period. (Sobol Decl. ¶ 3; Caddell Decl. ¶ 3.) The archived

records show the status of tradelines on the last day of the archive period and all inquiry information for the entire archive period. (Sobol Decl. ¶ 3; Caddell Decl. ¶ 3.) Significantly, however, the archives do not show whether the hard inquiry was made at the time the tradeline was in a questionable status. (Sobol Decl. ¶ 3; Caddell Decl. ¶ 3.) It is therefore impossible to determine from Defendants' records whether the questionable tradeline was actually published in a credit report. (Sobol Decl. ¶ 3; Caddell Decl. ¶ 3.) Stated differently, it is impossible to determine class membership from Defendants' records. (Sobol Decl. ¶ 3; Caddell Decl. ¶ 3.)

In order to address this reality in the context of the Settlement and to ensure that all potential Class members received notice, Defendants included on the notice list any consumer who, within an archived file, had a Chapter 7 discharge, was the subject of a credit report on or after March 15, 2002 (or for California residents in the case of Trans Union after May 12, 2001) and the inquiry was within one year prior to the date of the archived file, and who had at least one pre-bankruptcy derogatory tradeline, collection account, or judgment without an "included in bankruptcy" notation that did not appear with accompanying information indicating that the debt was non-dischargeable in bankruptcy. (Sobol Decl. ¶ 4; Caddell Decl. ¶ 4.) As set forth below, however, there are ***numerous*** reasons why a pre-petition account would be ***accurately*** reported as due and owing post-bankruptcy. Yet, under the criteria utilized to formulate the Class notice list, consumers whose pre-bankruptcy accounts were accurately reported as due and owing post-bankruptcy would ***still*** receive notice of the Settlement. (Sobol Decl. ¶ 4; Caddell Decl. ¶ 4.) The broad notice was necessary, of course, to address the limitations with the Defendants' data; that is, the Defendants' lack of credit reports (as opposed to credit files), the time period covered by the class (encompassing bankruptcies as long ago as March 1995, and as far back as May 1994 in the case of California residents and Trans Union), and the fact that Defendants' records covering the

Settlement Class period are archived and difficult to analyze on a mass basis. (Sobol Decl. ¶ 5; Caddell Decl. ¶ 5.) The result is that the Notice list not only encompassed ineligible potential claimants included in the Settlement Class definition[1], but also added significantly many more (perhaps millions) who are not members of the Settlement Class. (Sobol Decl. ¶ 5; Caddell Decl. ¶ 5.)

In arguing to the contrary, the *White* Plaintiffs strategically and narrowly focus on the provision of the Settlement Agreement providing that notice must be sent to ***each*** Settlement Class Member identified on the Class List in order to erroneously suggest that notice was sent to ***only*** Settlement Class members. (*See* Dkt. No. 715 at 8 (citing Settlement Agreement ¶ 4.3(b)).) Yet, nowhere in the provision requiring that notice be sent to Settlement Class members will the Court find any suggestion that the notice was to be sent "only" to Settlement Class members. To the contrary, as set forth above, in order the ensure that all Settlement Class members would receive the notice the Settlement Agreement required, the notice plan specifically contemplated that notice would be sent to some consumers who were not Settlement Class members. Without question, therefore, the class notice list is broader than the Settlement Class. (Sobol Decl. ¶ 5; Caddell Decl. ¶ 5.)

**B. <u>There Are Numerous Reasons A Pre-Bankruptcy Debt Would Be Accurately Reported As Due And Owing Post-Bankruptcy</u>**

While the foregoing demonstrates that the notice list was over-inclusive, it is impossible to provide the Court with a precise number illustrating the extent of over–inclusion because there is no way of quantifying just how many non-Settlement Class members received notice. (Sobol Decl. ¶ 6; Caddell Decl. ¶ 6.) As Defendants detailed in their briefs in opposition to class certification and again in their opposition to the Objectors, there are numerous reasons why a pre-petition

[1] The Settlement Class definition contains no requirement of inaccuracy, but only a pre-bankruptcy derogatory tradeline or judgment "without information sufficient to establish that it was in fact, excluded from the bankruptcy discharge." (Settlement Agreement ¶ 1.48.)

account would be accurately reported as due and owing post-bankruptcy, without being reflected in the credit file.

