Michael W. Sobol (State Bar No. 194857)
(msobol@lchb.com)
Allison S. Elgart (State Bar No. 241901)
(aelgart@lchb.com)
LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

Michael A. Caddell (State Bar No. 249469)
(mac@caddellchapman.com)
Cynthia B. Chapman (State Bar No. 164471)
(cbc@caddellchapman.com)
CADDELL & CHAPMAN
1331 Lamar St., Suite 1070
Houston, TX 77010
Telephone: (713) 751-0400
Facsimile: (713) 751-0906

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

(SOUTHERN DIVISION)

| | |
|---|---|
| TERRI N. WHITE, *et al.*,<br><br>　　　　Plaintiffs,<br><br>v.<br><br>EXPERIAN INFORMATION SOLUTIONS, INC.,<br><br>　　　　Defendant.<br><br>and Related Cases:<br><br>05-cv-01073-DOC (MLGx)<br>05-cv-7821-DOC (MLGx)<br>06-cv-0392-DOC (MLGx)<br>05-cv-1172-DOC(MLGx)<br>06-cv-5060-DOC (MLGx) | Case No. 05-CV-1070 DOC (MLGx)<br>(Lead Case)<br><br>**DECLARATION OF MICHAEL W. SOBOL IN SUPPORT OF SETTLING PLAINTIFFS' SUPPLEMENTAL BRIEF IN COMPLIANCE WITH THE COURT'S OCTOBER 20, 2010 ORDER**<br><br>The Honorable David O. Carter |

I, Michael W. Sobol, declare as follows:

1. I am over 21 years of age, of sound mind, capable of executing this Declaration, have personal knowledge of the facts stated herein, and they are all true and correct. I am a partner in the firm of Leiff, Cabraser, Heimann, and Bernstein, LLP. I have been appointed as class counsel for the 23(b)(3) Settlement Class, pursuant to this Court's Order of May 7, 2009, granting preliminary approval of the 23(b)(3) Settlement. (Dkt. No. 423.) I make this Declaration in Support of Settling Plaintiffs' Supplemental Brief in Compliance with the Court's October 20, 2010 Order. If called upon to testify, I could and would testify competently to the truth of the matters stated herein.

2. Based on the pleadings, discovery, and extensive settlement negotiations in the matter, I can attest to the facts Settling Plaintiffs set forth in their previous briefing concerning the over-inclusive nature of the Class notice list. However, the information necessary to formulate the Class notice list—which primarily relates to Defendants' archival and record-keeping procedures—is necessarily within Defendants' purview. The facts contained in this declaration are therefore based on my understanding of the data used to generate the class notice list as well as the description of those consumers who received the class notice.

3. It is my understanding that Defendants do not retain copies of published credit reports. In order to generate a Class Member list of those likely to have had a credit report published with a questionable tradeline, therefore, Defendants searched their archived records to determine if questionable tradelines appear with a "hard inquiry" (indicating the publication of a credit report) within the same archival period. The archived records show the status of tradelines on the last day of the archive period and all inquiry information for the entire archive period. The archives do not show whether the hard inquiry was made at the time the tradeline was in a questionable status. It is therefore impossible to determine

from Defendants' records whether the questionable tradeline was actually published in a credit report.  Stated differently, it is impossible to determine class membership from Defendants' records.

4. Defendants included on the notice list any consumer who, within an archived file, had a Chapter 7 discharge, was the subject of a credit report on or after March 15, 2002 (or for California residents in the case of Trans Union after May 12, 2001) and the inquiry was within one year prior to the date of the archived file, and who had at least one pre-bankruptcy derogatory tradeline, collection account, or judgment without an "included in bankruptcy" notation that did not appear with accompanying information indicating that the debt was non-dischargeable in bankruptcy. Under the criteria utilized to formulate the Class notice list, consumers whose pre-bankruptcy accounts were accurately reported as due and owing post-bankruptcy would *still* receive notice of the Settlement.

5. The broad notice was necessary to address the limitations with the Defendants' data; that is, the Defendants' lack of credit reports (as opposed to credit files), the time period covered by the class (encompassing bankruptcies as long ago as March 1995, and as far back as May 1994 in the case of California residents and Trans Union), and the fact that Defendants' records covering the Settlement Class period are archived and difficult to analyze on a mass basis.  The result is that the Notice list not only encompassed ineligible potential claimants included in the Settlement Class definition[1], but also added significantly many more (perhaps millions) who are not members of the Settlement Class.  Without question, therefore, the class notice list is broader than the Settlement Class.

