BOIES, SCHILLER & FLEXNER LLP
David Boies
333 Main Street
Armonk, NY 10504
Telephone:   914.749.8200
Facsimile:   914.749.8300
Email:       dboies@bsfllp.com
(admitted *pro hac vice*)

George F. Carpinello
Adam R. Shaw
10 North Pearl Street
Albany, NY 12207
Telephone:  518.434.0600
Facsimile:  518.434.0665
Email:       gcarpinello@bsfllp.com
             ashaw@bsfllp.com
(admitted *pro hac vice*)

David L. Zifkin (SBN 232845)
225 Santa Monica Blvd., 11th Floor
Santa Monica, CA   90401
Telephone:  310-395-5800
Facsimile:  510-874-1460
Email:  dzifkin@bsfllp.com

CHARLES JUNTIKKA &
ASSOCIATES LLP
Charles Juntikka (admitted *pro hac vice*)
1250 Broadway, 24th Floor
New York, NY 10001
Telephone:  212.315.3755
Facsimile:  212.315.9032
Email:       charles@cjalaw.com

DANIEL WOLF LAW OFFICES
Daniel Wolf (admitted *pro hac vice*)
1220 N Street, NW, Suite PH 2
Washington, DC 20005
Telephone:  202.842.2170
Email:       dan@danielwolflaw.com

Attorneys for Plaintiffs Robert Radcliffe, Chester Carter, Maria Falcon, Clifton C. Seale, III, Arnold E. Lovell, and all others similarly situated.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
(Southern Division)

| | |
|---|---|
| TERRI N. WHITE, et al.,<br><br>             Plaintiffs,<br><br>    v.<br><br>EXPERIAN INFORMATION SOLUTIONS, INC., et al.,<br><br>             Defendants.<br><br>and Related actions. | **CASE NO. 05-CV-1070 DOC (MLGx) (Lead Case)**<br><br>***WHITE* PLAINTIFFS' RESPONSE TO SETTLING PARTIES SUPPLEMENTAL BRIEFS REGARDING RECONSIDERATION OF NOTICE ORDER** |

DECLARATION OF DEAN BINDER

In their supplemental briefing in response to this Court's Order, dated October 20, 2010, Settling Parties submitted new declarations in support of their assertion that there are many Settlement Class Members who are ineligible for awards because their credit reports are error free.  As several of the representations that are made in Settling Parties' briefs and supporting declarations are factually incorrect and/or highly misleading, Settling Parties are compelled to file this very brief response in order to set the record straight.[1]

## ARGUMENT

*Chapter 7 "Asset" Cases:*   In their supplemental briefs, Settling Parties pointed out that it would be accurate for Defendants to report pre-bankruptcy debts as delinquent in Chapter 7 cases in which assets were distributed if those debts had not been listed on a bankruptcy schedule.  Settling Parties represent that they could not identify whether any given Chapter 7 case was of the "asset" or "no asset" variety because no "automated process" exists "for retrieving this information from the bankruptcy courts."   (Defendants' Joint Supplemental Brief, dated Nov. 4, 2010, at 9.).   This assertion is demonstrably incorrect.[2]

---

[1]   In its 10/20/10 order, this Court instructed Settling Parties to submit supplemental briefing and supporting evidence in support of their assertion that many – "perhaps millions" – of those on the Settlement Class List and to whom class notice was sent were not, in fact, Settlement Class Members.  In their supplemental briefing, Settling Parties took advantage of the opportunity afforded by this Court's order to submit evidence on a different issue – namely, whether and to what extent consumers who are admittedly class members may not be entitled to relief because the information contained in their credit reports was accurate.  As the Court did not ask the Parties to address that issue, the *White* Plaintiffs did not present any evidence relating to it with their supplemental briefing, which is an additional reason why it is necessary for *White* Plaintiffs to submit this response.

[2]   In both their original complaint and all of the motions they had filed for class certification prior to the Settlement, Plaintiffs excluded "asset cases" from the class definition.  Such asset cases are a slight minority of the total.  According to the Executive Office of the U.S. Trustee, "the vast majority (about 95 to 97%) of chapter 7 cases yield no assets. United States Trustee Program, Preliminary Report on Chapter 7 Asset Cases 1994 to 2000, at p. 7 (June 2001) (available at www.justice.gov/ust/eo/private_trustee/library/chapter07/docs/assetcases/Publicat.pdf.)

