BOIES, SCHILLER & FLEXNER LLP
David Boies
333 Main Street
Armonk, NY 10504
Telephone:  914.749.8200
Facsimile:  914.749.8300
Email:       dboies@bsfllp.com
(admitted *pro hac vice*)

George F. Carpinello
Adam R. Shaw
10 North Pearl Street
Albany, NY 12207
Telephone:  518.434.0600
Facsimile:  518.434.0665
Email:       gcarpinello@bsfllp.com
             ashaw@bsfllp.com
(admitted *pro hac vice*)

CHARLES JUNTIKKA & ASSOCIATES LLP
Charles Juntikka (admitted *pro hac vice*)
1250 Broadway, 24th Floor
New York, NY 10001
Telephone:  212.315.3755
Facsimile:  212.315.9032
Email:       charles@cjalaw.com

DANIEL WOLF LAW OFFICES
Daniel Wolf (admitted *pro hac vice*)
1220 N Street, NW, Suite PH 2
Washington, DC 20005
Telephone:  202.842.2170
Email:       dan@danielwolflaw.com

David L. Zifkin (SBN 232845)
225 Santa Monica Blvd., 11th Floor
Santa Monica, CA  90401
Telephone: 310-395-5800
Facsimile: 510-874-1460
Email: dzifkin@bsfllp.com

Attorneys for Plaintiffs Robert Radcliffe, Chester Carter, Maria Falcon, Clifton C. Seale, III, Arnold E. Lovell, and all others similarly situated.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
(Southern Division)

| | |
|---|---|
| TERRI N. WHITE, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>EXPERIAN INFORMATION SOLUTIONS, INC.,<br><br>Defendant.<br><br>And Related Actions. | **Case No. 05-CV-1070 DOC (MLGx) (Lead Case)**<br><br>***WHITE* PLAINTIFFS' OBJECTIONS TO REVISED CLASS ACTION SETTLEMENT**<br><br>Place:     Courtroom 9D<br>Judge:    Honorable David O. Carter |

The *White* Plaintiffs respectfully submit the following objections to the Revised Class Action Settlement.

## INTRODUCTION

The Settlement has gone from bad to worse. The first iteration of the Settlement disenfranchised more than 14 million class members by requiring them to attest to their belief that their credit reports contained errors when the vast majority of them had no way of knowing whether that was the case. Of the 750,000 who were able to make that attestation, two-thirds were lured into participation by the false promise of receiving between $150 and $750 dollars each if they also attested to having been actually harmed as a result of the perceived errors in their credit reports.

The Settlement required the attestation of actual harm as a condition for these enhanced damages awards, despite the fact that none of the causes of action being settled required any such proof as an element of the claims. Then, when 500,000 claimants accepted the offer and swore to their actual harm, the Settling Parties realized the Settlement fund was too small to pay their claims. That was the bad.

Then it got worse. Rather than increase the Settlement fund to pay those valid claims as promised, the Settling Parties piled additional obligations onto their groundless attestation of actual harm requirement – now demanding that specific forms of proof of actual harm be submitted to corroborate the attestation. Settling Parties did so knowing that the large majority of class members would not have such proof and in a transparent effort to winnow the claims down to number that would permit claimants to be paid something more than a pittance.

This cynical tactic, of course, did nothing to address the core problem of the original Settlement – that it was far too small – and instead just made the Settlement worse. If the Settling Parties' calculation that only a small fraction of the actual damage claimants will be able to satisfy the high standard of proof for eligibility turns out to be correct, only about *one fifth of one percent* of the 15 million

2

member class will receive meaningful relief in the form of an actual damage award ranging from $150 to $750.  Alternatively, if the Settling Parties have miscalculated and a substantial percentage of the actual damage claimants are able to satisfy the new proof requirements, there will be too little money left to go around and they will be relegated to paltry awards that are about *one fifth* the amount of the $150 to $750 awards they were originally promised.  Either way, the Settling Parties engaged in an unacceptable bait and switch: (1) by dangling the promise of widespread, enhanced recoveries in front of the class to extol the purported generosity and fairness of the Settlement, and then, after those virtues were evaluated (and largely rejected by the class as evidenced by the measly 5% take rate); (2) by switching in unattainable conditions on receiving the enhanced recovery and herding all the claimants who could not meet them into a nominal "convenience" recovery of about $20 or less.

## PROCEDURAL BACKGROUND

On May 7, 2009, the Court preliminarily approved the Settlement and conditionally certified the class.  After objections to the appointment of class counsel and to class certification and to the fairness and adequacy of the class were filed, the Court held a fairness hearing on January 11, 2010.  The hearing was continued to enable further reporting and briefing on the claims submitted and on the appointment of class counsel and class certification.  The Court held a second fairness hearing on May 20, 2010.  The Court has not yet finally ruled on the appointment of class counsel, the certification of the class, or the fairness or adequacy of the Settlement.

On February 4, 2011, the Court approved the dissemination of a second set of notices to be sent only to those who previously submitted claims in response to the first notice.  The second set of notices added new requirements for actual damage claimants to obtain an actual damage award that were not in the Settlement and required all claims, opt outs or objections in response to the second set of notices to

3

be filed by March 31, 2011.

## I.  The Revised Settlement Should Be Rejected on the Same Grounds Previously Asserted

The *White* Plaintiffs previously objected to the appointment of class counsel, the certification of the class and the fairness and adequacy of the Settlement. Those same objections apply to the Revised Settlement and, since the Court has not yet ruled on them, the *White* Plaintiffs respectfully reassert and incorporate those objections as if they were fully set forth herein. (See Dkt. #s 553-562, 596, 619-625, 662, 666, 668, 706, 715-719, 722, 730-731, and 737).

