**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Case No. SACV05-1070 DOC (MLGx)                                              Date: May 24, 2011

Title: TERRI WHITE, ET AL. v. EXPERIAN INFORMATION SOLUTIONS, INC., ET AL.

PRESENT:

THE HONORABLE DAVID O. CARTER, JUDGE

| Julie Barrera | Not Present |
|---|---|
| Courtroom Clerk | Court Reporter |

ATTORNEYS PRESENT FOR PLAINTIFFS: ATTORNEYS PRESENT FOR DEFENDANTS:

NONE PRESENT                                                NONE PRESENT

PROCEEDING (IN CHAMBERS):    QUESTIONS FOR ORAL ARGUMENT ON MOTION FOR FINAL APPROVAL OF MONETARY RELIEF SETTLEMENT.

    Before the Court is a Motion for Final Approval of Monetary Relief Settlement ("Monetary Settlement") in the above-captioned case ("Motion for Final Approval"). The Court preliminarily approved the Monetary Relief Settlement achieved in this case on May 7, 2009. A hearing on the Motion for Final Approval was held on January 11, 2010 ("Final Fairness Hearing"). Due to complications in the claims process and other issues raised by the parties, the Final Fairness Hearing was continued to May 20, 2010. As several issues remained to be resolved as of May 20, 2010, the Final Fairness Hearing was continued once again to May 26, 2011.

    In advance of the May 26, 2011 Final Approval Hearing, the Court submits the following list of questions to the parties. The parties will not be limited to discussion of the below-identified issues at the Final Fairness Hearing; however, the Court encourages the parties to structure their arguments around these questions. Other parties will be afforded an opportunity to respond to the answers given by opposing counsel. Objectors and/or other class members to whom no questions are posed will be afforded an opportunity to speak at the end of the hearing.

    **I.**    **QUESTIONS FOR THE SETTLING PARTIES**

    Either Settling Plaintiffs or Defendants may respond, as appropriate, to the questions

listed below.

1. The *White* Plaintiffs contend that the estimated class size in this case is 15 million. Accepting the *White* Plaintiffs estimate, *arguendo,* is it possible to have a fair settlement under which roughly 14.25 million out of 15 million class members stand to receive nothing?

2. Before the documentation requirement was imposed, 495,000 people submitted claims for actual damages. A claims audit that the Settling Parties conducted determined that about half of the 495,000 people who initially claimed actual damages – or 247,500 people – were eligible for Actual Damages Awards. However, only 15,000 people, or approximately 6% of 247,500, were able to submit claims for Actual Damages Awards accompanied by required documentation. What about the other 232,000 people? Is the Monetary Settlement, as structured, fair to them?

    a. What about the approximately 27,963 people who resubmitted claims for actual damages but who were unable to provide documentation? Are there any special considerations relating to them? The Court notes its concerns regarding letters from claimants, like those cited in the *White* Plaintiffs' briefing, explaining that the claimants attempted to contact Defendants for documentation of their injury, but were informed that records over two years old were not accessible.

3. Settling Plaintiffs' May 13, 2011 brief states, on page 1, that damages equivalent to the Actual Damages Awards granted under the Monetary Settlement "could not have been awarded by the Court in the context of a 23(b)(3) class action" if this case had proceeded to trial. Please develop and explain this statement.

4. Settling Plaintiffs' May 13, 2011 submission states, at page 6, that in the event that actual damage claimants were unable to produce either a credit letter or an affidavit from a third party, other forms of documentation would qualify the claimant for an Actual Damages Award. What other documentation, specifically, would have qualified? Was this additional option made clear to the notice recipients? Were claimants properly informed of the types of additional documentation that would have sufficed?

5. How do the Convenience Awards received by the majority of claimants compare to the amount of statutory damages that a claimant could have received if the claimant had brought an individual action under the Fair Credit Reporting Act ("FCRA")?

6. What are the best, published cases that can be cited in support of Settling Plaintiffs' counsels' separate requests for attorneys fees for the injunctive relief and monetary relief settlements?

## II.    QUESTIONS FOR THE *WHITE* PLAINTIFFS

The questions below are directed to the *White* Plaintiffs.

1. The *White* Plaintiffs' May 13, 2011 briefing estimates a class size of 15 million. How does one arrive at that number? Is the 15 million figure cited by the *White* Plaintiffs based simply on the number of initial notices of settlement that were sent out? If so, how do the *White* Plaintiffs' respond to the arguments that the Court set forth in its December 2, 2010 Order Granting Settling Plaintiffs' Motion for Reconsideration with respect to the distinction between notice recipients and class members?

2. Do the *White* Plaintiffs have an alternative proposal to the documentation requirement employed by the Settling Parties? Does this alternative equally ensure that only rightful claimants receive Actual Damages Awards? Explain how this alternative plan would work in practice.

3. The *White* Plaintiffs argue that most people would not have thought to keep credit denial letters, or the equivalent, in anticipation of hypothetical future litigation. How does this argument square with the fact that the documentation requirement also could be fulfilled by submitting an affidavit from an employer, landlord, credit counselor, attorney, etc. stating that a credit inquiry had occurred and that negative consequences had resulted? Even if most people do not think to retain credit denial letters in their personal files, is it not reasonable to assume that most people would remember the employer or landlord who denied them a job based on their credit report and be able to contact that person for an affidavit?

4. The *White* Plaintiffs' position is that the documentation requirement for Actual Damages Awards is too burdensome. If, however, a class member did not possess documentation of her injury, how could this class member ever have adduced sufficient proof to recover actual damages in an individual action? Viewed from this perspective, is the documentation requirement not actually quite lenient?

5. Is it not also the case that even recovery of *statutory* damages under the FCRA would have been difficult without the type of documentation required for Actual Damages Awards under the Monetary Settlement. Even though recovery of statutory damages does not depend on proof of actual injury, what evidence would have been used to prove a *violation* of the FCRA? The *White* Plaintiffs'

       submission dated Match 31, 2011 states, at page 7, that the individual's "uncontested affidavit" would have been enough. No case law is cited in support of that proposition. What case law supports this point?

6. An overarching objection lodged by the *White* Plaintiffs centers on the amount of the Monetary Settlement. Specifically, the *White* Plaintiffs believe that the amount of the settlement fund is too low. What amount would be reasonable? Does this new estimate account for the problems plaintiffs face with respect to class certification?

7. The *White* Plaintiffs' March 31, 2011 submission argues that the Settlement has been "revised" since the preliminary approval stage, as a result of the claims audit and resulting secondary notice procedure. How does this argument square with the fact that a possible audit procedure was specifically anticipated in § 7.7(c)(ii) of the Settlement Agreement?

### III.  QUESTION FOR THE GREEN OBJECTORS

**1.** The approach suggested in the Green Objectors' brief with respect to the calculation of attorneys fees – that the Court should cap the total fee award at an amount equal to 25% of the monetary relief fund – seems to completely ignore the value of the injunctive relief achieved in this case. Why should counsel not be entitled to fees for the hours expended to obtain injunctive relief for the class?

### IV.  REMAINING OBJECTIONS

       Once the above-identified issues have been addressed, objectors to the Monetary Settlement, including the *White* Plaintiffs, and other class members who wish to speak, may discuss any remaining objections to the Settlement. Defendants and Settling Plaintiffs shall be given an opportunity to respond to any new arguments against the Motion for Final Approval.

       The Clerk shall serve this minute order on all parties to the action.