UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TERRI N. WHITE et. al., <br><br> Plaintiff(s), <br><br> v. <br><br> EXPERIAN INFORMATION SOLUTIONS, INC et. al., <br><br> Defendant(s). | CASE NO. SACV 05-1070 DOC (MLGx) <br><br> O R D E R GRANTING IN PART AND DENYING IN PART REQUEST FOR ATTORNEYS FEES AND COSTS FOR INJUNCTIVE RELIEF SETTLEMENT |

Before the Court is Motion for Attorneys Fees for Injunctive Relief Settlement filed in the above-captioned case ("Motion") (Docket 573). After considering all relevant written submissions, as well as oral argument, the Court GRANTS in part and DENIES in part the Motion.

I. BACKGROUND

The facts of this case have been recounted exhaustively in several of the Court's previous

orders in this action. In brief, Injunctive Relief Class Counsel[1] represented a class of consumers in an action against the nation's three major credit-reporting bureaus, Experian Information Solutions, Inc. ("Experian"), Equifax Information Services, LLC ("Equifax"), and Transunion LLC ("Transunion") (collectively, "Defendants"). The class members' suit alleged that Defendants had violated – and were continuing to violate – provisions of the Fair Credit Reporting Act ("FCRA") by maintaining unreasonable procedures for the reporting, and reinvestigation, of debts discharged in bankruptcy. After intensive mediation sessions, two settlements were reached in this case: one for injunctive relief, entered into on or about April 3, 2008, and one for damages, entered into on or about February 5, 2009. As a result of the injunctive relief settlement, Defendants agreed to retroactively update the credit files of all of the injunctive relief class members. Defendants also agreed to adopt new procedures for the updating of certain pre-bankruptcy civil judgments and tradelines when a public record entry of bankruptcy is added to a consumer's file. The Court issued an order approving the injunctive relief settlement and certifying an injunctive relief settlement class under Fed. R. Civ. P. 23(b)(2) on August 19, 2008. Approval Order Regarding Settlement Agreement and Release, Aug. 19, 2008 (Docket 338). With the instant Motion, Plaintiffs seek approval for the payment of $5,977,500 in attorneys fees and costs to Injunctive Relief Class Counsel, as well as a total of $22,500 in service payments to the injunctive relief class representatives ($2,500 to each representative).[2] Defendants have agreed to bear these expenses, meaning that no amount of the attorneys fees awarded in connection with the injunctive relief settlement will be deducted from

---

[1]The term "Injunctive Relief Class Counsel" refers to: Daniel Wolf, Esq., Law offices of Daniel Wolf; Leonard A. Bennett, Esq., Consumer Litigation Associates, P.C.; Mitchell A. Toups, Esq., Weller, Green, Toups & Terrell, L.L.P. ("Toups"); Michael A. Caddell, Esq., Caddell & Chapman; Michael W. Sobol, Esq., Leiff Cabraser Heimann & Bernstein; Charles W. Juntikka, Esq., Charles Juntikka & Associates; Charles Delbaum and Stuart T. Rossman, National Consumer Law Center; and Lee A. Sherman, Esq., Callahn, McCune & Willis.

[2]The injunctive relief class representatives are: Jose Hernandez, Robert Randall, Bertram Robinson, Kathryn Pike, Chester Carter, Robert Radcliffe, Arnold E. Lovell, Jr., Maria Falcon, and Clifton C. Seale, III.

the recovery set aside for the class as part of the monetary relief settlement also reached in this case.

## II. LEGAL STANDARD

Upon motion in a class action, the court "may award reasonable attorney fees and nontaxable costs authorized by law or by the parties' agreement." Fed.R.Civ.P. 23(h). "Attorneys' fees provisions included in proposed class action settlement agreements are, like every other aspect of such agreement, subject to the determination of whether the settlement is 'fundamentally fair, adequate, and reasonable.'" *Staton v. Boeing Co.*, 327 F.3d 938, 963 (9th Cir. 2003) (quoting Fed. R. Civ. P. 23(e)). The Court has discretion to use the lodestar method to determine the reasonableness of the requested fees. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998). The starting point for computing the lodestar amount is to multiply the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate. *See Caudle v. Bristow Optical Co., Inc.*, 224 F.3d 1014, 1028 (9th Cir. 2000). The hourly rates used must be "in line with those prevailing in the community for services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 (1984). After computing the "raw" lodestar figure, courts may take into consideration additional factors to enhance or reduce the lodestar, including: the time and labor required; the novelty and difficulty of the questions involved; the skill requisite to perform the legal service properly; whether the fee is fixed or contingent; the amount involved and the results obtained; the experience, reputation, and ability of the attorneys; and awards in similar cases. *See Ballen v. City of Redmond*, 466 F.3d 736, 746 (9th Cir. 2006) (internal citations and quotations omitted).

