DANIEL WOLF LAW OFFICES
Daniel Wolf (admitted *pro hac vice*)
dan@danielwolflaw.com
1220 N Street, NW, Suite PH 2
Washington, DC 20005
Telephone:   202.842.2170

CHARLES JUNTIKKA &
ASSOCIATES LLP
Charles Juntikka (admitted *pro hac vice*)
charles@cjalaw.com
1250 Broadway, 24th Floor
New York, NY 10001
Telephone:   212.315.3755
Facsimile:   212.315.9032

Attorneys for Plaintiffs Robert Radcliffe, Chester Carter, Maria Falcon, Clifton C. Seale, III, Arnold E. Lovell, and all others similarly situated.

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### (Southern Division)

| | |
|---|---|
| TERRI N. WHITE, *et al.*,<br><br>              Plaintiffs,<br><br>       v.<br><br>EXPERIAN INFORMATION SOLUTIONS, INC.,<br><br>              Defendant.<br><br>And Related Actions. | Case No. 05-CV-1070 DOC (MLGx)<br>(Lead Case)<br><br>Assigned to the Hon. David O. Carter<br><br>**COUNSEL FOR *WHITE* PLAINTIFFS' OPPOSITION TO MOTION FOR RECONSIDERATION OF ORDER DEFERRING RULING ON THEIR MOTION FOR ATTORNEYS' FEES** |

Counsel for the *White* Plaintiffs submit this memorandum in opposition to the Settling Plaintiffs' Motion for Reconsideration of this Court's Order Deferring a Ruling on Counsel for the *White* Plaintiffs' Motion for Attorneys' Fees (Dkt. No. 856).

The Settling Plaintiffs' motion for reconsideration is based almost entirely on a single contention – namely, that counsel for the *White* Plaintiffs missed a court-ordered December 21, 2009 deadline for the filing of a motion seeking attorneys' fees in connection with the Monetary Relief Settlement and, thereby, waived any right they might have to such fees. The problem with the Settling Plaintiffs' argument is that the December 16, 2009 order upon which it is based (the "12/16/09 order" (Dkt. No. 567)) imposes such a deadline only on counsel for the Settling Plaintiffs. Insofar as a petition for monetary-relief related fees is concerned, the 12/16/09 order is not directed to counsel for the *White* Plaintiffs and, in no sense, can it be reasonably construed as instructing them to prepare and file such a petition just three business days later on December 21, 2009.

## ARGUMENT

**I.    No Order Of This Court Required The *White* Plaintiffs To File Their Motion For Monetary Relief-Related Attorney Fees Prior To The Entry Of The Final Judgment In This Matter.**

In its 12/16/09 order, this Court signed a proposed order, filed *ex parte* and jointly by Settling Plaintiffs and Defendants (Dkt. No. 550-2), which purported to "clarify" an existing briefing schedule regarding the proceedings governing final approval of the Monetary Relief Settlement. Settling Plaintiffs' argument that counsel for *White* Plaintiffs missed the deadline for seeking fees in connection with that settlement is predicated on paragraph one of the order, which states that "[a]ny counsel for plaintiffs who wish to apply for an award of fees and costs for efforts made in connection with the Injunctive Relief Settlement or the 23(b)(3) Settlement must do so on or before December 21, 2009."

1        In relying on this paragraph, Settling Plaintiffs assume that in using the
2  phrase "counsel for plaintiffs," this Court necessarily meant both counsel for
3  Settling Plaintiffs and counsel for the *White* Plaintiffs.   With respect to the
4  Injunctive Relief Settlement, that assumption is correct.   The Injunctive Relief
5  Settlement (Dkt. No. 289) defines the term "plaintiffs" to include all five of the
6  *White* Plaintiffs (namely, Chester Carter, Maria Falcon, Arnold E. Lovell, Jr.,
7  Robert Radcliffe and Clifton C. Seale, III). (*Id.* ¶ 3.30.) By contrast, the Monetary
8  Relief Settlement (Dkt. No. 384) defines the term "plaintiffs" to mean "***the settling***
9  ***plaintiffs***, specifically, Jose Hernandez, Robert Randall, Bertram Robison, and
10  Kathryn Pike." (*Id.* ¶ 1.25 (emphasis added).)   Further, with respect to the
11  Monetary Relief Settlement, this Court has consistently treated the *White* Plaintiffs
12  as objectors to that settlement.   In other words, with respect to the Monetary Relief
13  Settlement, the *White* Plaintiffs are not "plaintiffs" and their counsel are not
14  "counsel for plaintiffs."[1]   Accordingly, the deadline that the 12/16/09 order sets for
15  the filing of any monetary-related relief fee petition does not apply to counsel for
16  the *White* Plaintiffs.

