BOIES, SCHILLER & FLEXNER LLP
George F. Carpinello
Adam R. Shaw
10 North Pearl Street
Albany, NY 12207
Telephone:  518.434.0600
Facsimile:  518.434.0665
Email:  gcarpinello@bsfllp.com
         ashaw@bsfllp.com
(admitted *pro hac vice*)

David L. Zifkin (SBN 232845)
401 Wilshire Boulevard
Suite 850
Santa Monica, CA  90401
Telephone:   310.752.2400
Facsimile:    310.752.2409
Email: dzifkin@bsfllp.com

CHARLES JUNTIKKA &
ASSOCIATES LLP
Charles Juntikka
1250 Broadway, 24th Floor
New York, NY 10001
Telephone:   212.315.3755
Facsimile:    212.315.9032
Email:  charles@cjalaw.com
(admitted *pro hac vice*)

DANIEL WOLF LAW OFFICES
Daniel Wolf
1220 N Street, NW, Suite PH 2
Washington, DC 20005
Telephone:   202.842.2170
Email:  dan@danielwolflaw.com
(admitted *pro hac vice*)

*Attorneys for Plaintiffs Robert Radcliffe, Chester Carter, Maria Falcon, Clifton C. Seale, III, Arnold E. Lovell, and all others similarly situated.*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TERRI N. WHITE, et al.,<br><br>          Plaintiffs,<br><br>    v.<br><br>EXPERIAN INFORMATION SOLUTIONS, INC., et al.,<br><br>          Defendants.<br><br>and Related actions. | CASE NO. SA 05-CV-1070 DOC (MLGx) (Lead Case)<br>Assigned to the Hon. David O. Carter |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF *WHITE* PLAINTIFFS' MOTION TO DISQUALIFY COUNSEL

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..........................................................................ii

INTRODUCTION ................................................................................ 1

PRELIMINARY STATEMENT ............................................................ 1

STATEMENT OF FACTS ................................................................... 3

THE NINTH CIRCUIT'S DECISION ................................................. 5

ARGUMENT........................................................................................ 8

     I.    Settling Counsel's Violation of the Ethical Proscription Against Simultaneous Representation of Clients With Adverse Interests Requires Their Automatic Disqualification From Further Participation in This Case Under Controlling California Law. ............................................ 8

     II.   Settling Counsel Are Disqualified From Serving as Class Counsel Under Fed. R. Civ. P. 23(g)....................................... 13

          A.    Settling Counsel's Disloyal Conduct, Combined With Their Continuing Insistence That They Did Nothing Disloyal, Demonstrates That They Cannot Be Trusted to Fairly and Adequately Represent the Class. ............................................................ 13

          B.    The Continuing Conflict Between Settling Counsel and the Class Renders Them Incapable of Satisfying Rule 23(g)'s Adequacy of Representation Requirement. ........................................ 16

     III.  Settling Plaintiffs Are Unable to Exercise Independent Judgment in Determining Whether Settling Counsel Are Fit to Represent the Class. ....................................... 19

CONCLUSION................................................................................ 21

## <u>TABLE OF AUTHORITES</u>

### FEDERAL CASES

*Armour v. Network Assocs.*,
   171 F. Supp. 2d 1044 (N.D. Cal. 2001)...............................................20

*Baas v. Dollar Tree Stores, Inc.*,
   2008 WL 906496 (N.D. Cal. Apr. 1, 2008)........................................15

*Bodner v. Oreck Direct, LLC*,
   2007 WL 1223777 (N.D. Cal. Apr. 25, 2007).....................................15

*California Earthquake Authority v. Metropolitan West Securities, LLC*,
   712 F. Supp. 2d 1124 (E.D. Cal. 2010) ............................................10

*Certain Underwriters at Lloyd's London v. Argonaut Ins. Co.*,
   264 F. Supp. 2d 914 (N.D. Cal. 2003).............................................11

*Creative Montessori Learning Center v. Ashford Gear*,
   662 F.3d 913 (7th Cir. 2011) ...............................................13, 15

*Davis v. EMI Group, Ltd.*,
   2013 WL 75781 (N.D. Cal. Jan. 4, 2013).............................................8

*Del Campo v. Mealing*,
   2011 WL 6176223 (N.D. Cal. Dec. 7, 2011) ...................................11, 13

*Fujitsu Ltd. v. Belkin Int'l, Inc.*,
   2010 WL 5387920 (N.D. Cal. Dec. 22, 2010) .....................................11

*GATX/AIRLOG Co. v. Evergreen Int. Airlines*,
   8 F. Supp. 2d 1182 (N.D. Cal. 1998)..............................................11

*Huston v. Imperial Credit Commer. Mortg. Inv. Corp.*,
   179 F. Supp. 2d 1157 (C.D. Cal. 2001)........................................12-13

*Image Technical Services, Inc. v. Eastman Kodak Co.*,
   820 F. Supp. 1212 (N.D. Cal. 1993)..............................................11

*In Re "Agent Orange" Product Liability Litigation*,
   800 F.2d 14 (2d Cir. 1986) .......................................................13

*In Re Bluetooth Headset Prods. Liab. Litig.*,
   654 F.3d 935 (9th Cir. 2011) .....................................................12

*In Re County of Los Angeles*,
   223 F.3d 990 (9th Cir. 2000) ......................................................8

*In Re DFX Interactive, Inc.*,
   2008 WL 8448326 (9th Cir. BAP, Feb. 6, 2008) .................................11

*Kayes v. Pacific Lumber Co.*,
   51 F.3d 1449 (9th Cir. 1995) .....................................................12

*Lazy Oil Co. v. Witco Corp.,*
   166 F.3d 581 (3d Cir. 1999) ...................................................................13

*Moreno v. Autozone, Inc.,*
   2007 WL 4287517 (N.D. Cal. Dec. 6, 2007) .........................................11, 12, 13

*Palumbo v. Tele-Communications, Inc.,*
   157 F.R.D. 129 (D.D.C. 1994) ...............................................................12

*Ramirez v. Trans Union, LLC,*
   2013 WL 1164921 (N.D. Cal. Mar. 20, 2013) .......................................... 8

*Rodriguez v. Disner,*
   688 F.3d 645 (9th Cir. 2012) .........................................................6, 14, 19

*Rodriguez v. West Publishing Corp.,*
   563 F.3d 948 (9th Cir. 2009) .........................................................6, 12, 18

*Schick v. Berg,*
   2004 WL 856298 (S.D.N.Y. Apr. 20, 2004) .........................................16

