# Appendix A

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| Elena Del Campo, et al., | NO. C 01-21151 JW |
|         Plaintiffs,    v. | **ORDER GRANTING DEFENDANTS' MOTION TO DISQUALIFY COUNSEL** |
| Don Mealing, et al., | |
|         Defendants. | |

Presently before the Court is Defendants' Motion to Disqualify.[1] The Court conducted a hearing on September 19, 2011. Based on the papers submitted to date and oral argument, the Court GRANTS Defendants' Motion to Disqualify.

**A.**    **Background**

A detailed outline of the background and procedural history of this case may be found in the Court's June 3, 2010 Order Granting in part and Denying in part the Parties' Cross-Motions for Summary Judgment.[2] The Court reviews the relevant procedural history as it relates to the present Motion.

On October 25, 2010, Defendants filed a Motion to Decertify and Disqualify Class Counsel. (Docket Item No. 1018.) In that Motion, Defendants contended that Paul Arons, Irv Ackelsberg,

---

[1] (Defendants' Renewed Motion to Disqualify Plaintiffs' Counsel, hereafter, "Motion," Docket Item No. 1163.)

[2] (hereafter, "June 3 Order," Docket Item No. 877.)

1  O. Randolph Bragg III, and Ronald Wilcox, together with their respective law firms, should be
2  disqualified from this case because of conflicts of interest arising from their "dual representation of
3  the class members in [this case] and the competing class members" in another case. (Id. at 1-16.)
4  On November 5, 2010, the Court denied Defendants' Motion to Disqualify Class Counsel.[3]

On March 9, 2011, Judge White ordered Paul Arons, Irv Ackelsberg, Deepak Gupta, Ronald Wilcox, and John Grogan to withdraw as plaintiffs' counsel in the case of Smith v. Levine Leichtman Capital Partners, Inc., et al.,[4] on the grounds that there is a "conflict of interest [that] arises from the competing interests of [the class in this case] and the [putative class in the Smith case],"[5] and that this "dual representation of clients who have an actual conflict of interest" required counsel's "automatic disqualification" from the Smith case under the "standards of professional conduct under California law."[6]

Presently before the Court is Defendants' Motion to Disqualify.[7]

---

[3] (Order Denying Defendants' Motions to Decertify Class; Denying Defendants' Motion to Dismiss; Denying Plaintiffs' Motion for a Writ at 5-6, hereafter, "November 5 Order," Docket Item No. 1035.)

[4] Case No. 10-cv-00010-JSW.

[5] Smith is a purported class action brought against a group of defendants including National Corrective Group, Inc. ("NCG"), a private-debt collection company that specializes in collecting dishonored checks on behalf of retail-merchant payees. (See Order Granting in part and Denying in part NCG's Motion to Deny Class Certification, or in the Alternative, Strike Class Allegations or Require Plaintiffs' Counsel to Withdraw at 2, hereafter, "Smith Order," Docket Item No. 203 in Case No. 10-cv-00010-JSW.) The plaintiffs in Smith "assert claims under the Fair Debt Collection Practices Act, RICO, and state law." (Id. at 1.)

[6] (See Smith Order at 10-14.)

[7] Defendants have also brought the issue presented in their Motion to Disqualify before the Court in the form of a Motion for Leave to File Motion for Reconsideration, on the ground that the Court may "deem[] Defendants' [Motion to Disqualify] as one for reconsideration of the Court's [November 5 Order]." (hereafter, "Motion for Leave," Docket Item No. 1215.) However, the issue presented by the Motion to Disqualify–namely, whether the Smith Order mandates that the Court disqualify Plaintiffs' counsel in this case–was not at issue in the November 5 Order. Accordingly, the Court DENIES as moot Defendants' Motion for Leave.

