BOIES, SCHILLER & FLEXNER LLP
George F. Carpinello
Adam R. Shaw
10 North Pearl Street
Albany, NY 12207
Telephone:  518.434.0600
Facsimile:  518.434.0665
Email:  gcarpinello@bsfllp.com
         ashaw@bsfllp.com
(admitted *pro hac vice*)

David L. Zifkin (SBN 232845)
401 Wilshire Boulevard
Suite 850
Santa Monica, CA  90401
Telephone:   310.752.2400
Facsimile:    310.752.2409
Email:  dzifkin@bsfllp.com

CHARLES JUNTIKKA &
ASSOCIATES LLP
Charles Juntikka
1250 Broadway, 24th Floor
New York, NY 10001
Telephone:   212.315.3755
Facsimile:   212.315.9032
Email:  charles@cjalaw.com
(admitted *pro hac vice*)

DANIEL WOLF LAW OFFICES
Daniel Wolf
1220 N Street, NW, Suite PH 2
Washington, DC 20005
Telephone:   202.842.2170
Email:  dan@danielwolflaw.com
(admitted *pro hac vice*)

*Attorneys for Plaintiffs Robert Radcliffe, Chester Carter, Maria Falcon, Clifton C. Seale, III, Arnold E. Lovell, and all others similarly situated.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TERRI N. WHITE, et al.,<br><br>              Plaintiffs,<br><br>     v.<br><br>EXPERIAN INFORMATION SOLUTIONS, INC., et al.,<br><br>              Defendants.<br><br>and Related actions. | CASE NO. SA 05-CV-1070 DOC (MLGx) (Lead Case)<br>Assigned to the Hon. David O. Carter<br><br>Date:  August 5, 2013<br><br>Time: 8:30 a.m.<br><br>Courtroom:  9D<br><br>Judge:  Honorable David O. Carter |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF THE MOTION TO SERVE AS INTERIM CLASS COUNSEL**

Pursuant to Rule 23(g) of the Federal Rules of Civil Procedure, Boies, Schiller & Flexner LLP (the "Boies Firm"); the Law Offices of Daniel Wolf; and Charles Juntikka & Associates LLP (collectively referred to herein as the "Boies Team")[1] respectively apply to be appointed to serve as Interim Class Counsel for these consolidated actions.

## I. APPOINTMENT OF INTERIM CLASS COUNSEL IS NECESSARY TO PROTECT THE INTERESTS OF THE PUTATIVE CLASS.

Under Rule 23(g) of the Federal Rule of Civil Procedure, "the court may designate interim counsel to act on behalf of a putative class before determining whether to certify the action as a class action." Interim counsel should be appointed when it is "necessary to protect the interests of the putative class." Advisory Committee Notes on 2003 Amendments. Such a "[f]ormal designation of interim counsel [is] appropriate" when there is uncertainty or rivalry among plaintiffs' counsel. *Id.* In such circumstances, appointing interim class counsel serves to "clarif[y] responsibility for protecting the interests of the class during precertification activities, such as making and responding to motions, conducting any necessary discovery, moving for class certification, and negotiating settlement." *Michelle v. Arctic Zero, Inc.,* 2013 WL 791145, at *1 (S.D. Cal. Mar. 1, 2013) (*quoting* Manual for Complex Litig. § 21.11).

Appointing interim class counsel here is necessary to protect the class from both uncertainty and rivalry. The Ninth Circuit's holding that the Lieff/Caddell Team[2] engaged in conflicted representation, violated their fiduciary responsibilities to the absent class and were inadequate to represent that class creates serious uncertainty as to whether they can remain in this case in any capacity – much less

---

[1] The Boies Team has entered into a Co-Counsel Agreement that will be provided to the Court at the hearing on this motion.

[2] The Lieff/Caddell Team is comprised of Lieff, Cabraser, Heimann & Bernstein, LLP; Caddell & Chapman; National Consumer Law Center ("NCLC"); Consumer Litigation Associates; Callahan, Thompson, Sherman & Caudill, LLP; and Weller, Green, Toups & Terrell, LLP.

serve as class counsel.  *See White* Plaintiffs' Memorandum in Support of Motion to Disqualify Counsel, filed concurrently with this application.

