Michael W. Sobol (State Bar No. 194857)
(msobol@lchb.com)
LIEFF, CABRASER, HEIMANN &
BERSTEIN, LLP
275 Battery St., 30th Floor
San Francisco CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

Michael A. Caddell (State Bar No. 249469)
mac@caddellchapman.com
Cynthia B. Chapman (State Bar No. 164471)
cbc@caddellchapman.com
Caddell & Chapman
1331 Lamar, Suite 1070
Houston TX 77010-3027
Telephone: (713) 751-0400
Facsimile: (713) 751-0906

*Attorneys for Plaintiffs*

[Additional Counsel listed on signature page]

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
(SOUTHERN DIVISION)

| | |
|---|---|
| TERRI N. WHITE, *et al.*, | Case No. SA 05-cv-1070 DOC (MLGx) (Lead Case) |
| Plaintiffs, | |
| v. | **RESPONSE TO MOTION TO APPOINT INTERIM COUNSEL AND MEMORANDUM IN SUPPORT OF CROSS- MOTION TO APPOINT INTERIM COUNSEL** |
| EXPERIAN INFORMATION SOLUTIONS, INC., | |
| Defendant. | Date: August 5 & 19[1] |
| and Related Cases: | Time: 8:30 a.m. Courtroom: 9D Judge: Honorable David O. Carter |
| 05-cv-017073-DOC (MLGx) 05-cv-7821-DOC (MLGx) 06-cv-0392-DOC (MLGx) 05-cv-1172-DOC (MLGx) 06-cv-5060-DOC (MLGx) | |

---

[1] *White* Counsel's motion to appoint interim counsel is currently noticed for August 5. *Hernandez* Counsel has noticed their cross-motion for August 19. (*See* L.R. 6-1.) Counsel will meet and confer in good faith and advise the Court regarding a mutually agreeable date for a combined hearing so that the Court may schedule the hearing(s) as it deems appropriate.

## <u>TABLE OF CONTENTS</u>

I.      Introduction...................................................................................................1

II.     Standard of Review.......................................................................................2

III.    Argument and Authorities ...........................................................................3

       A.   White Counsel should not be appointed class counsel because
        they are not best able to represent the class. .......................................4

           1.   White Counsel have limited experience in FCRA actions. ........4

           2.   White Counsel have limited class action experience..................5

           3.   In their work on this action, White Counsel have not
             shown an ability to fairly and adequately represent the
             class's interest. ............................................................................7

           4.   White Counsel have not committed significant resources
             to representing the class...........................................................11

           5.   Appointing White Counsel would not serve the best
             interests of the class. ...............................................................12

               a.   White Counsel's relentless pursuit of an unrealistic
                  financial recovery will continue at great cost to the
                  class................................................................................12

               b.   In their zeal to upend the Monetary Relief Settlement,
                  White Counsel misrepresented the record to the Ninth
                  Circuit. ..........................................................................14

       B.   Hernandez Counsel is best able to represent the class because of
        their proven track record in FCRA class litigation and their work
        on this case. ........................................................................................17

           1.   Hernandez Counsel includes the nation's top FCRA
             experts. .....................................................................................18

RESPONSE TO MOTION TO APPOINT INTERIM
COUNSEL AND MEMORANDUM IN SUPPORT OF CROSS-
MOTION  TO APPOINT INTERIM COUNSEL
CASE  NO  05-CV-1070 DOC (MLGx)

i

2.      Hernandez Counsel have been appointed lead counsel in
        numerous national class actions....................................................19

3.      Hernandez Counsel has done extensive work on behalf of
        the class. ...............................................................................19

4.      Hernandez Counsel has committed substantial resources to
        litigate this case on behalf of the class.....................................21

5.      Appointment of Hernandez Counsel as interim class counsel
        is in the best interest of the class...............................................22

IV.   Conclusion ..............................................................................25

RESPONSE TO MOTION TO APPOINT INTERIM
COUNSEL AND MEMORANDUM IN SUPPORT OF CROSS-
MOTION  TO APPOINT INTERIM COUNSEL
CASE  NO  05-CV-1070 DOC (MLGx)

ii

# <u>TABLE OF AUTHORITIES</u>

## <u>CASES</u>

*Class Plaintiffs v. City of Seattle*,
    955 F.2d 1268 (9th Cir. 1992) ...................................................................... 24

*Parrish v. National Football League Players Inc.*,
    No. 07-cv-00943, 2007 WL 1624601
      (N.D. Cal. June 4, 2007) .................................................................................. 3

*Radcliffe v. Experian*,
    715 F.3d 1157 (9th Cir. 2013) .................................................................. 1, 22

## <u>RULES</u>

Fed. R. Civ. P. 23 ................................................................................ *passim*

RESPONSE TO MOTION TO APPOINT INTERIM
COUNSEL AND MEMORANDUM IN SUPPORT OF CROSS-
MOTION  TO APPOINT INTERIM COUNSEL
CASE  NO  05-CV-1070 DOC (MLGx)

iii

*Hernandez* Counsel[2] file this Response to *White* Counsel's Motion to be appointed as interim Class Counsel and brief in support of Cross-Motion to appoint *Hernandez* Counsel as interim Class Counsel.

## I.   INTRODUCTION

Dissatisfied with the amount of the Monetary Relief Settlement, and believing that the class should have rolled the dice and risked defeat rather than accept anything less than a multi-billion dollar settlement, two lawyers from the original *White* action—Charles Juntikka and Daniel Wolf—persuaded their clients (the "*White* Objectors") to join them in opposing and ultimately appealing the Monetary Relief Settlement.[3]   Based solely on the incentive award provision, the Ninth Circuit Court of Appeals vacated the Monetary Relief Settlement and remanded the action to this Court for further proceedings.  *Radcliffe v. Experian*, 715 F.3d 1157 (9th Cir. 2013).

Notwithstanding the fact that the Ninth Circuit neither agreed that *Hernandez* counsel be disqualified nor that a future settlement agreement be rejected, (*see id.* at 1167–68), *White* Counsel now move for disqualification of *Hernandez* Counsel (addressed in a separate motion) and appointment as interim class counsel.  Given that the issue of interim counsel has now been raised and that the opposing teams of counsel have vastly different objectives and views of what can reasonably be achieved for the class, *Hernandez* counsel not only respond to this motion, but also cross-move for appointment as interim class counsel.

---

[2]  *Hernandez* Counsel in the litigation to this point are Lieff Cabraser Heimann & Bernstein, Caddell & Chapman, Consumer Litigation Associates ("CLA"), the National Consumer Law Center ("NCLC"), and Callahan, Thompson, Sherman & Caudill.  Going forward, and for purposes of references to *Hernandez* Counsel's future participation in this lawsuit, *Hernandez* Counsel also includes Francis & Mailman, P.C. and Public Justice, P.C.

[3]  Wolf and Juntikka later sought the assistance of George Carpinello to join in their effort to oppose the Monetary Relief Settlement.

