BOIES, SCHILLER & FLEXNER LLP
George F. Carpinello
Adam R. Shaw
30 South Pearl Street
Albany, NY 12207
Telephone: 518.434.0600
Facsimile: 518.434.0665
Email:      gcarpinello@bsfllp.com
            ashaw@bsfllp.com
(admitted *pro hac vice*)

David L. Zifkin (SBN 232845)
401 Wilshire Blvd., Suite 850
Santa Monica, CA 90401
Telephone: 310.752.2400
Facsimile: 310.752.2490
Email:      dzifkin@bsfllp.com

CHARLES JUNTIKKA &
ASSOCIATES LLP
Charles Juntikka (admitted *pro hac vice*)
1250 Broadway, 24th Floor
New York, NY 10001
Telephone:  212.315.3755
Facsimile:  212.315.9032
Email:      charles@cjalaw.com

DANIEL WOLF LAW OFFICES
Daniel Wolf (admitted *pro hac vice*)
1220 N Street, NW, Suite PH 2
Washington, DC 20005
Telephone:  202.842.2170
Email:      dan@danielwolflaw.com

Attorneys for Plaintiffs Robert Radcliffe, Chester Carter, Maria Falcon, Clifton C. Seale, III, Arnold E. Lovell, and all others similarly situated.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TERRI N. WHITE, et al.,<br><br>    Plaintiffs,<br><br>  *v.*<br><br>EXPERIAN INFORMATION SOLUTIONS, INC., et al.,<br><br>    Defendants.<br><br>and Related actions. | CASE NO. SA 05-CV-1070 DOC (MLGx) (Lead Case)<br>Assigned to the Hon. David O. Carter<br><br>**COMBINED REPLY BRIEF OF *WHITE* PLAINTIFFS IN SUPPORT OF THEIR MOTION TO DISQUALIFY THE LIEFF / CADDELL TEAM AND IN SUPPORT OF THEIR MOTION FOR APPOINTMENT OF THE *WHITE* COUNSEL AS INTERIM COUNSEL AND IN RESPONSE TO THE LIEFF / CADDELL TEAM'S CROSS-MOTION TO BE APPOINTED INTERIM COUNSEL** |

# __TABLE OF CONTENTS__

Table of Authorities ..................................................................... iii

Preliminary Statement ................................................................. 1

Argument ....................................................................................... 2

I.     The Ninth Circuit Did Not Hold That The Lieff/Caddell Team May
       Represent The Class On Remand ..................................................... 2

II.    The Lieff/Caddell Team Is Disqualified From Further Participation In
       This Case Under Controlling California Law .................................. 5

       A.     The General Rule In Simultaneous Representation Cases Is
              Mandatory Disqualification ................................................. 5

       B.     The Circumstances Here Do Not Qualify For An Exception To
              The Mandatory Disqualification Rule ................................... 7

              1.     There Is No "Class Action" Exception To The Mandatory
                     Disqualification Rule ................................................. 7

              2.     *Rodriguez II* Does Not Hold That A Conflict Can Be
                     "Cured" So As To Avoid The Mandatory Disqualification
                     Rule ............................................................................. 9

              3.     There Is No "Association With Un-Conflicted Counsel"
                     Exception To The Mandatory Disqualification Rule .............. 11

III.   The Lieff/Caddell Team Is Unable To Satisfy Rule 23(G)'s Adequacy
       Of  Representation Requirement ................................................. 14

       A.     The Lieff/Caddell Team Has Demonstrated By Its Disloyal
              Conduct That It Cannot Be Trusted To Represent The Class ........... 14

       B.     The Lieff/Caddell Team's Continuing Conflict With The Class
              Disables It From Representing The Class ......................... 20

IV.    The Boies Team Is The One Best Able To Represent The Class ................ 23

A. The Boies Team Has Demonstrated It Has More Than Sufficient Experience To Represent The Class In This Matter ..........25

B. The Boies Team Has Been Principally Responsible For The Successes That Plaintiffs Have Attained So Far In This Litigation ........................................................................................27

C. The Boies Team Has Demonstrated Its Willingness To Commit All Of The Resources Necessary To Prosecute This Matter .............28

V. This Court Should Not Appoint New Counsel At This Stage Of The Action ....................................................................................29

VI. The Lieff/Caddell Team's Claim That The Boies Team Has Been Less Than Candid With This Court And The Ninth Circuit Is Utterly Baseless ........................................................................................30

Conclusion ..................................................................................32

## TABLE OF AUTHORITIES

### Cases

*Abubakar v. County of Solano,*
   2008 WL 336727 (E.D. Cal. Feb. 4, 2008) ........................................................7

*Apple Computers v. Superior Court,*
   126 Cal. App. 4th 1253 (2005) ..........................................................................13

*Beltran v. Avon Prods., Inc.,*
   867 F. Supp. 2d 1068 (C.D. Cal. 2012) ..............................................................6

*Birmingham Steel Corp. v. TVA,*
   353 F.3d 1331 (11th Cir. 2003) ..........................................................................23

*Byerson v. Equifax Information Services, LLC,*
   2009 WL 82497 (D.S.C. Jan. 9, 2009) ...............................................................18

*Cal Pak Delivery, Inc. v. United Parcel Service, Inc.,*
   60 Cal. Rptr. 2d 207 (Cal. Ct. App. 1997) .........................................................16

*Cole Asia Bus. Ctr., Inc. v. Manning,*
   2013 WL 2445194 (C.D. Cal. June 5, 2013) ........................................................5

*Creative Montessori Learning Center v. Ashford Gear,*
   662 F.3d 913 (7th Cir. 2011) ..............................................................................14

*Cullen v. New York State Civil Service Commission,*
   566 F.2d 846 (2d Cir. 1977) ...............................................................................29

*Culver v. City of Milwaukee,*
   277 F.3d 908 (7th Cir. 2002) ..............................................................................23

*Davis v. EMI Group Ltd.,*
   2013 WL 75781 (N.D. Cal. Jan. 4, 2013) .............................................................5

*Del Campo v. Mealing,*
   2011 WL 6176223 (N.D. Cal. Dec. 7, 2011) ...............................................passim

*Flatt v. Superior Court,*
   9 Cal. 4th 275, 36 Cal. Rptr. 2d 537 (1994) ........................................................6

*Fujitsu Ltd. v. Belkin Int'l, Inc.,*
   2010 WL 5387920 (N.D. Cal. Dec. 22, 2010) ......................................................5

*Hetos Invs., Ltd. v. Kurtin,*
   110 Cal. App. 4th 36, 1 Cal. Rptr. 3d 472 (2003) ...........................................6, 25

*In re California Micro Devices Security Litig.,*
   1995 WL 476625 (N.D. Cal. Aug. 4, 1995) ........................................................18

*In re California Micro Devices Security Litig.,*
   168 F.R.D. 257 (N.D. Cal. 1996) ........................................................................18

*In re County of Los Angeles*,
    223 F.3d 990 (9th Cir. 2000).................................................................5, 6

*In Re Sullivan and Lodge*,
    2002 WL 113864 (Bankr. N.D. Cal. Jan. 14, 2002) .........................................18

*Jaroslawicz v. Safety Kleen Corp.*,
    151 F.R.D. 324 (N.D. Ill. 1993)................................................................13

*Kahree v. Western Electric Co.*,
    82 F.R.D 196 (D.N.J. 1979)....................................................................29

*Kayes v. Pacific Lumber Co.*,
    51 F.3d 1449 (9th Cir. 1995)................................................................9, 15

*Krzyzanowski v. Orkin Exterminating Co.*,
    2009 WL 4050674 (N.D. Cal. Nov. 20, 2009) ..................................................6

*Lane v. Wells Fargo Bank, N.A.*,
    2013 WL 3187410 (N.D. Cal. June 21, 2013)............................................29, 30

*Lazy Oil Co. v. Witco Corp.*,
    166 F.3d 581 (3d Cir. 1999)....................................................................8

*Lebeau v. United States*,
    222 F.R.D. 613 (D.S.D. 2004) ................................................................29

*Linney v. Cellular Alaska Partnership*,
    151 F.3d 1234 (9th Cir. 1998)............................................................11, 12

*Moreno v. Autozone, Inc.*,
    2007 WL 4287517 (N.D. Cal. Dec. 6, 2007) ..................................................8

*Novelty Textile, Inc. v. Windsor Fashions, Inc.*,
    2013 WL 1164065 (C.D. Cal. Mar. 20, 2013)..................................................5

*Price v. TransUnion LLC*,
    847 F. Supp. 2d, 788 (E.D. Pa. 2012) .........................................................19

*Radcliffe v. Experian Info. Solutions*,
    715 F.3d 1157 (9th Cir. 2013)..........................................................passim

*Ramirez v. TransUnion, LLC*,
    2013 WL 1164921 (N.D. Cal. Mar. 20, 2013)..................................................5

*Rodriguez v. Disner*,
    688 F.3d 645 (9th Cir. 2012).............................................................passim

*Rodriguez v. West Publ'g Corp.*,
    2010 WL 682096 (N.D. Cal. Feb. 3, 2010) ....................................................10

*Rodriguez v. West Publishing Co.*,
    563 F.3d 948 (9th Cir. 2009)..............................................................3, 15

*Roosevelt Irrigation District v. Salt River Project Agricultural Improvement and Power District,*
810 F. Supp. 2d 929 (D. Ariz. 2011).....................................................................6

*Santiago v. Kia Motors, Inc.,*
2007 WL 1723951 (Cal. App. No. 4 Dist. Jun. 15, 2007) .................................18

*Sipper v. Capital One Bank,*
2002 WL 398769 (C.D. Cal. Feb. 28, 2002).......................................................9

*Sullivan v. Chase Inv. Services of Boston, Inc.,*
79 F.R.D. 246 (N.D. Cal. 1978) ..........................................................................9

*Susman v. Lincoln American Corp.,*
561 F.2d 86 (7th Cir. 1977)................................................................................13

*TransPerfect Global, Inc. v. MotionPoint Corp.,*
2012 WL 2343908 (N.D. Cal. June 20, 2012) ....................................................5

*United States v. Ramos-Medina,*
706 F.3d 932 (9th Cir. 2013)................................................................................6

## **Rules**

California Ethics Rule 3-310(C)....................................................................passim

Rule 23(a)(4).....................................................................................................12

Rule 23(f).........................................................................................................25

Rule 23(g) ........................................................................................14, 15, 20, 23

### **PRELIMINARY STATEMENT**

In light of the Ninth Circuit's finding that the Lieff/Caddell Team has committed a violation of the California Rules of Professional Conduct, two issues remain: (1) Does California law mandate the disqualification of the Lieff/Caddell Team; and (2) Is the Lieff/Caddell Team or the Boies Team the "best available" counsel to represent the class under Rule 23(g)?

