Michael W. Sobol (State Bar No. 194857)
(msobol@lchb.com)
LIEFF, CABRASER, HEIMANN &
BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone:  (415) 956-1000
Facsimile:  (415) 956-1008

Michael A. Caddell (State Bar No. 249469)
(mac@caddellchapman.com)
Cynthia B. Chapman (State Bar No. 164471)
(cbc@caddellchapman.com)
CADDELL & CHAPMAN
628 East 9th Street
Houston, TX 77007
Telephone:  (713) 751-0400
Facsimile:  (713) 751-0906

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

(SOUTHERN DIVISION)

| | |
|---|---|
| TERRI N. WHITE, *et al.*,<br><br>　　　　Plaintiffs,<br><br>v.<br><br>EXPERIAN INFORMATION SOLUTIONS, INC.,<br><br>　　　　Defendant.<br><br>――――――――――――<br>and Related Cases:<br><br>05-cv-01073-DOC (MLGx)<br>05-cv-7821-DOC (MLGx)<br>06-cv-0392-DOC (MLGx)<br>05-cv-1172-DOC(MLGx)<br>06-cv-5060-DOC (MLGx) | Case No. 05-CV-1070 DOC (MLGx)<br>(Lead Case)<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date:　May 30, 2017<br>Time:　8:30 a.m.<br>The Honorable David O. Carter |

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION.................................................................. 1

MEMORANDUM OF POINTS AND AUTHORITIES........................................ 1

I.     INTRODUCTION ......................................................................... 1

II.    BACKGROUND ............................................................................ 3

    A.   Plaintiffs' Claims ............................................................. 3

    B.   Extensive Mediation and Litigation Prior to April 2009 Settlement ......................................................................... 3

    C.   The Parties Resumed Litigation and Arm's-Length Negotiations to Reach the Proposed Settlement........................ 5

III.   The Proposed Settlement ............................................................... 6

    A.   The Settlement Class ....................................................... 6

    B.   Identifying 23(b)(3) Class Members ................................. 7

    C.   Non-Monetary Benefits/Credit Reporting........................ 7

    D.   Monetary Relief for Settlement Class Members ............... 9

    E.   Payments to the Class Members....................................... 9

    F.   Claims Administration .................................................. 10

    G.   Timetable to Disburse Awards ...................................... 11

    H.   Opt Out Procedure ........................................................ 11

    I.   Class Representative Service Awards ............................. 12

    J.   Attorneys' Fees and Costs ............................................. 12

    K.   Settlement Administration and Notice ........................... 12

    L.   *Cy Pres* Distributions .................................................. 13

    M.   Class Release ................................................................ 13

IV.   ARGUMENT AND AUTHORITY ............................................... 13

    A.   Class Action Settlement Approval Process ..................... 13

    B.   This Settlement Is the Product of Serious, Informed, And Arm's-Length Negotiations ......................................... 14

    C.   The Settlement Has No Obvious Deficiencies ................. 16

    D.   The Settlement Does Not Grant Preferential Treatment .......... 16

    E.   The Settlement Is Within the "Range Of Reasonableness" ..... 17

    F.   Provisional Certification of the Settlement Class Is Appropriate ............................................................... 20

        1.   Numerosity ......................................................... 20

        2.   Commonality ....................................................... 20

        3.   Typicality............................................................ 21

        4.   Adequacy............................................................ 22

1

**TABLE OF CONTENTS**
**(continued)**

Page

5.    Predominance ................................................................. 24

G.    The Proposed Notice Program Is Constitutionally Sound ........ 25

V.    The Court Should Schedule a Final Approval Hearing ..................... 25

VI.    CONCLUSION .................................................................... 25

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1336472.11

1

## TABLE OF AUTHORITIES

2

**Page**

3

## CASES

*Acosta v. Trans Union LLC*,
243 F.R.D. 377 (C.D. Cal. 2007) ................................................... 21, 22, 24

*Armstrong v. Davis*,
275 F.3d 849 (9th Cir. 2001) ................................................................ 21

*Boyd v. Bechtel Corp.*,
485 F. Supp. 610 (N.D. Cal. 1979) ....................................................... 19

*Class Plaintiffs v. City of Seattle*, 955 F.2d 1268 (9th Cir. 1992) ............... 14, 17, 18

*Franco v. Ruiz Food Prods.*,
No. 10-cv-02354-SKO, 2012 WL 5941801 (E.D. Cal. Nov. 27, 2012) .............. 15

*Gaudin v. Saxon Mortg. Servs., Inc.*,
No. 11-cv-01663-JST, 2015 WL 7454183 (N.D. Cal. Nov. 23, 2015) ............... 17

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) ........................................... 15, 16, 20, 21

*In re Bluetooth Headset Prods. Liability Litig.*,
654 F.3d 935 (9th Cir. 2011) ................................................................ 16

*In re Heritage Bond Litig.*,
No. 02-ML-1475-DT, 2005 WL 1594403, (C.D. Cal. June 10, 2005) ............... 15

*In re High-Tech Emp. Antitrust Litig.*,
No. 11-cv-02509-LHK, 2015 WL 5159441 (N.D. Cal. Sep. 2, 2015) ............... 17

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
169 F.R.D. 493 (S.D.N.Y. 1996) ........................................................... 23

*In re Online DVD-Rental Antitrust Litig.*,
779 F.3d 934 (9th Cir. 2015) ................................................................ 17

*In re United Energy Corp. Solar Power Modules Tax Shelter Inv. Sec. Litig.*,
MDL No. 726, 1989 WL 73211 (C.D. Cal. Mar. 9, 1989) ........................... 15

*Jordan v. Cnty. of L.A.*,
669 F.2d 1311 (9th Cir. 1982) ........................................................ 20, 22

*Malta v. Fed. Home Loan Mortg. Corp.*,
No. 10-cv-1290 BEN (NLS), 2013 WL 444619 (S.D. Cal. Feb. 5, 2013) ........... 24

*Molski v. Gleich*,
318 F.3d 937 (9th Cir. 2003) ................................................................ 22

*Mullane v. Cent. Hanover Bank & Trust Co.*,
339 U.S. 306 (1950) ........................................................................... 25

iii

1336472.11

1

2

# TABLE OF CONTENTS
## (continued)

**Page**

*Nat'l Rural Telecomms. Coop. v. DIRECTV, INC.*,
  221 F.R.D. 523 (C.D. Cal. 2004) .......................................................... 19

*Noll v. eBay, Inc.*,
  309 F.R.D. 593 (N.D. Cal. 2015) .......................................................... 17

*Officers for Justice v. Civil Serv. Comm'n*,
  688 F.2d 615 (9th Cir. 1982) ................................................................ 14

*Radcliffe v. Experian Info. Solutions, Inc.*,
  715 F.3d 1157 (9th Cir. 2013) .............................................. 1, 5, 12, 22

*Radcliffe v. Hernandez*,
  818 F.3d 537 (9th Cir. 2016) .................................................... 2, 5, 23

*Rodriguez v. West Publ'g Corp.*,
  563 F.3d 948 (9th Cir. 2009) ................................................................ 15

*Spann v. J.C. Penney Corp.*,
  314 F.R.D. 312 (C.D. Cal. 2016) ...................................... 14, 16, 17, 19

*Staton v. Boeing Co.*,
  327 F.3d 938 (9th Cir. 2003) .................................................... 20, 22, 23

*Tyson Foods, Inc. v. Bouaphakeo*,
  136 S. Ct. 1036 (2016) .......................................................................... 24

## OTHER AUTHORITIES

MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.632 (2004) ................. 14, 20, 25

NEWBERG ON CLASS ACTIONS (5th ed. 2015) ........................................ 14, 17

## RULES

Fed. R. Civ. P. 23(a)(1) ............................................................................ 20

Fed. R. Civ. P. 23(a)(2) ............................................................................ 20

Fed. R. Civ. P. 23(b)(3) ...................................................................... 20, 24

Fed. R. Civ. P. 23(e) ................................................................................ 2

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

NOTICE IS HEREBY GIVEN that on May 30, 2017, at 8:30 a.m., or as soon as the matter may be heard, in the Courtroom of the Honorable David O. Carter of the Central District of California, located at 411 West Fourth Street, Santa Ana, California, Courtroom 9D, Plaintiffs José Hernandez, Kathryn Pike, Robert Randall, Bertram Robison, Camille Chapman, and Lewis Mann will, on behalf of themselves and all others similarly situated, by and through their undersigned counsel,[1] request that this Court grant preliminary approval of the parties' proposed Settlement Agreement.

