1
2
3
4
5
6
7

8          UNITED STATES DISTRICT COURT

9          CENTRAL DISTRICT OF CALIFORNIA

10                 SOUTHERN DIVISION

11

12   TERRI N. WHITE, et al.,                    Case No. 05-CV-1070 DOC (MLGx)
                                                (Lead Case)
13                    Plaintiffs,
                                                **ORDER**
14   v.                                         **(1) GRANTING PRELIMINARY**
                                                **APPROVAL TO PROPOSED CLASS**
15   EXPERIAN INFORMATION                       **ACTION SETTLEMENT;**
     SOLUTIONS, INC.,                           **(2) CONDITIONALLY**
16                                              **CERTIFYING SETTLEMENT**
                      Defendant.                **CLASS; (3) APPOINTING CLASS**
17                                              **COUNSEL; (4) APPOINTING**
                                                **SETTLEMENT ADMINISTRATOR;**
18                                              **(5) APPROVING NOTICE PLAN;**
                                                **AND (6) SCHEDULING FINAL**
19                                              **APPROVAL HEARING DATE AND**
                                                **RELATED DATES**
20
                                                Date:  May 30, 2017
21                                              Time: 8:30 A.M.
                                                The Honorable David O. Carter
22

23   _____

24   and Related Cases:

25   05-cv-01073-DOC (MLGx)
     05-cv-7821-DOC (MLGx)
26   06-cv-0392-DOC (MLGx)
     05-cv-1172-DOC(MLGx)
27   06-cv-5060-DOC (MLGx)

28

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION .................................................................................. 1

II.    BACKGROUND .................................................................................. 2

III.   THE SETTLEMENT BENEFITS .......................................................... 7

    A.   Settlement Class ......................................................................... 7

        1.   Identifying 23(b)(3) Class Members ............................... 8

        2.   Opt Out Procedure .......................................................... 9

    B.   Non-Monetary Benefits/Credit Reporting ................................. 9

    C.   Payments to the Class Members ............................................... 11

    D.   Claims Administration .............................................................. 11

    E.   Timetable to Disburse Awards from Monetary Relief
        Settlement Fund ........................................................................ 13

    F.   Service Awards ......................................................................... 13

    G.   Attorneys' Fees And Costs ....................................................... 13

    H.   Settlement Administration and Notice ...................................... 14

    I.   *Cy Pres* Distributions .............................................................. 14

IV.    PROVISIONAL CERTIFICATION OF 23(b)(3) CLASS ........................ 15

    A.   Plaintiffs' Claims Satisfy the Threshold Requirements for Class
        Certification. ............................................................................. 15

        1.   The Class Is So Numerous That Joinder Is Impracticable. ...... 15

        2.   There Are Questions of Law or Fact Common to
            the Class. ......................................................................... 15

        3.   The Claims Of The Named Plaintiffs Are Typical Of
            Those Of All Other Class Members. ............................. 16

        4.   The Plaintiffs Adequately Represent The Class. ........... 17

    B.   Plaintiffs' Monetary Relief Claims Satisfy the Requirements for
        Class Certification for Purposes of Settlement Under
        Rule 23(b)(3). ........................................................................... 19

V.     THE CRITERIA FOR PRELIMINARY SETTLEMENT APPROVAL
    ARE MET .......................................................................................... 21

    A.   This Settlement Is The Product of Serious, Informed, and
        Arm's-Length Negotiations ...................................................... 21

    B.   The Settlement Has No Obvious Deficiencies ......................... 23

    C.   The Settlement Does Not Grant Preferential Treatment ........... 23

    D.   The Settlement Is Within the "Range Of Reasonableness" ...... 24

    E.   The Court Believes the Settlement Is in the Best Interests of the
        Class. ........................................................................................ 27

    F.   The Proposed Notice Program Is Constitutionally Sound. ...... 28

1343772.5

-i-

[PROPOSED] ORDER GRANTING PRELIMINARY
APPROVAL TO PROPOSED CLASS ACTION SETTLEMENT
CASE NO. 05-CV-1070 DOC (MLGx) (LEAD CASE)

**TABLE OF CONTENTS**
**(continued)**

Page

G.    Scheduling Final Approval Hearings Is Appropriate. .........................30

VI.    CONCLUSION ...............................................................................30

1  **I.    INTRODUCTION**

2          Plaintiffs José Hernandez, Kathryn Pike, Robert Randall, Bertram Robison,

3  Camille Chapman, and Lewis Mann (collectively, "Plaintiffs") have submitted for

4  the Court's preliminary approval a proposed nationwide class action settlement of

5  the claims for monetary relief against all Defendants ("Settlement").[1]  In August

6  2008, this Court approved the settlement of the injunctive relief claims raised in

7  these *White v. Experian* related cases.[2]  In April 2009, the Court granted

8  preliminary approval to a settlement of the monetary relief claims, followed by final

9  approval in 2010 (the "2009 Proposed Settlement").  *See* Dkt. Nos. 423 and 776.

10 The Ninth Circuit reversed final approval of the 2009 Proposed Settlement based on

11 concerns about the language of the service award provision.  *See Radcliffe v.*

12 *Experian Information Solutions, Inc.*, 715 F.3d 1157, 1164-65 (9th Cir. 2013).  The

13 Ninth Circuit did not disapprove of any other portions of the Settlement.

14         Now the Plaintiffs seek approval of a new proposed Settlement that resolves

15 all monetary damages claims in the Litigation.  Plaintiffs report that the new

16 Settlement offers the Class additional relief and addresses the deficiencies

17 identified by the Ninth Circuit.

18         Having reviewed the Amended Settlement Agreement and Release (a copy of

19 which is attached hereto as Exhibit 1, herein "Settlement Agreement"), Plaintiffs'

20 Memorandum In Support of Motion for Preliminary Approval of Settlement and all

21 papers filed therewith, and arguments of the parties, and based on its extensive

22 familiarity with this Litigation, the Court now FINDS, CONCLUDES, and

23 ─────────────
   [1] Defendants are:  Experian Information Solutions, Inc. ("Experian"), Equifax

24 Information Services, LLC ("Equifax"), and TransUnion LLC ("TransUnion")
   (together, "Defendants").

25 [2] *Terri N. White, et al. v. Experian Information Solutions, Inc.*, Case No. 05-cv-
   1070 (Lead Case number); *Terri N. White, et al. v. Equifax Information Services*

26 *LLC*, Case No. 05-cv-7821; *Terri N. White, et al. v. TransUnion LLC*, 05-cv-1073;
   *Jose Hernandez v. Equifax Information Services, LLC, et al.*, Case No. 06-cv-3924;

27 *Jose L. Acosta et al., v. TransUnion LLC, et al.*, Case No. 06-cv-5060; and *Kathryn*
   *L. Pike v. Equifax Information Services, LLC*, Case No. 05-cv-1172.  These cases

28 are collectively referred to herein as the "Litigation."

[PROPOSED] ORDER GRANTING PRELIMINARY
APPROVAL TO PROPOSED CLASS ACTION SETTLEMENT
CASE NO. 05-CV-1070 DOC (MLGx) (LEAD CASE)

ORDERS as follows:

The proposed Settlement satisfies and exceeds the preliminary approval criteria that a settlement be "fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e). Accordingly, as set forth herein, the Court:  (1) grants preliminary approval to the proposed Settlement; (2) provisionally certifies the proposed Settlement Class; (3) appoints as Class Counsel Lieff Cabraser Heimann & Bernstein, LLP, Caddell & Chapman, Francis & Mailman, National Consumer Law Center, Consumer Litigation Associates, P.C., Callahan Thompson Sherman & Caudill LLP, and Public Justice, P.C.; (4) appoints JND Legal Administration as the Settlement Administrator; (5) approves the proposed Notice Plan and forms of Notice; and (6) schedules the final fairness hearing on December 11, 2017.

