Case 8:05-cv-01070-DOC-MLG  Document 1083  Filed 08/15/17  Page 1 of 54  Page ID #:22058
8:05-CV-1070-DOC - 5/30/2017 - Item No. 25

1

1        **UNITED STATES DISTRICT COURT**

2        **CENTRAL DISTRICT OF CALIFORNIA**

3     **HONORABLE DAVID O. CARTER, JUDGE PRESIDING**

4              - - - - - - -

5   TERRI N. WHITE, et al.,           )
                                      )      **CERTIFIED**
6            Plaintiffs,              )
                                      )
7        vs.                          ) No. 8:05-CV-1070-DOC
                                      )    Item No. 25
8   EXPERIAN INFORMATION SOLUTIONS,   )
    INC., et al.,                     )
9                                     )
             Defendants.              )
10  _____  )

11

12

13

14          REPORTER'S TRANSCRIPT OF PROCEEDINGS

15   Motion for Preliminary Approval of Class Action Settlement

16                Santa Ana, California

17                Tuesday, May 30, 2017

18

19

20

21  Debbie Gale, CSR 9472, RPR, CCRR
    Federal Official Court Reporter
22  United States District Court
    411 West 4th Street, Room 1-053
23  Santa Ana, California 92701
    (714) 558-8141
24

25

Case 8:05-cv-01070-DOC-MLG  Document 1083  Filed 08/15/17  Page 2 of 54  Page ID #:22059
8:05-CV-1070-DOC - 3/30/2017 - Item No. 25

2

1   **APPEARANCES OF COUNSEL:**

2     FOR CLASS PLAINTIFFS:

3               CADDELL & CHAPMAN
                BY:  Michael A. Caddell
4                    Attorney at Law
                1311 Lamar
5               Suite 1070
                Houston, Texas 77010
6               713-751-0400
                mac@caddellchapman.com

7

8               CADDELL & CHAPMAN
                BY:  Cynthia B. Chapman
9                    Attorney at Law
                628 East 9th Street
10              Houston, Texas 77007
                713-751-0400
11              cbc@caddellchapman.com

12

                CALLAHAN THOMPSON SHERMAN & CAUDILL LLP
13              BY:  Anthony Vincent Martinez
                     Attorney at Law
14              2601 Main Street
                Suite 800
15              Irvine, California 92614
                949-261-2872
16              *(no email/electronic service)*

17

     ON BEHALF OF THE "WHITE" PLAINTIFFS:
18

                BOIES, SCHILLER & FLEXNER, LLP
19              BY:  Karen Paik
                     Attorney at Law
20              401 Wilshire Boulevard
                Suite 850
21              Santa Monica, California 90401
                310-752-2400
22              kpaik@bsfllp.com

23

24

25

```
 1    FOR DEFENDANT EXPERIAN INFORMATION SOLUTIONS, INC.:

 2              JONES DAY
                BY:  Daniel J. McLoon
 3                   Attorney at Law
                555 South Flower Street
 4              50th Floor
                Los Angeles, California 90071
 5              (213) 489-3939

 6


 7    FOR DEFENDANT EQUIFAX INFORMATION SERVICES, LLC:

 8              KILPATRICK STOCKTON LLP
                BY:  Cindy D. Hanson
 9                   Attorney at Law
                1100 Peachtree Street
10              Suite 2800
                Atlanta, Georgia 30309
11              (404) 815-6493

12

      FOR DEFENDANT TRANSUNION, LLC:
13

14              STROOCK & STROOCK & LAVAN LLP
                BY:  Julieta Stepanyan
15                   Attorney at Law
                2029 Century Park East
16              16th Floor
                Los Angeles, California 90067
17              310-566-5800
                jstepanyan@stroock.com
18

19

20

21

22

23

24

25
```

1                      **I N D E X**

2    **PROCEEDINGS**                                **PAGE**

3    Appearances                                      5

4    Background and Court's Introductory Remarks      6

5    Argument by Mr. Caddell                          27

6    Argument by Ms. Paik                             40

7    Argument by Mr. McLoon                           41

8    Statement re consent by Ms. Hanson               42

9    Statement re consent by Ms. Stepanyan            42

10   Further argument by Mr. Caddell                  42

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**Certified for U.S. District Court**
**Debbie Gale, CSR 9472, RPR, CCRR**
**Federal Official Court Reporter**

```
 1                SANTA ANA, CALIFORNIA, TUESDAY, MAY 30, 2017

 2                             Item No. 25

 3                            (9:48 a.m.)

09:48  4          THE COURT:  Okay, Counsel.  Thank you.  Let me

 5     call the matter concerning Terri White, et al, v. Experian

 6     Information Solutions, 05-1070.

09:48  7          And, Counsel, although I know counsel well by now,

 8     just your appearances.  Let's begin with plaintiff's

 9     counsel.

09:48 10                           APPEARANCES

09:48 11          MR. CADDELL:  Mike Caddell for Jose Hernandez and

12     the putative class.

09:49 13          THE COURT:  All right.  Thank you.

09:49 14          MS. CHAPMAN:  Cynthia Chapman for Jose Hernandez

15     and the putative class.

09:49 16          THE COURT:  Thank you.

09:49 17          MS. PAIK:  Karen Paik of Boies, Schiller &

18     Flexner, on behalf of the White plaintiffs.

09:49 19          THE COURT:  Thank you.

09:49 20          MR. MARTINEZ:  And Anthony Martinez --

09:49 21          THE COURT:  I can't hear you, sir.

09:49 22          MR. MARTINEZ:  Anthony Martinez from Callahan

23     Thompson Sherman & Caudill for the settling plaintiffs,

24     specifically Katherine Pike, Bertram Robinson and Robert

25     Randall.
```

09:49  1          THE COURT:  All right.  Thank you.

09:49  2          And, Counsel.

09:49  3          MR. McLOON:  Morning, Your Honor.  Daniel McLoon

       4  for Experian Information Solutions, Inc.

09:49  5          THE COURT:  Okay.

09:49  6          MS. HANSON:  Morning, Your Honor.  Cindy Hanson

       7  for Equifax Information Services.

09:49  8          THE COURT:  All right.

09:49  9          MS. STEPANYAN:  Good morning, Your Honor.  Julieta

       10  Stepanyan for TransUnion.

09:49  11          THE COURT:  All right.  Thank you.

09:49  12          **BACKGROUND AND COURT'S INTRODUCTORY REMARKS**

09:49  13          THE COURT:  Well, first, by way of background, the

       14  case has a long history before the Court, having originated

       15  in 2005, and having been twice appealed to the Ninth

       16  Circuit.

09:49  17          Before the court today is a proposed settlement.

       18  This is a putative class action.  The plaintiff --

       19  plaintiffs bring claims challenging the legality of consumer

       20  credit reporting agencies' procedures for generating the

       21  credit reports of individuals with debts discharged through

       22  Chapter 7 bankruptcy.

09:50  23          Defendants Experian Information Solutions, Inc.,

       24  TransUnion LLC, and Equifax Information Services LLC,

       25  collectively the defendants, are the nation's three major

09:50

1    repositories for consumer credit information.

2           Plaintiffs are individuals who had debts

3    discharged through a Chapter 7 bankruptcy.  Each of them

4    sought a fresh start from their respective bankruptcy

5    discharges, but one or more of the defendants prepared

6    credit reports that inaccurately described discharged debts

7    as "charged off" or characterized by other derogatory

8    notations.

09:50

9           This is the second time a settlement between the

10   parties has been proposed to this Court.  And although this

11   Court granted final approval to the first settlement, the

12   Ninth Circuit vacated that agreement because the payment of

13   incentive payments was conditioned on the class

14   representatives' endorsements of the settlement agreement.

09:51

15          There have been detailed objections to the

16   settlement agreement by the White plaintiffs, or

17   "objectors," that Court's interested in discussing with the

18   parties throughout the day.

09:51

19          Concerning the settlement, the Class Definition

20   pursuant to 23(b)(3),

09:51

21              "A *settlement class* is defined as

22              persons who, between and including

23              March 15, 2002 and May 11, 2009, or for

24              California residents in the case of

25              TransUnion, any time between and

|         |    |                                                         |
|---------|----|---------------------------------------------------------|
|         | 1  | including May 12, 2001 and May 11th,                    |
|         | 2  | 2009, for whom one of the defendants                    |
|         | 3  | generated a post-bankruptcy credit                      |
|         | 4  | report which included -- without                        |
|         | 5  | information sufficient to establish it                  |
|         | 6  | was excluded from the bankruptcy                        |
|         | 7  | discharge:                                              |
| 09:51   | 8  | "A.  A notation that there was an                       |
|         | 9  | outstanding re-bankruptcy *(sic)* civil                 |
|         | 10 | judgment;                                               |
| 09:52   | 11 | "B.  A Pre-bankruptcy installment or                    |
|         | 12 | mortgage loan that was reported as                      |
|         | 13 | delinquent or with a derogatory                         |
|         | 14 | notation.                                               |
| 09:52   | 15 | "C.  A Pre-bankruptcy Revolving                         |
|         | 16 | Account that was reported as delinquent                 |
|         | 17 | or with a derogatory notation; or,                      |
| 09:52   | 18 | "D.  A pre-bankruptcy collection                        |
|         | 19 | account that remained in collection                     |
|         | 20 | after the bankruptcy debt *(sic)*."                     |
| 09:52   | 21 | The settlement agreement at Paragraph 1.75.  This       |
|         | 22 | definition excludes a small subset of individuals, such as |
|         | 23 | persons who opt out and the defendant's officers, which the |
|         | 24 | Court finds is appropriate.                             |
| 09:52   | 25 | The parties are -- represented that there are           |

