Michael A. Caddell (SBN 249469)
mac@caddellchapman.com
Cynthia B. Chapman (SBN 164471)
cbc@caddellchapman.com
Amy E. Tabor (SBN 297660)
aet@caddellchapman.com
CADDELL & CHAPMAN
628 East 9th Street
Houston, TX 77007-1722
Tel.: (713) 751-0400
Fax: (713) 751-0906

Michael W. Sobol (SBN 194857)
msobol@lchb.com
LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
Embarcadero Center West
275 Battery Street, 29th Floor
San Francisco CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

*Attorneys for Plaintiffs*

[additional counsel listed on signature page]

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA
## SOUTHERN DIVISION

TERRI N. WHITE, *et al.*,

    *Plaintiffs*,

    *v.*

EXPERIAN INFORMATION SOLUTIONS, INC.,

    *Defendant.*

AND RELATED CASES:

05-CV-0173-DOC (MLGx)
05-CV-7821-DOC (MLGx)
05-CV-0392-DOC (MLGx)
05-CV-1172-DOC (MLGx)
05-CV-5060-DOC (MLGx)

CASE NO. 05-CV-1070 DOC (MLGx) (Lead Case)

**NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES AND SERVICE AWARDS; MEMORANDUM OF POINTS AND AUTHORITIES**

Date: December 11, 2017
Time: 8:30 a.m.
Ctrm: 9D
Judge: Hon. David O. Carter

# TABLE OF CONTENTS

Notice of Motion and Motion ............................................................................................. v

Memorandum of Points and Authorities .......................................................................... 1

I. Introduction ................................................................................................................. 1

II. Factual and Procedural Background ....................................................................... 3

   A. Plaintiffs' Claims ................................................................................................. 3

   B. Extensive Mediation and Litigation Prior to April 2009
      Proposed Settlement ........................................................................................... 3

   C. The Proposed Settlement ................................................................................... 6

III. Argument and Authorities ...................................................................................... 8

   A. The requested attorneys' fees are reasonable and appropriate ..................... 8

      1. The attorneys' fees sought are reasonable under the percentage-
         of-recovery method. .................................................................................... 9

      2. A cross-check using the lodestar method confirms that the requested
         attorneys' fees are reasonable. ................................................................... 11

   B. The requested expenses are reasonable and should be approved ................. 19

   C. The requested fees will allow Class members to recover awards in
      the same range that was estimated in the 2009 Proposed Settlement. .......... 20

   D. The Court should approve reasonable service awards to the Class
      Representatives. ................................................................................................. 21

IV. Conclusion ............................................................................................................... 23

i

# TABLE OF AUTHORITIES

## CASES

*Ballen v. City of Redmond,*
    466 F.3d 736 (9th Cir. 2006) ....................................................... 14

*Blum v. Stenson,*
    465 U.S. 886 (1984) ................................................................. 12

*Boeing Co. v. Van Gemert,*
    444 U.S. 472 (9th Cir. 1980) ..................................................... 10

*Caudle v. Bristow Optical Co. Inc.,*
    224 F.3d 1014 (9th Cir. 2000) ............................................. 12, 13

*Clark v. Experian Info. Sols., Inc.,*
    2004 WL 256433 (D.S.C. Apr. 20, 2004) ................................... 10

*Cook v. Niedert,*
    142 F.3d 1004 (7th Cir. 1998) ................................................... 22

*Cunningham v. County of Los Angeles,*
    879 F.2d 481 (9th Cir. 1988) ..................................................... 14

*Hanlon v. Chrysler Corp.,*
    150 F.3d 1011 (9th Cir. 1998) ..................................................... 9

*Hartless v. Clorox,*
    273 F.R.D. 630 (S.D. Cal. 2011) ............................................... 20

*Hensley v. Eckerhart,*
    461 U.S. 424 (1983) ................................................................. 12

*Hopson v. Hanesbrands Inc.,*
    No. 08-cv-0844, 2009 WL 928133 (N.D. Cal. April 3, 2010) ....... 15

*In re Animation Workers Antitrust Litig.,*
    No. 14-CV-4062-LHK, 2016 WL 66300, (N.D. Cal. Nov. 11, 2016) ........... 13

*In re GNC Shareholder Litig.,*
    668 F. Supp. 450 (W.D. Pa. 1987) ........................................... 20

*In re Immune Response Sec. Litig.,*
    497 F. Supp. 2d 1166 (S.D. Cal. 2007) ..................................... 20

*In re Media Vision Tech. Sec. Litig.,*
    913 F. Supp. 1362 (N.D. Cal. 1996) ......................................... 19

*In re Mego Fin. Corp. Sec. Litig.,*
    213 F.3d 454 (9th Cir. 2000) ..................................................... 23

*In re Optical Disk Drive Prod. Antitrust Litig.*
    No. 3:10-MD-2143 RS 2016 WL 7364803 (N.D. Cal. Dec. 19, 2016) ........... 13

*In re Prudential Ins. Co. Am. Sales Practices Litig.*,
    148 F.3d 283 (3d Cir. 1998)............................................................15

*In re Wal-Mart Stores, Inc. Wage and Hour Litig.*,
    No. 06-2069, 2011 WL 31266 (N.D. Cal. Jan. 5, 2011)..................................15

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
    19 F.3d 1291 (9th Cir. 1994) .....................................................12, 19

*Kerr v. Screen Extras Guild, Inc.*,
    526 F.2d 67 (9th Cir. 1975) .......................................................... 14

*Masters v. Wilhelmina Model Agency, Inc.*,
    473 F.3d 423 (2d Cir. 2007) .......................................................... 10

*Mills v. Electric Auto-Lite*,
    396 U.S. 375 (1970) ...............................................................10, 19

*Paul, Johnson, Alston & Hunt v. Graulty*,
    886 F.2d 268 (9th Cir. 2002) .......................................................... 9

*Radcliffe v. Experian Info. Solutions Inc.*,
    715 F.3d 1157 (9th Cir. 2013) .................................................*passim*

*Radcliffe v. Herandez*,
    818 F.3d 357 (9th Cir. 2016)......................................................5, 18

*Salazar v. District of Columbia*,
    809 F.3d 58 (D.C. Cir. 2015) ......................................................... 13

*Six Mexican Workers v. Arizona Citrus Growers*,
    904 F.2d 1301 (9th Cir. 1990) ......................................................9, 14

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003) .........................................17, 19, 22, 23

*Steiner v. Am. Broad. Co.*,
    248 Fed. Appx. 780 (9th Cir. 2007) ...................................................15

*Stevens v. Safeway, Inc.*,
    2008 U.S. Dist. LEXIS 17119 (C.D. Cal. 2008) ........................................ 22

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043 (9th Cir. 2002)..................................................*passim*

*Williams v. MGM-Pathe Commc'ns Co.*,
    129 F.3d 1026 (9th Cir. 1997) ...................................................... 9, 10

iii

**STATUTES**

15 U.S.C. § 1681 ................................................................. 3

CAL. BUS. & PROF. CODE § 17200 .................................................. 3

CAL. CIV. CODE § 1784.14(b) ...................................................... 3

CAL. CIV. CODE § 1785.16 .......................................................... 3

**OTHER AUTHORITIES**

CONTE, ATTORNEYS' FEE AWARDS (2d ed. 1977) ........................................ 20

MANUAL FOR COMPLEX LITIG. (4th ed. 2004) ......................................... 23

**RULES**

FED. R. CIV. P. 23(b)(3) ........................................................ 4, 5, 9, 18

FED. R. CIV. P. 42(a) ............................................................. iv

# NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT, on December 11, 2017 at 8:30 a.m. or such other date and time as the Court may set, in Courtroom 9D of the above-captioned Court, located at 411 West Fourth Street, Santa Ana, CA 92701, Class Counsel and Plaintiffs José Hernandez, Kathryn Pike, Robert Randall, Bertram Robison, and Lewis Mann[1] will, and hereby do, move this Court for an Order Granting Attorneys' Fees, Expenses, and Service Awards.

