Michael A. Caddell (State Bar No. 249469)
mac@caddellchapman.com
Cynthia B. Chapman (State Bar No. 164471)
cbc@caddellchapman.com
Amy E. Tabor (State Bar No. 297660)
aet@caddellchapman.com
Caddell & Chapman
628 East 9th Street
Houston TX 77007-1722
Telephone: (713) 751-0400
Facsimile: (713) 751-0906

*Attorneys for Plaintiffs*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA
### SOUTHERN DIVISION

| | |
|---|---|
| TERRI N. WHITE, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> EXPERIAN INFORMATION SOLUTIONS, INC., <br><br> *Defendant*. <br><br> and related cases: <br><br> 05-cv-0173-DOC (MLGx) <br> 05-cv-7821-DOC (MLGx) <br> 05-cv-0392-DOC (MLGx) <br> 05-cv-1172-DOC (MLGx) <br> 05-cv-5060-DOC (MLGx) | Case No. 05-cv-1070 DOC (MLGx) (Lead Case) <br><br> **DECLARATION OF JOHN ULZHEIMER** <br><br> Date: December 11, 2017 <br> Time: 8:30 a.m. <br> Ctrm: 9D <br> Judge: Hon. David O. Carter |

## DECLARATION OF JOHN ULZHEIMER

I, John Ulzheimer, am over 18 years of age and competent to make the following statement. All of the statements below are based on my personal knowledge.

1. I am the President of The Ulzheimer Group, LLC.

2. I am familiar with the allegations and history of this case and facts set forth in this Declaration.

3. Attached as Exhibit 1 is a true and correct copy of my curriculum vitae, which details my educational and professional background, publications, speaking engagements, and cases where I've been retained as a credit expert.

4. I have been re-retained as an expert witness by Class Counsel to offer opinions pertaining to the bankruptcy credit reporting issues and the non-monetary relief added to the proposed Settlement in this matter. I was previously deposed and filed Declarations in support of Plaintiffs' Motion for Class Certification and in Support of Plaintiffs' Motion for Final Approval of the 2009 Proposed Settlement. (*See* Declaration of John R. Ulzheimer, Dkt. 605-4.) The original retention by Class Counsel was in 2006, my 3rd case as an expert witness. Since then I have been retained over 300 times.

5. I have substantial experience as an expert pertaining to credit reporting and credit scoring issues, including, but not limited to:

    a. I worked for Equifax Credit Information Services from 1991-1997. At Equifax, I managed the consumer dispute process, including conducting consumer interviews, logging consumer disputes onto Equifax credit reports, communicating with the data furnisher to validate the accuracy of their credit reporting, modified consumer credit reports according to the results of investigations, and communicated dispute resolution results to consumers. In that role, I also worked extensively with furnishers of information to the credit reporting agencies. Later in my time with Equifax, I managed the relationship between Equifax and many of their customers, such as credit unions, auto dealerships, credit card issuers, banks, and collection agencies.

b. From 1997 through 2004, I was employed by Fair Isaac Corporation (also knows as "FICO" for its credit scores). During my time at FICO, I became well versed on credit scoring systems and their use in underwriting and risk assessment.

c. In 2004 I joined Credit.com, a credit consulting firm and lead generation aggregator. At Credit.com I helped to build out their educational content, which included writing my first three books. Additionally, while at Credit.com I designed the inner workings of its Credit Report Card, which interprets credit report information like a credit scoring model does and presents the information to consumers in an easy-to-understand format. The tool won several awards when it was released.

d. I either was or currently am the credit blogger for Mint, CreditSesame, CreditSimple, SmartCredit, New York Times, CreditCardInsider, VantageScore Solutions, The Simple Dollar, Magnify Money, Zillow, J.D. Byrider, Credit Secret, Credit.com and The National Foundation for Credit Counseling.

e. I have written numerous books and other publications regarding consumer credit.

f. I am a regular guest lecturer at The Westminster Schools (Atlanta), The University of Georgia, Emory University's School of Law, and the Georgia Consortium for Personal Financial Literacy on credit reporting, credit litigation, and personal finance related topics.

g. I have been published and quoted collectively over 4,500 times in the past 14 years on the topic of consumer credit.

h. I am a frequent commentator on credit related issues in various outlets including Wall Street Journal, New York Times, USA Today, Readers

Digest, Bankrate, American Banker, Associated Press, NPR, and other regional business and consumer media.