For example, many debtors with a pre-petition credit card balance keep their accounts active (to retain the convenience of having a credit card), and because their accounts remain active the reporting of the status of the account will be dynamic. (Sobol Decl. ¶ 7; Caddell Decl. ¶ 7.) Despite the ever-changing nature of these types of accounts, an archival snapshot will show only the static status at the end of the period. (Sobol Decl. ¶ 7; Caddell Decl. ¶ 7.) Thus, a consumer who shows an errant tradeline at the end of an archive period may have had a credit report published only at an earlier time when the tradeline was not in a questionable status. (Sobol Decl. ¶ 7; Caddell Decl. ¶ 7.) [2] Additional reasons that a pre-petition debt might be accurately reported as due and owing post-bankruptcy include:

- The balance listed as outstanding on a revolving account was incurred post-bankruptcy and, thus, was not subject to the discharge order;
- The debt reflected on a tradeline is actually of a non-dischargeable nature, i.e., a student loan is an installment loan and, when reporting the account to Defendants, the creditor chose to use an generic account type code rather than a student loan code (Dkt. No. 311, Patricia Finneran Suppl. Decl., dated July 31, 2008, ¶ 4);

---

[2] The Settling Plaintiffs acknowledge the example presented in their Motion for Reconsideration (Dkt. No. 704 at 8) wherein the Settling Plaintiffs presented the Court with the reverse of this scenario, i.e., that a questionable tradeline may not appear on a published credit report because the tradeline was corrected or dropped ***after*** Defendants' archival snapshot, but before the inquiry. (Dkt. No. 704 at 4.) It is ultimately correct that such a scenario could not have occurred given that the notice list was comprised of individuals who had an errant tradeline as of the last day of the archival period in question. (Sobol Decl. ¶ 9; Caddell Decl. ¶ 9.) Settling Plaintiffs' original point remains valid, however. That is, as explained above, it is possible that an errant tradeline appeared in the credit file ***after*** (as opposed to before) the publication of a credit report. (Sobol Decl. ¶ 9; Caddell Decl. ¶ 9.) Either way, therefore, the class notice list would include individuals who did not have a questionable tradeline appear on a published credit report. (Sobol Decl. ¶ 9; Caddell Decl. ¶ 9.)

- The debt may have been non-dischargeable pursuant to the "luxury goods and services" exception, 11 U.S.C. § 532(a)(2)(c);
- The debt underlying a civil judgment was of a non-dischargeable nature and thus, the judgment based on that debt is nondischargeable, 11 U.S.C. § 524(a)(1);
- The debt is a ride-through, meaning that both the creditor and the debtor are treating the debt as a due and owing, which is often the case with secured loans, such as auto, furniture, appliance, and real estate loans, and sometimes the case with credit card accounts which the consumer wishes to keep open (*See* Dkt. No. 594, Attachment 1, Lisa Hill Fenning Decl., dated June 25, 2007, ¶ 23);
- The debt was subject of an unreported reaffirmation agreement (*see id.* ¶ 25; Dkt. No. 311, Patricia Finneran Suppl. Decl., dated July 31, 2008, ¶ 4);
- The debt was the subject of a successful adversary proceeding. (*See* Dkt. No. 309, Michael G. Morgan Second Suppl. Decl., dated August 1, 2008, Ex. 70).

This list is not exhaustive. For example, any of the exceptions to Chapter 7 discharge set forth in the Bankruptcy Code, 11 U.S.C. § 523, may have been applicable to a particular debt, but simply incorrectly reported by the creditor or the debtor. (Sobol Decl. ¶ 8; Caddell Decl. ¶ 8.)

Unable to seriously dispute the foregoing, the *White* Plaintiffs scoured the record in hopes of finding support for their effort to ignore the difference between the notice list and the Settlement Class. In so doing, they seize upon class certification briefing that pre-dates the Settlement to suggest that Settling Plaintiffs have somehow changed their position with respect to the over inclusiveness of the notice list. (Dkt. No. 715 at 11.) Yet, a key distinction between the class that Settling Plaintiffs initially moved to certify and the class ultimately agreed upon in

the Settlement only underscores precisely why the notice list was significantly broader than the Settlement Class here.