6. While the foregoing demonstrates that the notice list was over-inclusive, it is impossible to provide the Court with a precise number illustrating the

---

[1] The Settlement Class definition contains no requirement of inaccuracy, but only a pre-bankruptcy derogatory tradeline or judgment "without information sufficient to establish that it was in fact, excluded from the bankruptcy discharge." (Settlement Agreement ¶ 1.48.)

extent of over–inclusion because there is no way of quantifying just how many non-Settlement Class members received notice. As Defendants detailed in their briefs in opposition to class certification and again in their opposition to the Objectors, there are numerous reasons why a pre-petition account would be accurately reported as due and owing post-bankruptcy, without being reflected in the credit file.

7. For example, many debtors with a pre-petition credit card balance keep their accounts active (to retain the convenience of having a credit card), and because their accounts remain active the reporting of the status of the account will be dynamic. Despite the ever-changing nature of these types of accounts, an archival snapshot will show only the static status at the end of the period. Thus, a consumer who shows an errant tradeline at the end of an archive period may have had a credit report published only at an earlier time when the tradeline was not in a questionable status. Additional reasons that a pre-petition debt might be accurately reported as due and owing post-bankruptcy include:

- The balance listed as outstanding on a revolving account was incurred post-bankruptcy and, thus, was not subject to the discharge order;
- The debt reflected on a tradeline is actually of a non-dischargeable nature, i.e., a student loan is an installment loan and, when reporting the account to Defendants, the creditor chose to use an generic account type code rather than a student loan code (Dkt. No. 311, Patricia Finneran Suppl. Decl., dated July 31, 2008, ¶ 4);
- The debt may have been non-dischargeable pursuant to the "luxury goods and services" exception, 11 U.S.C. § 532(a)(2)(c);
- The debt underlying a civil judgment was of a non-dischargeable nature and thus, the judgment based on that debt is nondischargeable, 11 U.S.C. § 524(a)(1);

- The debt is a ride-through, meaning that both the creditor and the debtor are treating the debt as a due and owing, which is often the case with secured loans, such as auto, furniture, appliance, and real estate loans, and sometimes the case with credit card accounts which the consumer wishes to keep open (*See* Dkt. No. 594, Attachment 1, Lisa Hill Fenning Decl., dated June 25, 2007, ¶ 23);
- The debt was subject of an unreported reaffirmation agreement (*see id.* ¶ 25; Dkt. No. 311, Patricia Finneran Suppl. Decl., dated July 31, 2008, ¶ 4);
- The debt was the subject of a successful adversary proceeding. (*See* Dkt. No. 309, Michael G. Morgan Second Suppl. Decl., dated August 1, 2008, Ex. 70).

8. This list is not exhaustive. For example, any of the exceptions to Chapter 7 discharge set forth in the Bankruptcy Code, 11 U.S.C. § 523, may have been applicable to a particular debt, but simply incorrectly reported by the creditor or the debtor.

9. I acknowledge the example presented in the Settling Plaintiffs' Motion for Reconsideration (Dkt. No. 704 at 8) wherein the Settling Plaintiffs presented the Court with a scenario suggesting that a questionable tradeline may not appear on a published credit report because the tradeline was corrected or dropped after Defendants' archival snapshot, but before the inquiry. (Dkt. No. 704 at 4.) It is ultimately correct that such a scenario could not have occurred given that the notice list was comprised of individuals who had an errant tradeline as of the last day of the archival period in question. Settling Plaintiffs' original point remains valid, however. That is, as explained above, it is possible that an errant tradeline appeared in the credit file after (as opposed to before) the publication of a credit report. Either way, therefore, the class notice list would include individuals who did not have a questionable tradeline appear on a published credit report.

10. The inclusion of Chapter 7 asset bankruptcies within the Settlement Class changed the dynamic of potential Class members to effectively increase the number of individuals whose pre-bankruptcy debts were accurately reported as due and owing post-bankruptcy.

I declare under penalty of perjury, under the laws of the United States, that the foregoing is true and correct and that this Declaration was signed in San Francisco, California, on November 4, 2010.

_____
Michael W. Sobol