1

Information regarding the "asset" or "no asset" status of a Chapter 7 case is available through PACER, which maintains a field entitled "Asset" that is populated by a "Yes" or a "No", depending on whether assets were distributed. (Declaration of Daniel Wolf, sworn to Nov. 24, 2010 ("Wolf Decl."), ¶¶ 3-4 & Ex. A, B.)  By clicking a few computer keys from the PACER website, Settling Parties could obtain an excel spreadsheet from each of the nation's 93 bankruptcy districts, which, for all Chapter 7 cases filed since the mid-1990s, would show whether they were of the "asset" or "no asset" variety.  (*Id.*)[3]

The cost of doing so would be negligible – approximately one-third of one cent per consumer for each of the 17.1 million consumers who filed Chapter 7 bankruptcy petitions since April 1995 or a total of about $57,000.  (*Id.* ¶ 5.)

*Adversary Proceedings:*  In their supplemental brief, Defendants asserted (at 8) that the credit reports of many Settlement Class Members may be accurate because the pre-bankruptcy debts they listed as delinquent were the subject of successful adversary proceedings and, hence, were not reached by the discharge order.  Defendants represented (at 8-9) that are unable to identify these non-discharged debts because they "have no record of these proceedings," which, they asserted, "is no small matter" because "over the course of the class period, roughly 278,000 adversary proceedings were filed."

These representations are incomplete and highly misleading.  While Defendants may not maintain records of adversary proceedings in their files, they can easily access such proceedings through PACER.  (Wolf Decl. ¶ 7)  Indeed, using that service, Defendants could , at a very modest sum, obtain an excel spreadsheet for each of the country's 93 bankruptcy districts, showing all of the

---

[3]  Defendants cannot possibly maintain that they would be unable to match these lists with the information contained in their own files using their sophisticated matching technologies.  ( *See* Declaration of John Ulzheimer, sworn to Feb. 14, 2007 (Dkt. # 67), ¶ 18.)  The party information that is available through PACER includes both the debtor's full name and the last four digits of his or her social security number.

2

Chapter 7 cases that were the subject of an adversary proceeding and the name of the creditors that brought those proceedings.  (Id. ¶ 7 & Ex. C.)

Defendants' representation that the number of adversary proceedings that were filed between mid-1995 and the end of the class period is also highly misleading.  The 278,000 such proceedings that were filed constitute less than 1/5[th] of 1% of the number of some 140 million pre-bankruptcy debts that would have been owed by the 17.1 million consumers who obtained discharge orders during that period (assuming an average of about 8 to 10 such debts per case).  (See Declaration of Charles Juntikka, sworn to Dec. 14, 2009 (Dkt. # 555), ¶ 53.)

***Unreported Student Loans:***   In support of their supplemental brief, Defendants produced evidence showing that, following the implementation of the injunctive relief settlement, Wells Fargo advised that they had reported 9,000 student loans, which Equifax had updated to include a discharge indicator, with a generic non-student loan code.  (Defendants' Joint Supp. Br. at 8.)  Defendants use this evidence to suggest that issuers of non-dischargeable student loans frequently report those loans without a code that would identify them as such.

Defendants' submission overlooks the fact that the vast majority of student loans are held by educational lending institutions and, hence, can be easily identified as student loans, regardless of whether they are reported with a student loan code.  (Wolf Decl. ¶¶ 9-10 & Ex. D.)  Indeed, excluding Wells Fargo, institutions that are readily identifiable as student lenders by their name account for approximately 90 percent of the total outstanding balance of all federally guaranteed student loans that was due at the end of 2008.  (*Id.* ¶ 11 & Ex. D.)

By itself, Wells Fargo accounted for about 27% of the outstanding balance due on all such student loans held by financial institutions that were not identifiable as student lenders by name.  (*Id.* ¶ 12 & Ex. D.)  Extrapolating from the 9,000 student loans to Chapter 7 beneficiaries that Wells Fargo reported with a generic non-student loan code, the total number of such generically coded educational debts

3

DECLARATION OF DEAN BINDER

to all such beneficiaries would come to approximately 35,000 (or about 1/25th of 1% of all pre-bankruptcy debts) that would have been owed by the 17.1 million consumers who obtained discharge orders during the class period.

## **CONCLUSION**

For the reasons set forth herein, this Court should deny Settling Plaintiffs' motion for reconsideration.

DATED:  November 24, 2010    BOIES, SCHILLER & FLEXNER LLP
                             George F. Carpinello
                             Adam R. Shaw
                             David L. Zifkin (SBN 232845)

                             DANIEL WOLF LAW OFFICES
                             Daniel Wolf

                             CHARLES JUNTIKKA & ASSOCIATES LLP
                             Charles Juntikka


                             By /s/ Adam R. Shaw
                                 Adam R. Shaw

                             Attorneys for Plaintiffs Robert Radcliffe, Chester
                             Carter, Maria Falcon, Clifton C. Seale, III,
                             Arnold E. Lovell, and all others similarly situated

4