## II.  The Revised Settlement Cannot Be Approved Because It Modified the Terms of the Original Settlement

The Revised Settlement should also be rejected because it improperly changes the terms of the original Settlement. When reviewing a settlement for final approval, the Court's role is to evaluate the settlement provided by the settling parties. The Court cannot "delete, modify or substitute certain provisions" of the settlement. *Hanlon v. Chrysler Corp*, 150 F.3d 1011, 1026 (9th Cir. 1998). Instead, the settlement must stand or fall in its entirety. *Id.*

Yet, here, the Settling Parties are asking the Court to approve a Settlement that has been substantially revised through the second notice. The Settlement originally submitted to the Court and described in the first notice set forth the relaxed criteria required to make a claimant eligible to receive an actual damage award. *See* Settlement § 7.7 (Dkt # 604-2). In order to establish such eligibility, a claimant was required to attest that he or she was harmed as a result of perceived errors in his or her credit report and provide a date when he or she was denied housing, employment and/or credit. Through the second notice, the Settling Parties have substantially changed that criterion. Now, the Settling parties are also requiring a claimant to provide documentary proof of the denial of credit – specifically, letters showing the adverse action or affidavits from lawyers, credit

4

counselors or the person taking the adverse action. The second notice also provides for the submission of "other" proof without telling anyone what would be acceptable "other" proof and what would not be acceptable, presumably leaving the claims administrator to make further arbitrary modifications to the Settlement on the fly when each claim is reviewed.

These requirements substantially alter and modify the terms of the original Settlement and cannot be implemented through the piecemeal issuance of supplemental notices. In the end, the Court cannot change the criteria for eligibility for receiving an actual damage award because it cannot "delete, modify or substitute certain provisions" that are already in the Settlement.

Inasmuch as the new proof requirements have created a new and different Settlement from the one that was the subject of the original notice, that Revised Settlement cannot be approved absent the provision of a new notice to the class. Both Rule 23 and basic principles of due process afford class members the right to notice and an opportunity to opt out or object to any settlement affecting their rights. The original notice informed class members of a different settlement involving different eligibility criteria for actual damage awards and a representation that those awards would range from $150 to $750. As the Revised Settlement has dramatically altered those eligibility criteria and as class members have not been told about that change, the Revised Settlement cannot be approved without violating their rights under Rule 23 and the Due Process Clause. *In re Veritas Software Corp. Secs. Litig.*, 496 F.3d 962, 972 (9th Cir. 2007) ("The absence of adequate notice injects a fatal flaw into the entire settlement process and undermines the district court's analysis of fairness of the settlement under the *Hanlon* factors. While the district court has substantial discretion in approving the details of a class action settlement, it may not do so without giving class members an adequate opportunity to object. . . . [W]here the notice was inadequate and overstated the likely recovery . . . it may have discouraged other objectors from

5

speaking up.").

### III. The Revised Settlement Added Unreasonable Requirements

The revisions in the Revised Settlement compound one of the fatal flaws in the original Settlement. As set forth in the *White* Plaintiffs' Objections to the original Settlement, Settling Parties were not at liberty to trade off the claims of class members who alleged no actual harm for those who do allege such harm because: (1) the class has been limited to claimants who seek only statutory damage awards under 15 U.S.C. § 1681n; and (2) proof of actual damages is not an element of a statutory damage claim and has no relevance to the determination of the amount of a statutory damage award. *Ashby v. Farmer's Ins. Co.*, 592 F.Supp.2d 1307, 1317 (D. Or. 2008).

Thus, Settling Parties should never have required any claimant to attest to having suffered "actual damages" in the first place as a condition of obtaining an enhanced award. Yet, the Revised Settlement exacerbates this improper condition by requiring claimants to present documentary proof of actual harm when no one would have to submit such proof if they were bringing the claim on their own separate from the class.

To make matters worse, the new proof requirement is so difficult to meet and so burdensome in relation to the benefit that it is exceedingly unlikely that more than a small fraction of the actual damage claimants will continue to qualify for actual damage awards.[1] *See* Exhibit A (Declaration of Suzanne Stanger). It is unreasonable to require class members to provide documentation concerning the denial of credit relating to events that occurred as many as 10 years ago. It is particularly unreasonable to do so where an individual would not have to submit such proof if he or she were bringing his or her own action separate from a class. If

---

[1] The *White* Plaintiffs respectfully request that the Court: (1) require the Settling Parties to provide a report detailing the number and type of claims made in response to the second notice; and (2) afford the *White* Plaintiffs an opportunity to respond to that report.

6

*WHITE* PLAINTIFFS' OBJECTIONS TO REVISED CLASS ACTION SETTLEMENT

a plaintiff were bringing his or her own case seeking actual damages, his or her uncontested affidavit swearing that he or she was denied credit would be sufficient. Yet here, that is not enough. Instead the Settling Parties are requiring class members to corroborate their claims with affidavits from lawyers and credit counselors and requiring paperwork that was likely long discarded and cannot be recreated. Under these circumstances, the Revised Settlement should not be approved.

## CONCLUSION

For the reasons set forth herein, the Court should reject the Revised Settlement.

DATED: March 31, 2011

**BOIES, SCHILLER & FLEXNER LLP**
George F. Carpinello
Adam R. Shaw
David L. Zifkin (SBN 232845)

By /s/ *Adam R. Shaw*
Adam R. Shaw

CHARLES JUNTIKKA & ASSOCIATES LLP
Charles Juntikka

DANIEL WOLF LAW OFFICES
Daniel Wolf

Attorneys for Plaintiffs Robert Radcliffe, Chester Carter, Maria Falcon, Clifton C. Seale, III, Arnold E. Lovell, and all others similarly situated

*WHITE* PLAINTIFFS' OBJECTIONS TO REVISED CLASS ACTION SETTLEMENT