In addition to attorneys fees, reasonable costs and expenses are eligible for reimbursement. *In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1366 (N.D. Cal. 1996) (citing *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 391-92 (1970)); *see also Staton*, 327 F.3d at 974. The requested costs must be relevant to the litigation and reasonable in amount. *In re Media Vision*, 913 F. Supp. at 1366.

## III. DISCUSSION

The $5,977,500 attorneys fees and costs requests consists of $5,671,778.68 in asserted

fees and $305,721.32 in asserted costs. Injunctive Relief Class Counsel report that they expended 10,192.60 hours on work related to the injunctive relief settlement, at an hourly rate of approximately $467, resulting in a lodestar of $4,762,018.25. The requested fee award of $5,671,778.68 therefore reflects the use of a 1.9 multiplier (*i.e.* the ratio of requested fees to the lodestar incurred is 1.9). For the following reasons, the Court concludes that the amount of requested fees is reasonable.

### a. Authority to Award Fees

The Court is authorized to grant attorneys fees and costs. The FCRA allows an award of attorneys fees and costs "in the case of successful action to enforce liability" under the statute. 15 U.S.C. §§ 1681n(a)(3), 1681o(a)(3). Though statute does not specifically define the term "successful," courts applying this provision have relied on the two-part test established by the Supreme Court in *Buckhannon Bd. & Care Home Inc. v. West Virginia Dept. of Health & Human Resources,* 532 U.S. 598 (2001), for determining whether a party is entitled to fees as a "prevailing" party. *See Nagle v. Experian Information Solutions, Inc.*, 297 F.3d 1305, 1307 (11th Cir. 2002); *Crabill v. Trans Union LLC*, 259 F/3d 662, 666-67 (7th Cir. 2001). Under this standard, a plaintiff may recover fees where: (1) she obtains a material alteration of the legal relationship between the parties that benefits her; and (2) such alteration is "judicially sanctioned." *Buckhannon*, 532 U.S. at 604-05. The phrase "judicially sanctioned" does not require a final judgment on the merits; a judicially-enforceable settlement agreement also counts. *See, e.g. Richard S. v. Dept. of Developmental Servs.*, 317 F.3d 1080, 1087 (9th Cir. 2003). Moreover, it is clear that "a plaintiff can be the prevailing party based exclusively on injunctive relief." *Fischer v. SJB-P.D., Inc.*, 214 F.3d 1115, 1118 (9th Cir. 2000). Here, the injunctive relief settlement, by permanently modifying Defendants' reporting practices, undoubtedly works a material, judicially-sanctioned alteration in the parties' legal relationship. Plaintiffs easily satisfy the *Buckhannon* test. The Court may award fees under the FCRA.

### b. Propriety of the Attorneys Fee Award

#### i. Fee Agreement Arises from Arm's Length Negotiations

The Court notes initially that Defendants have stipulated to the propriety of Plaintiffs'

fee request. *See* Agreement Re: Injunctive Relief Fees, May 1, 2009 (Docket 413-2). Where there is no evidence of collusion or detriment to the class members, courts generally "should refrain from substituting its own value for a properly bargained-for agreement." *In re Apple Computer, Inc. Derivative Litig.*, 2008 WL 4820784 at *3 (N.D. Cal. 2008); *Ingram v. Coca-Cola Co.*, 200 F.R.D. 685, 695 (N.D. Ga. 2001) (explaining that courts "should give substantial weigh to a negotiated fee amount, assuming that it represents the parties' best efforts to understandingly, sympathetically, and professional arrive at a settlement as to attorneys fees."). The Court sees no evidence of collusion or detriment to the class arising from the instant request for attorneys fees. The Court accordingly gives due weight the views of the parties in approving the request.

### ii. The Lodestar Is Reasonable

Injunctive Relief Class Counsel's "raw" lodestar is reasonable. Injunctive Relief Class Counsel have extensive experience in the area of consumer class actions, other complex class actions, and FCRA litigation. *See e.g.*, Decl. of M. Sobol ISO Mot. For Attorneys' Fees for Injunctive Relief Settlement, ¶ 2, 5 (Docket 575-3); Decl. of M. Caddell ISO Mot. for Attorneys' Fees for Injunctive Relief Settlement, ¶¶ 3-14, 18 (Docket 577-4); Decl. of L. Bennett ISO Mot. for Attorneys' Fees for Injunctive Relief Settlement, ¶¶ 5-10, 15 (Docket 577-7). Injunctive Relief Class Counsel's customary rates, which were used for purposes of calculating the lodestar in this case, are justified in light of the attorneys' reputation and experience, are based on prevailing fees in this District, and have been approved by courts in the past. *See Camacho v. Bridgeport Financial, Inc.*, 523 F.3d 973, 979 (9th Cir. 2008) ("[A]ffidavits of the plaintiffs' attorney[s] and other attorneys regarding prevailing fees in the community, and rate determinations in other cases . . . are satisfactory evidence of the prevailing market rate.") (internal citations and quotations omitted).