17        That this is so is readily apparent from the context surrounding this Court's
18  signing of its 12/16/09 order.   Indeed, despite their effort to obscure the point,
19  counsel for Settling Plaintiffs do not and cannot dispute that prior to the issuance of
20  the 12/16/09, which, as those counsel would have it, would have given the *White*
21  Plaintiffs all of *three* business days to prepare and file their motion, this Court had
22  never issued any order so much as mentioning monetary-relief related fees – much
23  less one imposing a deadline on the filing of a petition seeking such fees.

24        The story behind this Court's signing of the 12/16/09 order began seven

25

---

26  [1] Indeed, insofar as the Monetary Relief Settlement is concerned, the co-lead
27  counsel and all of the other attorneys for the ***plaintiffs*** are listed on its signature
     page, which includes the names of each  counsel for Settling Plaintiffs and from
28  which the names of counsel for the *White* Plaintiffs are, of course, absent.

1   months earlier, on May 7, 2009, when this Court signed the Settling Parties'
2   proposed order preliminarily approving the Monetary Relief Settlement and
3   establishing a schedule for the final approval hearing and the filing of submissions
4   related thereto (the "5/7/09 order" (Dkt. No. 423)). That schedule, which counsel
5   for the Settling Parties put forward without consulting counsel for the *White*
6   Plaintiffs, addressed the filing of fee petitions in connection with the Injunctive
7   Relief Settlement, stating that "[a]ny counsel for plaintiffs who wish to apply for an
8   award of fees and costs for efforts made in connection with the *Injunctive Relief*
9   *Settlement* must do so on or before October 19, 2009." (*Id.* at 31 (emphasis
10   added).) As to an application for fees in connection with the Monetary Relief
11   Settlement, however, this Court's 5/7/09 order was silent.

12       Four months after the issuance of the 5/7/09 order, on September 10, 2009,
13   the Settling Parties – the Settling Plaintiffs and Defendants alone – filed a joint *ex*
14   *parte* application to amend that order (Dkt. No. 464) owing to an unanticipated
15   delay in the process of completing the class list. (*Id.* at 1.) Nowhere in their *ex*
16   *parte* application, however, did the Settling Parties ask this Court to set a schedule
17   for the filing of motions for monetary relief-related fees. Rather, the Settling
18   Parties asked only that this Court move the deadlines set forth in its 5/7/09 order to
19   account for the delay that had occurred in generating the class list. (*Id.* at 2.) And
20   that is exactly what this Court did in an order, dated September 21, 2009 (the
21   "9/21/09 order" (Dkt. No. 478)), which, among others, moved the deadline for
22   applying for "an award of fees and costs for efforts made in connection with the
23   *Injunctive Relief Settlement*" from October 19, 2009 to December 21, 2009. (*Id.* at
24   2 (emphasis added).)

25       This Court's 5/7/09 and 9/21/09 orders – neither of which say word one
26   about the filing of any monetary-relief related fee petitions – provide the critical
27   backdrop through which this Court's 12/16/09 order must be read. That order was
28   the product of: (1) a "stipulation" between just the Settling Plaintiffs and

-4-

Defendants (Dkt. No. 550), which purported merely to "*clarify* the briefing schedule for the final approval of the proposed settlement" (*id.* at 1 (emphasis added)); and (2) an *ex parte* application by the Settling Parties (Dkt. No. 550) that did nothing more than ask this Court to adopt their proposed order "clarifying" that the briefing schedule would be the one to which the Settling Parties, but not the *White* Plaintiffs, had stipulated.

In their *ex parte* application (Dkt. No. 550), the Settling Parties gave exactly one reason why they were asking this Court to clarify the briefing schedule regarding final approval of the Monetary Relief Settlement – namely, that the Ninth Circuit's order, dated December 10, 2009, had created some ambiguity as to whether "the Settling Parties' responses to the *White* Plaintiffs' objections would be due on December 29, 2009" or on January 4, 2010, which according to the Settling Parties, was the "long-standing" and correct due date for the filing of those responses. (*Id.* at 1.) In other words, both by its title and its substance, the Settling Parties' *ex parte* application represented itself as seeking nothing more than a "clarification" of the Settling Parties' deadlines for the filing of submissions regarding certain matters that were the subject of an existing scheduling order. Nowhere in that application to "clarify" did the Settling Parties suggest that they were also moving this Court to set an entirely new schedule that would impose a strict deadline on the *White* Plaintiffs for the filing of submissions on a matter that had never been the subject of a prior scheduling order – namely, submissions regarding their entitlement to monetary-relief related attorneys' fees.