*Sipper v. Capital One Bank,*
   2002 WL 398769 (C.D. Cal. Feb. 28, 2002) .........................................15

*Stavrides v. Mellon Nat'l Bank & Trust Co.,*
   60 F.R.D. 634 (W.D. Pa. 1973) .............................................................15

*Sullivan v. Chase Inv. Servs. of Boston, Inc.,*
   79 F.R.D. 246 (N.D. Cal. 1978) ............................................................12

*TransPerfect Global, Inc. v. Motionpoint Corp.,*
   2010 WL 3619565 (N.D. Cal. Sept. 13, 2010).......................................11

*Van Vranken v. Atlantic Richfield Co.,*
   1988 WL 123833 (N.D. Cal. Sept. 26, 1988).........................................19

*Yumul v. Smart Balance, Inc.,*
   2010 WL 4352723 (C.D. Cal. Oct. 8, 2010) .........................................15

**STATE CASES**

*Alberts v. Franklin,*
   2004 WL 1345078 (Cal. App. 4 Dist. June 16, 2004)..................................16, 17

*American Airlines, Inc. v. Sheppard, Mullin, Richter & Hampton,*
   96 Cal. App. 4th 1017, 117 Cal. Rptr. 2d 685 (2002) ..................................16, 17

*Atlantic Pac. Home Loans, Inc. v. Superior Court,*
   2006 WL 3616997 (Cal. App. 4 Dist. Dec. 13, 2006).......................................11

*Cal Pak Delivery, Inc. v. United Parcel Service, Inc.,*
   52 Cal. App. 4th 1, 60 Cal. Rptr. 2d 207 (1997) ............................................*passim*

*Fair v. Bakhtiari,*
195 Cal. App. 4th 1135, 125 Cal. Rptr. 3d 765 (Cal. App. 1st Dist. 2011) .......17

*Flatt v. Superior Court,*
9 Cal. 4th 275, 36 Cal. Rptr. 2d 537 (1994) ......................................................8, 9

*Laucella v. Ireland San Filippo, LLP,*
2006 WL 75355 (Cal. App. 6 Dist. Jan. 13, 2006)..............................................10

*Operating Engineers Local Union No. 3 v. Phibbs,*
2004 WL 161296 (Cal. App. 3 Dist. July 20, 2004) ...........................................10

*Pour Le Bebe, Inc. v. Guess? Inc.,*
112 Cal. App. 4th 810, 5 Cal. Rptr. 3d 442 (2003) ................................................9

*State Farm Mutual Automobile Ins. Co. v. Federal Ins. Co.,*
72 Cal. App. 4th 1422, 86 Cal. Rptr. 2d 20 (1999) .........................................9, 10

*Wong v. Wong,*
2013 WL 953865 (Cal. App. 2 Dist. Mar. 13, 2013) ..........................................11

**FEDERAL RULES**

Fed. R. App. P. 23(f).................................................................................................. 5

Fed. R. Civ. P. 23(g) ......................................................................................2, 13, 21

**STATE RULES**

California Rules of Professional Conduct Section 3-310(C) ...............................1, 7

**STATE CONSTITUTIONAL PROVISIONS**

Cal. Const. Art. XV § 1 .........................................................................................17

## INTRODUCTION

The *White* Plaintiffs submit this motion to disqualify Plaintiffs' counsel who represented the Settling Plaintiffs in the above-entitled matter, and whom the Ninth Circuit Court of Appeals found created a conflict of interest between the settling class representatives and the class in violation of Section 3-310(C) of the California Rules of Professional Conduct (hereinafter "Settling Counsel").[1]

## PRELIMINARY STATEMENT

In its opinion reversing this Court's approval of the proposed Settlement herein, the Ninth Circuit found that Settling Counsel created an actual conflict of interest by offering a $5,000 incentive award to class representatives only on the condition that those representatives would support the Settlement and by attempting to induce the *White* Plaintiffs to accept the Settlement by threatening to deprive them of the $5,000 incentive award.  Under California law, which applies to this issue, it is clear that the simultaneous representation of parties with conflicting interests requires automatic and *per se* disqualification of counsel from the action. Once an attorney breaches his or her trust to the client by concurrently representing adverse interests, that trust cannot be restored, and the attorney must be disqualified from further participation in the action, regardless of whether the conditions giving rise to the conflict have been removed or any client has suffered any prejudice. That rule applies when conflicted counsel has acted in good faith or was otherwise unaware of the conflict.  *A fortiori*, it applies when counsel not only knew about the conflict, but *intentionally created it*.

The automatic disqualification rule applies with even greater force in a class action context, where class counsel has a heightened fiduciary duty to conduct themselves in an ethical manner and to zealously represent the interests of absent

---

[1]  The Settling Counsel are Lieff, Cabraser, Heimann & Bernstein, LLP; Caddell & Chapman; National Consumer Law Center ("NCLC"); Consumer Litigation Associates; Callahan, Thompson, Sherman & Caudill, LLP; and Weller, Green, Toups & Terrell, LLP.

class members.  Separate and apart from California law, Rule 23(g) of the Federal Rules of Civil Procedure requires this Court to determine whether Settling Counsel are adequate to represent the class and Settling Counsel have a "heavy burden" in making that showing where they have committed an ethical violation in the very same action in which they seek appointment as class counsel.  That is especially so here where Settling Counsel continue to be oblivious to the seriousness – or even existence – of their ethical violations.  Thus, even if Settling Counsel are not entirely disqualified from the action, they must be disqualified from acting as class counsel.

In any event, Settling Counsel cannot adequately represent the class going forward, because they have a continuing conflict.

*First*, Settling Counsel are subject to a possible legal malpractice action brought by class members arising from their ethical breath.

*Second*, because Settling Counsel procured a defective settlement by conditioning the incentive award on approval of the Settlement, Settling Counsel have a duty to notify the class of the rejection of the Settlement.  The cost of this notification must be borne by Settling Counsel.  The only way they might avoid that very significant monetary obligation would be to simply scrub clean and reaffirm the prior settlement agreement, absent the offending language.  Thus, Settling Counsel cannot provide un-conflicted representation to the class because of their own economic incentive to avoid the cost of re-notice.

*Third*, Settling Counsel are still subject to the possibility that they will receive no fees as a result of their unethical conduct.  Given this specter, they have little or no incentive to aggressively continue to litigate this action on behalf of the entire class.  Thus, Settling Counsel will be under even greater pressure to settle this case as quickly as possible, regardless of whether such a settlement is in the best interest of the class.