2

**B.     Standards**

"The right to disqualify counsel is a discretionary exercise of the trial court's inherent powers." Certain Underwriters at Lloyd's London v. Argonaut Ins. Co., 264 F. Supp. 2d 914, 918 (N.D. Cal. 2003). Under the Civil Local Rules of the Northern District of California, all attorneys who practice in the Northern District must comply with the standards of professional conduct required of members of the State Bar of California. See Civ. L. R. 11-4(a). Thus, motions to disqualify counsel are decided under state law. See In re Cnty of Los Angeles, 223 F.3d 990, 995 (9th Cir. 2000). District court judges may disqualify counsel as a sanction imposed for "unethical behavior." See Erickson v. Newmar Corp., 87 F.3d 298, 303 (9th Cir. 1996). A district court "has the primary responsibility for controlling the conduct of the attorneys who practice before it," which means that "[w]henever an allegation is made that an attorney has violated his moral and ethical responsibility," it is "the duty of the district court to examine the charge." Id. (citations omitted). Under California law, the issue of disqualification "ultimately involves a conflict between the clients' right to counsel of their choice and the need to maintain ethical standards of professional responsibility." Metro-Goldwyn-Mayer, Inc. v. Tracinda Corp., 36 Cal. App. 4th 1832, 1838 (Cal. Ct. App. 1995) (citation omitted). "*The paramount concern, though, must be the preservation of public trust in the scrupulous administration of justice and the integrity of the bar.* The recognized and important right to counsel of one's choosing must yield to considerations of ethics that run to the very integrity of our judicial process." Id. (emphasis in original).

**C.     Discussion**

Defendants move for an order requiring Paul Arons, Irv Ackelsberg, John J. Grogan, Deepak Gupta, Sharon Grace, Ron Wilcox and their respective law firms to withdraw as class counsel, on the grounds that they were disqualified in the Smith action because of the conflict of interest created by their joint representation of the class in this case and the putative class in Smith, and under

3

1  California law, the Smith Order requires that they be disqualified from this case as well.[8] (Motion at
2  1-2.) Plaintiffs respond that: (1) the Smith Order is not a basis for this Court to consider
3  disqualifying Plaintiffs' counsel in this case; (2) Defendants lack standing to bring this Motion; and
4  (3) even if there was a "technical conflict of interest," disqualification is not appropriate in a class
5  action lawsuit.[9] The Court considers each of these grounds in turn.[10]

**1.    Standing**

7  As a preliminary matter, the Court addresses whether Defendants have standing to bring this
8  Motion.
9  Generally, only a current or former client has standing to disqualify an attorney on the basis
10  of conflict of interest. See Kasza v. Browner, 133 F.3d 1159, 1171 (9th Cir. 1998) (citation
11  omitted). However, courts have recognized a non-client litigant's standing to bring a motion to
12  disqualify "where the ethical breach so infects the litigation in which disqualification is sought that
13  it impacts the moving party's interest in a just and lawful determination of her claims." Colyer v.
14  Smith, 50 F. Supp. 2d 966, 971-72 (C.D. Cal. 1999). Further, "[w]henever an allegation is made that
15  an attorney has violated his moral and ethical responsibility," it is "the duty of the district court to
16  examine the charge." Erickson, 87 F.3d at 303.
17  Here, the Court finds that Defendants have standing to bring this Motion, insofar as they
18  have an interest in a binding adjudication on the merits in this case, without being exposed to a

---

[8] In Smith, the court held that Paul Arons, Irv Ackelsberg, Ron Wilcox, Deepak Gupta and John J. Grogan were disqualified. (Smith Order at 14.) Although the Smith court did not find that Sharon Grace was disqualified, she is a member of the Law Office of Paul Arons. (See http://members.calbar.ca.gov/fal/Member/Detail/83527.)

[9] (Plaintiffs' Opposition to Defendants' Renewed Motion to Disqualify Plaintiffs' Counsel at 2-13, hereafter, "Opp'n," Docket Item No. 1203.)