Moreover the rivalry between the Boies Team and the Lieff/Caddell Team is both long-standing and intense.  The two teams have seriously divergent views concerning the fiduciary responsibilities of class counsel in this matter, the strength of plaintiffs' claims and how best to protect the interests of the absent class – a divergence that manifested itself in the Boies Team's successful opposition to the Lieff/Caddell Team's flawed Settlement.

That settlement represented the second time in this action in which a group of attorneys seeking appointment as class counsel managed to pretermit the procedures and criteria for determining such appointment required under Rule 23(g) by negotiating and executing a class settlement as if the issue had already been resolved in their favor.  As a result, nearly five years have been wasted while inadequate and conflicted counsel unsuccessfully sought approval of defective settlements that were not in the best interests of the class.  This Court should appoint interim class counsel in accordance with Rule 23(g) before the Lieff/Caddell Team presents it with yet another *fait accompli.*

## II.  THE BOIES TEAM SHOULD BE APPOINTED INTERIM CLASS COUNSEL.

Rule 23(g)(1) lists four factors courts are to consider when appointing class counsel:[3]

- "counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in this action";

- "the work counsel has done identifying or investigating potential claims in this action";

- "counsel's knowledge of the applicable law"; and

---

[3] While Rule 23(g)(1) does not refer to interim counsel expressly, courts routinely use those factors when appointing interim class counsel. *Artic Zero,* 2013 WL 791145, at * 2.

• "the resources that counsel will commit to representing the class."

The court should "consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class," Fed.R.Civ.Proc. 23(g)(1)(B) and where, as here, competing legal teams are vying for appointment as class counsel, the court must "go beyond scrutinizing the adequacy of counsel and make a comparison of the strengths" of the counsel to "appoint the applicant best able to represent the interests of the class." Fed.R.Civ.Proc. 23(g)(2) and Advisory Committee Notes on 2003 Amendments.

For the reasons set forth in *White* Plaintiffs' Memorandum in Support of Motion to Disqualify, the Lieff/Caddell Team cannot fairly and adequately represent the interests of the class and, hence, should not even be considered for appointment as class counsel. Even if they were, however, they cannot possibly establish that they are the legal team "best able" to represent the class.

Their inability to do so should be apparent from the Ninth Circuit's decision, which found that the Lieff/Caddell Team had knowingly violated the ethical rule against representation of clients with adverse interests, breached their solemn fiduciary duty to act in the best interest of the absent class, and were unable to adequately represent that class. *Radcliffe v. Experian,* 2013 WL 1831760 (9th Cir. Apr. 22, 2013) Indeed, in his concurring opinion, Judge Haddon concluded that the Lieff/Caddell Team's "adherence to self-interest, coupled with the obvious fundamental disregard of responsibilities to all class members… should not find favor or be rewarded at any level." 2013 WL 1831760, at * 9.

Accordingly, the choice in this case is between, on the one hand, a legal team that has betrayed the class by engaging in conflicted representation and, on the other, a team – the Boies Team – that has saved the class from conflicted representation and otherwise acted at all times to protect the interests of the class. The same Boies Team includes counsel who (1) were principally responsible for

defeating an earlier class settlement that this Court held was contrary to the interests of the class, and (2) were indispensable in securing the Injunctive Relief Settlement that resulted in the cessation of the unlawful reporting practices upon which these claims are based.  Given this history, the decision to appoint the Boies Team as interim class counsel should be an easy one.

A.    **The Boies Team Has Demonstrated That It Is Best Able to Loyally and Effectively Represent the Interests of the Putative Class.**

1. **The Boies Team Has Extensive Experience In Handling Class Actions and Other Complex Litigation.**