RESPONSE TO MOTION TO APPOINT INTERIM COUNSEL AND MEMORANDUM IN SUPPORT OF CROSS-MOTION TO APPOINT INTERIM COUNSEL CASE  NO  05-CV-1070 DOC (MLGx)

1

Under Rule 23(g), *Hernandez* Counsel, who have always endeavored to represent the best interest of the class, bring not only extensive class action experience from multiple law firms, but also leading national FCRA experts and public interest lawyers. In addition to their original team, *Hernandez* Counsel have now associated additional counsel, FCRA specialist James A. Francis of Francis & Mailman, P.C., ("Francis & Mailman") and consumer rights advocates Arthur H. Bryant and F. Paul Bland of Public Justice, P.C. ("Public Justice")—each of whom is nationally recognized as having extensive experience germane to the class's claims and who will bring a fresh perspective and objectivity to the claims alleged as well as the relief afforded under the now-inoperative Monetary Relief Settlement.[4]  Because *Hernandez* Counsel are the only team combining in-depth FCRA and class action experience, have devoted themselves to representing consumers many times over, have done the vast majority of the work in these actions, have always been truthful with this Court and the Ninth Circuit, and have steadfastly pressed for the best interests of the class, the Court should deny *White* Counsel's motion and appoint *Hernandez* Counsel as the lawyers best able to represent the class.

## II.   STANDARD OF REVIEW

Under FED. R. CIV. P. 23, "the Court may designate interim counsel to act on behalf of the putative class before determining whether to certify the action as a class action."  FED. R. CIV. P. 23(g)(3).  It is left to the trial court's discretion

---

[4]  *Hernandez* Counsel recognized that it was important to ensure that newly associated counsel be properly incentivized to achieve the best possible result for the class.  Therefore, prior to entering a cooperating counsel agreement with Francis & Mailman and Public Justice, *Hernandez* Counsel retained Charles Silver, a University of Texas Law School professor whose focus includes class actions, civil procedure, and professional responsibility, to ensure any such arrangement was ethically appropriate.  Professor Silver assisted all counsel in formulating a cooperating counsel agreement that contains appropriate incentives for all counsel. (*See* Silver Decl. ¶¶ 6–10.)

RESPONSE TO MOTION TO APPOINT INTERIM COUNSEL AND MEMORANDUM IN SUPPORT OF CROSS-MOTION  TO APPOINT INTERIM COUNSEL CASE  NO  05-CV-1070 DOC (MLGx)

2

whether to appoint interim class counsel and at what stage of the litigation such designation is appropriate. *See Parrish v. National Football League Players Inc.*, No. 07-cv-00943, 2007 WL 1624601 (N.D. Cal. June 4, 2007) (explaining that "[t]he appointment of interim counsel is discretionary by the Court").

### III.   ARGUMENT AND AUTHORITIES

If the Court determines that an appointment of interim class counsel is appropriate at this stage, it should appoint the experienced *Hernandez* Counsel team, including new counsel Francis & Mailman and Public Justice, to represent the class.  Under the Federal Rules, courts consider all of the Rule 23 adequacy factors in deciding who to appoint as interim class counsel, including:  1) the work counsel has done in identifying or investigating potential claims in the action; 2) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; 3) counsel's knowledge of the applicable law; and 4) the resources that counsel will commit to representing the class.  FED. R. CIV. P. 23(g)(1)(A).  The Court may also consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class."  FED. R. CIV. P. 23(g)(1)(B).

On every measure, *Hernandez* Counsel is superior.  The proposed *White* Counsel team cannot match *Hernandez* Counsel's detailed knowledge of the FCRA, their experience serving as lead counsel in class actions, nor the work they have done on this case and the resources they have committed on behalf of the class.  Nor do *White* Counsel have the proper judgment to achieve the best result for this class.  The Court should therefore deny *White* Counsel's motion and appoint *Hernandez* Counsel to represent the class.

RESPONSE TO MOTION TO APPOINT INTERIM COUNSEL AND MEMORANDUM IN SUPPORT OF CROSS-MOTION TO APPOINT INTERIM COUNSEL CASE  NO  05-CV-1070 DOC (MLGx)

3

**A.** **_White_ Counsel should not be appointed class counsel because they are not best able to represent the class.**

On every Rule 23(g) factor, *White* Counsel fall short. They lack the required experience with FCRA and consumer class action litigation; their work on this case to date has been in a supporting role; their knowledge of FCRA and credit reporting agency procedures pales in comparison to that of *Hernandez* Counsel; they have not committed significant resources to representing the class; they have not been forthright with this Court and the Ninth Circuit in their effort to upend the Monetary Relief Settlement, and they have shown poor judgment on strategic decisions required to effectively represent the class. *White* Counsel's Motion should therefore be denied.

**1.** **_White_ Counsel have limited experience in FCRA actions.**

FCRA litigation is a highly specialized practice area, with a limited number of practitioners, fewer still with substantial litigation experience, and only a handful with class action experience. (Declaration of Leonard A. Bennett, filed herewith ("Bennett Decl."), ¶ 9.) In a case such as this, attacking the reasonableness of the Credit Reporting Agencies' ("CRAs'") procedures for handling vast amounts of data, class counsel must have not only an understanding of the law, but the detailed knowledge of CRA business procedures that can only be gained from long experience litigating FCRA cases. (*Id.* ¶ 12.) For example, acquaintance with confidential, proprietary CRA manuals, internal reporting formats not available to the public, and the relationships among the CRAs and related third-party entities is crucial, and largely unknown outside of FCRA practice. (*Id.*)

No lawyer on the *White* Counsel team claims to be a FCRA lawyer. Instead, Mr. Carpinello, Mr. Shaw, and Mr. Wolf are general litigators; and Mr. Juntikka is a bankruptcy lawyer. (Dkt. 879 at 5–7.) *White* Counsel's claim to relevant experience hinges largely on Mr. Juntikka's encountering FCRA issues when

RESPONSE TO MOTION TO APPOINT INTERIM COUNSEL AND MEMORANDUM IN SUPPORT OF CROSS-MOTION TO APPOINT INTERIM COUNSEL CASE NO 05-CV-1070 DOC (MLGx)

4

clients in his bankruptcy practice discovered errors on their credit reports.  (Dkt. 879 at 7.)  *White* Counsel repeatedly refer to the so-called "Juntikka Study," an analysis of errors found in the records of Mr. Juntikka's bankruptcy clients.  (*Id.*)  What *White* Counsel do not mention, however, is that Mr. Juntikka could not analyze this information sufficiently himself.  Instead, it was *Hernandez* counsel— specifically, nationally known FCRA experts Leonard Bennett, Matthew Erausquin, Ian Lyngklip, and other lawyers from CLA—who did the detailed work of reviewing, interpreting, and categorizing the boxes of consumer credit reports that Mr. Juntikka and Mr. Wolf had gathered.  (Bennett Decl. ¶ 18.)  In their review, they discovered many inaccuracies in Mr. Juntikka and Mr. Wolf's earlier review of the documents, including tradelines or public records that were inaccurate but had been missed in the earlier review, as well as claimed inaccuracies that were in fact correctly reported.  (*Id.*)  Due to the multitude of errors in Mr. Juntikka's and Mr. Wolf's analysis, all *White/Hernandez* counsel, including Mr. Juntikka and Mr. Wolf themselves, agreed that the FCRA experts from CLA should re-audit these reports one-by-one.  (*Id.*; Declaration of Michael A. Caddell, filed herewith ("Caddell Decl."), ¶¶ 50–52.)  Because Mr. Juntikka's FCRA knowledge has already proved insufficient, and no other lawyer on the *White* Counsel team claims any relevant experience, *White* Counsel are not the best lawyers to litigate the detailed technical issues specific to FCRA practice that will necessarily be involved in representing this class.