California law is clear: disqualification is "automatic" when counsel violates California Ethics Rule 3-310(C) as the Lieff/Caddell Team has done here. But even if disqualification were not automatic, the Lieff/Caddell Team's breach of its duty of loyalty to absent class members disqualifies it as the "best available" counsel. As Professor Rubenstein explains, it would be completely unprecedented to appoint attorneys as class counsel after they have been found to have breached their duty of loyalty to the class. The Boies Team has committed no violation; its position with regard to the validity of the incentive clause has been unanimously vindicated by the Ninth Circuit, and the Boies Team has the capability and resources to represent the class going forward.

Equally important, the *White* Plaintiffs, unlike the *Hernandez* Plaintiffs, have never been ruled inadequate and have not been found to be conflicted by an improper and unethical incentive award. Indeed, just the opposite: the *White* Plaintiffs vociferously and consistently rejected the Lieff/Caddell Team's attempt to monetarily induce them to approve what the *White* Plaintiffs believe is an inadequate settlement. The Lieff/Caddell Team implicitly recognizes this fact because it is trolling for new clients, as if attorneys pick the clients, and not the other way around.

The Lieff/Caddell Team's attempt to join new, purportedly "well-qualified, newly-appearing and completely independent counsel," is just as futile as its attempt to add new plaintiffs. That is because there is no case law even

1  suggesting that adding new counsel to a team of attorneys purges them of their
2  ethical violations.  In addition, these counsel have no clients, they were chosen by
3  the Lieff/Caddell Team, they have strong economic ties to the Lieff/Caddell
4  Team, and their retainer agreement gives them a strong economic incentive to
5  settle this case quickly and cheaply.

6      In sum, the Lieff/Caddell Team's efforts to cleanse itself of its prior
7  disloyalty, and the appearance of disloyalty, to the class cannot be purged.  If this
8  Court were to hold that the Lieff/Caddell Team can act as class counsel, after an
9  express finding of a violation of the California Ethics Rule 3-310(C), it would be
10 the first court to do so.  Further, if this Court were to find that the Lieff/Caddell
11 Team is the "best available" counsel under Rule 23(g) after having been found to
12 violate a clear ethics rule, it would be the first court to do so.  In other words,
13 what the Lieff/Caddell Team asks this Court to do is entirely unprecedented.

14
15                          **ARGUMENT**

16 **I.  The Ninth Circuit Did Not Hold That the Lieff/Caddell Team May**
17 **     Represent the Class on Remand.**

18     The Lieff/Caddell Team maintains (Opposition to Motion to Disqualify,
19 Dkt. 884 (hereinafter "Dkt. 884") at 1) that the Ninth Circuit has "already
20 rejected *White* Counsel's argument that the conflict identified here warrants
21 disqualification."  That is not accurate.  The issue of whether the Lieff/Caddell
22 Team should be disqualified was not before the Ninth Circuit and, not
23 surprisingly, the Ninth Circuit said nothing about whether disqualification was
24 warranted or even mentioned that word.

25     Indeed, prior to their appeal, the *White* Plaintiffs had never filed a motion
26 seeking the Lieff/Caddell Team's disqualification and, hence, the issue whether
27 that Team should be disqualified either from any participation in the cases or

28

from representing the class on remand was never before this Court.  Accordingly, that issue was not raised – and could not have been raised – by the *White* Plaintiffs on appeal.

The Lieff/Caddell Team is correct (*see* Dkt. 884 at 4) that at one point in their appellate brief, the *White* Plaintiffs cited case law for the proposition that violation of the ethical proscription against simultaneous representation is grounds for "'*per se* or automatic' disqualification."  But the mere mention of that rule was hardly sufficient to put the issue of disqualification – an issue that no one briefed – before the Ninth Circuit.  The rule was cited to demonstrate the seriousness of the Lieff/Caddell Team's actions, not to move for disqualification.  Therefore, the decision not to address that issue cannot constitutes an implicit holding that the Lieff/Caddell Team's disqualification is unwarranted.

In an effort to persuade this Court to adopt that strained reading, the Lieff/Caddell Team relies on a single sentence in the Ninth Circuit's opinion in which it stated that, on remand, this Court should determine "if the conflict continues under any future settlement agreement."  Dkt. 884 at 11.  But in no sense does that sentence restrain this Court from disqualifying the Lieff/Caddell Team on the basis of either its prior ethical transgressions or any continuing conflicts those transgressions have spawned.

This is apparent from the context in which the Ninth Circuit's direction to determine "if the conflict continues" was made.  Far from speaking to the ability of the Lieff/Caddell Team to continue participating on remand – either as class counsel or otherwise – the Ninth Circuit's comments demonstrate that its sole purpose was to give this Court guidance on how to address the issue of *attorneys' fees* in the event of any future settlement, presumably submitted by unconflicted class counsel as in *Rodriguez*.  *Rodriguez v. West Publishing Co.*, 563 F.3d 948 (9th Cir. 2009) ("*Rodriguez I*"); *Rodriguez v. Disner*, 688 F.3d 645

1   (9th Cir. 2012) ("*Rodriguez II*").  Specifically, the Ninth Circuit instructed that,

2   depending on its determination of "when the conflict arose and if the conflict

3   continues," this Court "may then exercise its discretion in deciding whether, and

4   to what extent, class counsel are entitled to fees under the common-fund

5   doctrine." *Radcliffe v. Experian Info. Solutions*, 715 F.3d 1157, 1168 (9th Cir.

6   2013).

7        The Ninth Circuit could not have been talking about disqualification

8   because that issue is entirely separate from the issue of fees and is governed by

9   different law.  As the Ninth Circuit held in *Rodriguez II*, federal courts in

10   federally-based actions apply federal law and vest discretion in the trial court to

11   determine whether fees should be awarded when an ethical violation occurs.  688

12   F.3d at 657.  Disqualification, however, is governed entirely by California law

13   and, as shown below, that law is clear and mandates disqualification.  The Ninth

14   Circuit here clearly did not address that issue.

15        The Lieff/Caddell Team's view that the Ninth Circuit's decision

16   constitutes a holding that disqualification is unwarranted in this case would be

17   news to Judge Haddon.  In his concurring opinion, he expressed the view (1) that

18   the Lieff/Caddell Team "orchestrat[ed] and advocat[ed] the disparate incentive

19   award scenario without any concern for, or even recognition of, the obvious

20   conflicts" (*Radcliffe*, 715 F.3d at 1169); (2) that the Lieff/Caddell Team "[was]

21   singularly committed to doing whatever was expedient to hold together an offer

22   of settlement that might yield, as it did, an allowance of over $16 million in

23   lawyers' fees" (*id.*); and (3) that they "should be disqualified from participation

24   in any fee award ultimately approved by the district court upon resolution of the

25   case on the merits" (*id.*).  Given those views, Judge Haddon would not have

26   joined an opinion (as he did) that could be construed to hold that the

27   Lieff/Caddell Team could march back into this Court and be reappointed class

28

counsel.

## II. The Lieff/Caddell Team Is Disqualified From Further Participation In This Case Under Controlling California Law.

### A.    The General Rule In Simultaneous Representation Cases Is Mandatory Disqualification.

As pointed out in the *White* Plaintiffs' moving brief, controlling California decisions hold that the consequence of the Lieff/Caddell Team's violation of the ethical proscription against simultaneous representation is automatic disqualification.  Dkt. 876 at 8-9.

Unable to elude those precedents, the Lieff/Caddell Team seeks to conflate the *White* Plaintiffs' disqualification argument under California law with its inadequate representation argument under Rule 23 of the Federal Rules of Civil Procedure – pretending that both arguments are governed by the same set of principles and legal authorities.  They are not.