This Motion is made pursuant to Federal Rule of Civil Procedure 23 on the grounds that the proposed Settlement is within the range of reasonableness for a fair, reasonable, and adequate class action settlement. This Motion is based on this Notice of Motion and Motion; the accompanying Memorandum of Points and Authorities, the pleadings and records of this action, any arguments at the hearing on the Motion, and such other and further matters as the Court may properly consider.

---

[1] Class Counsel do not represent Plaintiffs Robert Radcliffe, Chester Carter, Maria Falcon, Clifton C. Seale III, and Arnold E. Lovell and do not seek preliminary approval on their behalf. Pursuant to the Court's Orders consolidating *Hernandez v. Equifax Info. Servs.*, No. 2:06-cv-03924, with *White v. Equifax Info. Servs. LLC*, 05-cv-7821 DOC (MLGx) and *Pike v. Equifax Info. Servs. LLC*, 06-cv-5600 DOC (MLGx) for all purposes pursuant to Fed. R. Civ. P. 42(a) (*Hernandez* Dkt. No. 33; *Acosta* Dkt. No. 152), Plaintiffs file this motion under the consolidated case but on their own behalf only.

Dated:  April 14, 2017

Respectfully submitted,

LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP

By:_____/s/ *Michael W. Sobol*_____
        Michael W. Sobol

Michael W. Sobol (State Bar No. 194857)
(msobol@lchb.com)
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone:  (415) 956-1000
Facsimile:  (415) 956-1008

By:_____/s/ *Michael A. Caddell*_____
        Michael A. Caddell

Michael A. Caddell (State Bar No. 249469)
(mac@caddellchapman.com)
Cynthia B. Chapman (State Bar No. 164471)
(cbc@caddellchapman.com)
CADDELL & CHAPMAN
628 East 9th Street
Houston, TX 77007
Telephone:  (713) 751-0400
Facsimile:  (713) 751-0906

By:_____/s/  *James A. Francis*_____
        James A. Francis

James A. Francis (pro hac vice)
jfrancis@consumerlawfirm.com
David A. Searles (pro hac vice)
dsearles@consumerlawfirm.com
FRANCIS & MAILMAN, P.C.
Land Title Building, 19th Floor
100 South Broad Street
Philadelphia, PA 19110
Telephone: (215) 735-8600
Facsimile: (215) 940-8000

Stuart T. Rossman (BBO No. 430640)
(srossman@nclc.org)
Charles M. Delbaum (BBO No. 543225)
(cdelbaum@nclc.org)
NATIONAL CONSUMER LAW CENTER
7 Winthrop Square, 4th Floor
Boston, MA 02110
Telephone:  (617) 542-8010
Facsimile:  (617) 542-8028

MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT
CASE NO. 05-CV-1070 DOC (MLGX)

1336472.11

1

2     Leonard A. Bennett (VSB No. 37523)
      (lenbennett@cavtel.net)
3     Matthew Erausquin  (VSB No. 65434)
      (matt@clalegal.com)
4     CONSUMER LITIGATION ASSOCIATES, P.C.
      12515 Warwick Boulevard, Suite 201
5     Newport News, Virginia 23606
      Telephone:  (757) 930 3660
6     Facsimile:   (757) 930-3662

7     Arthur H. Bryant
      (abryant@publicjustice.net)
8     PUBLIC JUSTICE, P.C.
      555 12th Street, Suite 1230
9     Oakland, CA 94607
      Telephone: (510) 622-8150
10    Facsimile: (510) 622-8155

11    F. Paul Bland, Jr.
      (pbland@publicjustice.net)
12    PUBLIC JUSTICE, P.C.
      1620 L Street, Suite 630
13    Washington, DC 20036
      Telephone: (202) 797-8600
14    Facsimile: (202) 232-7203

15    *Attorneys for Hernandez Plaintiffs*

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT
CASE NO. 05-CV-1070 DOC (MLGX)

1336472.11

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiffs José Hernandez, Kathryn Pike, Robert Randall, Bertram Robison, Camille Chapman, and Lewis Mann (collectively, "Plaintiffs") respectfully request the Court preliminarily approve a proposed nationwide class action settlement ("Settlement").  This Settlement provides exceptional value for Settlement Class members.  It includes a new package of Non-Monetary Relief which—in addition to the claims which will be paid from a cash fund (including $1 million of new money in addition to the funds already on deposit with the Court Clerk)—will leave Settlement Class members even better off than they would have been under the proposed settlement that this Court approved in 2010.  The Settlement will finally resolve all claims in this litigation, which has been pending since 2005.

Plaintiffs' claims arise from allegations that Defendants erroneously reported debts discharged in Chapter 7 bankruptcy proceedings as due and owing, failing to take reasonable measures to ensure the accuracy of their credit reports under the Fair Credit Reporting Act ("FCRA").

In 2008, the Court approved the historic settlement of injunctive relief claims raised in the *White v. Experian* related cases, which required Defendants to revise their procedures to minimize recurrence of the alleged harm.  The parties continued to litigate and, after significant discovery and contentious, arm's-length negotiations, and, at the Court's urging, agreed to resolve Plaintiffs' monetary claims in April 2009 (the "2009 Proposed Settlement").  The Court granted final approval of the 2009 Proposed Settlement in 2010.  (Dkt. No. 776.)  On appeal, the Ninth Circuit vacated that settlement based on its service award provision, and not for reasons related to the substantive terms of the settlement benefits to the class members.  *See Radcliffe v. Experian Info. Solutions, Inc.*, 715 F.3d 1157, 1164-65 (9th Cir. 2013).

After two rounds of appeal,[2] additional litigation, and further mediation efforts, the parties now present this new Settlement for preliminary approval. Taking into account the total value provided for Settlement Class Members, this Settlement improves on the already impressive relief made available under the 2009 Proposed Settlement. It provides Non-Monetary Relief, including information about fixing credit reporting errors, which will be available on the Settlement Website, as well as an option for Settlement Class members to claim a free credit report and two free VantageScore credit scores. Settlement Class members will still have the same cash claim options—a Convenience Award or an Actual Damage Award—that were available under the 2009 Proposed Settlement, and Defendants have agreed to contribute an additional $1 million to the approximately $37 million in funds already on deposit in the Court's registry to pay these awards. The fund will also be used to pay costs of notice, administrative costs, and any attorneys' fees and service awards approved by the Court. Settlement Class members will not be required to re-submit claims already approved under the 2009 Proposed Settlement. They will receive a new round of notice and a second opportunity to file claims, amend their original claims, opt out, or object.

In short, the present Settlement—supported by the Named Plaintiffs[3]—is an excellent result for the Class, well within the reasonable range of what may potentially be approved as "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e). Plaintiffs seek preliminary approval of the Settlement and provisional certification of a nationwide class to provide the Class with notice of the Settlement and an opportunity to opt out, object, or otherwise be heard. Therefore, Plaintiffs move the Court to: (1) grant preliminary approval to the proposed Settlement; (2)

---

[2] On remand after the Ninth Circuit vacated the 2009 settlement, the objecting plaintiffs sought to disqualify undersigned Class Counsel; this Court rejected the objecting plaintiffs' request (Dkt. Nos. 947 and 956 [Jan. 21, 2014 and May 1, 2014 Orders]), and the Ninth Circuit affirmed. *See Radcliffe v. Hernandez*, 818 F.3d 537 (9th Cir. 2016).

[3] See Hernandez Decl. ¶ 9; Chapman Decl. ¶ 8; Mann Decl. ¶ 8; Randall Decl. ¶ 9; Robison Decl. ¶ 9.

MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT
CASE NO. 05-CV-1070 DOC (MLGX)

1   provisionally certify the proposed Settlement Class; (3) appoint as Class Counsel

2   Lieff Cabraser Heimann & Bernstein, LLP, Caddell & Chapman, Francis &

3   Mailman, National Consumer Law Center, Consumer Litigation Associates, P.C.,

4   Callahan Thompson Sherman & Caudill LLP, and Public Justice, P.C.; (4) appoint

5   JND Legal Administration as the Settlement Administrator; (5) approve the

6   proposed Notice Plan and forms of Notice; and (6) schedule the final fairness

7   hearing on December 11, 2017 and related dates as ordered by the Court.

8   II.    **BACKGROUND**

9          A.    **Plaintiffs' Claims**

10         Plaintiffs' claims center on Defendants' failure to maintain reasonable

11  procedures to assure the accurate reporting of debts that have been discharged in

12  bankruptcy because they relied primarily on creditors and public record vendors to

13  report the discharged status of debts and judgments.  Plaintiffs assert claims for (i)

14  willful and/or negligent violation of Section 1681e(b) of the Fair Credit Reporting

15  Act, 15 U.S.C. § 1681 ("FCRA"), and its California counterpart, Cal. Civ. Code

16  Section 1785.14(b), for failure to maintain reasonable procedures to assure

17  maximum possible accuracy; (ii) willful and/or negligent violation of Section 1681i

18  of the FCRA and its California counterpart, Cal. Civ. Code Section 1785.16, for

19  failure to reasonably investigate consumer disputes regarding the status of the

20  discharged accounts; and (iii) violation of California's Unfair Competition law,

21  Bus. & Prof. Code § 17200.

22         B.    **Extensive Mediation and Litigation Prior to April 2009 Settlement**

23         During the course of the litigation, Plaintiffs undertook substantial discovery,

24  including taking or defending forty (40) depositions, producing over 50,000 pages

25  of documents, and reviewing over 40,000 pages of documents produced by the

26  Defendants.  Plaintiffs also consulted with and retained numerous credit reporting

27

28

MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT
CASE NO. 05-CV-1070 DOC (MLGX)

1  and consumer bankruptcy experts, interviewed numerous consumers, and reviewed

2  thousands of consumer credit reports.

3      The Court has supported the parties' mediation efforts.  From August 15,

4  2007 to February 2009, the parties engaged in arm's-length, contentious, lengthy,

5  and complicated negotiations (with the participation of Defendants' insurance

6  carriers), including seven in-person sessions with a JAMS mediator, the Hon.

7  Lourdes Baird (Ret.), and five in-person mediation sessions with mediator Randall

8  Wulff, as well as several additional in-person or telephonic sessions involving

9  counsel for the parties.  These efforts resulted in the April 2008 Injunctive Relief

10  Settlement Agreement, which this Court approved.  (Dkt. No. 290.)  The parties

11  then resumed with several mediation sessions, but without success.

12      On January 26, 2009, the parties appeared for a hearing on Plaintiffs' Motion

13  for Class Certification of a 23(b)(3) damages class.  Prior to the hearing, the Court

14  issued a tentative ruling denying Plaintiffs' Motion for Class Certification pursuant

15  to Fed. R. Civ. P. 23(b)(3), decided not to hear the Motion at that time, and directed

16  the parties to make a final attempt to settle the Litigation.

17      The parties and Defendants' insurance carriers participated in an additional

18  mediation session before mediator Wulff three days later but did not reach an

19  agreement.  The parties and Defendants' insurance carriers then participated in a

20  settlement conference at the Court on February 5, 2009.  At that conference,

21  Plaintiffs, Equifax, and Experian reached agreement on the principal terms of a

22  settlement of all of Plaintiffs' claims in the Litigation for monetary damages,

23  including statutory and punitive damages, as reflected in the settlement agreement

24  previously presented to the Court.  (Dkt. No. 383.)  TransUnion agreed to join that

25  settlement on February 18, 2009.

26      After the Court granted preliminary approval (Dkt. No. 423), notice was

27  given to the Class.  Plaintiffs then moved for final approval (Dkt. No. 604), which

28  this Court granted after concluding the settlement was fair and reasonable and after

MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT
CASE NO. 05-CV-1070 DOC (MLGX)

giving due consideration to all objections received (Dkt. No. 776). Some Objectors appealed to the Ninth Circuit, which disapproved of a provision of the settlement related to service awards. *See Radcliffe*, 715 F.3d at 1164-65. The Ninth Circuit, however, gave no indication that the core terms of the settlement—those relating to its magnitude, the distribution method, the notice provisions, and so on—were not fair and reasonable.

On remand in 2013, undersigned and proposed Class Counsel put in place multiple safeguards to ensure that the Class's best interests were protected, including the presence of newly associated counsel, Public Justice, P.C. and Francis & Mailman, who, in addition to being unconnected to the prior conflict, bring considerable additional class action experience and FCRA expertise to the table.[4] However, counsel for objecting parties moved to disqualify counsel and to be appointed as Interim Class Counsel on June 19, 2013. (Dkt. No. 876.) The Court denied that motion on January 21, 2014, and again in an amended order on May 1, 2014. (Dkt. Nos. 947 and 956.) On appeal, the Ninth Circuit in March 2016 affirmed the Court's order. *Radcliffe*, 818 F.3d 537. The Objectors then sought a writ of certiorari from the United States Supreme Court, which the Supreme Court denied on January 9, 2017.

## C.    The Parties Resumed Litigation and Arm's-Length Negotiations to Reach the Proposed Settlement

After the Ninth Circuit's March 2016 ruling, Plaintiffs re-evaluated the litigation options that would best serve the Class's interests. The Parties resumed settlement negotiations and attended a mediation with the Hon. Daniel Weinstein (Ret.) on August 25, 2016, but did not reach agreement. Sobol Decl. ¶ 2.

_____

[4] Additionally, Class Counsel have agreed to relinquish any fees earned for the work performed during the period of the conflict identified by the Ninth Circuit (April 16, 2009 through April 22, 2013) and have entered into a cooperating counsel agreement, vetted by Professor Charles Silver, to ensure that newly associated counsel is properly incentivized to achieve the best result for the Class.

On September 19, 2016, Plaintiffs moved for leave to file a Third Amended Complaint to add two additional Class Representatives and three narrower, more focused subclasses. (Dkt. No. 1005.) On October 11, 2016, this Court tentatively denied Plaintiffs' motion and ordered the parties to appear for a settlement conference before the Hon. Dickran M. Tevrizian. (Dkt. No. 1021.) The parties reached the proposed Settlement on November 7, 2016. Sobol Decl. ¶ 3. Two new Class Representatives, Camille Chapman and Lewis Mann, were added on April 13, 2017. (Dkt. No. 1045.)

## III.   The Proposed Settlement

Subject to this Court's approval, the Settlement Agreement and Release ("Settlement Agreement"), summarized below, will resolve all of the claims of the Plaintiffs and all members of the Settlement Class. *See* Sobol Decl. ¶ 4, Ex. 1.

### A.   The Settlement Class

The "23(b)(3) Settlement Class"[5] is co-extensive with the Settlement Class under the 2009 Proposed Settlement and previously approved by this Court. It includes all Consumers who have received an order of discharge pursuant to Chapter 7 of the United States Bankruptcy Code and who, any time between and including March 15, 2002 and May 11, 2009 (or, for California residents in the case of TransUnion, any time between and including May 12, 2001 and May 11, 2009), have been the subject of a Post-bankruptcy Credit Report issued by a Defendant in which one or more of the following appeared:

a.    A Pre-bankruptcy Civil Judgment that was reported as outstanding (i.e., it was not reported as vacated, satisfied, paid, settled or discharged in bankruptcy) and without information sufficient to establish that it was, in fact, excluded from the bankruptcy discharge;

b.    A Pre-bankruptcy Installment or Mortgage Loan that was reported as delinquent or with a derogatory notation (other than "discharged in bankruptcy,"

---

[5] Capitalized terms herein have the meanings defined in the Settlement Agreement.