## II.   BACKGROUND

The Litigation has been pending before this Court since the Fall of 2005.  On or about November 2, 2005, plaintiffs in *White* filed separate actions in this District against each of the Defendants.  Prior to the filing of *White*, on October 3, 2005, José Hernandez filed a similar action against Defendants in the Northern District of California.  *Hernandez* was then transferred to this Court, and, on August 11, 2006, was consolidated with *White* via three separate Second Amended Consolidated Class Action Complaints, one against each Defendant (herein, "*White/Hernandez*").[3]

Subsequently, *White/Hernandez* was related to two other actions, *Acosta* and *Pike*.  Jose L. Acosta, Jr., had previously filed an action in California Superior Court against TransUnion on May 12, 2003, and on August 14, 2006, he filed again

_____

[3] The remaining named plaintiffs under the *White/Hernandez* Second Amended Complaints are Robert Radcliffe, Chester Carter, Maria Falcon, Clifton C. Seale, III, and Jose Hernandez.  Plaintiffs Terri N. White, Alex K. Gidi, and Milagros Gabrillo were dismissed by court order on October 19, 2007.

*Footnote continued on next page*

[PROPOSED] ORDER GRANTING PRELIMINARY APPROVAL TO PROPOSED CLASS ACTION SETTLEMENT CASE NO. 05-CV-1070 DOC (MLGx) (LEAD CASE)

in this District.[4]  On October 14, 2005, Kathryn Pike had filed an action in California Superior Court against Equifax, which was later removed to this District and transferred to this Court as related to *White/Hernandez*.

As a result, each of these cases has been either filed, transferred, or removed such that they are in the Central District before this Court.

Plaintiffs allege that each Defendant recklessly or negligently violated and, until enjoined by this Court, continued to violate the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681 *et seq.*, by failing to maintain reasonable procedures to assure the accurate reporting of debts that have been discharged in bankruptcy. Plaintiffs contend that Defendants' procedures, by which Defendants relied primarily on creditors and public record vendors to report the discharged status of debts and judgments, were unreasonable procedures under the FCRA.  They further allege that Defendants failed to employ reasonable reinvestigation procedures pursuant to the FCRA.  Plaintiffs assert claims for (i) willful and/or negligent violation of Section 1681e(b) of the FCRA and its California counterpart, Cal. Civ. Code Section 1785.14(b), for failure to maintain reasonable procedures to assure maximum possible accuracy; (ii) willful and/or negligent violation of Section 1681i of the FCRA and its California counterpart, Cal. Civ. Code Section 1785.16, for failure to reasonably investigate consumer disputes regarding the status of the discharged accounts; and (iii) violation of California's Unfair Competition law, Bus. & Prof. Code section 17200, *et seq.*

In or around September 2006, Defendants answered the various Second Amended Complaints, denying the allegations therein, denying that the actions are suitable for certification pursuant to Federal Rule of Civil Procedure 23, and asserting numerous affirmative defenses that Defendants contend are meritorious.

---

[4] The remaining named plaintiffs in *Acosta* are Robert Randall and Bertram Robison.  Plaintiff Acosta was dismissed from the federal court action and has dismissed his state court action.

-3-

Plaintiffs in the Litigation have undertaken substantial investigation, fact-gathering, and formal discovery.  Discovery efforts included review of tens of thousands of pages of documents, retention and consultation of numerous experts in the fields of credit reporting and consumer bankruptcies, interviews with numerous consumers, and review of thousands of consumer credit reports.  Plaintiffs have taken or defended forty depositions, produced over 50,000 pages of documents, and reviewed over 40,000 pages of documents produced by the Defendants.  They have retained several experts who have filed numerous declarations with the Court.  Moreover, the parties have engaged in extensive motion practice before reaching the Settlement Agreement.  They have attended several status conferences and hearings on class certification, settlement approval, and summary judgment.  This Court has presided over the hearings and executed no fewer than seventy minute entries, entered at least one-hundred signed orders, and authored eight published opinions.

From on or about August 15, 2007 to February 5, 2009, the Parties conducted arm's-length, contentious, lengthy, and complicated negotiations (with the participation of Defendants' insurance carriers), including some at this Court's suggestion.  These efforts included seven formal mediation sessions with a JAMS mediator, the Hon. Lourdes Baird (Ret.), regarding injunctive and monetary relief, and five formal mediation sessions with mediator Randall Wulff regarding monetary relief (including a settlement conference at the Court on February 5, 2009), as well as several additional in-person or telephonic sessions with both mediators.

On or about April 3, 2008, the parties entered into the Injunctive Relief Settlement Agreement, in which Defendants agreed to retroactively update the credit files of 23(b)(2) Settlement Class members to reflect the discharge of certain categories of pre-bankruptcy civil judgments and tradelines.  Defendants also

-4-

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

agreed to adopt new procedures for the update of certain pre-bankruptcy civil judgments and tradelines when a public record entry of the bankruptcy has been added to a consumer's file.  On August 19, 2008, the Court approved these new procedures, found them to be reasonable under the FCRA, and entered an Approval Order Regarding Settlement and Release for the Injunctive Relief Settlement Agreement (Dkt. 290).

On January 26, 2009, the Parties appeared for a hearing on Plaintiffs' Motion for Class Certification and, prior to the scheduled hearing, the Court issued a tentative ruling denying Plaintiffs' Motion for Class Certification pursuant to Fed. R. Civ. P. 23(b)(3).

The Parties and Defendants' insurance carriers then participated in a settlement conference at the Court on February 5, 2009.  At that conference, Plaintiffs, Equifax, and Experian reached agreement as to the principal terms of a settlement of all of Plaintiffs' claims in the Litigation for monetary damages, including statutory and punitive damages, as reflected in the Settlement Agreement. TransUnion agreed to the settlement terms on February 18, 2009.

After this Court granted preliminary approval (Dkt. No. 423), notice was given to the Class.  Plaintiffs then moved for final approval (Dkt. No. 604), which this Court granted after concluding the settlement was fair and reasonable and after giving due consideration to all objections received (Dkt. No. 776).  Some Objectors appealed to the Ninth Circuit, which disapproved of a provision of the settlement related to service awards.  See *Radcliffe v. Experian Information Solutions, Inc.*, 715 F.3d 1157, 1164-65 (9th Cir. 2013).  The Ninth Circuit, however, gave no indication that the core terms of the settlement—those relating to its magnitude, the distribution method, the notice provisions, and so on—were not fair and reasonable.

On remand in 2013, Class Counsel associated with new, experienced counsel, Public Justice, P.C. and Francis & Mailman.  Class Counsel have also

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

entered into a cooperating counsel agreement vetted by Professor Charles Silver to ensure that newly associated counsel is properly incentivized to achieve the best result for the Class and have agreed to relinquish any fees earned for the work performed during the period of the conflict identified by the Ninth Circuit (April 16, 2009 through April 22, 2013).  Class Counsel took these measures as safeguards to ensure that the Class's best interests were protected after the Ninth Circuit's remand.