**Certified for U.S. District Court**
**Debbie Gale, CSR 9472, RPR, CCRR**
**Federal Official Court Reporter**

|       |    |                                                              |
|-------|----|--------------------------------------------------------------|
|       | 1  | roughly 15 million putative class members.                   |
| 09:52 | 2  | The next amount was the Settlement Benefits Amount           |
|       | 3  | and Payout.  And, as part of the previously approved         |
|       | 4  | settlement, defendants paid $45 million to a class           |
|       | 5  | settlement fund.  There remains, according to the parties,   |
|       | 6  | approximately $37 million in funds after payment of the      |
|       | 7  | administrative expenses and the cost of noticing the         |
|       | 8  | previous, now-voided settlement.  Defendants have agreed to  |
|       | 9  | contribute an additional 1 million to the settlement fund    |
|       | 10 | for a total of $38 million.  The cost of notice to the class |
|       | 11 | and of the administration shall be advanced by the           |
|       | 12 | settlement fund.                                             |
| 09:53 | 13 | So my first question to the parties today is can             |
|       | 14 | you provide the Court an estimate of the costs of the        |
|       | 15 | administration and notice at this time?                      |
| 09:53 | 16 | MR. CADDELL:  Yes, Your Honor.  We have canvassed            |
|       | 17 | eight notice providers.  We got bids from seven.  We drilled |
|       | 18 | down on that.  And we believe the cost will be less than     |
|       | 19 | about $2.3 million.                                          |
| 09:53 | 20 | THE COURT:  Okay.                                            |
| 09:53 | 21 | MR. CADDELL:  It could be -- of course, depending           |
|       | 22 | on the adequacy of the email, the emails that we're able to  |
|       | 23 | obtain, it could vary.  But we're pretty confident that      |
|       | 24 | that's a number that's going to be within the range.         |
| 09:53 | 25 | THE COURT:  Now, I understand that the payments             |

Case 8:05-cv-01070-DOC-MLG  Document 1083  Filed 08/15/17  Page 10 of 54  Page ID #:22067
8:05-CV-1070-DOC  5/30/2017 - Item No. 25

10

1    and benefits to the class members would be allocated as

2    follows:

09:54    3         That the Convenience Award would be:  Any class

4    members *(sic)* may apply for a "convenience" award.  The

5    convenience award does not require a class member to certify

6    that they were damaged by the reporting error.  The

7    convenience award amount will be contingent on the number of

8    convenience award claims.  But it is estimated that the

9    award will be between $15 and $20.

09:54    10         The Non-Monetary Benefits Credit Reporting:

11    Instead of a convenience award, a class member may

12    alternatively opt to receive:  (1) a free file disclosure;

13    and (2), two free credit scores.

09:54    14         It appears to the Court that a free file

15    disclosure can always be requested by any person.  And the

16    Defendants currently charge around $8 for a credit score,

17    although credit scores are available elsewhere, and

18    sometimes they're available for free.

09:54    19         And then third, a Damage Award -- if a class

20    member can certify that they have been damaged by an alleged

21    error in their credit reports.  The class member must

22    provide evidence to document the damage that they suffered.

23    If the settlement administrator determines that a class

24    member was adequately -- has adequately documented the

25    injury, a class member will receive an actual damage award

of $750 for lost employment, $500 for lost mortgage or
housing loan, and 150 for other lost credit opportunities.

09:55    And plaintiffs have also stated that class members
will receive the additional benefit of information on
defendants' reporting practice and dispute resolutions
processes at the time that they receive the class notice.

09:55    The settlement's non- -- is non-reversionary.  And
the settlement administrator will make ongoing distributions
to the class members in -- in an attempt to distribute all
of the funds.  If it ceases to be economically feasible for
the administrator to seek to distribute funds to the class
members, the parties and the Court will select a *cy pres*
beneficiary to award the remaining settlement funds to.

09:56    Now, concerning the "Released Claims," my
understanding is that the plaintiffs who do not opt out will
be giving up any claims that they could have asserted based
on the defendants' furnishing of consumer reports during the
class period based on the fact or allegation that the
reports contained false or misleading reporting of debts,
account, judgments, or public records or other obligations
that have been discharged in bankruptcy or had not been --
or had not been properly investigated.

09:56    Concerning the Class Notice, the class will be
sent notice by email, which will save costs, according to
plaintiff.  But if an email address cannot be found or if an

Case 8:05-cv-01070-DOC-MLG   Document 1083   Filed 08/15/17   Page 12 of 54   Page ID #:22069
8:05-CV-1070-DOC   5/30/2017 - Item No. 25

12

09:57

09:57

09:57

09:58

09:58

1   email is returned as undelivered then the administrator will

2   provide mail notice.  The claims of hundreds of thousands of

3   class members submitted in connection with the prior

4   settlement will also be honored.

5        So, what sort of success rate do we have in

6   obtaining current emails?  And do you anticipate -- or can

7   you anticipate what that success rate would be?

8        MR. CADDELL:  We anticipate that success rate will

9   be around 70 or 80 percent.  There are several entities that

10  sell email addresses.  We have again canvassed those.  We've

11  gotten bids.  And so the estimate of about $2.3 million for

12  administrative costs, including notice, is premised on that.

13  And it could go up a little bit or it could go down a little

14  bit depending on the efficacy of those emails.

15       THE COURT:  In the reply, you've stated that a

16  follow up mailer will be sent to anyone who did not open the

17  email.  I don't see where in the settlement agreement this

18  is called for.  I didn't see that in the settlement

19  agreement.  So, just a moment.

20       MR. CADDELL:  Yes, Your Honor.

21       THE COURT:  I think Section 6.2(a) states that

22  "read" receipts are required, but it does not appear to call

23  for a follow-up mailing to those who do not open the email,

24  only calling for an email -- only calling for a mailing when

25  the email was undeliverable.

Case 8:05-cv-01070-DOC-MLG   Document 1083   Filed 08/15/17   Page 13 of 54   Page ID #:22070
8:05-CV-1070-DOC   8/30/2017 - Item No. 25

13

09:58    1              So can you show me where the settlement agreement

         2     requires mailing notice if the email goes unread?  And if

         3     not, then that needs to be inserted.

09:58    4              So just make a note of that for a moment.

09:58    5              MR. CADDELL:  Yes, Your Honor.

09:58    6              THE COURT:  We've got a lot of time today.

09:58    7              MR. CADDELL:  Yes, Your Honor.

09:58    8              THE COURT:  Okay.

09:58    9              Then Attorneys' Fees and Enhancement Payments for

        10     Class Representatives.  *(Verbatim.)*

09:58   11              Class counsel is seeking approval of attorneys'

        12     fees in an amount not to exceed 25 percent of the settlement

        13     or $9.5 million.  And class counsel states that they will

        14     not pursue fees for the period during which they were

        15     defending the invalidated incentive payment program.

09:59   16              You proposed an unusual method for determining

        17     class service awards.  And you're asking the Court to set a

        18     deadline of 14 days before the deadline for objections for

        19     any class members to apply for service award.  The Court

        20     will then be responsible for determining whether a plaintiff

        21     is entitled to a service award and the amount of the award.

        22     And payment of service awards will not be contingent on a

        23     plaintiff's support for this settlement.

09:59   24              So I have some concerns about this method, and

        25     maybe a colloquy between all of us would be helpful to the

Court:

09:59  2       Why are the parties proposing this method for
3  determining class service awards?

09:59  4       My next question is do these -- do whatever these
5  reasons -- or whatever these reasons are justify that this
6  extra *(verbatim)* Court involvement in adjudicating the
7  amount of service awards?  In other words, I don't know what
8  the volume of this is.

10:00  9       Third, what information will you have, as
10  plaintiffs -- be required to supply to justify the request
11  for service awards?  *(Verbatim.)*

10:00  12       And, finally, if the Court grants a preliminary
13  approval, should some form be created to guide the requests
14  for these service awards in making that determination?

10:00  15       So those are some concerns that we can answer and
16  discuss throughout the day.

10:00  17       Now, there have been a number of objections.  The
18  White plaintiffs who are represented by --

10:00  19       White plaintiffs?

10:00  20       MR. CADDELL:  Ms. Paik.

10:00  21       THE COURT:  Come on up.  You've objected to the
22  proposed settlement.

10:00  23       And I'll summarize some of the thoughts and
24  disputes and the settling plaintiffs' responses, and provide
25  maybe some tentative thoughts, but they're only tentative

Case 8:05-cv-01070-DOC-MLG  Document 1083  Filed 08/15/17  Page 15 of 54  Page ID #:22072
8:05-CV-1070-DOC   5/30/2017 - Item No. 25

15

10:00

         1    subject to a discussion today.

         2         First, as an objector, you're arguing that the

         3    settlement fund should not advance the cost of class notice.

         4    You're pointing out that the previous settlement amount was

         5    45 million, and that the 7 million was spent on notice for

         6    the settlement.  However, that settlement was ultimately

         7    invalidated because class counsel inserted an incentive

         8    payment scheme that conditioned the payment of incentive

         9    awards upon plaintiffs' approval of the settlement.  And

        10    because the Ninth Circuit invalidated that settlement, those

        11    notice costs were wasted, and notice must now be given

        12    again.  And under the current settlement agreement, the

        13    settlement amount now is only $38 million, not 45-.

10:01   14         You also argue, as objectors, that class counsel

        15    should bear the costs of notice for this second settlement

        16    because this round of notice is only required because class

        17    counsel inserted the impermissible incentive award provision

        18    in the original settlement.