This motion is made pursuant to Federal Rule of Civil Procedure 23 on the grounds that the requested attorneys' fees, expenses, and service awards are reasonable and authorized by law. This motion is based on this Notice of Motion and Motion; the accompanying Memorandum of Points and Authorities; the declarations of Michael A. Caddell, Michael W. Sobol, Lee A. Sherman, James A. Francis, Stuart T. Rossman, Leonard A. Bennett, and F. Paul Bland filed herewith; the Court's Preliminary Approval Order, (Dkt. 1067); the pleadings and records of this action; any argument presented at the hearing on the Motion; and such other and further matters as the court may properly consider.

---

[1] Class Counsel do not represent Plaintiffs Robert Radcliffe, Chester Carter, Maria Falcon, Clifton C. Seale III, and Arnold E. Lovell and therefore do not seek fees or service awards on their behalf. Pursuant to the Court's Orders consolidating *Hernandez v. Equifax Info. Servs.*, No. 2:06-cv-03924, with *White v. Equifax Info. Servs., LLC*, 05-cv-7821 DOC (MLGx) and *Pike v. Equifax Info. Servs. LLC*, 06-cv-5600 DOC (MLGx) for all purposes pursuant to FED. R. CIV. P. 42(a) (*Hernandez* Dkt. No. 33; *Acosta* Dkt. No. 152), Plaintiffs file this motion under the consolidated case but on their own behalf only. Recognizing that today is the deadline to request service awards, Class Counsel here request service awards on behalf of their own clients. Of course any Class members who believe they have made a substantial contribution to the benefit of the class may also request a Service Award. Any plaintiffs involved in the case who are no longer represented by Class Counsel are entitled to make that request through their own counsel, and any counsel involved in the case has been invited to apply.

| | | |
|---|---|---|
| 1 | Dated: October 30, 2017 | Respectfully submitted, |
| 2 | | By: */s/ Michael A. Caddell* |
| 3 | | Michael A. Caddell (SBN 249469) <br> mac@caddellchapman.com |
| 4 | | Cynthia B. Chapman (SBN 164471) <br> cbc@caddellchapman.com |
| 5 | | Amy E. Tabor (SBN 297660) <br> aet@caddellchapman.com |
| 6 | | CADDELL & CHAPMAN |
| 7 | | 628 East 9th Street <br> Houston, TX 77007-1722 |
| 8 | | Telephone: (713) 751-0400 <br> Facsimile: (713) 751-0906 |
| 9 | | |
| 10 | | Michael W. Sobol (SBN 194857) <br> msobol@lchb.com |
| 11 | | LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP |
| 12 | | Embarcadero Center West <br> 275 Battery Street, 29th Floor |
| 13 | | San Francisco CA 94111-3339 <br> Telephone: (415) 956-1000 |
| 14 | | Facsimile: (415) 956-1008 |
| 15 | | James A. Francis (*pro hac vice*) |
| 16 | | jfrancis@consumerlawfirm.com <br> David A. Searles (*pro hac vice*) |
| 17 | | FRANCIS & MAILMAN, P.C. <br> Land Title Building, 19th Floor |
| 18 | | 100 South Broad Street |
| 19 | | Philadelphia, PA 19110 <br> Telephone.: (215_ 735-8600 |
| 20 | | Facsimile: (215) 940-8000 |
| 21 | | Stuart T. Rossman (*pro hac vice*) |
| 22 | | srossman@nclc.org <br> Charles M. Delbaum (*pro hac vice*) |
| 23 | | cdelbaum@nclc.org <br> NATIONAL CONSUMER LAW CENTER |
| 24 | | 7 Winthrop Square, 4th Floor <br> Boston MA 02110 |
| 25 | | Telephone: (617) 542-8010 <br> Facsimile: (617) 542-8028 |
| 26 | | |
| 27 | | |
| 28 | | |

Leonard A. Bennett (*pro hac vice*)
lenbennett@clalegal.com
Matthew Erausquin (SBN 255217)
matt@clalegal.com
CONSUMER LITIGATION
ASSOCIATES, P.C.
12515 Warwick Blvd., Suite 201
Newport News VA 23606
Telephone: (757) 930 3660
Facsimile: (757) 930-3662

Lee A. Sherman (SBN 172198)
lsherman@ctsclaw.com
O. Brandt Caudill, Esq. (SBN 88071)
bcaudill@ctsclaw.com
CALLAHAN, THOMPSON,
SHERMAN & CAUDILL
2601 Main St., Suite 800
Irvine CA 92614
Telephone: (714) 730-5700
Facsimile: (714) 730-1642

Arthur H. Bryant (SBN208365)
abryant@publicjustice.net
PUBLIC JUSTICE, P.C.
555 12th Street, Suite 1230
Oakland CA 94607
Telephone: (510) 622-8150 x 202
Facsimile: (510) 622-8155

F. Paul Bland
pbland@publicjustice.net
PUBLIC JUSTICE, P.C.
1825 K Street NW, Suite 200
Washington DC 20006
Telephone: (202) 797-8600
Facsimile: (202) 232-7203

*Attorneys for Plaintiffs*

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

It was 2005 when Class Counsel and Plaintiffs José Hernandez, Kathryn Pike, Robert Randall, and Bertram Robison, (later to be joined by Lewis Mann) (collectively, "Plaintiffs"),[2] began this litigation. Over the more than 12 years since, Class Counsel have expended $22,115,924.60 in attorney and staff time and paid $1,254,740.13 in out-of-pocket expenses. (*See* Ex. C to Caddell Decl.) Backing out from this total the period of conflict identified by the Ninth Circuit—from April 1, 2009 to May 1, 2013—*see Radcliffe v. Hernandez*, 715 F.3d 1157 (9th Cir. 2013) ("*Radcliffe I*"), and any lodestar or expenses that were previously allocated to obtaining injunctive relief, (*See* Dkts. 775, 839), Class Counsel's lodestar and expenses attributable to achieving this Settlement are $11,830,950.71 and $838,836.94, respectively. (*See* Ex. C to Caddell Decl.) Class Counsel undertook this work entirely on a contingent-fee basis and with no guarantee of success. Since 2005, they have borne the risk that, if they did not achieve a recovery for the Class, they would not be compensated for their time or expenses.