6. My professional experience since 1991 has exposed me to both public and proprietary processes and procedures involved in credit reporting, credit report dispute resolution practices and standards, Fair Credit Reporting Act compliance, credit scoring, and consumer credit risk management practices.

7. Since my initial retention in November 2006, I have reviewed the list of documents attached hereto as Exhibit 2.

8. I have been qualified as a consumer credit expert in both Federal and State courts, and have testified in over 75 cases as a consumer credit expert. I have never been disqualified as an expert in consumer credit, whether under the Daubert or Frye standard.

9. The facts and opinions set forth herein are based on my personal knowledge, including the review of the above-referenced materials, my training, education, and experience in the field of consumer credit reporting.

### *Opinions/Conclusions*

10. I have been asked by Plaintiffs' counsel to review the Amended Settlement Agreement and Release filed June 14, 2017 (Settlement) and offer my opinions of the Non-Monetary Consideration (NMC) as defined in Schedule 3.2 of the Settlement.

11. The NMC consists of two components which are;
   a. Notice to advise Class Members of effective ways to make use of Defendants' existing consumer relations/reinvestigation process and assistance in following that process. This is informally referred to on the Settlement administrator's website as, "Consumer Credit Reporting Assistance" ("CCRA").
   b. Free File (credit report) Disclosures Plus Two Free VantageScore Credit Scores.

12. Each of these components carries varying value to the class members. Some members will rely on none of these while other members will rely on either one, or both. Regardless, there is real and significant value associated with each component.

13. Regarding the Consumer Credit Reporting Assistance (CCRA); there is no shortage of information about credit reports, credit scores, the Fair Credit Reporting Act, and the consumer dispute/resolution process available online. Much of the information is accurate and helpful. Much of the information is not. It can be difficult for a layman to differentiate between the accurate and inaccurate information.

14. As part of the NMC component of the Settlement a CCRA website has been created and linked to from the settlement administrator's website. The CCRA website contains a wealth of important and accurate information about credit reporting, credit scoring and consumer rights as it pertains to credit report data accuracy and the dispute/resolution process.

15. The CCRA site includes information about your rights, including how to obtain your free credit reports afforded to you under Federal and state laws, how to challenge inaccuracies on your credit reports, and how to obtain legal assistance to challenge the accuracy of your credit reports by leveraging the experience of Class counsel.

16. In addition, the CCRA site includes information about how to differentiate the information across the three credit reporting agency's formats, the difference between a credit report and a credit score, the difference between VantageScore branded credit scores and FICO branded credit scores, and tips from the Consumer Financial Protection Bureau (CFPB) regarding the best way to improve and maintain strong credit scores.

17. The content on the CCRA website is also unique in its breadth and provenance. While consumers can certainly find information about their rights,

their credit scores, and their credit reports on the Internet, the CCRA is rare in that all the content can be found on one page. And the fact that the CCRA content has been vetted for accuracy by the three credit reporting agencies ensures that consumers are getting accurate information.

18. I have personally written or have been quoted in over 4,500 articles on the topic of consumer credit. I have written 4 books on the topic, all of which have been published. It's my opinion that the content on the CCRA website is accurate, helpful and valuable to consumers. While it is impossible to determine the value of the CCRA website to every class member, I have been informed that the Settlement Administrator reports that there have been more than 87,000 visits to the website since it first went online on June 21, 2017 through November 3, 2017—and it is important to note that the website will remain available throughout the settlement process, including any appeals, which it is my understanding can take several years to resolve—it is fair to say that many thousands of individuals will derive meaningful benefit from the website.

19. Regarding the free credit file disclosure plus two free VantageScore credit scores; The VantageScore credit score has existed since 2006 with the 4th generation of the score becoming commercially available in the Fall of 2017. In November of 2015 VantageScore Solutions announced that between July 2014 and June 2015, "more than 6 billion VantageScore credit scores were used." In October of 2016 the company announced that between July 2015 and June 2016 the annual usage of the VantageScore credit score increased 40% to more than 8 billion scores used, and that 20 of the nation's 25 largest banks use their score.

20. In September 2015 FICO's CEO, Will Lansing, stated that in 2007 some 14 billion FICO branded credit scores were used, in 2009 some 9 billion FICO

branded scores were used, and in 2015 the volume was 10 billion and climbing.[1] So while FICO's credit scores are used more commonly for credit decisions, the VantageScore credit score is a strong competitor from a volume and visibility perspective. And because the VantageScore credit score uses the same industry standard score range of 300 to 850 their scores will still help consumers to obtain directionally similar information that any of their respective lenders would obtain for underwriting. This also provides consumers with a similar measuring stick they can use to gauge the effectiveness of their own personal score improvement efforts.