In particular, the class Settling Plaintiffs initially sought to certify involved ***only*** no-asset bankruptcies (Dkt. No. 297 at 3), while the class agreed upon in the Settlement Agreement was expanded to include ***all*** Chapter 7 bankruptcies (Settlement Agreement § 1.48). This is significant because in a Chapter 7 no-asset bankruptcy ***all*** debts are discharged, whereas in Chapter 7 asset bankruptcies ***only*** scheduled debts are discharged. *See, e.g.*, *In re Nielsen*, 383 F.3d 922, 925 (9th Cir. 2004); *Beezley v. California Land Title Co.*, 994 F.2d 1433, 1434, 1436 (9th Cir. 1993). In Chapter 7 asset bankruptcies, therefore, there is a greater chance that a pre-bankruptcy debt would be accurately reported as due and owing post-bankruptcy (because, for whatever reason, it was not scheduled and, therefore, not discharged). Accordingly, the inclusion of Chapter 7 asset bankruptcies within the Settlement Class changed the dynamic of potential Class members to effectively ***increase*** the number of individuals whose pre-bankruptcy debts were accurately reported as due and owing post-bankruptcy. (Sobol Decl. ¶ 10; Caddell Decl. ¶ 10.) Contrary to the White Plaintiffs' suggestion, therefore, it is the class definition, not the Settling Plaintiffs' position, which has changed.

## III. CONCLUSION

In short, based on the pleadings, discovery, and extensive settlement negotiations in the matter, the Settling Plaintiffs can attest to the facts set forth in their previous briefing concerning the over-inclusive nature of the Class notice list in this matter. Accordingly, the Settling Plaintiffs respectfully request that the Court take the foregoing arguments and evidence under consideration and determine that a secondary notice in the forms proposed by Settling Plaintiffs should be sent to the Actual Damage Award Claimants and Convenience Award Claimants, but not to the entire Class.

Dated: November 4, 2010

Respectfully submitted,

By: /s/ *Michael A. Caddell*
Michael A. Caddell

Michael A. Caddell (State Bar No. 249469)
(mac@caddellchapman.com)
Cynthia B. Chapman (State Bar No. 164471)
(cbc@caddellchapman.com)
CADDELL & CHAPMAN
1331 Lamar, Suite 1070
Houston, TX 77010
Telephone: (713) 751-0400
Facsimile: (713) 751-0906

Michael W. Sobol (State Bar No. 194857)
(msobol@lchb.com)
Allison S. Elgart (State Bar No. 241901)
(aelgart@lchb.com)
LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

Stuart T. Rossman (BBO No. 430640)
(srossman@nclc.org)
Charles M. Delbaum (BBO No. 543225)
(cdelbaum@nclc.org)
NATIONAL CONSUMER LAW CENTER
7 Winthrop Square, 4th Floor
Boston, MA 02110
Telephone: (617) 542-8010
Facsimile: (617) 542-8028

Leonard A. Bennett (VSB No. 37523)
(lenbennett@cavtel.net)
Matthew Erausquin (VSB No. 65434)
(matt@clalegal.com)
CONSUMER LITIGATION ASSOCIATES, P.C.
12515 Warwick Boulevard, Suite 201
Newport News, Virginia 23606
Telephone: (757) 930 3660
Facsimile: (757) 930-3662

Mitchell A. Toups (TSB No. 20151600)
(matoups@wgttlaw.com)
WELLER, GREEN, TOUPS & TERRELL, L.L.P.
Bank of America Tower
2615 Calder St., Suite 400
Beaumont Texas 77702
Telephone: (409) 838-0101
Facsimile: (409) 832-8577

*Attorneys for White/Hernandez Plaintiffs*

Lee A. Sherman (State Bar No. 172198)
CALLAHAN, THOMPSON, SHERMAN & CAUDILL
111 Fashion Lane
Tustin, CA 92780
Telephone: (714) 730-5700
Facsimile: (714) 730-1642

*Attorneys for the Acosta/Pike Plaintiffs*