Similarly, Injunctive Relief Class Counsel expended an appropriate amount of time – 10,192.60 hours – on efforts related to the injunctive relief settlement. These hours reflect time spent undertaking substantial investigation, gathering facts, conducting formal discovery, engaging in significant motion practice, and attending court appearances. The parties also

participated in seven full days of mediation sessions in order to properly negotiate the complicated terms of the injunctive relief awarded to the class and successfully prosecuted a motion for court approval of the settlement. Counsel performed this work entirely on a contingent basis and have not yet been compensated for their time.

### iii. A Multiplier of 1.9 is Reasonable

The Court further approves the use of a 1.9 multiplier to increase the amount of attorneys fees from $4,762,018.25 to $5,671,778.68. As stated above, courts look to the following factors in determining whether to enhance a "raw" lodestar: the time and labor required; the novelty and difficulty of the questions involved; the skill requisite to perform the legal service properly; whether the fee is fixed or contingent; the amount involved and the results obtained; the experience, reputation, and ability of the attorneys; and awards in similar cases. *Ballen*, 466 F.3d at 746. Consideration of these factors – particularly an evaluation of the significance of the results obtained – support the use of a multiplier.

Injunctive Relief Class Counsel hit a home run with the injunctive relief settlement: it achieved virtually everything that Plaintiffs could have achieved had they prevailed on their claims for injunctive relief after full litigation. Indeed, had Plaintiffs established at trial that Defendants' procedures for reporting pre-bankruptcy debt ran afoul of the FCRA, any injunctive relief obtained as a result, at most, would have mandated that Defendants adopt reasonable alternative procedures. Not only does the injunctive relief settlement do that, it actually specifies the new procedures that must be used. The injunctive relief settlement thus represents a complete victory for the injunctive relief class members. It also serves the public good: society at large benefits from the increased accuracy in the field of credit reporting that the injunctive relief settlement has triggered.

The novelty of the questions raised by this case, the amount of skill required to negotiate the settlement, the experience and reputation of the attorneys, and the use of a contingent fee arrangement further support the decision to increase the "raw" lodestar. As is explained in more detail in the Court's orders approving both the injunctive and monetary relief settlements, Plaintiff's case presented largely novel, complex questions. Ascertaining a solution to these

complicated problems therefore required significant skill. Injunctive Relief Class Counsel rose to the occasion, all the while operating under a contingent fee arrangement that offered no guarantee of compensation. Use of a 1.9 multiplier is appropriate under these circumstances.

### c. Objections to the Attorneys Fee Award

Several objectors take issue with the fact that attorneys fees and costs are being sought separately under the injunctive relief settlement and under the monetary relief settlement. These objections lack merit. Given that the injunctive relief settlement and the monetary relief settlement constitute distinct, independently negotiated agreements, it is entirely proper for Injunctive Relief Class Counsel to seek fees for the injunctive relief settlement separately and apart from any fees sought in connection with the monetary relief settlement. Certain courts have even allowed for distinct fee awards for injunctive and monetary relief when both kinds of relief were included in the same settlement agreement. *See, e.g. Weiss v. York Hosp.*, 628 F. Supp. 1392, 1415 (M.D. Pa. 1986); *A fortiori*, separate fee awards are appropriate for independent injunctive and monetary relief settlements. In any event, the total amount of attorneys fees awarded in this case (for both settlements) is reasonable considering the circumstances of the case and the factors identified above.

All objections to the provision of $5,671,778.68 in attorneys fees to Injunctive Relief Class Counsel are overruled. The Motion for $5,671,778.68 is attorneys fees is GRANTED.

### d. Distribution of the Fees

Each member of the Injunctive Relief Class Counsel team contributed to the injunctive relief settlement achieved in this case. A group of law firms consisting of Leiff Cabraser Heimann & Bernstein; Caddell & Chapman; Weller, Green, Toups & Terrell, L.L.P.; National Consumer Law Center; Consumer Litigation Associates, P.C.; and Callahn, McCune & Willis (collectively, "Leiff Cabraser group"), however, ask that the Court allocate the entire amount of approved attorneys fees to be split among this group. The Leiff Cabraser group contends that the other members of the Injunctive Relief Class Counsel team – Law offices of Daniel Wolf ("Wolf") and Charles Juntikka & Associates ("Juntikka") – have waived their right to seek attorneys fees for the injunctive relief settlement by failing to request them by the Court-imposed

deadline of December 21, 2009.