To be sure, in the stipulation they filed with their *ex parte* application, the Settling Plaintiffs and Defendants noted that this Court's 9/21/09 order "was silent with respect to fee requests pertaining to the 23(b)(3) Settlement" and, hence, agreed to set a deadline of 12/21/09 for the filing of such requests. (*Id.* at 3.) But the *White* Plaintiffs were not a party to that stipulation and the Settling Parties plainly had no authority to enter into an agreement binding the *White* Plaintiffs to

do anything.  Given that fact and given that the Monetary Relief Settlement, by its

terms, excludes the *White* Plaintiffs from its definition of plaintiffs, the Settling

Parties' stipulation requiring "any counsel for plaintiffs" wishing "to apply for an

award of fees and costs for efforts made in connection with . . . the 23(b)(3)

settlement" to do so "on or before December 21, 2009" (*id.* at 3) is applicable only

to counsel for the Settling Plaintiffs.

Consequently, and contrary to Settling Plaintiffs' representation, this Court's

12/16/09 order "clarifying" its 9/21/09 order and adopting the Settling Parties'

stipulated schedule cannot possibly be construed as setting a deadline on the *White*

Plaintiffs' filing of an application for monetary relief-related fees.   Indeed, to

believe the 12/16/09 order had that effect would be to believe that this Court

deliberately gave the *White* Plaintiffs a grand total of just three business days to

prepare a multi-million dollar fee petition covering a four year time span and

thousands of hours of work – and this just two days after the *White* Plaintiffs'

objections to the Monetary Relief Settlement were due and during precisely the

same three business days when they were struggling to meet the deadline for filing

their application for injunctive-relief related fees.[2]  The notion that, in signing the

Settling Parties' proposed clarifying order, this Court intended to impose such an

unrealistic and Draconian deadline on the *White* Plaintiffs strains credulity – to stay

the least.

And so too does it strain credulity that that this Court would issue any order

requiring counsel for the *White* Plaintiffs to apply for attorneys' fees prior to the

final approval of a settlement their clients were fiercely opposing.  Indeed, just five

days before and two weeks after the Settling Plaintiffs insist that the *White*

---

[2]  It is worth noting in this connection that, on the very day this Court issued its
12/16/09 order, Daniel Wolf (one of the two attorneys for the *White* Plaintiffs who
could have asserted an entitlement to monetary relief-related fees) had boarded a
plane for what would be a 20 hour journey to the Philippines.

1    Plaintiffs' fee application was due, the *White* Plaintiffs filed papers arguing that no

2    fees should be awarded in connection with the Monetary Relief Settlement (because

3    it did not merit approval) and, alternatively, that if any fees were awarded, the

4    amount should be a small fraction of counsel for Settling Plaintiffs' lodestar owing

5    to the fact that class members would be receiving less than a dollar of the minimum

6    $100 statutory damage awards to which they are entitled under the FCRA. (*See*

7    White Plaintiffs' Objections to Class Action Settlement, filed Dec. 14, 2011 (Dkt.

8    No. 553), and *White* Plaintiffs' Memorandum in Opposition to Counsel for Settling

9    Plaintiffs' Motions for Attorneys' Fees, filed Jan. 4, 2010, at 11-12 (Dkt. No. 596).)

10        Thus, had this Court truly imposed a December 21, 2009 deadline on any

11   application for monetary relief-related fees counsel for the *White* Plaintiffs might

12   make, it would have put them in the patently ridiculous position of having to apply

13   for those fees at a time when they were arguing that no one was entitled to any fees

14   whatever. In other words, any application the *White* Plaintiffs might have made for

15   monetary relief-related fees could not have become ripe until such time as this

16   Court issued an order finally approving the Monetary Relief Settlement.[3]   Yet, to

---

17   [3]  Contrary to counsel for Settling Plaintiffs' representation, the situation of counsel

18   for the *White* Plaintiffs vis-à-vis monetary-relief related fees cannot be likened to

19   their situation vis-à-vis injunctive relief-related fees for which they did file a an
     application on December 21, 2009.  First, unlike the case of monetary relief-related

20   fees, this Court did issue an order making that date the deadline by which counsel
     for the *White* Plaintiffs were required to submit an application for injunctive relief-