*Fourth*, Settling Counsel's defense of their disloyal conduct has been based,

in large part, on the notion that it did not cause the class any prejudice.  Were they to negotiate a better settlement on remand, it would severely undermine their ability to make that argument, which would, in turn, complicate their ability to avoid forfeiture of their attorneys' fees.

Moreover, Settling Counsel cannot act as class counsel for an entirely independent reason:  their clients have already been determined "inadequate" as class representatives by the Ninth Circuit on the ground that the conditional incentive award divorced their interests from those of the absent class.  One of the paramount responsibilities of class representatives is to select counsel that will fairly and adequately represent the calls. But because they committed the same breach of fiduciary duty as did their counsel, Settling Plaintiffs are unable to exercise independent judgment in making that selection.  Having no clients that are eligible to exercise such independent judgment, Settling Counsel are not eligible to be reappointed as class counsel.

## STATEMENT OF FACTS[2]

On February 5, 2009, Counsel for Settling Plaintiffs and Defendants' Counsel reached agreement on the amount it would take to settle these matters – $45 million (or $15 million per Defendant), inclusive of attorneys' fees and expenses.  Settling Counsel advised the *White* Plaintiffs of this settlement on February 6, 2009.  Dkt. # 555-2 Exh. A.

On April 8, all five *White* Plaintiffs sent Settling Counsel a letter confirming their opposition to the Settlement.   Dkt. #555 at ¶ 22, Dkt. # 555-2 Exh. J.  As *White* Counsel had previously informed Settling Counsel, the reason for their opposition was that the Settlement would release the meritorious claims of each member of three separate 10 to 15 million-member classes for an award averaging less than 1% of the $100 statutory minimum to which they were entitled.

---

[2]  As this Court is familiar with the long and complex procedural history leading up to this motion, the *White* Plaintiffs limit this Statement of Facts to those essential to the resolution of this motion.

On April 16, eight days after having received the *White* Plaintiffs' letter confirming their opposition – Settling Counsel added a provision to their draft Settlement, which  provided that Settling Counsel "shall file an application to the Court for an incentive award" of up to $5,000 for "each of the Named Plaintiffs serving as class representatives *in support of* the Settlement."  *See* Exhibit A to the Declaration of Charles Juntikka, Esq. dated June 17, 2013 (hereinafter "Juntikka Decl.")

On April 16, the same day that Settling Counsel added the offending language, Settling Counsel met with two *White* Plaintiffs (Clifton Seale and Arnold Lovell) in an effort to persuade them that the Settlement was a good deal for the class.   Dkt. # 555, at ¶ 23-24.  As part of that effort, Settling Counsel drew Seale's and Lovell's attention to the provision making payment of $5,000 incentive awards available only to named Plaintiffs who supported the Settlement.  Dkt. # 555, at ¶ 24.  *See* Exhibit B to Juntikka Decl.  Underscoring the point, Settling Counsel stated that they didn't "see a way for people who don't support the settlement to receive an incentive award."  Hearing Transcript dated Nov. 9, 2009 at 47, Exhibit C to Juntikka Decl.  Following the meeting, Seale and Lovell informed Settling Counsel that they continued to oppose the Settlement.  Dkt. # 555 at ¶ 24, 431-8 at ¶ 14.

On April 23, Settling Counsel called Lovell in a last ditch effort to change his mind, informing Lovell that he would "jeopardize" his $5,000 incentive award if he did not come on board and support the Settlement.  Dkt. # 431-6 at ¶ 14.

On April 24, 2009, Settling Counsel filed the Settlement, which, among other things: (1) obligated Defendants to pay $45 million into a settlement fund; (2) enabled Settling Counsel to apply for an attorneys' fee award amounting to 25% of that fund or $11.25 million plus expenses; and (3) authorized Settling Plaintiffs (but not *White* Plaintiffs) to apply for $5,000 incentive awards conditional on their "serving in support" of the Settlement. Dkt. # 384.  In neither their papers

supporting the Settlement nor in their Notice did Settling Counsel inform this Court of the conditional nature of the incentive awards or acknowledge the existence of any conflict it might create between the interest of Settling Plaintiffs and the rest of the class.

On May 7, 2009, this Court issued an order preliminarily approving the Settlement. Dkt. # 423. Inasmuch as that order was filed before the *White* Plaintiffs had an opportunity to be heard, the *White* Plaintiffs filed a motion to reconsider on various grounds, including that the conditional incentive clause created a disabling conflict of interest for both Settling Plaintiffs and their counsel. Dkt. # 431. On June 9, 2009, this Court denied the *White* Plaintiffs' motion for reconsideration. Dkt. # 438.

On June 23, the *White* Plaintiffs filed a petition for writ of mandamus and a petition for review under Fed. R. App. P. 23(f). 09-71928, Dkt. # 1 and 09-80112, Dkt. # 1 (9th Cir.). In both Petitions, the *White* Plaintiffs warned that immediate review of this Court's finding that Settling Plaintiffs and their counsel could adequately represent the class was necessary in order to avoid the waste of millions of dollars in notice costs and what turned out to be four years of needless litigation. On August 19 and 28, 2009, the Ninth Circuit issued orders denying those petitions. Dkt. #s 459, 460.

Subsequently, on September 21, 2009, this Court authorized Settling Counsel to send out the class notice, which combined with a supplemental notice and various administrative expenses, ended up consuming over 15% of the Settlement Fund or about $7.5 million. Dkt. # 478.

Nearly two years later, on July 15, 2011, this Court issued an order finally approving the Settlement. Dkt. # 776.

### THE NINTH CIRCUIT'S DECISION

On April 22, 2013, the Ninth Circuit issued an opinion rejecting the Settlement on grounds that it had been "corrupted" by a conditional incentive award

provision that "undermin[ed] the adequacy of the class representatives and class counsel."  2013 WL 1831760, at *5 (hereinafter "Opinion").  The Ninth Circuit explained that by inserting that provision into the Settlement, Settling Counsel had:

> changed the motivations for the class representatives. Instead of being solely concerned about the adequacy of the settlement for the absent class members, the class representatives now had a $5,000 incentive to support the settlement regardless of its fairness and a promise of no reward if they opposed the settlement.

*Id.* at *5.  Accordingly, the Ninth Circuit found that the conditional incentive provision "made the interests of the class representatives actually" – that is, not just potentially – "different than those of the rest of the class."[3]  *Id.* at *7.