[10] Plaintiffs also contend that Defendants have waived any right to seek disqualification because of their delay in filing their Motion. (Opp'n at 13.) As discussed above, the disqualification order in the Smith case, on which Defendants' Motion is predicated, was issued on March 9, 2011. Defendants filed their Motion on April 13, 2011. Plaintiffs present no authority to support their contention that a delay of little more than a month, under these circumstances, would be enough to constitute a waiver of Defendants' right to seek to disqualify Plaintiffs' counsel. In the absence of any such authority, the Court declines to find that waiver is applicable in this case.

4

future challenge by class members based on a breach of the rules of professional responsibility by Plaintiffs' counsel.[11]

### 2. The Smith Order

At issue is whether the Smith court's order disqualifying counsel for their conflict of interest in the Smith case requires the Court to disqualify counsel in this case.

Under California law, "where an attorney's representation of one client is adverse to the interests of another current client, the primary value at stake is the attorney's duty of *loyalty*." State Farm Mut. Auto. Ins. Co. v. Federal Ins. Co., 72 Cal. App. 4th 1422, 1431 (Cal. Ct. App. 1999) (citing Flatt v. Superior Court, 9 Cal. 4th 275, 284 (1994)). "Even though the simultaneous representations may have nothing in common, and there is no risk that confidences to which counsel is a party in the one case have any relation to the other matter, disqualification may nevertheless be required. Indeed, in all but a few instances, the rule of disqualification in simultaneous representation cases is a per se or 'automatic' one." Flatt, 9 Cal. 4th at 284. "So inviolate is the duty of loyalty to an existing client that not even by withdrawing from the relationship can an attorney evade it." Id. at 288.

Here, the Smith court found that there was a "conflict of interest" which arose from "the competing interests of the Del Campo class and the putative Smith class." (Smith Order at 10.) As the court explained, this conflict of interest arose from the fact that, due to the terms of a bankruptcy agreement involving National Corrective Group,[12] any monetary recovery for the class in this case from certain funds will be reduced by the amount of losses incurred by NCG in defending the claims

---

[11] In response to a similar challenge made by plaintiffs in the Smith case, that court similarly concluded that the defendant in that case had standing to bring a motion to disqualify, on the grounds that the defendant "ha[d] a stake in reaching a just and binding adjudication on the merits of this action without exposure to a future challenge by absent class members based on breach of ethical duties by [plaintiffs'] counsel." (Smith Order at 5.)

[12] Until 2009, NCG was known as American Corrective Counseling Services ("ACCS"), but was reorganized as NCG through bankruptcy. (Smith Order at 2.) ACCS is also among the Defendants in this case. (See, e.g., June 3 Order at 1 n.2.)

5

1  in the <u>Smith</u> litigation.[13]  (<u>Id.</u> at 5.)  Thus, the <u>Smith</u> court found that "by representing the class
2  members in both the <u>Smith</u> and <u>Del Campo</u> actions, Plaintiffs' counsel are in a position of having to
3  choose between vigorously enforcing the rights of the <u>Smith</u> class and preserving the monetary
4  recovery available for the <u>Del Campo</u> class."  (<u>Id.</u>)  Because of this conflict of interest, the court
5  concluded that the "standards of professional conduct under California law . . . require automatic
6  disqualification of Plaintiffs' counsel against their concurrent representation of the <u>Del Campo</u> class
7  and putative <u>Smith</u> class."  (<u>Id.</u> at 11.)  Accordingly, the court ordered plaintiffs' counsel in <u>Smith</u> to
8  withdraw from that action as of April 11, 2011.  (<u>Id.</u> at 14.)

9        Thus, the <u>Smith</u> court found that there was a conflict of interest arising from Plaintiffs'
10 counsel's concurrent representation of the class in this case and the putative class in <u>Smith</u>, and
11 concluded that, due to this conflict of interest, California law required "automatic disqualification"
12 of Plaintiffs' counsel from the <u>Smith</u> litigation.  Therefore, the issue before this Court is whether
13 Plaintiffs' counsel, having been disqualified from the <u>Smith</u> litigation for their conflict of interest,
14 must also be disqualified from this case for that same conflict of interest.