The Boies Team's experience in handling complex class action litigation is extensive.  The Boies Firm has been described by the *Wall Street Journal* as a "litigation powerhouse" and by the *National Law Journal* as "unafraid to venture into controversial" and "high risk matters."  The firm's work on complex class action litigation has been extensive and historic.  For example, in March 2013 in *In re Vitamin C Antitrust Litigation* the firm obtained a verdict of $162 million in damages (in addition to settlements of over $32 million) in the first U.S. antitrust case against Chinese vitamin manufacturers.   Also in March 2013, the firm obtained an $80 million settlement on behalf of investors in the Fairfield Greenwich Group, which was the largest operator of feeder funds that channeled money into Bernard Madoff's Ponzi Scheme.  In a separate class action involving vitamins, the *In re Vitamins Antitrust Litigation,* the firm obtained over $1 billion in settlements described by the courts as "unprecedented" along with a trebled jury verdict of $148.5 million.  In *In re Auction House Antitrust Litigation* 2004 WL 3670993 (S.D.N.Y. No*v.* 17, 2004), the firm collected $512 million in damages on behalf of the plaintiff class for Sotheby's and Christie's illegal behavior.  Further background on the Boies Firm can be found on its website at www.bsfllp.com.

**David Boies**: Mr. Boies, who has been named Litigator of the Year by the *American Lawyer,* Lawyer of the Year by the *National Law Journal,* and runner-up

Person of the Year by *Time Magazine,* among other honors, has extensive experience with class actions and other complex litigation.  Mr. Boies has been widely acclaimed for his representation of the United States in *U.S.* v. *Microsoft,* his representation of presidential candidate and former Vice President Al Gore during the contested 2000 Presidential election, and his representation of plaintiffs in the landmark suit, *Hollingsworth* v. *Brown,* in which the California Supreme Court struck down California's Proposition 8 as unconstitutional for its discrimination on the basis of sexual orientation – a ruling upheld by the Ninth Circuit and currently on appeal to the Supreme Court. His record also includes recovering $64 million for a class of investors defrauded by Genzyme Corporation and winning $4.05 billion in settlements on behalf of American Express in an anti-trust action against Visa, MasterCard, and several large banks.

**George F. Carpinello:**   Mr. Carpinello has over 30 years of experience litigating and trying complex commercial cases, including in the area of consumer protection.   Most recently, Mr. Carpinello was the lead trial counsel on a nationwide team of lawyers prosecuting product liability claims involving defective table saws.  He has also served as lead counsel on a product liability, mass tort action involving defective washing machine hoses that resulted in millions of dollars in recovery.  He is currently on the team litigating alleged fraud arising from the sale of defective highway guardrails.  He recently obtained over $100 million in settlements for large commercial plaintiffs in securities fraud actions.  He has tried and argued appeals in numerous civil cases in federal and state courts across the country.  Since 1985, he has been the Chair of the New York State Advisory Committee on Civil Practice, which advises the Chief Judge of the State on changes in New York civil procedure rules, and is a former member of the New York State Commission on Public Integrity.  He has been nominated by the New York Judicial Selection Commission for vacancies on the New York Court of Appeals, New York's highest court, four times, twice for

1    Chief Judge.

2        **Adam R. Shaw:**   Adam R. Shaw specializes in complex commercial

3   litigation.  He has tried several cases to verdict in federal courts and had been

4   involved in some of the largest class action cases litigated in recent years,

5   including *In re AIG Securities Litigation* and *In re Qwest Securities Litigation.*

6   Currently, Mr. Shaw is serving as counsel for a group of plaintiffs in two complex

7   antitrust actions relating to liquid crystal displays and cathode ray tubes used in

8   electronics, with damages in excess of $500 million.  He served as co-lead counsel

9   in a series of securities fraud actions, obtaining over $100 million in settlements

10  for his clients.

11       The other two members of the Boies Team – Daniel Wolf and Charles

12  Juntikka – have been actively litigating this matter since it was initiated nearly

13  eight years ago and have extensive relevant experience upon which they can draw.

14       **Daniel Wolf:**   Mr.Wolf has over 25 years of experience in the litigation of

15  complex commercial, multi-plaintiff and class action lawsuits on both the defense

16  and plaintiff side.  This experiences includes (1) serving as lead counsel in *Hill v.*

17  *Republic of Iraq,* No. 99-3346 (D.D.C.) and *Vine v. Republic of Iraq*, No. 01-

18  02674 (D.D.C.), in which he obtained recoveries totaling over $240 million on

19  behalf of over 350 American citizens who had been taken hostage by the former

20  Iraqi regime following its invasion of Kuwait in August 1990; and

21  (2) spearheading the litigation in *In re TV Writers Cases*, Case No. B268836 (Cal.