### 2.     *White* Counsel have limited class action experience.

Mr. Juntikka and Mr. Wolf were candid about their lack of class action experience when they associated with Lieff Cabraser and Caddell & Chapman at the outset of this litigation.  Plaintiffs' Initial Motion to Appoint Interim Class Counsel, filed in September 2006, sought to appoint Lieff Cabraser and Caddell & Chapman as co-lead interim Class Counsel.  (Dkt. 36 at 1.)  As noted in that

RESPONSE TO MOTION TO APPOINT INTERIM COUNSEL AND MEMORANDUM IN SUPPORT OF CROSS-MOTION TO APPOINT INTERIM COUNSEL CASE  NO. 05-CV-1070 DOC (MLGx)

5

motion, which Mr. Juntikka and Mr. Wolf signed on behalf of their clients, Lieff Cabraser and Caddell & Chapman "have extensive experience litigating consumer protection class actions, extensive knowledge of the applicable law, and are ready and able to devote the resources required to zealously represent the class." (*Id.*) Mr. Juntikka and Mr. Wolf, on the other hand, performed supporting roles. (*Id.* at 10–11.)

Throughout the litigation, Lieff Cabraser and Caddell & Chapman continued to lead the *White/Hernandez* team, with Mr. Wolf contributing mainly research and writing work and Mr. Juntikka contributing little, if anything. (Declaration of Michael W. Sobol, filed herewith ("Sobol Decl."), ¶¶ 9–15, 23; Caddell Decl. ¶¶ 33–39, 54–55.) When Mr. Wolf and Mr. Juntikka fell out with Lieff Cabraser and Caddell & Chapman over the advisability of a settlement that fell short of Mr. Juntikka and Mr. Wolf's unrealistic financial expectations, they still knew that they were not qualified to handle this kind of complex FCRA class action on their own. Mr. Juntikka and Mr. Wolf then sought the assistance of Mr. Carpinello.

Mr. Carpinello, however, cannot fill the void in Wolf and Juntikka's FCRA class action experience. Mr. Carpinello has a general civil litigation practice. Even in the context of putting himself forward in this case, presumably emphasizing any aspect of his experience that might be relevant to class action practice, Mr. Carpinello is able to produce only some involvement in mass tort litigation and securities fraud actions in which he represented large commercial plaintiffs. (Dkt. 879 at 5.) While they surely have their own complexities, mass tort actions and securities litigation on behalf of individual clients do not involve the specialized concerns of Rule 23 class action practice, and they certainly do not prepare a lawyer to cope with the technical details of the FCRA. While it appears that Mr. Shaw has been involved in class actions in some capacity, *White*

RESPONSE TO MOTION TO APPOINT INTERIM COUNSEL AND MEMORANDUM IN SUPPORT OF CROSS-MOTION TO APPOINT INTERIM COUNSEL CASE NO 05-CV-1070 DOC (MLGx)

6

Counsel's motion does not state that he has ever served as lead counsel in a class action.  (*Id.* at 6.)

In contrast, *Hernandez* Counsel combines leading national talent in consumer class actions and FCRA litigation.  (*See infra* Section III.B.1–2.)  The *Hernandez* team also includes leading non-profit consumer rights advocates from the National Consumer Law Center and Public Justice, two of the nation's most prominent public interest law firms, with a deep understanding of the public policy issues at stake, a proven commitment to pursuing effective relief for consumers, and vast class action experience on behalf of consumers.  (*See id*.)  The striking contrast between the level of FCRA and class action experience available to *White* Counsel and *Hernandez* Counsel makes plain that *White* Counsel are not the best lawyers for this class.

### 3.  In their work on this action, *White* Counsel have not shown an ability to fairly and adequately represent the class's interest.

*White* Counsel tout themselves as having been "principally responsible" for opposing the proposed *Acosta* settlement and as "indispensable" in securing the Injunctive Relief Settlement.  (Dkt. 879 at 3–4.)  In fact, Mr. Wolf and Mr. Juntikka played supporting roles in both efforts.

*White* Counsel's Motion distorts Mr. Wolf and Mr. Juntikka's role, as well as the role of Lieff Cabraser and Caddell & Chapman, in opposing the proposed *Acosta* Settlement.  (Dkt. 879 at 10.)  It was Lieff Cabraser and Caddell & Chapman, not Mr. Wolf and Mr. Juntikka, who led the effort to oppose the proposed *Acosta* Settlement and to negotiate the comprehensive relief afforded by the Injunctive Relief Settlement.  (Sobol Decl. ¶¶ 13–22; Caddell Decl. ¶ 40–44; 48–49.)  Having once already refuted Mr. Wolf and Mr. Juntikka's misstatements in response to *White* Counsel's application for Injunctive Relief Settlement fees,

RESPONSE TO MOTION TO APPOINT INTERIM
COUNSEL AND MEMORANDUM IN SUPPORT OF CROSS-
MOTION  TO APPOINT INTERIM COUNSEL
CASE  NO  05-CV-1070 DOC (MLGx)

7

(*see* Dkt 616–616-5),[5] *Hernandez* Counsel merely summarize the most salient points here.  First, contrary to *White* Counsel's representation that Lieff Cabraser and Caddell & Chapman "took the position that it would be virtually impossible to defeat [the *Acosta*] settlement," (Dkt. 879 at 10), Lieff Cabraser and Caddell & Chapman identified flaws in the *Acosta* settlement immediately upon reviewing the term sheet and never wavered in their efforts to prepare a vigorous opposition to that proposed settlement.  (Sobol Decl. ¶¶ 13–16; Caddell Decl. ¶ 44.)

Second, the 30-page memorandum that Mr. Wolf prepared, and which *White* Counsel now credit with some kind of unique insight into the flaws of the *Acosta* settlement, (Dkt. 879 at 10), was not a significant contributing factor in the *White/Hernandez* team's unanimous decision to oppose the proposed *Acosta* settlement.  (Sobol Decl. ¶ 19.)  In addition, the memorandum contained numerous errors of legal judgment regarding the applicable willfulness standard, the likelihood of class certification, and the admissibility of important evidence at trial, all of which contributed to an unreasonably optimistic assessment of the value of the class's monetary claims.  (Caddell Decl. ¶¶ 33–35.)

Third, with assistance from Leonard Bennett, it was Mr. Sobol of Lieff Cabraser and Mr. Caddell of Caddell & Chapman who negotiated the broad terms of comprehensive injunctive relief for the class.  (Sobol Decl. ¶¶ 20–22; Caddell Decl. ¶ 40–44; 48–49.)  Mr. Bennett's FCRA expertise and detailed knowledge of the CRAs' business operations were invaluable in assessing what the CRAs' capabilities were in processing information regarding bankruptcy tradelines and in working out the exceedingly complex details of how the injunctive relief would be implemented.  (Caddell Decl. ¶ 48; Bennett Decl. ¶ 21.)  At no point did Mr. Wolf,

---

[5]  *Hernandez* Counsel incorporate this earlier briefing and their earlier declarations by reference as though fully set forth here.

RESPONSE TO MOTION TO APPOINT INTERIM COUNSEL AND MEMORANDUM IN SUPPORT OF CROSS-MOTION TO APPOINT INTERIM COUNSEL CASE NO 05-CV-1070 DOC (MLGx)

8

who participated in the negotiations mainly as an observer, or Mr. Juntikka play a significant role.  (Caddell Decl. ¶ 48–49; Bennett Decl. ¶ 21.)  Indeed, except for Mr. Wolf's involvement as a minor participant, neither Mr. Wolf nor Mr. Juntikka ever made a presentation or conducted any substantive negotiations with the Defendants regarding the Injunctive Relief Settlement.  (Caddell Decl. ¶ 48–49; Bennett Decl. ¶ 21.)