As explained in our opening brief (Dkt. 876 at 8), the *White* Plaintiffs' disqualification argument – as opposed to their adequacy of representation argument – is governed solely by California law.   That California courts exclusively "apply [California] law in determining matters of disqualification" was definitively settled by the Ninth Circuit in *In re County of Los Angeles*, 223 F.3d 990, 995 (9th Cir. 2000) – a decision followed by the federal district courts in over two dozen cases, including numerous cases involving violation of the rule against simultaneous representation.[1]

_____

[1]   Several of these cases were cited in the White Plaintiffs' opening brief.  *See Ramirez v. TransUnion, LLC*, 2013 WL 1164921, at *2 (N.D. Cal. Mar. 20, 2013) (applying several California rules); *Davis v. EMI Group Ltd.*, 2013 WL 75781, at *2 (N.D. Cal. Jan. 4, 2013) (applying Rule 3-310(E)); *TransPerfect Global, Inc. v. MotionPoint Corp.*, 2012 WL 2343908, at *5 (N.D. Cal. June 20, 2012) (applying Rule 3-310(C)); *Del Campo v. Mealing*, 2011 WL 6176223, at *2 (N.D. Cal. Dec. 7, 2011) (applying Rule 3-310(C)); *Fujitsu Ltd. v. Belkin Int'l, Inc.*, 2010 WL 5387920, at *4 (N.D. Cal. Dec. 22, 2010) (applying Rule 3-310(C)). *See also Cole Asia Bus. Ctr., Inc. v. Manning*, 2013 WL 2445194, at *2 (C.D. Cal. June 5, 2013) (applying Rule 3-310(E)); *Novelty Textile, Inc. v. Windsor*

The Lieff/Caddell Team does not seriously contest that California law applies.[2]  It argues, however, that it can remain in this case notwithstanding its violation of Rule 3-310(C) because (1) the issue whether to disqualify counsel who have done so is committed to the discretion of the trial court, and (2) given "the specific circumstances of this case," it would be an "abuse" of that discretion to disqualify the Lieff/Caddell Team here.  Dkt. 884 at 2.  In other words, according to the Lieff/Caddell Team, the disqualification determination in simultaneous representation cases is not made through "mechanical application of some '*per se*' rule."  *Id.*  That contention cannot be reconciled with the California Supreme Court's decision in *Flatt v. Superior Court*, 9 Cal. 4th 275, 284, 36 Cal. Rptr. 2d 537, 542 (1994), which holds that "the rule of disqualification in simultaneous representation cases is a *per se* or 'automatic' one."  It should, therefore, come as no surprise that none of the cases the Lieff/Caddell Team cites for the proposition that the decision whether to disqualify is within the discretion of the district court involve circumstances in which counsel were found to have violated California's prohibition on dual representation of clients with adverse interests.  Rather, the post-*Flatt* decisional

---

*Fashions, Inc.*, 2013 WL 1164065, at *2 (C.D. Cal. Mar. 20, 2013) (applying Rule 3-310(E)); *Beltran v. Avon Prods., Inc.*, 867 F. Supp. 2d 1068, 1076 (C.D. Cal. 2012) (applying Rule 3-310(E)); *Roosevelt Irrigation District v. Salt River Project Agricultural Improvement and Power District*, 810 F. Supp. 2d 929, 944 (D. Ariz. 2011) (applying Arizona ethical rules).

[2]  Though never disputing that California law applies, the Lieff/Caddell Team cites (Dkt. 884 at 6) *Rodriguez II* in a footnote for the proposition that federal law applies to the "decision whether to sanction or impose other discipline."  688 F.3d at 656, n.7.  But nowhere in that case did the Ninth Circuit suggest a departure from the rule that state law applies to disqualification, which, after all, is a "prophylactic," rather than a "punitive," measure.  *Hetos Invs., Ltd. v. Kurtin*, 110 Cal. App. 4th 36, 48, 1 Cal. Rptr. 3d 472, 480 (2003); *see also Krzyzanowski v. Orkin Exterminating Co.*, 2009 WL 4050674, at *10 (N.D. Cal. Nov. 20, 2009); ("The purpose of disqualification is not to punish a transgression of professional ethics.") (citation and internal quotation marks omitted).  Nor can *Rodriguez II* be construed as "overrul[ing] or revis[ing] the binding precedent established by" the panel's "published opinion" in *County of Los Angeles, United States v. Ramos-Medina*, 706 F.3d 932, 939 (9th Cir. 2013) (internal quotation marks and citation omitted), which, as noted above in note 1, is still controlling law in this Circuit.

law involving a violation of that prohibition uniformly applies the automatic or *per se* disqualification rule and, hence, the only way for the Lieff/Caddell Team to avoid disqualification here is to establish that they qualify for an exception.

## B.   The Circumstances Here Do Not Qualify for an Exception to the Mandatory Disqualification Rule.

Contrary to the Lieff/Caddell Team's suggestion that exceptions to the mandatory disqualification rule are aplenty, there are only two:  (1) when an unforeseen conflict occurs by "mere happenstance" and counsel "immediately withdraws," and, (2) when counsel "play[s] no role in creating the conflict of interest such as when a corporate client is acquired by another company." *Abubakar v. County of Solano*, 2008 WL 336727, at *14-15 (E.D. Cal. Feb. 4, 2008).   Neither exception applies here, and the Lieff/Caddell Team does not argue otherwise.

Moreover,  the narrowness of these exceptions underscore the breadth and simplicity of the general rule:  we have been unable to find a single case in which any California court – state or federal – ever applied either exception.  *That is, in every case in which disqualification has been sought, a finding that counsel violated California's simultaneous representation rule has resulted in automatic disqualification.*   Were this Court to deny the *White* Plaintiffs' motion to disqualify and, thereby, permit the Lieff/Caddell Team to remain in this case despite the Team's admitted violation of that rule, it will mark the first time that has ever happened.

### 1.  There is no "class action" exception to the mandatory disqualification rule.

The Lieff/Caddell Team argues that California's mandatory disqualification rule does not apply in the class context and that the Court must instead apply a "balancing process."  Dkt. 884 at 7.  The *White* Plaintiffs addressed this argument

1    in their opening brief which explains that the law is exactly the opposite.  Dkt.

2    876 at 11.  *Del Campo v. Mealing*, 2011 WL 6176223, at *2 (N.D. Cal. Dec. 7,

3    2011); *Moreno v. Autozone, Inc.*, 2007 WL 4287517, at *16 (N.D. Cal. Dec. 6,

4    2007).[3]

5         The issue in all of the cases the Lieff/Caddell Team cites – including *Lazy*

6    *Oil Co. v. Witco Corp.*, 166 F.3d 581 (3d Cir. 1999), *In re "Agent Orange"*

7    *Products Liability Litigation*, 800 F.2d 14 (2d Cir. 1986) and this Court's final

8    approval decision – was not whether class counsel should have been disqualified

9    for having violated the ethical rules against representation of clients with adverse

10   interests, but whether it had violated the rules *in the first place*.  Specifically, in

11   each case, the issue was limited to whether class counsel, whose named plaintiff

12   clients objected to a class settlement that counsel supported, could continue to

13   represent the class without violating the conflict of interest rules.  And in each

14   case, the court properly concluded that the resolution of that issue requires a

15   "balancing" of the competing interests at stake.

16        As Professor Rubenstein explains, the situation here is entirely different.

17   Declaration of William B. Rubenstein, sworn to August 1, 2013 ("Rubenstein

18   Decl.") at ¶ 22.  This is not a case in which "balancing" is necessary to determine

19   whether the Lieff/Caddell Team acted loyally in navigating its way around a type

20   of conflict that arose outside its control and that is intrinsic to the class action

21   setting.   Rather, this is a case in which the Ninth Circuit held that the

22   Lieff/Caddell Team was solely responsible for creating a disabling conflict

23   between itself and the class.  The Ninth Circuit thus definitively resolved the

24   _____

25   [3]  The Lieff/Caddell Team points out (Dkt. 884 at 18) that the bases on which the
     courts found a violation of the simultaneous representation rule in *Del Campo* and
26   *Moreno* were different from the basis on which the Ninth Circuit found a
     violation here.  True, but irrelevant.  In both cases, the court applied California's
27   automatic disqualification rule, not an amorphous "balancing approach," to
     disqualify class counsel who had violated that prohibition.
28

1   issue whether the Lieff/Caddell Team had violated California's ethical rules

2   against it, and the sole remaining issue is whether the Lieff/Caddell Team should

3   be disqualified as a result.  The Lieff/Caddell Team has not cited – and cannot

4   cite – a single case in which a court has ever applied a "balancing approach" in

5   these circumstances.[4]

6        And for good reason.   Violation of the rules against simultaneous

7   representation is a very serious matter.  *Rodriguez II* called it "a *particularly*

8   *egregious* ethical violation."  688 F.3d at 645, 655 (9th Cir. 2012).  And, in this

9   very case, the Ninth Circuit regarded that violation as so serious as to constitute

10  an independent basis for vacating a four-year-old class settlement, pursuant to

11  which over 750,000 individuals had filed claims and $7 million had been spent

12  on notice and administrative costs.

13       As set forth in *White* Plaintiffs' opening brief (Dkt. 876 at 12-13), the

14  courts – including two panels of the Ninth Circuit, the California Court of

15  Appeals and three California federal district courts – have uniformly held that

16  class counsel are more, rather than less, likely to face disqualification owing to a

17  "heightened" ethical standard in the class context that will "not permit even the

18  appearance of divided loyalties."  *E.g.*, *Kayes v. Pacific Lumber Co*, 51 F.3d

19  1449, 1465 (9th Cir. 1995); *Sipper v. Capital One Bank*, 2002 WL 398769, at *3,

20  n. 5 (C.D. Cal. Feb. 28, 2002); *Sullivan v. Chase Inv. Services of Boston, Inc*. 79

21  F.R.D. 246, 258 (N.D. Cal. 1978).  That same automatic rule applies here and

22  compels the disqualification of the Lieff/Caddell Team from further

23  participation.

24       **2.  *Rodriguez II* does not hold that a conflict can be "cured" so
              as to avoid the mandatory disqualification rule.**

25

26

---

27  [4]  *See Del Campo*, 2011 WL 6176223, at *2 ("*Agent Orange* has never been
28  relied on by California courts to contravene California's automatic disqualification rule in simultaneous representation cases.").