"included in bankruptcy," or similar description) and without information sufficient to establish that it was, in fact, excluded from the bankruptcy discharge;

  c. A Pre-bankruptcy Revolving Account that was reported as delinquent or with a derogatory notation (other than "discharged in bankruptcy," "included in bankruptcy," or similar description) and without information sufficient to establish that it was, in fact, excluded from the bankruptcy discharge; and/or,

  d. A Pre-bankruptcy Collection Account that remained in collection after the Bankruptcy Date.

Settlement Agreement §1.75.  Excluded from the Class are: (i) all persons who timely and validly request exclusion from the Class as set forth in this Agreement; (ii) all Consumers who would qualify for membership in the "23(b)(3) Settlement Class" based solely on a Post-bankruptcy Credit Report for which the Consumer has separately released all claims as to the issuing Defendant; (iii) Defendants' officers, directors, and employees; (iv) Defendants' attorneys; (v) Plaintiffs' attorneys; and (vi) any judge or judges assigned to preside over or review this matter and the members of his or her immediate family.

  **B.** **Identifying 23(b)(3) Class Members**

  Under the 2009 Proposed Settlement, Defendants identified Class members using commercially reasonable procedures to search a selection of their archived files.  Defendants will update that list within thirty (30) days of Preliminary Approval with the last known mailing address, together with Social Security Numbers (to ensure the most accurate possible address information for notice), and any email addresses associated with Class members.  Settlement Agreement § 6.1.

  **C.** **Non-Monetary Benefits/Credit Reporting**

  The Settlement also provides significant nonmonetary benefits in the form of consumer credit reporting assistance and an optional free file disclosure and two free credit scores.  Class members will receive information about Defendants' consumer relations and investigation processes to dispute any erroneous credit

information on their credit reports.  Settlement Agreement § 3.2, Schedule 3.2(A).  A link to the "Consumer Credit Reporting Assistance" webpage will be featured in the email and long-form notices and will contain valuable information about (a) how to obtain free file disclosures; (b) how to read and understand credit reports; (c) the difference between a credit report and a credit score; (d) how credit scores vary over time; (e) how to obtain a credit score; (f) how to use settlement benefits to track credit ratings and monitor improvements; and (g) how to dispute inaccuracies in credit reports and make the most of Defendants' reinvestigation processes.  *Id.*; Sobol Decl. ¶ 17, Exh. 7.

In addition to the credit assistance that will be available to all Class members, the Settlement also requires Defendants to give all Class members the opportunity to request an extra copy of their credit reports (beyond the free FACTA disclosure) and two VantageScore Credit Scores,[6] in lieu of a Damages Award.  Settlement Agreement § 3.2., Schedule 3.2(B).  All Class members may claim this benefit without being required to make an attestation regarding credit report errors or actual harm suffered.  Sobol Decl. ¶ 14, Exh. 4.

---

[6]  The Settlement requires that the website will clearly explain what a VantageScore is and the differences between FICO Scores and VantageScores.  *See* Schedule 3.2. This requirement ensures that the Settlement website is consistent with the Consumer Financial Protection Bureau's recent consent orders in cases alleging TransUnion, Equifax, and Experian misrepresented that their proprietary credit score products (TransUnion's VantageScore, Experian's PLUS Score, and the Equifax Credit Score) were the same credit score typically used by lenders.  In fact, the CFPB explains—and the Settlement will have to make clear—that "[n]o single credit score or credit score model is used by every lender" and "[l]enders use an array of credit scores, which vary by score provider and scoring model."  See *CFPB Orders TransUnion and Equifax to Pay for Deceiving Consumers in Marketing Credit Scores and Credit Products*, Jan. 3, 2017, https://www.consumerfinance.gov/about-us/newsroom/cfpb-orders-transunion-and-equifax-pay-deceiving-consumers-marketing-credit-scores-and-credit-products/; *see also CFPB Fines Experian $3 Million For Deceiving Consumers in Marketing Credit Scores*, Mar. 23, 2017, https://www.consumerfinance.gov/about-us/newsroom/cfpb-fines-experian-3-million-deceiving-consumers-marketing-credit-scores/.  The Settlement website will truthfully present the VantageScore's value to educate consumers about the relative impact of credit history items on their credit and will be entirely consistent with the CFPB's findings regarding lenders' use of different credit scoring models.

This package of Non-Monetary relief clearly offers significant value to Class members.  For example, Defendants currently offer the VantageScore credit scores for $7.95 each, although they may also be obtained through other organizations and/or as part of a credit monitoring package for less. The Consumer Credit Reporting Assistance will be especially valuable to Class members, who have all been through bankruptcy and are therefore likely to benefit from information designed to help them correct errors on their credit reports and improve their credit ratings. Even if the value of these new benefits were estimated at $1 per class member, the non-monetary relief available would exceed $15 million, easily exceeding the relief made available in the 2009 Proposed Settlement.

### D.    Monetary Relief for Settlement Class Members

In addition to the funds that Defendants have already paid, of which approximately $37 million remains after payment of prior notice and administrative expenses, the Settlement requires Defendants to contribute an additional $1 million total ($333,333.33 per Defendant).  Settlement Agreement § 3.1.

### E.    Payments to the Class Members

The Settlement provides monetary relief for all Class members who have had a credit report issued by a Defendant with alleged errors regarding debts discharged in bankruptcy, and who opt for monetary relief.  Settlement Agreement § 7.2.

All Class members can apply for a "Convenience" damage award, which will be an equal pro rata share of the available Convenience Award Fund.  Settlement Agreement § 7.2(a).  Class members are no longer required to make an attestation to file a Convenience Award claim.  Sobol Decl. ¶ 14, Exh. 4.  The removal of this attestation requirement eliminates any basis for an objection, as was raised to the 2009 Proposed Settlement, that Class members might lack knowledge of errors in their credit reports.  It also enhances the Settlement's value by making Convenience Awards (or Non-Monetary Awards, which are also available without attestation) available to Class members who might not have been able to meet the attestation

1  requirements in the 2009 Proposed Settlement.  The Convenience Award amount

2  will depend on the number of claimants for the Convenience and Actual Damage

3  Awards, but the parties estimate that the Convenience Award will be about $15-20

4  per claimant.  *Id.*; *id.* § 1.3; Sobol Decl. ¶ 15, Exh. 5 and ¶ 17, Exh. 7.

5         Class members who certify that they have been damaged by an alleged error

6  in their credit reports concerning debts discharged in bankruptcy with respect to a

7  denial of employment, a mortgage loan or housing rental, and/or a credit card, auto

8  loan, other credit they applied for, or payment of a discharged debt to obtain credit,

9  can apply for an "Actual Damage Award."  *Id.* § 7.2(b).  If the Settlement

10  Administrator determines that the claimant has adequately documented an injury,

11  the Class member will be paid an Actual Damage Award of $750.00 for

12  employment inquiries, $500.00 for mortgage loans or housing inquiries, and

13  $150.00 for other credit inquiries.  *Id.* § 6.2, Schedule 6.2; Sobol Decl. ¶ 17, Exh. 7.

14  The Settlement Administrator will pay the Actual Damage Awards at the highest

15  award level for which the claimant is eligible.  *Id.* § 7.2(b)(iii).

16         This method for calculating payments to Class Members is identical to the

17  method the Court approved in connection with the 2009 Proposed Settlement.

18         **F.      Claims Administration**

19         Class members may submit claims either by registering for a claim on the

20  Settlement Website or by returning the Claim Form to the Settlement Administrator

21  via U.S. mail, provided they do not opt out.  Settlement Agreement § 7.1(a).

22  Consumers who previously submitted a claim pursuant to the 2009 Proposed

23  Settlement will not be required to re-submit it.  *Id.*  They may, however, amend

24  their claim if they wish. *Id.*

25         The Settlement Administrator will subtract from the Settlement Fund the sum

26  of all administrative and notice costs and the amounts paid pursuant to any award of

27  attorneys' fees and costs and service awards.  *Id.* § 4.3.  The Settlement

28  Administrator will then calculate the estimated amounts to be paid for Actual

Damage Awards by identifying the highest award to which each Actual Damage Award Claimant may be entitled, multiplying the total number of such claims in each category, and totaling the results.  *Id.* § 1.3.  The remaining amount will be available for the Convenience Damage Award Fund.  *Id.*  The Settlement Administrator will then pay each Convenience Award Claimant an equal pro rata share of the Convenience Damage Award Fund, determined by the number of claimants for that award.  *Id.* § 7.2(a).  The parties estimate that Convenience Award payments will be about $15-20 each.  Sobol Decl. ¶ 15, Exh. 5 and ¶ 17, Exh. 7.