After these steps were taken, counsel for an objecting party moved to disqualify Class Counsel and to be appointed as Interim Class Counsel on June 19, 2013.  (Dkt. No. 876.)  This Court denied that motion on January 21, 2014, and again in an amended order on May 1, 2014.  (Dkt. Nos. 947 and 956.)  On appeal, the Ninth Circuit in March 2016 affirmed this Court's order.  *Radcliffe v. Hernandez*, 818 F.3d 537 (9th Cir. 2016).  The Objectors then sought a writ of certiorari from the United States Supreme Court, which the Supreme Court denied on January 9, 2017.

After the Ninth Circuit's March 2016 ruling, the Parties resumed settlement negotiations and attended a mediation with the Hon. Daniel Weinstein (Ret.) on August 25, 2016, but did not reach agreement.  On September 19, 2016, Plaintiffs moved for leave to file a Third Amended Complaint to add two additional Class Representatives and three narrower, more focused subclasses.  (Dkt. No. 1005.)  On October 11, 2016, this Court tentatively denied Plaintiffs' motion and ordered the parties to appear for a settlement conference before the Hon. Dickran M. Tevrizian. (Dkt. No. 1021.)  Through those negotiations, the parties reached the proposed Settlement Agreement on November 7, 2016.  Sobol Decl. ¶ 3.  On April 13, 2017, two new Plaintiffs, Camille Chapman and Lewis Mann, were added as Class Representatives by stipulation. (Dkt. 1045.)

-6-

1343772.5

### III.    THE SETTLEMENT BENEFITS

Under the Settlement, Defendants agree to contribute an additional $1 million to the existing Settlement Fund from the 2009 Proposed Settlement (approximately $37 million remaining after payment of prior notice and administrative expenses) and to provide non-monetary benefits to Class Members in the form of information about consumer credit reporting assistance.  In addition, Class Members now have the option to elect for non-monetary relief in the form of one free credit report and two free VantageScores in lieu of a damages award, as described below, if they so choose.  The Fund will be used to pay benefits to eligible Class members who have submitted qualifying claims, as well as pay the costs of settlement administration, service awards, and attorneys' fees and costs. Class members qualify for different forms of monetary relief depending on whether they believe they suffered harm from errors in their credit reports regarding debt discharged in bankruptcy, or whether they cannot confirm actual harm but are nevertheless relinquishing their right to statutory damages.

The Amended Settlement Agreement and Release ("Settlement Agreement") will resolve all of the claims of the Plaintiffs and all members of the Settlement Class.  Set forth below is a summary which paraphrases the key terms of the Settlement Agreement.[5]

### A.    Settlement Class

The "23(b)(3) Settlement Class" includes all Consumers who have received an order of discharge pursuant to Chapter 7 of the United States Bankruptcy Code and who, any time between and including March 15, 2002 and May 11, 2009 (or, for California residents in the case of TransUnion, any time between and including May 12, 2001 and May 11, 2009), have been the subject of a Post-bankruptcy Credit Report issued by a Defendant in which one or more of the following

---

[5] References to Settlement terms and definitions follow those in the Settlement Agreement, attached as Exhibit 1.

appeared:

a.      A Pre-bankruptcy Civil Judgment that was reported as outstanding (i.e., it was not reported as vacated, satisfied, paid, settled or discharged in bankruptcy) and without information sufficient to establish that it was, in fact, excluded from the bankruptcy discharge;

b.      A Pre-bankruptcy Installment or Mortgage Loan that was reported as delinquent or with a derogatory notation (other than "discharged in bankruptcy," "included in bankruptcy," or similar description) and without information sufficient to establish that it was, in fact, excluded from the bankruptcy discharge;

c.      A Pre-bankruptcy Revolving Account that was reported as delinquent or with a derogatory notation (other than "discharged in bankruptcy," "included in bankruptcy," or similar description) and without information sufficient to establish that it was, in fact, excluded from the bankruptcy discharge; and/or,

d.      A Pre-bankruptcy Collection Account that remained in collection after the Bankruptcy Date.

Settlement Agreement §1.75.  Certain limited categories of individuals are excluded, as provided for in the Settlement Agreement.  *Id.*  The Settlement Class is co-extensive with the Settlement Class previously approved by this Court.

## 1.    Identifying 23(b)(3) Class Members

Under the 2009 Proposed Settlement, Defendants identified Class members using commercially reasonable procedures to search a selection of their archived files.  Defendants will update that list within thirty (30) days of Preliminary Approval with the last known mailing address, together with Social Security Numbers (to ensure the most accurate possible address information for notice).  Settlement Agreement § 6.1.

### 2.     Opt Out Procedure

A proposed 23(b)(3) Settlement Class Member may request to be excluded from the 23(b)(3) Settlement Class by sending a written request for exclusion to the Settlement Administrator no later than 60 days after the Notice Deadline.  The opt out request must contain the Class Member's original signature, current postal address, and telephone number, the last four digits of the Class Member's Social Security number, and a specific statement that the Class Member wants to be excluded from the 23(b)(3) Class.  Settlement Agreement §§ 8.1, 1.46.  Upon final approval, any Class member who has not opted out will be deemed to have released their claims.  Settlement Agreement §§ 1.61-1.62.  Class members who previously opted out of the 2009 Proposed Settlement but do not submit a request for exclusion in connection with the Settlement or otherwise take any action in the Settlement shall nevertheless be deemed to have submitted a valid request for exclusion in connection with the Settlement.

### B.     Non-Monetary Benefits/Credit Reporting

Under the Settlement, Defendants will provide Class members with information about Defendants' consumer relations and investigation processes to dispute any erroneous credit information on their credit reports.  Settlement § 3.2, Schedule 3.2.  A link to the "Consumer Credit Reporting Assistance" webpage will be featured in the email and long-form notices and will contain valuable information about (a) how to obtain free file disclosures; (b) how to read and understand credit reports; (c) the differences between a credit report and a credit score; (d) how credit scores vary over time; (e) how to obtain a credit score; (f) how to use settlement benefits to track credit ratings and monitor improvements; and (g) how to dispute inaccuracies in credit reports and make the most of Defendants' reinvestigation processes.  *Id*.  The Court finds this consumer credit reporting assistance is a significant nonmonetary benefit.

In addition to the credit assistance that will be available to all Class members,

[PROPOSED] ORDER GRANTING PRELIMINARY
APPROVAL TO PROPOSED CLASS ACTION SETTLEMENT
CASE NO. 05-CV-1070 DOC (MLGx) (LEAD CASE)

the Settlement also requires Defendants to give all Class members the opportunity
to request an extra copy of their credit reports (beyond the free FACTA disclosure)
and two VantageScore Credit Scores, in lieu of a Damages Award. *Id.* All Class
members may claim this benefit without being required to make an attestation
regarding credit report errors or actual harm suffered. While it is difficult to
quantify the value of this package to Class members, the Court finds that—in light
of the purposes of this litigation and the types of harms that Class members have
allegedly suffered—this option of non-monetary relief has significant value. Even
if the value of these new benefits were estimated at $1 per class member, the total
relief available would exceed $15 million. Defendants themselves currently offer
the VantageScore credit scores for $7.95 each, although it may be available at a
lesser cost through other organizations or as part of a credit monitoring package.
All Class members have been through bankruptcy and are therefore likely to benefit
from information designed to help them correct errors on their credit reports and
improve their credit ratings.