10:01   19         Settling plaintiffs have replied in their papers

        20    that any adjustment to the class counsels' fee award should

        21    be made when class counsel brings its motion for attorneys'

        22    fees.  This seems initially, at first blush, to be a good

        23    argument, but it's something eventually that the Court's

        24    going to have to wrestle with.  And I'm not too certain I

        25    shouldn't make some indications at the present time, after

1    listening to you today, about what those thoughts are.  So

2    this, of course, runs the risk that I would approve a

3    settlement and then substantially diminish class counsels'

4    fee to offset the costs of notice.

10:03    5    If you're willing to run that risk, then I need to

6    know that.  If not, I might give an indication of what my

7    initial thoughts are.  Although I'm not certain, subject to

8    some discussion today, what -- where I'm finally at on that

9    issue.  But I don't know that it threatens the fairness or

10    adequacy of the settlement itself.

10:03    11    Concerning the Sufficiency of the Notice, the

12    objectors have next argued that "planned email notice is

13    insufficient," and you've contended that people are likely

14    to ignore an email notice.  You've also noted that when

15    notice was sent to *(sic)* the previous settlement, it was

16    sent by first class mail and that class members now have an

17    expectation that they will receive notice in the mail.

18    You've also argued that class counsel is pushing this form

19    of notice to hold notice costs down -- which I assume that

20    they are -- and, as class counsel, should be responsible for

21    paying the notice costs.

10:03    22    The response by the settling plaintiffs is that

23    this form of notice was chosen to hold the costs down.  And

24    further, in replying, you've stated the -- in the event that

25    an email notice is undelivered and not opened, the

Case 8:05-cv-01070-DOC-MLG  Document 1083  Filed 08/15/17  Page 17 of 54  Page ID #:22074
8:05-CV-1070-DOC — 3/30/2017 - Item No. 25

17

|       |    |                                                              |
|-------|----|--------------------------------------------------------------|
|       | 1  | settlement administrator will send regular postal notice.    |
|       | 2  | The notice is attached -- is an attachment that's free.  And |
|       | 3  | the administrator will take steps to minimize the instances  |
|       | 4  | where the notice is flagged as spam.                         |
| 10:04 | 5  | Federal Rule of Civil Procedure 23(c)(2)(B)                  |
|       | 6  | requires that notice to the class be, quote:                 |
| 10:04 | 7  | "The best notice practicable under the                       |
|       | 8  | circumstances," end of quote.                                |
| 10:04 | 9  | Some courts have noted there's a split on this               |
|       | 10 | issue.  Some courts have noted downsides to email notice and |
|       | 11 | have expressed concerns that class members would not take    |
|       | 12 | note of the email, and that there would be insufficient      |
|       | 13 | follow-up to address this deficiency.                        |
| 10:05 | 14 | Some of the cases following this line of reason              |
|       | 15 | are *Pokorny*, P-O-K-O-R-N-Y, versus *Quixtar*, Q-U-I-X-T-A-R,|
|       | 16 | Inc.  The cite's not needed.  It's a Northern District of    |
|       | 17 | California case in 2011.                                      |
| 10:05 | 18 | And *Sharma v. Burberry* -- *Sharma* is S-C-H-A-R-M-A        |
|       | 19 | *(sic)* and *Burberry* is B-U-R-B-E-R-R-Y -- *Limited*, which is |
|       | 20 | an Eastern District of New York case, expressing concern     |
|       | 21 | that email notice is less effective than first class         |
|       | 22 | mailing.                                                     |
| 10:06 | 23 | However, other courts have approved email notice             |
|       | 24 | particularly when supported by a follow-up mailing where the |
|       | 25 | email is undeliverable and the reading of the emails is      |

Case 8:05-cv-01070-DOC-MLG   Document 1083   Filed 08/15/17   Page 18 of 54   Page ID #:22075
8:05-CV-1070-DOC - 3/30/2017 - Item No. 25

18

1    tracked.  And I cite *In Re Linkedin* -- so L-I-N-K-E-D-I-N --

2    *User Privacy Litigation*, and *Evans* -- which is a Northern

3    District 2015 case, which strike against the Northern

4    District earlier 2011 case, and *Evans v. Linden Research*,

5    which is another Northern District of California case in

6    2013, as well as *Browning v. Yahoo,* which is a Northern

7    California District case 2006.  And *Hashw v. Department*

8    *Stores National Bank*, which is a Minnesota 2016 case.

10:07   9    It is true that in many of those cases the

10   defendant was a company who communicated mainly with the

11   class members via email making it more likely the defendant

12   would have a current email address and that the email would

13   be opened by the class members.  However, I'm not certain I

14   see a true downside initially to using an email notice where

15   a follow-up mailer is sent to anyone whose email goes

16   unopened.  Indeed, class members in many cases may prefer

17   email notice because email has become the default method of

18   modern written communication.  This seems especially prudent

19   where email *(sic)* notice to all would cost millions of

20   dollars, and the email notice could potentially save money

21   that would be given to class members or paid to class

22   counsel.

10:08   23   Accordingly, where the parties can show this Court

24   where this settlement agreement requires a follow-up mailing

25   where the settlement administrator determines the email went

|       |    |                                                          |
|-------|----|----------------------------------------------------------|
|       | 1  | unopened, I might be amenable to agreeing that the email  |
|       | 2  | notice and follow-up mailing notice plan is the best notice |
|       | 3  | practicable under the circumstances.  But that's subject to |
|       | 4  | you showing me in the settlement and a further discussion. |
|       | 5  | So I'm wide open to having that discussion with you.      |
| 10:08 | 6  | Concerning the Duty of Loyalty, the objectors also |
|       | 7  | argue that class counsel has breached its duty of loyalty to |
|       | 8  | the class.  Specifically, the objectors have argued that  |
|       | 9  | because class counsel may be expected to pay some of the  |
|       | 10 | costs of notice, class counsel is improperly incentivized to |
|       | 11 | choose a less-expensive form of notice.                  |
| 10:08 | 12 | And further, the objectors argue that class    |
|       | 13 | counsel has not offered to bear the costs of re-notice as it |
|       | 14 | should.  These are the repeats of arguments regarding     |
|       | 15 | notice.                                                  |
| 10:09 | 16 | And I can determine whether the notice is       |
|       | 17 | acceptable and determine who will bear the costs of notice |
|       | 18 | at a later time.  Should the Court find the notice is     |
|       | 19 | proper, these potential background interests of class     |
|       | 20 | counsel are not relevant.  But I'm not certain I want to do |
|       | 21 | that.  I'm not sure I don't want to take that head-on so you |
|       | 22 | know what the costs are.                                 |
| 10:09 | 23 | Concerning class counsel's conflicts, the       |
|       | 24 | objectors again point out that the class counsel has an   |
|       | 25 | incentive to keep notice costs down because class counsel |

**Certified for U.S. District Court**
**Debbie Gale, CSR 9472, RPR, CCRR**
**Federal Official Court Reporter**

1    may ultimately be accountable for paying the notice costs.

2    And the objectors are arguing to this Court that because of

3    this incentive, class counsel failed to adequately explore a

4    better settlement or litigation opinion -- or, "options" --

5    preferring to keep, essentially, the same settlement in

6    place so the previous notice could still apply.  The

7    objectors also argued that new class -- or that new

8    co-counsel cannot cure this conflict.

10:09   9        So I'd like to hear in a few moments a little more

10   about -- or from the parties on the role of the new

11   co-counsel.  What role have they played?  How have they

12   mitigated any potential conflict?

10:10  13        And again, I'll ultimately make the determination

14   whether notice is adequate, not class counsel.

10:10  15        Further, this class -- further class counsel did

16   seek to litigate the case by filing a Motion for Leave To

17   Amend.  And class counsel reached settlement after receiving

18   a tentative order from this Court denying the Motion for

19   Leave to Amend.  And the Court will now -- can now turn to

20   the issues of adequacy and fairness of the settlement.

10:10  21        The next concern is the Inadequacy and Unfairness

22   of the Settlement.  And the objectors have argued that the

23   settlement is inadequate and inequitable.

10:10  24        Under Rule 23(e) the Court must determine whether

25   the settlement is fundamentally fair, adequate and

8:05-CV-1070-DOC - 3/30/2017 - Item No. 25

21

|        |    |                                                       |
|--------|----|-------------------------------------------------------|
|        | 1  | reasonable.  A settlement is evaluated,               |
| 10:10  | 2  | "-- as a whole, rather than the                       |
|        | 3  | individual component parts, that must be              |
|        | 4  | examined for overall fairness"                        |
| 10:11  | 5  | -- citing *Hanlon v. Chrysler Corporation* and        |
|        | 6  | *Justice v. Civil Service Commission of San Francisco.* |
|        | 7  | Further, the Court must reject or accept the settlement in |
|        | 8  | its entirety.                                         |
| 10:11  | 9  | As part of the approval process, this Court must      |
|        | 10 | balance numerous factors:                             |
| 10:11  | 11 | "The strength of the plaintiffs' case,                |
|        | 12 | the risk, expense, complexity, and                    |
|        | 13 | likely duration of further litigation;                |
|        | 14 | the risk of maintaining class action                  |
|        | 15 | status throughout the trial; the amount               |
|        | 16 | offered in settlement; the extent of                  |
|        | 17 | discovery completed and the stage of the              |
|        | 18 | proceedings; and the experience and                   |
|        | 19 | views of counsel; presence of a                       |
|        | 20 | government *(sic)* participant; and the               |
|        | 21 | reaction of the class members to the                  |
|        | 22 | proposed settlement."                                 |
| 10:11  | 23 | Citing *Hanlon v. Chrysler Corporation.*              |
| 10:11  | 24 | Further, where, as here, the settlement occurs        |
|        | 25 | before class certification, the Ninth Circuit, quote, |

1    "requires a higher standard of fairness, end of quote, due

2    to the concerns about collusion between defendants and class

3    counsel.