After years of reviewing tens of thousands of pages of documents, retaining numerous credit reporting and consumer bankruptcy experts, taking or defending dozens of depositions, briefing and arguing two lengthy Ninth Circuit appeals, and conducting a series of hard-fought mediations, Class Counsel have now achieved a Settlement that will provide substantial relief for the Class's monetary damage claims. Under the proposed Settlement, Class members can access the Settlement Website to receive information about Defendants' consumer relations and investigation processes and obtain legal help to dispute any erroneous information on their credit reports. (Settlement Agreement § 3.2, Schedule 3.2(A).) They also

---

[2] Camille Chapman, who was added as a Plaintiff on April 13, 2017, (Dkt. 1045), was unfortunately unable to continue serving as a Class Representative for health reasons. (*See* Dkts. 1092–93.)

have the option of claiming either a non-monetary award, in the form of a free file disclosure and two free VantageScore credit scores, or Monetary Awards that will be similar to those made available in the 2009 Proposed Settlement that this Court previously approved. (*See* Dkt. 837.) Class Counsel here request attorneys' fees of $11,161,163.06. Based on a conservative valuation that the non-monetary relief is worth at least $1 per Class member, in addition to the approximately $38 million which will be available to pay Actual Damages Claims and Convenience Award Claims, as well as costs of notice and administration and attorneys' fees and costs, this fee request represents at most only 21% of the total value of this Settlement, well below the Ninth Circuit benchmark. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048–49 (9th Cir. 2002); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998); *Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990). A lodestar cross-check confirms that this request is reasonable, because it represents a 0.94 inverse multiplier, less than the value of Class Counsel's time expended, and well below the multipliers typically approved in the Ninth Circuit. *Vizcaino*, 290 F.3d at 1051 n.6 (noting that a multiplier is frequently awarded in common fund cases when the lodestar method is applied and citing cases with multipliers ranging from 0.6 to 19.6, which most of the cases ranging from 1.0 to 4.0 and a bare majority of cases in the 1.5 to 3.0 range). Based on current estimates of the number of claims, this fee will allow Class Members to recover both Convenience and Actual Damage Awards in the same range that they were estimated to receive under the 2009 Proposed Settlement.[3]

---

[3] Class members will continue to have the opportunity to submit claims up to November 13, 2017. Should the number of approved claims ultimately exceed Class Counsel's current estimates, requiring more funds that expected to satisfy approved claims, Class Counsel will revise their fee request downward in advance of the final approval hearing in order to ensure that sufficient funds remain available to pay claims.

Class Counsel and Plaintiffs therefore respectfully request that the Court enter an Order: (1) awarding Class Counsel reasonable attorneys' fees of $11,161,163.06; (2) awarding Class Counsel reimbursement of $838,836.94 in expenses; and (3) awarding the Class Representatives reasonable service awards.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

### A.  Plaintiffs' Claims

Plaintiffs' claims center on Defendants' failure to maintain reasonable procedures to assure the accurate reporting of debts that have been discharged in bankruptcy because they relied primarily on creditors and public record vendors to report the discharged status of debts and judgments. Plaintiffs assert claims for (i) willful and/or negligent violation of Section 1681e(b) of the Fair Credit Reporting Act, 15 U.S.C. § 1681 ("FCRA"), and its California counterpart, CAL. CIV. CODE § 1784.14(b), for failure to maintain reasonable procedures to assure maximum possible accuracy; (ii) willful and/or negligent violation of Section 1681i of the FCRA and its California counterpart, CAL. CIV. CODE § 1785.16, for failure to reasonably investigate consumer disputes regarding the status of the discharged accounts; and (iii) violation of California's Unfair Competition law, CAL. BUS. & PROF. CODE § 17200.

### B.  Extensive Mediation and Litigation Prior to April 2009 Proposed Settlement

This litigation dates back to 2005, when José Hernandez filed his original Class Action Complaint in *Hernandez v. Equifax Info. Services, LLC, et al.*, No. 05-cv-03996 (N.D. Cal.), which was later transferred to this District and consolidated with *White v. Equifax Info. Servs.*, LLC, 05-cv-7821 DOC (MLGx) and *Pike v. Equifax Info. Servs. LLC*, 06-cv-5600 DOC (MLGx). (Hernandez Dkt. No. 33; Acosta Dkt. No. 152.) During the course of this litigation, Plaintiffs undertook substantial discovery, including taking or defending forty depositions, producing over 50,000 pages of documents, and reviewing over 40,000 pages of documents produced by the

Defendants. (Caddell Decl. ¶ 30.) Plaintiffs also consulted with and retained numerous credit reporting and consumer bankruptcy experts, interviewed numerous consumers, and reviewed thousands of consumer credit reports. (*Id.*)

From August 15, 2007 to February 2009, the parties engaged in arm's-length, contentious, lengthy, and complicated negotiations (with the participation of Defendants' insurance carriers), including seven in-person sessions with a JAMS mediator, the Hon. Lourdes Baird (Ret.), and five in-person mediation sessions with mediator Randall Wulff, as well as several additional in-person or telephonic sessions involving counsel for the parties. (*Id.* ¶ 31.) These efforts resulted in the April 2008 Injunctive Relief Settlement Agreement, which this Court approved. (Dkt. 290.) The parties then resumed with several mediation sessions to continue working toward a settlement of the Class's monetary relief claims, but without success. (Caddell Decl. ¶ 31.) On January 26, 2009, the parties appeared for a hearing on Plaintiffs' Motion for Class Certification of a 23(b)(3) damages class. Prior to the hearing, the Court issued a tentative ruling denying Plaintiffs' Motion for Class Certification pursuant to FED. R. CIV. P. 23(b)(3), decided not to hear the Motion at that time, and directed the parties to make a final attempt to settle the litigation. (*Id.*)

The parties and Defendants' insurance carriers participated in an additional mediation session before mediator Wulff three days later but did not reach an agreement. (*Id.* ¶ 32.) The parties and Defendants' insurance carriers then participated in a settlement conference at the Court on February 5, 2009. (*Id.*) At that conference, Plaintiffs, Equifax, and Experian reached agreement on the principal terms of a settlement (the "2009 Proposed Settlement"), which would have resolved of all Plaintiffs' claims in the Litigation for monetary damages, including statutory and punitive damages. (Dkt. 383.) TransUnion agreed to join that settlement on February 18, 2009. (Caddell Decl. ¶ 32.)

After the Court granted preliminary approval, (Dkt. 423), notice was given to the Class. (*Id.* ¶ 33.) Plaintiffs then moved for final approval, (Dkt. 604), which this Court granted after concluding the settlement was fair and reasonable and after giving due consideration to all objections received. (Dkt. 776.) A group of objectors appealed to the Ninth Circuit, which found that the Settlement's service award provision created an impermissible conflict. *Radcliffe I.* In response to this ruling, Class Counsel have agreed not to seek any fees or expenses for the period of conflict identified by the Ninth Circuit, April 1, 2009, through May 1, 2013, and have removed all time expended during this time period, totaling $5,253,899.76 from their lodestars submitted with this motion. (Caddell Decl. ¶ 33.)

On remand in 2013, out of an abundance of caution, Class Counsel put in place multiple additional safeguards to ensure that the Class's best interests were protected, including the presence of newly associated counsel, Public Justice, P.C. and Francis & Mailman, who, in addition to being unconnected to the prior conflict, bring considerable additional class action experience and FCRA expertise to the table. (*Id.* ¶ 34.) Class Counsel entered into a cooperating counsel agreement, vetted by Professor Charles Silver, to ensure that newly associated counsel is incentivized to achieve the best result for the Class. (*Id.*) On May 1, 2014, this Court appointed Class Counsel to represent the Class under Fed. R. Civ. P. 23(g). (Dkt. 956.) Class Counsel were required to defend their appointment through a lengthy appeal to the Ninth Circuit, including a petition for certiorari to the United States Supreme Court. (Caddell Decl. ¶ 34.)