21. The take away is that the VantageScore credit score, which uses the industry standard 300 to 850 range, is a commonly used scoring system in the U.S credit market and giving class members access to free scores is valuable in that it allows them to see the same or similar "grades" that their respective lenders will see when performing the underwriting and risk assessment process.

22. The free file disclosure and free VantageScore credit scores are also provided to class members without strings, which is unique in today's free credit report and free credit score environment. In fact, in today's credit environment the common methods for consumers to gain access to their credit report and/or credit score information either comes with a fee, the requirement to have a credit card with certain credit card issuers, or the requirement to provide your personal information to a 3rd party website, such as CreditKarma or CreditSesame, and become a "registered user" of that site. These sites, informally referred to as "freemium" sites, act as lead generation engines and share their registered users' information with other 3rd party companies that solicit the consumer for various credit related products, such as credit cards.

---

[1] Fair Isaac Corporation comments at the September 2015 Barclays Global Financial Services Conference.

23. When claiming their free file disclosure and credit scores, the class members will not have to provide their sensitive personal information to any 3rd party and they will not be required to have any specific credit card. They also will not have to pay for the information. This aspect of the NMC augments the inventory of available options for consumers to get their personal credit information, and is especially attractive to consumers who want the free credit report and score information but don't want to give away their personal information to lead generation websites or constantly have to ignore/delete marketing emails.

24. In 2015, the CFPB[2] released a study quantifying the number of credit card consumers who, via their credit card issuer, had access to their credit scores. The CFPB's Director, Richard Cordray, said, "Access to these scores provides an opportunity to engage consumers around their credit reports. Once consumers see their credit scores, they can be motivated to learn more about their credit history, check their full credit report, and take action to improve their financial lives." The free file disclosure and free credit scores keeps with this trend of giving more people access to what has traditionally been information only lenders could see.

25. The value of the free file disclosure and two free VantageScore credit scores is at least $15.95, and is likely higher. Both Equifax and Trans Union sell single report/single score products for $15.95[3] and $19.95[4] respectively. Experian doesn't have a single report/single score product unless you sign up for a monthly subscription service that costs $4.99 for the first month and then $24.99 each

---

[2] https://www.consumerfinance.gov/about-us/newsroom/cfpb-reports-that-more-than-50-million-credit-card-consumers-have-access-to-free-credit-scores/

[3] https://www.equifax.com/personal/products/credit/report-and-score

[4] https://www.transunion.com/

additional month.[5] FICO, the company that created the FICO credit scoring system, has a single report/single score product that costs $19.95.[6] None of the aforementioned single report products provides more than one score, unless you pay a considerably higher price. The combination of one report and two scores provided for under the NMC is unique. If I were to assign a retail price to the combination, based on my experience in the credit reporting and credit scoring industries and my familiarity with the retail credit report and credit score products available to consumers I believe the retail value of the NMC report and scores is $19.95.

### *Regarding The Injunctive Relief Settlement*

26. I also provide updated information regarding the settlement of plaintiffs' claims for injunctive relief (Injunctive Relief Settlement), which this Court approved on August 19, 2008. (Dkt. 338.) I previously offered my opinion that the relief secured in the Injunctive Relief Settlement was "groundbreaking" and that it would "systemically prevent many costly and damaging errors from appearing on credit reports ever again." (Dkt. 605-4 ¶ 6.) Since I offered that opinion in 2010, I have seen first hand the effectiveness of the Injunctive Relief Settlement. The retroactive and prospective reporting changes implemented by each of the major consumer credit reporting agencies (Equifax, Experian, and TransUnion) appears, from my vantage point, to have all but eliminated the inaccurate credit reporting of pre-bankruptcy, statutorily dischargeable debts as being "due and owning" after the filing date of Chapter 7 bankruptcies[7].

---

[5] https://www.experian.com/consumer-products/credit-score.html

[6] https://www1.myfico.com/products/onetimereports

[7] The programming logic implemented as part of the injunctive relief settlement is more fully explained in the Approval Order Regarding Settlement Agreement and Release signed by the Honorable David O. Carter on August 19, 2008.

27. Because of the foregoing, I respectfully ask that the Court approve the Settlement after the final fairness hearing on December 11, 2017.

28. I declare under the penalty of perjury that the foregoing is true and correct.

Dated: November 13, 2017

_____
John Ulzheimer