This argument is without substance. Wolf and Juntikka timely filed a statement regarding their entitlement to attorneys fees for the injunctive relief settlement on December 21, 2009. Statement of Daniel Wolf and Charles Juntikka Regarding Rights to Attorneys Fees In Connection with Injunctive Relief Settlement, Dec. 21, 2009 (Docket 572). That Wolf and Juntikka filed this "Statement" instead of a standard motion has no bearing on their right to fees. Wolf and Juntikka structured their fee request the way that they did because they did not want their request for attorneys fees from the injunctive relief settlement to be misconstrued as implicit support for the monetary relief settlement, which their clients opposed. Wolf and Juntikka's efforts in this regard were unnecessary – given their sustained communication of objections to the monetary relief settlement, the Court would not have treated a standard motion for attorneys fees for the injunctive relief settlement as an admission of support for the monetary relief settlement. Nonetheless, the fact that Wolf and Juntikka's request for attorneys fees took a non-orthodox form does not affect their entitlement to compensation. The attorneys fees awarded for the injunctive relief settlement is to be divided fairly among all members of the Injunctive Relief Class Counsel team.

The parties are strongly encouraged to establish a plan for the proper distribution of attorneys fees on their own.[3] If the parties prove unable to do so, the Leiff Cabraser group, on the one hand, and Wolf and Juntikka, on the other, may submit briefing to the Court, not to exceed twenty pages, regarding their position on a proper fee allocation plan, accompanied by all relevant billing records, no later than noon on July 29, 2011. At least five (5) days prior to filing such briefs, the parties are required to submit their billing records to the other side for review. If briefs in support of each parties' allocation plan are filed, the Leiff Cabraser group and the Wolf / Juntikka group shall be given until noon on August 4, 2011 to respond to the other side's argument in a brief not to exceed fifteen pages.

---

[3] If the parties are able to work out a distribution plan on their own, they must notify the Court of this fact in a joint submission filed no later than noon on July 29, 2011.

### e. Costs

Injunctive Relief Class Counsel also request reimbursement for $305,721.32 in costs. No accounting, however, is provided in support of these claimed expenditures. In the absence of any such accounting, the Court declines to authorize reimbursement for costs.

The request for $305,721.32 in costs is therefore DENIED without prejudice to Injunctive Relief Class Counsel's ability to submit a renewed request for costs, accompanied by a proper accounting, within ten (10) days of the entrance of this Order.

### f. Service Awards

The instant Motion also seeks Court approval to allow Defendants to pay a total of $22,500 in service awards to the class representatives in this case: Jose Hernandez, Robert Randall, Bertram Robinson, Kathryn Pike, Chester Carter, Robert Radcliffe, Arnold E. Lovell, Jr., Maria Falcon, and Clifton C. Seale, III. A total service fee award of $22,500 yields a $2,500 payment to each class representative. Each of the named plaintiffs have provided valuable services to the absent class members in this case by consulting with counsel, producing and reviewing documents, and providing sworn testimony at depositions. *See* Decls. of Jose Hernandez, Clifton Seale III, Robert Radcliffe, Maria Falcon, Chester Carter, Arnold Lovell, Bertram Robison, Robert Randall, and Kathryn Pike ISO Plaintiffs' Motion for Settlement Class Certification and Final Approval of Proposed Injunctive Relief Class Settlement, attached as Exhs. F-N to Decl. of M. Sobol ISO Proposed Injunctive Relief Class Settlement (Docket 301). In light of this effort, as well as in recognition of the groundbreaking changes to the credit reporting industry that the class representatives helped to precipitate through the injunctive relief settlement, the Court finds service fees of $2,500 per named plaintiff to be warranted.

The Motion for a total of $22,500 in service awards to the class representatives is GRANTED.

## IV. DISPOSITION

For the reasons set forth above, the Motion for Attorneys Fees of $5,671,778.68 and for service awards of $2,500 per named plaintiff is GRANTED.

The Motion for $305,721.32 in costs is DENIED without prejudice to Injunctive Relief

9

Class Counsel's ability to submit a renewed request for costs in line with the procedures described in this Order.

IT IS SO ORDERED.

DATED: July 15, 2011

_____
DAVID O. CARTER
United States District Judge