21   related fees.  Second, and unlike the case of the Monetary Relief Settlement, the

22   *White* Plaintiffs fully supported the Injunctive Relief Settlement and, hence, their
     counsel had no problem submitting a statement regarding their rights to attorneys'

23   fees in connection with that latter settlement.  In so doing, however, counsel for the

24   *White* Plaintiffs made it crystal clear: (1) that their fee application was based solely

25   on "the costs they incurred and the hours they billed in connection with the
     ***Injunctive Relief Settlement*** itself"; and (2) that they were "***not*** seeking an award

26   of fees under the [separate] Injunctive Relief Fee Settlement," because that latter

27   settlement tied injunctive relief fees to the approval of the Monetary Relief
     Settlement, which both they and their clients opposed.  (*White* Plaintiffs'

28   Application for Fees in Connection with Injunctive Relief Settlement, filed Dec. 21,

---

1 counsel for the Settling Plaintiffs' way of thinking, this Court, through no vehicle

2 other than an *ex parte* application to clarify an existing scheduling order that was

3 admittedly silent on that issue, signed an order compelling counsel for the *White*

4 Plaintiffs to file a conditional application asking this Court to award them an

5 unknown and unknowable amount of fees in the event this Court might later issue

6 orders approving the Monetary Relief Settlement and awarding fees to counsel for

7 the Settling Plaintiffs.[4]   Counsel for the Settling Plaintiffs' contention that that is

8 precisely what this Court did is an insult to its intelligence.

9     At any rate, it is undisputed that counsel for the *White* Plaintiffs themselves

10 did not construe the 12/16/09 order as requiring that they file any application they

11 might make for monetary relief-related fees within three business days of that order.

12 Indeed, in their Reply in Opposition to Settling Counsels' Motions for Attorneys'

13 Fees, filed April 29, 2010 (Dkt. No. 661), counsel for the *White* Plaintiffs expressly

14 stated that this Court had never established any deadline for their "filing of any

15 petition for monetary relief fees." (*Id.* at 3.)[5]   At a minimum, and in view of all the

16

17 2009, at 3 (emphasis original) (Dkt. No. 572).)

18 [4] Unlike counsel for the Settling Plaintiffs, counsel for the *White* Plaintiffs could

19 not have (and would not have) filed a fee petition asking this Court to award them a

20 percentage of the common fund because they did not (and do not) believe the
Settlement creating that fund should have been approved or that any percentage of

21 that fund should have been awarded to them or anyone else.  Accordingly, any

22 "conditional" fee application counsel for the *White* Plaintiffs might have filed by
the supposed December 21, 2009 deadline could have asked only for their fare

23 share of whatever fee award might have been awarded to counsel for Settling
Plaintiffs.  However, as counsel for the *White* Plaintiffs did not know and could not

24 have known what the amount of that award would be or what counsel for Settling
Plaintiffs' relative lodestar contribution was (*i.e.*, the number of reasonable hours

25 they had incurred times their reasonably hourly rates in connection with the

26 Monetary Relief Settlement) at that time, counsel for the *White* Plaintiffs could not

27 have known the amount of fees to which they might reasonably have been entitled.

28 [5] In their moving papers, counsel for Settling Plaintiffs assert that counsel for the

circumstances, counsel for the Settling Plaintiffs cannot plausibly maintain that counsel for the *White* Plaintiffs' reading of the 12/16/09 order as imposing no deadline on them was unreasonable.   Accordingly, for this Court to rule that counsel for the *White* Plaintiffs forfeited a $2.5 million (plus costs) claim for fees when they failed to comply with the three day deadline that was supposedly established by that order would be to work a travesty of justice.

In this connection, it is also worth noting that counsel for the *White* Plaintiffs signaled their intention to seek monetary relief-related fees promptly after learning that counsel for Settling Plaintiffs had filed papers urging this Court to issue an order that would leave counsel for the *White* Plaintiffs nothing.  For instance, in their Reply in Opposition to Settling Counsel's Motions for Attorneys Fees (Dkt. No. 661), the *White* Plaintiffs made it clear that the work they had done in connection with the claims of the monetary relief class was indispensable to any relief that class might obtain, that they had an unquestionable right to be receive fees for that work and that they had no intention of waiving that right.  (*Id.* at 2-4 & 10-18; *see also White* Plaintiffs Memorandum in Opposition to Counsel for Settling Plaintiffs' Motions for Attorneys' Fees, filed Jan. 4. 2010, at 2-6.)  Thus, for counsel for the Settling Plaintiffs to pretend that they were somehow caught off guard by counsel for the *White* Plaintiffs' fee motion is wholly disingenuous.  They could have filed a motion with this Court asking it to issue an order setting a schedule for the filing of the *White* Plaintiffs' fee motion at any time over the past two years.  Having failed to do so, they can hardly now be heard to complain that that motion has come too late.