In so finding, the Ninth Circuit had little difficulty rejecting Settling Counsel's assertion that their conditional incentive award provision was indistinguishable from the kind of "run-of-the-mill incentive" provision that can be found in virtually every class settlement.  To the contrary, the Ninth Circuit stated, there is nothing "typical at all" about "a settlement provision that weighs on the class representatives' independent judgment on whether to support the settlement by calling for the denial of incentive awards if they do not support it."  *Id.* at *6.

In addition to finding that Settling Plaintiffs were unable to adequately represent the class, the Ninth Circuit held that the Settling Counsel's "[c]onflicted representation provides an independent ground for reversing the settlement."  *Id.* at *8.  Citing both *Rodriguez v. West Publishing Corp.*, 563 F.3d 948 (9th Cir. 2009) ("*Rodriguez I*") and *Rodriguez v. Disner*, 688 F.3d 645 (9th Cir. 2012) ("*Rodriguez II*"), the Ninth Circuit concluded that "[a]s soon as" they had inserted the conditional incentive award provision into the Settlement, Settling Counsel had

---

[3]  In addition, the Ninth Circuit found that Settling Counsel had "further exacerbated" this actual conflict by creating a 200 to 1 disparity between the $5,000 incentive awards that Settling Plaintiffs stood to gain and the $26 payment that the Settlement made available to most of the absent class.  *Id.* at *5.

"divorced the interests of the class representatives from those of the absent class members" and, thereby, were "simultaneously representing clients with conflicting interests." *Id*. at *8. Insofar as they had done so without making any "attempt to obtain a waiver," the Ninth Circuit held that Settling Counsel had run afoul of Section 3-310(C) of the California Rules of Professional Conduct and, thereby, committed an "automatic ethics" violation. *Id*. at *7-8.

To make matters worse, the Ninth Circuit found that Settling Counsel had breached their "fiduciary duty" to the class by failing to "alert the district court" of the conflict they had created and by, instead, taking the "position that a conflict did not exist." *Id*. at 8. The Ninth Circuit regarded that position as entirely untenable, explaining that the Settlement "explicitly conditions the incentive awards on the class representatives' support for the settlement" and that this "clear" language is not "susceptible" to any contrary interpretation. *Id*. at *5.

The Ninth Circuit further found that Settling Counsel's insistence that the Settlement did not create any conflict between the Settling Plaintiffs and the class could not be squared with their own "conduct and communications" whereby they sought to use the conditional nature of the incentive clause as leverage to buy the *White* Plaintiffs' support for the Settlement. As stated in the Ninth Circuit's opinion:

> Counsel told a plaintiff below that he would "not be entitled to anything" and that he would "jeopardize the $5,000 [he] would receive [under the settlement]" if he did not support the settlement. Class counsel also told the district court that they had told other plaintiffs that they "don't see a way for people who don't support the settlement to receive an incentive award."

*Id*. at *5.

In a concurring opinion, Judge Haddon expressed his dismay with Settling Counsel's "actions in orchestrating and advocating the disparate incentive award scenario without any concern for, or even recognition of, the obvious conflicts

presented" – actions which, according to Judge Haddon, "underscore" that Settling Counsel "were singularly committed to doing whatever was expedient to hold together an offer of settlement that might yield, as it did, an allowance of over $16 million in lawyers' fees." *Id*. at *9.

Anticipating that they would be continuing that campaign in this Court, Judge Haddon added that Settling Counsel's "adherence to self-interest, coupled with the obvious fundamental disregard of responsibilities to all class members . . . should not find favor or be rewarded at any level." Thus, he concluded, Settling Counsel "should be disqualified from participation in any fee award ultimately approved by the district court upon resolution of the case on the merits." *Id*. at *9.

## ARGUMENT

**I.     Settling Counsel's Violation of the Ethical Proscription Against Simultaneous Representation of Clients With Adverse Interests Requires Their Automatic Disqualification From Further Participation in This Case Under Controlling California Law.**

The Ninth Circuit's holding that Settling Counsel violated the prohibition against simultaneous representation of conflicting interests embodied in California Rule of Professional Conduct 3-310(C) constitutes the law of the case.

Accordingly, the only question for this Court to address on this motion is what impact the violation of that rule has on Settling Counsel's ability to remain in this case. As the Ninth Circuit has made clear, the resolution of this question is governed by California law. *In Re County of Los Angeles*, 223 F.3d 990, 995 (9th Cir. 2000).[4]

California law regarding the consequences of simultaneously representing clients with adverse interests is well settled. The California Supreme Court has made clear that "the rule of disqualification in simultaneous representation cases is

---

[4]  *See also Ramirez v. Trans Union, LLC*, 3:12-CV-00632 JSC, 2013 WL 1164921, at *2 (N.D. Cal. Mar. 20, 2013) ("To determine whether to disqualify counsel, the court applies California law."); *Davis v. EMI Group, Ltd.*, 2013 WL 75781, at *2 (N.D. Cal. Jan. 4, 2013) (citing numerous cases).

a *per se* or 'automatic' one." *Flatt v. Superior Court*, 9 Cal. 4th 275, 284, 36 Cal. Rptr. 2d 537, 542 (1994); *see also Pour Le Bebe, Inc. v. Guess? Inc.*, 112 Cal. App. 4th 810, 822, 5 Cal. Rptr. 3d 442, 453 (2003).[5]   The reason for this "mandatory rule of disqualification" is that simultaneously representing clients with adverse interests strikes at the very heart of the lawyer's duty of loyalty to the client.  *Id*. at 286.  As the Supreme Court has explained, "[a] client who learns that his or her lawyer is also representing a litigation adversary . . . cannot long be expected to sustain the level of confidence and trust in counsel that is one of the foundations of the professional relationship."  *Id.* at 285.  Indeed, "so inviolate is the duty of loyalty to an existing client, that not even by withdrawing from the relationship can an attorney evade it."  *Id.* at 288.

Once the confidence and trust underlying the attorney-client relationship has been lost, it can never be restored.  *Cal Pak Delivery, Inc. v. United Parcel Service, Inc.*, 52 Cal. App. 4th 1, 12, 60 Cal. Rptr. 2d 207, 213 (1997) ("we would be surprised if members of the putative class aware of [counsel's] attempted betrayal of their interests did not harbor continuing doubts about his loyalty and the integrity of the judicial proceedings in which he participated").  Accordingly, California state and federal courts have applied the automatic disqualification rule even where the circumstances giving rise to the conflicting representation had been completely removed and were short-lived.