15       California law makes clear that disqualification is "automatic" in "all but a few instances" if
16 an attorney represents clients with adverse interests in concurrent representations, even if those
17 concurrent representations "have nothing in common," and even if there is "no risk that confidences
18 to which counsel is a party in the one case have any relation to the other matter."  <u>Flatt</u>, 9 Cal. 4th at
19 284.  Although California courts have noted that there are "exceptions even to this rule,"[14] only one
20 such exception has been explicitly recognized by California courts.  That exception provides that an

---

[13] As the <u>Smith</u> court explained, on April 11, 2009, ACCS and NCG executed an Asset Purchase Agreement, according to which NCG agreed to pay one million dollars in cash (the "Post-Sale Payments") in five annual installments of $200,000 each to the ACCS bankruptcy estate to pay administrative expenses and ACCS' creditors, "including members of the <u>Del Campo</u> class."  (<u>Smith</u> Order at 2.)  The Asset Purchase Agreement between ACCS and NCG provides that any Post-Sale payment "shall be reduced by up to 50% in any year that a Post-Sale Payment is due" for any "Post-Sale Losses" of NCG.  (<u>Id.</u>)  Such "Post-Sale Losses" include attorney fees and costs incurred by NCG in "defending any litigation as defined in the agreement, including any new, post-bankruptcy consumer litigation," such as the litigation in <u>Smith</u>.  (<u>Id.</u> at 2-3.)  This means that the "total $1 million in Post-Sale Payments could be reduced . . . by up to $500,000."  (<u>Id.</u> at 3.)

[14] <u>Id.</u> at 285 n.4.

attorney may continue "the simultaneous representation of clients whose interests are adverse as to unrelated matters provided full disclosure is made and both agree in writing to waive the conflict." Id. This exception does not apply in this case, as Plaintiffs do not contend that they provided full disclosure to their clients or received written waivers of the conflict.[15]

The Court is not aware of any California case which presents the issue arising in this case: namely, whether one court's finding of a conflict of interest due to a concurrent representation in one case mandates that the same counsel withdraw from the other case in the concurrent representation. However, such a conclusion follows necessarily from the explanation of the "automatic" disqualification rule that has been articulated by the California Supreme Court. That court has explained that attorneys "have a duty to maintain undivided loyalty to their clients to avoid undermining public confidence in the legal profession and the judicial process." People ex rel. Dept. of Corporations v. SpeeDee Oil Change Sys., Inc., 20 Cal. 4th 1135, 1146 (1999). Thus, courts must "protect clients' legitimate expectations of loyalty to preserve this essential basis for trust and security in the attorney-client relationship." Id. at 1146-47. It is for this reason that the "per se rule of disqualification applies" if an attorney "simultaneously represents clients who have conflicting interests . . . regardless of whether the simultaneous representations have anything in common or present any risk that confidences obtained in one matter would be used in the other." Id. at 1147.

Further, under California law the duty of loyalty to an existing client is so "inviolate" that "not even by withdrawing from the relationship can an attorney evade it." Flatt, 9 Cal. 4th at 288. This principle is codified in California's "hot potato" rule, under which conflicts of this type "cannot be cured by the expedient of severing the relationship with one of the clients." Moreno v. Autozone, Inc., No. C05-04432 MJJ, 2007 WL 4287517, at *6 (N.D. Cal. Dec. 6, 2007) (citations omitted).

---

[15] California courts have also suggested that exceptions to the "mandatory disqualification" rule may arise in two other circumstances: (1) where counsel, "upon discovery and absent consent, immediately withdraws from an unseen concurrent adverse representation which occurred by 'mere happenstance'"; and (2) where "the concurrent representation arose as a result of an acquisition of the client by another company," and counsel has "not played any role in creating the conflict of interest." See State Farm, 72 Cal. App. 4th at 1432-33. However, neither of these exceptions is pertinent to this case.