22  Super. Ct.), a series of 23 related class action lawsuits against most of the

23  Hollywood television industry, in which his efforts were instrumental in securing a

24  $75 million settlement on behalf of several thousand older writers who had been

25  systematically refused employment opportunities on the basis of their age.  Mr.

26  Wolf has appeared and argued before a wide range of trial and appellate courts,

27  including the U.S. Supreme Court and the U.S. Court of Appeals for the Third,

28  Fifth, Ninth and D.C. Circuits.

**Charles Juntikka:**   Mr. Juntikka has over 29 years of experience in bankruptcy law.  His firm is the largest personal bankruptcy firm in the New York City area, representing over 20,000 Chapter 7 bankruptcy clients in New York and New Jersey.  During the last fourteen years, he has become well known for his consumer activism and has been consulted by and quoted on bankruptcy issues and credit reporting issues by media outlets including the New York Times, Wall Street Journal, Washington Post, CBS, NBC, and CNN, among others.

2. **The Boies Team Has Done Extensive Work In Investigating and Litigating This Matter.**

The Boies Team has devoted thousands of hours to the investigation and prosecution of this action in the best interest of the named plaintiffs and class.

This class action originated in Mr. Juntikka's law office, when, at his own cost, he conducted an extensive year-long investigation of his bankruptcy clients' complaints about the serious problems they were having with errors on their credit reports after their debts had been discharged in Chapter 7 bankruptcy proceedings. Specifically, Mr. Juntikka's investigation included interviews with thousands of clients, the processing of approximately 800 requests for reinvestigation, the review of thousands of credit reports, and the comparison of each such report against bankruptcy schedules to identify inaccuracies and quantify error rates.

Mr. Juntikka's investigation and analysis of his clients' credit reports, together with Mr. Wolf's pre-filing legal research and analysis of Plaintiffs' claims, constituted virtually all of the pre-filing "work counsel has done identifying or investigating potential claims in this action." Fed. R. Civ. P. 23(g). This pre-filing work serves as the foundation of the "Juntikka Study," which figured prominently in the three of this Court's decisions in favor of the class: (1) its rejection of the inadequate *Acosta* settlement, (2) its denial of Trans Union's motion to dismiss, and (3) its subsequent tentative decision denying Experian's motion for summary judgment.

Subsequently, Mr. Juntikka has served as the principal point of contact for the five *White* Plaintiffs – all of whom were his original bankruptcy clients – and has been actively involved in all major aspects of this litigation, including the drafting of numerous declarations preparation of responses to written discovery and editing of all major legal briefs. .  Mr. Juntikka also appeared at virtually all substantive court hearings, participating in the large majority of negotiating session and providing valuable input in connection with the preparation of oral arguments and the drafting of the injunctive relief settlement.

Mr. Wolf has devoted thousands of hours to this litigation and, from the outset, has been the principal architect of Plaintiffs' legal arguments.  In that role, he was the original drafter of the *White* Plaintiffs' complaints and the author of *all* of Plaintiffs' substantive briefs on major contested motions leading up to the submission of the Monetary Relief Settlement in connection with which he did virtually all of the legal research. Further, Mr. Wolf argued the only two major substantive motions that were heard by this Court prior to the submission of the monetary settlement – namely, the opposition to the motion for preliminary approval of the *Acosta* Settlement and the opposition to Experian's motion for partial summary judgment.[4]

Mr. Carpinello of the Boies Firm, has led the litigation effort on behalf of the *White* Plaintiffs since that firm became involved in the action in March 2009. Together with Mr. Shaw, he has spent much of the past four years helping to develop the strategy and legal arguments that demonstrate the inadequacy of the monetary relief settlement and the conflicting interests that have rendered the Lieff/Caddell Team and their clients unfit to represent the class.  Since March

---

[4] Mr. Wolf also prepared numerous analytic and research memoranda relating to the legal issues in these cases,  was an active participant in the mediation sessions that took place subsequent to the *Acosta* settlement, and played a lead role in negotiating the terms of the Injunctive Relief Settlement.