*White* Counsel also inflate their contribution to discovery and motion practice in this case.  They claim that Mr. Juntikka and Mr. Wolf conducted "virtually all" of the plaintiffs' pre-filing work and investigation and that Mr. Wolf was the "principal architect of plaintiffs' legal arguments."  (Dkt. 879 at 8–9.)  In fact, Mr. Juntikka and Mr. Wolf's pre-filing investigation work had to be entirely re-done by CLA, (Bennett Decl. ¶ 18; Caddell Decl. ¶¶ 51–52), and neither Mr. Wolf nor Mr. Juntikka had any role in reviewing the Defendants' document production.  (Bennett Decl. ¶ 20.)  Plaintiffs' counsel used an electronic document depository to store Defendants' production; and the system records show that Mr. Juntikka never even had log-in credentials to access the system and that Mr. Wolf did not once use his log-in credentials or access any documents.  (Bennett Decl. ¶ 20.)  Instead, all of that work was undertaken by *Hernandez* Counsel.  (Bennett Decl. ¶ 20; Caddell Decl. ¶ 38.)  Neither Mr. Wolf nor Mr. Juntikka conducted or defended a single deposition, and Mr. Wolf made little or no contribution at the two depositions he attended.  (Sobol Decl. ¶ 23.)  Furthermore, Mr. Wolf's work in preparing initial drafts of certain filings was conducted as part of a large team— including senior lawyers at Lieff Cabraser, Caddell & Chapman, and NCLC who provided significant revisions and input, junior lawyers who provided research assistance, and time-consuming efforts from the entire team to assemble the discovery, expert declarations, and other factual support required.  (Sobol Decl. ¶¶ 9–12; Caddell Decl. ¶¶ 36–39.)

RESPONSE TO MOTION TO APPOINT INTERIM COUNSEL AND MEMORANDUM IN SUPPORT OF CROSS-MOTION TO APPOINT INTERIM COUNSEL CASE NO 05-CV-1070 DOC (MLGx)

9

Regarding the Injunctive Relief Settlement, it was *Hernandez* Counsel's FCRA experience that made the extraordinarily favorable Injunctive Relief Settlement possible.  *Hernandez* Counsel's long history of litigating against the CRAs has given them a detailed understanding of the CRAs' recordkeeping and record retrieval procedures, as well as the technical capabilities of their systems. (Bennett Decl. ¶ 12.)  This knowledge allowed plaintiffs to work out detailed agreed procedures as part of the Injunctive Relief Settlement that were both technically workable and highly favorable to the class.  (*Id.*)

*White* Counsel distort this history, exaggerating their own role in the Injunctive Relief Settlement, and they even attempt to discredit *Hernandez* counsel by claiming—wrongly—that "the Lieff/Caddell Team" "took the position that injunctive relief was unavailable" and that they "did not even include a prayer for injunctive relief in their original complaint."  (Dkt. 879 at 9.)  As an initial matter, it is unclear what *White* Counsel mean by the "Lieff/Caddell Team's" "original complaint."  (Dkt. 879 at 9.)  Caddell & Chapman and CLA filed the original *Hernandez* complaint on October 3, 2005.  (Caddell Decl. ¶ 29.)  Lieff Cabraser, Wolf, Juntikka, and NCLC later filed the *White* complaint.  (Sobol Decl. ¶ 6.)  Contrary to *White* Counsel's unsupported, uncited representations, both complaints contained requests for injunctive relief.  The original complaint that Caddell & Chapman and CLA filed in the Northern District of California—before they had even heard of Mr. Wolf—prayed for injunctive relief as follows:

> Injunctive relief requiring Defendants to: (1) comply with the FCRA; (2) update and accurately report bankruptcy information regarding each respective "tradeline or account" in the "Trade Information" or "Account Information" section of their credit files and consumer

RESPONSE TO MOTION TO APPOINT INTERIM COUNSEL AND MEMORANDUM IN SUPPORT OF CROSS-MOTION TO APPOINT INTERIM COUNSEL CASE NO 05-CV-1070 DOC (MLGx)

10

> reports; and (3) stop issuing any new consumer reports
> until Defendants comply with the Court's order.

*Hernandez v. Equifax*, Case No. 05-cv-03996, Class Action Complaint, Dkt. 1 at 8 (N.D. Cal. October 3, 2005).  And the original *White* Complaint, which Lieff Cabraser drafted with input from Mr. Wolf and Mr. Juntikka, prayed:

> That a permanent injunction be issued requiring Trans
> Union to adopt investigation and reinvestigation practices
> in accord with the requirements of the FRCA, the CCRA
> and the UCL.

(Dkt. 1 at 19.)  This is just one example of how *White* Counsel have distorted the facts to aggrandize their role in this litigation.  Viewed for what it is—a supporting role on a team led by Lieff Cabraser and Caddell & Chapman—*White* Counsel's work in the case so far does not support their appointment as interim Class Counsel.

### 4. *White* Counsel have not committed significant resources to representing the class.

Throughout six years of investigation, discovery, and work on the Injunctive Relief and Monetary Relief Settlements, Lieff Cabraser and Caddell & Chapman have been responsible for bearing the majority of the workload and advancing the considerable expenses required to prosecute this litigation.  (*See infra* Section III.B.3–4.)  As explained above, *White* Counsel greatly exaggerate their labor contribution, and they do not argue, as they cannot, that they have contributed in any way to the class's substantial expert fees and other expenses.  (Dkt. 879 at 11.) *White* Counsel say that they are now ready to undertake these burdens, and they lean heavily on the credentials of David Boies, a name partner in Mr. Carpinello's firm.  (Dkt. 879 at 5, 11.)  Mr. Boies, however, has not appeared in this action, nor is he listed as counsel on the signature block for the *White* Plaintiffs.  (Dkt. 879 at

RESPONSE TO MOTION TO APPOINT INTERIM COUNSEL AND MEMORANDUM IN SUPPORT OF CROSS-MOTION TO APPOINT INTERIM COUNSEL CASE NO 05-CV-1070 DOC (MLGx)

11

15–16.)  In any event, whether or not *White* Counsel may in the future advance the
expenses required to represent the class, their actions to date have not
demonstrated the required resources or commitment.

### 5.    Appointing *White* Counsel would not serve the best interests of the class.

Under the final Rule 23(g) factor, the Court may consider "any other matter
pertinent to counsel's ability to fairly and adequately represent the interests of the
class."  FED. R. CIV. P. 23(g)(1)(B).  Here, after almost eight years of litigation—a
duration elongated by *White* Counsel's obstruction and efforts to block and
overturn settlements that would have brought substantial benefits to the class—the
record shows that *White* Counsel lack the judgment to fairly weigh risks and
benefits, realistically assess likely outcomes, deal candidly with the Court, and
generally to achieve the best possible result for this class.

### a.    White Counsel's relentless pursuit of an unrealistic financial recovery will continue at great cost to the class.

From the outset of this litigation, Mr. Wolf and Mr. Juntikka have been
laser-focused on a mammoth monetary settlement, to the detriment of real progress
toward achievable goals.  (Sobol Decl. ¶ 12; Caddell Decl. ¶ 56.)  The class likely
could have achieved a more significant monetary settlement in a shorter period of
time but for the misguided objectives and interference in settlement negotiations of
Mr. Juntikka and Mr. Wolf.  (Caddell Decl. ¶¶ 54–56.)[6]  At the May 26, 2010 final
approval hearing, in response to the Court's oft-repeated manageability concern,
*White* Counsel proposed two narrow classes:  (1) a "judgment error class"
allegedly consisting of "800,000 people per defendant," for which a reasonable
settlement would be "about $50 to $75 of statutory damages," and (2) a "corrected

---

[6]  *Hernandez* Counsel is willing to waive the mediation privilege if Defendants
assent and the Court believes a report from the mediator(s) would be helpful to its
evaluation of counsel's performance on behalf of the class.