1    The Lieff/Caddell Team's argument (Dkt. 884 at 9-11) is based entirely
2    on its interpretation of the Ninth Circuit's holding in *Rodriguez II* – ironically the
3    same opinion which, in the class action context, characterizes the simultaneous
4    representation of clients with conflicting interests as a "particularly egregious
5    ethical violation."  688 F.3d at 655.  Disregarding that aspect of the opinion, the
6    Lieff/Caddell Team argues (Dkt. 884 at 2) that *Rodriguez II* "compels the
7    conclusion" that it can "continue to represent the class."  Nothing in *Rodriguez II*
8    supports that position.

9    The issue of whether counsel's simultaneous representation of clients with
10   adverse interests disqualified those counsel under California or any other body of
11   law was never before the Ninth Circuit in *Rodriguez II*.  Indeed, contrary to the
12   Lieff/Caddell Team's representation, no one had ever filed any motion seeking to
13   disqualify conflicted counsel ("McGuireWoods") from participating in that case.
14   *Rodriguez II*, 688 F.3d at 649 (discussing fees, not disqualification).  Rather, the
15   issue – both in the District Court and on appeal – was solely whether
16   McGuireWoods's violation of the simultaneous representation rule barred them
17   from receiving attorneys' fees and, if so, to what extent.  Ironically, both the
18   District Court  opinion (*Rodriguez v. West Publ'g Corp.*, 2010 WL 682096, at *3
19   (N.D. Cal. Feb. 3, 2010) and the Ninth Circuit's opinion are devoted to
20   explaining why the offending incentive award provision would justify denying
21   counsel all fees.  In a footnote at the end of the opinion, the Ninth Circuit
22   affirmed the District Court's grant of a relatively small quantum meruit award
23   (about one-half of what counsel requested) to MaguireWoods for work after the
24   conflict was "cured."  *Rodriguez II*, 688 F.3d at 660, n.12.

25   That footnote was consistent with the reasoning of the major holding of
26   the decision, *i.e.*, that *federal* antitrust law governed fees and vested the trial
27   court with discretion to grant or deny fees – even *during* a conflict.  *Id*. at 658.

28

But nothing in the Ninth Circuit's opinion even suggests that the offending counsel would not have been subject to disqualification under *state* law if a motion had been made, and nothing in that opinion suggests that, despite their serious ethical violation, offending counsel would remain *as class counsel*. Indeed, the opposite conclusion is compelled by *Rodriguez I* and *II*, because, without unconflicted class counsel, the Court would have thrown out the settlement entirely – as it did here.

Moreover, as Professor Rubenstein explains, the issue before the court in *Rodriguez* was not, as here, the appointment of conflicted attorneys as class counsel.   Rubenstein Decl. at ¶ 28.   Indeed, it was clear that the court in *Rodriguez II* would never countenance such an appointment given the clear ethical violation and the fact that the District Court could, in its discretion, deny such counsel of *all* fees.

In short, the standards (and governing law) for granting attorneys' fees and for disqualification are not the same.   Though a district court has discretion to grant attorneys' fees, even for services rendered during the period in which counsel are actively violating the prohibition against simultaneous representation, it has no discretion in deciding whether counsel who have violated that prohibition should be disqualified.   As *Flatt* and its progeny make clear, disqualification in such circumstances is mandatory.

### 3. There is no "association with un-conflicted counsel" exception to the mandatory disqualification rule.

Citing the Ninth Circuit's decision in *Linney v. Cellular Alaska Partnership*, 151 F.3d 1234 (9th Cir. 1998), the Lieff/Caddell Team suggests (Dkt. 884 at 3, 16) that its association with two "newly appearing" and purportedly "completely independent" firms – Public Justice, P.C. ("Public Justice") and Francis & Mailman, P.C. ("Francis") – insulates the Lieff/Caddell Team from application of California's mandatory disqualification rule.   Neither

1    *Linney* nor any other case supports that proposition.  In fact, applying *Linney*

2    here requires the appointment of the Boies Team as class counsel.

3        In *Linney*, the district court initially rejected a class settlement on

4    inadequate representation grounds, finding that a side-agreement under which the

5    defendant would have hired class counsel ("Carcione and Tanke") to monitor

6    that settlement in the event of its approval "raised a strong inference of conflict

7    of interest."  151 F.3d at 1238.  Following its disapproval decision, the district

8    court approved a new class settlement that had been negotiated by counsel for the

9    objectors (ironically, "Lieff Cabraser"), who had *replaced* (not joined with)

10   Carcione and Tanke as class counsel.

11       On appeal, objectors argued that Lieff Cabraser's consultations with

12   Carcione and Tanke, who had remained in the case only as counsel for their

13   individual clients, rendered Lieff Cabraser inadequate to represent the class. The

14   Ninth Circuit rejected that argument, holding that there was no "*per se* rule"

15   requiring a court to declare class counsel incapable of meeting Rule 23(a)(4)'s

16   adequacy of representation requirement merely by virtue of an association with

17   "previous class counsel, whose conflict of interest led the district court

18   previously to deny class certification." *Id*. at 1239.  But neither the district court

19   nor the Court of Appeals held that Carcione and Tanke could resume their roles

20   as class counsel despite their conflict.  *See* Rubenstein Decl. at ¶ 28.  Lieff

21   Cabraser's brief on appeal in *Linney* made exactly this point.  *See* excerpts of

22   Lieff Cabraser's appeal brief attached hereto as Appendix A.

23       Nor did *Linney* address disqualification under California law; nor did it

24   hold that disqualification could be avoided by associating with new counsel.  The

25   law is directly to the contrary.  In *Del Campo v. Mealing*, 2011 WL 6176223

26   (N.D. Cal. Dec. 7, 2011), the court emphatically rejected an attempt to rely on

27   *Linney* (where there was no disqualification motion) to avoid the effect of

28

California's mandatory disqualification rule as "misguided." *Id.* at *11. As the *Del Campo* court explained, *Linney* has not and cannot be construed as standing

> for the proposition that the addition of non-conflicted [class] counsel can "cure" a conflict of interest where previous [class] counsel continue to be involved in the case, despite the California Supreme Court's statement that an "automatic" disqualification rule applies in [simultaneous representation cases].

*Id.* at * 11-12. In other words, the recruitment of Public Justice and Francis has no bearing on whether the Lieff/Caddell Team must be disqualified here.

In any event, the Lieff/Caddell Team's new counsel is not "completely independent." As is more fully set forth in the Declaration of George F. Carpinello, dated August 1, 2013 ("Carpinello Decl.") at ¶¶ 8-16 and exhibits thereto, the numerous economic ties between the Lieff/Caddell Team and both Public Justice and Francis – including substantial monetary contributions and *cy pres* awards to Public Justice (in excess of $1.5 million) and lucrative co-counsel arrangements – create, at the very least, the appearance that neither of these new counsel is truly "independent." Given the substantial income that both Public Justice and Francis have derived – and must anticipate continuing to deprive – from these co-counseling and *cy pres* relationships, it is difficult to believe that either of these firms would be willing to oppose the Lieff/Caddell Team in the event a conflict were again to arise between that Team's financial interests and those of the class. *See* Point III.B. *infra*.[5] Significantly, neither Professor Silver nor the Lieff/Caddell Team advised the Court of these long-standing economic

---

[5] *See, e.g.*, *Apple Computers v. Superior Court*, 126 Cal. App. 4th 1253, 1275-76 (2005) (holding that named plaintiff, who was an attorney in a firm that served as co-counsel with putative class counsel in many cases, stood to "benefit from attorney fees recovered" in those cases and, hence, could not be trusted to exercise the independence required to serve as class representative); *Susman v. Lincoln American Corp.*, 561 F.2d 86, 95 (7th Cir. 1977) (finding a conflict of interest between on of the named plaintiffs and class counsel where he rented office space from counsel's law firm); *Jaroslawicz v. Safety Kleen Corp.*, 151 F.R.D. 324, 329-30 (N.D. Ill. 1993).

1    ties.

2           Finally, the fee agreement between the Lieff/Caddell Team and the new

3    counsel itself creates a whole new set of issues.  As Professor Rubenstein (at ¶

4    32) explains, the retainer agreement is, at the very least, confusing and creates a

5    significant economic incentive to Public Justice to settle this case as quickly as

6    possible.  Contrary to Professor Silver's claims, the fee agreement with new

7    counsel rewards that counsel handsomely, but there is nothing there to

8    "incentivize" them to act independently from the Lieff/Caddell Team.  Indeed, if

9    this Court were to select the Lieff/Caddell Team, can it seriously be argued that

10   Public Justice (guaranteed 2½ times lodestar up to 8% of the fees) would insist

11   on going to trial if it did not like the settlement being pushed by the rest of the

12   Lieff/Caddell Team?

### III. The Lieff/Caddell Team Is Unable to Satisfy Rule 23(g)'s Adequacy of Representation Requirement.

#### A.    The Lieff/Caddell Team Has Demonstrated By Its Disloyal Conduct That It Cannot Be Trusted to Represent the Class.

17          The Court need not address whether the Lieff/Caddell Team can meet the

18   standard of Rule 23(g) because it is clear that the Lieff/Caddell Team must be

19   disqualified.  But should the Court address this issue, it should conclude that the

20   Lieff/Caddell Team cannot make a showing that it is the "best available" counsel

21   to represent the class under Rule 23(g).

22          In their opening brief (Dkt. 876 at 13-15), *White* Plaintiffs explained that

23   where, as here, counsel have committed a "serious" breach of their fiduciary

24   duties to the very class they seek to represent, a court "can have no confidence

25   that they will" honor their responsibility to "act as conscientious fiduciaries of

26   the class" in the future.  *Creative Montessori Learning Center v. Ashford Gear,*

27   662 F.3d 913, 918 (7th Cir. 2011).  The Lieff/Caddell Team's argument that it

28

1    can be counted on to give the class its undivided loyalty is belied by the last four

2    years in which it did just the opposite and its continued insistence that it did

3    nothing wrong.