Any unclaimed or uncashed awards will expire one hundred-twenty (120) days after they have been issued and then redistributed to Convenience Award Claimants who cashed their first check if such redistribution is economically feasible as determined by Class Counsel.  *Id.* § 7.2(c).  The Settlement Administrator will continue to make such redistributions to the extent any settlement checks remain uncashed one hundred-twenty (120) days after the date on the check mailed, until the redistribution is no longer economically feasible.  *Id.*

### G.  Timetable to Disburse Awards

Upon Preliminary Approval, the parties shall jointly petition the Court to pay the Settlement Administrator for the costs of notice and other administrative expenses related to effecting the Notice Plan.  *Id.* § 4.3(a).  Within 10 days following the Effective Date, the Parties shall jointly petition the Court to release the funds remaining in the Registry of the Court for distribution.  *Id.* § 4.3(b).  The Settlement Administrator will distribute the funds within 30 days of receiving them.  *Id.*

### H.  Opt Out Procedure

Class members may opt out by sending a written request to the Settlement Administrator no later than 60 days after the Notice Deadline.  The request must include an original signature, current postal address and telephone number, the last

four digits of the social security number, and a specific statement requesting exclusion from the 23(b)(3) class.  Settlement Agreement §§ 8.1, 1.46.  The Court approved an identical procedure for the 2009 Proposed Settlement.  Dkt. No. 423.

## I.    Class Representative Service Awards

Under the Settlement, any service award to the named plaintiffs for the time and resources they have put into representing the 23(b)(3) Settlement Class must be requested in the motion for final approval of the Settlement.  *Id.* § 12.1.  Other 23(b)(3) Settlement Class Members who believe they made a substantial contribution to the resolution of the Litigation or otherwise to benefit the 23(b)(3) Settlement Class may apply to the Court for a service award no later than fourteen (14) days before the deadline for objections.  *Id.* § 12.2.  The Settlement is not conditioned on the Court's approval of any Service Awards.  *Id.* § 12.4.  Named plaintiffs will not receive any consideration other than Court-approved service awards and any approved Convenience or Actual Damages Award or, if they elect instead, Non-Monetary Benefits.  *Id.* § 12.1.

Consistent with the Ninth Circuit's holding in *Radcliffe*, 715 F.3d at 1164-65, no service award is contingent on a named plaintiff's support for this Settlement.

## J.    Attorneys' Fees and Costs

In advance of the Final Fairness hearing, Class Counsel will seek approval of attorneys' fees of an amount not to exceed 25% of the total value of the Settlement, and in no event more than $12 million, and for reimbursement of their costs and expenses.  Settlement Agreement § 11.3; Sobol Decl. ¶¶ 15-17, Exhs. 5-7.  The enforceability of the Agreement will not be contingent on any award.  *Id.*[7]

## K.    Settlement Administration and Notice

Following a competitive bidding process, the parties selected JND Legal Administration as the Settlement Administrator.  Sobol Decl. ¶ 5; Caddell Decl. ¶

---

[7] Class Counsel will relinquish fees earned for work performed during the period of conflict identified by the Ninth Circuit (April 16, 2009 through April 22, 2013).

34. JND's Chief Executive Officer, Jennifer Keough, led administration of the 2009 Proposed Settlement when employed by Garden City Group. Her experience will help ensure efficient administration of this Settlement. *Id.* All costs of notice and claims administration will be invoiced by the Settlement Administrator and paid from the Settlement Fund. Settlement Agreement § 6.3. Class Counsel will oversee the Settlement Administrator: (i) issuing Class Notice and claim forms; (ii) calculating and issuing settlement payments; and (iii) responding to Class Member inquiries regarding the claims administration process.

The Settlement Administrator will provide notice to the Class using Email Notice, but will use Mail Notice if email addresses cannot be located or if an e-mail is returned as undeliverable. *Id.* § 6.2(a).

### L.    *Cy Pres* **Distributions**

Unclaimed funds will not be returned to Defendants. The Settlement Administrator will make redistributions of uncashed funds every 120 days, so long as it is economically feasible to do so (i.e., until each redistribution check would be about $3 or less). Settlement Agreement § 7.2(c). If funds remain, they will be distributed to a cy pres recipient agreed upon by the Parties and approved by the Court after receipt of proposals from prospective recipients. *Id.*

### M.    **Class Release**

Upon final approval, all Class members who have not opted out will be deemed to have released their claims. Settlement Agreement §§ 1.61-1.62.

## IV.    **ARGUMENT AND AUTHORITY**

### A.    **Class Action Settlement Approval Process**

Judicial approval is required for the settlement of any class action. *See* Fed. R. Civ. P. 23(e). Preliminary approval is the first step, allowing notice to be given to the class and objections to be filed, after which Plaintiffs may move for final

1    approval and the Court may convene a final fairness hearing.[8]  Preliminary approval

2    is thus not a dispositive assessment of the fairness of the proposed settlement, but

3    rather, a determination that the proposed settlement falls within the "range of

4    possible judicial approval."[9]  Federal courts strongly favor and encourage

5    settlements, particularly in class actions and other complex matters, where the

6    inherent costs, delays, and risks of continued litigation might otherwise overwhelm

7    any potential benefit the class could hope to obtain.[10]

8         Preliminary approval should be granted if the proposed Settlement:

9    "(1) appears to be the product of serious, informed, non-collusive negotiations;

10   (2) has no obvious deficiencies; (3) does not improperly grant preferential treatment

11   to class representatives or segments of the class; and (4) falls within the range of

12   possible approval."  *Spann*, 314 F.R.D. at 319 (citation and quotation marks

13   omitted).  The decision to approve a proposed settlement is committed to the

14   Court's discretion.  *See City of Seattle*, 955 F.2d at 1276 (appellate court cannot

15   "substitute [its] notions of fairness for those of the [trial] judge and the parties to

16   the agreement," and will reverse only upon strong showing of abuse of discretion)

17   (quoting *Officers for Justice*, 688 F.2d at 626).

### B.    This Settlement Is the Product of Serious, Informed, And Arm's-Length Negotiations

20        The Court must ensure that "the agreement is not the product of fraud or

21   overreaching by, or collusion between, the negotiating parties, and that the

22   settlement, taken as a whole, is fair, reasonable and adequate to all concerned."

---

23   [8]  *See* MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.632 (2004) ("MANUAL").
     See 5 William B. Rubenstein, NEWBERG ON CLASS ACTIONS (5th ed. 2015) § 13:10

24   (procedure safeguards class members' due process rights and enables the Court to
     fulfill its role as the guardian of class interests).

25   [9]  *Spann v. J.C. Penney Corp.*, 314 F.R.D. 312, 319 (C.D. Cal. 2016) (quotation
     marks omitted).  *See also* MANUAL § 21.632; 5 NEWBERG, § 13:13.

26   [10]  *See Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992)
     (noting the "strong judicial policy that favors settlements, particularly where

27   complex class action litigation is concerned"); *Officers for Justice v. Civil Serv.
     Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982) ("[V]oluntary conciliation and

28   settlement are the preferred means of dispute resolution."); 5 NEWBERG, § 13:44.

1  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998) (citation and

2  quotation marks omitted).

3      As detailed above, the Settlement is the result of arm's-length, contentious,

4  and thorough negotiations before several mediators over eight years, at the Court's

5  urging. *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) ("We

6  put a good deal of stock in the product of an arm's-length, non-collusive, negotiated

7  resolution . . . ."); *Franco v. Ruiz Food Prods.*, No. 10-cv-02354-SKO, 2012 WL

8  5941801, at *11 (E.D. Cal. Nov. 27, 2012) ("[T]he court may presume that, through

9  negotiation, the parties, their counsel, and the mediator arrived at a reasonable

10  range of settlement by considering Plaintiffs' likelihood of recovery.").