In making this finding, the Court is informed of recent consent orders by the
Consumer Financial Protection Bureau in cases alleging TransUnion, Equifax, and
Experian misrepresented that their proprietary credit score products (including
TransUnion's VantageScore) were the same credit score used by
lenders. According to the CFPB, "[n]o single credit score or credit score model is
used by every lender" and "[l]enders use an array of credit scores, which vary by
score provider and scoring model."[6] The Court is satisfied that the Settlement

---

[6] See *CFPB Orders TransUnion and Equifax to Pay for Deceiving Consumers in Marketing Credit Scores and Credit Products*, Jan. 3, 2017,
https://www.consumerfinance.gov/about-us/newsroom/cfpb-orders-transunion-and-equifax-pay-deceiving-consumers-marketing-credit-scores-and-credit-products/; *see also CFPB Fines Experian $3 Million For Deceiving Consumers in Marketing Credit Scores*, Mar. 23, 2017, https://www.consumerfinance.gov/about-us/newsroom/cfpb-fines-experian-3-million-deceiving-consumers-marketing-credit-scores/.

Agreement will require Defendants' website to explain the VantageScore in a manner consistent with the CFBP's consent orders, and that with those safeguards, the VantageScore option has meaningful value to Class members.

### C.    Payments to the Class Members

The Settlement provides relief for all Class members who have had a credit report issued by a Defendant with alleged errors regarding debts discharged in bankruptcy.  Settlement Agreement § 7.2.  All Class members can apply for a fixed or "Convenience" damage award, which will be an equal pro rata share of the available Convenience Award Fund.  Settlement Agreement § 7.2(a).  Class members are not required to make an attestation to file a Convenience Award claim; thus, Convenience Awards are available to Class members without an attestation. The Convenience Award amount will depend on the number of claimants for the Convenience and Actual Damage Awards, but is estimated to be approximately $15-20 per claimant.

Class members who certify that they have been damaged by an alleged error in their credit reports about debts discharged in bankruptcy with respect to a denial of employment, a mortgage loan or housing rental, and/or a credit card, auto loan, other credit they applied for, or payment of a discharged debt to obtain credit, can apply for an "Actual Damage Award." *Id.* § 7.2(b).  If the Settlement Administrator determines that the claimant has adequately documented an injury, the Class member will be paid an Actual Damage Award of $750.00 for employment inquiries, $500.00 for mortgage loans or housing inquiries, and $150.00 for other credit inquiries.  Settlement Agreement § 6.2, Schedule 6.2.  The Settlement Administrator will pay the Actual Damage Awards at the highest award level for which the claimant is eligible.  *Id.* § 7.2(b)(iii).

### D.    Claims Administration

Class members may submit claims either by registering for a claim on the

Settlement Website or by returning the Claim Form to the Settlement Administrator via U.S. mail, provided they do not opt out.  Settlement Agreement § 7.1(a). Consumers who previously submitted a claim pursuant to the 2009 Proposed Settlement will not be required to re-submit the claim.  *Id.*  They may, however, amend it if they wish. *Id.*

The Settlement Administrator will subtract from the Settlement Fund the sum of all administrative and notice costs and the amounts paid pursuant to any award of attorneys' fees and costs and service awards.  Settlement Agreement § 4.3.  The Settlement Administrator will then calculate the total amount to be paid for Actual Damage Awards by identifying the highest award to which each Actual Damage Award Claimant may be entitled, multiplying the total number of such claims in each category, and totaling the results.  *Id.* § 1.3.  The Actual Damage Awards will be paid in full, and the funds remaining will be available for the Convenience Damage Award Fund.  *Id*.  The Settlement Administrator will then pay each Convenience Award Claimant an equal pro rata share of the Convenience Damage Award Fund, determined by the number of claimants for that award.  *Id.* § 7.2(a). The parties estimate that Convenience Award payments, as under the 2009 Proposed Settlement, will be about $15-20 each.

Any unclaimed or uncashed awards will expire one hundred-twenty (120) days after they have been issued and then redistributed to Convenience Award Claimants who cashed their first check if such redistribution is economically feasible as determined by Class Counsel.  *Id.* § 7.2(c).  The Settlement Administrator will continue to make such subsequent redistributions to the extent any settlement checks remain uncashed one hundred-twenty (120) days after the date on the check mailed, until the redistribution is no longer economically feasible. *Id.*

**E.  Timetable to Disburse Awards from Monetary Relief Settlement Fund**

Following this Order, the parties shall jointly petition the Court to pay the Settlement Administrator for the costs of notice and other administrative expenses related to effecting the Notice Plan.  *Id.* § 4.3(a).  Within 10 days following the Effective Date, the Parties shall jointly petition the Court to release the funds remaining in the Registry of the Court for distribution.  *Id.* § 4.3(b).  The Settlement Administrator will distribute the funds within 30 days of receiving them. *Id.*; see also *id.* § 7.3.

**F.  Service Awards**

The Settlement Agreement provides that the Named Plaintiffs and any other Class Member who believes they have made a substantial contribution to the resolution of the Litigation or to benefit the 23(b)(3) Settlement Class may apply for a service award.  Settlement Agreement § 12.1.  Named Plaintiffs shall do so in connection with Plaintiffs' motion for final approval of the Settlement.  Other Class Members must do so no later than fourteen (14) days before the deadline for objections.  *Id.* § 12.2.  The Court will review and rule upon these applications when they are received.  The Settlement is not conditioned on the Court's approval of any Service Awards.  *Id.* § 12.4.  Named plaintiffs will not receive any consideration other than Court-approved service awards and any approved Convenience or Actual Damages Award or, if they elect instead, Non-Monetary Benefits.  *Id.* § 12.1.  Further, no person's eligibility for a service award will be contingent on their support for or approval of this Settlement.

**G.  Attorneys' Fees And Costs**

In advance of the Final Approval Hearing, 23(b)(3) Settlement Class Counsel will file an application or applications to the Court, noticed to be heard at the Final Fairness Hearing, for approval of attorneys' fees and costs associated with this monetary relief Settlement.  Settlement Agreement § 11.3.  23(b)(3) Settlement

-13-

Class Counsel may seek approval of attorneys' fees of an amount not to exceed 25% of the Settlement (and in no event more than $12 million) and for reimbursement of their costs and expenses. The enforceability of the Settlement Agreement will not be contingent on the amount of attorneys' fees or costs awarded.

### H.    <u>Settlement Administration and Notice</u>

The parties have selected JND Legal Administration as the Settlement Administrator after a competitive bidding process. The Court finds there is good cause to support this appointment. The CEO of JND Legal Administration, Jennefer Keough, led administration of the 2009 Proposed Settlement when employed by Garden City Group. The Court finds her experience will help ensure efficient administration of this Settlement.

As set forth in the Settlement Agreement, all costs of notice and claims administration will be invoiced by the Settlement Administrator and paid from the Settlement Fund. *Id.* § 6.3. Settlement Counsel will oversee the Settlement Administrator: (i) issuing Class Notice and claim forms; (ii) calculating and issuing settlement payments; and (iii) responding to Class Member inquiries regarding the claims administration process.

The Settlement Administrator will provide notice to the Class using Email Notice, but will use Mail Notice if email addresses cannot be located, if an e-mail is returned as undeliverable, or if the Settlement Administrator does not receive notice the email was opened by the recipient within a reasonable time period. *Id.* § 6.2(a).