10:12   4           The objectors argue that the current settlement

5    affords insufficient monetary relief.  The objectors point

6    out that the defendants are accused of violating FCRA, which

7    carries a minimum statutory fine of a hundred dollars.

8    There are roughly 15 million people in the class, and many

9    class members have claims against multiple defendants.

10   Accordingly, full recovery in the case might exceed

11   $1 billion.

10:12   12          The objectors point out that the -- measured

13   against this potential recovery, the settlement provides

14   only .05 percent of the reasonable *(verbatim)* expected

15   monetary relief.  This is a steep discount.

10:12   16          However, this class action suffers from very

17   serious manageability issues.  Indeed, this very Court had

18   tentatively denied class certification because, even after

19   many years of litigation, the plaintiffs were unable to

20   define an appropriate class.

10:13   21          Further, this Court recently tentatively denied a

22   Motion for Leave to Amend in this case, in large part

23   because of how long this litigation has dragged on, even

24   discounting the time this case has spent on appeal.  In the

25   tentative denying the Motion for Leave to Amend, this Court

Case 8:05-cv-01070-DOC-MLG  Document 1083  Filed 08/15/17  Page 23 of 54  Page ID
#:22080
8:05-CV-1070-DOC    5/30/2017 - Item No. 25

23

10:13

10:13

10:14

1    also noted that further delay and discovery here would

2    prejudice both defendants and the long-suffering class

3    members who've been awaiting relief for more than a decade.

4         The settling plaintiffs also argue that the new

5    non-monetary relief, consisting of the information regarding

6    disputes processes as well as the option to receive credit

7    reports in lieu of a convenience award, adds value to the

8    settlement.  The settling plaintiffs note that this relief

9    is new and was not able in the previous 2009 settlement.

10        They also note that, even if this alternative

11   value *(sic)* is valued at only -- or this alternative relief

12   is valued at just one dollar, it has the potential to add

13   millions of dollars to the value of -- in the value to the

14   settlement.  And the Court notes that this is only true to

15   the extent that any class members opt to receive these

16   credit reports.

17        The objectors argue that this nonmonetary relief

18   does not improve the reasonableness of the settlement and is

19   essentially worthless.  The objectors note most of this

20   information is already available for free.  They point out

21   to the Court that people can already obtain a free annual

22   credit report.  And they argue that the alternative relief

23   is therefore illusory and that the package of credit

24   information is clearly inferior to the option of 15 to $20

25   convenient *(sic)* award a class member would give up to get

Case 8:05-cv-01070-DOC-MLG   Document 1083   Filed 08/15/17   Page 24 of 54   Page ID #:22081
8:05-CV-1070-DOC - 5/30/2017 - Item No. 25

24

```
 1 │ the credit information.  (Verbatim.)
10:14    2 │         The settling plaintiffs respond that this
 3 │ nonmonetary relief only adds a value as the settlement is
 4 │ non-reversionary and the entirety of the funds will be paid
 5 │ out.  Further, the settling plaintiffs note that credit
 6 │ information is particularly valuable to the class members,
 7 │ as all of the class members have been through bankruptcy and
 8 │ therefore must be particularly attentive to their credit
 9 │ histories.  They also argue that the detailed information
10 │ provided in the notice will be highly useful to the class
11 │ members in ensuring the accuracy of all future credit
12 │ reports.
10:15   13 │         Settling plaintiffs also point out that people
14 │ regularly do pay for the credit information that the class
15 │ members will be offered, suggesting that the credit report
16 │ and other information is not worthless.
10:15   17 │         Because a settlement is non-reversionary and
18 │ because there's a market for the defendants' credit reports,
19 │ I may be inclined to agree, subject to your discussion today
20 │ with the Court, that the settling plaintiffs -- that there
21 │ is some nonmonetary relief that does enhance the settlement,
22 │ although it's difficult to quantify.
10:16   23 │         Finally, concerning the Internal Class Conflicts,
24 │ objectors contend that this class cannot properly be
25 │ certified, even for the purpose of settlement, for a variety
```

Case 8:05-cv-01070-DOC-MLG   Document 1083   Filed 08/15/17   Page 25 of 54   Page ID #:22082
8:05-CV-1070-DOC   5/30/2017 - Item No. 25

25

                 1    of reasons.  This Court has already determined in its prior

                 2    order approving the settlement in this case that it is

                 3    proper to certify this class and to award additional funds

                 4    to class members who were actually damaged.  While that

                 5    prior order was vacated when the Ninth Circuit reversed this

                 6    Court's approval of the prior settlement, the Court's prior

                 7    reasoning stands, and the objectors have offered no new

                 8    critique of that reasoning.

    10:16       9            Accordingly, tentatively, I do not find interclass

                10    *(verbatim)* conflicts preclude settlement or certification --

                11    subject to the arguments today.  And I still have an open

                12    mind on that.

    10:17       13            Concerning the Barriers To Opting Out, the

                14    objectors note that the current proposed settlement, unlike

                15    the previous proposed settlement, requires class members

                16    seeking to opt out to sign the opt-out form, provide a

                17    portion of their Social Security number, and their current

                18    addresses.  The objectors argue that these barriers were

                19    likely erected to prevent the Juntikka firm from submitting

                20    thousands of previous opt-outs it secured as to the prior

                21    settlement.

    10:17       22            The settling plaintiffs reply that it is very

                23    standard to require persons wishing to opt out to sign an

                24    opt-out form and submit some basic identifying information.

                25    This appears to be accurate.

Case 8:05-cv-01070-DOC-MLG   Document 1083   Filed 08/15/17   Page 26 of 54   Page ID #:22083
8:05-CV-1070-DOC   3/30/2017 - Item No. 25

26



10:17   1          The settling plaintiffs do not appear to disagree

2    that these procedures were put in place to prevent Juntikka

3    from submitting mass opt-outs.  However, they argue that

4    class members should have the opportunity to individually

5    opt out rather than Juntikka attempting to represent a

6    mini-subclass of persons who previously opted out.

10:18   7          So my question is *Does it make sense to still*

8    *honor previous claims submitted in the prior settlement,*

9    *while also requiring class members to opt-out again?*  To put

10   it differently:  *If the prior claims should still stand, why*

11   *shouldn't the prior requests for exclusion?*

10:18   12         And finally, the Failure to Provide the Attorneys'

13   Fees to Other Law Firms:

10:18   14         The objectors are arguing that the settlement

15   improperly fails to provide attorneys' fees for the Juntikka

16   and Wolf firms, who performed legal work that culminated in

17   the injunctive relief.

10:18   18         I'll determine the issue of fees when the Motion

19   for Attorneys' Fees comes before the Court.

10:18   20         Mr. Wolf and Mr. Juntikka are, of course, more

21   than welcome to submit their applications for attorneys'

22   fees at the appropriate time, if I follow that process and

23   procedure.

10:18   24         Now, as far as time is concerned, Counsel, I can

25   be with you today until 11:00 o'clock -- just so you know my

|       |    |                                                            |
|-------|----|------------------------------------------------------------|
|       | 1  | schedule.  There's a court function that we have to be at at |
|       | 2  | 11:30 to 1:00 o'clock.  So I'll be back by 1:30.  And I     |
|       | 3  | apologize, but that's preset on my calendar.               |
| 10:19 | 4  | And so, Counsel, I don't care which side starts.           |
|       | 5  | I don't care if -- "White," you can organize yourselves and |
|       | 6  | address the Court.                                         |
| 10:19 | 7  | **ARGUMENT BY MR. CADDELL**                                |
| 10:19 | 8  | MR. CADDELL:  Your Honor, I'm prepared to address         |
|       | 9  | the Court.  I think most of the issues raised by the Court |
|       | 10 | have been addressed in our papers.  I would mention a couple |
|       | 11 | in response to the Court's general comments.               |
| 10:19 | 12 | First, I think, in looking at the -- uh,                  |
|       | 13 | Section 6.2(a), the Court may be correct, I believe the    |
|       | 14 | parties felt that the "undeliverable" covered *(verbatim.)* |
|       | 15 | But I agree that the -- it is ambiguous and so I would     |
|       | 16 | propose -- I'm sure the defendants will not have an        |
|       | 17 | objection -- that we simply amend 6.2(a).                  |
| 10:20 | 18 | At the end of the second full sentence, in that           |
|       | 19 | paragraph where it says,                                  |
| 10:20 | 20 | "Mail notice shall be used to provide                     |
|       | 21 | notice if the settlement administrator                    |
|       | 22 | cannot locate an email address or if the                 |
|       | 23 | settlement administrator learns that an                  |
|       | 24 | email was undeliverable" --                              |
| 10:20 | 25 | -- that we amend that to simply add "and," slash          |

Case 8:05-cv-01070-DOC-MLG   Document 1083   Filed 08/15/17   Page 28 of 54   Page ID #:22085
8:05-CV-1070-DOC - 3/30/2017 - Item No. 25

28

```
 1    "or unopened."  And I think that solves the Court's concern
 2    there.  And -- and that will make it clear that, in fact,
 3    uh, mailed notice will be used if an email is either
 4    undeliverable or unopened.
```

10:20
```
 5          Second, Your Honor, as to the attorneys' fees, I
 6    do think it -- it a bit puts the cart before the horse, but
 7    our thinking is this, um -- and I think the Court has
 8    correctly identified the, uh, issue and the tension.  And so
 9    let me speak for plaintiffs' counsel.
```

10:20
```
10          Your Honor, we've been at this since 2005.  We
11    have been to the Ninth Circuit twice, uh -- actually three
12    times, but there was a -- the side issue.  You may recall
13    the "Juntikka letter" issue was the third appeal that we've
14    had.
```

10:21
```
15          We were prepared to litigate last summer.  And --
16    and the Court knows we went to mediation with
17    Judge Weinstein.  We were not successful.  We came back to
18    the Court.  We did file -- as the Court has noted in its
19    remarks, we did file a Motion for Leave to File an Amended
20    Complaint.  We were prepared to move forward on that.  But
21    we heard the Court and we understood the Court's tentative,
22    and we reached a settlement that we think is better than the
23    original settlement.
```

10:21
```
24          And we are taking the risk -- and by "we," I mean
25    plaintiffs' counsel.  If, at the end of the day, uh, mailed
```

notice is required for a greater portion of the class than

we anticipate and the costs are such that the convenience

awards -- and lemme make something very clear -- the Court

may have noted -- the actual damage awards -- different from

the original settlement -- the actual damage awards are

fixed.  Those do not, uh, vary up and down depending on the

number of people who file for actual damage awards.  So

we -- we have changed the mechanism -- the funding mechanism

for the settlement.