After the Ninth Circuit's March 2016 ruling in *Radcliffe v. Hernandez*, 818 F.3d 537 (9th Cir. 2016) (*"Radcliffe II"*) and remand to this Court, Plaintiffs re-evaluated the litigation options that would best serve the Class's interests. (*Id.* ¶ 35.) The Parties resumed settlement negotiations and attended a mediation with the Hon. Daniel Weinstein (Ret.) on August 25, 2016, but did not reach agreement. (*Id.*)

On September 19, 2016, Plaintiffs moved for leave to file a Third Amended Complaint to add two additional Class Representatives and two subclasses. (Dkt. 1005.) On October 11, 2016, this Court tentatively denied Plaintiffs' motion and ordered the parties to appear for a settlement conference before the Hon. Dickran M. Tevrizian. (Dkt. 1021.) The parties reached an agreement and signed a term sheet on November 7, 2016. (Caddell Decl. ¶ 35.) Over the next few months, the parties worked to document the detailed settlement language. (*Id.*) The final Settlement Agreement was executed on April 14, 2017. (*Id.*)

## C. The Proposed Settlement

The "23(b)(3) Settlement Class"[4] that will benefit from this Settlement is co-extensive with the Settlement Class under the 2009 Proposed Settlement. (Caddell Decl. ¶ 36.) Under the 2009 Proposed Settlement, Defendants identified Class members using commercially reasonable procedures to search a selection of their archived files. Defendants have now updated that list and provided the Settlement Administrator with the last known mailing address associated with Class members. (Settlement Agreement § 6.1.) Notice has been delivered by either email or mail to the Class according to Court-approved Notice Plan. (Caddell Decl. ¶ 37; *see* Dkt. 1067 at 29–30.)[5]

The Settlement provides both significant monetary and important nonmonetary benefits. In terms of monetary benefits, the Settlement creates a fund consisting of approximately $37 million remaining in the registry of the Court after payment of notice and administration expenses in connection with the 2009 Proposed Settlement and an additional $1 million contributed by the Defendants. (Settlement Agreement § 1.66.) Class members may claim an Actual Damages

---

[4] Capitalized terms herein have the meanings defined in the Settlement Agreement, (Dkt. 1066).

[5] Further details regarding the Notice mailing will be included in the Settlement Administrator's proof of mailing, to be filed on November 10, 2017. (*See* Dkt. 1067 at 35.)

Award of $750 for denial of employment, $500 for denial of a mortgage or housing rental, or $150 for denial of a credit card or auto loan, or payment of a discharged debt to obtain credit, (Settlement Agreement, Schedule 6.2), or, if Class members cannot meet the proof requirements for an Actual Damages Award, they may claim a Convenience Award estimated to be $15–20. (Settlement Agreement § 1.14.) Importantly, all approved claims submitted in connection with the 2009 Proposed Settlement will be honored in this Settlement. (*Id.* § 7.1(a).)

The Settlement's non-monetary benefits are substantial and closely tied to the nature of the claims and alleged harm in this litigation. The Settlement provides Class members with consumer credit reporting assistance and an optional free file disclosure and two free VantageScore credit scores. This benefit is tailored to be of assistance to persons who, like the Class members here, have recently been through bankruptcy and may be seeking to improve their credit scores. Class members can also access the Settlement Website to receive information about Defendants' consumer relations and investigation processes to dispute any erroneous information on their credit reports. (Settlement Agreement § 3.2, Schedule 3.2(A).) This includes an offer of free legal assistance from Class Counsel with extensive expertise handling consumer credit issues. A link to the "Consumer Credit Reporting Assistance" webpage was featured in the Settlement Notice, and thus far this section of the website has received over 80,000 unique visits. (Caddell Decl. ¶ 37.) Class members who visited this section received information about (a) how to obtain free file disclosures; (b) how to read and understand credit reports; (c) the difference between a credit report and a credit score; (d) how to use settlement benefits to track credit ratings and monitor improvements; and (g) how to dispute inaccuracies in credit reports and make the most of Defendants' reinvestigation processes. (Settlement Agreement § 3.2, Schedule 3.2(A).)

Additionally, the Settlement also gives Class members the option of claiming, as an alternative to a monetary damage award, an extra free copy of their credit reports (beyond the free annual FACTA disclosure) and two free VantageScore Credit Scores.[6] (Caddell Decl. ¶ 37.) With two weeks still remaining in the claims period, over 50,000 Class Members have already claimed this benefit.[7] (*Id.*) Overall, this Settlement represents an excellent result for the Class, adding significant non-monetary benefits to the already impressive monetary benefits made available by the 2009 Proposed Settlement.

## III. ARGUMENT AND AUTHORITIES

### A. The requested attorneys' fees are reasonable and appropriate.

The Settlement provides that Class Counsel shall apply for attorneys' fees from the Settlement Fund. (Settlement Agreement § 11.1); *see* FED. R. CIV. P. 23(e) (providing that, in a class action, the court may award reasonable attorney's

---

[6] The Settlement Website clearly explains what a VantageScore is and the differences between FICO Scores and VantageScores. (*See* Settlement Agreement, Schedule 3.2.) This requirement ensures that the Settlement website is consistent with the Consumer Financial Protection Bureau's recent consent orders in cases alleging TransUnion, Experian, and Equifax misrepresented that their proprietary credit score products (TransUnion's VantageScore, Experian's' PLUS Score, and the Equifax Credit Score) were the same credit score typically used by lenders. In fact, the CFPB explains—and the Settlement Website makes clear—that "[n]o single credit score or credit score model is used by every lender" and "[l]enders use an array of credit scores, which vary by score provider and scoring model." *See CFPB Orders TransUnion and Equifax to Pay for Deceiving Consumers in Marketing Credit Scores and Credit Products*, Jan. 3, 2017, https://www.consumerfinance.gov/about-us/newsroom/cfpb-orders-transunion-and-equifax-pay-decieving-consumers-marketing-credit-scores-and-credit-products/; *see also CFPB Orders TransUnion and Equifax to Pay for Deceiving Consumers in Marketing Credit Scores and Credit Products*, Mar. 23, 2017, https://www.consumerfinance.gov/about-us/newsroom/cfpb-fines-experian-3-million-deceiving-consumers-marketing-credit-scores/. The Settlement Website truthfully presents the VantageScore's value to educate consumers about the relative impact of credit history items on their credit and is entirely consistent with the CFPB's findings regarding lenders' use of different credit scoring models.

[7] These claims remain subject to review and approval by the Settlement Administrator, and Class members continue to have the opportunity to submit claims up to November 13, 2017. Plaintiffs will provide final information regarding the number of approved claims for each category of benefit in advance of the final approval hearing, once the Settlement Administrator has reviewed all claim submissions and determined the number of valid claims.

fees authorized by law or the parties' agreement). Where a settlement creates a recovery for the class, the court has discretion to use either a percentage of the class's recovery or the lodestar method to determine the reasonableness of the requested fee. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998) (citing *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 2002)); *see also Vizcaino v. Microsoft Corp.*, 290 F.3d at 1048–49 ("Selection of the benchmark or any other rate must be supported by findings that take into account all of the circumstances of the case," including the results achieved for the class, both monetary and non-monetary, and the risk faced by class counsel in prosecuting the case.) The fee requested here is absolutely reasonable, and indeed represents at most 21% of the total value of the settlement, well below the Ninth Circuit's 25% benchmark, and an inverse (i.e., less than one) multiplier of 0.94 on Class Counsel's lodestar expended in achieving this Settlement—excluding the approximately $5,253,899.76 in lodestar incurred between April 1, 2009 through May 1, 2013 (i.e., the period of conflict identified by the Ninth Circuit).