---

Settling Plaintiffs admitted during the meet and confer teleconference that they were unaware of the existence of the 12/16/09 order.  That is blatantly false. During that teleconference, counsel for the *White* Plaintiffs merely stated that they were unaware of any order setting a deadline on their filing of an application for monetary-relief related fees.

II.   **The** *White* **Plaintiffs' Filing Of Their Motion For Monetary Relief-Related Attorney Fees Within 14 Days Of The Entry Of Final Judgment Was Not Inconsistent With The Requirements Of Fed. R. Civ. P. 23(h).**

Counsel for Settling Plaintiffs also argue that counsel for the *White* Plaintiffs' motion is barred by Fed. R. Civ. P. 23(h)(1), which, according to counsel for Settling Plaintiffs, required that that motion be filed at some unspecified time prior to the entry of final judgment. (Settling Plfs' Motion at 12.) According to Counsel for Settling Plaintiffs, a motion for attorneys' fees made after final judgment is inconsistent with Fed. R. Civ. P. 23(h)(1)'s mandate that notice of any motion for attorneys' fees be "directed to class members in a reasonable manner." (*Id.*) That argument is without substance.

The complete text of Fed. R Civ. P. 23(h)(1) reads as follows:

> A claim for an award must be made by motion under Rule 54(d)(2), subject to the provisions of this subdivision (h), at a time the court sets. Notice of the motion must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner.

Counsel for the *White* Plaintiffs' motion for attorneys fees adhered to that rule in every particular.

First, consistent with the language of Rule 23(h)(1), counsel for the *White* Plaintiffs' made their claim for an award of attorneys fees "by motion under Rule 54(d)(2)" and, in conformity with that latter rule, did so within 14 days of final judgment, as this Court had set no prior time for the making of that motion.

Second, as required by Fed. R. Civ. P. 23(h)(1), counsel for the *White* Plaintiffs served notice of their motion for monetary relief-related fees on all parties.

Third, as counsel for the *White* Plaintiffs are not "class counsel," they were

not subject to Rule 23(h)(1)'s requirement that their fee motion be "directed to class members in a reasonable manner."[6]  Indeed, as counsel for *White* Plaintiffs' fee motion would not result in class members paying a dime more in attorneys' fees than this Court has already ordered them to pay, that motion should be of no interest to them whatever.  Yet, counsel for the *White* Plaintiffs have given class members no less notice of their motion than did counsel for the Settling Plaintiffs give them notice of their fee motion when they filed it back in December 2009.

**III.    An Order Finding That Counsel For The *White* Plaintiffs' Motion For Monetary Relief-Related Fees Was Timely Filed In Conformity With The Requirements Of Fed. R. Civ. P. 54(d)(2) Will Cause No Prejudice To Counsel For The Settling Plaintiffs.**

In pushing this Court to find that counsel for the *White* Plaintiffs have forfeited their right to so much as a single dime for any of the time they have expended on this matter, counsel for the Settling Plaintiffs pretend that they were somehow prejudiced by the fact that counsel for the *White* Plaintiffs had not submitted an application for attorneys' fees at the time this Court evaluated their own petition – apparently because the Court deemed their lodestar hours as by themselves sufficient to justify a fee award amounting to 25% of the common fund. (Settling Plfs' Motion at 13.)   Be that as it may, under the Monetary Relief Settlement and the Class Notice, counsel for Settling Plaintiffs agreed that they would not seek a fee award of more than 25% of the common fund.  Accordingly, with or without counsel for the *White* Plaintiffs' application, the fee award would have been the same 25% amount and there is no sense in which the absence of that application could have caused any prejudice whatever to counsel for the Settling Plaintiffs.

---

[6]   In their motion for reconsideration, counsel for Settling Plaintiffs quote this requirement out of context to create the impression that it applies to counsel other than class counsel.

1    Counsel for Settling Plaintiffs' arguments in support of reconsideration have

2    a bizarre "Alice in Wonderland" quality to them.  At bottom, their contention is that

3    if counsel for the *White* Plaintiffs are reimbursed for the thousands of hours they

4    incurred and the tens of thousands of dollars they expended in pursuing monetary

5    relief for the classes in these cases, then counsel for Settling Plaintiffs will

6    somehow get less than they deserve.  But, of course, the truth is just the opposite.