Thus, in *State Farm Mutual Automobile Ins. Co. v. Federal Ins. Co.*, 72 Cal. App. 4th 1422, 86 Cal. Rptr. 2d 20 (1999), the court disqualified counsel from

---

[5]   While the *Flatt* court acknowledged that there were "a few instances" in which an attorney who violated the simultaneous representation rule could avoid automatic disqualification, 9 Cal.4th at 284, that would be the case only in very exceptional circumstances, such as when the attorney (1) "immediately withdraws from an unseen current adverse representation which occurs by 'mere happenstance,'" or (2) "play[s] no role in creating the conflict of interest, such as when a corporate client is acquired by another company."  *State Farm Mutual Automobile Ins. Co. v. Federal Ins. Co.*, 72 Cal. App. 4th 1422, 1432, 86 Cal. Rptr. 2d 20 (1999).  Neither exception applies here:  Far from occurring by "happenstance," Settling Counsel wrote the provision that created the conflict and, far from promptly withdrawing, they represented both Settling Plaintiffs and the class for a period of four years.

bringing an action against a defendant insurance company when, at the same time, the firm represented an individual insured by that company.  Even though the second case had fortuitously settled before the disqualification motion was heard, that settlement did "not remove the taint" of the three-month concurrent adverse representation.  *Id*. at 1432.  Despite the short duration of the conflicting representation and the lack of any prejudice, the court held that "the mandatory disqualification rule applies," explaining that "the paramount concern must be the preservation of public trust, both in the scrupulous administration of justice and in the integrity of the bar."  *Id*. at 1428; *see also Laucella v. Ireland San Filippo, LLP*, 2006 WL 75355, at *8-9 (Cal. App. 6 Dist. Jan. 13, 2006) (applying automatic disqualification rule in settlement context).

Likewise, in *Operating Engineers Local Union No. 3 v. Phibbs*, 2004 WL 161296 (Cal. App. 3 Dist. July 20, 2004), plaintiff's counsel who sued a union official was disqualified because he had represented the union official in an earlier action involving an unrelated matter.  Counsel believed that the earlier action had been discontinued by consent, but the discontinuance was not formally approved by the clerk until eight days after the second representation had begun.  Because the earlier action was officially still pending when counsel brought his action against the union official, the court held that he breached his duty of loyalty to the union official client and applied the automatic disqualification rule to prevent him from pursuing the second action, even though the conflict had ended.  As in *State Farm*, the court held that the fleeting nature of the conflict, the fact that counsel may not have aware of it and the lack of prejudice were all irrelevant.

Finally, in *California Earthquake Authority v. Metropolitan West Securities, LLC*, 712 F. Supp. 2d 1124 (E.D. Cal. 2010), the court disqualified defendant's counsel because another attorney in defendant's counsel's firm had signed a retainer agreement with the plaintiff years earlier on an entirely unrelated matter. Despite the fact that the firm had done no work with regard to that retainer for

seven years, the court held that there was an existing attorney/client relationship

that required the automatic disqualification of defendants' counsel from the action.[6]

As the decisions in the myriad California state and federal cases that have

addressed the issue make clear, the automatic disqualification rule is no less

applicable after the conditions giving rise to that conflict have been removed than it

is while they are still in place. Unlike in most of those cases, however, the conflict

in this one was neither inadvertent nor short-lived. Rather, it was created and

exploited by Settling Counsel and persisted over a four-year period. Thus, *a*

*fortiori*, the rationale for applying the automatic disqualification rule is even

stronger here.

The fact that Settling Counsel's violation of the ethical proscription against

simultaneous representation of clients with adverse interests occurred in the class

context in no way alters that result: California's automatic disqualification rule is

no less applicable in that context than it is in any other. *Del Campo v. Mealing*,

(N.D. Cal. No. C01-21151 JW, Sept. 29, 2011) (attached hereto as Appendix A),

*recon. denied*, 2011 WL 6176223 (N.D. Cal. Dec. 7, 2011); *see also Moreno v.*

---

[6] Cases of similar import include *Wong v. Wong*, 2013 WL 953865, at *8-9 (Cal.
App. 2 Dist. Mar. 13, 2013) (applying automatic disqualification rule even though
corporate client had terminated its relationship with the conflicted attorney);
*Atlantic Pac. Home Loans, Inc. v. Superior Court*, 2006 WL 3616997, at *4-6 (Cal.
App. 4 Dist. Dec. 13. 2006) (applying automatic disqualification rule even though
attorney had departed from firm which, unbeknownst to her, represented a client
with adverse interests because "[t]he fact that the conflict no longer exists does not
undo the harm that was done to the attorney-client relationship"); *TransPerfect
Global, Inc. v. Motionpoint Corp.*, 2010 WL 3619565 (N.D. Cal. Sept. 13, 2010)
(applying automatic disqualification rule even though conflicted firm had
withdrawn from representing its later-acquired client and attorney was unaware of
conflict); *Fujitsu Ltd. v. Belkin Int'l, Inc.*, 2010 WL 5387920, at *5-9 (N.D. Cal.
Dec. 22, 2010)  (same); *Certain Underwriters at Lloyd's London v. Argonaut Ins.
Co.*, 264 F. Supp. 2d 914 (N.D. Cal. 2003) (applying automatic disqualification rule
because of conflicting representation of a subsidiary of adverse client);
*GATX/AIRLOG Co. v. Evergreen Int. Airlines*, 8 F. Supp. 2d 1182 (N.D. Cal. 1998)
(applying automatic disqualification rule); *Image Technical Services, Inc. v.
Eastman Kodak Co.*, 820 F. Supp. 1212 (N.D. Cal. 1993) (automatic
disqualification even though matters were entirely unrelated); *In Re DFX
Interactive, Inc.*, 2008 WL 8448326 (9th Cir. BAP, Feb. 6, 2008) (applying
automatic disqualification even though conflicting representation limited to filing
an answer as a "stop gap" measure).

*Autozone, Inc.*, 2007 WL 4287517, at *6-7 (N.D. Cal. Dec. 6, 2007).