7

1 Thus, the Court finds that the fact that Plaintiff's counsel's relationship with the putative <u>Smith</u> class
2 was severed by the <u>Smith</u> Order does not "cure" the violation of Plaintiffs' counsel's duty of loyalty
3 to the class in this case, which was violated by counsel's concurrent representation of the conflicting
4 interests of the <u>Smith</u> class and the class in this case.

5 Plaintiffs' contention that the <u>Smith</u> Order is "distinguishable," because the <u>Smith</u> court's
6 disqualification order "had nothing to do with the [class in this case]" and did not refer to the class
7 "whose claims . . . are being litigated in this Court," is misguided.[16] In <u>Smith</u>, the court considered
8 the interests of three groups of California consumers: (1) "the <u>Del Campo</u> class of individuals in
9 California who received a notice from ACCS in connection with a bad check diversion program
10 ("BCDP") from 2001, when <u>Del Campo</u> was filed, through April 11, 2009"; (2) "the <u>Smith</u> class of
11 individuals who received a BCDP notice after . . . April 11, 2009 . . . and who would assert claims
12 only against NCG"; and (3) "an overlapping group of individuals who received a BCDP notice from
13 ACCS between January 4, 2006 and April 11, 2009 who are members of both the putative <u>Smith</u>
14 class and the <u>Del Campo</u> class." (<u>Smith</u> Order at 6.) After distinguishing those three groups of
15 consumers, the <u>Smith</u> court explicitly found that "the <u>Smith</u> class has interests adverse to [both] the
16 <u>Del Campo</u> [class] and the overlapping class." (<u>Id.</u>) Thus, the <u>Smith</u> court, in its disqualification
17 order, specifically found that the conflict of interest pertained to the class in this case.

18 Further, Plaintiffs' contention that the <u>Smith</u> Order does not apply to this case, because the
19 class "in this Court is not pursuing claim[s] against ACCS," is also misguided. (Reconsideration
20 Opp'n at 3.) The <u>Smith</u> court clearly recognized that "[b]ecause ACCS is in bankruptcy, the <u>Del</u>
21 <u>Campo</u> class is proceeding with claims against the former owner of ACCS, Donald Mealing, and his
22 partners and associates." (<u>Smith</u> Order at 7.) Nonetheless, the <u>Smith</u> court found that there was a
23 conflict of interest between this case and the <u>Smith</u> case. (<u>Id.</u>) The court explained that the "conflict
24 of interest does not arise here from the class members competing for 'the same pool of finite
25 assets.'" (<u>Id.</u>) Rather, "the <u>Del Campo</u> class members have an actual conflict of interest with the

---

[16] (Plaintiffs' Opposition to Defendants' Motion for Leave to File Motion for Reconsideration at 1-5, hereafter, "Reconsideration Opp'n," Docket Item No. 1216.)

8

members of the Smith class whose litigation may result in Post-Sale Losses that will reduce the amount available for recovery from the ACCS bankruptcy estate." (Id.) In finding this conflict of interest, the Smith court rejected the contention made by plaintiffs' counsel in that case that the "amounts available in the ACCS bankruptcy [to members of the Del Campo class] are *de minimus* [sic] in the extreme," because the "contingent right [for members of the Del Campo class] to receive . . . a check for a dollar or less from the bankruptcy estate was and remains meaningless."[17] The Smith court specifically rejected this argument, observing that as a matter of California law, "counsel owes each of the Del Campo class members a duty of loyalty, regardless of the amount at stake."[18] (Smith Order at 7.) Accordingly, the Court finds that the Smith Order does apply to this case.

### 3. Disqualification in the Class Action Context

At issue is whether disqualification is inappropriate is a class action lawsuit.