2009, Mr. Carpinello (along with Mr. Wolf) has argued every major motion on behalf of the *White* Plaintiffs in this Court.  Likewise, Mr. Carpinello argued the appeal of the final order approving the monetary relief settlement in the Ninth Circuit.

### 3. The Boies Team's Extensive Knowledge of the Law and Commitment to the Class have Saved that Class from the Lieff/Caddell Team's Missteps on Multiple Occasions

The Boies Team's acumen and devotion to the best interests of the class has saved the class from the Lieff/Caddell Team's numerous ethical transgressions and legal mistakes.

*First*, in its original complaint in this action, the Lieff/Caddell Team's theory of the case was that Defendants reporting procedures were unreasonable because they had failed to conduct a detailed comparison of credits report with bankruptcy schedules – a theory that was untenable because such a comparison would plainly have been cost prohibitive.  Relying on Mr. Juntikka's expertise in bankruptcy law, Messrs. Juntikka and Wolf of the Boies Team advanced a very different position – namely, that Defendants should have presumed all along that all delinquent pre-bankruptcy debts (with certain exceptions) were discharged, because a Chapter 7 discharge reaches those debts, even if they are not listed on bankruptcy schedules.  They ultimately persuaded the Lieff/Caddell Team to proceed under their theory, which ultimately formed the basis for the Injunctive Relief Settlement that this Court subsequently described as a "homerun" for the class.

*Second*, from the outset, the Lieff/Caddell Team took the position that injunctive relief was unavailable under this case and, hence, the Lieff/Caddell Team did not even include a prayer for injunctive relief in their original complaint.  Overcoming the Lieff/Caddell Team's skepticism, Mr. Wolf formulated an argument for why prior case law holding that the FCRA preempts the injunctive

relief provision of California law was wrongly decided – an argument that the Court embraced in its tentative summary judgment decision and that paved the way for the Injunctive Relief Settlement. *See* Dkt. # 169.

**Third**, following the announcement of the *Acosta* settlement with Trans Union and Experian, the Lieff/Caddell Team – without having prepared any legal analysis of the issues – took the position that it would be virtually impossible to defeat that settlement. Expressing concern that they would be shut out of any legal fees if the *Acosta* settlement were approved, the Lieff/Caddell Team instead advocated a strategy of (1) negotiating a rushed "injunctive relief-only" settlement with Experian, and (2) using that settlement to pressure the parties to improve the injunctive relief contained in the *Acosta* settlement – thereby securing their right to attorneys' fees.

Messrs. Wolf and Juntikka fiercely objected to this approach and, in an effort to save the class from a zero dollar settlement, Mr. Wolf prepared a 30-page single space legal memorandum addressing the multiple reasons why the *Acosta* settlement was fatally flawed. Shortly after receiving that memorandum, the Lieff/Caddell Team agreed to fight the *Acosta* Settlement on its merits. Mr. Wolf then authored the brief in opposition to preliminary approval and presented the argument that persuaded the Court to reject a settlement that would have (1) left inaccuracies in the credit reports of about 90% of the class, (2) given Trans Union and Equifax an unrestrained license to continue reporting those inaccuracies in violation of their statutory obligations, and (3) provided the class with woefully inadequate monetary relief.

**Fourth**, and most recently, the Lieff/Caddell Team tried to push through the penny-on-the-dollar monetary relief settlement that the Ninth Circuit has just rejected as a product of that team's disloyal and conflicted representation. This ruling was the culmination of a four-year litigation effort in which the Boies Team has repeatedly raised the conflict-of-interest argument underlying the Ninth

Circuit's decision and identified numerous fairness and structural problems with the Lieff/Caddell Team's patently inadequate settlement.

### 4. The Boies Team Is Willing and Able to Commit All of the Resources Required to Litigate These Cases to a Successful Conclusion.