RESPONSE TO MOTION TO APPOINT INTERIM
COUNSEL AND MEMORANDUM IN SUPPORT OF CROSS-
MOTION  TO APPOINT INTERIM COUNSEL
CASE  NO  05-CV-1070 DOC (MLGx)

12

error class," allegedly consisting of "600,000 consumers per defendant," for whom "a reasonable settlement would be $30 million to $45 million." (Dkt. 773 (May 26, 2011 Hr'g Tr, (Vol. II)) at 10:11–13:20.) In addition to these 1.4 million class members, *White* Counsel also proposed a convenience class consisting of "10 million [people] per defendant," each of whom would receive $50 under the settlement envisioned by *White* Counsel. (*Id.* at 14:3–16.) Put another way, *White* Counsel aggressively sought the reversal of the Monetary Relief Settlement in the name of an unattainable settlement in the range of $1.5 billion to $2 billion.[7]

In addition, *White* Counsel have consistently opposed a settlement structure that offers greater compensation to plaintiffs who most likely suffered actual harm. *Hernandez* counsel are proud that they were able to structure the Monetary Relief Settlement to provide substantial relief to class members who believed they suffered actual damages, such as denial of employment or housing, as a result of the CRAs' inaccurate reporting. (*See* Dkt. 776 at 31.) Many class members would face significant challenges meeting the standard of proof to recover such damages in individual litigation, and the proposed Monetary Relief Settlement thus offered what original *Hernandez* Counsel reasonably believed to be their best, and perhaps only, chance at relief. *White* Counsel, however, call this common-sense, highly advantageous settlement structure "indefensible." (Ex. 1 at 25.) They have firmly and repeatedly taken the position that "class members who assert a belief they suffered actual injury have no better claim to statutory damages than anyone else." (*Id.*; *see also id.* at 68.) Having so loudly and vociferously argued that all class

---

[7] The monetary award that *White* Counsel proposed for the convenience class alone would total $1.5 Billion: 10,000,000 Class members per Defendant, times 3 Defendants, times $50.00 = $1.5 Billion. The proposed recovery to the judgment error class would add $120,000,000–$180,000,000 (800,000 Class members per Defendant, times 3 Defendants, times $50 and $75, respectively). Adding *White* Counsel's proposed recovery of $30–$45 million per defendant for a corrected error class yields a total envisioned recovery of $1.71–$1.815 Billion.

RESPONSE TO MOTION TO APPOINT INTERIM COUNSEL AND MEMORANDUM IN SUPPORT OF CROSS-MOTION TO APPOINT INTERIM COUNSEL CASE NO 05-CV-1070 DOC (MLGx)

13

members, regardless of actual harm, must receive equal compensation, *White* Counsel will be hamstrung in later settlement negotiations from considering any structure that ties recovery to actual loss in any way.

In contrast, *Hernandez* Counsel, not constrained by the extreme positions taken by *White* Counsel, will explore whether a new global settlement makes sense in light of the developments in FCRA and class action jurisprudence since early 2009.  In contemplating the most prudent strategy going forward—whether that be the pursuit of settlement or further litigation—multiple additional safeguards (*i.e.*, in addition to the presence of *Hernandez* Counsel) will be in place to ensure that any determination is fair and in the best interests of the class.  Those safeguards include:  (a) the presence of newly associated counsel, Public Justice and Francis & Mailman, who in addition to being unconnected to the prior conflict, bring considerable additional class action experience and FCRA expertise to the table (discussed further below); (b) the presence and involvement of new, additional class representatives;[8] and (c) (if a settlement is reached) the Rule 23 settlement approval process, which will again give this Court and any reviewing court the opportunity to fully consider the fairness and adequacy of any settlement advanced and to consider any objections thereto.  If a fair and reasonable settlement cannot be reached, *Hernandez* Counsel are fully committed—and certainly the most capable—to proceed with the litigation.

### b. **In their zeal to upend the Monetary Relief Settlement, *White* Counsel misrepresented the record to the Ninth Circuit.**

In urging the reversal of the Monetary Relief Settlement at any cost, *White* Counsel made misrepresentations to the panel (in briefing and at oral argument)

---

[8]  *Hernandez* Counsel intend to file a motion adding a new representative plaintiff or plaintiffs in the near future.

RESPONSE TO MOTION TO APPOINT INTERIM COUNSEL AND MEMORANDUM IN SUPPORT OF CROSS-MOTION TO APPOINT INTERIM COUNSEL CASE  NO  05-CV-1070 DOC (MLGx)

14

regarding this Court's alleged failure to vet the settlement, including telling the panel that this Court failed to make *any* findings under *Rodriguez*.  At oral argument, Mr. Carpinello twice misrepresented that this Court made no findings—including stating that the Court failed to make "any mention of *Rodriguez*"—concerning *White* Counsel's objection that the incentive award provision created a disabling conflict of interest:

> He [the district court] heard argument, **and then he wrote a final opinion which basically did not even address the issue**. In his final opinion, he characterized the issue of—that the White plaintiffs wanted money, too. And he said, "If you wanted money, you could have asked the Court."
>
> Of course, that's not the issue at all. I urge you, Your Honor, because I think your question is very well taken—look at the district judge['s] final decision approving this settlement.  **And I ask you to find anywhere in there his address of this issue, or even the mention of *Rodriguez* or the mention of any of these facts**.

(Caddell Decl., Ex. A, Transcript of March 4, 2013 Appellate Argument at 11:2–15, emphasis added).  In fact, this Court explicitly found that the Settlement's incentive award provision did not create a conflict because it was not like the awards at issue in *Rodriguez*:

> On the other hand, Settling Plaintiffs' request for service fees ***does not suffer from the tell-tale signs of conflict*** that have caused courts to reject such awards in the past. Settling Plaintiffs have not requested service awards as

RESPONSE TO MOTION TO APPOINT INTERIM COUNSEL AND MEMORANDUM IN SUPPORT OF CROSS-MOTION TO APPOINT INTERIM COUNSEL CASE NO 05-CV-1070 DOC (MLGx)

15

part of a pre-existing agreement between class representatives and class counsel, and the incentive payments are not in any way tied to the amount of the recovery in the case. ***Compare Rodriguez***, 563 F.3d at 959–60 (finding incentive awards inappropriate where they were contemplated as part of an ex ante agreement between class representatives and class counsel and where the amount of the award depended on the amount recovered in the case).

(Dkt. 37 at 35, emphasis added.)  The Court went on to find that Settling Plaintiffs' full and timely disclosure of the incentive-award provision also distinguishes this case from *Rodriguez*:

Moreover, the possibility of large service fees was disclosed to the court, and absent class members, at the preliminary approval stage.  *Compare id.*  (disapproving of service fees that were not disclosed until after the preliminary approval stage).

(*Id.*)  The Court further distinguished *Rodriguez* based on the amount of the incentive awards requested.  (*See id*.)