4         That the Lieff/Caddell Team even felt the need to go out and recruit two

5    additional firms to bolster that already-bloated Team is revealing.  After all, why

6    would the Lieff/Caddell Team need two new law firms now, after it considered

7    itself sufficiently competent to settle the litigation?  That action, which was

8    obviously taken for no other reason than the Lieff/Caddell Team's concern that it

9    would otherwise be found inadequate on the basis of its having breached its

10   fiduciary duties to the class, is an implicit acknowledgement that that Team's

11   presence in this case creates at least an "appearance of divided loyalties."  *Kayes*

12   *v. Pacific Lumber Co.*, 51 F.3d 1449, 1465 (9th Cir. 1995).  And, inasmuch as

13   the Ninth Circuit has held that the adequacy of representation requirement does

14   not leave room for that kind of appearance, its existence – standing alone – is

15   sufficient reason to find that the Lieff/Caddell Team cannot remain class counsel.

16   *Id.*; *see also Rodriguez I*, 563 F.3d at 968.  As Professor Rubenstein concludes, it

17   would be "unprecedented" to appoint the Lieff/Caddell Team as class counsel

18   given the Ninth Circuit's decision in this case.  Rubenstein Decl. at ¶ 4, 5, 25, 26,

19   33-36.

20        There is very good reason why this is so.  Where, as here, counsel have

21   engaged in conduct disloyal to the class they seek to represent or that at least

22   raises serious questions about their loyalty, a cloud will hang over not only them,

23   but the proceedings as a whole for their duration.  Rubenstein Decl. at ¶ 35.

24   Given recent history, no one – not the class, not the Defendants, not the

25   Lieff/Caddell Team itself – can litigate this case with any real confidence that, at

26   the end of the day, another Ninth Circuit panel will not find that the

27   Lieff/Caddell Team does not meet Rule 23(g)'s adequacy of representation

28

standard and that all of the time and resources that everyone devoted to settlement or trial will have all been for naught.  *See Cal Pak Delivery, Inc. v. United Parcel Service, Inc.,* 60 Cal. Rptr. 2d 207, 214 (Cal. Ct. App. 1997). Indeed, because adequacy of counsel is a constitutional issue, such a settlement could be subject to collateral attack in other circuits.  Rubenstein Decl. at ¶¶ 21, 35.  Given this undisputed reality, if the Lieff/Caddell Team's loyalties truly lay with the class, it would realize that it has no choice but to step aside.  But since that is not the case, the responsibility lies with this Court to make that decision for it.

Despite the cloud it would be operating under, the Lieff/Caddell Team argues that it can meet the adequacy of representation requirement because (1) it never intended to act disloyally, (2) the disloyal conduct did not prejudice the class, and (3) the "expertise and experience" it has developed over the past eight years of this litigation should trump any concerns about its loyalty to the class. These assertions are no more persuasive than they are sound.

First, the Lieff/Caddell Team's contention (Dkt. 884 at 9, 13) that it "never intended" to condition incentive awards on its clients' approval of the Settlement and that it acted in "good faith" is belied by the record and the Ninth Circuit's opinion.[6]  As set forth in that opinion, the Lieff/Caddell Team could not possibly

---

[6]  The Lieff/Caddell Team points to the Injunctive Relief Fee Settlement, which contained the same conditional incentive award language, as somehow proving that it never intended to condition payment of incentive awards on support for the settlement when it drafted the Monetary Relief Settlement. Dkt. 884 at 7-8.  That argument is highly disingenuous.  First, the Lieff/Caddell Team drafted the Injunctive Relief Fee Settlement *after* the Monetary Relief Settlement and filed that Settlement *after* the *White* Plaintiffs had already informed the Lieff/Caddell Team that the language created a conflict.  In other words, the Lieff/Caddell Team used the same conditional language so that it could make the bogus point that it makes here.  Indeed, if it had omitted the offending language in the Injunctive Fee Relief Settlement, that only would have highlighted the improper purpose of putting that language in the Monetary Relief Settlement.  Second, unlike the Monetary Relief Settlement, the language limiting incentive awards to those named plaintiffs who were "in support of" the Injunctive Relief Fee Settlement was never challenged for the simple reason that, at the time the Injunctive Relief Settlement was drafted, the Injunctive Relief Settlement had

1   have been unaware of the effect of the conditional incentive award provision,

2   because it "explicitly," "clearly" and "patent[ly]" created an actual conflict of

3   interest.  The notion that the insertion of the conditional incentive language was

4   some kind of accident also cannot be squared with the Ninth Circuit's findings

5   that the language is, at best, exceedingly rare (*Radcliffe*, 715 F.3d at 1161) and

6   that it was exploited by the Lieff/Caddell Team to pressure the *White* Plaintiffs to

7   support the Settlement:

8
       > Counsel told a plaintiff below that he would "not be entitled to
9      > anything" and that he would "jeopardize the $5,000 [he] would
       > receive [under the settlement]" if he did not support the settlement.
10     > Class counsel also told the district court that they had told other
       > plaintiffs that they "don't see a way for people who don't support the
11     > settlement to receive an incentive award."
12

13  *Id.* at 1164-65.  Given these facts, the Lieff/Caddell Team's argument that it

14  never intended to act disloyally simply is not consistent with its obligation to

15  speak with candor to the Court.[7]

16      In the end, however, even if this Court were to accept the Lieff/Caddell

17  Team's disingenuous contention that it did not understand that the conditional

18  $5,000 incentive award provision conditioned payment of such awards on

19  support for the Settlement, that would not matter.  As Judge Haddon noted in his

20  concurring opinion, the very fact that the Lieff/Caddell Team has acted without

21  "any concern for, *or even recognition of,* the obvious conflicts presented [by the

22  conditional incentive provision] underscores" its "adherence to self-interest" and

23

24  already received unanimous support from all the named plaintiffs, had been
    finally approved long before and had been implemented, and the time for appeal
25  had long since run.

26  [7]   This contention, which the Lieff/Caddell Team argued for the first time in its
    reply brief before the Ninth Circuit, is flatly inconsistent with its representation to
27  the Court that it fully intended to condition the incentive award on the class
    representatives' acceptance of the settlement because it did not "know of any
28  other way to do it."  Rptr's Tr., Dkt. No. 502 at 46, lines 15-16.

1   willingness to do whatever may be "expedient" to secure a settlement that will

2   offer it millions of dollars in legal fees. *Radcliffe*, 715 F.3d at 1169 (emphasis

3   added).

4       Indeed, as *White* Plaintiffs pointed out in their opening brief (Dkt. 876 at

5   15), to this day, the Lieff/Caddell Team is without remorse. It continues to

6   publicly and vociferously insist that the Settlement "presented no conflict of

7   interest" and that it did "nothing wrong," and it defiantly rejects the Ninth

8   Circuit's judgment in its new fee agreement with Public Justice and Francis &

9   Mailman.[8] If, as is apparently the case, the Lieff/Caddell Team is unable even to

10  recognize the existence of an "obvious conflict" – even after reading a Ninth

11  Circuit opinion that spells it out chapter and verse – this Court cannot have any

12  confidence that the Lieff/Caddell Team will not walk into another conflict in the

13  future.[9]

14  ─────────────────

15  [8]  "Original counsel respectfully disagrees with a conclusion of conflict relating to
    the language in question …" Lieff/Caddell Team Retainer Letter of June 21,
    2013 at 4.

16

17  [9]  There are numerous other cases in which the Lieff/Caddell Team counsel have
    been involved in situations where they have been disqualified or chastised by the

18  court for conflicting representation or improper conduct. These include *In Re
    Sullivan and Lodge*, 2002 WL 113864, at *3 (Bankr. N.D. Cal. Jan. 14, 2002),
    reconsideration denied, unpublished op. of March 31, 2002 (attached hereto as

19  Appendix B), *aff'd* in *In Re Sullivan and Lodge*, No. C-02-02505 (N.D. Cal. Dec
    18, 2002) (Attached hereto as Appendix C) (finding Michael Sobol, co-lead

20  counsel of the Lieff/Caddell Team and his firm, violated Rule 3-310 when,
    "acting out of greed" he undertook to represent a class whose interests conflicted

21  with his individual bankruptcy client; *In re California Micro Devices Security
    Litig.*, 1995 WL 476625 (N.D. Cal. Aug. 4, 1995) and 168 F.R.D. 257 (N.D. Cal.

22  1996) (finding that Lieff Cabraser precipitated a "premature and unsanctioned
    settlement" with defendants under "quasi-collusive circumstances" and

23  disqualified Lieff Cabraser as class counsel); *In Re Omnitron Int'l., Inc.
    Securities Litig.*, 1994 WL 476694 (N.D. Cal. Aug 19, 1994), partially modified

24  on reconsideration, 1995 WL 626529 (N.D. Cal. Feb. 21, 1995) (sanctioning Lieff
    Cabraser, because one of its partners fabricated and forged two expert affidavits

25  and the firm failed to timely advise the Court of its fabrication); *Santiago v. Kia
    Motors, Inc.* 2007 WL 1723951 (Cal. App. No. 4 Dist. Jun. 15, 2007) (affirming

26  lower court finding that Lieff Cabraser was not entitled to any fees and had
    "grossly overstated its fee claim"; appeal denied for lack of standing); *Byerson v.