11      In addition, Counsel are experienced and understood the legal and factual

12  issues in this case. *In re Heritage Bond Litig.*, No. 02-ML-1475-DT, 2005 WL

13  1594403, at *9 (C.D. Cal. June 10, 2005) ("A presumption of correctness is said to

14  attach to a class settlement reached in arm's-length negotiations between

15  experienced capable counsel after meaningful discovery.") (citations and quotation

16  marks omitted); *In re United Energy Corp. Solar Power Modules Tax Shelter Inv.*

17  *Sec. Litig.*, MDL No. 726, 1989 WL 73211, at *3 (C.D. Cal. Mar. 9, 1989) ("The

18  recommendation of experienced counsel carries significant weight in the court's

19  determination of the reasonableness of the settlement.").

20      Plaintiffs have also undertaken substantial investigation, fact gathering, and

21  formal discovery, including review of tens of thousands of pages of documents,

22  retention and consultation of numerous experts in the fields of credit reporting and

23  consumer bankruptcies who filed numerous declarations with the Court, interviews

24  with numerous consumers, review of thousands of consumer credit reports, and

25  numerous depositions. Plaintiffs have taken or defended forty depositions,

26  produced over 50,000 pages of documents, and reviewed over 40,000 pages of

27  documents produced by Defendants. The parties have also engaged in extensive

28  motion practice before reaching the Settlement Agreement, including motions to

1   dismiss, for summary judgment, for leave to amend the complaint, and for class

2   certification.  *Id.*  The Court has presided over the hearings and executed no fewer

3   than seventy minute entries, entered at least one-hundred signed orders, and

4   authored eight published opinions.  *Compare Hanlon*, 150 F.3d at 1027 (approving

5   settlement where no evidence suggesting "the settlement was negotiated in haste or

6   in the absence of information").

7        Indeed, none of the tell-tale signs of collusion appear in this negotiation

8   process or proposed Settlement, further supporting a presumption it is within the

9   range of reasonableness.  *See In re Bluetooth Headset Prods. Liability Litig.*, 654

10  F.3d 935, 946-48 (9th Cir. 2011) (identifying possible signs of collusion).

11       **C.**    **The Settlement Has No Obvious Deficiencies**

12       Under the Settlement, Class Members will receive efficient and immediate

13  monetary and non-monetary relief, an outcome that is not guaranteed if this case

14  proceeds without a settlement.  As this Court previously observed, "Plaintiffs'

15  claims largely presented questions of first impression," and though "legitimate

16  arguments likely exist in support of Plaintiffs' view" of the law, "[i]f Defendants'

17  reading . . . had carried the day, Plaintiffs' legal theory would have been dead in the

18  water."  (Dkt. No. 776 at 8-19.)  Further, the Court tentatively denied Plaintiffs'

19  motion for class certification (Dkt. No. 369), and later observed that "continued

20  class action litigation poses significant manageability issues."  (Dkt. No. 776 at 9.)

21  Although Plaintiffs continue to believe that their claims have strong legal merit,

22  they recognize the risk of no, or a much more limited, recovery for Class members.

23  The risks of the case make clear that the settlement has no obvious deficiencies.

24  *Spann*, 314 F.R.D. at 319.

25       **D.**    **The Settlement Does Not Grant Preferential Treatment**

26       The Court must also consider whether the settlement grants preferential

27  treatment to class representatives or segments of the class.  *Spann*, 314 F.R.D. at

28  319.  This factor weighs in favor of granting preliminary approval because Class

1    Members will be compensated based on the type and extent of their injuries on a

2    pro rata basis.  *See supra* Section III.E.  Such distribution plans are generally

3    considered to be fair and reasonable.[11]

4         Further, the class representatives will not receive any preferential treatment.

5    As the Ninth Circuit has recognized, service awards "are intended to compensate

6    class representatives for work undertaken on behalf of a class [and] 'are fairly

7    typical in class action cases.'"  *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d

8    934, 943 (9th Cir. 2015) (citation omitted).  Under the Settlement, class

9    representatives will have the same opportunity as other Class members to apply to

10   the Court for reimbursement for efforts expended to substantially benefit the Class.

11        **E.    The Settlement Is Within the "Range Of Reasonableness"**

12        The Court must also consider whether the proposed Settlement "falls within

13   the range of possible approval."  *Spann*, 314 F.R.D. at 319.  The purpose is to

14   determine whether notice to the class of the terms and conditions of the Settlement

15   and holding a final approval hearing would be worthwhile.  5 NEWBERG § 13.10.

16   Far exceeding the "range of reasonableness" minimum threshold, this Settlement is

17   an excellent result for the class and easily merits approval.

18        At the final approval stage, a proposed Settlement may be approved by the

19   trial court if it is determined to be "fundamentally fair, adequate, and reasonable."

20   *City of Seattle*, 955 F.2d at 1276 (quoting *Officers for Justice*, 688 F.2d at 625).

21   The district court's ultimate determination finally approving the Settlement "will

22   involve a balancing of several factors" which may include: "the strength of

23   plaintiffs' case; the risk, expense, complexity, and likely duration of further

24   _____

25   [11] *See, e.g., Gaudin v. Saxon Mortg. Servs., Inc.*, No. 11-cv-01663-JST, 2015 WL
     7454183, at *8 (N.D. Cal. Nov. 23, 2015) ("Such a plan 'fairly treats class members
26   by awarding a pro rata share' to the class members based on the extent of their
     injuries.") (citation omitted); *Noll v. eBay, Inc.*, 309 F.R.D. 593, 601, 608 (N.D.
27   Cal. 2015) (approving pro-rata distribution as fair and reasonable); *In re High-Tech
     Emp. Antitrust Litig.*, No. 11-cv-02509-LHK, 2015 WL 5159441, at *8 (N.D. Cal.
28   Sep. 2, 2015) (approving pro-rata distribution of fractional share based upon class
     member's total base salary as fair and reasonable).

1    litigation; the risk of maintaining class action status throughout the trial; the amount

2    offered in settlement; the extent of discovery completed, and the stage of the

3    proceedings; the experience and views of counsel . . . and the reaction of the class

4    members to the proposed settlement." *Id.* at 1291.

5    　　These factors all weigh in favor of granting preliminary approval to the

6    proposed Settlement. *First*, although Plaintiffs stand by the merit of their claims,

7    the Court previously observed that they "largely presented questions of first

8    impression" but that if Defendants' arguments "had carried the day, Plaintiffs' legal

9    theory would have been dead in the water." (Dkt. No. 776 at 8-19.) The resulting

10   uncertainty on the merits thus counsels in favor of approving the Settlement.

11   　　*Second*, the Settlement avoids the other risks and expenses likely to attend

12   further litigation of this case, possibly through trial. In the absence of a Settlement,

13   the parties would be forced to litigate difficult class certification, summary

14   judgment, and trial issues, all of which could be delayed by further appeals by

15   either party, including the risk of interlocutory appeals. The Settlement instead

16   provides immediate relief to Class Members who have already waited a decade.

17   　　*Third*, this Settlement avoids risks attending to whether the case could be

18   maintained as a class action through trial. This Court tentatively denied Plaintiffs'

19   motion for class certification (Dkt. No. 369), and later observed that "continued

20   class action litigation poses significant manageability issues." (Dkt. No. 776 at 9.)

21   Had either the tentative ruling been confirmed, or had the class later been

22   decertified for manageability reasons, Plaintiffs would have been forced to abandon

23   the Class Claims. The vast majority of Class Members would never recover because

24   the cost of bringing a separate lawsuit to vindicate each individual Class Member's

25   claim would have vastly outweighed his or her potential recovery.