### I.    <u>*Cy Pres* Distributions</u>

Unclaimed funds will not be returned to Defendants. The Settlement Administrator will make redistributions of uncashed funds every 120 days, so long as it is economically feasible to do so (i.e., until each redistribution check would be about $3 or less). Settlement Agreement § 7.2(c). If funds remain, they will be

-14-

distributed to a cy pres recipient agreed upon by the Parties and approved by the Court after receipt of proposals from prospective recipients. *Id*

## IV.    PROVISIONAL CERTIFICATION OF 23(b)(3) CLASS

The Court finds that the proposed 23(b)(3) Settlement Class meets the criteria for class certification pursuant to Fed. R. Civ. P. 23(a) and (b)(3).

### A.    Plaintiffs' Claims Satisfy the Threshold Requirements for Class Certification.

The threshold prerequisites of Fed. R. Civ. P. 23(a) for maintaining a class action have been met.

### 1.    The Class Is So Numerous That Joinder Is Impracticable.

According to Defendants' records, there are millions of consumers who meet the Settlement Class definition.  Settlement Agreement § 1.75.  As it is impracticable to join all those individuals in a single action, "the numerosity requirement is certainly met in this case."  *Acosta v. TransUnion, LLC*, 243 F.R.D. 377, 384 (C.D. Cal. 2007); *see also Jordan v. County of Los Angeles,* 669 F.2d 1311, 1319 & n.10 (9th Cir. 1982) (listing thirteen cases in which courts certified classes with fewer than 100 members).

### 2.    There Are Questions of Law or Fact Common to the Class.

Rule 23(a)(2) requires the party seeking certification to show that there are questions of law or fact common to the class.  This rule "has been construed permissively."  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).  "The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class."  *Hanlon*, 150 F.3d at 1019.

In this case, the claims of all Class members arise out of the same core of facts, as this Court previously noted.  (Dkt. No. 423 at 13-14 [commonality satisfied]; see also *Acosta*, 243 F.R.D. at 384 (commonality satisfied in FCRA case

because "all members of the potential class derive their claims from the same set of circumstances," "[t]he same alleged conduct of Defendants forms the basis for each of the plaintiffs' claims," and "the same legal issues also govern the Plaintiffs' claims).)

Likewise, Plaintiffs' claims all raise the same legal issues, namely whether Defendants "maintain reasonable procedures to assure maximum possible accuracy in reporting discharged accounts" in accordance with the standard set forth in section 1681e(b) of the FCRA. *Id.*

Furthermore, the Settlement addresses this Court's concern, expressed in my Tentative Order Denying Plaintiffs' Motion for Class Certification, that some Class members may not have been harmed by Defendants' credit reporting procedures. While Class members "would not be required to prove causation or actual damages in order" to obtain statutory damages under the FCRA, as this Court held in *Acosta*, 243 F.R.D. at 393, the Settlement's claims process allows for Class members who believe they have been harmed by alleged errors in their credit reports to certify the type and approximate date of the harm they suffered.  Settlement Agreement § 7.2(b).  Those Class members who had errors that are presumptively harmful but cannot certify the type of harm will still get a fixed damage award from the Settlement.  *Id.* § 7.2(a).

### 3.    The Claims Of The Named Plaintiffs Are Typical Of Those Of All Other Class Members.

"Under the rule's permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members." *Hanlon*, 150 F.3d at 1020.  This standard is satisfied when "other members have the same or similar injury," when "the action is based on conduct which is not unique to the named plaintiffs," and when "other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir.

1343772.5

[PROPOSED] ORDER GRANTING PRELIMINARY APPROVAL TO PROPOSED CLASS ACTION SETTLEMENT CASE NO. 05-CV-1070 DOC (MLGx) (LEAD CASE)

1992); *see also Jordan*, 669 F.2d at 1322 (typicality is satisfied so long as claims stem "from the same event, practice, or course of conduct that forms the basis of the class claims, and is based upon the same legal theory").  If the claims arise from a similar course of conduct and share the same legal theory, factual differences, including differences in the amount of damages, will not defeat typicality.  *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 625 (5th Cir. 1999); *accord Barnes v. American Tobacco Co.*, 161 F.3d 127, 141 (3d Cir. 1998).

Here, the Named Plaintiffs' claims arise from the same course of Defendants' conduct as the claims of absent Class members, namely, Defendants' deficient procedures for reporting the status of pre-bankruptcy debt.  Moreover, Plaintiffs have suffered substantially the same injury as absent Class members: violation of their statutory right to accuracy in the reporting of information about their financial affairs.  Finally, the Named Plaintiffs' claims and those of other Class Members are based on the same legal theories.  Accordingly, the claims of the named Plaintiffs meet the typicality prerequisite set forth in Fed. R. Civ. P. 23(a).  See *Acosta*, 243 F.R.D. at 385 ("The named plaintiffs' claims are. . . typical of those of the remainder of the class in regards to the central legal issue, namely whether TransUnion and Equifax maintain reasonable procedures to assure maximum possible accuracy in reporting discharged accounts."); *id.* (typicality was satisfied even if the named plaintiffs' credit scores "may have been impacted more or less dramatically than were those of other class members" because "[a]ny legally relevant distinction . . . speaks to the issue of damages, which is immaterial here where the FCRA awards statutory damages").

### 4.    The Plaintiffs Adequately Represent The Class.

The final threshold prerequisite for class certification is that the named plaintiffs be able to fairly and adequately to protect the interests of the class.  This determination turns on just two questions: "(1) [d]o the representative plaintiffs and

-17-

their counsel have any conflicts of interest with other class members, and (2) will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003); *see also Hanlon*, 150 F.3d at 1020. "The burden is on the defendant[] to demonstrate that the representation will be inadequate." *Johns v. Rozet*, 141 F.R.D. 211, 217 (D.D.C. 1992); *see also Lewis v. Curtis*, 671 F.2d 779, 788 (3d Cir. 1982); *Trautz v. Weisman*, 846 F.Supp. 1160, 1167 (S.D.N.Y. 1994).

Both components of the "adequacy" test are met here. First, Plaintiffs do not have any interests antagonistic to those of the proposed Class and are prepared to pursue this Litigation vigorously to redress the wrongs Defendants have perpetrated. The proposed Plaintiffs and the proposed Class members share an identical interest in establishing Defendants' liability for failing to employ reasonable reporting procedures to assure maximum possible accuracy in their reporting of pre-bankruptcy debts. To establish liability, all members of the proposed Class seek the same findings on the common questions of law and fact. Like the members of the Class they seek to represent, the named Plaintiffs have been adversely affected by Defendants' alleged unlawful reporting procedures and have every incentive to vigorously pursue their claims. Further, no service award is conditional on support for the proposed Settlement, resolving potential conflict issues discussed by the Ninth Circuit in connection with the 2009 Proposed Settlement, *compare Radcliffe*, 715 F.3d at 1165 (conditional service awards caused interests of class representatives to diverge from other class members), and two new Class Representatives who were not associated with the 2009 Proposed Settlement have joined the case and support the Settlement. Finally, service awards under the Settlement are not limited to Class Representatives; rather, any Class Member who can adequately demonstrate to the Court that he or she provided a service that substantially benefited the Class may apply for one. *See* Settlement Agreement §

12.2.  On this basis, the Court concludes there is no reason to believe the Class Representatives cannot adequately represent the Class.