10:22  Actual damage awards are fixed.  Uh, people who

have filed a claim know what they're gonna get.

10:22  Then the funds that are left will fund the

convenience awards.  And I'll represent to the Court the

convenience awards, if they're not in the represented range,

if for some reason it's not going to be achievable at 15 to

$20, then we would expect -- and by "we," again, I mean

plaintiffs' counsel -- we would expect the Court to address

that with our attorneys' fees.

10:23  And we are fully prepared to do that, because we

think it is important to bring this matter to an end.  We

think this is a fair settlement and a settlement better than

the original settlement.

10:23  The Court may note, though, that we have a

mechanism so that unclaimed funds in the -- and by

"unclaimed" or "uncashed" checks for the convenience awards,

| | |
|---|---|
| | 1 |

```
        1    will be recycled to those who did cash those checks.

10:23   2            We just did this in another case.  For whatever
        3    reason, Judge -- and I cannot explain it -- but, in
        4    virtually every case where there is a distribution to class
        5    members of cash amounts, 60 to 90 days later, 25 percent of
        6    those funds are unclaimed.  I wish it were not so.  But
        7    that's -- that's the reality that we deal with.

10:23   8            And so, when those funds are redistributed to
        9    those people who did cash the first check, I think, at the
       10    end of the day, the people who claim convenience awards will
       11    end up with as much or more than was represented -- or we --
       12    we propose be represented in the notice.

10:24  13            Third, the nonmonetary relief is, of course,
       14    something that was not available under the prior settlement.
       15    And the only issue I would take with the Court's
       16    characterization of that is that the value is dependent on
       17    those who claim it.

10:24  18            And I would -- I would differ with the Court in
       19    this.  The reality is -- if the Court has had a chance to
       20    look at the website that will be made available to all class
       21    members -- the information contained there -- yes, most of
       22    it -- much of it is publicly available.  I will tell the
       23    Court that we spent at much time negotiating the website
       24    with the defendants as we spent negotiating the settlement
       25    agreement, maybe more.
```

Case 8:05-cv-01070-DOC-MLG  Document 1083  Filed 08/15/17  Page 31 of 54  Page ID #:22088
8:05-CV-1070-DOC - 3/30/2017 - Item No. 25

31

10:24   1          And the website has been scrubbed by the

        2   defendants.  It is accurate.  But it is also beneficial to

        3   the class in that it contains information that is not on the

        4   defendants' websites, with links to the National Consumer

        5   Law Center's, uh, documents, and websites themselves, on

        6   credit reporting, on -- on the importance of proper credit

        7   reporting and how to deal with your credit, uh, reporting

        8   agency.  It has an opportunity for class members to contact

        9   class counsel and have us represent them in that process.

10:25   10         So when we say a dollar per class member, a class

        11  member who contacts us and asks us at -- no charge to the

        12  class member -- to work with them to resolve issues with

        13  their credit reports, as we have committed to do in this

        14  website, they're getting a value much, much greater than a

        15  dollar.  People who use the -- and, of course, again, if the

        16  Court has looked at the website, the Court will see:  We

        17  make no bones about the fact that much of this information

        18  is available for free.

10:26   19         In fact, we tell class members in the website

        20  where they can get it for free.  What we're saying, though,

        21  is this is sort of one-stop shopping.  In this one place,

        22  you can look at the information with respect to each

        23  credit -- CRA's, um, reporting practices, their terminology,

        24  how they order their reports.  And in that one place, you

        25  can also, then, opt for two credit scores and another credit

Case 8:05-cv-01070-DOC-MLG  Document 1083  Filed 08/15/17  Page 32 of 54  Page ID #:22089
8:05-CV-1070-DOC  5/30/2017 - Item No. 25

32

1    report.  And these are tools that class members can use so

2    that they can -- so, in one transaction, they can get both

3    the free credit report, the two credit scores.  They have

4    two years after the settlement to make use of those.

10:26   5        And with the website, with class counsel's

6    assistance, and with these tools, they have the ability to

7    obtain their credit score, create a base, a starting point,

8    and then go from there to addressing the issues with their

9    credit report, and then obtain a second credit report -- or

10   credit score -- sorry -- um, to demonstrate whether there

11   was movement, and -- and hopefully a positive movement in

12   their credit score.

10:27   13       So we do think this is very valuable.  The process

14   itself is valuable.

10:27   15       Will there be a thousand people, ten thousand

16   people, a hundred thousand people who will take advantage'a

17   that?  I don't know.  I do know that every class member who

18   looks at the website will gain some benefit from that.

19   Because it helps articulate -- there's certain dos and

20   don'ts in that website information that will benefit

21   everyone.  Even if they don't go through the entire process,

22   they will learn about credit reporting.  They will learn

23   about, uh, credit scores.

10:27   24       The significance -- and I think the Court has --

25   has noted this, but this is a hybrid.  Um, uh, this is --

|       |    |                                                                    |
|-------|----|--------------------------------------------------------------------|
|       | 1  | and -- and we made this very clear:  We think this                 |
|       | 2  | settlement has to stand or fall on its own.                        |
| 10:28 | 3  | Having said that, we're twelve years into this.                    |
|       | 4  | We have had appeals.  This is a second settlement -- it's          |
|       | 5  | actually the third settlement.  The Court recalled the             |
|       | 6  | *Acosta* settlement.  And Mr. Sherman apologizes.  He was          |
|       | 7  | called to trial, so Mr. Martinez is here in his stead.             |
| 10:28 | 8  | So we have -- we can't ignore that context.  And I                 |
|       | 9  | was -- um, I thought it was an overstatement -- to say that        |
|       | 10 | the original notice was a waste is, in fact, just not true.        |
|       | 11 | Because there's 700- -- more than 750,000 people -- more           |
|       | 12 | than 760,000 people whose claims are grandfathered in.  And        |
|       | 13 | the Court asked What's the difference between that and the         |
|       | 14 | people who opted out?                                              |
| 10:28 | 15 | The difference is they have a benefit that they                    |
|       | 16 | secured in the original settlement that is protected in this       |
|       | 17 | settlement.  But, if they wanna do something better, if they       |
|       | 18 | opted originally for a convenience award but feel they can         |
|       | 19 | meet the criteria for an actual damage award -- and for            |
|       | 20 | whatever reason years ago they chose not to do that, it was        |
|       | 21 | too much trouble, they were busy at the time -- they can           |
|       | 22 | move.  They can change.                                            |
| 10:29 | 23 | If they do nothing, they're grandfathered in and                   |
|       | 24 | they get what they would've gotten under the original              |
|       | 25 | settlement:  They get those benefits.                              |

Case 8:05-cv-01070-DOC-MLG   Document 1083   Filed 08/15/17   Page 34 of 54   Page ID #:22091
8:05-CV-1070-DOC   5/30/2017 - Item No. 25

34

10:29  1      But if they choose, they can opt for the

2      nonmonetary awards.  They can call class counsel.  They can

3      have us work them and represent them in any dispute they

4      have to clean up their credit report, or to work them

5      through the process of using these free credit scores.

10:29  6          If they want to move to an actual damage award, if

7      they say, *You know what?  I think I can get the criteria* --

8      the Court may recall we have a very minimal documentary

9      requirement.  In fact, you could create a document by

10     getting a letter from someone, by getting an affidavit from

11     someone -- that sorta thing.  There were 17,500 people who

12     took advantage of that opportunity.

10:30  13         So the money spent on administrative costs in the

14     original settlement was not wasted.  There's 700 --

10:30  15         *(Court reporter requests clarification for the*

16         *record.)*

10:30  17         MR. CADDELL:  Sorry.

10:30  18         The $7 million spent in the original settlement in

19     administrative costs -- not just notice, but

20     administrative -- and I'll talk about that in just a

21     second -- uh, that was not wasted.  There are over 760,000

22     people, including more than seven -- about 17,000 people who

23     have actual damage claims who are grandfathered in.

10:30  24         And those claims -- it's not -- it's important to

25     note that those are not just notice costs, but there were

1   administrative costs.  The, uh, actual damage claims had to

2   be verified.  The settlement administrator did that.  Even

3   the convenience --

10:30   4        THE COURT:  What -- what's the burden on Court's

5   involvement in adjudicating these amount of service awards?

10:30   6        MR. CADDELL:  Yes, Your Honor.

10:30   7        Obviously, the Court knows why we did that.  We

8   were very sensitive to the *Radcliff I* opinion from the Ninth

9   Circuit.  The Court has seen in the settlement agreement the

10   provision that no settlement award is promised to anyone and

11   it is not contingent at all on support of the settlement.