### 1. The attorneys' fees sought are reasonable under the percentage-of-recovery method.

In the Ninth Circuit, the benchmark for reasonableness under the percentage-of-recovery method is 25%. *Vizcaino*, 290 F.3d at 1047; *Hanson v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998); *Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990); *Paul, Johnson, Alston & Hunt*, 886 F.2d at 272. This Settlement provides over $38 million in non-reversionary monetary benefits as well as significant non-monetary benefits whose value can be conservatively estimated to be at least $15 million. To determine the amount of the benefits conferred, courts look to the total amount made available to the class, rather than the amount ultimately claimed by class members. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 480-81 (9th Cir. 1980); *see also Williams v. MGM-Pathe Commc'ns Co.*, 129 F.3d

1026, 1027 (9th Cir. 1997). This method recognizes that the efforts of class counsel established the entire settlement, including the non-monetary benefits, for the benefit of the class. *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 437 (2d Cir. 2007) (citing *Williams*, 129 F.3d at 1027); *Vizcaino*, 290 F.3d at 1049 ("Incidental or nonmonetary benefits conferred by the litigation are a relevant circumstance."). Attorneys' fees are awardable even though some or all of the benefit conferred is nonpecuniary in nature. *Mills v. Electric Auto-Lite*, 396 U.S. 375 (1970); *see also Clark v. Experian Info. Sols., Inc.*, 2004 WL 256433, at *9 (D.S.C. Apr. 20, 2004) (finding that nonpecuniary benefits have value to class members).

Since the Settlement website was launched, the pages providing comprehensive consumer credit reporting assistance information have received over 80,000 visits already, indicating that Class members value this information and have taken advantage of it. (*See* Caddell Decl. ¶ 37.) The information and offer of legal assistance will remain available through the Effective Date, allowing additional Class members to benefit from it. In addition, over 50,000 Class members have already claimed the optional free file disclosure and two free credit scores in lieu of a Damage Award. (Caddell Decl. ¶ 37.)

While it is difficult to place a precise value on these non-monetary benefits, Defendants currently offer the VantageScore credit scores for $7.95 each. Although they may also be obtained through other organizations and/or as part of a credit monitoring package for less, the fact that over 50,000 class members have already chosen this benefit over a Convenience Award estimated to be between $15–20 indicates that those Class members value the non-monetary relief at least that much. Even if the value of this non-monetary relief were estimated at only $1 per class member on average (and those who took advantage of it clearly valued it much more than that), the total non-monetary relief made available would exceed $15 million. Adding that figure to the $38 million non-reversionary Settlement Fund yields a total

settlement value of at least $53 million. The requested attorneys' fees, $11,161,163.06, accordingly represent at most 21% of the total settlement value, well below the Ninth Circuit benchmark. A higher percentage award could easily be justified in light of "the complexity of this case, the risks involved, and the length of the litigation." *Vizcaino*, 290 F.3d at 1051. This litigation was highly complex, involving novel and difficult issues under the FCRA, has extended since 2005, and Class Counsel undertook all of this work and bore the required expenses entirely on a contingent-fee basis. Class Counsel's requested fee award is therefore reasonable under the percentage-of-recovery method and should be approved. *Vizcaino*, 290 F.3d at 1047.

### 2. A cross-check using the lodestar method confirms that the requested attorneys' fees are reasonable.

The lodestar method may be used by the Court as a cross-check on the percentage method or, at the Court's discretion, as the primary method for calculating the fee. In either case, the lodestar method supports the reasonableness of the requested fee here. *Vizcaino*, 290 F.3d at 1050. ("Calculation of the lodestar, which measures the lawyers' investment of time in the litigation, provides a check on the reasonableness of the percentage award.") The starting point for computing the lodestar amount is to multiply the number of hours reasonably expended on the litigation by a reasonable hourly rate. *See Caudle v. Bristow Optical Co. Inc.*, 224 F.3d 1014, 1028 (9th Cir. 2000); *see also Hensley v. Eckerhart*, 461 U.S. 424 (1983). The hourly rates used must be "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984). In addition, courts typically apply each attorney's current rates for all hours of work regardless of when performed as a means of compensating for the delay in payment. *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1305 (9th Cir. 1994).

Class Counsel's collective lodestar attributable to this Settlement is $11,830,950.71 for work performed over many years of litigation. (Caddell Decl. ¶¶ 45–46; Sobol Decl. ¶ 20; Sherman Decl. ¶¶ 18–21; Francis Decl. ¶¶ 11–13 & Ex. A thereto; Rossman Decl. ¶ 26; Bennett Decl. ¶ 18; Bland Decl. ¶ 3; *see* Ex. C to Caddell Decl.) In calculating this lodestar, Class Counsel excluded *all* hours expended during the period of conflict identified by the Ninth Circuit, from April 1, 2009 to May 1, 2013. (Caddell Decl. ¶ 46; Sobol Decl. ¶¶ 19–20; Sherman Decl. ¶ 20; Rossman Decl. ¶ 26; Bennett Decl. ¶ 18.) Class Counsel seek no fee for the work they performed during this time period. In addition, the above lodestar figure excludes one-half of the hours expended up to April 3, 2008 and any additional hours that were allocated to the Injunctive Relief Settlement. (Caddell Decl. ¶ 45; Sobol Decl. ¶¶ 18, 20; Sherman Decl. ¶ 19; Rossman Decl. ¶ 26; Bennett Decl. ¶ 18; *see* Ex. C to Caddell Decl.; Dkt. 577 at 9.)[8] Class Counsel will be compensated for this Injunctive Relief Settlement time according to the Court's Injunctive Relief Fee Order. (Dkts. 775, 839.)[9]

The rates used to calculate this figure are Class Counsel's current standard rates, which have been approved by multiple courts and are comparable to rates paid for similar work. (Caddell Decl. ¶¶ 48–50; Sobol Decl. ¶ 22; Sherman Decl. ¶¶ 24–25; Francis Decl. ¶ 12 & Exs. B & C thereto; Rossman Decl. ¶ 27; Bennett Decl. ¶¶ 25–26; Bland Decl. ¶ 23); *see In re Optical Disk Drive Prod. Antitrust Litig.* No. 3:10-MD-2143 RS 2016 WL 7364803, at *8 (N.D. Cal. Dec. 19, 2016) (approving rate of $950 per hour for senior partner); *In re Animation Workers Antitrust Litig.*, No. 14-CV-4062-LHK, 2016 WL 66300, at *6 (N.D. Cal. Nov. 11, 2016) (approving

---

[8] Note that, because Class Counsel have used current rates to calculate their lodestar for purposes of this Motion, the total dollar amount deducted for lodestar allocated to obtaining injunctive relief is greater than the amount referenced in Counsel's injunctive relief fee petition, which was based on 2009 rates. (*See* Dkt. 575-4 at 22.)

[9] Fees awarded for the Injunctive Relief Settlement will also be paid upon the Effective Date of this Settlement. (Settlement Agreement § 11.2.)

rates of between $845 and $1,200 for three senior attorneys). These rates are reasonable and appropriate in light of Class Counsel's extensive experience in consumer class actions, other complex cases, and FCRA litigation. (Caddell Decl. ¶¶ 1–26; Sobol Decl. ¶¶ 7–12; Francis Decl. ¶¶ 4–8; Sherman Decl. ¶ 3; Rossman Decl. ¶ 9; Bennett Decl. ¶¶ 10–12; Bland Decl. ¶¶ 8–17); *see Salazar v. District of Columbia*, 809 F.3d 58, 64 (D.C. Cir. 2015) (finding that "for lawyers with experience levels between eleven and nineteen years from the date of law school graduation, the average national law firm rate in 2012 to 2013 was $672"). Indeed, Class Counsel have been responsible for many of the largest recoveries ever in FCRA class actions and have litigated more individual FCRA cases than any lawyers in the country. (Caddell Decl. ¶¶ 9–12; Francis Decl. ¶¶ 4–8; Bennett Decl. ¶¶ 6, 10–12.) In addition, where Class Counsel have been engaged to represent hourly fee-paying clients, these clients have paid the same hourly rates, further confirming that the rates used are reasonable and in line with prevailing market rates. (Caddell Decl. ¶ 48; Sobol Decl. ¶ 22; Sherman Decl. ¶¶ 24–25; Francis Decl. ¶ 12 & Exs. B & C thereto.)