7    Counsel for the *White* Plaintiffs are legally and equitably entitled to be paid

8    for their efforts on behalf of the monetary relief classes.  *See, e.g., See, e.g., Elliot v.*

9    *Sperry Rand Corp.*, 680 F.2d 1225, 1227 (8th Cir. 1982) (holding that named

10   plaintiffs who became dissenters were entitled to "an appropriate award of

11   attorneys' fees . . . for services in proceedings leading to approval of the

12   settlement"); *Ace Heating & Plumbing Co. v. Crane Co.*, 453 F.2d 30, 35 (3d Cir.

13   1971) (same); *Holden v. Burlington Northern, Inc.*, 665 F. Supp. 1398, 1431 (D.

14   Minn. 1987).  Indeed, in recognizing that the efforts of counsel in respect of the

15   injunctive relief claims cannot be separated from their efforts in respect of the

16   monetary relief claims and in later finding that counsel for the *White* Plaintiffs were

17   entitled to a fair and proportionate share of the injunctive relief fees, this Court has

18   implicitly acknowledged that counsel for the *White* Plaintiffs have made valuable

19   contributions to the monetary relief classes that are deserving of compensation.

20   (Order Granting in Part and Denying in Part Request for Attorneys Fees and Costs

21   for Injunctive Relief Settlement, filed July 15, 2011, at 8 (Dkt. No. 775).)

22   Instead, counsel for Settling Plaintiffs would have this Court issue an order

23   that would deny counsel for the *White* Plaintiffs any compensation and that would

24   divert to themselves every dollar to which counsel for the *White* Plaintiffs would

25   otherwise be entitled.  In their zeal to appropriate the fruits of their former co-

26   counsel's labor, counsel for Settling Plaintiffs have attempted to rewrite history by

27   pretending: (1) that a court order granting a motion to clarify a pre-existing

28   schedule actually had the effect of imposing a new Draconian deadline on counsel

-12-

1  for the *White* Plaintiffs; and (2) that in failing to construe that order as having that

2  effect, counsel for the *White* Plaintiffs have forever forfeited a $2.5 million (plus

3  costs) claim for attorneys' fees.  This kind of trickery and deceptive practice are

4  emblematic of the worst that our legal profession has to offer.

5  **CONCLUSION**

6  For the reasons set forth above, this Court should deny counsel for the

7  Settling Plaintiffs' motion for reconsideration on the ground that counsel for the

8  *White* Plaintiffs' motion for attorneys fees was timely filed in conformity with Fed.

9  R. Civ. P. 54(d)(2).

10  In this connection, counsel for the *White* Plaintiffs would note that, in their

11  Motion for Reconsideration, counsel for Settling Plaintiffs have urged this Court to

12  resolve this timeliness issue right now, as it would "not require the Court to engage

13  in a lengthy and time-intensive allocation analysis." (*Id.* at 9.)  On this point,

14  counsel for the Settling Plaintiffs and counsel for the *White* Plaintiffs agree.

15  The issue whether counsel for the *White* Plaintiffs' fee motion was timely

16  filed in accordance with Fed. R. Civ. P. 54(d)(2) because it was filed within 14 days

17  of the entry of judgment and because no order of this Court compelled them to file

18  it before that date is properly before this Court and ought to be resolved at this time.

19  On the other hand, to the extent it finds that counsel for the *White* Plaintiffs' fee

20  motion was timely, this Court should not order the parties to brief and should not

21  itself adjudicate the merits of that motion, which would entail, in the words of

22  counsel for Settling Plaintiffs, "a lengthy and time-intensive allocation analysis" –

23  all of which would be for naught if the *White* Plaintiffs were to prevail on their

24  pending appeal before the Ninth Circuit.

25

26

27

28

1   DATED:   December 28, 2011        CHARLES JUNTIKKA & ASSOCIATES LLP
                                      Charles Juntikka
2
                                      DANIEL WOLF LAW OFFICES
3                                     Daniel Wolf

4

5

6                                     By /s/  Daniel Wolf
                                      _____
7

8                                     Attorneys for Plaintiffs Robert Radcliffe, Chester
                                      Carter, Maria Falcon, Clifton C. Seale, III, Arnold
9                                     E. Lovell, and all others similarly situated

    s:\wpdata\7512001\2011-12-28 white plfs mot for reconsideration.doc
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                              -14-