The Ninth Circuit has already held in this case that "[w]e must be vigilant in guarding against the conflicts-in-interest in class action settlements, because of 'unique due process concerns for absent class members who are bound by the Court's judgments." Opinion at *8 (*quoting In Re Bluetooth Headset Prods. Liab. Litig*., 654 F.3d 935, 946 (9th Cir. 2011)). Owing to those "unique due process concerns" and the solemn fiduciary duties that class counsel owe to the absent class, California state and federal courts have consistently held that class counsel must meet a "heightened" ethical standard in class action cases. *Cal Pak*, 52 Cal. App. 4th at 12; *see also Moreno*, 2007 WL 4287517, at *7; *Palumbo v. Tele-Communications, Inc*., 157 F.R.D. 129, 132-33 (D.D.C. 1994) ("Precisely because of the responsibility to absent class members, counsels' qualifications in the class action context are subject to a 'heightened standard.'").

Thus, where, as in this case, class counsel or putative class counsel have perpetrated an "undisputed and indefensible betrayal" of that class, any "failure of the trial court to take immediate remedial action to disqualify [them] would constitute an abdication of judicial responsibility, violating the public trust and exposing judicial institutions to public obloquy." *Cal Pak Delivery, Inc.*, 52 Cal. App. 4th at 13. Indeed, as the Ninth Circuit has made clear, the magnitude of an attorney's fiduciary responsibilities in the class context is so great that they do "not permit even the appearance of divided loyalties of counsel." *Rodriguez*, 563 F.3d at 968 (quoting *Kayes v. Pacific Lumber Co.*, 51 F.3d 1449, 1465 (9th Cir. 1995)); *see also Sullivan v. Chase Inv. Servs. of Boston, Inc*., 79 F.R.D. 246, 258 (N.D. Cal. 1978) (class counsel ordered to withdraw from related action in another court because of potential conflict of interest). Consequently, under California law and practice, "in a class action context, disqualification is *more likely* because putative class counsel are subject to a 'heightened standard' which they must meet if they are to be allowed by the Court to represent absent class members." *Huston v.*

*Imperial Credit Commer. Mortg. Inv. Corp.*, 179 F. Supp. 2d 1157, 1167 (C.D. Cal. 2001) (emphasis added); *see also Moreno*, 2007 WL 4287517, at *7.[7]

## II.   Settling Counsel Are Disqualified From Serving as Class Counsel Under Fed. R. Civ. P. 23(g).

### A. Settling Counsel's Disloyal Conduct, Combined With Their Continuing Insistence That They Did Nothing Disloyal, Demonstrates That They Cannot Be Trusted to Fairly and Adequately Represent the Class.

Even if Settling Counsel were not disqualified from further participation in this action under California law, their disloyal conduct would still prevent them from serving as class counsel under federal law.  Rule 23(g) of the Federal Rules of Civil Procedure authorizes the appointment of class counsel only upon a finding that the law firms seeking such appointment will "fairly and adequately represent the interests of the class."  The Ninth Circuit has already found Settling Counsel to be "inadequate."  Opinion at *5, 7.

When putative class counsel have committed a "serious" ethical violation against the very class they seek to represent, they bear "a heavy burden of showing" that they satisfy this requirement.  *Creative Montessori Learning Center v. Ashford Gear,* 662 F.3d 913, 919 (7th Cir. 2011).  This is a burden Settling Counsel cannot possibly meet.

_____

[7]  Cases such as *In Re "Agent Orange" Product Liability Litigation*, 800 F.2d 14, 18-19 (2d Cir. 1986) and *Lazy Oil Co. v. Witco Corp.*, 166 F.3d 581 (3d Cir. 1999), in which the courts have held that the rule against simultaneous representation of adverse interests cannot be mechanically applied to the class action context, are not to the contrary. Those cases merely stand for the proposition that class counsel can support a class settlement that their named plaintiff clients' oppose without violating that rule because their paramount duty is to act in the interests of the class. In this case, however, the issue is not whether the simultaneous representation rule has been violated – that issue had been dispositively resolved by the Ninth Circuit. Rather, the issue is whether Settling Counsel can somehow avoid the automatic disqualification rule merely because that violation occurred in the class context. Given the heightened ethical standards to which class counsel are held, the answer to that question must be a resounding no. *Del Campo*, 2011 WL 6176223, at *2 ("*Agent Orange* has never been relied on by California courts to contravene California's automatic disqualification rule in simultaneous representation cases.")

As set forth above, it is the law of the case that Settling Counsel violated the ethical proscription against simultaneous representation of clients with conflicting interests.  In so doing, they committed what, according to the Ninth Circuit, is a "particularly egregious ethical violation" and failed in their responsibility to fairly and adequately represent the class. *Rodriguez*, 688 F.3d at 655.  Settling Counsel then compounded that violation by failing to "alert the district court" of the conflict, thereby again breaching their fiduciary duty to the class.  Opinion at *8.

To make matters worse, this conflict was a creature entirely of Settling Counsel's own making and design, and was exploited by Settling Counsel to attempt to coerce the *White* Plaintiffs' agreement to the Settlement. As Judge Haddon noted in his concurring opinion, those acts underscore Settling Counsel's "singular[] commit[ment] to doing whatever was expedient to hold together an offer of settlement that might yield, as it did, an allowance of over $16 million in lawyers' fees."  Opinion at *9.

In *Cal Pak*, the California Court of Appeal recognized the likelihood of a transgression of this kind having "a substantial continuing effect on judicial proceedings to occur in the future" (*Cal Pak Delivery, Inc.*, 52 Cal. App. 4th at 12), explaining that:

> The court could believe [putative class counsel] might again put his own interests above that of class members or, at the very least, the court could be concerned about that possibility. Certainly [counsel's] continued presence in the case after his colossal misdeed would cast a shadow on future attempts to certify the class and attempts to gain approval of [his client] as an adequate class representative, as well as upon any future settlement. It could well impact the preclusive effect given to the eventual result.