In the class action context, "disqualification is more likely because putative class counsel are subject to a 'heightened standard' which they must meet if they are to be allowed by the Court to represent absent class members." Huston v. Imperial Credit Comm. Mortgage Invest. Corp., 179 F. Supp. 2d 1157, 1167 (C.D. Cal. 2001). Because of this "responsibility to absent class members," California holds class counsel to a "heightened" ethical standard with respect to conflict of interest. Cal Pak Delivery, Inc. v. United Parcel Servs., Inc., 52 Cal. App. 4th 1, 12 (Cal. Ct. App. 1997). "The responsibility of class counsel to absent class members whose control over their attorneys is limited does not permit even the appearance of divided loyalties of counsel." Sullivan v. Chase Inv. Servs. of Boston, 79 F.R.D. 246, 258 (N.D. Cal. 1978) (citation omitted).

---

[17] (See Plaintiffs' Opposition to Defendant NCG's Motion for Order Denying Class Certification, Etc., Docket Item No. 88 in 10-cv-00010-JSW.)

[18] Currently, one of Plaintiffs' counsel–Paul Arons–is holding funds from the ACCS bankruptcy in trust for the Del Campo class in this case. (See Defendants [sic] Reply in Support of Motion for Leave to File Motion for Reconsideration, Ex. A, First Amended Disclosure Statement in Support of First Amended Plan of Liquidation at 48, Docket Item No. 1221-1.)

9

1  Here, because this is a class action lawsuit, the Court must hold counsel to a heightened
2  standard, under which the Court must be sensitive to "even the appearance of divided loyalties of
3  counsel." Sullivan, 79 F.R.D. at 258. Thus, the Court does not find that disqualification is
4  inappropriate in this class action context.

### D. Conclusion

The Court GRANTS Defendants' Motion to Disqualify.

Paul Arons, Irv Ackelsberg, John J. Grogan, Deepak Gupta, Sharon Grace and Ron Wilcox are ORDERED to withdraw from this action.[19] On or before **October 3, 2011**, each named counsel shall file a Notice of Withdrawal from this action.

The Court sets **October 17, 2011 at 10 a.m.** for a Case Management Conference. On or before **October 7, 2011**, the parties shall file a Joint Case Management Statement including, *inter alia*, a good faith proposed schedule for a new trial.

Dated: September 29, 2011

JAMES WARE
United States District Chief Judge

---

[19] Defendants' Motion to Disqualify does not seek to have O. Randolph Bragg or Lester Perry withdrawn. (See, e.g., Opp'n at 1 n.1.) Further, Plaintiffs contend that they have "added David Humphreys and Luke Wallace as new counsel who will be lead counsel at trial," for "reasons having nothing to do with [this Motion]." (Id. at 12.)

**THIS IS TO CERTIFY THAT COPIES OF THIS ORDER HAVE BEEN DELIVERED TO:**

Anthony Joseph DeCristoforo ajdecristoforo@stoel.com
Brett Marshall Godfrey godfrey@godlap.com
Brett Marshall Godfrey godfrey@godlap.com
David L. Hartsell dhartsell@mcguirewoods.com
Eric Neil Landau elandau@jonesday.com
Eric Neil Landau elandau@jonesday.com
George Stephen Azadian george@mathewslawgroup.com
Hugh Tabor Verano hverano@verano-verano.com
John David Higginbotham john.higginbotham@bbklaw.com
Joshua G Blum jblum@ftllp.com
Julie N. Richards richards@godlap.com
Julie N. Richards richards@godlap.com
Kendra S. Canape kendra.canape@kyl.com
Lester A. Perry lap@hooleking.com
Lucius Wallace luke@hwh-law.com
Michael Andrew Taitelman mtaitelman@ftllp.com
Natalie P. Vance nvance@klinedinstlaw.com
O. Randolph Bragg rand@horwitzlaw.com
Paul Arons lopa@rockisland.com
Peter Manfred Bransten pbransten@lgbfirm.com
Robert David Humphreys david@hwh-law.com
Ronald Wilcox ronaldwilcox@post.harvard.edu
Sharon Kathleen Grace parons@rockisland.com

**Dated: September 29, 2011**             **Richard W. Wieking, Clerk**

**By:    /s/ JW Chambers**
         **Susan Imbriani**
         **Courtroom Deputy**

**United States District Court**
For the Northern District of California