As set forth above, the Boies Team has repeatedly demonstrated its commitment to serving the interests of the class over the course of the past eight years, including in respect of the efforts Messrs. Wolf and Juntikka undertook to secure the Injunctive Relief Settlement and the efforts that the entire Boies Team has undertaken over the past four years to defeat the Lieff/Caddell Team's penny-on-the dollar settlement and protect the class from their conflicted representation. The Boies Firm has more than 250 attorneys in twelve offices across the country and regularly litigates nationwide on behalf of its clients.  The Boies Team is ready, willing and able to devote all of the human and financial resources necessary to litigate this action to a successful conclusion in the best interest of the class.

### III. THE LIEFF/CADDELL TEAM CANNOT ESTABLISH THAT THEY ARE THE BEST COUNSEL TO REPRESENT THE CLASS GIVEN THAT THEY HAVE BREACHED THEIR DUTY OF LOYALTY AND EMBRACED DEFENDANTS' POSITIONS ON THE MERITS.

#### A. The Lieff/Caddell Team Has Demonstrated Its Willingness to Subordinate the Class's Interests to Its Own.

As set forth above and explained more fully in the *White* Plaintiffs' memorandum in support of their motion to disqualify, the Ninth Circuit has already found that the Lieff/Caddell Team has engaged in conflicted representation in violation of California ethical rules and has betrayed the class's interests.  Having done so, they cannot be trusted to adequately and fairly represent the class in the future.  Further, their disloyal conduct has given rise to lingering effects that create continuing conflicts between them and the class that should preclude their appointment as class counsel.

**B.    The Lieff/Caddell Team Has Taken Adverse Litigation Positions That Would Seriously Undermine Its Ability to Effectively Represent the Class.**

In determining whether a settlement is the class's best interest, class counsel necessarily must assess the risks of litigation and, in the course of justifying their decision to enter into a class settlement, it is expected that they will point out those risks to the court.  In their zeal, however, to secure approval of a settlement that would pay them over $16 million in fees, the Lieff/Caddell Team went way over the line.  Rather than just pointing out the risks associated with continued litigation of this matter, the Lieff/Caddell Team embraced the Defendants' factual and legal defenses as if they were their own.  In so doing, the Lieff/Caddell Team betrayed the interests of the class and undermined their ability to advocate on its behalf in the event the settlement was rejected and it became necessary to litigate its claims.

Indeed, time after time, the Lieff/Caddell Team denigrated the class's claims by unequivocally advocating for the Defendants' side of the argument on the critical issues in this case – something that Defendants would be certain to point out during any future litigation or at trial and that would severely undermine the credibility of the Lieff/Caddell Team in the event they are permitted to serve as class counsel going forward. For example, on the issue of willfulness, Defendants' key defense has been that they cannot be found liable as a matter of law because the issue whether their historical bankruptcy reporting procedures violated the FRCA's maximum possible accuracy requirement was allegedly one of "first impression." In advocating for the Settlement, the Lieff/Caddell Team embraced that position lock, stock and barrel, asserting that:

- "The FCRA's requirement that agencies follow 'reasonable procedures to assure maximum possible accuracy' is likewise 'less-than-pellucid' regarding whether Defendants' failure to cross-check furnishers' information with that contained in public records of bankruptcies would be a violation" (Appeal Br. at 30), thereby accepting, without qualification, the false premise underlying Defendants' argument;

12

- There is a "dearth of legal guidance regarding Plaintiffs' 'unprecedented' [willfulness] Claims" (Appeal Br. at 32), despite (1) this Court's tentative decision finding that there was nothing unprecedented about Plaintiffs' willfulness argument; (2) the existence of compelling evidence that Defendants were aware their reporting procedures were generating systemic errors, and (3) governing FTC regulations and case law that make clear that in these circumstances, Defendants are required to review their procedures and take any reasonable steps that may be available to reduce their error rate;

- "[A] number of reported decisions since 2007 have accepted Defendants' position" (Response to Objections at 14), despite that (1) the Lieff/Caddell Team itself had previously and correctly taken the position that no court has accepted that position, and (2) this Court agreed that Defendants' position was meritless in its tentative decision on summary judgment; and

- "The fact that the district court found the new procedures to be reasonable and an improvement over Defendants' past practices does not preclude the possibility that a jury would find that the old procedures were also reasonable" (Appeal at 31-32), ignoring that the two sets of procedures employ diametrically opposite default rules.