Far from "shirk[ing] its responsibility," and "fail[ing] to honor its fiduciary duty at every turn"[9]—phrasing used by *White* Counsel to denigrate this Court's vetting of the settlement—this Court based its *Rodriguez* findings on a well-developed record.  Regularly indulging the parties in lengthy oral argument, the Court carefully considered the Objectors' arguments over a two-and-a-half year

---

[9]  *See* Brief of Plaintiffs-Appellants, Case No. 11-563769 et al., attached as Ex. 10, at 4, 23.

RESPONSE TO MOTION TO APPOINT INTERIM COUNSEL AND MEMORANDUM IN SUPPORT OF CROSS-MOTION TO APPOINT INTERIM COUNSEL CASE NO 05-CV-1070 DOC (MLGx)

16

approval process, which involved extensive briefing, multiple fact witness and expert declarations, and several hearings.  (*See* Dkt. 645-8, 645-7, 645-6, 645-5; Dkt. 645-4, 645-9; Dkt. 605; Ex. 3 (Nov. 9, 2009 Hr'g Tr. (Volume I)) at 16:7–25:15; 46:11–48:5; Dkt. 697 (May 20, 2010 Hr'g Tr. (Volume II)) at 26:4–44:21; Dkt. 711 (May 20, 2010 Hr'g Tr. (Volume III)) at 6:7–20:2; Dkt. No. 698 (May 20, 2010 Hr'g Tr. (Volume IV)) at 23:8–29:5, 58:24–60:25, 62:7–74:4.)  The Court conducted multiple hearings on the *White* Objectors' objections to the Settlement, including their argument that the Monetary Relief Settlement's incentive award provision created a disabling conflict of interest under *Rodriguez*.  (*See* Ex. 3 (Nov. 9, 2009 Hr'g Tr. (Volume I)) at 16:7–25:15; 46:11–48:5; Dkt. 697 (May 20, 2010 Hr'g Tr. (Volume II)) at 26:4–44:21; Dkt. 711 (May 20, 2010 Hr'g Tr. (Volume III)) at 6:7–20:2; Dkt. 698 (May 20, 2010 Hr'g Tr. (Volume IV)) at 23:8–29:5, 58:24–60:25, 62:7–74:4.)  Prior to making its ultimate findings, the Court extensively questioned the parties on the application of *Rodriguez* and whether the incentive award provision created a conflict of interest from the standpoints of timing, amount, and potential coercive effect.  (*See* Dkt. No. 698 (May 20, 2010 Hr'g Tr. (Volume IV)) at 65:3–74:4.)  Only after conducting these hearings did the Court conclude that the incentive award provision did not create the "tell-tale signs of conflict" present in *Rodriguez*.  (Dkt. 837 at 35.)

In addition to their shortcomings in FCRA class action experience and in the work performed on this action to date, counsel who so clearly misstate the record are not "best able to represent the interests of the class," and *White* Counsel's motion should therefore be denied.  Fed. R. Civ. P. 23(g)(2).

**B.**   ***Hernandez* Counsel are best able to represent the class because of their proven track record in FCRA class litigation and their work on this case.**

In contrast to *White* Counsel, *Hernandez* Counsel have the FCRA knowledge, the experience in class action litigation, the record of work done and

RESPONSE TO MOTION TO APPOINT INTERIM COUNSEL AND MEMORANDUM IN SUPPORT OF CROSS-MOTION  TO APPOINT INTERIM COUNSEL CASE  NO 05-CV-1070 DOC (MLGx)

17

resources committed, and the appropriate judgment to achieve the best possible result for the class.  Especially with the addition of new counsel James Francis of Francis & Mailman and Arthur Bryant and Paul Bland of Public Justice the *Hernandez* Counsel team combines a peerless level of FCRA expertise with an exemplary commitment to consumer rights.  *Hernandez* Counsel are therefore the best choice to represent the class.

> ### 1.   *Hernandez* **Counsel include the nation's top FCRA experts**.

The original *Hernandez* team already included unparalleled FCRA expertise. Caddell & Chapman has served as counsel in FCRA class action cases in federal district courts in Chicago, Philadelphia, Los Angeles, Richmond, Atlanta, Las Vegas, and South Carolina, including serving as co-lead counsel in the largest class action settlement in FCRA history.  (Caddell Decl. ¶¶ 7, 11, 13–14.)  Mr. Bennett is nationally recognized as a FCRA expert, regularly speaking at consumer credit and FCRA seminars and conferences, and he has testified before Congress on FCRA policy.  (Bennett Decl. ¶¶ 6–7.)  Mr. Bennett has litigated hundreds of FCRA cases in federal court, including trying more FCRA cases to a jury than any plaintiffs' attorney in the nation.  (*Id.* ¶ 10.)

To this strong team, *Hernandez* Counsel have now added Francis & Mailman.  Mr. Francis of Francis & Mailman, along with Mr. Bennett of CLA, is one of a handful of leading FCRA lawyers in the nation.  (Bennett Decl. ¶¶ 9–10; Declaration of James A. Francis, filed herewith ("Francis Decl."), ¶¶ 3–6.)  Mr. Francis has served as class counsel in numerous FCRA actions, including the third-largest settlement in FCRA history.  (Francis Decl. ¶ 8.)  Mr. Francis also has significant trial experience, including bringing FCRA cases to trial, and is a frequent speaker on the FCRA at national consumer law conferences.  (*Id.* ¶ 4.) The new *Hernandez* Counsel team concentrates an unmatchable level of FCRA knowledge and experience, giving the class the best possible representation in this

RESPONSE TO MOTION TO APPOINT INTERIM COUNSEL AND MEMORANDUM IN SUPPORT OF CROSS-MOTION  TO APPOINT INTERIM COUNSEL CASE  NO  05-CV-1070 DOC (MLGx)

18

highly specialized and complex area of the law.  The third 23(g) factor—knowledge of the applicable law—thus heavily favors *Hernandez* Counsel.  FED. R. CIV. P. 23 (g)(1)(A)(iii).

### 2.     *Hernandez* Counsel have been appointed lead counsel in numerous national class actions.

Lieff Cabraser and Caddell & Chapman are both leading national consumer class action firms with extensive experience successfully litigating actions like this one.  (Sobol Decl. ¶¶ 3–5 & Ex. A; Caddell Decl. ¶¶ 3–25.)  Lieff Cabraser is one of the oldest, largest, most respected, and most successful law firms in the country representing plaintiffs in class actions.  (Sobol Decl. ¶ 3.)  Caddell & Chapman has an outstanding record—including more than 50 jury trials and hundreds of evidentiary hearings—representing primarily plaintiffs in complex litigation across the United States.  (Caddell Decl. ¶ 17.)  Caddell & Chapman's current docket includes some 25 national and state class actions around the United States, in most of which Caddell & Chapman serves as either lead or co-lead counsel.  (Caddell Decl. ¶¶ 12–13.)  Mr. Bennett and Mr. Francis also have extensive class experience, including particularly in the FCRA context.  (Bennett Decl. ¶¶ 8–9; Francis Decl. ¶¶ 3–8.)  Mr. Rossman has been appointed lead or co-lead counsel in over 90 consumer class actions.  (Declaration of Stuart T. Rossman, filed herewith, ¶ 10.)  Public Justice has served as co-counsel in a variety of class actions concerning such matters as consumer rights, environmental protection, civil rights, mass torts, and workplace safety.  (Declaration of Arthur H. Bryant, filed herewith, ¶ 29.)  In addition, Mr. Sherman, whose firm has extensive class action experience, has served as lead counsel in various class action matters.  (Declaration of Lee A. Sherman, filed herewith, ¶ 9.)  The second 23(g) factor—"experience in handling class actions"—thus also supports the appointment of *Hernandez* Counsel.  FED. R. CIV. P. 23 (g)(1)(A)(ii).