27  Equifax Information Services, LLC*, 2009 WL 82497, at *3 (D.S.C. Jan. 9, 2009)
    (dismissing FCRA class action brought by Leonard Bennett, Caddell and

28  Chapman, and others for failure to prosecute with court noting that the case was

1      The Lieff/Caddell Team's next argument (Dkt. 884 at 11) – that the class

2  suffered no prejudice because its clients approved the substantive provisions of

3  the Settlement before they created the conflict between it and the class – fares no

4  better than its "innocent mistake" defense.  The Lieff/Caddell Team made the

5  exact same argument when this case was on appeal – and it is no more persuasive

6  now than it was then.

7      As the Ninth Circuit's opinion makes clear, whether the conditioning of

8  incentive awards on support for the Settlement caused "actual injury to the class

9  in the form of a lower settlement amount" has nothing to do with whether the

10  Lieff/Caddell Team created a conflict or interest or was otherwise able to satisfy

11  the adequacy of representation requirement.  *Radcliffe*, 715 F.3d at 1166.  Nor

12  does it have any logical bearing on whether the Lieff/Caddell Team can be

13  trusted to honor its fiduciary responsibilities to the class in the future.  Further,

14  even if actual prejudice were relevant to the inquiry, the Lieff/Caddell Team

15  cannot credibly contend that there was no prejudice here given that its disloyal

16  conduct was responsible for four years of wasted litigation and the defeat of a

17  settlement, which the Lieff/Caddell Team insists was in the best interest of the

18  class.[10]

---

"one of the most egregious examples of failure to prosecute ever witnessed by this Court."); *In re TransUnion Corp. Privacy Litig,* 2009 WL 4799954 (N.D. Ill. Dec. 9, 2009), modified and remanded, 629 F.3d 741, 747 (7th Cir. 2011), and on remand 2011 WL 918396 at *1 (N.D. Ill. Mar. 14, 2011) (criticizing Michael Caddell, Cynthia Chapman, Mitchell Toups and associated counsel for "an overabundance of greed" in seeking fees the court felt were not justified); *Price v. TransUnion LLC,* 847 F. Supp. 2d, 788 (E.D. Pa. 2012) (sanctioning partner in the firm of Francis & Mailman, PC for improperly attempting to interfere with the service of a subpoena on a third-party).

[10]    The *White* Plaintiffs strongly disagree with the Lieff/Caddell Team's contention that its sub-penny-on-the-dollar Settlement was in the best interest of the class and would note that the Lieff/Caddell Team's new counsel apparently agree.  Rpt. Tr. of July 26, 2013 at 38, lines 6-11 ("there are some of us who think there's a substantial chance, if the case goes forward, that the settlement could be improved, because some of us think that the atmosphere, the legal ___, in this particular type of case has actually improved.  And in this respect, I think that Mr. Carpinello makes some very strong points.").  For the record, *White* Plaintiffs

The Lieff/Caddell Team's next argument (Dkt. 884 at 13, 16) – that finding it unfit to represent the class would deny that class the benefit of the "expertise and experience" that Team has gained as a result of having litigated this matter for nearly eight years – is irrelevant. The *White* Plaintiffs' adequacy of representation argument is that, having committed a "particularly egregious" violation of the conflict of interest rules, the Lieff/Caddell Team cannot be counted on to faithfully discharge the heightened fiduciary responsibilities that the courts demand of class counsel. That the Lieff/Caddell Team may be skilled and experienced goes not to its loyalty, but to its competence, and hence its effort to tout those qualities does nothing to answer the challenges to the Lieff/Caddell Team's adequacy that the *White* Plaintiffs make here.[11]

### B.     The Lieff/Caddell Team's Continuing Conflict With the Class Disables It From Representing the Class.

In their opening brief (Dkt. 876 at 8-13), the *White* Plaintiffs showed how the conflict that the Lieff/Caddell Team created when it inserted the conditional incentive clause into the Settlement has spawned a whole generation of new conflicts – stemming from the fact that the Lieff/Caddell Team's breach of its

---

would also note that the Lieff/Caddell Team's representation that its clients approved all of the substantive terms of the Settlement before the conditional incentive provision came into existence (Dkt. 884 at 14) is also false. In fact, Settling Plaintiffs' own declarations establish that they learned of the Settlement's allocation provisions at the same time they learned of the conditional incentive provision and that they did not finally approve the Settlement until April 23 and 24, 2009 – when it was filed with this Court. *See, e.g.,* Declaration of Jose Hernandez, dated April 24, 2009, ¶ 4 (Dkt. No. 385); Declaration of Bertram Robison, dated December 18, 2009, at ¶ 5 (Dkt. No. 604-5).

[11]   As detailed above, the Lieff/Caddell Team's argument that the class will lose the benefit of its "expertise and experience" if it is found inadequate under Fed. R. Civ. P. 23(g) ignores the fact that:  (1) that more than half of that "expertise and experience" was gained while that Team was in a conflicted condition and taking positions antagonistic to the class; and (2) that Wolf and Juntikka and the Boies Firm have accumulated a great deal of "expertise and experience" of their own over the eight and four years, respectively, that they have been fighting to protect the interests of the class.

fiduciary duties to the class has (1) placed that Team's eligibility for any fee award in serious jeopardy, (2) exposed that Team to civil liability to the class, (3) shifted to that Team the risk of having to pay millions of dollars in notice costs, and (4) placed the Lieff/Caddell Team and their clients in the awkward position of having to negotiate a new settlement in the face of their continued assertion that the $45 million settlement was in the best interest of the class.

Having no cogent response, the Lieff/Caddell Team brushes these conflicts aside – characterizing them (Dkt. 884 at 15-16) as "ridiculous" and as the product of the *White* Plaintiffs' "saber rattling and vitriol."  But the Lieff/Caddell Team used the same litany of adjectives to describe the *White* Plaintiffs' now-vindicated argument that that Team's conditional incentive provision created a disabling conflict of interest.  The re-use of those adjectives notwithstanding, the second-generation of conflicts *White* Plaintiffs have identified are no less real than the first-generation conflict that spawned them.

*1. Risk of Civil Liability.*  Although the Lieff/Caddell Team says that it regards this risk as "far-fetched" and "imaginary" (Dkt. 884 at 16), the Ninth Circuit's decision conclusively establishes its liability to the class for breach of fiduciary duty.  As set forth in the *White* Plaintiffs' opening brief (Dkt. 876 at 13-16), the existence of this liability creates a fundamental lack of congruence between the interests of the Lieff/Caddell Team and the class.

For instance, the Lieff/Caddell Team now faces an overwhelming disincentive not to litigate the case because, if it were to lose, it could find itself liable for the $45 million the class would have obtained had it not been for the Lieff/Caddell Team's fiduciary breach.  Conversely, in the event of any new settlement, the Lieff/Caddell Team could find itself liable to the class for millions of dollars in lost interest for the four-year period of time that was wasted pursuing the Team's conflicted settlement.  The Lieff/Caddell Team disputes the

1    notion that lost interest could ever be recoverable against it, but any award the
2    class might obtain would have been delayed for four years as a direct result of
3    the Lieff/Caddell Team's fiduciary breach and, hence, there is no reason why the
4    lost interest on that award would not be an appropriate item of damages.

5         *2. Risk of Fee Forfeiture.*  The Lieff/Caddell Team argues (Dkt. 884 at 15)
6    that it will be fully incentivized to litigate these claims to trial because "the law is
7    clear" that the Lieff/Caddell Team would be able to obtain fees for the work it
8    did "prior to the conflict and after the conflict ended."  But that is not at all clear.
9    Though the Lieff/Caddell Team might be able to persuade this Court to grant it
10   fees for that work in the exercise of its discretion, the law is equally clear that
11   this Court could, given the seriousness of the ethical violation at issue, deny the
12   Lieff/Caddell Team any attorneys' fees whatsoever.  *See Rodriguez II*, 688 at 655
13   (trial court has discretion to deny all fees to conflicted counsel).  That was the
14   strongly-held view of at least one of the judges on the appellate panel in this very
15   case who has expressed the view that the Lieff/Caddell Team "should be
16   disqualified from participation in any fee award ultimately approved by" this
17   Court.  *Radcliffe*, 715 F.3d at 1169 (Haddon, J., concurring); *see also* Dkt. 876 at
18   17.

19        *3. Risk of Being Forced to Bear Notice Costs.*  In their opening brief (Dkt.
20   876 at 18-19), the *White* Plaintiffs also explained that the risk that the
21   Lieff/Caddell Team would have to bear the cost of notifying the class of the
22   Ninth Circuit's ruling rejecting the Settlement creates a powerful incentive for it
23   to re-file the prior settlement or a substantially similar one.  The Lieff/Caddell
24   Team's response to this argument is to ignore it.

25        But that hardly means the notice liability that the Lieff/Caddell Team faces
26   is not real.  If that Team does not settle this matter – and soon – it will, at a
27   minimum, have to pay the cost of notifying 750,000 claimants that the

28

1  Settlement was rejected.  But as explained in the *White* Plaintiffs' opening brief
2  (Dkt. 876), the Lieff/Caddell Team's notice exposure is 20 times greater.  That is
3  because all class members have received notice of this action and may be acting
4  in reliance on the assumption that their claims will be resolved in this forum.
5  Consequently, if class certification is denied so that the class becomes, in effect,
6  permanently decertified, the Court will have to "ensure that notification of this
7  action be sent to the class members, in order that the latter can be alerted that the
8  statute of limitations has begun to run again on their individual claims."
9  *Birmingham Steel Corp. v. TVA*, 353 F.3d 1331, 1339 (11th Cir. 2003); *see also*
10 *Culver v. City of Milwaukee*, 277 F.3d 908, 915 (7th Cir. 2002).