26   　　*Fourth*, the amount offered is significant: Class members may choose a Non-

27   Monetary or Convenience Award with a simple claim form that does not require

28   any attestation, or they may request Actual Damage Awards. *See supra* Sections

MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT
CASE NO. 05-CV-1070 DOC (MLGX)

III.C and III.D.  Thus, Class members will receive awards appropriately corresponding to the harms they suffered and their preferences for either the Non-Monetary or Convenience Awards made available under the Settlement.

*Fifth*, the Settlement offers significant non-monetary benefits to all Class members in the form of free credit reporting assistance about how to interpret, obtain, and correct credit reporting information from Defendants and through Defendants' reinvestigation processes.  *See supra* Section III.C.

*Sixth*, as previously noted, the parties have already completed extensive discovery, *see supra* Section II.B, and so had a strong basis to make an informed judgment concerning the potential costs and benefits of settling versus litigating.

*Seventh*, the experience and views of seasoned class action and FCRA counsel support preliminary approval.  *See, e.g., Nat'l Rural Telecomms. Coop. v. DIRECTV, INC.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) ("Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation.  This is because parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation." (citations, quotation marks, and modifications omitted));  *Spann v. J.C. Penney Corp.*, Case No. 12-cv-00215-FMO, 2016 WL 5844606, at *7 (C.D. Cal. Sep. 30, 2016) (where "class counsel are experienced class action attorneys who prosecuted th[e] action vigorously," their recommendation supports approval of a settlement); *see also Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979) ("The recommendations of plaintiffs' counsel should be given a presumption of reasonableness.").  This Court has previously noted that "the attorneys representing Settling Plaintiffs have significant experience in both complex class actions and FCRA litigation."  (Dkt. No. 776 at 15.)  The appearance of additional experienced Class Counsel bolsters the Court's earlier finding.

*Eighth*, the Court will have a full opportunity to consider the reactions of Class members at the final approval hearing.

In sum, these factors all weigh in favor of approving the proposed Settlement as within the range of reasonableness.

## F.   Provisional Certification of the Settlement Class Is Appropriate

When "the parties reach a settlement agreement prior to class certification, courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003).   For settlement purposes, Plaintiffs respectfully request that the Court provisionally certify the Class defined in the Agreement so that Class members may be informed of their rights under the proposed Settlement, their right to opt out, and their right to object.  Settlement Agreement § 1.75.  *See also* MANUAL §§ 21.632, 21.633.[12]

It is within the district court's sound discretion to certify a case as a class action if there is numerosity, commonality, typicality, and adequacy.  Fed. R. Civ. P. 23(b)(3).  These threshold requirements are met here.

### 1.   Numerosity

The Class consists of millions of people throughout the United States, and joinder of all such persons is impracticable.  *See* Fed. R. Civ. P. 23(a)(1); *Jordan v. Cnty. of L.A.*, 669 F.2d 1311, 1319 & n.10 (9th Cir. 1982) (listing thirteen cases in which courts certified classes with fewer than 100 members).  Thus, the numerosity requirement is met.  (*See* Dkt. No. 423 at 12-13.)

### 2.   Commonality

There are many questions of law and fact common to the Settlement Class.  *See* Fed. R. Civ. P. 23(a)(2); *Hanlon*, 150 F.3d at 1019 ("The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of

---

[12]  Defendants waive their right to challenge class certification solely for purposes of this Settlement.  Settlement Agreement ¶ DD.

1    salient facts coupled with disparate legal remedies within the class.").  The claims

2    of all Class members arise out of the same core of facts, as this Court previously

3    noted.  (Dkt. No. 423 at 13-14 [commonality satisfied]; *see also Acosta v. Trans*

4    *Union LLC*, 243 F.R.D. 377, 384 (C.D. Cal. 2007) (commonality satisfied in FCRA

5    case because "all members of the potential class derive their claims from the same

6    set of circumstances," "[t]he same alleged conduct of Defendants forms the basis

7    for each of the plaintiffs' claims," and "the same legal issues also govern the

8    Plaintiffs' claims).)  Similarly, Plaintiffs' claims all raise the same legal issues:

9    whether Defendants fail to exercise reasonable measures to ensure the maximum

10   accuracy of credit reports under the FCRA.  *Id.*

11        This Settlement also addresses the Court's concern, expressed in its tentative

12   order denying Plaintiffs' motion for class certification, that some Class members

13   may not have been harmed by Defendants' credit reporting procedures.  Although

14   Plaintiffs "would not be required to prove causation or actual damages" to obtain

15   statutory damages under the FCRA, *see Acosta*, 243 F.R.D. at 393, the Settlement's

16   claims process allows for Class members who believe they have been harmed to

17   certify and document the type of harm they suffered.  Settlement Agreement

18   § 7.2(b).  Those Class members who cannot meet these requirements will still

19   receive the option of either a package of Non-Monetary relief designed to help

20   consumers seeking to improve their credit or a Convenience Award.  *Id.* § 7.2(a).

21             **3.    Typicality**

22        "[R]epresentative claims are 'typical' if they are reasonably co-extensive

23   with those of absent class members."  *Hanlon*, 150 F.3d at 1020.  Typicality does

24   not require total identity between representative plaintiffs and class members.

25   *Armstrong v. Davis*, 275 F.3d 849, 869 (9th Cir. 2001).  Rather, typicality is

26   satisfied so long as claims stem "from the same event, practice, or course of

27   conduct that forms the basis of the class claims, and is based upon the same legal

28

1    theory." *Jordan*, 669 F.2d at 1321.  Factual differences—including in the amount

2    of damages—will not defeat typicality.  (*See also* Dkt. No. 423 at 14-15.)

3    　　　Here, the Named Plaintiffs' claims arise from the same course of Defendants'

4    conduct as the claims of absent Class members, namely, Defendants' deficient

5    procedures for reporting the status of pre-bankruptcy debt.  Moreover, Plaintiffs

6    have suffered substantially the same injury as absent Class members: violation of

7    their statutory right to accuracy in the reporting of information about their financial

8    affairs.  Finally, the Named Plaintiffs' claims and those of other Class members are

9    based on the same legal theories.  *See, e.g.*, *Acosta*, 243 F.R.D. at 385 (typicality

10   was satisfied even if the named plaintiffs' credit scores "may have been impacted

11   more or less dramatically than were those of other class members" because "[a]ny

12   legally relevant distinction . . . speaks to the issue of damages, which is immaterial

13   here where the FCRA awards statutory damages").  Typicality is met.

14   　　　　　　　**4.**　**Adequacy**

15   　　　Finally, the named plaintiffs can fairly and adequately represent and protect

16   the interests of the class.  This inquiry requires evaluating whether "the

17   representative plaintiffs and their counsel have any conflicts of interest with other

18   class members," and whether the "representative plaintiffs and their counsel

19   prosecute the action vigorously on behalf of the class."  *Staton*, 327 F.3d at 957.

20   　　　Both requirements are met.  To find adequacy, there must be "an absence of

21   antagonism [and] a sharing of interests between representatives and absentees."

22   *Molski v. Gleich*, 318 F.3d 937, 955 (9th Cir. 2003).  Here, the Class

23   Representatives do not have any unique financial incentives to accept the

24   Settlement.  *See, e.g., Staton*, 327 F.3d at 975-78.  As noted above, *see supra*

25   Section III.I, no Class Representative will receive a service award unless it is

26   reviewed and approved by this Court.  Further, no service award is conditional on

27   support for the proposed Settlement.  *Compare Radcliffe*, 715 F.3d at 1165

28   (conditional service awards caused interests of class representatives to diverge from

MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT
CASE NO. 05-CV-1070 DOC (MLGX)

other class members).  Finally, service awards under the Settlement are not limited to Class Representatives, but to any Class member who can adequately demonstrate to the Court that he or she provided a service that substantially benefited the Class. *See* Settlement Agreement § 12.1.  Thus, there is no basis to conclude the Class Representatives cannot adequately represent the Class.