Second, Plaintiffs are represented by counsel who are "'qualified, experienced and able to vigorously conduct the proposed litigation' on behalf of the class.'"  *In re Quintus Secs. Litig.*, 148 F.Supp.2d 967, 972 (N.D. Cal. 2001).  As this Court previously found, Class Counsel has strong FCRA and class-action expertise and has worked diligently on behalf of the class, including negotiating "far-reaching and incredibly valuable injunctive relief" on behalf of the Class. (Dkt. 956 at 28.)  They have expended significant amounts of time and financial resources prosecuting this case on behalf of the Class.  Where, as here, proposed class counsel "include some of the most experienced lawyers in the United States in the prosecution of . . . class actions" and have demonstrated that they are "ready, willing and able to commit the resources necessary to litigate the case vigorously," the adequate representation requirement is more than satisfied.  *In re NASDAQ Market-Makers Antitrust Litig.*, 169 F.R.D. 493, 515 (S.D.N.Y. 1996).[7]

## B.  Plaintiffs' Monetary Relief Claims Satisfy the Requirements for Class Certification for Purposes of Settlement Under Rule 23(b)(3).

This action is well-suited for certification under Rule 23(b)(3) because, particularly in the context of this Settlement, questions common to the Class members predominate over questions affecting only individual Class members, and the class action device provides the best method for the fair and efficient resolution of the Class' claims.  Indeed, Defendants do not oppose provisional class

---

[7]  Indeed, the Ninth Circuit recently affirmed this Court's refusal to replace undersigned Class Counsel, based on this Court's conclusion they "possessed greater experience and knowledge relevant to this case" than other counsel, and that Class Counsel had "taken extraordinary steps to neutralize the effect of the [earlier] ethical violation" to be compelling.  *Radcliffe*, 818 F.3d at 548-49.  In reaching that decision, the Ninth Circuit also noted that the legal team "had done extensive work for the class."  *Id.* at 548.

certification for the purpose of effectuating the proposed Settlement.  When addressing the propriety of class certification, the Court should take into account the fact that, in light of the settlement, trial will now be unnecessary, and that the manageability of the Class for trial purposes is not relevant to the Court's inquiry. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997); *Hanlon*, 150 F.3d at 1021-23.

A class action is appropriate under 23(b)(3) if "questions of law or fact common to the members of the class predominate over any questions affecting only individual members . . . ." Fed. R. Civ. P. 23(b)(3).  "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication," there is clear justification for class treatment. *Local Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 (9th Cir. 2001).  Here, as the Settlement is structured, common questions of law and fact overwhelm individual issues.  *See Tyson Foods, Inc. v. Bouaphakeo*, --- U.S. ---, 136 S. Ct. 1036, 1045 (2016) ("An individual question is one where members of a proposed class will need to present evidence that varies from member to member, while a common question is one where the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof.").  Thus, the predominance requirement is satisfied.

The Court should certify the Class if it finds that a "class action is superior to other available methods for fair and efficient adjudication of the controversy."  Fed. R. Civ. P. 23(b)(3).  If alternate procedures "reveal[] no other realistic possibilities, this [superiority] portion of Rule 23(b)(3) has been satisfied." *Local Joint Executive Bd.*, 244 F.3d at 1163 (internal quotes and cites omitted).  Class treatment here will facilitate the favorable resolution of all Class members' claims.  Given the large numbers of Class members and the multitude of common issues present, the

-20-

class device is also the most efficient and fair means of adjudicating these claims. Resolution of millions of claims in one action through this Settlement is far superior to individual lawsuits and promotes consistency and efficiency of adjudication.  *See, e.g., Malta v. Federal Home Loan Mortg. Corp.*, No. 10-cv-1290 BEN (NLS), 2013 WL 444619, at *4 (S.D. Cal. Feb. 5, 2013) (superiority met where "considerations of judicial economy favor litigating a predominant common issue once in a class action instead of many times in separate lawsuits" and the "small individual claims of class members" made it "unlikely that individual actions will be filed").

## V.   THE CRITERIA FOR PRELIMINARY SETTLEMENT APPROVAL ARE MET.

Preliminary approval should be granted if the proposed Settlement: "(1) appears to be the product of serious, informed, non-collusive negotiations; (2) has no obvious deficiencies; (3) does not improperly grant preferential treatment to class representatives or segments of the class; and (4) falls within the range of possible approval."  *Spann v. J.C. Penney Corp.*, 314 F.R.D. 312, 319 (C.D. Cal. 2016) (quotation and citation omitted).  The decision to approve a proposed settlement is committed to the Court's discretion.  *See Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) (appellate court cannot "substitute [its] notions of fairness for those of the [trial] judge and the parties to the agreement," and will reverse only upon strong showing of abuse of discretion) (quoting *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 626 (9th Cir. 1982)).

### A.   This Settlement Is The Product of Serious, Informed, and Arm's-Length Negotiations

The Court must ensure that "the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned."

*Hanlon*, 150 F.3d at 1027.

As detailed above, the Settlement is the result of arm's-length, contentious, and thorough negotiations before several mediators over eight years. *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) ("We put a good deal of stock in the product of an arm's-length, non-collusive, negotiated resolution . . . ."); *Franco v. Ruiz Food Prods.*, No. 10-cv-02354-SKO, 2012 WL 5941801, at *11 (N.D. Cal. Nov. 27, 2012) ("[T]he court may presume that, through negotiation, the parties, their counsel, and the mediator arrived at a reasonable range of settlement by considering Plaintiffs' likelihood of recovery.").

In addition, Class Counsel are experienced and understood the legal and factual issues in this case. *In re Heritage Bond Litig.*, No. 02-ML-1475-DT, 2005 WL 1594403, at *9 (C.D. Cal. Jun. 10, 2005) ("A presumption of correctness is said to attach to a class settlement reached in arm's-length negotiations between experienced capable counsel after meaningful discovery." (citation and quotation omitted)); *In re United Energy Corp. Solar Power Modules Tax Shelter Inv. Sec. Litig. v. Baumer*, MDL No. 726, 1989 WL 73211, at *3 (C.D. Cal. June 12, 1989) ("The recommendation of experienced counsel carries significant weight in the court's determination of the reasonableness of the settlement.").

Plaintiffs have also undertaken substantial investigation, fact-gathering, and formal discovery, including review of tens of thousands of pages of documents, retention and consultation of numerous experts in the fields of credit reporting and consumer bankruptcies who filed numerous declarations with the Court, interviews with numerous consumers, review of thousands of consumer credit reports, and numerous depositions. The parties have also engaged in extensive motion practice before reaching the Settlement Agreement, including motions to dismiss, for summary judgment, for leave to amend the complaint, and for class certification. Court has presided over the hearings and executed no fewer than seventy minute

entries, entered at least one-hundred signed orders, and authored eight published opinions. *Compare Hanlon*, 150 F.3d at 1027 (approving settlement where no evidence suggesting "the settlement was negotiated in haste or in the absence of information").

Indeed, none of the tell-tale signs of collusion appear in this negotiation process or proposed Settlement, further supporting a presumption it is within the range of reasonableness. *See In re Bluetooth Headset Prods. Liability Litig.*, 654 F.3d 935, 946-48 (9th Cir. 2011) (identifying possible signs of collusion).

### B.   The Settlement Has No Obvious Deficiencies

Under the Settlement, Class Members will receive efficient and immediate monetary relief, an outcome that is not guaranteed if this case proceeds without a settlement. As this Court previously observed, "Plaintiffs' claims largely presented questions of first impression," and though "legitimate arguments likely exist in support of Plaintiffs' view" of the law, "[i]f Defendants' reading . . . had carried the day, Plaintiffs' legal theory would have been dead in the water." (Dkt. No. 776 at 8-19.) Further, the Court tentatively denied Plaintiffs' motion for class certification (Dkt. No. 369), and later observed that "continued class action litigation poses significant manageability issues" (Dkt. No. 776 at 9). The risks that Plaintiffs faced if they were to pursue litigation make clear that the settlement has no obvious deficiencies. *Spann*, 314 F.R.D. at 319.