10:31   12        Out of deference, frankly, to the White

13   plaintiffs, I think they are the only ones who could

14   possibly, uh, seek a service award, um, other than the named

15   plaintiffs who have signed on to the settlement agreement.

16   We have said, uh, we don't want service awards to be an

17   issue on appeal.

10:31   18        We know -- I'm sure the Court appreciates -- we

19   fully expect there to be another appeal, uh, and we will be

20   at this for years to come.  We didn't want that to be an

21   issue on appeal.  So we wanted to eliminate as much as we

22   could.  That was one issue that we believe we've completely

23   eliminated.

10:31   24        The burden on the Court will be the same as it is

25   in any, uh, um, assessment of service awards.

Case 8:05-cv-01070-DOC-MLG  Document 1083  Filed 08/15/17  Page 36 of 54  Page ID
#:22093
8:05-CV-1070-DOC — 3/30/2017 - Item No. 25

36

10:32   1            The Court may recall that in the original

        2   settlement, the service award requested was $5,000 per

        3   class -- for -- per, um, uh, class representative.  The

        4   Court cut that award to $3,000 as part of its opinion.  Um,

        5   I'm not arguing with that, Your Honor.  I'm just pointing

        6   out that the Court -- I don't think this process -- the

        7   process that we're proposing will be any different for the

        8   Court than it was the first go-around *(verbatim)*.

10:32   9            We will propose an amount.  It will be based on

       10   time spent, services provided by the class members.  If the

       11   White plaintiffs wish to submit a, uh, application for a

       12   service award from the Court, I would expect it would be the

       13   same.  If they don't present evidence that the Court finds

       14   adequate to support a settlement award, then I think that's

       15   a decision that the Court can make.  And it would be more --

       16   no more difficult than it was for the Court to make a

       17   decision several years ago with the original settlement

       18   service awards.

10:33  19            I think, Your Honor, we feel very strongly that

       20   when you work through this entire process, um, first, this

       21   is a better settlement.  Uh, we have been at this for twelve

       22   years.  Uh, we -- there were two very important things that

       23   we wanted to do -- to accomplish in this new settlement -- I

       24   should say three.

10:33  25            Um, first, uh, we wanted to eliminate, of course,

|    |     |
|----|-----|
| 1  | any offending provision that would, uh, have this issue of |
| 2  | conflict by bringing in the two other firms.  And the Court |
| 3  | asked what role did they play.  In fact, uh, our co-counsel, |
| 4  | Mr. Francis, was at the mediation.  In fact, all counsel |
| 5  | were present at the first mediation with Judge Weinstein. |

10:33
6   Um, our co-lead counsel, Jim Francis, with Francis
7   Mailman, his daughter's confirmation was today, and that is
8   why he is not here today -- uh, he was at the mediation with
9   Judge Tevrizian when we reached the settlement.  He fully
10  supports it.  He's been fully engaged.  He was, uh -- he,
11  NCLC, uh, were intricately involved in the development of
12  the website.

10:34
13  The website is outside of my field of expertise.
14  That really is something that has to be devoted to people
15  with the requisite Fair Credit Reporting Act experience.
16  And that's really a product of those members of our team --
17  uh, Mr. Francis, Mr. Bennett, Mr. Rostlin (phonetic) and
18  then NCLC.  And they -- they stand behind that.

10:34
19  Um, as for Public Justice, Mr. Bland -- Paul
20  Bland, who's the Executive Director of Public Justice and
21  has appeared in this courtroom, uh, in support of our
22  original motion for appointment as class -- uh, 23(g) class
23  counsel -- Mr. Bland was both at the mediation with
24  Judge Weinstein and at the mediation with Judge Tevrizian.
25  And Public Justice is fully engaged in this settlement and

|       |    |                                                               |
|-------|----|---------------------------------------------------------------|
|       | 1  | has blessed it, and was, uh, participating every step of the  |
|       | 2  | way.                                                          |
| 10:35 | 3  | THE COURT:  Okay.  Just one moment.                           |
| 10:44 | 4  | MR. CADDELL:  Yes, Your Honor.                                |
| 10:44 | 5  | THE COURT:  Let me see counsel who were here this             |
|       | 6  | morning on another matter.                                    |
| 10:44 | 7  | *(Brief interruption in the proceedings.)*                    |
| 10:44 | 8  | *(Proceedings resumed.)*                                      |
| 10:44 | 9  | THE COURT:  Counsel.  I'm sorry about the                     |
|       | 10 | interruption.  If you would like to continue, please.         |
| 10:44 | 11 | Thank you.                                                    |
| 10:44 | 12 | MR. CADDELL:  Yes, Your Honor.                                |
| 10:44 | 13 | Completing the thought on opt-outs versus                     |
|       | 14 | "grandfathered in."  The point is that those individuals who  |
|       | 15 | went to some effort to, uh, for example, either claim a       |
|       | 16 | convenience award or to actually provide some evidence of     |
|       | 17 | actual damage, should not be penalized and forced to go       |
|       | 18 | through that process again.  So we grandfathered them in.     |
|       | 19 | But they're not limited to that.  They can choose to do       |
|       | 20 | something else in the new settlement.                         |
| 10:44 | 21 | The difference between that and the opt-outs is,              |
|       | 22 | if we allow the prior opt-outs to stand, we'll never know if  |
|       | 23 | those people made a meaningful choice to reject the new       |
|       | 24 | settlement which has additional benefits.  And so the         |
|       | 25 | problem is, uh, we felt like that would be inappropriate.     |

10:45  1          They can choose to reject the second -- the new

       2    settlement, uh -- and if they do so, then they do so.  But

       3    to simply grandfather in, uh, walking away from the

       4    settlement -- and it's not lost on us, Your Honor.  There's

       5    no evidence that any of the individuals who opted out of the

       6    original settlement have ever benefited from pursuing any

       7    individual litigation over this issue and being represented

       8    by Mr. Wolf or Mr. Juntikka.  So they were simply going to

       9    be walking -- walking away from a potential settlement, get

      10    nothing, and do nothing, have no plan.  And so we don't

      11    wanna abandon those people.

10:45 12          Thank you, Your Honor.  I think that's -- if I

      13    might, I'll let Ms. Paik address the Court.  And then I

      14    can -- if the Court has questions after that or -- or if

      15    there's something I need to respond to, I'll do so.

10:46 16          THE COURT:  Certainly.

10:46 17          MR. CADDELL:  Thank you, Your Honor.

10:46 18          THE COURT:  Counsel, we have plenty of time.

      19    Okay?  So if I interrupt you because I have to be at that

      20    other matter, we'll be back.  So take your time.

10:46 21          And, once again, your name.  I know who you are,

      22    but just for the record, and who you represent.

10:46 23          MS. PAIK:  Karen Paik of Boies Schiller on behalf

      24    of the White plaintiffs.

10:46 25          THE COURT:  Thank you.

| 10:46 | 1 | **ARGUMENT BY MS. PAIK** |

10:46   2   MS. PAIK:  Your Honor, I'll be brief.

10:46   3   As Your Honor has carefully read, uh, we set forth

4   our arguments against the settlement in our objection and

5   stand on our papers at this time.  We reviewed the reply,

6   and we continue to stand on our objections.

10:46   7   THE COURT:  Okay.

10:46   8   That's brief.

10:46   9   MS. PAIK:  That is brief.

10:46   10   THE COURT:  You've got as long as you'd like.  I

11   just want to make certain if there's anything else.

10:46   12   MS. PAIK:  We highlighted in our papers that a

13   conflict of interest exists.

10:46   14   THE COURT:  Okay.

10:46   15   MS. PAIK:  Counsel has made clear that they're

16   willing to adjust their attorneys fees, um, to deal with the

17   issue of the cost of re-notice.

10:47   18   We understand that this continues to be an

19   acknowledgment of what appears to be an inherent conflict

20   between the cost of notice, which is the cheapest possible

21   type of notice that counsel have selected, and what is in

22   the best interest of the class itself, which is to receive

23   notice that maximizes their awareness of the settlement.

10:47   24   Our position continues to be that email notice is

25   not the best practicable notice for the class, and that

```
 1   counsel have attempted to remedy the issue of people not
 2   opening their emails, but we continue to assert that in this
 3   day and age of multiple email breaches, hacking, skepticism
 4   and concern about opening links in emails that email notice
 5   is not best way.
```
10:48    6            THE COURT:  Okay.

10:48    7            All right.  Well -- and we'll come back to you.
```
 8   Okay?  I wanna make certain that...
```
10:48    9            Counsel?  And, once again, I know who you are,
```
10   trust me, but just your name and who you represent.
```
10:48   11            MR. McLOON:  Thank you, Your Honor.  Daniel McLoon
```
12   for Experian Information Solutions, Inc., one of the
13   defendants.
```
10:48   14            **ARGUMENT BY MR. McLOON**

10:48   15            MR. McLOON:  I think the only thing you probably
```
16   need to hear from us is that we certainly are agreeable to
17   Mr. Caddell's clarification about mail notice being sent in
18   a situation where we aren't able to confirm that an email
19   has been opened when email notice is used.
```
10:48   20            THE COURT:  Okay.

10:48   21            MR. McLOON:  Thank you, Your Honor.

10:48   22            THE COURT:  Thank you, Counsel.

10:48   23            And who do you represent?

10:48   24            MR. McLOON:  Experian Information Solutions, Inc.

10:48   25            THE COURT:  Okay.