The number of hours that Class Counsel incurred is reasonable as well. *See Caudle*, 224 F.3d at 1028 (holding that counsel is entitled to recover for all hours reasonably expended.) In order to achieve this Settlement, Class Counsel were required to undertake substantial discovery, including taking or defending forty depositions, producing over 50,000 pages of documents, reviewing over 40,000 pages of documents produced by the Defendants, and retaining and consulting with numerous experts. (Caddell Decl. ¶ 30.) Achieving this Settlement also required numerous contentious, lengthy, arm's-length mediations, including seven in-person sessions with the Hon. Lourdes Baird (Ret.) and five with mediator Randall Wulff prior to the 2009 Proposed Settlement and two mediations with the Hon. Daniel

Weinstein (Ret.) and the Hon. Dikran M. Tevrizian in 2016. (*See* Caddell Decl. ¶¶ 31, 35.)

Once the "raw" lodestar figure has been determined, the court may take into consideration additional factors to enhance the lodestar, including: the time and labor required; the novelty and difficulty of the questions involved; the skill requisite to perform the legal service properly; whether the fee is fixed or contingent; the amount involved and the results obtained; the experience, reputation, and ability of the attorneys; and awards in similar cases. *See Ballen v. City of Redmond*, 466 F.3d 736, 746 (9th Cir. 2006) (citing *Cunningham v. County of Los Angeles*, 879 F.2d 481, 487 (9th Cir. 1988) and *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975)). While under the percentage method, "[t]he lodestar method is merely a cross-check on the reasonableness of a percentage figure,"[10] the Court has discretion to adjust the percentage of the recovery, or replace the percentage method with a lodestar calculation, if special circumstances indicate the percentage recovery is too small or too large. *Six Mexican Workers*, 904 F.2d at 1311.

Class Counsel's requested fee here represents an "inverse" multiplier of approximately 0.94, reflecting that the fees requested are less than the total time Class Counsel have expended in obtaining in this Settlement. (*See* Ex. C. to Caddell Decl.) This lodestar cross-check confirms that the requested fee is absolutely reasonable. The inverse effective multiplier here is well below the multipliers typically approved in the Ninth Circuit. *See Steiner v. Am. Broad. Co.*, 248 Fed. Appx. 780, 783 (9th Cir. 2007) (common fund settlement with fee based on percentage of 24% held reasonable, and lodestar cross-check indicated a multiplier of approximately 6.85, which was well within the range of multipliers allowed in other cases); *see also Vizcaino*, 290 F.3d at 1051 n.6 (noting that a multiplier is frequently awarded in common fund cases when the lodestar method is applied and citing cases

---

[10] *Vizcaino*, 290 F.3d at 1050 n.5.

with multipliers ranging from 0.6 to 19.6, which most of the cases ranging from 1.0 to 4.0 and a bare majority of cases in the 1.5 to 3.0 range); *In re Wal-Mart Stores, Inc. Wage and Hour Litig.*, No. 06-2069, 2011 WL 31266, at *7 (N.D. Cal. Jan. 5, 2011) (approving 1.4 multiplier as "warranted in view of the results counsel achieved for the class"); *Hopson v. Hanesbrands Inc.*, No. 08-cv-0844, 2009 WL 928133, at *12 (N.D. Cal. April 3, 2010) ("'[M]ultiples ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied.'") (quoting *In re Prudential Ins. Co. Am. Sales Practices Litig.*, 148 F.3d 283, 341 (3d Cir. 1998)).

A far higher multiplier could easily be justified by the work that Class Counsel has performed prior to the 2009 Proposed Settlement and since the *Radcliffe I* decision in 2013 to achieve this Settlement. Prior to the 2009 Proposed Settlement, Class Counsel undertook substantial investigation, fact-gathering, and formal discovery (including review of tens of thousands of pages of documents, retention and consultation of numerous experts in the fields of credit reporting and consumer bankruptcies, interviews with numerous consumers, review of thousands of consumer credit reports, and numerous depositions), as well as significant motion practice and other litigation. (*See* Caddell Decl. ¶ 30.) Plaintiffs took or defended forty depositions, produced over 50,000 pages of documents, and reviewed over 40,000 pages of documents produced by the Defendants. (*Id.*) The depositions taken by Plaintiffs included depositions of each of Defendants' experts, as well as testimony from Directors, Vice Presidents, other senior officers, and analysts and consultants from Defendants' departments handling, among other subjects, data acquisition services, consumer relations, consumer fraud, technical, software, and modeling, compliance, decision analytics, and predictive services. (*Id.*) From these depositions, Class Counsel acquired significant information used to rebut Defendants' opposition to changing their procedures and to meet Defendants' challenges regarding class certification. For example, Class Counsel learned, among

other things, that Defendants could identify consumers who had credit reports issued whose files included a Chapter 7 bankruptcy discharge, both in current and archived files; that Defendants could screen out consumers whose bankruptcies involved asset cases; that certain types of debts are discharged in a Chapter 7 no-asset bankruptcy; and that Defendants were not engaging in reasonable monitoring and reporting of disputed tradelines to ensure maximum possible accuracy. (*Id.*) The depositions also helped Class Counsel challenge the scoring analyses conducted by both Experian and Equifax, as well as Defendants' arguments concerning alleged scoring benefits to consumers from inaccurate credit reporting. (*Id.*)

In order to conduct discovery efficiently and avoid duplicating work, Class Counsel divided into three discovery teams, one for each Defendant. Counsel carefully coordinated discovery efforts to ensure that they were doing identical discovery of each Defendant and also held numerous meetings and conference calls to discuss documents and depositions and keep all teams informed of what information they were learning and what discovery was still needed. (*Id.*)

Class Counsel also retained several experts who have filed numerous declarations with the Court and engaged in extensive motion practice, including briefing and arguing a motion for summary judgment. (Caddell Decl. ¶ 31.) Negotiations leading up to the 2009 Proposed Settlement were hard fought. (*Id.*) The parties conducted extensive arms-length and contentious negotiations during the course of a lengthy and complicated mediation with the Hon. Lourdes Baird (Ret.) and with Randall Wulff. (*Id.*) The parties participated in seven full days of mediation with the participation of Judge Baird, as well as numerous telephonic conferences with Judge Baird. (*Id.*) The parties also participated in five in-person mediation sessions with mediator Randall Wulff, including a mandatory settlement conference at the Court on February 5, 2009. (*Id.* ¶¶ 31–32.)