*Id.* at 12-13.  In short, given that Settling Counsel have "demonstrated a lack of integrity" and loyalty in the context of this very case, this Court "can have no confidence that they will" honor their responsibility to "act as conscientious

1  fiduciaries of the class" in the future.  *Creative Montessori Learning Centers*, 662

2  F.3d at 918.[8]

3      This would be the case even if Settling Counsel expressed some contrition or

4  appreciation for the fact that their behavior transgressed ethical boundaries.  But as

5  the Ninth Circuit noted, they have taken "the position that a conflict did not even

6  exist."  Opinion at *8.[9]  Moreover, even after the Ninth Circuit's decision, they

7  have defiantly refused to acknowledge their error and have continued to defend

8  their behavior in the press:

- insisting to one reporter that "there was ***nothing wrong*** with the agreement[s' conditional incentive award provision], since it merely stated what [they] understand[]to be the law" (*see* Juntikka Decl., Exh. D (David Fisher, Forbes, May 10, 2013))

- telling another that "[t]here was really ***not an issue as to an actual conflict***" and that "[it] is ***just a question of appearance***" (*see* Juntikka Decl., Exh. E (Tim Hull, Courthouse News Service, Apr. 22, 2013))

- and sending out a written statement saying "[w]e still believe the settlement agreement . . . ***presented no conflict of interest***" (*id.*) – in effect, denying the validity of the Ninth Circuit's

---

[8]  *See also Yumul v. Smart Balance, Inc.*, 2010 WL 4352723 (C.D. Cal. Oct. 8, 2010) (allegations of ethical misconduct are relevant to the determination of class certification); *Baas v. Dollar Tree Stores, Inc.*, 2008 WL 906496, at *3-4 (N.D. Cal. Apr. 1, 2008) (refusing to certify class because plaintiff's counsel had a conflict arising from the need for plaintiff's counsel to cross-examine his own client); *Bodner v. Oreck Direct, LLC*, 2007 WL 1223777 (N.D. Cal. Apr. 25, 2007) (denying class certification in large part because of plaintiff's counsel's unethical conduct); *Sipper v. Capital One Bank*, 2002 WL 398769 (C.D. Cal. Feb. 28, 2002) (class counsel's ethical violation in failing to disclose business relationship between counsel and class representative "destroyed" the adequacy of the named plaintiff's representation and required that class certification be denied); *Stavrides v. Mellon Nat'l Bank & Trust Co.*, 60 F.R.D. 634, 637 (W.D. Pa. 1973) (court must act as "guardian" of the rights of the absentee class members to ensure that counsel is "ethically as well as intellectually competent to represent them").

[9]  Indeed, Settling Counsel went so far as to ridicule *White* Plaintiffs' conflict-of-interest argument as a "scorched earth, at times vitriolic campaign" consisting of "fabricated," "spurious" and "scurrilous" accusations.  Settling Plaintiffs' Appeal Br. at 3.

1  decision.

2  Given Settling Counsel's insistence that their conduct was perfectly proper –

3  despite that all three judges on the Ninth Circuit panel found that it "clearly,"

4  "obvious[ly]" and "patent[ly]" created an actual conflict of interest that

5  "corrupt[ed]" the Settlement – how can Settling Plaintiffs ever be trusted to loyally

6  discharge their fiduciary responsibilities to the class in the future?

7

8  ### B. The Continuing Conflict Between Settling Counsel and the Class Renders Them Incapable of Satisfying Rule 23(g)'s Adequacy of Representation Requirement.

9

10  Even if Settling Counsel's prior ethical transgressions – and their failure to

11  acknowledge them – did not by themselves render them unfit to represent the class,

12  Settling Counsel still could not satisfy the adequacy of representation requirement.

13  That is because those prior transgressions have spawned a series of irreversible

14  effects that continue to pit their interests against the very class they wish to

15  represent.

16  As much as Settling Counsel may like to pretend that the conflict between

17  themselves and the class died with the Settlement, that plainly is not the case.  As a

18  result of their having created that conflict, Settling Counsel are "civilly liable" to

19  the class, each and every member of which may assert a claim against them for

20  "breach of the duty of loyalty."  *Schick v. Berg*, 03 CIV. 5513(LBS), 2004 WL

21  856298, *8-9 (S.D.N.Y. Apr. 20, 2004) (an attorney's liability for "breach of duty

22  to avoid conflicts of interest is not altered in the class action context"); *see also*

23  *American Airlines, Inc. v. Sheppard, Mullin, Richter & Hampton*, 96 Cal. App. 4th

24  1017, 1044, 117 Cal. Rptr. 2d 685, 705 (2002); *Alberts v. Franklin*, 2004 WL

25  1345078, at *19 (Cal. App. 4 Dist. June 16, 2004).

26  Among the remedies the class may seek against Settling Counsel for this

27  breach are:  (1) forfeiture of all of their attorneys' fees, *Cal Pak Delivery, Inc.*, 52

28  Cal. App. 4th at 14; (2) reimbursement of any fees and costs the class may owe to

*White* Counsel as a result of the work they did in protecting the class from Settling Counsel's conflicting representation, *American Airlines*, 96 Cal. App. 4th at 1044; and (3) punitive damages, *Alberts*, 2004 WL 1345078, at \*29-31.

As if that were not bad enough, Settling Counsel are also potentially liable for four years of lost interest on any award the class may ultimately obtain – representing the period of delay occasioned by their conflicting representation. For example, if Settling Counsel were to settle this matter for $300 million, they could be liable for $84 million in interest payments at the California statutory rate of 7%. Cal. Const. Art. XV § 1. In other words, the higher any Settlement might be, the greater Settling Counsel's damages exposure – making their interests in this respect diametrically opposed to those of the class.

Leaving aside the fact that Settling Counsel are civilly liable to the class, the continuing fallout from Settling Counsel's ethical lapses render them unable to meet the adequacy of representation requirement for at least three other reasons.

*First*, regardless of any actionable claims that the class may assert, Settling Counsel can have no confidence that this Court (or the Ninth Circuit on appeal) will not find that they have forfeited any right they otherwise may have had to attorneys' fees for any post-Settlement legal work they might perform in this case. The extent of this risk can hardly be overstated. One of the judges on the Ninth Circuit panel has already expressed the view that Settling Counsel "should be disqualified from participation in any fee award ultimately approved" by this Court. That view is entirely consistent with "the general rule in conflict of interest cases that where an attorney violates his or her ethical duties to the client, the attorney is not entitled to a fee for his or her services." *Cal Pak*, 52 Cal. App. 4th at 14; *see also Fair v. Bakhtiari*, 195 Cal. App. 4th 1135, 1162, 125 Cal. Rptr. 3d 765, 786 (Cal. App. 1st Dist. 2011) ("no case cited stands for the proposition that where the breach or conflict of interest is serious enough to warrant the denial of fees, that fees may nevertheless be recovered at some point *after* the breach").

The prosecution of this case has already consumed thousands upon thousands of hours in attorneys' time. But that is just a fraction of the amount of time that will have to be incurred if these cases are prosecuted through trial.  Faced with the prospect of earning zero fees for this time even if they are ultimately successful, Settling Counsel would be under tremendous pressure to settle these cases as quickly as possible, regardless of whether that was in the best interest of the class. Accordingly, Settling Counsel cannot be counted on to fairly and adequately represent the class.  *Cf. Rodriguez I*, 563 F.3d at 959 (finding class representatives inadequate where they had entered into incentive agreements that "disjoined the[i]r contingency financial interests … from the class").