The Lieff/Caddell Team also improperly embraced Defendants' factual and legal positions on the critical issue of manageability. Defendants' core argument on that issue has been that a litigation class cannot be certified in this case because of the alleged need for a case-by-case review of millions of individual credit files to determine whether Defendants' reporting of pre-bankruptcy debts as still delinquent was accurate. Plaintiffs' primary responses to this argument are that: (1) there is no need for such an individualized review because the accuracy determination can be made with near certainty simply by doing an automated search of information that is already in Defendants' files; and (2) manageability concerns are almost never by themselves sufficient to defeat class certification when the practical alternative is no litigation at all. Prior to the Settlement, the

Lieff/Caddell Team consistently advanced those positions in the various memoranda they filed in support of class certification.

In their zeal to get the settlement approved, however, the Lieff/Caddell Team reversed itself asserting that their previous positions were meritless and, instead, embracing Defendants' positions.   Thus, they unabashedly – and incorrectly – argued that:

- *White* Plaintiffs' position that the credit reports of class members are presumptively inaccurate is "unsupported by the facts and contrary to Plaintiffs' burden of proof under the FCRA." (Answering Br. at 38);

- "[T]he desirability of allowing small claimants a forum to recover … does not eclipse the problem of unmanageability." (Answering Br. at 37);

- "Defendants' archive records do not show whether [a pre-bankruptcy tradeline was inaccurately reported as delinquent because] the negative tradeline [may have] appeared only *after* the issuance of a report (in which case the credit report would not show the negative tradeline)." (Appeal Br. 49);

If the Lieff/Caddell Team were to be appointed class counsel, they would be put in the untenable position of having Defendants use their own words against them because of their unqualified acceptance of the Defendants' arguments on the critical issue of manageability.

Likewise, the Lieff/Caddell Team advocated a position directly contrary to the interests of absent class members, when they asserted that class members who admittedly "have not" seen their credit reports are nonetheless "perfectly capable" of forming a belief that they are inaccurate.  (Appeal Br. at 49.)  This assertion directly conflicts with the position the Lieff/Caddell Team (and Messrs. Wolf and Juntikka) took earlier in the case when they opposed and defeated the *Acosta* settlement – a position which the Court adopted in its decision rejecting that settlement. *Acosta v. TransUnion LLC,* 243 F.R.D. 377, 388-89 (C.D. Cal. 2007)

In sum, the Lieff/Caddell Team did more than raise questions about the ability of the class to achieve a favorable judgment; they articulated, adopted and embraced Defendants' positions on the most critical issues in this case, even going so far as to disavow positions they have previously espoused in their earlier papers. As Judge Haddon concluded, the Lieff/Caddell Team did this because they "were singularly committed to doing whatever was expedient to hold together an offer of settlement that might yield, as it did, an allowance of over $16 million in lawyers' fees." 2013 WL 1831760 at * 9.

No class member can believe that these attorneys would aggressively pursue this case to trial because these counsel simply have too much of a fear that they will walk away with a verdict in favor of Defendants and no attorneys' fees for themselves.

DATED: June 19, 2013          Respectfully submitted,

**BOIES, SCHILLER & FLEXNER LLP**

By: _____/s/ George F. Carpinello_____
George F. Carpinello
Adam R. Shaw
10 North Pearl Street, 4th Floor
Albany, New York   12207
(518) 434-0600

David L. Zifkin (SBN 232845)
401 Wilshire Boulevard, Suite 850
Santa Monica, CA  90401
(310) 752-2400

**CHARLES JUNTIKKA & ASSOCIATES LLP**
Charles Juntikka
1250 Broadway, 24th Floor
New York, NY 10001
(212) 315-3755

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**DANIEL WOLF LAW OFFICES**
Daniel Wolf
1220 N Street, NW, Suite PH 2
Washington, DC 20005
(202) 842-2170

*Attorneys for Plaintiffs Robert Radcliffe, Chester Carter, Maria Falcon, Clifton C. Seale, III, Arnold E. Lovell, and all others similarly situated*