RESPONSE TO MOTION TO APPOINT INTERIM COUNSEL AND MEMORANDUM IN SUPPORT OF CROSS-MOTION  TO APPOINT INTERIM COUNSEL CASE  NO  05-CV-1070 DOC (MLGx)

19

### 3.    *Hernandez* **Counsel have done extensive work on behalf of the class**.

As explained in detail in *Hernandez* Counsel's earlier briefing, *Hernandez* Counsel spent over 30,000 hours as of May 2011 working in the trial court on behalf of the class in this action.  (*See* Dkt. 775 at 6; Dkt. 755 at 9 & n.7.)  This work included substantial investigation, fact-gathering, and formal discovery (including review of tens of thousands of pages of documents, retention and consultation of numerous experts in the fields of credit reporting and consumer bankruptcies, interviews with numerous consumers, review of thousands of consumer credit reports, and numerous depositions) in support of the litigation. (Dkt. 575 at 11–12.)  *Hernandez* Counsel took and defended more than 30 depositions, produced over 10,000 pages of documents, and reviewed over 30,000 pages of documents produced by the Defendants.  (*Id.* at 12.)  The 22 depositions taken included depositions of each of Defendants' experts, as well as testimony from Directors, Vice Presidents, other senior officers, and analysts and consultants from Defendants' departments handling, among other subjects, data services, consumer affairs, technical, software and modeling, compliance, decision analytics, and predictive sciences services.  (*Id.*)

*Hernandez* Counsel retained several experts who have filed numerous declarations with the Court.  (*Id.*)  In addition, *Hernandez* Counsel undertook extensive work on motion practice and attended several status conferences and multiple-day hearings on settlement approval and summary judgment.  (*Id.*) *Hernandez* Counsel also prepared for and participated in 12 in-person formal mediation sessions with Judge Baird and Randall Wulff and several in-person and telephonic sessions involving counsel.  (Sobol Decl. ¶ 24.)  In connection with these mediation efforts, *Hernandez* Counsel prepared multiple lengthy presentations, exchanged numerous written drafts of settlement proposals between

RESPONSE TO MOTION TO APPOINT INTERIM
COUNSEL AND MEMORANDUM IN SUPPORT OF CROSS-
MOTION TO APPOINT INTERIM COUNSEL
CASE NO 05-CV-1070 DOC (MLGx)

20

mediation sessions and, with the knowledge and agreement of the mediators, engaged in separate settlement discussions with each of the Defendants, including an in-person meeting with one of the Defendants.  (*Id.*; *see also* Caddell Decl. ¶¶ 48, 56.)  Indeed, with the exception of some briefing work by Mr. Wolf and Mr. Wolf and Mr. Juntikka's attendance at certain hearings and mediation sessions (at which Mr. Juntikka in particular was affirmatively unhelpful), *Hernandez* Counsel performed substantially all of the work required to develop the facts in this action and negotiate both settlements.  (Caddell Decl. ¶¶ 48–56.)  The first 23(g) factor—"the work done in identifying or investigating potential claims in the action"—thus also supports the appointment of *Hernandez* Counsel.  FED. R. CIV. P. 23 (g)(1)(A)(i).

### 4. *Hernandez* Counsel have committed substantial resources to litigate this case on behalf of the class.

As of December 2009, Lieff Cabraser and Caddell & Chapman had advanced $671,693.48 in expenses to prosecute these actions.  (Dkt. 577-3 at 11; Dkt. 577-4 at 18.)  This is in addition to the thousands of hours in attorney time and enormous opportunity cost of forgone work on other cases devoted by all *Hernandez* Counsel.  Without question, *Hernandez* Counsel have shown their commitment to this class.

*Hernandez* Counsel's actions in bringing Francis & Mailman and Public Justice on board to help represent the class also demonstrate their willingness to commit resources to achieve a good result for the class.  These new counsel add even more expertise in the fields of FCRA and consumer class action law and bring independent judgment to the litigation.  *Hernandez* Counsel further demonstrated their commitment by inviting Professor Charles Silver, a nationally recognized expert in class actions and professional responsibility, to consult regarding the best way to ensure that all *Hernandez* counsel are properly

RESPONSE TO MOTION TO APPOINT INTERIM COUNSEL AND MEMORANDUM IN SUPPORT OF CROSS-MOTION  TO APPOINT INTERIM COUNSEL CASE  NO  05-CV-1070 DOC (MLGx)

21

incentivized to work to achieve the best result for the class going forward.  (*See supra* Section I. & n.3; Declaration of Charles Silver, filed herewith, ¶¶ 6–10.) The fourth 23(g) factor—"the resources that counsel will commit to representing the class"—thus also supports the appointment of *Hernandez* Counsel.  FED. R. CIV. P. 23 (g)(1)(A)(iv).

### 5.   Appointment of *Hernandez* Counsel as interim class counsel is in the best interests of the class.

Finally, appointment of *Hernandez* Counsel is proper because *Hernandez* counsel have always acted with candor to the Court and in the best interests of the class and will continue to do so.  It is therefore disingenuous for *White* Counsel to accuse *Hernandez* Counsel of having "knowingly"—a word that never appears in the Ninth Circuit's opinion—undertaken conflicted representation.  (Dkt. 879 at 3.) Moreover, the Ninth Circuit panel, while making clear that they view any conditional language in incentive award provisions as inherently problematic, did not find that the incentive award provisions in this case actually influenced the Settling Plaintiffs, much less that the provisions resulted in approval of an unfair settlement, or that *Hernandez* Counsel was disqualified from future participation in the litigation.  Instead, the Court of Appeals explicitly recognized that there could be a "future settlement" (without the incentive award provision) in which *Hernandez* Counsel would be involved.  *See Radcliffe*, 715 F.3d at 1168 (directing that "[o]n remand, the district court should determine when the conflict arose and if the conflict continues under any future settlement agreement").

Confirming that the "serving in support of the Settlement" phrase was never intended to impose conditions on the right of Named Plaintiffs (as defined in the settlement) to have counsel apply for appropriate incentive awards, the parties included *exactly* the same language in the Injunctive Relief Fee Agreement, which also applied to the *White* Objectors.  (Dkt. 413-2 at 12–13 (emphasis added):

RESPONSE TO MOTION TO APPOINT INTERIM COUNSEL AND MEMORANDUM IN SUPPORT OF CROSS-MOTION TO APPOINT INTERIM COUNSEL CASE NO 05-CV-1070 DOC (MLGx)

22

"23(b)(2) Settlement Class Counsel shall file an application or applications to the Court for approval of an incentive award to each of the Named Plaintiffs serving as class representatives *in support* of the Injunctive Relief Settlement, and each such award not to exceed two thousand, five hundred dollars ($2,500.00)".) The *White* Objectors, along with all other plaintiffs, were identified as "Named Plaintiffs" in the Injunctive Relief Fee Agreement. (*Id.* at 8.)