11       The Lieff/Caddell Team must know that its best chance of avoiding the
12 cost of re-notice would be to re-file the earlier settlement.  If, however, the
13 Lieff/Caddell Team were to seek certification of a litigation class and lose, it
14 would be on the hook for some $5 million in notice costs. The Lieff/Caddell
15 Team's financial stake in settling this case creates an unbridgeable chasm
16 between its interests and the class it seeks to represent – rendering that Team
17 unable to satisfy Rule 23(g)'s adequacy of representation requirement.

18       *4.   Inability to Negotiate a New Settlement.*  In their opening brief, the
19 *White* Plaintiffs pointed out that having heavily bought into the $45 million dollar
20 settlement, neither the Lieff/Caddell Team nor the Hernandez parties are in a
21 position to negotiate with Defendants to raise the settlement above the $45
22 million dollar figure.  Dkt. 876 at 17-18.  Negotiating a larger figure would be an
23 admission by them that they had agreed to an inadequate settlement the first time.
24 In its answering papers, the Lieff/Caddell Team essentially concedes this point,
25 admitting that it would not negotiate a higher number for the class absent
26 "changed circumstances."  Dkt. 884 at 15.

27       **IV. The Boies Team Is the One Best Able to Represent the Class.**

28

Assuming its ethical transgressions did not disqualify the Lieff/Caddell Team from representing the class or, indeed, remaining in this case in any capacity – which they do – the Lieff/Caddell Team still could not possibly be regarded as better able to represent the class than the Boies Team.

Contrary to the Lieff/Caddell Team's suggestion (Dkt. 886 at 2-4, 7, 18-19), the resolution of this issue does not turn on which of the two team's has more FCRA or class action experience or has devoted the most time and resources to this matter.  Judged by those criteria alone, both teams are more than capable of representing the class.  The issue is which of the two teams can be counted on to loyally discharge its fiduciary responsibilities in the best interests of the class.  As Professor Rubenstein explains (at ¶¶ 2-4), the resolution of this issue is not a close call.

The Ninth Circuit has found that the Lieff/Caddell Team has broken the solemn bond of loyalty between itself and the class by affirmatively creating an actual conflict between the named plaintiffs and the class – even going so far as to exploit that conflict in an effort to strong-arm certain *White* Plaintiffs into supporting the Settlement.  As a result of this transgression, the Lieff/Caddell Team is solely responsible for the squandering of some $7 million in notice and administrative costs and a four-year delay in any recovery the class might obtain. With its wealth of class action experience, the Lieff/Caddell Team was somehow unable to appreciate that language conditioning payment of $5,000 incentive awards on support for a class settlement created a conflict of interest and put that settlement in serious jeopardy, despite the fact that the Boies Team alerted the Lieff/Caddell Team of the existence of that conflict just days after it filed the Settlement.

By contrast, the Boies Team recognized the conflict literally the moment it read the Settlement.  Having done so, the Boies Team did everything in its power

to save the class from the conflict and to prevent millions of dollars from being wasted – bringing the issue up at every opportunity and going so far as to file petitions for mandamus and Rule 23(f) review in the Ninth Circuit.  Further, unlike the Lieff/Caddell Team, which has embraced and continues to embrace the Defendants' arguments on both class certification and the merits,[12] the Boies Team has consistently taken legal and factual positions that advance the interests of the class it seeks to represent.

Inasmuch, as the Boies Team is the only team that can be relied upon to honor its fiduciary responsibility to put the class's interests above its own, the sole remaining question is whether it has the abilities and resources to vigorously prosecute these claims on behalf of the class.  The Lieff/Caddell Team's *ad hominem* attacks on the Boies Team notwithstanding, there can be no doubt that it does.

### A.   The Boies Team Has Demonstrated It Has More Than Sufficient Experience to Represent the Class In This Matter.

The Lieff/Caddell Team asserts (Dkt. 886 at 4) that the Boies Team "lack[s] the required experience with FCRA and consumer class action litigation." That is demonstrably false.

Messrs. Wolf and Juntikka and the Boies Firm have been litigating this

---

[12]   Even now, the Lieff/Caddell Team continues to advance the Defendants' arguments.  In the conference with the Court held on July 26, 2013, Mr. Caddell stated that "[t]he concern we have about manageability is the one the Court expressed:  That more than half the class even benefited from this practice, the prior practice, or is not harmed." Rptr's. Tr. at 18, lines 15-19.  As the *White* Plaintiffs have consistently argued, this is a statutory damages class action – it matters not at all which members of the class were "benefited" and which ones were "harmed" by inaccurate credit reports.  Thus, Mr. Caddell's contention that the Court needs to make such a determination as part of this litigation is simply incorrect, and apparently is one of the reasons why the Lieff/Caddell Team chose to settle this matter for an inadequate amount.   Mr. Caddell also made the Defendants' argument that recent appellate case law has made class certification more difficult for the Plaintiff class here. *Id.* at 35, lines 4-7.  Even Mr. Caddell's new counsel, Mr. Bland of Public Justice, found it necessary to correct Mr. Caddell in his misstatement as to the implications of recent appellate case law for this class action. *Id.* at 36, line 20 to page 38, line 11.

1    matter for eight and four years, respectively.  As a result of the efforts they have

2    put in during that period (and also during Messrs. Wolf's and Juntikka's pre-

3    filing investigation), they have become intimately familiar with each and every

4    provision of the FCRA having any relevance whatever to this matter, including

5    all of the case law construing and applying those provisions.  The key FCRA

6    issues in this case have been briefed several times and the intracacies of

7    Defendants' business have been, and will continue to be, explored by competent

8    experts hired by the Boies Team.  The Lieff/Caddell Team's argument to the

9    contrary notwithstanding, the fact that the Boies Team does not include a

10   practitioner who specializes in the FCRA – which, after all, is not a particularly

11   complex body of law – does not in any measure impair its ability to litigate these

12   claims.

13        Likewise, the Boies Team has all the class action experience it needs to

14   prosecute this matter, and more.  Mr. Wolf has extensive experience in litigating

15   class action cases throughout his 25-year legal career, including spearheading

16   two such efforts that have yielded recoveries of approximately $200 million

17   since 2011.  *See* Declaration of Daniel Wolf, dated August 1, 2013 ("Wolf

18   Decl."), at ¶¶ 6-7.  To the extent additional class action expertise is required, the

19   Boies Team can call on at least a dozen members of the Boies Firm, who have

20   vast class action experience and who have obtained many hundreds of millions

21   of dollars in recoveries and settlements for the classes they have represented,

22   including David Boies who has been consulting on this matter for the past four

23   years and who will be guiding the effort going forward.  *See* Carpinello Decl. at ¶

24   8.

25        That the Boies Team has the experience necessary to litigate this matter

26   has been acknowledged by the Lieff/Caddell Team.  Up until its breakup over the

27   Monetary Relief Settlement, the Lieff/Caddell Team agreed that Mr. Wolf should

28

1   prepare all of the briefs on substantive contested motions and argue those

2   motions in this Court, including the hearings on the *Acosta/Pike* Plaintiffs motion

3   for preliminary approval of their Settlement, Experian's motion for summary

4   judgment and Plaintiffs' aborted motion for class certification. Wolf Decl. ¶¶ 11,

5   14. Had the Lieff/Caddell Team not believed that Mr. Wolf was better able to

6   argue these motions than any of its other members, it would never have entrusted

7   him with this responsibility.

8        The Lieff/Caddell Team argues (Dkt. 886, at 1, 4) nonetheless that the

9   Boies Team cannot be trusted to represent the class because Messrs. Wolf and

10  Juntikka are "laser-focused on a mammoth" recovery and would be unwilling to

11  accept "anything less than a multi-billion dollar settlement." First, that is false;

12  while Messrs. Wolf and Juntikka believe that a $45 million settlement is

13  woefully inadequate in relation to Defendants' damages exposure, they have

14  never insisted on anything approaching a multi-billion dollar settlement. Second,

15  it is not Messrs. Wolf and Juntikka, but the Boies Firm, that would take the lead

16  in any future settlement negotiations. Carpinello Decl. at ¶ 8. While for obvious

17  reasons the Boies Team is unwilling to telegraph its bottom line, the notion that

18  Mr. Boies and his firm cannot be counted on to take a reasonable and realistic

19  approach to settlement is patently absurd.

20
21      **B.**    **The Boies Team Has Been Principally Responsible For the Successes That Plaintiffs Have Attained So Far In This Litigation.**
22

23       The Lieff/Caddell Team seeks to belittle the Boies Team's role in this

24  case, asserting (Dkt. 886 at 6, 7) that prior to the announcement of the Monetary

25  Relief Settlement, Mr. Juntikka "contribut[ed] little, if anything", and that Mr.

26  Wolf played a mere "supporting role[ ]" in connection with Plaintiffs' successes

27  in this case. That is patently incorrect and is rebutted in detail in the Declarations

28

of Daniel Wolf and Charles Juntikka, submitted herewith, and in their prior declarations dated April 28, 2010, filed under seal (and in redacted form at Dkt. 660).

First, with respect to Mr. Juntikka, the record demonstrates that he has been actively involved in every aspect of this litigation – conducting a comprehensive pre-filing study of Defendants' error rates, participating in discovery, editing and commenting on every important brief, preparing for and participating in oral argument, participating in mediation sessions and providing invaluable advice on bankruptcy law and practice.   Declaration of Charles Juntikka, dated August 1, 2013 ("Juntikka Decl.") ¶¶ 1-18.