Secondly, there can be no doubt that both the Class Representatives and Class Counsel have "prosecute[d] the action vigorously on behalf of the class" for over a decade.  *Staton*, 327 F.3d at 957.  As this Court previously found, this team has strong FCRA and class-action expertise and has worked diligently on behalf of the class, including negotiating "far-reaching and incredibly valuable injunctive relief" on behalf of the Class.  (Dkt. 956 at 28.)  Class Counsel have devoted large amounts of time and financial resources, including paying hundreds of thousands of dollars in out-of-pocket expenses, to litigate this case to a successful resolution over the course of over a decade.  They have also expended considerable time and effort vigorously litigating this case.  *See supra* Sections II.B and II.C; Sobol Decl. ¶ 9. Thus, where, as here, proposed class counsel "include some of the most experienced lawyers in the United States in the prosecution of . . . class actions" and have demonstrated that they are "ready, willing and able to devote the resources necessary to litigate the case vigorously," the adequate representation requirement is more than satisfied.  *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 169 F.R.D. 493, 515 (S.D.N.Y. 1996).[13]

---

[13]  Indeed, the Ninth Circuit recently affirmed this Court's refusal to replace undersigned Class Counsel, based on this Court's conclusion they "possessed greater experience and knowledge relevant to this case" than other counsel, and that Class Counsel had "taken extraordinary steps to neutralize the effect of the [earlier] ethical violation" to be compelling.  *Radcliffe*, 818 F.3d at 548-49.  In reaching that decision, the Ninth Circuit also noted that the legal team "had done extensive work for the class."  *Id.* at 548.

1

### 5. __Predominance__

2      Finally, common questions present a significant aspect of the case and can be

3   resolved for all Settlement Class members in a single adjudication.  *See* Fed. R.

4   Civ. P. 23(b)(3).  "An individual question is one where members of a proposed

5   class will need to present evidence that varies from member to member, while a

6   common question is one where the same evidence will suffice for each member to

7   make a prima facie showing [or] the issue is susceptible to generalized, class-wide

8   proof."  *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016).  "The

9   predominance inquiry asks whether the common, aggregation-enabling, issues in

10  the case are more prevalent or important than the non-common, aggregation-

11  defeating, individual issues."  *Id.*

12     Here, the predominance requirement is met because the common issues

13  described above apply to all class members.  As noted above, the only possible

14  variation is in the amount of damages, which is immaterial here because "the FCRA

15  awards statutory damages."  *Acosta*, 243 F.R.D. at 385.

16     Further, because the proposed Settlement will resolve all remaining claims in

17  the Litigation for all Class members (excluding those who elect to file a timely and

18  valid opt out form to preserve their right to file a separate, individual suit), there

19  will be no trial, so the Court need not take into account the manageability of trial.

20  Finally, resolution of millions of claims in one action through this Settlement is far

21  superior to individual lawsuits and promotes consistency and efficiency of

22  adjudication.  *See* Fed. R. Civ. P. 23(b)(3); *see also Malta v. Fed. Home Loan*

23  *Mortg. Corp.*, No. 10-cv-1290 BEN (NLS), 2013 WL 444619, at *4 (S.D. Cal. Feb.

24  5, 2013) (superiority met where "considerations of judicial economy favor litigating

25  a predominant common issue once in a class action instead of many times in

26  separate lawsuits" and the "small individual claims of class members" made it

27  "unlikely that individual actions will be filed").

28     Thus, certification of the Settlement Class for settlement is appropriate.

MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT
CASE NO. 05-CV-1070 DOC (MLGX)

### G.    The Proposed Notice Program Is Constitutionally Sound

"Rule [23(e)] requires the court to 'direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise' regardless of whether the class was certified under Rule 23(b)(1), (b)(2), or (b)(3)." MANUAL § 21.312. The best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). *See* MANUAL § 21.312 (describing goals of notice).

The proposed forms of Notice, attached as Exhibits 5-7 to the Sobol Declaration, satisfy these criteria. The Notice Plan provides for direct, individual notice via either email or mail. Settlement Agreement § 6.2(a). A reverse look-up will be performed for email addresses before mail notice is attempted. *Id.*. Also, notice will be provided to Class members online through the settlement website. *Id.* § 6.2(b). This is in addition to the two rounds of Notice that already went out in connection with the 2009 Proposed Settlement and which resulted in hundreds of thousands of claims that will be honored in connection with this Settlement.

## V.    The Court Should Schedule a Final Approval Hearing

Plaintiffs request that the Court set the date of December 11, 2017 for a hearing on final approval, the last step in the Settlement approval process.

## VI.    CONCLUSION

For all of the foregoing reasons, Plaintiffs respectfully request that the Court grant preliminary approval of the proposed Settlement; appoint the undersigned as Class Counsel; provisionally certify the Class for settlement purposes; approve and direct distribution to the Class of the Notice of Settlement and a Claim Form; and approve the schedule for final settlement approval.

MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT
CASE NO. 05-CV-1070 DOC (MLGX)

1  Dated:  April 14, 2017            Respectfully submitted,

2                                    LIEFF, CABRASER, HEIMANN & BERNSTEIN,
                                     LLP
3

4
                                     By:_____/s/_Michael W. Sobol_____
5                                              Michael W. Sobol

6                                    Michael W. Sobol (State Bar No. 194857)
                                     (msobol@lchb.com)
7                                    275 Battery Street, 29th Floor
                                     San Francisco, CA 94111-3339
8                                    Telephone:  (415) 956-1000
                                     Facsimile:  (415) 956-1008
9

10                                   By:_____/s/_Michael A. Caddell_____
                                               Michael A. Caddell
11                                   Michael A. Caddell (State Bar No. 249469)
                                     (mac@caddellchapman.com)
12                                   Cynthia B. Chapman (State Bar No. 164471)
                                     (cbc@caddellchapman.com)
13                                   CADDELL & CHAPMAN
                                     628 East 9th Street
14                                   Houston, TX 77007
                                     Telephone:  (713) 751-0400
15                                   Facsimile:  (713) 751-0906

16
                                     By:_____/s/_James A. Francis_____
17                                             James A. Francis

18                                   James A. Francis (pro hac vice)
                                     jfrancis@consumerlawfirm.com
19                                   David A. Searles (pro hac vice)
                                     dsearles@consumerlawfirm.com
20                                   FRANCIS & MAILMAN, P.C.
                                     Land Title Building, 19th Floor
21                                   100 South Broad Street
                                     Philadelphia, PA 19110
22                                   Telephone: (215) 735-8600
                                     Facsimile: (215) 940-8000
23
                                     Stuart T. Rossman (BBO No. 430640)
24                                   (srossman@nclc.org)
                                     Charles M. Delbaum (BBO No. 543225)
25                                   (cdelbaum@nclc.org)
                                     NATIONAL CONSUMER LAW CENTER
26                                   7 Winthrop Square, 4th Floor
                                     Boston, MA 02110
27                                   Telephone:  (617) 542-8010
                                     Facsimile:   (617) 542-8028
28

MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT
CASE NO. 05-CV-1070 DOC (MLGX)

Leonard A. Bennett (VSB No. 37523)
(lenbennett@cavtel.net)
Matthew Erausquin  (VSB No. 65434)
(matt@clalegal.com)
CONSUMER LITIGATION ASSOCIATES, P.C.
12515 Warwick Boulevard, Suite 201
Newport News, Virginia 23606
Telephone:  (757) 930 3660
Facsimile:   (757) 930-3662

Arthur H. Bryant
(abryant@publicjustice.net)
PUBLIC JUSTICE, P.C.
555 12th Street, Suite 1230
Oakland, CA 94607
Telephone: (510) 622-8150
Facsimile: (510) 622-8155

F. Paul Bland, Jr.
(pbland@publicjustice.net)
PUBLIC JUSTICE, P.C.
1620 L Street, Suite 630
Washington, DC 20036
Telephone: (202) 797-8600
Facsimile: (202) 232-7203

*Attorneys for Hernandez Plaintiffs*

## ATTESTATION STATEMENT

I, Michael W. Sobol, am the ECF User whose identification and password are being used to file this Motion.  Pursuant to Local Civil Rule 5-4.3.4(a)(2)(i), I attest under penalty of perjury that concurrence in this filing has been obtained from the above-signed counsel.

*/s/ Michael W. Sobol*
Michael W. Sobol

MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT
CASE NO. 05-CV-1070 DOC (MLGX)