### C.   The Settlement Does Not Grant Preferential Treatment

The Court must also consider whether the settlement grants preferential treatment to class representatives or segments of the class. *Spann*, 314 F.R.D. at 319. This factor weighs in favor of granting preliminary approval because, under the Settlement, Class members will be compensated based on the type and extent of their injuries on a pro rata basis. Such distribution plans are generally considered to

be fair and reasonable.[8]

Further, the class representatives will not receive any preferential treatment. As the Ninth Circuit has recognized, service awards "are intended to compensate class representatives for work undertaken on behalf of a class [and] 'are fairly typical in class action cases.'" *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 943 (9th Cir. 2015) (citation omitted).  Under the Settlement, class representatives will have the same opportunity as other Class members to apply to the Court for reimbursement for efforts expended to substantially benefit the Class in connection with final approval.  The Settlement will not be contingent on this Court's approval of any service award.

### D.    The Settlement Is Within the "Range Of Reasonableness"

The Court must also consider whether the proposed Settlement "falls within the range of possible approval." *Spann*, 314 F.R.D. at 319.  The purpose is to determine whether notice to the class of the terms and conditions of the Settlement and holding a final approval hearing would be worthwhile.  5 NEWBERG § 13.10.

The Court finds that this Settlement easily falls within the range of a Settlement that may be approved at final approval as "fundamentally fair, adequate, and reasonable." *City of Seattle*, 955 F.2d at 1276 (*quoting Officers for Justice*, 688 F.2d at 625).  This Court's analysis at final approval "will involve a balancing of several factors" which may include: "the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in

---

[8] *See, e.g., Gaudin v. Saxon Mortg. Servs., Inc.*, No. 11-cv-01663-JST, 2015 WL 7454183, at *8 (N.D. Cal. Nov. 23, 2015) ("Such a plan 'fairly treats class members by awarding a pro rata share' to the class members based on the extent of their injuries.") (citation omitted); *Noll v. eBay, Inc.*, 309 F.R.D. 593, 601, 608 (N.D. Cal. 2015) (approving pro-rata distribution as fair and reasonable); *In re High-Tech Emp. Antitrust Litig.*, No. 11-cv-02509-LHK, 2015 WL 5159441, at *8 (N.D. Cal. Sep. 2, 2015) (approving pro-rata distribution of fractional share based upon class member's total base salary as fair and reasonable).

settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel . . . and the reaction of the class members to the proposed settlement." *Id.* at 1291.

At the present stage, the Court concludes these factors weigh in favor of granting preliminary approval to the proposed Settlement. *First*, although Plaintiffs stand by the merit of their claims, the Court previously observed that they "largely presented questions of first impression" but that if Defendants' arguments "had carried the day, Plaintiffs' legal theory would have been dead in the water." (Dkt. No. 776 at 8-19.) The resulting uncertainty on the merits thus counsels in favor of approving the Settlement.

*Second*, the Settlement avoids the other risks and expenses likely to attend further litigation of this case, possibly through trial. In the absence of a Settlement, the parties would be forced to litigate difficult class certification, summary judgment, and trial issues, all of which could be delayed by further appeals by either party, including the risk of interlocutory appeals. The Settlement instead provides immediate relief to Class Members who have already waited a decade.

*Third*, this Settlement avoids risks attending to whether the case could be maintained as a class action through trial. This Court tentatively denied Plaintiffs' motion for class certification (Dkt. No. 369), and later observed that "continued class action litigation poses significant manageability issues" (Dkt. No. 776 at 9). Had either the tentative ruling been confirmed, or had the class later been decertified for manageability reasons, Plaintiffs might have been forced to abandon the Class Claims. Were that to happen, the Court believes that most Class members would likely never recover because the cost of bringing a separate individual lawsuit would have been prohibitive.

*Fourth*, the amount offered is significant: Class members may choose a Non-Monetary or Convenience Award with a simple claim form that does not require

[PROPOSED] ORDER GRANTING PRELIMINARY APPROVAL TO PROPOSED CLASS ACTION SETTLEMENT CASE NO. 05-CV-1070 DOC (MLGx) (LEAD CASE)

any attestation, or they may request Actual Damage Awards. Thus, Class members will receive awards appropriately corresponding to the harms they suffered and their preferences for either the Non-Monetary or Convenience Awards made available under the Settlement.

*Fifth*, the Settlement offers significant non-monetary benefits to all Class Members in the form of free credit reporting assistance about how to interpret, obtain, and correct credit reporting information from Defendants and through Defendants' reinvestigation processes.

*Sixth*, as previously noted, the parties have already completed extensive discovery, and so had a strong basis to make an informed judgment concerning the potential costs and benefits of settling versus litigating.

*Seventh*, the experience and views of seasoned class action and FCRA counsel support preliminary approval. *See, e.g., National Rural Telecommunications Cooperative v. DIRECTV, INC.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) ("Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation. This is because parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation." (internal citations, quotations, and modifications omitted)); *Spann v. J.C. Penney Corp.*, --- F.Supp.3d ---, Case No. CV-12-0215-FMO, 2016 WL 5844606, at *7 (C.D. Cal. Sep. 30, 2016) (where "class counsel are experienced class action attorneys who prosecuted th[e] action vigorously," their recommendation supports approval of a settlement); *see also Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979) ("The recommendations of plaintiffs' counsel should be given a presumption of reasonableness."). This Court has previously noted that "the attorneys representing Settling Plaintiffs have significant experience in both complex class actions and FCRA litigation." (Dkt. No. 776 at

15.)  The appearance of additional experienced Class Counsel bolsters this Court's finding.

*Eighth*, this Court will have a full opportunity to consider the reactions of Class Members at the final approval hearing.

In sum, the Court finds that these factors weigh in favor of approving the proposed Settlement as within the range of reasonableness.

### E.    The Court Believes the Settlement Is in the Best Interests of the Class.

The Class Representatives have actively participated in this Litigation by staying apprised of developments, producing documents, responding to discovery and providing sworn declaration and deposition testimony.  Moreover, they have been kept informed about the progress of settlement negotiations and mediation and the proposed Settlement.  The proposed Class Representatives have been informed of the nature of the Settlement and believe that this Court's approval of it would serve the best interests of the class.

The Plaintiffs represent the interests of the entire Class in asking the Court to approve this Settlement.  Although Plaintiffs José Hernandez, Kathryn Pike, Robert Randall, Bertram Robison, Camille Chapman, and Lewis Mann do not include the plaintiffs in all the related cases, the Settlement will resolve and release all claims of the Plaintiffs and 23(b)(3) Settlement Class Members as they relate to the reporting of debts discharged in bankruptcy.  Settlement Agreement §§ 1.61-1.62.