Case 8:05-cv-01070-DOC-MLG  Document 1083  Filed 08/15/17  Page 42 of 54  Page ID #:22099
8:05-CV-1070-DOC    5/30/2017 - Item No. 25

42

| | | |
|---|---|---|
| 10:48 | 1 | And, Counsel. |
| 10:48 | 2 | MS. HANSON:  Cindy Hanson for Equifax. |
| 10:48 | 3 | **STATEMENT RE CONSENT BY MS. HANSON** |
| 10:48 | 4 | MS. HANSON:  And, Your Honor, we do consent to the |
| | 5 | amendment that Mr. Caddell has proposed on the record. |
| 10:48 | 6 | THE COURT:  Okay. |
| 10:48 | 7 | And, Counsel?  There was somebody else who |
| | 8 | represented your entity for a long time.  Is he still around |
| | 9 | or...? |
| 10:49 | 10 | MS. STEPANYAN:  Myself, TransUnion, Steve Newman. |
| | 11 | Yes, he is. |
| 10:49 | 12 | THE COURT:  Okay.  Good. |
| 10:49 | 13 | And your name is? |
| 10:49 | 14 | MS. STEPANYAN:  Julieta Stepanyan. |
| 10:49 | 15 | THE COURT:  Thank you very much. |
| 10:49 | 16 | **STATEMENT RE CONSENT BY MS. STEPANYAN** |
| 10:49 | 17 | MS. STEPANYAN:  And we also consent. |
| 10:49 | 18 | THE COURT:  Okay. |
| 10:49 | 19 | MS. STEPANYAN:  Thank you. |
| 10:49 | 20 | THE COURT:  Anything further? |
| 10:49 | 21 | **FURTHER ARGUMENT BY MR. CADDELL** |
| 10:49 | 22 | MR. CADDELL:  Just very briefly, Your Honor. |
| 10:49 | 23 | The irony is -- I don't know about the Court, uh, |
| | 24 | but -- but let me relate two things:  Most mail that I |
| | 25 | receive today is junk mail. |

43

10:49    1         THE COURT:  Yeah.

10:49    2         MR. CADDELL:  In fact, I typically go -- stop

         3    between the mailbox and my home -- I stop at the trashcan

         4    and throw most of it away.

10:49    5         THE COURT:  That's what I've been trying to weigh

         6    in my own mind; and that is, I have a conflict in some of

         7    the case law -- different divergent views.  My opinion is

         8    becoming, though -- I'm tending to pay much, much more

         9    attention to email in this day and age than I am mail that

        10    comes into my home.  And I don't want to insert that

        11    subjective opinion.  But with the follow-up that you're

        12    representing to the Court with the registered mail -- that's

        13    unopened, et cetera -- *(verbatim)* I think that that really

        14    resolves it.  I think it's also cost effective.

10:50   15         What I'm really concerned about is not a

        16    punishment, in a sense, but it does inflict a burden upon

        17    you.  Because I really don't want this to go below 37- or

        18    $38 million.  And I don't know how to resolve that and be

        19    fair to you.

10:50   20         I think that the best opportunity for me is, one,

        21    to make certain that the notice is adequate.  And I think

        22    it's more than adequate through email, quite frankly,

        23    especially with the follow-up.  I think it keeps the cost

        24    down.  There may be a little bit of discount in the

        25    attorneys' fees when we get to it, but it may be *de minimus*

|  | 1 | if your figures are correct.  And I can work that out in an |
|  | 2 | equitable fashion later on. |
| 10:50 | 3 | But with that "somewhat" warning to you that I |
|  | 4 | don't want that figure to drop any further, I think I'm |
|  | 5 | pretty satisfied with the email and can represent that to |
|  | 6 | you in this day and age. |
| 10:51 | 7 | MR. CADDELL:  Thank you, Your Honor. |
| 10:51 | 8 | If I might just mention one more thing for the |
|  | 9 | record? |
| 10:51 | 10 | Sometimes it's lost in the discussion of email -- |
|  | 11 | I never know how many class members toss that letter into |
|  | 12 | the trash and never open it. |
| 10:51 | 13 | THE COURT:  But you do with email. |
| 10:51 | 14 | MR. CADDELL:  Ironically, with email we can tell |
|  | 15 | if it's unopened. |
| 10:51 | 16 | THE COURT:  Yeah, yeah. |
| 10:51 | 17 | MR. CADDELL:  Thank you, Your Honor. |
| 10:51 | 18 | THE COURT:  Well, listen, talk to your counsel. |
|  | 19 | She had something she wanted to tell you, or speak to.  And |
|  | 20 | you're more than welcome to, Counsel. |
| 10:51 | 21 | MR. CADDELL:  I think Ms. Paik asserted that |
|  | 22 | counsel for the plaintiffs have acknowledged a conflict.  We |
|  | 23 | have not acknowledged a conflict.  In fact, we've gone to |
|  | 24 | great lengths to avoid any conflict.  We don't think there |
|  | 25 | is any conflict. |

10:51　1　　　　　The tension -- there is always a tension in every

2　case in, uh, trying to reduce the notice costs as much as

3　possible because that will inevitably impact the amount of

4　funds you have to distribute to the class --

10:52　5　　　　　THE COURT:  Who rep --

10:52　6　　　　　MR. CADDELL:  So there's no more tension here than

7　in any other case.

10:52　8　　　　　THE COURT:  Who represents Juntikka in this matter

9　today?

10:52　10　　　　MR. CADDELL:  Ms. Paik.

10:52　11　　　　THE COURT:  Ms. Paik, let me speak to you for a

12　moment.

10:52　13　　　　I don't mean to chill Mr. Juntikka's hard efforts

14　in this matter.  He fervently is representing those folks

15　who came into court.

10:52　16　　　　Tell me how he's harmed by this.  He still has the

17　opt-outs.  He still has those group of folks who gathered

18　around him to seek his counsel.

10:52　19　　　　Certainly, the class isn't going to be as big.  I

20　understand that.

10:52　21　　　　How else is he harmed?

10:52　22　　　　MS. PAIK:  He's harmed in the sense that, uh, he

23　has been representing these 2,000 opt-outs, and they have

24　right to counsel, um, but in requiring additional barriers

25　in order to submit an opt-out form, which includes

Case 8:05-cv-01070-DOC-MLG   Document 1083   Filed 08/15/17   Page 46 of 54   Page ID #:22103
8:05-CV-1070-DOC — 3/30/2017 - Item No. 25

46

|   |    |                                                                      |
|---|----|----------------------------------------------------------------------|
|   | 1  | certifying their address, original signatures, including the         |
|   | 2  | last four digits of their Social Security numbers -- that            |
|   | 3  | impinges on Mr. Juntikka's ability to present the opt-out             |
|   | 4  | forms on their behalf.                                                |
| 10:53 | 5  | Contrary to what settling plaintiffs have asserted              |
|   | 6  | in their papers, Mr. Juntikka is not trying to submit a mass         |
|   | 7  | opt-out letter, but would like to be able to submit the              |
|   | 8  | opt-out forms on behalf of his clients.                              |
| 10:53 | 9  | THE COURT:  Okay.                                               |
| 10:53 | 10 | All right.  Well, thank you.                                    |
| 10:53 | 11 | I don't think I've got any other questions.  I                 |
|   | 12 | thought I was going to bring you back this afternoon and             |
|   | 13 | anticipated being with you much longer.                              |
| 10:53 | 14 | Let me spend a few moments in chambers, though.                |
|   | 15 | We've got a stack of documents back there.                           |
| 10:53 | 16 | *(To law clerk:)*  Luke, let me talk to you for a              |
|   | 17 | moment.                                                              |
| 10:54 | 18 | I'll be right back, Counsel.                                    |
| 10:54 | 19 | MR. CADDELL:  Yes, sir.                                         |
| 10:54 | 20 | THE COURT:  Maybe it's not necessary that all of               |
|   | 21 | you come back.                                                       |
| 10:54 | 22 | *(Pause in the proceedings at 10:54 a.m.)*                     |
| 11:01 | 23 | *(Proceedings resumed at 11:01 a.m.)*                          |
| 11:01 | 24 | THE COURT:  Okay.  I want to raise an issue, but               |
|   | 25 | you are going to come back.                                          |

| | | |
|---|---|---|
| 11:01 | 1 | I'm concerned about *Radcliff* and -- and have a |
| | 2 | seat for a moment.  So let me try to clumsily state this |
| | 3 | concern. |
| 11:01 | 4 | I'm concerned about the imbalance between the |
| | 5 | prior opt-out process and claim process and the way it's |
| | 6 | being treated in the new settlement.  The new settlement |
| | 7 | allows the prior claims to stand but not the prior opt-outs. |
| | 8 | In other words, if these prior opt-outs do nothing, in light |
| | 9 | of this new settlement, they get nothing but they're still |
| | 10 | releasing their claims.  And yet they already indicated in |
| | 11 | the initial settlement when they opted out that they were |
| | 12 | not willing to release these very claims. |
| 11:02 | 13 | Now, in a sense, representing Mr. Juntikka -- it's |
| | 14 | not Mr. Juntikka I'm concerned about; it's these clients and |
| | 15 | the fairness to the clients.  And that's my primary concern |
| | 16 | that I want to talk to you about after I come back. |
| 11:02 | 17 | So we'll see you at 1:30. |
| 11:02 | 18 | And I'm very concerned about Radcliff, Counsel. |
| 11:02 | 19 | So, all right.  Oh, the time -- I didn't give you |
| | 20 | a time.  We've got a plea at 1:30.  Come back at 1:45. |
| 11:03 | 21 | *(Proceedings recessed at 11:03 a.m.)* |
| 02:13 | 22 | *(Proceedings resumed at 2:13 p.m.)* |
| 02:13 | 23 | THE COURT:  Okay.  Have a seat. |
| 02:13 | 24 | The reason I asked that question about |
| | 25 | Mr. Juntikka was that I'm concerned that there's a class of |