All of this work, performed before insertion of the service award language that the Ninth Circuit later found created a conflict, contributed to securing the $45 million cash fund that Defendants deposited into the registry of the Court in connection with the 2009 Proposed Settlement, and which will continue to benefit the Settlement Class here. (*Id.* ¶ 32.) The approximately $37 million remaining in this cash fund, together with the additional $1 million in cash and the new Non-Monetary benefits that Defendants contributed to this Settlement, will be used to honor all approved claims in this Settlement. (Settlement Agreement §§ 1.66, 7.1(a).) These claims include valid claims received in response to the notice campaign conducted in connection with the 2009 Proposed Settlement, meaning that the 2009 notice campaign will have ongoing benefit to the Class.[11]

On remand in 2013, out of an abundance of caution, Class Counsel put in place multiple additional safeguards to ensure that the Class's best interests were protected, including the presence of newly associated counsel, Public Justice, P.C. and Francis & Mailman, who, in addition to being unconnected to the prior conflict, bring considerable additional class action experience and FCRA expertise to the table. (Caddell Decl. ¶ 34; Francis Decl. ¶¶ 4–8; Bland Decl. ¶¶ 8–17.) Class Counsel entered into a cooperating counsel agreement, vetted by Professor Charles Silver, to ensure that newly associated counsel is incentivized to achieve the best result for the Class. (*Id.*) After this Court appointed Class Counsel to represent the Class under Fed. R. Civ. P. 23(g), (Dkt. 956), Class Counsel were required to defend their appointment through a lengthy appeal to the Ninth Circuit, including a

---

[11] While recognizing that the 2009 Notice Campaign did have some benefit to Class members by allowing them to file claims that will be honored in this Settlement, Class Counsel do not include the cost of that Notice in the total value of the recovery for attorneys' fee purposes, recognizing that their mistake in drafting the 2009 Proposed Settlement was responsible for requiring significant additional notice expenses. *Staton v. Boeing Co.*, 327 F.3d 938, 974–75 (9th Cir. 2003) ("The district court also did not abuse its discretion by including the cost of providing notice to the class of the proposed consent decree as part of its putative fund valuation, although the cost of providing two notices rather than one should not have been included.")

petition for certiorari to the United States Supreme Court. (*Id.*) Ultimately, the Ninth Circuit affirmed this Court's Order appointing Class Counsel, and the Supreme Court declined Objectors' petition for certiorari. (Dkts. 977–79.)

After the Ninth Circuit's March 2016 ruling in *Radcliffe II*, Plaintiffs re-evaluated the litigation options that would best serve the Class's interests. (Caddell Decl. ¶ 35.) The parties resumed settlement negotiations and attended a mediation with the Hon. Daniel Weinstein (Ret.) on August 25, 2016, but did not reach agreement. (*Id.*) On September 19, 2016, Plaintiffs moved for leave to file a Third Amended Complaint to add two additional Class Representatives and two narrower, more focused subclasses. (Dkt. 1005.) On October 11, 2016, this Court tentatively denied Plaintiffs' motion and ordered the parties to appear for a settlement conference before the Hon. Dickran M. Tevrizian. (Dkt. 1021.) The parties reached an agreement and signed a term sheet on November 7, 2016. (Caddell Decl. ¶ 35.) Over the next few months, the parties worked to document the detailed settlement language. (*Id.*) The final Settlement Agreement was executed on April 14, 2017. (*Id.*)

All of this extensive work was performed entirely on a contingent basis, and Class Counsel have not been compensated for their time or reimbursed for any expenses over the more than 12 years of this litigation. (Caddell Decl. ¶ 54.) Furthermore, the lodestar submitted to date does not include any time that Class Counsel will expend preparing this motion and the Motion for Final Approval, responding to objections, and briefing and arguing any appeals from final approval, all of which will further decrease the multiplier. (*Id.*) The risk undertaken by Class Counsel alone would reasonably support a significant ***positive*** multiplier here, and at the very least reinforces the reasonableness of the fee Class Counsel requests (which again represents an "inverse" multiplier of less than one). *See In re Wash Pub. Power*, 19 F.3d at 1300 ("[C]ourts have routinely enhanced the lodestar to reflect the risk of non-payment in common fund cases.") This litigation also involved complex and

novel issues, including the standard of willfulness under the FCRA, and required a detailed understanding of Defendants' credit reporting databases. In summary, the amount of work performed here on a completely contingent basis, the excellent result obtained on behalf of the Class, and the novelty and complexity of the issues involved strongly support that the Court should approve Class Counsel's request for attorneys' fees.

**B.  The requested expenses are reasonable and should be approved.**

"Reasonable costs and expenses incurred by an attorney who creates or preserves a common fund are reimbursed proportionately by those class members who benefit by the settlement." *In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1366 (N.D. Cal. 1996) (citing *Mills*, 396 U.S. at 391–92); *see also Staton*, 327 F.3d at 974. The requested costs must be relevant to the litigation and reasonable in amount. *In re Media Vision*, 913 F. Supp. at 1366.

Throughout the course of this litigation, Class Counsel have incurred substantial out-of-pocket expenses totaling $838,836.94 attributable to this Settlement. (Caddell Decl. ¶ 47; Sobol Decl. ¶¶ 23–24; Sherman Decl. ¶¶ 26–27; Francis Decl. ¶ 15 & Ex. D thereto; Rossman Decl. ¶ 26; Bennett Decl. ¶ 21 Bland Decl. ¶ 3; *see* Ex. C to Caddell Decl.) This total does not include $207,253.29 in expenses that were incurred during the period of conflict identified by the Ninth Circuit in *Radcliffe I*. (*Id.*) Nor does it include $208,649.90 in expenses that attorneys will be compensated for in conjunction with the Injunctive Relief Settlement. (*Id.*; *see also* Dkts. 775, 839.) These expenses include filing fees; expenses associated with the research, preparation, filing, and responding to pleadings in this matter; costs for experts; mediation fees, and other expenses reasonably incurred in litigating this action on behalf of the Class. (Caddell Decl. ¶ 47; Sobol Decl. ¶¶ 23–24; Sherman Decl. ¶¶ 26–27; Francis Decl. ¶ 15 & Ex. D thereto; Rossman Decl. ¶ 26; Bennett Decl. ¶ 21; Bland Decl. ¶ 3.) All of these expenses were advanced by Class Counsel

with no guarantee they would ultimately be recovered, and most were "hard" costs paid out of pocket to third-party vendors, court reporters, and experts. (*Id.*) These costs were necessary in conjunction with this litigation and its resolution for the benefit of the Class. Accordingly, these costs are reimbursable. *See In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1177–78 (S.D. Cal. 2007) (finding that costs such as filing fees, photocopy costs, travel expenses, postage, telephone and fax costs, legal research fees, and mediation expenses are relevant and necessary expenses in a class action litigation); *see also In re GNC Shareholder Litig.*, 668 F. Supp. 450, 452 (W.D. Pa. 1987); CONTE, ATTORNEYS' FEE AWARDS § 2.08 at 50–51 (2d ed. 1977). The Court should therefore award the requested expenses. *Hartless v. Clorox*, 273 F.R.D. 630, 646 (S.D. Cal. 2011) (awarding reasonable costs and expenses).