*Second*, and compounding this risk of non-payment, Settling Counsel confront the likelihood of being required to pay the cost of any re-notice to the class.[10]  Indeed, when Settling Counsel effectively amended the Settlement by altering the requirements for actual damage awards, this Court ordered that the cost of the supplemental notice ultimately be borne by Settling Counsel out of their fee award.  *A fortiori*, where, as here, the need for re-notice has been occasioned by Settling Counsel's ethical lapses, fairness dictates that they – and not the absent class – pay the associated costs.  To the extent any new Settlement provides the class with substantively the same relief as the prior one, Settling Counsel may try to argue that no additional notice is required.  However, in the event of any material improvement in the Settlement – such as an increase in the overall recovery available to class members – no such argument could be made and Settling Counsel would be forced to pay some $7 million in notice and administrative costs. Combine that liability with the danger of a finding that they are disqualified from receiving any attorneys' fees out of which those notice costs might be paid and the pressure on Settling Counsel to re-file their original Settlement (sans its conditional

---

[10]  Even now, six weeks after the Ninth Circuit rendered its decision, Settling Counsel have failed to advise the class on the court-ordered website that the Ninth Circuit has vacated the Settlement.  *See* http://www.bankruptcydischargesettlement.com.

incentive award provision) becomes overwhelming.

*Third*, even if they can avoid having to pay the cost of re-noticing the entire class, Settling Counsel are, at a minimum, staring down approximately $400,000 in notice costs to inform claimants of the Ninth Circuit's decision overturning the Settlement.  *See Van Vranken v. Atlantic Richfield Co.*, 1988 WL 123833 (N.D. Cal. Sept. 26, 1988) (ordering notice of settlement denial). The only way Settling Counsel can avoid these costs is to promptly conclude a second settlement agreement under which the initial cost of such re-notice would be passed on to Defendants.  Accordingly, Settling Counsel have a $400,000 incentive to do that, regardless of whether it would be in the interest of the class.

*Fourth*, a central tenant of Settling Counsel's defense has been that any divergence of interest that may have been created by the conditional incentive award was of no moment because it did not influence Settling Plaintiffs' decision to support the settlement or otherwise cause any prejudice to the class.  While this "no harm, no foul" defense failed to save their Settlement, this Court can count on Settling Counsel's resurrecting it in other contexts as a mean of mitigating their culpability. For instance, Settling Counsel will inevitably assert the alleged absence of prejudice as a reason why this Court should not order a partial or complete forfeiture of their attorneys' fees.  *Rodriguez II*, 688 F.3d 645, 654-55 (9th Cir. 2012).  Obviously, Settling Counsel's ability to make this non-prejudice argument would be severely compromised were they to negotiate a new settlement that provided for a greater recovery or a more fair allocation system.  Inasmuch as they have a vested interest in reaffirming the prior settlement, Settling Counsel cannot fairly and adequately represent the class going forward.

### III. Settling Plaintiffs Are Unable to Exercise Independent Judgment in Determining Whether Settling Counsel Are Fit to Represent the Class.

Even if Settling Counsel were not otherwise disqualified from representing

the class, which they are, they still could not be appointed as class counsel because Settling Plaintiffs are unable to exercise independent judgment in determining whether it is in the best interest of the class to seek Settling Counsel's appointment as class counsel.

Among the "primary duties" of class representatives is "the obligation to select class counsel" and to "monitor the[ir] conduct throughout the litigation." *Armour v. Network Assocs.*, 171 F. Supp. 2d 1044, 1048 (N.D. Cal. 2001). Consistent with those duties, Settling Plaintiffs are now called upon to make the decision whether it would be in the best interest of the class for them to retain as their legal representatives counsel who (1) according to the Ninth Circuit, have violated their duty of loyalty to the class, and (2) as a consequence of that breach, are civilly liable to that class and have financial interests that are inconsistent with seeking the maximum possible recovery on its behalf.

The Ninth Circuit has already found the Settling Plaintiffs to be "inadequate representatives of the class."  Opinion at *5.  Their "divergent" interest, as a result of the conditional incentive payments, undermine their ability to 'fairly and adequately protect the interest of the class.'"  *Id.* at *6.  Settling Plaintiffs were the intended beneficiaries of Settling Counsel's disloyalty and sanctioned that disloyalty with their approval of a settlement that promised them $5,000 for their support.  Having committed the same breach of fiduciary duty as did their counsel, Settling Plaintiffs cannot possibly exercise independent judgment in the determination of whether the continued retention of Settling Counsel is in the best interest of the class. Indeed, were that question put to a vote, it is hard to believe that many absent class members would choose to have Settling Counsel represent them.  *See Cal Pak*, 52 Cal. App. 4th at 11 ("Although [counsel who had breached his duty of loyalty] contends it is in the best interests of the potential class to permit his representation to continue, *it is highly unlikely* many of the 150,000 alleged class members would agree.") (emphasis in original).  As Settling Plaintiffs cannot

be entrusted with the decision whether to seek Settling Counsel's appointment as class counsel, they cannot meet the adequacy of representation requirement and neither can Settling Counsel.

## CONCLUSION

For the foregoing reasons, Settling Counsel should be disqualified from any further participation in this action, or, in the alternative, should be held to be inadequate as class counsel pursuant to Fed. R. Civ. P. 23(g).

DATED: June 19, 2013        Respectfully submitted,
                            **BOIES, SCHILLER & FLEXNER LLP**

                   By:      _____/s/ George F. Carpinello_____
                            George F. Carpinello
                            Adam R. Shaw
                            10 North Pearl Street, 4th Floor
                            Albany, NY  12207
                            (518) 434-0600

                            David L. Zifkin (SBN 232845)
                            401 Wilshire Boulevard, Suite 850
                            Santa Monica, CA  90401
                            (310) 752-2400

                            **CHARLES JUNTIKKA & ASSOCIATES LLP**
                            Charles Juntikka
                            1250 Broadway, 24th Floor
                            New York, NY  10001
                            (212) 315-3755

                            **DANIEL WOLF LAW OFFICES**
                            Daniel Wolf
                            1220 N Street, NW, Suite PH 2
                            Washington, DC  20005
                            (202) 842-2170

                            *Attorneys for Plaintiffs Robert Radcliffe, Chester Carter, Maria Falcon, Clifton C. Seale, III, Arnold E. Lovell, and all others similarly situated*