At every stage, *Hernandez* Counsel has presented all relevant facts to the Court. Indeed, the incentive award provision, with its "serving in support of the Settlement" language, was filed with the class's motion for preliminary approval. (Dkt. 384 at 42); *cf. Rodriguez II,* 688 F.3d at 657–58 (noting that counsel failed to disclose the problematic contractual provisions regarding incentive awards at the class certification stage, violating counsel's duty of candor to the court) It was *Hernandez* Counsel's good faith belief that, where no improper influence was intended or actually occurred, this language did not create a conflict of interest—a conclusion with which this Court ultimately agreed.[10] (*See* Dkt. 837 at 35 (finding that "Settling Plaintiffs' request for service fees does not suffer from the tell-tale signs of conflict that have caused courts to reject such awards in the past").) To

---

[10] The record before this Court demonstrates that *Hernandez* Counsel never intended the incentive awards to be conditional and that no improper influence in fact occurred because the Settling Plaintiffs consistently supported the Monetary Relief Settlement since long before the incentive award provision—not inserted into the final agreement mid-April—was even drafted. (Sobol Decl. ¶ 25.) Three of the Settling Plaintiffs were present at the February 5, 2009 settlement conference resulting in the Settlement and first discussed the principal terms of the Settlement with their counsel on that date. (Dkt. 645-5; Dkt. 645-6; 645-7.) The remaining Settling Plaintiff, Jose Hernandez, discussed the principal terms of the Settlement with his counsel the very next day, on February 6, 2009. (Dkt. 645-8; Dkt. 645-9.) Indeed, all of the Settling Plaintiffs testified that they decided to support the Settlement, after discussing the terms with their counsel, regardless of any expectation of a service award. (Dkt. 645-5; Dkt. 645-6; 645-7; Dkt. 645-9.)

RESPONSE TO MOTION TO APPOINT INTERIM COUNSEL AND MEMORANDUM IN SUPPORT OF CROSS-MOTION TO APPOINT INTERIM COUNSEL CASE NO 05-CV-1070 DOC (MLGx)

23

equate this good faith belief with a "knowing" violation of ethical rules does not advance the purpose of protecting Class members from counsel who would intentionally place their own interest ahead of that of the class.

*White* Counsel are also incorrect in accusing *Hernandez* Counsel of "unequivocally advocating for the Defendants' side of the argument" in their briefing in support of the Monetary Relief Settlement.  (Dkt. 879 at 12.) Settlement approval requires a sober appraisal of the risks to the class from continued litigation.  *See Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1291 (9th Cir. 1992) (holding that in evaluating the fairness of a settlement, the Court should consider, among other factors, "the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation, the risk of maintaining class action status throughout the trial . . . .").  And *Hernandez* Counsel fulfilled that requirement, appreciating, without agreeing with, Defendants' arguments on liability and class certification and understanding the real risk of adverse rulings that could leave the class without any recovery.  (*See* Ex. 2, Settling Plaintiffs' Response Br. at 23–42.)  Putting each of the passages *White* Counsel cite in context reveals that *Hernandez* Counsel have consistently supported the class's legal position, while also taking seriously the opinions of courts who have reached contrary results.  For example, on the willfulness issue, *Hernandez* Counsel's appellate brief stated that, "While Settling Plaintiffs disagree with Defendants' view that *Safeco* will *necessarily* operate to preclude a finding of willfulness, *White* Objectors' belief that there was essentially *no* risk that Defendants' prior procedures would be found to be reasonable is untenable." (Brief of Plaintiffs-Appellees, Case No. 11-56376 et al., attached as Ex. 2, at 30.)

Contrary to *White* Counsel's representation, *Hernandez* Counsel did not "embrace" Defendants' position on class certification.  (Dkt. 879 at 13.) Especially in light of this Court's tentative order denying class certification, it

RESPONSE TO MOTION TO APPOINT INTERIM COUNSEL AND MEMORANDUM IN SUPPORT OF CROSS-MOTION TO APPOINT INTERIM COUNSEL CASE  NO  05-CV-1070 DOC (MLGx)

24

would be irresponsible for *Hernandez* Counsel to disdain any possibility that a class might not be certified.  (*See* Dkt. 369-2.)  Instead, *Hernandez* Counsel sensibly appreciated this Court's stated concerns regarding trying the claims of a class whose members might include persons whose credit reports were in fact accurate, or who actually benefitted from inaccurate reports.  (*See* Dkt. 369-2 at 8–9.)  There is nothing unusual about class counsel acknowledging litigation risk in moving for settlement approval.  Indeed, *White* Counsel's failure to appreciate this commonplace feature of the settlement approval process underscores both their lack of familiarity with class action practice and their unsuitability to make the careful risk-reward assessments that will be required of class counsel going forward.  On issues of judgment and candor, as on experience, knowledge, work performed, and resources committed, *Hernandez* Counsel are best suited to represent this class.

## IV.  CONCLUSION

For the reasons stated above, the Court should appoint *Hernandez* Counsel to represent the class.

RESPONSE TO MOTION TO APPOINT INTERIM
COUNSEL AND MEMORANDUM IN SUPPORT OF CROSS-
MOTION  TO APPOINT INTERIM COUNSEL
CASE  NO  05-CV-1070 DOC (MLGx)

25

Dated:  July 15, 2013

Respectfully submitted,

By:   /s/ Michael W. Sobol

Michael W. Sobol (SBN 194857)
LIEFF, CABRASER, HEIMANN &
BERNSTEIN, LLP
Embarcadero Center West
275 Battery Street, 29th Floor
San Francisco CA 94111-3339
Telephone:  (415) 956-1000
Facsimile:  (415) 956-1008

Michael A. Caddell (SBN 249469)
Cynthia B. Chapman (SBN 164471)
CADDELL & CHAPMAN
1331 Lamar St., Suite 1070
Houston TX 77010
Telephone:  (713) 751-0400
Facsimile:  (713) 751-0906

Stuart T. Rossman (BBO No. 430640)
(srossman@nclc.org)
Charles M. Delbaum (BBO No. 543225)
(cdelbaum@nclc.org)
NATIONAL CONSUMER LAW
CENTER
7 Winthrop Square, 4th Floor
Boston MA 02110
Telephone:  (617) 542-8010
Facsimile:  (617) 542-8028

RESPONSE TO MOTION TO APPOINT INTERIM
COUNSEL AND MEMORANDUM IN SUPPORT OF CROSS-
MOTION  TO APPOINT INTERIM COUNSEL
CASE  NO  05-CV-1070 DOC (MLGx)

26

Leonard A. Bennett (VSB No. 37523)
(lenbennett@cavtel.net)
Matthew Erausquin (VSB No. 65434)
(matt@clalegal.com)
CONSUMER LITIGATION
ASSOCIATES, P.C.
12515 Warwick Boulevard, Suite 201
Newport News VA 23606
Telephone:  (757) 930 3660
Facsimile:  (757) 930-3662

James A. Francis
Mark Mailman
John Soumilas
FRANCIS & MAILMAN
100 South Broad St., 19th Floor
Philadelphia PA 19110
Telephone:  (215) 735-8600
Facsimile:  (215) 940-8000

Arthur H. Bryant
F. Paul Bland
PUBLIC JUSTICE, P.C.
555 12th St., Suite 1230
Oakland CA 94607
Telephone: (510) 622-8150
Facsimile: (510) 622-8155

*Attorneys for Hernandez Plaintiffs*

Lee A. Sherman (SB No. 172198)
CALLAHAN, THOMPSON,
SHERMAN & CAUDILL
2601 Main St., Suite 800
Irvine CA 92614
Telephone: (714) 730-5700
Facsimile:  (714) 730-1642

*Attorneys for Acosta/Pike Plaintiffs*

RESPONSE TO MOTION TO APPOINT INTERIM
COUNSEL AND MEMORANDUM IN SUPPORT OF CROSS-
MOTION  TO APPOINT INTERIM COUNSEL
CASE  NO  05-CV-1070 DOC (MLGx)

27