Likewise, in the case of Mr. Wolf, there is no sense in which the role he played could be regarded as merely supportive.  Apart from writing all of the major briefs and arguing the major motions in this case, Mr. Wolf did virtually all of the legal research for the briefs he wrote, drafted the *White* Plaintiffs' original complaint, prepared numerous analytic memoranda relating to the legal issues in these cases, actively participated in mediation sessions, conducted vital informal discovery and assisted with formal discovery efforts.  *See* Wolf Decl. ¶¶ 11-16.

### C.   The Boies Team Has Demonstrated Its Willingness to Commit All of the Resources Necessary to Prosecute This Matter.

The Lieff/Caddell Team asserts (Dkt. 886 at 4, 11) that the Boies Team has "not committed significant resources to representing the class" and has not demonstrated a willingness to do so.  That is patently incorrect.

The Boies Team has devoted more than 17,000 hours of attorney time litigating this matter.  Carpinello Decl. ¶ 7; Wolf Decl. ¶ 25; Juntikka Decl. ¶¶ 2-3, 18.  In addition, it has incurred over $400,000 in out-of-pocket expenses.

1   Carpinello Decl. at ¶ 7; Wolf Decl. ¶ 25; Juntikka Decl. ¶ 18.  The Boies Team is

2   ready and willing to devote all of the human and financial resources required to

3   secure the best possible result for the class, even if that means having to forego

4   settlement opportunities that would secure them millions of dollars in legal fees.

5

6   **V.  This Court Should Not Appoint New Counsel at This Stage of
        the Action.**

7

8        In the conference with counsel held on July 26, 2013, this Court raised the

9   possibility that it might appoint new counsel to represent the class – presumably

10  on behalf of new class representatives who have yet to appear in this action.

11  However, as pointed out by Professor Rubinstein (at ¶ 7, 41), such action would

12  be unprecedented when there are unconflicted and experienced counsel already

13  before the Court.  The Court has before it the *White* Plaintiffs and their counsel

14  who have diligently pursued this action for eight (8) years.  Third, the case law

15  shows that courts resort to this expedient only in cases where the sole counsel

16  before the court have been declared inadequate, have committed ethical

17  violations, or have committed other misconduct which renders counsel

18  inadequate.  *See Lane v. Wells Fargo Bank*, *N.A.*, 2013 WL 3187410, at *13-15

19  (N.D. Cal. June 21, 2013) (inviting new counsel to appear because counsel before

20  the court had made material misrepresentations to court about its conflict of

21  interest, and the court noted its "prior and disappointing experience" with other

22  counsel applying to be appointed); *Lebeau v. United States*, 222 F.R.D. 613, 618-

23  619 (D.S.D. 2004) (court appointed counsel of its choosing because the counsel

24  seeking to be appointed had either a conflict of interest or did not have the

25  capability to handle a class action); *Kahree v. Western Electric Co*., 82 F.R.D

26  196, 197-99 (D.N.J. 1979) (court appointed new counsel because counsel for the

27  class advised the court that they had a conflict); *Cullen v. New York State Civil*

28

1   *Service Commission*, 566 F.2d 846, 849 (2d Cir. 1977) (citing approvingly the

2   lower court's decision to appoint independent counsel where the district court

3   found counsel appearing before it lacked experience in the subject matter and did

4   not possess the legal and manpower resources to prosecute the action). In sum,

5   there is no legitimate reason for this Court to take the extraordinary step – a step

6   *all* parties before the Court oppose – of appointing new, independent counsel.

7       Finally, the Lieff/Caddell Team, as a last resort, urges the Court to appoint

8   new independent counsel to the Lieff/Caddell Team. But there is simply no

9   reason to do that, given the clear adequacy of the Boies Team (which needs no

10  new counsel because it did not commit any ethical violation). As Professor

11  Rubenstein points out (¶¶ 7, 33), such action would be without precedent.

12  Moreover, there is certainly no reason to add additional attorneys to a team that

13  already has at least 16 attorneys and six (6) law firms in its group. Courts simply

14  do not approve of such unwieldy class counsel, especially in a case such as this,

15  which has been litigated for eight (8) years already. *Lane v. Wells Fargo Bank,*

16  *N.A.*, 2013 WL 3187410, at *15 (N.D. Cal. June 21, 2013).

17  **VI. The Lieff/Caddell Team's Claim That the Boies Team Has Been**

18      **Less Than Candid With This Court and the Ninth Circuit Is Utterly**

19      **Baseless.**

20      The Lieff/Caddell Team accuses (Dkt. 886 at 4) the Boies Team of

21  "hav[ing] not been forthright with this Court and the Ninth Circuit." The

22  Lieff/Caddell Team has it backwards.

23      The Lieff/Caddell Team's principal accusation concerns Mr. Carpinello's

24  oral argument, in which he asked the Ninth Circuit "to find anywhere in there his

25  address of this issue, or even the mention of *Rodriguez*." To the Lieff/Caddell

26  Team's way of thinking (Dkt. 886 at 14-15), this equates to a misrepresentation

27  because this Court did, in fact mention, *Rodriquez* in its decision approving the

28  Settlement. But, of course, Mr. Carpinello's statement about the failure to

1   mention *Rodriguez* was explicitly in reference to this particular issue, namely

2   whether the conditional incentive clause created a conflict between the named

3   plaintiffs who supported the Settlement and the absent class.[13]  Mr. Carpinello's

4   statement that this Court's decision never mentioned *Rodriguez* in connection

5   with that issue is 100% correct, and Judge Wardlaw agreed.  *See* Ex. A to

6   Caddell Decl. (Dkt. 888-1) at 11:13-25.[14]

7        The sole other example the Lieff/Caddell Team cites (Dkt. 886 at 10) in

8   support of the Boies Team's alleged untruthfulness concerns their statement

9   (Opening Br., Dkt. 876 at 9) that "the Lieff/Caddell took the position that

10  injunctive relief was unavailable" and that, as a result, the original *Hernandez*

11  complaint "did not even include a prayer for injunctive relief."   That the

12  *Hernandez* complaint did, in fact, include such a prayer is evidence not of any

13  lack of candor, but of an isolated and innocent mistake of memory.  Specifically,

14  the *Hernandez* complaint asserted only FCRA claims and Mr. Wolf had correctly

15  equated its failure to assert any corresponding injunctive relief claims under

16  California law with a failure to seek injunctive relief.  Wolf Decl. ¶ 19, n.4.  The

17  reason for that equation is understandable:  from the outset, *Hernandez* counsel

18  had insisted that injunctive relief could not be had under the FCRA and that

19  California injuctive remedies were pre-empted by the FCRA.  *Id.*

20        That the Lieff/Caddell Team would accuse the Boies Team of lack of

21  candor is more than a little ironic given the myriad false and misleading

22

23  [13] The notion that Mr. Carpinello's statement was an attempt to hoodwink the
     Ninth Circuit into believing that this Court's decision did not mention *Rodriguez*
24   is predicated on the utterly ridiculous assumption that the Ninth Circuit would not
     be reading the very decision that was on appeal.
25

26  [14] The exact exchange was as follows:
     **Mr. Carpinello**: "And I ask you to find anywhere in there his address of this
27   issue, or even the mention of Rodriguez or the mention of any of these facts. . ."
     **Judge Wardlaw**: ". . . Yeah. Yeah.  Okay, I did look at the order and he didn't
28   address it."

statements they have made both to this Court and the Ninth Circuit.  They have consistently misrepresented to this Court and to the Ninth Circuit that they "never intended" to condition the incentive awards on settlement approval when they previously acknowledged that that was exactly their intent; they falsely informed the Ninth Circuit that the *White* Plaintiffs first raised their challenge to the incentive award only after their other arguments "failed to gain any traction," when in fact, as this Court knows, the *White* Plaintiffs raised the issue of the incentive award at their very first opportunity (*i.e.*, their motion to reconsider the Court's preliminary approval order); they misrepresented to this Court and the Ninth Circuit, that their unconditional incentive award was a "standard" provision when they must have known, in the words of Ninth Circuit, that such language was "not at all typical."  *Radcliffe*, 715 F.3d at 1166; and they informed the Ninth Circuit they have never encouraged any plaintiff to support the settlement so as to receive the incentive payment when they did exactly that, again as pointed out by the Ninth Circuit.  *Radcliffe*, 715 F.3d at 1164.

These examples, which represent just the tip of the iceberg, demonstrate that the Lieff/Caddell Team's statement (Dkt. 886 at 2) that they "have always been truthful with this Court and the Ninth Circuit" is but another illustration of how untruthful they have been to both.

## CONCLUSION

For the foregoing reasons, the *White* Plaintiffs respectfully request that this Court (1) grant their motion to disqualify the Lieff/Caddell Team from further participation in this actions; and (2) grant their motion to appoint the Boies Team as interim class counsel.

DATED:  August 1, 2013          Respectfully submitted,

**BOIES, SCHILLER & FLEXNER LLP**

By: <u>/s/ George F. Carpinello</u>
George F. Carpinello
Adam R. Shaw
30 South Pearl Street
Albany, NY  12207
(518) 434-0600

David L. Zifkin (SBN 232845)
401 Wilshire Boulevard, Suite 850
Santa Monica, CA  90401
(310) 393-9119

**CHARLES JUNTIKKA & ASSOCIATES LLP**
Charles Juntikka
1250 Broadway, 24th Floor
New York, NY  10001
(212) 315-3755

**DANIEL WOLF LAW OFFICES**
Daniel Wolf
1220 N Street, NW, Suite PH 2
Washington, DC  20005
(202) 842-2170

*Attorneys for Plaintiffs Robert Radcliffe, Chester Carter, Maria Falcon, Clifton C. Seale, III, Arnold E. Lovell, and all others similarly situated*