The Ninth Circuit does not require that all named plaintiffs agree with a settlement in order for it to be approved.  *Officers for Justice*, 688 F.2d at 631.  Numerous courts have held that class counsel has a duty to do what is in the best interests of the class, even if some class representatives disagree.  *See*, *e.g.*, *Officers for Justice*, 688 F.2d at 631; *Parker v. Anderson*, 667 F.2d 1204, 1211 (5th Cir. 1982) (affirming approval of class settlement opposed by all but one of eleven

named plaintiffs and recognizing "that the duty owed by Class Counsel is to the entire class and is not dependent on the special desires of the named plaintiffs"); *Kincade v. Gen. Tire and Rubber Co.*, 635 F.2d 501, 508 (5th Cir. 1981) (affirming class settlement over opposition of five of the six named plaintiffs and finding that cases holding that an attorney cannot settle individual client's case without authorization of client are inapplicable to class actions "because of the unique nature of the attorney-client relationship in a class action"); *Maywalt v. Parker & Parsley Petroleum Co.*, 864 F. Supp. 1422, 1430 (S.D.N.Y. 1994), *aff'd*, 67 F.3d 1072 (2d Cir. 1995) (approving settlement opposed by four out of five class representatives because it does not serve best interests of Rule 23 "[t]o empower the Class Representatives with what would amount to an automatic veto over the Proposed Settlement").

Therefore, it is this Court's duty to approve the Settlement if it determines it is in the best interests of the class. *Maywalt v. Parker*, 67 F.3d 1072, 1078 (2nd Cir. 1995) ("[t]he ultimate responsibility to ensure that the interests of class members are not subordinated to the interests of either the class representatives or class counsel rests with the district court"). Accordingly, this Court preliminary approves the Settlement as being in the best interests of the Class.

## F.     The Proposed Notice Program Is Constitutionally Sound.

"Rule 23(e)(1)(B) requires the court to 'direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise' regardless of whether the class was certified under Rule 23(b)(1), (b)(2), or (b)(3)." MANUAL FOR COMPLEX LITIG., § 21.312 ("MANUAL"). Many of the same considerations govern both certification and settlement notices. In order to protect the rights of absent class members, the Court must provide the best notice practicable to class members. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 174-175

-28-

(1974). "Rule 23 . . . requires that individual notice in 23(b)(3) actions be given to class members who can be identified through reasonable effort. Those who cannot be readily identified must be given the 'best notice practicable under the circumstances.'" MANUAL, § 21.311. According to the *Manual*, the settlement notice should:

- Define the class;
- Describe clearly the options open to the class members and the deadlines for taking action;
- Describe the essential terms of the proposed settlement;
- Disclose any special benefits provided to the class representatives;
- Provide information regarding attorneys' fees;
- Indicate the time and place of the hearing to consider approval of the settlement, and the method for objecting to or opting out of the settlement;
- Explain the procedures for allocating and distributing settlement funds, and, if the settlement provides different kinds of relief for different categories of class members, clearly set out those variations;
- Provide information that will enable class members to calculate or at least estimate their individual recoveries; and
- Prominently display the address and phone number of class counsel and the procedure for making inquiries.

MANUAL, § 21.312.

The proposed forms of Notice, attached as Exhibits 5-7 to the Declaration of Michael Sobol, satisfy all of criteria above. The Notice Plan provides for direct, individual notice via either email or mail. Settlement Agreement § 6.2(a). A reverse look-up will be performed for email addresses before mail notice is attempted. *Id.*. Also, notice will be provided to Class members online through the

settlement website.  *Id.* § 6.2(b).   This is in addition to the two rounds of Notice that already went out in connection with the 2009 Proposed Settlement and which resulted in hundreds of thousands of claims that will be honored in connection with this Settlement.  The Court finds this notice program is adequate.

### G.   Scheduling Final Approval Hearings Is Appropriate.

The last step in the Settlement approval process is a final fairness hearing at which the Court may hear all evidence and argument necessary to make its Settlement evaluation.  Proponents of the Settlement may explain the terms and conditions of the Settlement and offer argument in support of final approval.  In addition, Settlement Class members, or their counsel, may be heard in support of or in opposition to the Settlement Agreement.  The Court will determine after the final approval hearing whether the Settlement should be approved, and whether to enter a final order and judgment under Rule 23(e).  The Court sets the date of December 11, 2017, at 8:30 a.m., for a hearing on final approval.

## VI.   CONCLUSION

The Court concludes that Plaintiffs have satisfied all of the requirements for Preliminary Approval of the proposed Class Action Settlement and conditional certification of the Settlement Class.  Accordingly, it is hereby ORDERED as follows:

1.   In the actions against Experian, Equifax and TransUnion, the "23(b)(3) Settlement Class" is conditionally certified for purposes of settlement under Fed. R. Civ. P. 23(b)(3), as defined in the Settlement Agreement § 1.75.

2.   Plaintiffs José Hernandez, Kathryn Pike, Robert Randall, Bertram Robison, Camille Chapman, and Lewis Mann are designated and appointed as representatives for the Settlement Class.

3.   The law firms of Lieff Cabraser Heimann & Bernstein, LLP, Caddell & Chapman, Francis & Mailman, National Consumer Law Center, Consumer

Litigation Associates, P.C., Callahan Thompson Sherman & Caudill LLP, and Public Justice, P.C. are appointed as 23(b)(3) Settlement Class Counsel.

4.      The Court grants Preliminary Approval to the Settlement Agreement, as set forth in Exhibit 1.

5.      The Court appoints JND Legal Administration as the Settlement Administrator.

6.      The Court approves of the forms of Notice, attached to the Declaration of Michael Sobol as Exhibits 5-7, and the notice distribution and publication program set forth in the Settlement Agreement.

7.      A Final Fairness Hearing shall be set for December 11, 2017 at 8:30 a.m.  The relevant deadlines will be set as provided in the Settlement Agreement. They are summarized below:

## Timeline for Notice Plan and Final Approval Process

| Deadline | Relative To | Action |
|---|---|---|
| | Within thirty (30) days of this Order | Each Defendant shall provide the Settlement Administrator with an updated Class List.  Defendants shall transmit Social Security Numbers to the Settlement Administrator in a manner that protects their confidentiality. |
| | Within ninety (90) days of this Order | The Settlement Administrator shall cause Notice to be sent to each identified 23(b)(3) Settlement Class Member. |

1343772.5

| Deadline | Relative To | Action |
|---|---|---|
| | Fourteen (14) days before the Objection Deadline | Deadline for Applications for Class Representative Service Awards, for Class Counsel's request for fees and costs, and for any Class Member who believes they have made a substantial contribution to the resolution of the Litigation or to benefit the 23(b)(3) Settlement Class to apply for a service award. |
| | Within sixty (60) days of the Notice Deadline | Deadline to submit claims, opt out requests, and objections. Objections must be mailed or hand-delivered to the Court and mailed or hand-delivered to Class Counsel and Defendants' Counsel so that they are received by this date. Opt out requests need only be postmarked by this date. |
| | Within fourteen (14) days of the Opt Out Deadline | The Settlement Administrator shall provide Class Counsel and Defendants' Counsel with a complete list of all persons who have properly opted out of the Settlement together with copies of the exclusion request. |
| | Thirty (30) days before Final Fairness hearing | The Settlement Administrator shall cause proof of the mailing of the Email Notice and Mail Notice to be filed with the Court. |

1343772.5

[PROPOSED] ORDER GRANTING PRELIMINARY APPROVAL TO PROPOSED CLASS ACTION SETTLEMENT
CASE NO. 05-CV-1070 DOC (MLGx) (LEAD CASE)

| Deadline | Relative To | Action |
|----------|-------------|--------|
|  | No later than seven (7) days before the fairness hearing. | Deadline to file responses to objections. |

IT IS SO ORDERED.

_David O. Carter_

HON. DAVID O. CARTER

Dated:  June 16, 2017