|       |    |                                                               |
|-------|----|---------------------------------------------------------------|
|       | 1  | people who have to, in a sense, jump through hoops on the     |
|       | 2  | opt-out issue.  And I thought that the settlement agreement   |
|       | 3  | basically gave you the right to walk away if there were 1500  |
|       | 4  | or more opt-outs.  And what I'm trying to find out is what    |
|       | 5  | that universe looks like.  I know that you must have had      |
|       | 6  | some discussion with Judge Tevrizian.                        |
| 02:14 | 7  | I'd hate to see the settlement get scuttled if               |
|       | 8  | there were, you know, 2000 and that was bearable to the      |
|       | 9  | defense.  But right now you might be in the position of      |
|       | 10 | having it scuttled.  And I'm gonna be really --              |
| 02:14 | 11 | No, no.  You've spoken a lot now.  Now it's my               |
|       | 12 | turn.  Okay?  When a judge says something, you better be     |
|       | 13 | listening.  Okay?  You're walking on thin water right now.   |
| 02:15 | 14 | I'm not having this come back to me again.  And              |
|       | 15 | the impression is that -- if I was on the Circuit -- that it |
|       | 16 | slid through one time with these incentive programs.  And    |
|       | 17 | now there's another group of people who go up on appeal, who |
|       | 18 | aren't going to have their day in court because they have to |
|       | 19 | go through another process that is an additional barrier.    |
|       | 20 | And I just don't know what that universe looks like.  If     |
|       | 21 | it's 2000, maybe it's palatable to the other side.  If it's  |
|       | 22 | 10,000, maybe it's not.                                      |
| 02:15 | 23 | What does this universe look like?  And I wanna             |
|       | 24 | hear from the defense first.  In other words, what's your    |
|       | 25 | greatest fear?  What's out there in terms of this Juntikka   |

|       |    |                                                              |
|-------|----|--------------------------------------------------------------|
|       | 1  | group or...?                                                 |
| 02:15 | 2  | MR. McLOON:  We've actually had an opportunity to            |
|       | 3  | confer.                                                      |
| 02:15 | 4  | THE COURT:  Yeah.  Well, tell me.  Let me in on              |
|       | 5  | it.                                                          |
| 02:15 | 6  | MR. McLOON:  You know, I -- we think it's in the             |
|       | 7  | neighborhood of 2,000, and that is not a sufficient concern  |
|       | 8  | to the defendants -- I'm speaking directly for Experian, but |
|       | 9  | my impression is the other defendants are in the same        |
|       | 10 | position -- that we would scuttle the deal over 2000 --      |
| 02:16 | 11 | THE COURT:  See, I might.  That's the problem.               |
|       | 12 | Right now, I'm giving you all the signals in the world.      |
|       | 13 | It's not coming back to me.                                  |
| 02:16 | 14 | MR. McLOON:  I think we have a solution for you.             |
| 02:16 | 15 | THE COURT:  I would really be anxious to hear                |
|       | 16 | that.  'Cause I would like to resolve this, frankly.  But I  |
|       | 17 | want to be a little bit fair to that, you know, Juntikka     |
|       | 18 | class also.                                                  |
| 02:16 | 19 | MR. McLOON:  I think we can take care of that                |
|       | 20 | class.                                                       |
| 02:16 | 21 | THE COURT:  Tell me now, Counsel.                            |
| 02:16 | 22 | MR. CADDELL:  Yes, Your Honor.                               |
| 02:16 | 23 | We went back and looked, Your Honor.  In the final           |
|       | 24 | approval order for the first settlement, you found that      |
|       | 25 | there were six -- six -- 1663 opt-outs.                      |

**Certified for U.S. District Court**
**Debbie Gale, CSR 9472, RPR, CCRR**
**Federal Official Court Reporter**

02:16    1              THE COURT:  Right.

02:16    2              MR. CADDELL:  What we propose with respect to

         3    those opt-outs is that they receive a separate notice, and

         4    that their notice will say,

02:16    5              *You opted out from the original settlement.  There*

         6    *is a new settlement now.  We believe it offers significant*

         7    *benefits.  You may wish to reconsider.  But if do you*

         8    *nothing, then we will honor your opt-out from the original*

         9    *settlement.*

02:17   10              THE COURT:  Okay.

02:17   11              MR. CADDELL:  And what we would propose --

02:17   12              THE COURT:  Counsel, I think you may have solved

        13    it for me.  Let me just have a few moments.  Believe me,

        14    I've got a stack this big back out in the back.  And I

        15    apologize.  I bring out portions of it 'cause it would take

        16    a truckload now.  But I can't thank you enough.

02:17   17              I just hated to have you walk out and get what I

        18    call a "nasty gram --"

02:17   19              MR. CADDELL:  Yes, Your Honor.

02:17   20              THE COURT:  -- that said -- you know, no

        21    surprises.

02:17   22              So if we can work that out, I think I'm gonna be

        23    satisfied.

02:17   24              MR. CADDELL:  Yes, Your Honor.

02:17   25              THE COURT:  If I don't see that inequity, then I

         1    think I'm on very sound grounds.  And I can't thank you

         2    enough.

02:17    3              Well, I'm sorry.  I cut you off.

02:17    4              MR. CADDELL:  I was just gonna say, Your Honor,

         5    what we will do is we will file an amended settlement

         6    agreement with the Court that contains the language we

         7    discussed this morning adding the "and/or unopened" to the

         8    e-mail notice, and we will revise the language with respect

         9    to notice so that it provides specifically that there will

        10    be a special notice given to the prior opt-outs that if they

        11    do nothing, they will be deemed to have opted out from this

        12    settlement as well.

02:18   13              THE COURT:  Then, counsel representing this other

        14    group, White, et cetera, what you're hearing now is that if

        15    Mr. Juntikka is taking this up on appeal, that these grounds

        16    are narrowing rapidly.  He's not harmed in any way from

        17    those original opt-outs, et cetera.  He's not having a class

        18    cut out.  And, quite frankly, from probably the defendants'

        19    side, it's a *de minimus* number anyway.  And it's fair.  So

        20    there's no disparate treatment.  So, therefore, your appeal

        21    will be back to the original grounds that you've propounded,

        22    and we've gone over there.

02:18   23              If you could modify that for me, I think that

        24    tentatively we're there.

02:18   25              MR. CADDELL:  Yes, Your Honor.

02:18    1                THE COURT:  Okay.  I need to do some more thinking

         2    about it but that way there won't be a surprise, which would

         3    be devastating to both side.

02:19    4                Then I don't have anything further, Counsel.

02:19    5                What's a comfortable time frame for the parties to

         6    get together.

02:19    7                MR. CADDELL:  I don't -- well, we --

02:19    8                THE COURT:  Case is "2005."

02:19    9                MR. CADDELL:  Well, we had proposed a final

        10    approval date of December 11th --

02:19   11                THE COURT:  All right.

02:19   12                MR. CADDELL:  -- which is your normal Monday

        13    morning calendar.

02:19   14                THE COURT:  All right.  If you can get this to me

        15    quickly, I think I can get a result back to you as long as

        16    the wording is...

02:19   17                MS. HANSON:  I can get signatures.

02:19   18                Can you get signatures quickly?

02:19   19                MR. CADDELL:  Yes.

02:19   20                MS. HANSON:  I can.

02:19   21                MR. CADDELL:  I think we can get a -- file an

        22    amended agreement with the Court.

02:19   23                THE COURT:  Let's do this:  If I see something

        24    that is of concern, at that point I'll call you back in.  I

        25    think that's a fair place to be because everybody's in good

| | |
|---|---|
| | 1 | faith.  And what I didn't want was that surprise, which is |
| | 2 | why I was gonna bring you back this afternoon.  And now I |
| | 3 | don't think that there may be a surprise. |
| 02:19 | 4 | But if I see something, what I won't do is send |
| | 5 | you a zinger.  I'll get you back in here to see if it can be |
| | 6 | resolved.  Okay? |
| 02:20 | 7 | MR. CADDELL:  Thank you, Your Honor. |
| 02:20 | 8 | THE COURT:  Then I don't have anything further |
| | 9 | other than my thanks. |
| 02:20 | 10 | MR. CADDELL:  Thank you. |
| 02:20 | 11 | MS. HANSON:  Thank you, Your Honor. |
| 02:20 | 12 | THE COURT:  Okay.  Thank you very much. |
| 02:20 | 13 | *(Proceedings adjourned at 2:30 p.m.)* |
| 02:20 | 14 | -oOo- |
| 02:20 | 15 | |

**Certified for U.S. District Court**
**Debbie Gale, CSR 9472, RPR, CCRR**
**Federal Official Court Reporter**

Case 8:05-cv-01070-DOC-MLG  Document 1083  Filed 08/15/17  Page 54 of 54  Page ID #:22111
8:05-CV-1070-DOC - 5/30/2017 - Item No. 25

54

```
02:20    1                        -oOo-

02:20    2

02:20    3                     CERTIFICATE

02:20    4

02:20    5        I hereby certify that pursuant to Section 753,

         6    Title 28, United States Code, the foregoing is a true and

         7    correct transcript of the stenographically reported

         8    proceedings held in the above-entitled matter and that the

         9    transcript page format is in conformance with the

        10    regulations of the Judicial Conference of the United States.

02:20   11

02:20   12    Date:  August 4, 2017

02:20   13

02:20   14
02:20                            /s/ Debbie Gale
02:20   15                       _____
02:20                            DEBBIE GALE, U.S. COURT REPORTER
02:20   16                       CSR NO. 9472, RPR, CCRR

02:20   17

        18

        19

        20

        21

        22

        23

        24

        25
```