**C.  The requested fees will allow Class members to recover awards in the same range that was estimated in the 2009 Proposed Settlement.**

As Class Counsel has previously committed to this Court, Class Counsel do not seek any fees that would leave the Class in a worse position than it would have been under the 2009 Proposed Settlement. In the 2009 Proposed Settlement, Actual Damages Claimants were expected to receive awards of $750 for employment-related claims, $500 for mortgage or housing rental claims, or $150 for claims related to denial of other forms of credit, or payment of a discharged debt to obtain credit. (Dkt. 384 at 31.) Those same amounts are guaranteed to Class Members with approved Actual Damages Claims under this Settlement. (Settlement Agreement, Schedule 6.2.) After payment of the Actual Damage Claims, estimated notice and administration costs, and attorneys' fees and expenses, Class Counsel guaranteed that the Convenience Award fund under the 2009 Proposed Settlement would be at least $10 million and estimated that Convenience Award Claimants would receive approximately $20 each. (Dkt. 384 at 31.) In this Settlement, after payment of the

Actual Damages Claims, estimated notice and administration costs of no more than $6 million, and the requested $12 million in combined attorneys' fees and expenses, Class Counsel estimate that a fund of approximately $14.3 million will remain to satisfy Convenience Award claims. (Caddell Decl. ¶ 55.) This is more than the $10 million fund guaranteed in the 2009 Proposed Settlement and, based on current projections of approximately 950,000 Convenience Award Claims, should result in payments of approximately $15.00 in the initial round of check mailing, with the potential for additional amounts to be distributed, as part of a secondary distribution, from funds that are associated with uncashed checks. (*Id.*; *see* Settlement Agreement § 7.2(c).) Class Counsel's requested fee here is based on claims data to date, with two weeks remaining in the claims period. Should additional claims submitted by the final claims deadline result in more funds than expected being required to satisfy approved claims, Class Counsel will revise their fee request downward in advance of the final approval hearing in order to ensure that sufficient funds remain available to pay claims.

## D. The Court should approve reasonable service awards to the Class Representatives.

The Settlement Agreement provides that Class Counsel will petition the Court for Service Awards for each Plaintiff "regardless of whether each of them supports the Settlement." (Settlement Agreement § 12.1.) These Service Awards are in addition to the relief the Class Representatives will be entitled to under the terms of the Settlement. Throughout the litigation, Mr. Hernandez, Ms. Pike, Mr. Randall, and Mr. Robison have participated in discovery, including extensive and probing depositions and responding to interrogatories and requests for production of documents. (*See* Dkt. 385, 387, 412, 604-4–7, 645-5–9, 1049, 1052, 1053, 1061.) Lewis Mann was added to this case as a new Class Representative by stipulation on April 13, 2017. (Dkt. 1045.) While he has not been subjected to the

same discovery requirements as the other Class Representatives, his presence as a new, independent plaintiff with no connection to the 2009 Proposed Settlement has rendered a significant service to the Class. All of the Class Representatives were kept informed of the litigation as it developed and were kept abreast of, and agreed to and signed the Settlement. (Dkts. 1049–53, 1061, 1066.)

Mindful of the Ninth Circuit's decision in *Radcliffe I*, the Settlement Agreement makes explicit that not only are service awards not conditioned on support for the Settlement, they are not limited only to the Plaintiffs. Any person, not just the Class Representatives, who believes he or she has made a substantial contribution to benefit the Class may apply for a Service Award. (Settlement Agreement § 12.2.) The Ninth Circuit has recognized that Service Awards are appropriate and should be awarded according to "relevant factors, includ[ing] the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefited from those actions, [and] … the amount of time and effort the plaintiff expended in pursuing the litigation." *Staton*, 327 F.3d at 977 (citing *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998) (ellipses in original).

Plaintiffs here submit that Service Awards are appropriate to compensate for the significant contribution that the Class Representatives have made to achieve the excellent result secured for the Class here. Without their time and efforts, millions of Class members, who will enjoy the benefits of the Settlement without taking any personal action, would never have received any recovery. Reasonable service awards, in addition to any claims-based recovery from the settlement, promote the public policy of encouraging people to undertake the responsibility of representative lawsuits. *See, e.g.*, *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000); *Staton*, 327 F.3d at 977; *Stevens v. Safeway, Inc.*, 2008 U.S. Dist. LEXIS 17119 (C.D. Cal. 2008); *see also* MANUAL FOR COMPLEX LITIG. § 21.62 n.971 (4th ed. 2004) (service awards may be "merited for time spent meeting with class members,

monitoring cases, or responding to discovery"). Plaintiffs submit that such awards are appropriate here, but do not apply for a specific amount, instead leaving the appropriate amount to the Court's discretion.

## IV.  CONCLUSION

For the reasons stated above, Class Counsel respectfully request that this Court grant their Motion and award (a) attorneys' fees to Class Counsel in the amount of $11,161,163.06, (b) expenses to Class Counsel in the amount of $838,836.94, and (c) reasonable Service Awards to the Class Representatives.

Dated: October 30, 2017                    Respectfully submitted,

                                           By: */s/ Michael A. Caddell*
                                           Michael A. Caddell (SBN 249469)
                                           mac@caddellchapman.com
                                           Cynthia B. Chapman (SBN 164471)
                                           cbc@caddellchapman.com
                                           Amy E. Tabor (SBN 297660)
                                           aet@caddellchapman.com
                                           CADDELL & CHAPMAN
                                           628 East 9th Street
                                           Houston, TX 77007-1722
                                           Telephone: (713) 751-0400
                                           Facsimile: (713) 751-0906

                                           Michael W. Sobol (SBN 194857)
                                           msobol@lchb.com
                                           LIEFF, CABRASER, HEIMANN &
                                           BERNSTEIN, LLP
                                           Embarcadero Center West
                                           275 Battery Street, 29th Floor
                                           San Francisco CA 94111-3339
                                           Telephone: (415) 956-1000
                                           Facsimile: (415) 956-1008

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

James A. Francis (*pro hac vice*)
jfrancis@consumerlawfirm.com
David A. Searles (*pro hac vice*)
FRANCIS & MAILMAN, P.C.
Land Title Building, 19th Floor
100 South Broad Street
Philadelphia, PA 19110
Telephone.: (215_ 735-8600
Facsimile: (215) 940-8000

Stuart T. Rossman (*pro hac vice*)
srossman@nclc.org
Charles M. Delbaum (*pro hac vice*)
cdelbaum@nclc.org
NATIONAL CONSUMER LAW CENTER
7 Winthrop Square, 4th Floor
Boston MA 02110
Telephone: (617) 542-8010
Facsimile: (617) 542-8028

Leonard A. Bennett (*pro hac vice*)
lenbennett@clalegal.com
Matthew Erausquin (SBN 255217)
matt@clalegal.com
CONSUMER LITIGATION
ASSOCIATES, P.C.
12515 Warwick Blvd., Suite 201
Newport News VA 23606
Telephone: (757) 930 3660
Facsimile: (757) 930-3662

Lee A. Sherman (SBN 172198)
lsherman@ctsclaw.com
O. Brandt Caudill, Esq. (SBN 88071)
bcaudill@ctsclaw.com
CALLAHAN, THOMPSON,
SHERMAN & CAUDILL
2601 Main St., Suite 800
Irvine CA 92614
Telephone: (714) 730-5700
Facsimile: (714) 730-1642

1

2   Arthur H. Bryant (SBN208365)
    abryant@publicjustice.net
3   PUBLIC JUSTICE, P.C.
    555 12th Street, Suite 1230
4   Oakland CA 94607
    Telephone: (510) 622-8150 x 202
5   Facsimile: (510) 622-8155

6   F. Paul Bland
    pbland@publicjustice.net
7   PUBLIC JUSTICE, P.C.
    1825 K Street NW, Suite 200
8   Washington DC 20006
    Telephone: (202) 797-8600
9   Facsimile: (202) 232-7203

10  *Attorneys for Plaintiffs*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# CERTIFICATE OF SERVICE

I, Amy Tabor, hereby certify that on October 30, 2017 this document was filed with the Court using the CM/ECF system and thereby served on all counsel of record.

/s/ Amy Tabor
Amy Tabor